UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, NII-AKWEI ACQUAYE, SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, DELLA DICKSON, VIRGINIA DOUGLAS, RONALD GARRUS, MARGO HARVEY, CHENETA HUGHEY, JACQUELINE JENKINS, KEITH LEWIS, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, JACQUELINE WILLIAMS, CHERYL WILLIS, SEAN WRIGHT, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

**Case No. 01-CV-2086 (DWF/AJB)**

**ORDER ON MAY 7 DISCOVERY CONFERENCE**

This matter is before the Court on a discovery management conference pursuant to the Pretrial Scheduling Order in this case. The hearing was held by telephone on May 7, 2002. Lawrence P. Schaefer, Esq., Susan M. Coler, Esq., and Teresa Patton, Esq. appeared on behalf of the plaintiffs. Matthew E. Klein, Esq. appeared on behalf of the defendant.

The parties raised the following issues in letters submitted to the Court prior to the conference: a Stipulated Protective Order, authorizations to release medical and employment records, defendant's redaction of certain information from otherwise responsive documents and data, and defendant's preservation and production of e-mail. The parties' letters are attached hereto and made part of this Order.

MAY 20 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

Based upon the file, the submissions of counsel, and the arguments of counsel, **IT IS HEREBY ORDERED THAT:**

1. *Stipulated Protective Order.* The Court **orders** that the Stipulated Protective Order state (a) that depositions and discovery requests be treated as "confidential" by designation rather than by default; and (b) that any named Plaintiff who is shown "confidential" or "attorneys' eyes only" information consistent with the Stipulated Protective Order must sign the Stipulated Protective Order. Consistent with the parties' representations at the hearing, the parties will confer to resolve any additional differences regarding the Stipulated Protective Order. Plaintiffs' request that the Stipulated Protective Order treat depositions and discovery requests as "confidential" by designation is **granted**. Defendant's request that named Plaintiffs sign the Stipulated Protective Order is **granted in part**.

2. *Authorizations to Release Medical Records.* The Court **orders** that the following categories of named Plaintiffs execute authorizations to release medical records: those named Plaintiffs who seek emotional distress damages and who either (a) have sought medical treatment for any symptom associated with their emotional distress, or (b) will offer expert testimony regarding their emotional distress. The authorizations shall require disclosure of medical records for a period beginning on the later of January 1, 1990 or three years prior to the named Plaintiff's employment with Cargill. All medical records disclosed shall be treated as "attorneys' eyes only" under the terms of the Stipulated Protective Order. In the event that a named Plaintiff has a special concern about disclosing a particular medical record or records, that named Plaintiff may seek *in camera* review of the records for determination by the Court of whether they should be disclosed. Defendant's request is **granted in part**.

3. *Authorizations to Release Employment and Unemployment Compensation Records.* The Court **orders** that all named Plaintiffs execute authorizations to release employment records regarding their pre-Cargill employment. The Court further **orders** that all named Plaintiffs execute authorizations to release employment and unemployment compensation records regarding their post-Cargill employment, except that the authorizations shall not extend to the current employer of any named Plaintiff. Defendant's request is **granted in part**.

4. *Preservation of E-mail.* The Court **orders** the defendant to preserve the oldest complete set of e-mail backup tapes in defendant's possession. The parties will confer regarding defendant's proposal for further preservation and production of e-mail. Plaintiffs' request is **granted**.

5. *Document Redaction.* The Court will issue a separate written order on this issue. The parties may each submit a supplemental letter brief on this issue (limited to five pages) by 4:30 p.m. on Friday, May 10, 2002.

6. *Next Status Conference.* The next discovery management conference is set for 8:00 a.m. on Tuesday, June 4, 2002.

Dated: 5/16/02

BY THE COURT:

Arthur J. Boylan
United States Magistrate Judge

# SPRENGER & LANG

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

SUSAN M. COLER
MINNEAPOLIS OFFICE
E-Mail: scoler@sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

May 6, 2002

The Honorable Arthur J. Boylan
Magistrate Judge, UNITED STATES DISTRICT COURT
Room 638, Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN 55101

**DELIVERY VIA MESSENGER**

**Re:** ***Arnold, et al. v. Cargill,*** **No. 01-CV-2086 DWF/AJB**

Dear Magistrate Judge Boylan:

Four significant issues are ripe for an initial discussion with the Court at our first status conference on Tuesday, May 7, 2002: (1) Whether the premise underlying a protective order should be that information and records remain open unless otherwise protected, or vice versa; (2) Should defendant have *carte blanche* access to plaintiffs' medical histories and records regardless of the nature of the compensatory injuries claimed? (3) Whether pre- and post-Cargill employment records are reasonably calculated to lead to admissible evidence; and (4) What breadth of discrimination evidence should the Court allow plaintiffs to discover?

**Protective Order (Cargill Issue #3):** Although the parties share some common ground with regard to what an appropriate protective order should contain, Cargill's proposed protective order dramatically overreaches. It assumes all information and documents shall be under seal unless the parties seek to remove the Confidential designation. This violates the principle that court proceedings should normally take place in public. *See Amerian Tel. & Tel. Co. v. Grady*, 594 F.2d 594, 596 (7th Cir. 1978) ( "pretrial proceedings must take place in the public unless compelling reasons exist for denying the public access to the proceedings").

Attached to this letter is plaintiffs' proposed protective order. It preserves the fundamental notion that court proceedings occur in the open unless good cause exists to seal the proceedings. We have not had the opportunity to discuss this proposed order with defendant's counsel. However, this proposed order addresses Cargill's concerns about protecting certain types of information without impinging on the principle of public access.

**Medical Histories and Records:** Cargill asks the plaintiffs to provide detailed medical history and medical documents as well as blanket authorizations for medical records extending back to the earlier of 1985, or five years prior to the plaintiffs' employment at Cargill. Plaintiffs object on the grounds that the "fact that plaintiff has claimed general emotional distress damages

does not give defendant carte blanche to peruse plaintiff's medical history." *Gatewood v. Stone Container Corp.*, 170 F.R.D. 455, (S.D. Iowa 1996). Defendants routinely seek medical records regardless of the nature of the injury claimed and regardless of whether a plaintiff has sought treatment for emotional distress. *See O'Sullivan v. State of Minnesota*, 176 F.R.D. 325 (D. Minn. 1997) (claiming the emotional distress that an employee generally would experience as a result of discriminatory treatment does not put plaintiffs' mental health condition in controversy). They also routinely use "alternate causation" as a justification for seeking medical records where information about such alternate causation may be sought through less intrusive means.

In evaluating discovery requests, "courts have recognized that interests in privacy may call for a measure of extra protection." *Petz v. Ethan Allen, Inc.*, 113 F.R.D. 494, 497 (D. Conn. 1985). This protection may include determining that particular types of discovery shall not be had, particularly when arguably discoverable information is available through less intrusive means. *See* Rule 26 (b)(2). Special care is particularly appropriate where a plaintiff's confidential medical history and records are at issue and where a plaintiff has sought the protection of the Court early in the litigation. *Order*, August 27, 1999, *Beckmann v. CBS, Inc.*, Civ. No. 3-06-1172DWF/AJB (attached); *Jenson v. Eveleth Mines*, 130 F.3d 1287, 1292-93 (8th Cir. 1997) ("scorched earth" defense relating to events allegedly affecting emotional well-being resulted in discovery that should not have been allowed).

Plaintiffs propose an approach to this issue that allows discovery proportionate to the nature and extent of emotional damages claimed. This approach is set forth in the attached chart titled "Discovery Related to Emotional Distress Damages."

**Employment Records**: Courts have recognized a privacy interest in personnel and employment files. *Gehring v. Case Corp.*, 43 F.3d 340, 342 (7th Cir. 1994). Absent any individualized request justifying a need for specific records for a particular person, the potentially intrusive nature of a wholesale ordering of their employment records is unwarranted.

**(a) Unemployment compensation records:** Plaintiffs are willing to have those plaintiffs who sought unemployment compensation as a result of their termination *from Cargill* sign an authorization for the release of that set of records. Any other unemployment compensation records are not reasonably calculated to lead to admissible evidence.

**(b) Pre- and Post-Cargill employment records:** Cargill has asked the plaintiffs for complete employment histories as well as blanket authorizations for employment records. Unrestricted access to such records is not reasonably calculated to lead to admissible information. Cargill claims that such records are relevant to "earning history, qualification for positions, and mitigation." These employment records will not shed any light on mitigation issues, nor are they necessary for earning history, as Cargill has requested and plaintiffs are providing job search and other mitigation information and tax records for the periods requested by Cargill. As to qualification for positions, if Cargill did not seek pre-Cargill records at the point of hire, what additional light could they possibly shed now? (Moreover, for most of the Cargill plaintiffs this information will be extremely out-of-date.) Requesting post-Cargill

records from plaintiffs' current employers may create unnecessary difficulties for the plaintiff as it will notify the subsequent employer that the plaintiff is involved in litigation. *Graham v. Casey's General Stores, Inc.*, 206 F.R.D. 251, *16 (S.D. Indiana 2002) (plaintiffs have a legitimate concern that seeking records from current employer could be tool for harassment and could result in difficulties in the current job). Plaintiffs believe that Cargill really seeks these records as a fishing expedition in hopes of finding information to justify *post hoc* its treatment of the plaintiffs at Cargill. Such information falls into the category of "character to conduct" evidence prohibited by Fed. R. Ev. 404(b). *See Neuren v. Adduci, Mastriani, Meeks & Schill*, 43 F.3d 1507, 1510-12 (D.D.C. 1995) (district court abused its discretion in admitting evidence of performance at prior job).

**Breadth of Discrimination Evidence Plaintiffs Should be Allowed to Discover (Cargill Issue #2, Redactions):** Plaintiffs object to Cargill's proposed redaction of three out of four proposed categories of information: all demographic information other than race of "African American" and "white"; all complaints other than those based on race or racial harassment brought by African American employees; and information about hourly employees. Plaintiffs do not object to redaction of information regarding non-United States businesses and employees. This is with the exception, to which plaintiffs believe the parties have agreed, that Cargill will not redact information relating to complaints about discriminatory treatment occurring in the United States that involved a non-United States business or employee.

Cargill's attempt to limit the information it produces in response to plaintiffs' discovery requests is directly contrary to relevant precedent directly addressing the scope of admissible evidence in a discrimination case. Allowing these limitations now would result in the "blanket evidentiary exclusions" that led the Court in *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir. 1988) to reverse and remand for a new trial. *Estes* involved an individual disparate treatment age and race discrimination case. The Court found error in the evidentiary exclusions at trial that prohibited the plaintiff from offering a statistical analysis of the employer's past employment practices (relating to hiring and workforce composition, even though the case involved termination), or from offering evidence of alleged prior acts of discrimination against customers (even though the plaintiff was a former employee). *Id.* at 1103-04. In rejecting these exclusions, the Court found that any evidence tending to establish "a climate of race and age bias" at the company should be admissible. *Id.*

This reasoning applies with even more force here. The parties are on the cusp of discovery in a sweeping company-wide disparate impact and disparate treatment case involving allegations of systemic bias throughout Cargill. If it is reversible error for a trial court to impose blanket evidentiary exclusions at trial that precludes the admission of any evidence in an individual disparate treatment case that "might suggest that equal employment opportunity was not the [employer's] prevailing policy...", *id.* at 1103, it would be inappropriate to even consider adopting similar restrictions at the beginning of discovery in a company-wide class case.

Because of its scope and the allegations at issue, there is far greater support in this case for the discovery evidence of the treatment of hourly employees, older or female employees, or discrimination complaints not solely limited to race, than there was supporting reversal in *Estes*,

an individual disparate treatment case. The context in which systemic bias must be proven, and the difficulty in establishing motive on this scale, requires broad access to the information sought by plaintiffs. Hourly employees who complain of discrimination may make these allegations against managers who also supervise and exercise authority over salaried plaintiffs or class members; a pattern of bias by race has to take into account and control for the impact of other possible motives, such as age, gender, disability. The existence of these other patterns of bias, if discovered, could be offered as relevant to punitive damages and probative of the climate or culture at Cargill in support of alternative theories of class or individual relief. *See Kolstad v. American Dental Assoc.*, 119 S.Ct. 2118 (1999); *see also EEOC Enforcement Guidance: Compensatory and Punitive Damages Available under § 102 of the Civil Rights Act of 1991*, §§ II.B.1, 4-6, (1992) (to prove liability for punitive damages plaintiffs are entitled to discover information about defendant's knowledge of their obligations to employees, its history of handling discrimination complaints, and the existence and frequency of similar past discriminatory conduct).

Finally, plaintiffs are seeking advice from their expert statisticians about the impact of such a redaction on the analysis of Cargill data. They ask that any decision be deferred until such advice can be obtained.

**E-Mail Preservation and Production:** Plaintiffs are not prepared to respond to Cargill's proposed methodology for e-mail preservation and production at this time. Also, the information offered by Cargill is not specific enough to provide the basis for a thoughtful decision. The information offered to the Court was shared with plaintiffs only last week and we have had little time to process what has been done and determine what may and should be done.

Plaintiffs do seek at this time, in addition to what Cargill is currently retaining, the preservation of the oldest complete set of e-mail back-up tapes in Cargill's possession. This will give the plaintiffs the option of searching an entire e-mail database containing the oldest most historical data available.

**Electronic Production of Documents:** Several months ago, plaintiffs requested that the parties consider exchange of documents in electronic form since Cargill and the plaintiffs intend to maintain the documents electronically. This would achieve significant cost and timesavings in the handling of the documents. Cargill recently expressed two concerns, that plaintiffs would seek access to Cargill's data files related to those electronically stored documents and that inadvertent production of a privileged document would require replacement of the disk. Plaintiffs will agree not to seek Cargill's data files, as these reasonably could constitute work product. Plaintiffs are willing to work out a mutually agreeable method of handling inadvertently produced materials. Plaintiffs' experience is that this happens so rarely as not to outweigh the efficiencies and savings in cost and time that electronic production would provide. *See In re Air Crash Disaster at Detroit Metro Airport*, 130 F.R.D. 634, 636 (E.D.1989) (interpreting Fed. R. Civ. P. 1 to authorize the court to order such a production to "secure the just, speedy, and *inexpensive* determination of every action" (emphasis added)). We would appreciate the Court's input on this issue.

Very truly yours,

Susan M. Coler

Susan M. Coler

:mbk
cc: Janice Symchych (via facsimile and U.S. mail)
Matthew Klein (via facsimile and U.S. mail)

*Arnold, et al. v. Cargill,* No. 01-CV-2086 DWF/AJB

**DISCOVERY RELATED TO EMOTIONAL DISTRESS DAMAGES**

| LEVEL OF EMOTIONAL DISTRESS | APPROPRIATE DISCOVERY |
|---|---|
| Plaintiff does not seek emotional distress damages | No production of medical/mental health history, documents or authorizations |
| Plaintiff claims general emotional distress damages that person undergoing discrimination would experience but does not place mental health condition in controversy by offering expert testimony or testimony of a mental health or other medical professional; evidence offered consists of lay testimony by plaintiff and others who had the opportunity to observe the impact of the discrimination on the plaintiff. | No production of medical/mental health history, documents or authorizations. |
| Plaintiff places mental health condition in controversy by testifying about treatment by a mental health professional and/or by offering expert testimony or testimony of a mental health professional.<br><br>[Plaintiffs would consider producing these plaintiffs for a supplemental deposition solely on emotional distress damages after the class certification motion to allow depositions to otherwise proceed at this time. If the case settles before this discovery is needed, considerable time, cost and intrusion will have been spared.] | Production of mental health treatment records for time period of treatment related to work issues, with availability of *in camera* review if requested by plaintiff for particularly sensitive information and records. If mental health records or other information indicates that expanded mental health records or specific medical records may lead to admissible evidence, those may be requested, with the same protection that plaintiff may seek *in camera* review. *See Gatewood*, 170 F.R.D. at 460. |

# DORSEY & WHITNEY LLP

MINNEAPOLIS
NEW YORK
SEATTLE
DENVER
WASHINGTON, D.C.
NORTHERN VIRGINIA
DES MOINES
LONDON
ANCHORAGE
SALT LAKE CITY
BRUSSELS

SUITE 1500
50 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

**MATTHEW E. KLEIN**
**(612) 340-5666**
**FAX (612) 340-2777**
**klein.matthew@dorseylaw.com**

COSTA MESA
BILLINGS
FARGO
HONG KONG
GREAT FALLS
ROCHESTER
TOKYO
MISSOULA
VANCOUVER
TORONTO
SHANGHAI

May 3, 2002

**VIA MESSENGER**

The Honorable Arthur J. Boylan
United States Magistrate Judge
Room 638
316 North Robert Street
St. Paul, MN

Re: Arnold et al. v. Cargill Incorporated
Civil No. 01-2086DWF/AJB

Dear Judge Boylan:

We submit this letter on behalf of Cargill in anticipation of the Court's first discovery/status conference, which is set for Tuesday, May 7 at 8:30 a.m. The parties discussed these issues in a telephone conference on May 2.

**Status.** On April 1, 2002, Cargill served written discovery; requests for authorizations to release non-Cargill employment records, unemployment compensation records, and medical records; and deposition notices for 21 of the 25 named Plaintiffs. Plaintiffs have confirmed the availability of 16 of the named Plaintiffs for depositions, and depositions begin on May 21 and run through early August.

Plaintiffs served their initial responses to some discovery requests on May 1 and indicated that more information would be provided soon. We have been working with Plaintiffs' counsel to make sure that we receive sufficient information responsive to our discovery requests in enough time to prepare for the depositions. We are early in this process and we hope that the information will be timely provided.

**Issue # 1: Records Authorizations.** Plaintiffs object to providing non-Cargill employment and unemployment records releases. They have indicated some willingness to provide limited medical records releases for named Plaintiffs seeking emotional distress damages.

We believe that we need these releases and need them now, because it is our plan to take only one deposition of each named Plaintiff. We need this information as far in advance of the depositions as possible so that we can cover all merits and damages issues. Non-Cargill employment records will be relevant on issues of earning history, qualification for positions, and mitigation. Unemployment compensation records will be relevant for mitigation. Medical records will be relevant on issues of emotional distress damages and alternative causation. These records are discoverable, see Schoffstall v. Henderson, 223 F.3d 818 (8th Cir. 2000), and we ask that the Court order that the authorizations be produced.

**Issue #2: Redactions.** Plaintiffs "seek to represent a class of former, current and future *African American* employees of Cargill in *managerial and professional salaried* positions below the vice president level who have suffered race discrimination . . . ." Complaint ¶ 3 (emphasis added). Many categories of documents that are otherwise discoverable in this case contain information that we believe is neither relevant nor could lead to the discovery of admissible evidence regarding Plaintiffs' claims as they have defined them. For example, Plaintiffs have requested Cargill's Affirmative Action Plans ("AAPs"), EEO-1 reports, and data sets from Cargill's human resources database, all of which contain demographic information regarding employees' irrelevant protected class statuses.

We believe that we are permitted to redact the following categories of information are not discoverable: (1) all demographic information other than the race of African American and white employees, including categories like gender, disability, veteran status, and minority status (other than African American); (2) employee complaints other than those based on race or racial harassment brought by African American employees; (3) information regarding non-United States businesses and employees; and (4) information regarding hourly employees.

As authority for our position, we rely on decisions such as EEOC v. Southern Farm Bureau Cas. Ins. Co., 271 F.3d 209 (5th Cir. 2001), Gheesling v. Chater, 162 F.R.D. 649 (D. Kan, 1995), and Magistrate Judge Noel's Order in Tenner v. Northern States Power Co., Civil No. 3-90-53 (D. Minn. December 11, 1992) (unpublished) (copy enclosed). Redacting this information from otherwise responsive documents will be both time-consuming and expensive, which is why we are raising the issue now – before beginning the redactions. We ask the Court to permit us to proceed with these redactions.

**Issue #3: Protective Order.** We have enclosed a copy of the draft Stipulation and Protective Order that we sent to Plaintiffs' counsel for review. In preliminary discussions about the draft Order, Plaintiffs' counsel asked us to add three categories of documents to the list of protectable information and to refine paragraph 9. We made those changes in the draft Order. We would like the Court's assistance in finalizing the protective order to minimize delays in document production.

DORSEY & WHITNEY LLP



In the interim, the parties have agreed that Plaintiffs' counsel will produce documents responsive to Cargill's document requests under a confidentiality designation and that Cargill will treat those documents as confidential under the draft protective order. Obviously, however, it is in both parties' interests to finalize the protective order.

**Issue #4: E-mail preservation.** Cargill needs guidance from the Court on the issue of ongoing e-mail preservation and retention. Five of the named Plaintiffs are current employees, and the Plaintiffs seek to represent a class of, among others, all current African American managers at Cargill. Cargill is willing to work out an arrangement to preserve e-mail, but the parties have not agreed on the breadth of that obligation or the size of the burden that Cargill must bear.

By way of background, Cargill has 76 discrete e-mail servers, between 15,000 and 20,000 users on its domestic e-mail system, and likely generates between 3 million and 4 million new e-mail messages each week. Obviously, preservation and production of relevant e-mail from this volume of e-mail would be extraordinarily costly.

Starting November 7, 2001, Cargill implemented a temporary process for preserving potentially relevant e-mail on a class-wide basis until it could try to reach agreement on the issue with Plaintiffs' counsel or, absent agreement, seek guidance from the Court. Under this process, Cargill identified approximately 250 human resources personnel, supervisors, managers, and high-level executives who might send or receive e-mail messages potentially relevant to claims made by Plaintiffs. Cargill provided a list of subject matter categories to each of these individuals and asked them to preserve any e-mail they sent or received regarding the subjects.

Although this approach was overly broad and was also burdensome and time-consuming for the 250 affected employees, we put it in place as a temporary approach until we could seek guidance from the Court. Given the extraordinary cost associated with preserving e-mail on a putative class-wide basis, we believe that it is more appropriate at this stage to preserve e-mail that may be relevant to the claims of the five current employee named Plaintiffs, rather than the putative class as a whole. (It is unlikely that Cargill will generate non-privileged e-mail regarding the remaining twenty named Plaintiffs, since they are no longer employed by Cargill). Valentino v. United States Postal Service, 674 F.2d 56, 73 n.31 (D.C. Cir. 1982), supports this position.

We propose that we identify Cargill employees who may send or receive responsive e-mail regarding the current employee named Plaintiffs, including supervisors and human resources personnel. (We would work with Plaintiffs' counsel to identify such a list; we anticipate that it would be no more than 25 people). This group of employees will be instructed to preserve all e-mail sent or received regarding the named Plaintiffs, and Cargill will periodically review and produce responsive nonprivileged e-mail from this set. If a class is later

DORSEY & WHITNEY LLP



certified, the issue of ongoing e-mail preservation can be revisited. We ask that the Court ratify this approach.

**Issue #5: E-mail production.** Cargill is also quite concerned about the significant costs that may be associated with production of e-mail preserved to date. In addition to all of the e-mail preserved since November 7, 2001, Cargill has approximately 100 data tapes that, we believe, contain backed up e-mail. These tapes cover a date range from late May of 2000 through the end of October 2001.

We propose that the parties share the cost of a preliminary "test" production. The parties would develop a list of 75 to 100 search terms; Plaintiffs would select five specific days (give or take a few) in the range from late May, 2000 to present; Cargill would provide a cost estimate for searching and production, which the parties would split evenly between them; the search terms would then be run on the selected dates; and Cargill would produce responsive non-privileged e-mail. The parties would then confer about whether additional e-mail production is warranted, and, if so, cost-sharing and production schedules.

This approach is similar to the approaches adopted by several courts in similar situations. See Murphy Oil USA, Inc. v. Fluor Daniel, Inc., 2002 WL 246439 (E.D. La. Feb. 19, 2002) (unpublished) (copy enclosed); Row Entertainment, Inc. v. The William Morris Agency, Inc., 205 F.R.D. 421 (S.D. N.Y. 2002); In re Air Disaster at Detroit Metro Airport, 130 F.R.D. 634 (E.D. Mich. 1989). We ask that the Court adopt it here.

Thank you for your consideration. If you decide that it would be more appropriate to address these issues through full briefing or a motion hearing, please let us know, and we will pursue them through that route.

Sincerely,

DORSEY & WHITNEY LLP
Janice M. Symchych
Melissa Raphan
Mark Ginder
Holly S.A. Eng
Matthew E. Klein

Enclosures
cc: Susan Coler, Esq. (w/encl.)

bcc: Dennis Orke, Esq. (w/encl.)
Gary Siniscalco, Esq. (w/encl.)
Janice Symchych, Esq. (w/encl.)
Melissa Raphan, Esq. (w/encl.)