**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virgina Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, Sean Wright, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Cargill Inc.,

Defendant.

Civil No. 01-2086 (DWF/AJB)

**MEMORANDUM OPINION AND ORDER**

---

Michael D. Lieder, Esq. and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th Street NW, Washington, DC 20009 and Paul C. Sprenger, Esq., Sarah L. Madsen, Esq., Lawrence P. Schaefer, Esq., Teresa K. Patton, Esq., Susan M. Coler, Esq., and Lisa C. Stratton, Esq., Sprenger & Lang, 325 Ridgewood Avenue, Minneapolis, Minnesota 55403, on behalf of Plaintiffs.

Janice M. Symchych, Esq., Melissa Raphan, Esq., Mark J. Ginder, Esq., Holly S.A. Eng, Esq., and Matthew E. Klein, Esq., Dorsey & Whitney, 50 6th Street South, Suite 1500, Minneapolis, Minnesota 55402, on behalf of Defendant.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 12, 2002, pursuant to Defendant's Partial Motions to Dismiss, for Summary Judgment, and to Strike. By their Complaint, Plaintiffs, who are all current or former

FILED JUL 15 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

African-American employees of Defendant Cargill, Inc. ("Cargill"), allege discrimination on the basis of race, resulting in violations of 42 U.S.C. § 1981 (disparate treatment) and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363.03, subd. 11 (disparate impact). For the reasons outlined below, the Court grants in part and denies in part Defendant's Motion to Dismiss, grants in part and denies in part Defendant's Motion for Summary Judgment, and denies Defendant's Motion to Strike.

**Background**

Defendant Cargill is a large, privately held corporation with diverse business operations located throughout the world. Cargill's subsidiaries and affiliates include entities involved in the marketing, processing, and distribution of agricultural, food, financial, and industrial products and services. Plaintiffs are a putative class of African-American past and present managerial and professional salaried employees of various Cargill subsidiaries. By their Complaint, Plaintiffs allege that Cargill discriminated against them by way of advancement, compensation, and termination practices. Specifically, Plaintiffs allege a claim of disparate treatment under 42 U.S.C. § 1981 and a claim of disparate impact under the Minnesota Human Rights Act, Minn. Stat. § 363.01, *et seq* ("MHRA").

Plaintiffs contend that all of Cargill's subsidiaries and affiliates are subject to Cargill management and control. Plaintiffs' allegations relate primarily to the company-wide systems purportedly implemented to standardize advancement and compensation procedure. Such systems include the "Key Employee Identification System," the "Selection Grid Process," the "Performance Management Process," and "Management by Objectives." Plaintiffs contend that the systems at issue are "designed and implemented to favor employees who 'look and talk' like Cargill's white executives." In addition, Plaintiffs contend that Cargill management "has

allowed to flourish an atmosphere and culture of hostility toward providing equal employment opportunities for African-Americans within the company." As a result, Plaintiffs allege that there is a "glass ceiling" for African-American salaried employees of Cargill.

In addition to general allegations of discrimination as to all members of the putative class, Plaintiffs make additional allegations specific to each of the 25 individual named Plaintiffs. To the extent necessary, the Court will outline the relevant background of individual Plaintiffs in the Court's discussion below. By not addressing or addressing only to a certain extent the factual background of a particular named Plaintiff, the Court intends to make no statement or finding as to its validity, but only as to its relevance to the current motions before the Court.

By the three motions currently before the Court, Defendant seeks to "rightsize" the Complaint, contending that, at most, only five of the named Plaintiffs can rightly pursue a disparate impact claim, that the disparate treatment claim of 14 of the named Plaintiffs is time-barred, and that summary judgment is otherwise properly issued against several of the named Plaintiffs. In addition, Defendant seeks to strike certain statements from Plaintiffs' complaint, contending that they are "immaterial, impertinent, and scandalous."

## Discussion

### I. Motion to Dismiss

#### A. Standard of Review

In deciding a motion to dismiss, the Court must assume all facts in the Complaint to be true and construe all reasonable inferences from those facts in the light most favorable to the complainant. *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986). The Court grants a motion to dismiss only if it is clear beyond any doubt that no relief could be granted under any set of facts consistent with the allegations in the Complaint. *Id.* The Court may grant a motion to dismiss

on the basis of a dispositive issue of law. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989). The Court need not resolve all questions of law in a manner which favors the complainant; rather, the Court may dismiss a claim founded upon a legal theory which is "close but ultimately unavailing." *Id.* at 327.

**1. Issues**

**a. Claim of Disparate Impact Under the MHRA**

Defendant seeks to dismiss, in part, Plaintiffs' complaint of disparate impact under the MHRA, contending that the Act does not apply to Cargill employees who do not work or reside in Minnesota. Defendant further contends that, even to the extent that the MHRA applies to certain Plaintiffs, their Complaint should be dismissed because their claim is time-barred. Plaintiffs oppose Defendant's motion, maintaining that the MHRA has extraterritorial application, particularly when the disparate impact claim is based on the alleged effect of company-wide policies emanating from corporate headquarters located in Minnesota. Plaintiffs further maintain that it is premature to dismiss Plaintiffs' MHRA claim on the statute of limitations because further discovery will likely avail the Plaintiffs of certain tolling doctrines, such as waiver, estoppel, and equitable tolling. Based on the analysis outlined below, the Court concludes that the MHRA does not provide for extraterritorial application in this case. In addition, the Court concludes that the claims of certain named plaintiffs are time-barred under the MHRA.

**i. MHRA Extraterritorial Application**

In general, there is a presumption against the extra-territorial application of a state's statutes. *See, e.g.*, *In re Pratt*, 18 N.W.2d 147, 153 (Minn. 1945); *In re St. Paul & K.C. Grain Co.*, 94 N.W. 218, 225 (Minn. 1903). While protecting against the potential conflict of law that

could arise if one state's statute were to be applied to persons within the borders of another state, such a presumption also serves "to avoid running afoul of the Commerce Clause of the United States Constitution." *Union Underwear Co., Inc. v. Barnhart*, 50 S.W.3d 188, 193 (Ky. 2001) (holding that Kentucky Civil Rights Act does not apply extraterritorially and noting Commerce Clause concerns if it were to do so). *See also*, *Campbell v. Arco Marine, Inc.*, 50 Cal. Rptr. 2d 626, 632 (Cal. Ct. App. 1996) (holding no extraterritorial application of California Fair Employment Housing Act and citing Commerce Clause concerns). Indeed, the Minnesota legislature has overcome this presumption in the Worker's Compensation Act by specifically providing for its extraterritorial application. *See* Minn. Stat. § 176.041, subd. 2 (providing extraterritorial application for Minnesota employees who regularly perform duties in state but are injured out of state while working for same employer). The MHRA contains no such specific provision extending the application of the statute to persons outside the borders of the state.

To the contrary, however, the MHRA does contain explicit language indicating its intended application to the state of Minnesota and the persons within its borders. The "Declaration of Policy" of the MHRA states in relevant part that:

> It is the public policy of this state to secure for *persons in this state*, freedom from discrimination;
>
> (1) In employment because of race, color, creed, religion, national origin, sex, marital status, disability, status in regard to public assistance and age;

Minn. Stat. § 363.12, subd. 1 (emphasis added). The provision goes on to declare similar policy with respect to other areas in which the MHRA intends for "persons of this state" to be free from discrimination, *i.e.*, housing and real property, public accommodations, public services, and education.

To the extent that the employment provisions of the MHRA use the terms "person" and "employee," the Court does not conclude that the intention of the legislature has been modified in any way. *See* Minn. Stat. § 363.03, subd. 1. Rather, the use of the two terms correlates with the extension of the protections to individuals throughout the entire employment relationship, from hiring through termination. Because the protections extend to the hiring process, to refer to those not yet hired as employees would be obviously inaccurate. However, within the very definition of the term "employee," the legislature made it a point to reinforce the requisite connection with the state of Minnesota by stating: "An employee means an individual who is employed by an employer and who resides or works *in this state*." Minn. Stat. § 363.01, subd. 16 (emphasis added). Moreover, the requisite nexus with the state of Minnesota is further implied because a "person" protected under the employment provisions of the Act is attempting to become an "employee" under the Act, a classification with an explicit Minnesota nexus. If the Court were to read the statute as Plaintiffs argue, then the specific provisions and use of the term "employee" would have no meaning.

Plaintiffs direct the Court to two decisions as support for their contention that the MHRA should apply to all Plaintiffs in this case. The Court is not persuaded. In *Maness v. Star-Kist Foods, Inc.*, 1992 WL 541251 (D. Minn. Sept. 11, 1992), and *Counters v. Farmland Industries, Inc.*, 1988 WL 134800 (Minn. Ct. App. Dec. 20, 1988), the respective courts found the MHRA to apply; however, both courts engaged in a due process analysis, finding sufficient contacts with the state of Minnesota. In *Maness*, while the plaintiff was not a Minnesota employee at the time of suit, the alleged discrimination related to plaintiff's previous employment in Minnesota and his involvement with a Minnesota co-worker's lawsuit in Minnesota. In *Counters*, the plaintiff challenged his termination which occurred just after his transfer from Minnesota to

North Dakota. The transfer negotiations occurred in Minnesota, and the employer's reason for termination was that the employee failed to convince his family to move with him from Minnesota.

Even if the Court were to find either or both of these decisions to be instructive as to whether the MHRA provides for extraterritorial application, the Court does *not* find, under a due process analysis, sufficient contacts with the state of Minnesota with respect to the individual named Plaintiffs who neither lived nor worked in Minnesota. The fact that Cargill headquarters are located in and the contested company-wide policies emanated from Minnesota is insufficient to justify extraterritorial application, particularly when there is no evidence before the Court that Cargill could not otherwise be held accountable in the courts of other states where the named plaintiffs reside and/or work. *See, e.g., Union Underwear Co., Inc.*, 50 S.W.3d at 192-93 (rejecting location of employer's corporate headquarters as basis for extraterritorial application of state statute); *Campbell*, 50 Cal. Rptr. 2d at 632 (same); *Iwankow v. Mobil Corp.*, 541 N.Y.S.2d 428 (N.Y. App. Div. 1989) (holding no extraterritorial application for New York Human Rights Law and rejecting location of corporate headquarters as basis for jurisdiction). Accordingly, the Court shall dismiss the MHRA claims of those Plaintiffs who have neither lived nor worked in Minnesota, finding that the MHRA does not provide for extraterritorial application and that the facts of this case do not dictate otherwise.

### ii. MHRA Statute of Limitations

Defendant seeks to dismiss the MHRA claims of Plaintiffs who left the employ of Cargill before August 22, 2000, the outside limit of the one-year statute of limitation. In their brief, Plaintiffs maintain that the Court should consider Defendant's motion to be premature and permit further discovery before such issues can be addressed. They contend that the doctrines of waiver,

estoppel, and equitable tolling are within the Court's discretion and are appropriately considered under the facts of this case. Defendant maintains, however, that, to the extent that Plaintiffs have set forth any argument on this issue at all, Plaintiffs main theory in support of tolling is the continuing violation theory, a theory that Defendant maintains is wholly unavailing.

To the extent that Plaintiffs are relying on the application of waiver, estoppel, or equitable tolling, the Court finds that Plaintiffs have plead insufficient facts which, if proven, could support the application of any of the aforementioned doctrines. Plaintiffs have failed to articulate any basis upon which the Court could base a conclusion to apply either waiver or estoppel. With respect to the doctrine of equitable tolling, Plaintiffs likewise have directed the Court to no evidence of which they are aware or that they expect to discover which would warrant application of the doctrine. In general, the doctrine of equitable tolling is intended to relieve a plaintiff of the effect of a statute of limitations when the plaintiff becomes aware of the existence of his claim after the limitations period has run and through no fault of his own. Here, however, Plaintiffs have brought their claim after the limitations period has expired, apparently aware of the alleged discrimination against them. Plaintiffs make no contention that the information available was any different within the limitations period than at the time their claims were filed in order to explain the delay in filing. While further discovery may serve to provide information relating to the nature and extent of the alleged discrimination, the Court is not persuaded that the lack of such information deprived certain Plaintiffs of their ability to file a timely claim.

Finally, to the extent that Plaintiffs contend that the continuing violation theory should apply, the Court finds the MHRA claims of Plaintiffs who no longer worked for Cargill after August 22, 2000, to be time-barred. Plaintiffs' reliance on this Court's ruling in *Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 619-20 (D. Minn. 2000), is unavailing. In *Beckmann*, the Court

applied the continuing violation theory as set forth in *Jenson v. Eveleth Taconite Co.*, 130 F.3d 1287, 1302-03 (8th Cir. 1997), in order to "provide a remedy for past actions which operate to discriminate at the present time" (citation omitted). However, in this case, Plaintiffs have alleged no actionable discrimination against certain named individuals after their termination but within the time period of this lawsuit. While the facts of this case may allow for the application of the continuing violation theory for some individuals, no such violation can be shown to have continued for those employees who were terminated before the suit's time period began.

Accordingly, irrespective of the Court's ruling outlined above, the Court finds the MHRA claims of the following named Plaintiffs to be time-barred: Dawn Collins (October 1999); Ronald Garrus (July 1999); Cheneta Hughey (December 1997); Jacqueline Jenkins (September 1997); Keith Lewis (July 1999); Valerie Mason-Robinson (July 1998); Phyllis Reece (January 1999); Charles Scott (January 1998); Clintonia Simmons (July 1998); Tausha Tate (April 2000); Emily Tyler (August 5, 2000); and Sean Wright (July 2000).

**b. Claim of Disparate Treatment Under 42 U.S.C. § 1981**

Defendant also seeks to dismiss the § 1981 claims of four of the named Plaintiffs, maintaining that they are time-barred. Section 1981 claims brought in a Minnesota forum are generally subject to a six-year statute of limitations. *Woodson v. International Broth. of Elec. Workers Local 292*, 974 F. Supp. 1256, 1262 (D. Minn. 1997) (finding six-year statute of limitations to apply to § 1981 actions in light of *Wilson v. Garcia*, 471 U.S. 261, 267 (1985)). *See also Egerdahl v. Hibbing Comty. Coll.*, 72 F.3d 615, 618-19 (8th Cir. 1995) (finding Minnesota six-year statute of limitations to

apply to Title VI and IX claims given *Wilson*'s effect on § 1983 and § 1981 claims and the interest of uniformity and certainty under federal law).[1] Defendant contends, however, that because the current action is a putative *multi-state* class action, Plaintiffs' § 1981 claims should be subject to the statute of limitations of the state in which their claims arose. The Court disagrees.

Defendant places much emphasis on the dicta in *Chris N. v. Burnsville, Minnesota*, 634 F. Supp. 1402, 1411, n.12 (D. Minn. 1986), that describes the *Wilson* interest in uniformity to be *intra*state rather than *inter*state. However, the Court does not read *Chris N.* nor any other relevant case law to require the conclusion that Defendant would have the Court reach. Instead, the Court finds that, to the extent that *Wilson* is concerned with intrastate uniformity, such uniformity relates to those plaintiffs and their actions properly brought before a Minnesota forum. There is no argument before the Court challenging this Court's exercise of jurisdiction over the current matter. If any or all of the named Plaintiffs brought their suits individually in the District of Minnesota, jurisdiction over the § 1981 claim would be proper, and the individual Plaintiff would be afforded the six-year statute of limitations. The Court can see no reason why the result should be different simply because the Plaintiffs have brought their action as a putative class. Moreover, the fact that Minnesota has no borrowing statute requiring courts to look to the law of the state in which the cause of action arose underscores the apparent intent of the Minnesota legislature to afford the Minnesota statute of limitations for respective actions to *all*

---

[1] Defendant contends that *Woodson* is wrongly decided and that the more analogous state statute of limitations to be borrowed for a § 1981 claim is the one-year statute of limitations of the MHRA. The Court is not persuaded, and, in light of settled case law on the matter, shall apply Minnesota's six-year statute of limitations for personal injury claims. *Wilson*, 471 U.S. at 267; *Egerdahl*, 72 F.3d at 618.

plaintiffs properly before Minnesota courts. Accordingly, the Court finds the Minnesota six-year statute of limitations to apply to the § 1981 claims of each named Plaintiff, and Defendant's motion to dismiss certain Plaintiffs' § 1981 claims as time-barred is denied.

**2. Motion for Summary Judgment**

**a. Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

**b. Issues**[2]

**i. Ronald Garrus**

Defendant seeks summary judgment on Plaintiff Ronald Garrus' ("Garrus") claims in light of the release he signed upon his termination from Cargill. Generally, Minnesota courts look favorably upon settlement and find a release of claims to be presumptively valid. *Sorenson v. Coast-to-Coast Stores (Central Organization), Inc.*, 353 N.W.2d 666, 669 (Minn. Ct. App. 1984). In determining whether a release is valid, a court is guided by basic rules of contract construction. *Lancaster v. Buerkle Buick Honda Co.*, 809 F.2d 539, 541 (8th Cir.), *cert. denied*, 482 U.S. 928, 107 S. Ct. 3212, 96 L. Ed. 2d 699 (1987). The Court must consider the following factors: (1) the clarity of the language; (2) whether the release was supported by adequate consideration; (3) whether the release purports to settle claims unknown at the time of execution; (4) whether the challenging party was permitted to change language in the release; and (5) whether counsel was present during negotiation of the release. *Somora v. Marriott Corp.*, 812 F. Supp. 917, 921 (D. Minn. 1993) (citations omitted). Simply because a party fails to appreciate the legal ramifications of a release does not render it invalid, providing the party is aware of its terms and makes no allegation of fraud. *Id.* (citing *Dolgner v. Dayton Co.,* 235 N.W. 275, 277 (1931)).

Garrus does not dispute the effect of the plain language of the release; however, he contends that the release was signed under duress, *i.e.*, not knowingly or willfully, and thus that his waiver is invalid. Plaintiff Garrus attempts to raise a dispute of this fact by directing the

---

[2] Defendant's original motion sought summary judgment on the claims of Plaintiff Charles Scott; however, in its Reply Memorandum, Defendant defers its motion to a later date following discovery. As such, the Court will not address any of the parties' arguments with respect to Plaintiff Scott.

Court to allegations that he was told he had no choice but to sign the agreement, that he should not review the document with counsel, and that he would suffer adverse action if he did not sign the release. In addition, Garrus alleges that he was publicly humiliated at a staff meeting after he signed the release. While the Court is not persuaded that such facts raise a sufficient dispute, as a matter of law, outweighing Mr. Garrus' education and business experience, the clarity of the language of the release, and his awareness of his right to review the document with counsel, the Court finds the failure of Mr. Garrus to rescind or attempt to rescind the release within the release's 15-day recission period to be determinative. Even assuming Plaintiff's allegations to be true, in light of Mr. Garrus' undisputed experience, his stated awareness of his right to review the release with counsel, and the undisputed clarity of the release, there is no evidence that could establish that any duress he may have felt in signing the release continued throughout the period during which he could have rescinded it. To determine now that Mr. Garrus can proceed with his claims would defeat the purpose of the recission period and render the provision ineffectual. The Court declines to do so and, accordingly, finds that summary judgment is appropriately entered against Plaintiff Ronald Garrus.

**ii. Hollis Branham**

Defendant also seeks summary judgment on the claims of Plaintiff Hollis Branham ("Branham"), maintaining that his termination was the result of an objective performance review and that two members of a non-protected class were also terminated while two members of a protected class were retained, one person who is black and one who is Hispanic. The Court declines to issue summary judgment at this time. The very practices challenged by Plaintiffs are those used to implement the RIF affecting Mr. Branham. To say that Mr. Branham was terminated subsequent to an evaluation using objective factors ignores the very essence of

Plaintiffs' claims. Moreover, the fact that non-protected individuals were terminated while similarly situated individuals were retained does not necessarily defeat Mr. Branham's claim. In light of Plaintiffs' allegations, without evaluating the results of the review process and how they affected the standing of each individual within the department–whether retained or not–neither party can draw a valid conclusion as to whether the process was indeed objective or discriminatory. Simply because protected individuals were retained does not mean that they were evaluated fairly in comparison to those non-protected individuals who were also retained. The Court finds that discovery is necessary to determine whether the claims of Plaintiff Hollis Branham remain viable.

**iii. Toya Brown**

Finally, Defendant seeks summary judgment on the claims of Plaintiff Toya Brown ("Brown"), contending that she fails to allege sufficiently intolerable working conditions to establish a claim of constructive discharge. The Court finds it premature to determine whether Ms. Brown's allegations could support a claim of constructive discharge; nonetheless, the Court also does not read Plaintiffs' Complaint to limit Ms. Brown to that single claim. Defendant's challenges to the sufficiency of the relevant facts go to the very heart of Plaintiffs' allegations. It is entirely premature to conclude that the very practices and Plaintiffs challenge do not result in channeling African-American employees, such as Ms. Brown, to divisions in areas that do not provide the continued opportunities for advancement that might be otherwise available in larger metropolitan areas. The fact that Ms. Brown's supervisor in Illinois would have been an African-American woman, while arguably a benefit in certain respects, could in fact underscore the very discrimination of which Ms. Brown seems to be complaining. The Court makes no determination at this time as to the ultimate viability of Ms. Brown's claims; however, the Court

does conclude that discovery is necessary to determine whether such claims should rise or fall on their merits. Accordingly, the Court declines to issue summary judgment on the claims of Plaintiff Toya Brown, except as otherwise provided in this order.

### 3. Motion to Strike

Defendant's final motion is a motion to strike various statements from the Complaint, contending that they are immaterial, impertinent, and scandalous. Specifically, Defendant identifies statements relating to: (1) discriminatory attitudes and statements attributed to former management; (2) the *Foster* Consent Decree–a class action settlement of claims similar to those brought in the current action; (3) Title VII; (4) disparate treatment in conjunction with the claims under § 1981; and (5) Cargill's reported sales and income. By their responsive papers, Plaintiffs agree to strike the reference to Title VII; however, they oppose Defendant's motion with respect to all other contested statements.

Under Fed. R. Civ. P. 12(f), "the [C]ourt may order stricken from any pleading . . . any redundant, immaterial, impertinent, or scandalous matter." With the exception of the reference to Title VII, the Court declines to strike any of the statements contested by Defendant. In light of the claims set forth by Plaintiffs, the Court finds that Plaintiffs' statements regarding former management, the *Foster* Consent Decree, and Cargill's sales and income to be potentially relevant context evidence to the alleged discrimination. While the Court agrees that certain evidence pre-dating the time period properly covered by the current lawsuit may not constitute actionable behavior from which damages may be calculated, the Court does find that some such evidence may prove to be relevant context evidence of the alleged pattern and practice at the base of the current suit. With respect to Defendant's contest of Plaintiffs' use of the terms disparate treatment and disparate impact, the Court does not find such usage to be prejudicial. Plaintiffs

have alleged both a claim of disparate impact and a claim of disparate treatment. While the Court has dismissed some of Plaintiffs' claims of disparate impact under the MHRA, both theories remain viable at least with respect to certain Plaintiffs. The Court does not read Plaintiffs' Complaint to misconstrue the nature of either claim nor to require any cleansing of impertinent or prejudicial characterizations of the law. In conclusion, Defendant's motion to strike is denied, with the exception of the single reference to Title VII which Plaintiffs have agreed to amend accordingly.

For the reasons stated, **IT IS HEREBY ORDERED** THAT:

1. Defendant's Partial Motion to Dismiss (Doc. No. 10) is **GRANTED IN PART** and **DENIED IN PART**, such that:

   a. Count I is **DISMISSED WITH PREJUDICE as to PLAINTIFFS SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, VIRGINIA DOUGLAS, RONALD GARRUS, CHENETA HUGHEY, JACQUELINE JENKINS, KEITH LEWIS, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, AND SEAN WRIGHT**; however Count I remains as to all other named Plaintiffs and Count II remains as to all named Plaintiffs, except as otherwise stated below;

2. Defendant's Motion for Partial Summary Judgment (Doc. No. 10) is **GRANTED IN PART AND DENIED IN PART**, such that:

   a. Counts I and II are **DISMISSED WITH PREJUDICE as to PLAINTIFF RONALD GARRUS**; and

3. Defendant's Motion to Strike (Doc. No. 10) is **DENIED**.

Dated: July 15, 2002

DONOVAN W. FRANK
Judge of United States District Court