**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Civil No. 01-2086 (DWF/AJB)

Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**

Cargill Incorporated,

Defendant.

---

Lawrence P. Shaefer, Esq., Susan M. Coler, Esq., and Teresa Kathleen Patton, Esq., Sprenger & Lang, 325 Ridgewood Ave., Minneapolis, MN 55403; Michael P. Lieder, Esq., Paul Carl Sprenger, Esq., and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th St. NW, Washington, DC 20009, counsel for Plaintiffs.

Holly S. A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan, Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney, 50 6th St. S., Ste. 1500, Minneapolis, MN 55402-1498, counsel for Defendant.

Peter N. Thompson, Esq., Hamline Law School, 1536 Hewitt Ave., St. Paul, MN 55104, Special Master.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 23, 2004, pursuant to Defendant Cargill, Incorporated's ("Cargill") Motion for Summary Judgment on the Claims of Louis Darden and Cargill's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims. In the Class Action Complaint, Plaintiffs raise the following claims against Cargill: (1) race discrimination in violation of 42 U.S.C. § 1981; (2) disparate impact discrimination under Minn. Stat. § 363.03, subd. 11. For the following reasons, Cargill's Motion for Summary Judgment on the Claims of Louis Darden is granted; Cargill's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims is denied.

## Background

Cargill is a large, privately held corporation with diverse business operations located throughout the world. Cargill's subsidiaries and affiliates include entities involved in the marketing, processing, and distribution of agricultural, food, financial, and industrial products and services. Plaintiffs are a putative class of African-American past and present managerial and professional salaried employees of various Cargill subsidiaries. By their Complaint, Plaintiffs allege that Cargill discriminated against them by way of advancement, compensation, and termination practices. Specifically, Plaintiffs allege a claim of disparate treatment under 42 U.S.C. § 1981 and a claim of disparate impact under the Minnesota Human Rights Act, Minn. Stat. § 363.01, *et seq* ("MHRA").

The specific claims at issue here relate to the termination of Louis Darden and to the alleged constructive discharge of several other plaintiffs, including Nii-Akwei Acquaye, Toya Brown, Dawn

Collins, Virginia Douglas, Jacqueline Jenkins, Keith Lewis, Michael Mitchell, Valerie Mason-Robinson, Tonya Ross, Clintonia Simmons, Tausha Tate, Emily Tyler, Anthony McDowell and Vivian Little.

## I. Louis Darden

Louis Darden, a mechanical engineer, began working at Cargill in 1977. During his 23 years with Cargill, he worked for four divisions of Cargill: (1) Oilseeds in Memphis, Tennessee; Wichita, Kansas; and Norfolk, Virginia; (2) Fertilizer in Tampa and Hookers Prairie, Florida; (3) Salt in Cleveland, Ohio; and (4) Excel in Newnan, Georgia. Darden asserts that he witnessed and was subject to a pattern and practice of discrimination against African-American employees during his time at all of these facilities. Specifically, Darden contends that he was denied advancement opportunities, "effectively demoted," and paid less than his white counterparts.

### A. Darden's Termination

Relative to this motion, Darden was involved in an incident while employed at the Salt facility in Cleveland that ultimately resulted in his termination. Darden was employed as a Surface Superintendent at the Salt facility from 1997 until May 2000. During Darden's time at the Salt facility, Todd Smith, an engineer, reported that a local contractor, Gillespie Construction, had claimed that Cargill owed it $41,000 for a cost overrun on a project. According to Darden, Smith and Darden met with Plant Manager Ken Grimm about the situation, and Grimm told Smith and Darden to meet with Gillespie and find a way to solve the problem.

Darden met with a Gillespie representative. Ultimately, Darden devised a system whereby he would transfer some old equipment to Gillespie and also pay Gillespie the high bid on a project rather than accept a low bid. Darden asserts that Grimm was aware of this situation and that Darden engaged

in these activities with the approval of management and of Grimm. However, Darden later acknowledged that Grimm had left employment at the Salt facility when Darden engaged in the activities to repay Gillespie for the initial cost overrun.

In May 2000, Darden transferred to the Excel facility in Newnan, Georgia. At the time of his departure, Darden left a memorandum for his replacement explaining the manner in which the cost overrun had been handled. Darden contends that he wanted to make sure that Gillespie did not attempt to overcharge Cargill when the matter had already been resolved.

In May 2001, Cargill investigated the payments that had been made to Gillespie. On May 9, 2001, Darden signed a statement for Cargill Corporate Security regarding the matters with Gillespie (the "Statement"). The Statement read:

> I, Louis Darden, do hereby freely and voluntarily provide the following information to Michael Suter, Cargill Corporate Security Department, without any promises, assurances, guarantees or threats made to me.
>
> Currently I am employed as the Maintenance Manager at Excel's Further Processing Plant in Newnan, Georgia. Previously, I worked at Cargill's Salt facility in Cleveland, Ohio. Between 1997 and May, 2000 [sic] I worked as Surface Superintendent at the Cleveland Salt Mine.
>
> My job as Surface Superintendent involved handling the surface production of salt from the mine. Additionally, my responsibility was for working closely with various contractors on various plant, construction, mechanical and electrical projects.
>
> I would like to acknowledge that I worked with the Gillespie Company on various plant improvement projects. In this regard one project involved Gillespie creating a natural base for the three scale pits at the Cleveland mine. Specifically this was done to keep the scales from settling. A part of the project involved the [illegible] in of and adding of 304 grade stone. Gillespie purchased the 304 stone for this project from Ontario Stone Co. in Cleveland. Towards the end of this project in the fall of 1997, Gillespie advised they had incurred a $41,000 cost overrun on the scale pit project. More specifically, I learned that they claimed they had used $41,000 more in

stone than was originally anticipated that the project would require. Thereafter Todd Smith, engineer, and myself performed an extensive review to ensure the additional $41,000 in stone had actually been required and installed. Based on engineering calculations and bore drillings we concurred that Gillespie had actually placed an amount of stone into the project equal to $41,000 worth of 304 stone.

Almost immediately from the first notification of the scale pit $41,000 cost overrun I was under tremendous pressure and scrutiny from Ken Grimm, plant manager. As a result of this pressure I chose to pay off the Gillespie Company in a means that was not normal and clearly wrong and against Cargill policy. In this regard to slowly pay off Gillespie they were allowed to bid on certain plant projects. Sometimes and although they were the high bidder I assigned the project to them. By awarding them the project the difference in Gillespie's higher bid to the lowest bid on certain projects would be used as a credit payment to reduce the $41,000 they were owed. Other times on certain invoices such as Gillespie invoice no 205265, marked exhibit no 1, the amount of $5,000 for change order 8058.1 was falsely added on to increase the amount of the project for which Gillespie would be paid. However, the change order of 8058 does not correctly reflect on invoice 205265 the total cost or work actually performed. The change order as a false entry was agreed upon between Kirkpatrick and myself.

Between the two methods of manipulating Gillespie records which I just described and for which I approved William Kirkpatrick, Operations Manager for Gillespie to submit, this eventually paid off Gillespie in full. Again although projects were awarded to Gillespie that should not have been I did so because of the increased pressure to maintain costs on Cargill projects. This is not a justification for what I did but is nonetheless a truthful and accurate portrayal of what occurred in regards to the $41,000 project overrun.

Additionally and for the record I recall the concrete work on the brine project was another project whereby Gillespie was a higher bidder on this project. Again the difference between Gillespie's bid and the low bid was used as another credit to reduce the $41,000. Another credit that was agreed to with Kirkpatrick and Gillespie was a Hitachi excavator that they received from Cargill. This piece of equipment was essentially traded to Gillespie whereby the outstanding debt was reduced by several thousand dollars.

I would also add that I was informed by Ken Grimm that a [illegible] amendment would not be allowed. Specifically this referred to allowing for accepting the $41,000 in additional costs Gillespie alleged they were owed.

(Affidavit of Wilda Wahpepah ¶ 6, Ex. 5.) The Statement was signed by Louis Darden and witnessed by C.M. Suter of Cargill Corporate Security.

Darden asserts that he did not want to sign the statement initially because it omitted some of the facts of the situation, but Darden admits that he read the Statement before he signed it and that he initialed each page with his approval. Darden contends that he reluctantly signed the statement because he wanted to refute Gillespie's claims that Cargill owed it money and because he was pressured by Suter. Soon afterward, Darden was terminated from his position at Cargill.

### B. Darden's Compensation and Promotion Claims

Darden asserts that while he was employed at Cargill, Cargill engaged in a pattern and practice of discrimination with regard to promotions and compensation. Although Darden names several Cargill employees who allegedly earned more or were otherwise treated differently than himself, Darden provides the Court with no specific information as to the details of the promotions and compensation that he challenges as discriminatory.

## II. Plaintiffs' Constructive Discharge Claims

Fourteen of the twenty-six named Plaintiffs have sought relief for constructive discharge (collectively, the "Constructive Discharge Plaintiffs"). The Constructive Discharge Plaintiffs worked in nine different states and eleven separate locations at the time that they resigned. Cargill asserts that the circumstances regarding these Plaintiffs' resignations all reflect that the Plaintiffs voluntarily resigned from Cargill and have not established claims for constructive discharge.

## Discussion

### I. Timing of Summary Judgment Motions

Plaintiffs contend that the Court should not hear Cargill's current motions until after the Court has decided the class certification issue. Plaintiffs contend that the Court should defer decision on Cargill's motions because the matter has been filed as a class action alleging a pattern and practice of discrimination, and Plaintiffs are entitled to a presumption of discrimination for these claims until the Court can evaluate the class-wide issues.

In support of this contention, Plaintiffs rely on the Eighth Circuit's decision in *Craik v. Minnesota State University Bd.*, 731 F.2d 465 (8th Cir. 1984). *Craik* involved a claim for gender discrimination related to promotions and compensation among females who had been employed in a teaching capacity at Saint Cloud State University. *See id.* at 468. After a bench trial, the magistrate judge entered judgment in favor of the defendants, finding that they had not discriminated against the class or the named plaintiffs. The Eighth Circuit determined that, at trial, the magistrate judge had not followed the order of proof required for class action employment discrimination claims. *See id. at 471.*

As determined by one other court in this district, however, *Craik* is distinguishable procedurally because it involved a post-trial judgment. *See Zmora v. State of Minnesota*, 2002 WL 539075 at *4-5 (D. Minn., Kyle, J.). Thus, Craik does not prohibit this Court from determining, prior to class certification, whether a named plaintiff's individual claims must be dismissed because there are no disputed issues of fact that create a genuine issue for trial. *See id.* at *5 (citing *In re Milk Prods. Anitrust Litig.*, 195 F.3d 430, 435-36 (8th Cir. 1999)).

## II. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences which may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *See Enterprise Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" Fed. R. Civ. P. 1. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *See Enterprise Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *See Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## III. Louis Darden

Plaintiffs argue that this motion is untimely and should be delayed until further discovery can take place. The Court finds that Plaintiffs' argument is misplaced. Nothing prevented Plaintiffs from conducting further discovery on Darden's claims prior to the time of this motion. In addition, the Court finds that no amount of discovery would create a genuine issue of fact related to the Statement signed

by Darden wherein he admitted to falsifying invoices and violating company policy. Thus, it is appropriate for the Court to address this motion at this time.

In order to establish a *prima facie* case of race discrimination, Darden must demonstrate that: (1) he was a member of a protected group; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). As to the fourth prong, Darden bears the burden to demonstrate by a preponderance of the evidence that there were individuals similarly situated in all respects to him who were treated differently. *See Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003). Cargill argues that Darden has failed to demonstrate a *prima facie* case of racial discrimination under 42 U.S.C. § 1981 because he cannot show that similarly situated employees were treated differently. The Court agrees.

Darden has not set forth any instances where a similarly situated employee engaged in similar conduct as Darden–falsifying invoices and otherwise violating company policies–but was not terminated. In fact, Darden admits that he terminated a white individual under his supervision who violated Cargill policy. Darden suggests that his supervisor, Grimm, and Smith, the engineer, were not terminated for their involvement in the situation. However, Darden has not established that Grimm and Smith were similarly situated in all respects. *See Gilmore* at 1046. Darden admits that neither Grimm nor Smith worked at the Salt facility when the false invoices were submitted. Further, Darden has not established that Smith and Grimm engaged in conduct that was as serious as that of Darden. On these bases, Darden has not demonstrated a *prima facie* case of race discrimination.

Even if Darden had established a *prima facie* case of race discrimination, the Court finds that Cargill has offered a legitimate reason for its employment decision to terminate Darden. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Darden was terminated for violating company policy by manipulating bidding, falsifying invoices, and paying for work that was not performed by Gillespie. Darden does not dispute these violations and, in fact, signed a statement acknowledging these incidents on May 9, 2001. Darden argues that his Statement was "coerced" and attempts to place blame on his supervisor, who was allegedly aware of his actions. However, Darden only specifically alleges that Grimm told Darden to meet with Gillespie to resolve the overrun. Darden also does not dispute that the Statement accurately reflects his actions related to paying Gillespie for the cost overrun. Darden has provided the Court with nothing to contradict the facts alleged in his Statement. The record supports Cargill's assertion that Darden was terminated due to violating company policy. Further, Darden has failed to set forth any evidence to support his assertion that Cargill's reason for terminating Darden was pretextual. As such, summary judgment is appropriate on Darden's claim related to the termination.

The Court also finds that summary judgment is appropriate on Darden's claims insofar as they are related to compensation or promotions. Aside from a general list of employees who may or may not have been compensated or promoted differently, Darden has provided the Court with no specific information by which the Court could determine that these employees were similarly situated to Darden in all respects. *See Gilmore* at 1046 (citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).

The Court does not reach the issue of whether the dismissal of the claims against Darden will reduce the class by 10-15%, as asserted by Cargill.

**IV. Plaintiffs' Constructive Discharge Claims**

Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to quit his job. *See Jackson v. Ark. Dept. of Educ.*, 272 F.3d 1020, 1026 (8th Cir. 2001) (citing *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998)). In addition to showing that the working conditions were subjectively intolerable, the employee must demonstrate that a reasonable person, from an objective viewpoint, would find that the working conditions intolerable. *Id.*

Cargill has moved for summary judgment on the constructive discharge claims of Virginia Douglas, Toya Brown, Jacqueline Jenkins, Valerie Mason-Robinson, Tonya Ross, Emily Tyler, Nii-Akewi Acquaye, Keith Lewis, Michael Mitchell, Clintonia Simmons, Tausha Tate, Anthony McDowell, Vivian Little, and Dawn Collins. Cargill contends that these Plaintiffs have not established a cause of action for constructive discharge because they quit their positions at Cargill to take better jobs, they stayed at Cargill for months after the allegedly intolerable events occurred, or they left Cargill at a time of their own choosing.

Without addressing the question of the timeliness of this motion in light of the pre-certification discovery schedule, the Court finds that the Plaintiffs' constructive discharge claims survive summary judgment. Plaintiffs' constructive discharge claims relate to an alleged pattern and practice of retention problems with African-American employees at Cargill. With this framework in mind, the Court finds that genuine issues of material fact exist as to whether the working conditions and alleged racial discrimination at Cargill were deliberate and intolerable and effectively forced Plaintiffs to quit their

jobs. In light of these considerations, Cargill's motion for summary judgment on Plaintiffs' constructive discharge claims is denied.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment on the Claims of Louis Darden (Doc. No. 187) is **GRANTED.**

2. Defendant's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims (Doc. No. 195) is **DENIED.**

Dated: May 28, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court