**Bill Douglas**

**From:** "Larry Schaefer" <LSchaefer@sprengerlang.com>
**To:** "'Bill Douglas'" <billd@goldengate.net>
**Sent:** Friday, April 20, 2001 8:08 AM
**Subject:** RE: Privledged & Confidential

EXHIBIT C-4

Thanks, Bill. I'm planning to meet with you today at 10 am. Does this still work?

Larry

-----Original Message-----
**From:** Bill Douglas [mailto:billd@goldengate.net]
**Sent:** Thursday, April 19, 2001 9:06 PM
**To:** Larry Schaefer
**Cc:** WWide48@aol.com
**Subject:** Privledged & Confidential

Larry,
Attached is a document I received from a current black Cargill ee who was asked to respond to the survey. It is imperative that this document be used only as a reference info and not included or mentioned specifically in the proceedings with Cargill. Otherwise, it is quite likely the source would be revealed!

NOTICE OF CONFIDENTIALITY

THE MESSAGE CONTAINED IN THIS E-MAIL TRANSMISSION MAY CONTAIN ATTORNEY PRIVILEGED AND CONFIDENTIAL INFORMATION AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.

The information in this communication is intended solely for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, any dissemination, distribution, copying or other use of the information contained in this communication is strictly prohibited. If you have received this communication in error, please first notify the sender immediately and then delete this communication from all data storage devices and destroy all hard copies.

Email: mailError@sprengerlang.com

Minneapolis Phone:(612) 871-8910

DC Phone:(202) 265-8010

Thank you.

RBD 100317

# Management Profile Survey

A group from the 2000/2001 Cargill Leadership Development Program (CLDP) is assisting Cargill's Valuing Differences Initiative (VDI) by evaluating methods, tactics and concepts that will help managers broaden their skills regarding valuing differences.

This survey's purpose is to inventory individual characteristics of BU management personnel. The results will be used to explore correlations between diversity and Business Unit (BU) performance. In addition, the results will be used to develop more widely applicable methods for generating data to provide positive motivation for VDI.

We appreciate your willingness to help us with this project. For the following 11 questions, please provide accurate and complete responses. Estimated time required for completion is 5 minutes.

**Please circle one response for each question.**

1. How many years have you worked at Cargill (if you have worked for Cargill for two or more non-consecutive time periods, please indicate total years at Cargill)?

   A. Less than 1 year
   B. 1 to 3 years
   C. 4 to 7 years
   D. 8 to 15 years
   E. 16 to 25 years
   F. 25 or more years

2. What percentage of your total years with Cargill have you worked outside your current Business Unit or Functional Group? (disregard Unit or Group name changes for administrative purposes)

   A. 0% (this is the only Cargill Business Unit or Functional Group in which you have worked)
   B. 1% to 20%
   C. 21% to 40%
   D. 41% to 60%
   E. 61% to 80%
   F. 81% to 100%

3. When first hired by Cargill, were you hired as either (or U.S. equivalent of):

   A. Exempt (you did not receive compensation for overtime work)
   B. Non-Exempt (you did receive compensation for overtime work)

4. What percentage of your total years with Cargill have you worked in the Minneapolis Headquarters or in the Minneapolis area (Wayzata, Crosstown, Interchange, Freshwater, Clearwater, Port Cargill)?

~~A. 0% (You have never worked for Cargill in the Minneapolis area)~~
B. 1% to 20%
C. 21% to 40%
D. 41% to 60%
E. 61% to 80%
F. 81% to 100%

5. What percentage of your total professional career have you been on an ex-patriot assignment (receiving compensation and benefits designated as ex-patriot of the United States or other country)?

~~A. 0% (I have never had an ex-patriot assignment)~~
B. 1% to 20%
C. 21% to 40%
D. 41% to 60%
E. 61% to 80%
F. 81% to 100%

6. How many years of your total professional career have you worked for an employer other than Cargill (please do not count summer or other part time jobs during any level of education or teaching assistantships during college)?

~~A. 0 (I have not worked anywhere but at Cargill)~~
B. less than 1 year
C. 1 to 3 years
D. 4 to 7 years
E. 8 to 15 years
F. 16 to 25 years
G. 25 or more years

7. What is the highest level of education you have completed:

A. Less years than U.S. High School, GED or equivalent
B. U.S. High School, GED or equivalent
C. U.S. Bachelor's Degree, 4-year degree or equivalent
~~D. U.S. Master's Degree or Equivalent~~
E. U.S. Doctor of Philosophy, Doctor of Science, Juris Doctor or equivalent

8. From the list below, where did you go to High School? If you did not go to High School, which of the following best describes the location where you last attended school?

   A. U.S. North East (CT, DE, DC, MA, MD, ME, NH, NJ, NY, PA, RI, VT)
   B. U.S. South East (AL, AR, FL, GA, KY, LA, MS, NC, SC, TN, VA, WV)
   C. U.S. Mid West (IA, IL, IN, KS, MI, MN, MO, ND, NE, OH, SD, WI)
   D. U.S. North West (CA, CO, ID, MT, NV, OR, UT, WA, WY)
   E. U.S. South West (AZ, NM, OK, TX)
   F. U.S. outside the 48 contiguous states (AK, HI); or US territory
   G. Outside the U.S.

9. **If you did not attend college, please skip to Question 11.**
   Where did you complete your US Bachelor's Degree, 4-year college degree, or equivalent?

   A. U.S. North East (CT, DE, DC, MA, MD, ME, NH, NJ, NY, PA, RI, VT)
   B. U.S. South East (AL, AR, FL, GA, KY, LA, MS, NC, SC, TN, VA, WV)
   C. U.S. Mid West (IA, IL, IN, KS, MI, MN, MO, ND, NE, OH, SD, WI)
   D. U.S. North West (CA, CO, ID, MT, NV, OR, UT, WA, WY)
   E. U.S. South West (AZ, NM, OK, TX)
   F. U. S. outside the 48 contiguous states (AK, HI); or US territory
   G. Outside the U.S.

10. If the highest level of education you received is greater than U.S. High School, GED or equivalent, did you major area of study include any of the following: Agronomy, Agricultural Economics, Farm Management, non-human Animal Nutrition or any other Agricultural related major?

   A. Yes
   B. No

11. In addition to English, how many languages do you speak fluently? For this survey, fluent means you are able to prepare, deliver and receive written and verbal business communications with little or no assistance with language skills.

   A. 0
   B. 1
   C. 2 or more

12. Where do you currently work?

   A. Eddyville

B. Blair
C. Cedar Rapids
D. Dayton
~~E. Memphis~~
F. Wahpeton
G. Mpls.

Thank you again for your participation! Please return the completed survey by Friday, April 20th to:

Scott Naatjes
Fax: 952-742-8316, or
Cargill Office Center, Tax Department, Mail Stop 26

**Bill Douglas**

**From:** "Bill Douglas" <billd@goldengate.net>
**To:** "Larry" <lschaefer@sprengerlang.com>
**Cc:** <WWide48@aol.com>
**Sent:** Tuesday, October 23, 2001 11:07 PM
**Attach:** Cargill Products.xls; Cargill Draft.doc
**Subject:** Privledged & Confidential

Larry,

As I thought all along and contrary to many others, Cargill has elected to fight the discrimination action! (Dwayne informed me) It is Cargill's imprimatur to react this way, even with overwhelming evidence to the contrary, especially when to do otherwise would mean some one would have to accept primary responsibility for the action to have been initiated; there aint no body around who's going to do that heavy lifting!!

In anticipation of this thing moving into litigation, I have some thoughts and suggestions about how to proceed in the news media domain. I'm attaching a "stream of consciousness" draft of the elements the press release should contain. Additionally, as I suggested to Duane, it should be published with two major audiences in mind. The first is the food and beverage industry to whom Cargill is a mega supplier and whom Cargill courts for ever increasing business in value-added ingredients--see attached spread sheet. The second is the producer or farmers from whom Cargill buys its raw ag commodities. These include wheat, corn, soy bean, barley, etc. producers as well as live stock producers--feedlots, cattle, hog, and turkey producers. It is with these two publics that Cargill has greatest concern surrounding its image, reputation, and credibility as a fair and trusted seller and buyer, respectively!! With major customers such as Coke, Pepsi, Kraft, Miller, Coor's Anhuiser Busch, et.el. any publicity surrounding a discrimination suit, indirectly casts aspersions on them for using such a supplier. Veiled, subtle, and/or direct pressure from consumer brand companies having significant black and or minority markets can be persuasive.

,uane can properly supply you with the regions of the country where a press release will have the greatest and most significant audience with producers, farmers, etc.; while the major news media should get the news out to Cargill's major food and beverage customers--WSJ, NYT, Star and Tribune, SF Chronicle and major black newspapers in Atlanta, Chicago, Fla. and NY. There's a chance that Jesse Jackson's Push Organization might take Cargill to task as they did on a matter several years ago at a chicken processing plant in Buena Vista Ga. Also the NAACP may take an interest in Cargill's world, once it knows of its existence. Duane also mentioned sending a copy to Paul Wellstone, MN's Sr. Senator, who has no love for Cargill and whom Cargill loves even less!

From my past experiences with the Foster Action, Cargill does not want its dirty laundry sunshined to the world as well as its business, commercial and financial info! A press release containing the elements in my draft will be a humbling, embarrassing and humiliating experience not only for the company but the family members as well! THEY HAVE EARNED EVERY BIT OF IT WITH THEIR NEANDERTHAL CULTURE IN THE 21ST CENTURY! There will be a 'blood letting", then cooler heads will prevail. TRUST ME!!!!!!!

I'll follow-up with a call; I also am tentative on the Nov 3rd meeting because of family health matters.

RBD 100322

Page 1 of 1

**Bill Douglas**

**From:** "Bill Douglas" <billd@goldengate.net>
**To:** "Larry" <lschaefer@sprengerlang.com>
**Sent:** Thursday, November 01, 2001 10:43 PM
**Attach:** Cargill Draft1.doc; Cargill Products.xls
**Subject:** Privledged & Confidential

Larry,

Attached are the product/customer list and a draft (rough) press release language. I've revised them from the 1st pass based on info obtained from others as well as info from the Cargill web site. The site has some very revealing info and your press release writers should access it.

8/18/03

## CARGILL CUSTOMERS/PRODUCTS–preliminary

| CUSTOMERS | Ingredient/Products | Major Industries |
|---|---|---|
| Anheuser Busch | Animal Livestock feed | Agricultural Commodity Processors |
| Burger King | Beef | Bakeries |
| Coca Cola | Citrates | Brewing |
| Coor's | Coca & Chocolate | Candy & Confectionary |
| Dominos | Corn Flour | Cereal Makers |
| General Mills | Corn Syrup | Cities & Municipalities |
| Heineken Brewing | Food Starchs | Cruise Lines |
| Heinz | High Fructose Sweeteners | Fast Food Chains |
| Hershey Foods | Lecithin | Food Purveyors |
| Holland America | Malting Barley | Fruit Juice |
| Kellogg's | Orange Juice | Grocery Chains |
| Kentucky Fried Chicken | Pasta | Pharmaceutical |
| Kraft Foods | Peanuts | Processed Food |
| Kroger | Pork | Retail |
| Land O' Lakes | Processed Eggs | Snack Food |
| M&M Mars | Salt | Soft Drink |
| Mac Donald's | Turkeys | Spirit Distillers |
| Miller Brewing | Vegetable oils | Wholesale beef & Pork distributors |
| Minute Maid | Vitamin E | Wholesale poultry distributors |
| Nestle's | Wheat Flour | |
| Ocean Spray | | |
| PepsiCo | | |
| Pillsbury | | |
| Pizza Hut | | |
| Popeye's | | |
| Proctor & Gamble | | |
| Quaker Oats | | |
| Royal Caribbean | | |
| Stroh's Brewing | | |
| Sysco | | |
| Tropicana | | |
| Wal Mart | | |

RBD 100324

Cargill, Inc, the 136 year old privately held marketer, processor, and distributor of agricultural, food, financial and industrial services giant, headquartered in the woods of Wayzata MN, was served with an employment discrimination class action lawsuit, by Sprenger & Lang, on behalf of twenty-two current and former black Cargill employees/plaintiffs charging from among other things.................... Among other things, the "quiet giant" is a multinational *"behind the scenes middleman"* food ingredient supplier [with 90,000 ees in 57 countries *around the world,and with annual gross sales revenues approaching $50 billion dollars*] to major packaged food, soft drink/beverage, brewing, fast food, and candy making companies around the world. [*While Cargill is a "behind the scenes middleman supplier" with few consumer products carrying its name, food and beverage ingredients it processes from corn, wheat, peanuts, oranges,, soy beans, sun flowers, coca beans, malting barley, etc, can be found in the finished products of major food and beverage companies' consumer brands around the world. Major customers[ include Coke, Pepsi, Miller, Anheuser Busch, Mac Donald's, Dominos, Wal Mart, just to name a few] range from packaged and fast foods to soft drinks, fruit juices, malt beverages, and confectionary products. of major brand name companies' consumer products around the world!*] While it has few consumer products carrying its name, ingredients it processes from base agricultural commodities and livestock can be found in packed and fast foods, soft drinks, malt beverages, and confectionary products of major brand name companies' consumer products around the world! This is the second time in the past 20 years that the Law Offices of Sprenger & Lang has represented current and former black Cargill employees charging unlawful discriminatory employment policies and practices class-wide. The first action was settled out of court through a consent decree in 1986!!!!!!!!!!

## Bill Douglas

**From:** "Bill Douglas" <billd@goldengate.net>
**To:** "Larry" <lschaefer@sprengerlang.com>
**Sent:** Sunday, November 04, 2001 12:51 AM
**Attach:** Cargill Draft4.doc; Cargill Products.xls
**Subject:** Press Release–Privledged & Confidential

Larry,

Yet another revised press release draft and customers/products spreadsheet. I've incorporated inputs from those at the Saturday, 11/3/01 meeting. The language in the draft will be viewed by Cargill Mgmnt as negative characterizations and references of the company and the image it has worked so hard to portray to its publics. The draft language is a veritable "pin-cushion" of carefully chosen words and characterizations aimed at evoking the deepest of visceral pains; and as such, I strongly suggest that as much as possible, don't chop it up. Believe me it will strike a nerve they didn't know they had and get the full attention of the Lake Office second floor!!!!!!!!!!

RBD 100328

DRAFT PRESS RELEASE 8/18/03

Cargill, Inc, the 136 year old privately held marketer, processor, and distributor of agricultural, food, financial and industrial services was served with an employment discrimination class action lawsuit, by Sprenger & Lang, on behalf of twenty-two current and former black Cargill employees/plaintiffs charging ....................Headquartered in the woods of Wayzata Mn., the "quiet, food-chain giant", among other things, is a multinational ingredient supplier [with 90,000 ees in 57 countries, *and with annual gross sales revenues approaching $50 billion dollars*] [The" *behind the scenes middleman supplier" has few consumer products which bear the Cargill name; however, the unending number of food and beverage ingredients it processes from corn, wheat, peanuts, oranges, apples, beef, turkeys, pork, soy beans, sun flowers, coca beans, malting barley, etc, can be found in the finished products of major packaged food, fast food, brewing and soft drink companies' consumer brands around the world. Some of Cargill's major customers [include Coke, Pepsi, Miller, Anheuser Busch, Heineken, Mac Donald's, Dominos, Hershey, Wal Mart, US Government, just to name a few]* In addition to food and beverage ingredients, Cargill's mini-mills sell steel to the big three auto makers—GM, Ford, and Chrysler and its Wet Corn Milling business sells ethanol to Equillon (Shell), BP Amoco, and Koche Refineries. This is the second time in the past 20 years that the Sprenger & Lang law firm has represented current and former black Cargill employees charging discriminatory and unlawful employment policies and practices corporate-wide. The first action was settled short of litigation through a court-approved consent decree in 1986!!!!!!!!!!

# CARGILL CUSTOMERS/PRODUCTS

8/18/03

**CUSTOMERS**

- Anheuser Busch
- Burger King
- Coca Cola
- Coor's
- Dominos
- Dr. Pepper
- General Mills
- Heineken Brewing
- Heinz
- Hershey Foods
- Holland America
- Hunt-Wesson Foods
- Kellogg's
- Kentucky Fried Chicken
- Kraft Foods
- Kroger
- Land O' Lakes
- M&M Mars
- Mac Donald's
- Miller Brewing
- Minute Maid
- Nestle's
- Ocean Spray
- PepsiCo
- Pillsbury
- Pizza Hut
- Popeye's
- Proctor & Gamble
- Quaker Oats
- Royal Caribbean
- Seven-up
- Stroh's Brewing
- Sysco
- Tropicana
- US Government
- Wal Mart

**Ingredient/Products**

- Acidulants
- Animal Livestock feed
- Apples
- Beef
- Citrates
- Coca & Chocolate
- Corn Flour
- Corn Syrup
- Food Starchs
- High Fructose Sweeteners
- Lecithin
- Malting Barley
- Nutraceuticals
- Orange Juice
- Pasta
- Peanuts
- Pork
- Processed Eggs
- Salt
- Turkeys
- Vegetable oils
- Vitamin E
- Wheat Flour

**Major Industries**

- Agricultural Commodity Processors
- Bakeries
- Brewing
- Candy & Confectionary
- Cereal Makers
- Cities & Municipalities
- Cruise Lines
- Fast Food Chains
- Food Purveyors
- Food Service
- Fruit Juice
- Grocery Chains
- Pharmaceutical
- Processed Food
- Retail
- Snack Food
- Soft Drink
- Spirit Distillers
- Wholesale beef & Pork distributors
- Wholesale poultry distributors

| CUSTOMERS | Products |
|---|---|
| Equillon (Shell) | Ethanol |
| BP Amoco | Ethanol |
| Koche Refineries | Ethanol |
| GM | Steel |
| Ford | Steel |
| Chrysler | Steel |

RBD 100327

**SPRENGER & LANG**
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

SARA L. MADSEN
MINNEAPOLIS OFFICE
e-mail: smadsen@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

February 2, 2001

**CONFIDENTIAL ATTORNEY-CLIENT PRIVILEGE**

Mr. Bill Douglas
1343 Washburn Ave N.
Minneapolis, MN 55411

Re: *Cargill, Inc.*

Greetings:

This letter is to keep you informed on the status of the above-referenced case. Since our last meeting on December 2, 2000 we have been continuing to investigate and assemble pieces of information regarding Cargill's conduct. This has involved discussions with some of you, which has given us some insight into the policies and procedures Cargill has in place, and has lead us to other witnesses with valuable information. In addition, some of you have provided documents to us which have proved to be very useful.

The process of drafting the complaint is ongoing. If you have any documents, either pertaining to you personally or to Cargill generally, please contact us. We would be happy to review any documents you might have and will make arrangements necessary to that end, including copying or mailing costs. We are especially interested in any documents relating to the Cargill Leadership Development Program ("CLDP"), the KEIS employee rating system, diversity studies, and/or any other of Cargill's policies or practices.

Please feel free to call either me or Patty Jones with any information or questions you might have.

Sincerely,

Sara Madsen

Sara L. Madsen

SLM:dd

DEPOSITION EXHIBIT
Douglas 9/18/03 7

SL RBD 103062

Put in Cargill witness file

12/24/03 T/c w/ Bill Douglas

"Breach of Trust"
↳ doesn't believe me...

- Dealt with in a "bullshit" fashion.
straight-up + w/o pretense....
- Left Bill twisting in the wind.
↳ has a trust problem
w/ me.

Deposition Exhibit
Douglas 8
E. Gangl 5/10/04

COPY

SPRENGER & LANG
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

LAWRENCE P. SCHAEFER
MINNEAPOLIS OFFICE
E-Mail: lschaefer@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

March 18, 2003

**CONFIDENTIAL:**
**CONTAINS ATTORNEY WORK PRODUCT**

**DELIVERY VIA MESSENGER**

Mr. Bill Douglas
1343 Washburn Ave. No.
Minneapolis, MN 55411

***Re:*** ***Arnold, et al. v. Cargill, Inc.***
**Court File No. 01-CV-2086**

Dear Bill:

This letter confirms our understanding that your deposition will take place at the office of Dorsey & Whitney this Friday, March 21, 2003, beginning at 9:00 a.m. If you have retained an attorney for purposes of responding to the subpoena and appearing at your deposition, please forward this letter to that person. Also, please inform us immediately of the identity of the person you have retained so that further communications may be directed to your counsel.

I will attend the deposition on behalf of the plaintiffs and the class. This letter sets forth our understanding of the areas in which we think questioning will occur. I am also available to discuss any matters in this letter at your convenience should you desire.

As you review this letter, please understand that, pursuant to your request, Sprenger & Lang does not represent you any longer for any individual matter, and that, except to the extent that you are a putative class member in the above referenced litigation whose interests are aligned with the interests of the plaintiffs and proposed class, the firm is not seeking to provide you with legal advice concerning any of the matters discussed in this letter. However, it is important that you are aware of the

Deposition Exhibit
Douglas 9
E. Gangl 5/10/04

SUB 0022

plaintiffs' position regarding matters that may arise in your deposition in advance of the deposition.

## YOUR ATTORNEY-CLIENT RELATIONSHIP WITH SPRENGER & LANG

Cargill will likely ask you about when you began to have an attorney-client relationship with Sprenger & Lang and how long this relationship lasted. Cargill may ask you about the terms of this relationship.

According to our records you first contacted the firm and sought my advice in the Fall of 1999 regarding whether the terms of your Separation Agreement might be in conflict with a consulting opportunity. We did not put the terms of this relationship into a written retainer, but it is our position that your attorney-client relationship with the firm began with this first consultation, and continued until you terminated the relationship in a telephone conversation with me on February 24, 2003.

In addition to the initial consultation, the firm advised you regarding the viability of a proposed race discrimination class action case that ultimately came to be filed in federal court in Minnesota and is referenced above. This is the potential class action case Sprenger & Lang is currently prosecuting. You have assisted in the investigation of this case from the beginning. It is our position that you are a potential class member in this case who, despite having signed a release, may be eligible and elect to participate in class-wide relief should this be awarded by judgment or settlement.

## YOUR COMMUNICATIONS WITH SPRENGER & LANG

In its subpoena to you, Cargill requested that you produce all documents concerning all communications you have had with Sprenger & Lang. Our understanding is that you have produced some documents in response to other requests but have not produced any direct communications between Sprenger & Lang and you.

We ask that you continue to withhold any documents concerning any communications that reflect legal advice or work product from Sprenger & Lang. We also believe that the privilege attached to these documents belongs to all the plaintiffs in this case and cannot be waived by you or any other individual, as you will see in the letter to the Court we are providing you. Again, if you have any questions about these matters, you can call me.

At the deposition, I will object to any questions concerning any communications with Sprenger & Lang that reflect our firm's legal advice or attorney work product (which is essentially anything that reflects the "mental impressions or strategy" of an attorney). This attorney work was designed to benefit all plaintiffs and members of the proposed class, and may not be waived by any individual plaintiff or class member. Accordingly,

we urge you not to answer any questions asking for information about these communications.

I also will object at the deposition to any questions concerning communications made by lawyers or clients during meetings in which Sprenger & Lang lawyers and various plaintiffs and class members discussed the litigation or events giving rise to the litigation. In addition to work product, these communications are protected from disclosure by the attorney-client privilege, and, more specifically, the "common interest" privilege that applies to legal advice provided in group settings. You cannot waive these privileges without the consent of the other plaintiffs. Because of this, you should not answer any questions asking for this information.

Finally, I will object to questions concerning communications between you and me or you and other Sprenger & Lang attorneys in which plaintiffs or other class members did not participate, with one limited exception discussed below. To the extent these communications involve communications from you to an attorney rather than communications of attorney work product from the attorney to you, you are permitted to knowingly and voluntarily waive the attorney-client privilege. You are under no obligation, however, to make such a waiver. The decision will be yours, but I urge you to think carefully before waiving your attorney-client privilege. A waiver may not be limited to the particular conversation about which you are testifying, but may extend to all of your communications concerning the same subject matter. I will be available to discuss this with you should any issues arise during your deposition.

**DOCUMENT ISSUES**

There is an area of your communications with Sprenger & Lang that Cargill is entitled to inquire about. According to our records, you gave us a large collection of documents in approximately the last quarter of 2000. Some of them bore privilege markings and we returned the originals to you shortly after we received them.

We did not discover we had mistakenly retained a copy of the documents until June of 2002. Given that these documents had by then been in the firm's possession for several months, we determined, after consulting with ethical and legal experts, that we had to notify Cargill of this circumstance and return the documents to the company. I know this notification to Cargill has been very upsetting to you, as you understood that your communications with the firm were to be privileged. I again apologize for the distress this has caused you.

Given the events above, I will not object to Cargill's inquiries about the circumstances surrounding these documents. Cargill's primary concern is to ensure that Cargill's attorney-client information has not been disclosed to anyone in the firm. I anticipate that you will be asked to answer questions about the following:

1) What documents you provided to S&L and what documents, if any, you discussed with any member of S&L.

2) Whether you discussed the contents of any documents reflecting attorney-client communications with anyone from S&L or any individual who is not a Cargill manager or executive.

3) Whether, apart from the documents you provided to S&L, you ever communicated attorney-client privileged information to any S&L employee.

During your deposition, there may be contentious issues regarding the scope of what Cargill counsel can ask you, and I may be making objections for the record and/or involve the Judge by telephone if necessary. While I do not represent you any longer, I ask that you listen to these objections. If you are unrepresented at the deposition, you are free to confer with me about any issues that may arise.

**OTHER QUESTIONS CONCERNING YOUR EXPERIENCES AT CARGILL**

After Cargill's lawyer finishes questioning you, I may have questions regarding your experiences at Cargill and your views on issues that are relevant to this litigation. So that you are not surprised, I may ask you about the following subjects:

1) Your employment at Cargill and events leading up to your forced retirement.

2) The operation of the KEIS system (which took place annually after 1994), including the following specific subjects:

* Whether Kent Norby, in your view, was qualified to oversee the system;

* How the process actually worked -- i.e. how did managers make the potential assessments and how were these finalized;

* How the ratings in KIES were used in day-to-day operations (i.e. for promotions, compensation, training & development, etc.);

* Whether, based on your experience, Cargill had a real commitment to foster diversity through KEIS.

3) The selection grid process and how it actually operated at Cargill.

4) Your communications with potential class members and the prevailing view among African American employees regarding whether equal employment

opportunities were available at Cargill. Specific examples in this area will be probed.

5) I may go over exhibits we have marked that either relate to the above categories or your employment.

Again, if you have retained counsel before this deposition, I would appreciate notification and the opportunity to talk with that person. If not, and if you have any questions as you review this letter or before the deposition, please don't hesitate to contact me directly.

Very truly yours,

Lawrence P. Schaefer by SMC

Lawrence P. Schaefer

:mbk

012-588-0460 Bill Douglas - file is w/ Berkley
→ contact him for leads

Deposition Exhibit
Douglas 10
E. Gangl 5/10/04

SUB 0137

REDACTED

# BILL DOUGLAS

**Telephone interview**
**July 6, 2000**
**Fawn Wilderson**

How is this going to be handled? How'd you get my name? I have a waiver with Cargill and signed it.

I need to get assurances that anything I say will remain confidential.

I have docs from case Paul Sprenger filed – lawsuit brought against Cargill. There's a lot that Paul Sprenger missed.

I could give you names, but I have to ask - in absolute terms - that I not be identified with having provided this information.

I am a little paranoid.

I would prefer to do this other than on the phone. You could be anybody. That leaves me open to liability. But, I know much. It's all probably the same now as it was then.

[Would you like to come to office?]
Let me think. What's the telephone number there?

[I gave him the number.]

You work for Larry? You're Frank's daughter?? Let me call you in two minutes
[He called right back].

Duane would be one for you to contact. I referredd him to Larry.

[He started making a list].

Della Dikson, not married. – Totally under paid in terms of base and incentive compensation.

John Chavers, 22 years, black, now at North Star Steel in Saint Paul. I'll get home phones for you.

Frank Sims – in a high, high place. He probably won't want to get involved.

Cornell Slade

Tommy Williams

Deposition Exhibit
Douglas 11
E. Gangl 5/10/04

Toni Green

John Culmer

Randy Thompson - He's been around a long time. Salt Division.

Cheryl Hunter

Ron Hunter – attorney for Cargill, no relation to Cheryl.

There's another black female at Cargill, too. I'll get his name.

There's a big issue with women – expecially, women of color especially

Let's see – give me a day - No later than Mon. I'll get those telephone numbers for you.

Beverly Franklin – in St. Paul.
really got messed over – now with an insurance company in St. Paul. Has a tale of woe which is symbolic of the culture.

Della, I don't think she's aware of how poorly she's been treated. When she does become aware she'll be very angry.

Michael Jones

Ron Wright

**BILL DOUGLAS INTERVIEW SUMMARY**
**November 27, 2000**

I called Bill today to find out about his knowledge of the recruiter meeting at which Whitney McMillan stated that he wanted people who look and think like him recruited to the company. Unfortunately, Bill did not attend this meeting. He did say, however, that if the meeting took place in the early '90's, Mr. McMillan would have been the CEO at that time. We should talk to Duane Reed about this meeting because he did attend.

I also asked Bill some questions about Cargill's affirmative action plans, in connection with a potential qui tam claim. He too said that Cargill's affirmative action plans, prepared in connection with its business with the U.S. government, are makeweight. Each division of Cargill prepared a voluminous affirmative action plan. Twice, the Office of Contract Compliance conducted audits of Cargill's EEO compliance. Doug Olson is checking to see if the results of these audits are publicly available. Finally, he said that the affirmative action plan for the Flour Milling division should be interesting because the division had only two or three black exempt employees.

The senior executives in the Twin Cities oversee the hiring of exempt employees for the entire company.. In addition, Mr. Douglas said that Yvonne Blaine once told him that an executive named Scott ___________ (Mr. Douglas could not remember his last name) told her that Cargill's efforts to hire minorities will always be governed by white males.

A little background on Bill: he was the Human Resources Manager for the Food Sector from shortly after the signing of the *Foster* decree to 1998, the year of his retirement. The Food Sector comprised approximately 5,000 employees and a variety of businesses. Prior to that, he was an EEO manager. Bill started with Cargill in 1975.

Bill has a box of documents from his days at Cargill. He said that he needed to start looking through them. I encouraged him to do so, and we agreed that he would pass on to us anything that he thinks might be of interest.

Deposition Exhibit
Douglas 13
E. Gangl 5/10/04

M Kaye signed an agreement → includes a release? → check

3/28/01: Mtg w/ Bill Douglass:

Euller letter:

Staley = 60s
Page = 50s
Euller / Budde = mid 40s

John Culmer →

→ ~~We should get~~ Cornell Slade →
no interest in joining → Depose him....

Tommy Williams

John Chavers → North Star Steel
→ passed over for tons of jobs.

3rd person →

→ Executive Development

- KIES
- CLDP
- External Executive Development Programs.

14-16 C
17-19 B
20+22 A
The [illegible] breakdown.

Deposition Exhibit
Douglas 15
E. Gangl 6/10/04

SUB 0085