DORSEY & WHITNEY LLP EXHIBIT G

MINNEAPOLIS
SEATTLE
NEW YORK
WASHINGTON, D.C.
DENVER
LONDON
SOUTHERN CALIFORNIA
DES MOINES
SAN FRANCISCO
ANCHORAGE

SUITE 1500
50 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

**PAUL B. KLAAS**
**(612) 340-2817**
**FAX (612) 340-8856**

TOKYO
PALO ALTO
FARGO
SALT LAKE CITY
GREAT FALLS
HONG KONG
MISSOULA
TORONTO
SHANGHAI
VANCOUVER

September 23, 2003

**BY MESSENGER**
Honorable Arthur J. Boylan
United States District Court
638 Federal Building
316 North Robert Street
St. Paul, MN 55101

**CONFIDENTIAL**

**ATTORNEYS' AND COURT'S EYES ONLY**

Re: Arnold v. Cargill, Inc.
Civil No. 01-2086 DWF/AJB

Dear Magistrate Judge Boylan:

We write to request an emergency conference with the Court. We need Your Honor's guidance as to how and whether to proceed with this litigation, in light of the deposition testimony of Mr. R. Bill Douglas.

Mr. Douglas was a Cargill executive for many years, including service as Cargill's Corporate EEO director and as manager of Human Resources for Cargill's entire Food Sector. Mr. Douglas retired from Cargill in 1998. After his retirement, at the specific request of Sprenger & Lang, Mr. Douglas helped Sprenger & Lang commence this action.

As this Court summarized in its Order dated June 27, 2003, at 3, "Douglas has actively participated in Arnold's preparation of this litigation by identifying names of potential plaintiffs, providing Sprenger & Lang with 2000 pages of privileged, internal Cargill documents, and reviewing and commenting on the complaint before it was filed." For convenient reference, a copy of this Court's June 27, 2003 Order is attached to this letter as Exhibit A.

The June 27, 2003 Order concludes:

> In Douglas' capacity as an EEO professional, Douglas was privy to Cargill's strategy and methods for defending a discrimination suit. The danger of Douglas disclosing Cargill's privileged information to Sprenger & Lang necessitates an inquiry into his relationship with plaintiff's counsel. Therefore, this Court will overcome attorney client privilege and allow Cargill to depose Douglas regarding his relationship with Sprenger & Lang. Although disqualification of counsel is a drastic measure that should be used only when absolutely necessary, Cargill has a right to depose Douglas to determine whether evidence exists to pursue such a remedy.

Cargill exercised its right to depose Mr. Douglas last Thursday, September 18, 2003. Although the final transcript has not yet been prepared, the rough transcript of Mr. Douglas's testimony is attached to this letter as Exhibit B. Mr. Douglas's testimony was very disturbing.

Mr. Douglas testified that he possessed a large amount of Cargill privileged information; that Sprenger & Lang solicited that privileged information from him; that he disclosed it en masse to Sprenger & Lang; that Sprenger & Lang never suggested that he should not disclose Cargill privileged information to them; and that Sprenger & Lang recommended that Mr. Douglas destroy Cargill's privileged documents before they could be subpoenaed by Cargill.

More specifically:

- Mr. Douglas confirmed this Court's finding that he has "extensive knowledge of Cargill's litigation strategy" from his 22 years of working with Cargill's Law Department and Cargill's outside counsel at Dorsey & Whitney. Tr. at 203-206; 190-192.

- Mr. Douglas testified that he conveyed massive amounts of Cargill privileged information to Sprenger & Lang, at their request, including documents marked "privileged and confidential" from Cargill attorney Fred Budde. In so testifying, Mr. Douglas contradicted most of the substantive representations Larry Schaefer, lead counsel from Sprenger & Lang, has made to this Court about the nature of their relationship:

-- Mr. Schaefer, in his March 17, 2003 letter to this Court (copy attached as Exhibit C), stated that "Mr. Douglas sought advice from Sprenger & Lang includ[ing] matters concerning a consulting opportunity, as well as systemic discrimination issues at Cargill…" Mr. Douglas both testified and documented that "[i]t was Larry Schaefer who solicited my

knowledge/experience regarding systemic discrimination at Cargill and not I who retained Sprenger & Lang for advice regarding 'systemic discrimination' at Cargill and a consulting opportunity!" Tr. at 99-100; Deposition Ex. 4 at 2 (notes written by Mr. Douglas and produced, reluctantly, during his deposition)(copy attached as Exhibit D).

--Mr. Schaefer, in his Declaration to this Court (copy attached as Exhibit E), ¶5, stated: "At the outset of my interactions with Douglas on this issue, I told him emphatically and unequivocally that, given his prior senior management position at Cargill and his exposure to confidential and attorney-client communications, he could not disclose to me or anyone at S&L any written or oral communications that could be considered to fall within Cargill's attorney-client or work product privileges." Mr. Douglas, though, testified to the contrary:

> *Mr. Klaas*: All right, and during that meeting or really any other meeting with Sprenger & Lang, do you recall them saying, Mr. Douglas, you better never disclose to me any confidential information from Cargill or you're in big trouble, or words to that effect?
>
> *Mr. Douglas*: No.
>
> *Mr. Klaas*: Did they ever instruct you with regard to whether you should be disclosing confidential communications to them, did the topic ever come up?
>
> *Mr. Douglas*: Would you say that again?
>
> *Mr. Klaas*:. Did Sprenger & Lang or Mr. Schaefer or anybody at Sprenger & Lang ever discuss with you whether you should be disclosing to them confidential information that you learned while you were at Cargill?
>
> *Ms. Coler*: Objection, vague.
>
> *Mr. Douglas*: Not that I can , no, not that I can recall, you know, per se, not that I can recall.
>
> *Mr. Klaas*: During your interaction with Sprenger & Lang and in particular Mr. Schaefer, but others as well at Sprenger & Lang, did they seek information from you about your experiences at Cargill or your knowledge of the inside workings of Cargill?
>
> *Mr. Douglas*: Yes.

Tr. at 31-32. *See also* Letter to Mr. Douglas from Sprenger & Lang letter dated February 2, 2001 (copy attached to this letter as Exhibit F), stating how happy Sprenger & Lang would be to review "any documents, either pertaining to you personally or to Cargill generally"; expressing special interest in "any documents relating to the Cargill Leadership Development Program (CLDP), the KEIS employee rating system, diversity studies, and/or any other of Cargill's policies or practices"; and *never* indicating that privileged documents were to be excluded.

-- Mr. Schaefer, in his Declaration to this Court, ¶11, stated that he "did not review" the privileged documents Mr. Douglas delivered to him "substantively." Mr. Douglas, however, testified: 1) that he "raised the question" with Mr. Schaefer about "some [Cargill] documents here, some of which have confidential and privileged written on them," 2) that Mr. Schaefer responded by instructing Mr. Douglas "just send them, we'll go through", and 3) that Mr. Douglas personally met with Mr. Schaefer four to six times to go over the Cargill documents—some confidential, some from the law department, whatever Mr. Douglas had. Tr. 35-38, 92-93.

-- Mr. Schaefer, in his Declaration to this Court, at ¶12, stated that he returned Cargill's documents to Mr. Douglas and "asked him why they were produced to the firm, given our previous instruction about not providing privileged information...[Mr. Douglas] promised that would not occur again..." Mr. Douglas, in his deposition testimony, contradicted everything Mr. Schaefer said: 1) Mr. Douglas testified that the documents were not returned to him by Sprenger & Lang; rather, Mr. Douglas had to demand them back and does not feel he got them all back even then[1], Tr. 91-92, 42; 2) Mr. Douglas testified that Mr. Schaefer *never* suggested it was improper for him to give him "privileged or confidential information from inside Cargill" – *never* criticized, *never* scolded, *never* even "admonished" him for doing so, Tr. 45-47.

-- Mr. Schaefer, in his Declaration to this Court, at ¶10, stated that Mr. Douglas "has never been compensated for any of the time or expense he has devoted to these matters." Mr. Douglas testified, however, that he asked Mr. Schaefer about remuneration and Mr. Schaefer "said something to the effect that it would depend on a lot of things, and it was just kind of left hanging, that we'd have to see at the conclusion of this thing." Tr. 77-78.

---

1 Mr. Douglas produced 329 pages of documents in response to Cargill's subpoena. Sprenger & Lang received at least 4,543 pages of documents from Mr. Douglas.

- Finally, and perhaps most disturbingly, Mr. Douglas testified that, after Sprenger & Lang reviewed and returned Cargill's privileged documents to him, Mr. Schaefer called to warn Mr. Douglas that Cargill would be serving a subpoena upon him. Mr. Douglas testified that Mr. Schaefer instructed him to destroy the documents before the subpoena arrived. As Mr. Douglas wrote in a document entitled "Larry Schaefer Chronology of Events" (attached as Exhibit G) which he reluctantly surrendered to us during his deposition:

> Monday, 7/22/02, INFORMED ME A SUBOENA AND ATTACHMENT FOR DOC PRODUCTION FROM CARGILL TO DEPOSE ME WAS FORTHCOMING. SAID I SHOULD TOSS RECORDS OR DOCUMENTS BEFORE. CALL HIS OFFICE, ETC. WITH QUESTIONS OR FOR ASSISTANCE.

Cargill certainly will be moving to disqualify Sprenger & Lang and dismiss this case as tainted beyond repair by induced disclosures of its privileged information to the plaintiffs and their law firm.

Moreover, given the very serious wrongdoing Mr. Douglas has described, we thought it appropriate, indeed, necessary to seek the Court's instructions as to what further investigation should be undertaken at this point. Investigation of the Sprenger & Lang law firm is certainly necessary, but we thought it inappropriate that Cargill undertake that investigation itself, unless the Court first decided whether this Court or other offices should become involved immediately.

We request, therefore, a conference with the Court. At the conference, Cargill will request: 1) that all parties and counsel be ordered to have no contact with Mr. Douglas until an evidentiary hearing can be convened; 2) that an evidentiary hearing be convened at this Court's earliest convenience; and 3) that either Cargill's lawyers or other appropriate investigators examine Sprenger & Lang personnel concerning their solicitation and handling of Cargill privileged information.

We think that proceeding with routine discovery is inappropriate, given the likelihood that Sprenger & Lang will be disqualified and the seriousness of the issues Mr. Douglas's testimony has raised. Therefore, we will also ask the Court to stay discovery and set a briefing schedule for Cargill's motion to disqualify Sprenger & Lang and dismiss this action.

We look forward to hearing from the Court.

Respectfully,

Paul B. Klaas

PBK:tjv
Enclosures
cc: Lawrence P. Schaefer, Esq. (by messenger)