COPY



UNITED STATES DISTRICT COURT

EXHIBIT N

DISTRICT OF MINNESOTA

Civil File No. 01-CV-2086 (DWF/AJB)

RODERICK ARNOLD, NII-AKWEI ACQUAYE, SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, DELLA DICKSON, VIRGINIA DOUGLAS, CHENETE HUGHEY, JACQUELINE JENKINS, KEITH LEWIS, ANTHONY MCDOWELL, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, JACQUELINE WILLIAMS, CHERYL WILLIS, STEVE WINT, SEAN WRIGHT, on behalf of themselves and all others similarly situated,

Plaintiffs,

vs.

CARGILL, INCORPORATED,

Defendant.

DEPOSITION OF
JOHN CHAVERS

Taken October 9, 2003
Commencing at 9:06 a.m.

REPORTED BY: DEBORAH A. MAVES, RPR

PARADIGM REPORTING & CAPTIONING INC.
1400 RAND TOWER
527 MARQUETTE AVENUE SOUTH
MINNEAPOLIS, MINNESOTA 55402-1331
(612) 339-0545

A. I suppose I was.
Q. How did you first learn that Sprenger & Lang -- well, strike that.
How did you first come in contact with Sprenger & Lang?
A. I believe I was contacted.
Q. By someone at Sprenger & Lang?
A. Yes.
Q. By whom?
A. Larry. I don't know Larry's last name.
Q. Do you recall when you were contacted by Larry?
A. That would have had to have been in 2001.
Q. At that point in time, prior to the contact by Larry, did you know that there was any litigation underway against Cargill by Sprenger & Lang?
A. I don't recall if I knew at that time or not.
Q. And the litigation was filed, the complaint was filed in November of 2001. Do you know if this telephone call occurred before or after November of 2001?
A. I presume it to be before November.
Q. So when Mr. Schaefer called, what did he say?
MS. COLER: I'm going to object to the extent it calls for legal attorney-client privilege information.

Q. At that point in time had you ever spoken with Mr. Schaefer before?
A. No.
Q. Did you know who he was when he called?
A. Not until he identified himself.
Q. Until he introduced himself?
A. Yes.
Q. And what did he say to you when he introduced himself?
MS. ENG: There's no privilege, Susan, there's no relationship.
MS. COLER: He can tell you what he said on the first introductory.
BY MS. ENG:
Q. What did Mr. Schaefer say when he called you?
A. He asked me if I worked for the company and so on. Basically just explained what was going on.
Q. What did he say? What do you remember about that conversation?
MS. COLER: I need to talk to Mr. Chavers before he can answer that question. I'm going to instruct you not to answer until we've consulted.
Q. At any time during that conversation did Mr. Schaefer -- or did you ask Mr. Schaefer to represent you?

A. I don't recall. I'm serious, I don't recall.

Q. At any time during that conversation did you ask Mr. Schaefer for any legal advice?

A. Yes.

Q. Did Mr. Schaefer ask you to participate in this lawsuit?

MS. COLER: I'm going to object again in terms of time frame.

Q. During this initial conversation when he contacted you and introduced himself, did he ask you to participate in this lawsuit?

MS. COLER: Objection, vague in terms of participation. And also I'm going to instruct you not to answer. I think I need to be sure that you're clear on when attorney-client privilege would have attached in that conversation. So I'm going to instruct him not to answer and I need to talk to him about it. Let's go.

MS. ENG: And I'll just note my objections for the record. I do think this is an inappropriate conversation.

(Witness conferring with counsel out of the room.)

MS. COLER: You can ask him the question now.

MS. ENG: Let the record reflect that Ms.

Coler and Mr. Chavers had a conversation outside the hearing of counsel and you've now returned.

BY MS. ENG:

Q. Are you ready to answer my questions?

A. I hope so.

Q. When Mr. Schaefer called and introduced himself, what did he next say to you?

A. It's hard to recall specifically what he might have said to me. He invited me to speak with him at his office so I said I would.

Q. Did Mr. Schaefer tell you how he'd gotten your name?

A. I don't recall.

Q. Or why he specifically wanted to talk with you?

A. I made presumptions.

Q. What were your presumptions?

A. That apparently there was something going on that involved African-American people.

Q. Did Mr. Schaefer tell you what that something was?

A. He said that he would talk to me about it when we visited.

Q. Did he tell you to bring any information with you, bring any documents?

A. I don't recall.

Q. Did he say anything else in that conversation?
A. Nothing other than a date and a time and a place.
Q. And did you subsequently meet with Mr. Schaefer?
A. Yes.
Q. What date?
A. I don't recall.
Q. What time or place?
A. I believe it was a Saturday, it was at their offices, Sprenger & Lang offices.
Q. Where were you when Mr. Schaefer called you?
A. I don't recall.
Q. Do you recall if you were at work?
A. No, I know I wasn't at work.
Q. Home?
A. I was either at home or I might have been out, received the call on my cell phone.
Q. At the time that you hung up the phone, did you consider Mr. Schaefer to be your attorney?
MS. COLER: Objection to the extent it calls for a legal conclusion and vague.
A. Not at that time.
Q. This meeting that took place on a Saturday, were there other people in attendance?
A. No.