COPY



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

EXHIBIT T

| | |
|---|---|
| RODERICK ARNOLD, NII-AKWEI ACQUAYE, SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, DELLA DICKSON, VIRGINIA DOUGLAS, RONALD GARRUS, MARGO HARVEY, CHENETA HUGHEY JACQUELINE JENKINS, KEITH LEWIS, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, JACQUELINE WILLIAMS, CHERYL WILLIS, SEAN WRIGHT, | CIVIL FILE NO. 01-CV-2086 (DWF/AJB) |
| -------------- Plaintiffs, | |
| vs. | |
| CARGILL, INCORPORATED, | |
| -------------- Defendants. | |

ORAL DEPOSITION OF LOIS CEPHUS

April 1, 2004 Larned, Kansas

ADVANCED COURT REPORTING SERVICES
Lee Ann Bates, CSR, RPR, CRR
P. O. Box 136
Great Bend, Kansas 67530-0136
(620) 793-6555

Q (BY MR. IWAN) Is there anything else leading up to the point of the conversation where your attorney has now instructed you not to answer? Any other exchange between you and Ms. Buck-heim (phonetic pronunciation)? Is that how you pronounce it?

MR. DOMAN: Buck-heim (phonetic pronunciation.

Q Between you and Ms. Buccheim that you haven't disclosed to me yet? Any other statements you made? Any other questions she asked you?

A I don't recall.

Q Did you -- and again, I guess at this point, in light of the instruction from your attorney, he may tell you not to disclose the details, but was there additional things discussed during this phone conversation that we haven't yet talked about?

MR. DOMAN: Objection. Invades attorney-client privilege. I'm going to instruct the witness not to answer that.

MR. IWAN: Well, she can certainly answer whether there were other things discussed. I don't even know what they were, but I need to know if the conversation continued beyond that.

MR. DOMAN: If you're talking about this first conversation, I think she's already testified

that the conversation ended.

MR. IWAN: No. Again, that's you testifying to it, so that's why I'm asking her.

THE WITNESS: I don't recall.

Q (BY MR. IWAN) So the last thing I thought I heard you say about this conversation was something along the lines of your prayers had been answered; you felt like the Lord was looking out for you. I'm paraphrasing a little bit, and in response to my question whether there were other matters discussed after that stage of the conversation, is it your answer that you don't recall whether anything else was discussed in this initial phone conversation beyond that?

MR. DOMAN: I've instructed the witness not to answer any questions after that or about that conversation after that, so you don't have to answer.

MR. IWAN: Well, I do think you have to answer. I'm not asking for any of the details. I'm just asking for whether a conversation occurred. Obviously, I need to know so that --

MR. DOMAN: Obviously, a conversation occurred. She's already testified that a conversation has occurred.

MR. IWAN: But the conversation continued.

MR. DOMAN: There's no confusion about that. There was a conversation that started, and I'm telling you that there is no basis for you to ask any questions after she expressed an interest in the litigation and being represented, period.

MR. IWAN: Okay. Again, we can have perhaps more of this dialogue off the record, but I'm not asking you for the details. All I need to know, so that I understand the facts when I approach the magistrate, is whether the conversation continued after a point in time where you're saying that she expressed an interest in being represented in this lawsuit.

MR. DOMAN: And it's been asked and answered.

MR. IWAN: Well, I'd appreciate just an answer to it again so I can have a clear record when I talk to the magistrate, because I don't know that I've heard it from her specifically.

MR. DOMAN: Tell him you don't remember.

THE WITNESS: I don't recall.

Q (BY MR. IWAN) Did you have any conversations, telephone conversations, with anyone at Sprenger &

containing individual medical information about other people, other employees at Cargill?

MR. DOMAN: Would or did? 'Cause you're asking a hypothetical question.

MR. IWAN: Counsel, please. The questions are not that ambiguous and I'd ask, unless she tells me she can't answer it, that she be given a chance to do so.

MR. DOMAN: I just want a clear record. If you can't ask a good question, that's not her fault.

MR. IWAN: You're not here to testify, so --

MR. DOMAN: I'm not here to testify. I just want to -- I'm here to represent my client, and my client has a right to be able to understand the questions. You're not going to prevent me from doing that. I'm going to continue to assure that my client understands the questions that are being posed to her, and if you are unable to ask a clear question, then that is your problem. It is not my client's problem, and I will continue to --

MR. IWAN: Then state your objection.

MR. DOMAN: I have made my objection and I'm going to continue to make objections. I'm only

trying to help you out. You keep asking hypothetical questions. I'm only trying to assist you.

MR. IWAN: There's nothing hypothetical about --

MR. DOMAN: Would you? Would you have produced.

MR. IWAN: Would you say that the documents contain?

MR. DOMAN: My objection is on the record.

THE WITNESS: Would I what?

Q (BY MR. IWAN) Did the documents contain confidential information about other employees, confidential medical information about other employees at Cargill?

MR. DOMAN: Objection. Calls for a legal conclusion; vague and ambiguous.

MR. IWAN: You can answer.

THE WITNESS: I don't know. There was a lot of information I sent.

Q (BY MR. IWAN) Did you return any materials to Cargill upon the termination of your employment with the company?

A That depends on what we're talking about. I mean,

you know, I worked in an office. There's things that I left, you know.
Q Let's ask it this way: How did it -- how did you end up retaining possession of the materials that were produced to us that related to your employment at Cargill?
A They were my own personal documentation and files.
Q Where would these files have been kept? Well, let me ask it this way: Would these documents have been created during the course of your -- during the time of your employment with Cargill?
A Yes.
Q Where would you have kept these documents?
A When?
Q Let's start with during the time that you were employed at Cargill, where did you keep these documents?
A While I was working there?
Q (Nods head affirmatively.)
A In my office.
Q So how did you manage to retain possession of whatever documents you produced to us that were created during the time of your employment at Cargill, more recently in response to our deposition request and subpoena?

MR. DOMAN: Objection, vague and ambiguous.

Q (BY MR. IWAN) Did you take documents with you when you left Cargill?

MR. DOMAN: Objection, vague and ambiguous.

MR. IWAN: There's nothing vague and ambiguous about that.

MR. DOMAN: Are you talking about when she left for work?

MR. IWAN: Counsel, that is ridiculous.

MR. DOMAN: Are you talking about after she terminated from the company? I mean, make it clear. That's all I'm asking you. Make it clear.

Q (BY MR. IWAN) Did you understand what I said -- what I meant when I said, "Did you take documents with you at the time you left Cargill?"

A Could mean a lot of things, I mean.

Q Well, what did you think it meant when I asked the question?

A I wasn't sure what you meant.

Q Did you take any documents with you following -- well, upon or immediately following, or let's put it this way: Within -- did you take any documents with you within two weeks, either before or after your