H
Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

Douglas J. MICHELSON, Plaintiff,
v.
MERRILL LYNCH PIERCE FENNER & SMITH, INC., Nelson Bunker Hunt, William Herbert Hunt, Douglas Herbert Hunt, Lamar Hunt, International Metals Investment Company, Ltd., John J. Conheeney, Conti-Commodity Services, Inc., Conti-Capital Management, Inc., Conti-Capital, Ltd., Norton Waltuch, Gilian Financial, Acli International Commodity Services, Inc., Bache Halsey Stuart Shield, Inc., Shiek Mohammed Aboud Al Amoudi, Shiek Ali Bin Mussalem, Mahmoud Fustok, Prince Faisal Bin Abdullah, Naji Robert Nahas, Banque Populaire Suisse, Advicorp Advisory and Financial Corporation S.A., Placid Oil Company, Commodity Exchange Inc., the Chicago Board of Trade, Irwin N. Smith, John Does Number Two to Ten,
Defendants.

**No. 83 CIV. 8898 (MEL).**

March 28, 1989.

Douglas J. Michelson, pro se.

Shmuel B. Klein, Brooklyn, New York, for plaintiff.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants ContiCapital Management, Inc. and ContiCapital Limited; Richard A. Rosen, Mary Anne Case, of counsel.

Curtis, Mallet-Prevost, Colt & Mosle, New York City for defendant Mahmoud Fustok; Herbert Stoller, Turner P. Smith, of counsel.

OPINION

LASKER, District Judge.

*1 In this action, plaintiff Douglas Michelson contends that the defendants conspired to manipulate the silver market during the fall of 1979 and spring of 1980, thereby causing the price to rise to an unprecedented high to his detriment. Michelson's recent naming of Dr. Richard J. Teweles, a professor at California State University at Long Beach, as his expert has sparked the motions that are the subject of this decision.

Defendant Mahmoud Fustok moves, with the support of ContiCapital Management, Inc. ("CCM") and ContiCapital Limited ("CCL") [FN1] (collectively "defendants"), to disqualify Teweles because Teweles received confidential information from each of them when engaged in a related action, *Fustok v. ContiCommodity Services, Inc.*, 82 Civ. 1538 (MEL), and in which he was disqualified from testifying as an expert.

This motion has sparked others: plaintiff Michelson moves for an *in camera* hearing to determine what, if any, confidential information defendants imparted to Teweles and for sanctions pursuant to Fed.R.Civ.P. 11 on the ground that the defendants' motion is baseless and harassing; defendants similarly seek sanctions against Michelson and his counsel on the ground that plaintiff's motion was made in bad faith and without factual investigation or reasonable basis. [FN2]

The defendants' motion to disqualify Teweles is granted, as is their motion for sanctions. Michelson's motions for sanctions and for an *in camera* hearing are denied.

I. BACKGROUND

There is no dispute that Dr. Teweles was contacted and interviewed by all of the parties involved in this motion. The facts recounted below, in chronological order, set forth the timing and substance of these contacts.

By letter of October 1, 1981, Michelson contacted Dr. Teweles, advising him of Michelson's assessment of the market, apprising Teweles of Michelson's developing trial strategy, and seeking advice. The letter indicates that Michelson sent Teweles a check to compensate him for his review of certain material.

In 1982, Fustok initiated *Fustok v. ContiCommodity Services, Inc.*, against, among others,

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

ContiCommodity Services, Inc., CCM and CCL (collectively "Conti" or "Conti defendants"), whom Fustok maintained had engaged in unauthorized trading and had fraudulently allocated some of his silver contracts to his commodities trading account.

In September, 1982, Richard Rosen, of Paul, Weiss, Rifkind, Wharton & Garrison, as counsel for the Conti defendants, engaged Teweles as a consultant and expert witness for the Conti defendants in *Fustok.* According to his affidavit, Rosen subsequently imparted confidential information to Teweles about the defense case.

We described to him major issues in the case, discussed our defenses to specific claims raised by Fustok, disclosed to him information that had not yet become available in the course of discovery, and disclosed certain of our assessments of the strengths and weaknesses of plaintiff's case and our own. [FN3]

***2** During the course of the year, Rosen specifically discussed with Teweles Fustok's allegations that Conti established Fustok's accounts without an initial margin, that his accounts at Conti were improperly documented, and that losses were retroactively allocated to his accounts. [FN4]

On March 11, 1983, Philip T. Powers, then Assistant Chief Counsel of ContiCommodity Services, Inc., met with Teweles for several hours. [FN5] Powers gave Teweles one dollar, which, according to Powers, Teweles agreed was sufficient as an initial retainer, to ensure confidentiality prior to discussing with him Fustok's arguments against the Conti and Conti's theories of defense. [FN6]

On July 7, 1983, Michelson filed his complaint in this action, in which he alleged that the defendants, who included Fustok and the Conti defendants, [FN7] had conspired to manipulate the silver market in 1979 and 1980 and that their fraudulent behavior had caused him to lose substantial sums of money.

In January, 1984, in a letter to Rosen, Teweles acknowledged receipt of the decision denying defendants' motion for summary judgment in *Fustok,* as well as the underlying papers, and mentioned having spent several hours speaking with Philip Powers. [FN8] In the spring of 1984, Rosen advised Teweles that the defendants would not be using him as either a consultant or an expert witness; [FN9] this was reaffirmed in letters of July 5 and 13, 1984. [FN10]

On May 16, 1985 Herbert Stoller of Curtis, Mallet-Prevost, Colt & Mosle, counsel for Fustok, first approached Teweles as a possible expert for the trial of *Fustok v. ContiCommodity Services, Inc.* After interviewing Teweles for two days, on May 20, 1985, Stoller retained him as a consultant and expert witness; according to Stoller, Teweles agreed to keep the information imparted to him confidential. Teweles advised Stoller in a letter of May 20, 1985 that, although he had spoken with Rosen and met with Philip Powers of ContiCommodity Services, Inc., neither discussed legal theories or strategies concerning the case. [FN11] Teweles stated that he had no recollection of being given any facts about the case that were not reflected in public documents. [FN12]

On May 31, 1985, when served with Fustok's pre-trial order, Conti learned that Teweles was being designated as Fustok's expert in *Fustok.* On July 19, 1985, Conti moved to disqualify Teweles from testifying because he had received confidential information from Conti about the case; any role as an expert was argued to give Fustok an unfair advantage, to breach Teweles' duty to preserve Conti's confidences, and to create an appearance of impropriety. Fustok opposed the motion on the grounds that Teweles' previous conversations with Conti would not bear on his testimony and that Teweles represented that the information he had received was a matter of public record. Teweles stated in deposition that he was "absolutely positive" that he did not remember any confidential information and that he did not recall Conti giving him any confidential information. [FN13]

***3** On July 31, 1985, the court granted the motion to disqualify Teweles from testifying as an expert in *Fustok.* The motion was granted on the grounds that 1) even if Teweles could not remember what Rosen told him, he could be subliminally affected by the information, 2) permitting him to testify would create the dilemma whether Rosen should testify against him, and 3) his lack of objectivity made it inappropriate for him to appear as an expert. [FN14]

All was quiet on the Teweles front until November 12, 1987, when Michelson advised defendants that Teweles would testify at trial "concerning conditions in the silver market and their effects on plaintiff's business," [FN15] which spawned the four motions that are the subject of this decision.

DISCUSSION

1. Disqualification

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Fustok contends, and CCL and CCM agree, that Teweles should now be disqualified because of his conflict of interest, his duty to maintain confidences, and the appearance of impropriety that would result were he to testify as an expert. Michelson opposes the motion on the grounds that 1) Teweles knows of no confidence given him by either Stoller or Rosen, 2) Teweles' testimony at the *Michelson* trial will not address the alleged fraud by Conti of Fustok, the subject of the *Fustok* action, and 3) disqualification would prejudice the plaintiff. The factual context and arguments on this motion are not only reminiscent of, but also indistinguishable in any significant fashion, from those presented on the motion to disqualify Teweles in the *Fustok* action. Accordingly, as in *Fustok,* the motion to disqualify must be granted.

As was true in the *Fustok* action, the moving parties contend that they gave Teweles confidential information; Teweles now, as he did then, does not recall such information and is unsure if he even received any at any time. [FN16] However, as in *Fustok,* it does not follow that his testimony is appropriate simply because he cannot remember any information given to him by the moving party. His conversations with Rosen, Powers, and Stoller could subliminally affect his testimony and assessment of the facts. In addition, as was true in *Fustok,* if Teweles were to testify, counsel for the defendants would face the dilemma of whether to testify as to their conversations with Teweles so as to impeach his credibility.

It is true that Fustok, CCM, and CCL did not hire or consult Teweles as an expert for the *Michelson* case. Thus, unlike in Fustok, they did not give him confidential information in the context of the very case in which he is now named as an expert. However, this distinction is not sufficiently significant, when considered in the factual context of this case, to compel a contrary result from that of *Fustok.* Although Michelson does not plan to question Teweles about Conti's alleged fraud of Fustok, the subject of the *Fustok* case is so intertwined with *Michelson* as to make the information about Fustok's transactions with Conti relevant. For example, the transactions at issue in *Fustok* are likely to be argued, as was true in the companion case of *Minpeco v. ContiCommodity Services, Inc.*, 81 Civ. 7619 (MEL), to evidence the participation of Fustok in the alleged conspiracy. In fact, in *Minpeco,* Fustok's primary defense at trial was that he had been cheated on various silver transactions and thus those transactions could not be construed to support a finding that he had participated in the conspiracy. Thus, the strategies of Fustok and Conti and their construction of these transactions, even if discussed with Teweles only in the context of the *Fustok* action, are likely to be relevant to *Michelson.*

***4** In addition to the precedent of the decision of *Fustok,* the limited law addressing disqualification of witnesses who have received confidential information from another party supports the decision to grant the motion to disqualify. For example, in *Marvin Lumber & Cedar Co. v. Norton Co.,* 113 F.R.D. 588 (D.Minn.1986), the Magistrate granted the plaintiff's motion to disqualify an independent testing laboratory retained by the defendant from serving as its consultant or expert witness, because the plaintiff had previously used the laboratory to test its product. Plaintiff, a manufacturer of insulated windows, alleged in the underlying action that the defendant had injured plaintiff's commercial reputation because the sealant defendant manufactured and plaintiff used was defective. The laboratory contended that no conflict existed and that it had not and would not divulge to defendant any information it had received from plaintiff; defendant also stated that it had received no confidential information. Applying the standard applicable to attorney's faced with such a conflict, the Magistrate found that "[t]he rules governing disqualification are designed to protect against the potential breach of such confidences, even without any predicate showing of actual breach.... The threat or potential threat that confidences may be disclosed is enough." 113 F.R.D. at 591. Finding that the matters as to which the defendant sought the expert's testimony were substantially related to those for which it was consulted by the plaintiff, in that the factual contexts were similar or related, the court granted the motion to disqualify. Similarly, in the case at hand, the matters Fustok and Conti discussed with Teweles are substantially related to those that underlie Michelson's claims against them. Although Teweles may not have revealed confidences to the plaintiff, the potential exists.

The facts presented in the motion more closely resemble those of *Marvin Lumber* than of *EEOC v. Locals 14 and 15, IOUE,* 24 Fair Empl.Prac.Cas. (BNA) 1821 (S.D.N.Y.1981), in which Judge Broderick denied a motion to disqualify an expert, retained by the plaintiff, whose partner had received confidential information when consulted by the defendants. Judge Broderick held that Canon 4 of the American Bar Association Code of Professional Responsibility, providing for preservation of a client's confidences and secrets, did not require disqualification of the expert, because there was no

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

evidence that confidences had been divulged or "that protection against disclosures cannot be provided." Id. at 1826.

In this case, while there is no evidence that confidential information has been disclosed, there is no way to protect against a potential future breach. In *EEOC,* the two parties had given the information to different individuals, who had separate offices and files. In this case, a single individual has all the information; try as he might, Teweles cannot possibly create separate spaces within his memory equivalent to the protective divisions in *EEOC.*

***5** Of course, Michelson's argument that he will be prejudiced by disqualification of Teweles cannot be ignored. Unlike Fustok, who had spent 15-20 hours working with Teweles prior to his disqualification, Michelson contends that he has spent hundreds of hours with Teweles, time that he cannot afford to replicate with another expert. Whereas Teweles was one of three experts identified by Fustok, Michelson expresses serious doubt about his ability at this late date to find a satisfactory expert who has not been contacted by one or more of the defendants in the related silver actions. However, the prejudice to Michelson is not such that it overcomes the risk that Teweles will minimally be subconsciously affected by the information he received previously from defense counsel. Permitting him to testify would at best create an appearance of impropriety and at worst compromise the proceedings by providing plaintiff with confidential information. Unlike Fustok, whose expert was disqualified a short time before trial, Michelson's case will not be tried in the near future; time remains for him to find and prepare a new expert.

However, because the prejudice is not negligible, the motion to disqualify is granted with one caveat. Should Michelson's pending motion for partial summary judgment against Fustok, as well as others, based on the collateral estoppel effect of the *Minpeco* verdict be granted, it is conceivable, as plaintiff suggests, that Teweles' testimony could be limited to damages. [FN17] Then and only then does it appear that Teweles' testimony might not pose the problems of an appearance of impropriety or disclosure of confidences discussed above. Thus, should the case take the posture described above, plaintiff may propose and defendant Fustok oppose Teweles' designation as an expert, with his testimony limited to an assessment of damages.

* * *

As the above discussion indicates, I find it unnecessary to hold a hearing at which Rosen and Stoller must detail the confidential information they gave Teweles. Although Michelson contends that Teweles denies having ever received any confidential information, Teweles, in his deposition of 1985, did not flatly deny having received such information; he only stated that he did not remember any. Moreover, the affidavits submitted in context of the *Fustok* motion, which were resubmitted for this motion (and supplemented), were sufficiently persuasive to establish that confidential information had been imparted to Teweles and thus to make a hearing unnecessary. Accordingly, Michelson's motion for an *in camera* hearing is denied.

2. Sanctions

In answering papers to the motion, Michelson, first in his *pro se* papers and later in papers of counsel, accuses the defendants of witness tampering. According to Michelson, the defendants contacted Teweles not out of a desire to obtain his testimony, but simply to compromise Teweles and prevent him from testifying in any case related to the 1979-1980 events of the silver market. Michelson's counsel maintains that the defendants have no basis to preclude Teweles from testifying, other than that created by their own allegedly mischievous behavior, and thus are subject to Rule 11 sanctions. Defendants contend that the accusation of witness tampering is unfounded and merits sanctions against Michelson and his attorney. [FN18]

***6** As the discussion above establishes, it cannot be said that the motion of Fustok, which CCM and CCL join, lacks foundation in either law or fact justifying Rule 11 sanctions. The affidavits of both Stoller and Rosen establish that they each respectively gave Teweles confidential information during the course of his contact with Teweles. Although each did so in the context of another case, the transactions at issue in *Fustok* are relevant in the case at hand. The law of *Fustok,* as well as of *Marvin Lumber* and *EEOC,* support the defendants' argument that their motion to disqualify is warranted with the meaning of Rule 11 by existing law.

Although there is no reason to believe that Michelson's opposition to the motion was not made in good faith, based on his representations that he would not elicit any confidential information and that he will be prejudiced by disqualification of Teweles, neither he nor his counsel have established that the claim of witness tampering was grounded in fact or supported by any investigation. Plaintiff's counsel contends that the deposition of Teweles, conducted

by Rosen in the context of the *Fustok* case, indicates that "Mr. Rosen and Mr. Stoller each had actual knowledge of other silver litigants and the obvious conflicts which might arise in hiring Dr. Tewles [sic]...." [FN19] The deposition established that Teweles acted frequently as an expert witness in commodity futures trading disputes. While this might well have prompted the defendants to ask Teweles if he had been retained in any related silver action, it does not constitute knowledge of the "obvious" conflicts posed by hiring Teweles. Moreover, it would have been reasonable for Stoller and Rosen to assume that, if Teweles had been retained by others whose interests conflicted with those of the clients of Stoller or Rosen, Teweles would have said so.

Furthermore, both Rosen and Stoller state in their affidavits that they did not know that Teweles had been retained by Michelson until they received the notice of November 12, 1987. Rosen's affidavit, submitted in support of the motion to disqualify in this action, states,

Before Conti retained Professor Teweles as an expert witness in the *Fustok* action, we asked him about any potential conflicts that would disable him from serving as our expert. Professor Teweles represented to us that there were no such conflicts. I never knew that Professor Teweles had ever been retained as an expert by Michelson. [FN20]

The correspondence from Teweles to Stoller indicates that Teweles advised Stoller of his work for Conti, but there is nothing of record to indicate that he was asked or offered information about his involvement in *Michelson.* Rosen's defense against the charge of witness tampering is further strengthened by the fact that he engaged Teweles almost a year before the *Michelson* action was filed. Thus, the evidence contradicts rather than supports the allegation that the defendants tampered with the witness.

***7** By its very language, Rule 11 compels the imposition of sanctions where the papers submitted are found, as is true in this case, not to be well grounded in fact. *Eastway Constr. Corp. v. New York,* 762 F.2d 243, 254 n. 7 (2d Cir.1985) ("By employing the imperative 'shall,' we believe the drafters intended to stress the mandatory nature of the imposition of sanctions pursuant to this rule."), *cert. denied,* 108 S.Ct. 269 (1987). The defendants request that a fine of $10,000 be imposed; Fustok also asks that he be awarded costs of defending against the accusation and that counsel for Michelson be barred from further participation in this case.

The court retains discretion to fashion the form and measure of sanctions, "consider[ing] the gravity of the Rule 11 violation, the circumstances of the violation within the context of the case, and the financial resources of the respective parties." *Calloway v. Marvel Entertainment Group,* 111 F.R.D. 637, 651 (S.D.N.Y.1986). As Judge Weinfeld emphasized in *Tedeschi v. Smith Barney, Harris Upham & Co., Inc.,* 579 F.Supp. 657, 664 (S.D.N.Y.1984), *aff'd,* 757 F.2d 465 (2d Cir.), *cert. denied,* 474 U.S. 850 (1985), the assessment of fees must be fair and reasonable, and made with an eye toward the equities of the case, including the financial resources of the parties.

For several reasons, I decline to impose sanctions as harsh as those proposed by the defendants. *Cf. Calloway,* 111 F.R.D. at 650-51 (because primary purpose of Rule 11 sanctions is to deter future pleadings lacking foundation, sanction need not compensate counsel for costs). First, this is the only instance in the six years of this litigation that a paper or pleading was found to lack a good faith basis. Second, the papers of defendants submitted in support of the request for sanctions were not lengthy nor did they confront complicated legal or factual arguments, thereby indicating that the burden of answering Michelson's allegation was not onerous. Third, although there is no evidence on the record of the financial condition of any of the parties, it is of some significance that Michelson has for five years proceeded in this action *pro se* whereas the moving defendants have consistently been represented by counsel. In addition, I believe that the purpose of sanctions--to deter unfounded allegations and pleadings--will be served by imposition of a smaller fine. Accordingly, Michelson and his counsel, both of whom were involved in the decision not to withdraw the allegation, [FN21] are jointly and severally responsible for payment of a sanction of $500 to Fustok and $500 to CCM and CCL jointly, unless upon competent evidence it is established that such a fine would be unduly burdensome. *Cf. Farino v. Advest, Inc.,* 111 F.R.D. 345, 349-50 (E.D.N.Y.1986) (imposing sanctions on attorney but not plaintiff because it was unclear whether and to what extent plaintiffparticipated in decision to pursue issue). It goes without saying that the penalty for future allegations lacking foundation, should they ever arise, would necessarily be more severe.

* * *

***8** The motion of defendants to disqualify Teweles is

granted, with the one caveat noted above. Plaintiff's motion for an *in camera* hearing and for sanctions is denied. Pursuant to Rule 11, defendants are awarded the sanctions discussed above.

It is so ordered.

FN1. CCM and CCL support this motion but are not moving parties because they believe their pending motions to dismiss for lack of personal jurisdiction will be granted. Their motions have in fact been granted in a separate decision issued this day.

FN2. Plaintiff subsequently withdrew an additional motion for sanctions, filed in response to defendants' motion for sanctions.

FN3. Notice of Motion of ContiCommodity Services, Inc. to Disqualify Teweles in *Fustok v. ContiCommodity Services, Inc.* ("Conti Motion"), Annexed Affidavit of Richard A. Rosen at ¶ 2 (July 18, 1985) ("Rosen Affidavit of July 18, 1985") (resubmitted in support of Fustok's Motion to Disqualify Teweles in *Michelson v. Merrill Lynch, Pierce, Fenner & Smith* ).

FN4. Rosen Affidavit of July 18, 1985 at ¶ ¶ 9-11.

FN5. Conti Motion, Exhibit C (Affidavit of Philip T. Powers at ¶ 8 (July 11, 1985)) ("Powers Affidavit").

FN6. *Id.* at ¶ 9. In his deposition, Teweles recalled receiving the dollar, but did not remember discussing confidentiality. He did state, however, that he would have assumed that any information he received from the defendants would not be used in any way to hurt them. Conti Motion, Exhibit C (Deposition of Teweles of June 19-20, 1985 at 249, 266, 270) ("Teweles Deposition").

FN7. The claims against ContiCommodity Services, Inc. were subsequently dismissed for lack of personal jurisdiction. *Michelson v. Merrill Lynch, Pierce, Fenner & Smith,* 619 F.Supp. 727, 741-42 (S.D.N.Y.1985).

FN8. Reply Affidavit of Richard A. Rosen in *Fustok v. ContiCommodity Services, Inc.* (July 29, 1985), Exhibit A (Letter of January 24, 1985 of Richard J. Teweles to Richard A. Rosen) (resubmitted in support of Fustok's Motion to Disqualify Teweles in *Michelson v. Merrill Lynch, Pierce, Fenner & Smith* ).

FN9. Rosen Affidavit of July 18, 1985 at ¶ 3.

FN10. Fustok's Notice of Motion (January 14, 1988), Exhibit 2 (Letter of May 20, 1985 of Dr. Richard J. Teweles to Herbert Stoller).

FN11. *Id.*

FN12. *Id.*

FN13. Teweles Deposition at 401-402.

FN14. Transcript of *Fustok v. ContiCommodity Services, Inc.,* 82 Civ. 1538 (MEL) at 36-37 (July 31, 1985).

FN15. Affidavit of Dr. Richard J. Teweles at ¶ 2 (November 5, 1987).

FN16. Michelson was instructed to submit an affidavit of Teweles. The affidavit was shown to the court, but not to the parties to this motion because Michelson contended it contained privileged information. For the same reason, the affidavit was not filed.

FN17. Teweles' testimony would not prejudice CCL and CCM in light of the granting of their motions to dismiss the complaint against them for lack of personal jurisdiction.

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

FN18. At a conference of November 18, 1988, defendants advised counsel for Michelson that they would move for sanctions if the accusation were not withdrawn. After considering the matter for ten days, the time allotted by the court, plaintiff's counsel reaffirmed the intent to press the accusation.

FN19. Plaintiff's Response in Opposition to Motion to Impose Sanctions at ¶ 3 (January 27, 1989) (emphasis in the original).

FN20. Affidavit of Richard A. Rosen at ¶ 2 (January 25, 1988).

FN21. The papers of both the plaintiff and later of counsel included allegations of witness tampering. Moreover, at the conference of November 18, 1988, counsel for Michelson indicated that he could not state whether the claim of witness tampering would be withdrawn without consulting with his client. Transcript of November 18, 1988 at 24-25. Counsel's letter to the court (dated November 2, 1988 although sent in response to matter discussed at the November 18 conference), stating that the allegation against Rosen and Stoller would not be withdrawn, indicates that counsel consulted with the plaintiff.

1989 WL 31514, 1989 WL 31514 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works