3

EXHIBIT W

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Scott Schubot, as trustee for
the heirs and next of kin of
Richard M. Schubot, deceased,

Plaintiff,

vs.

Civil No. 3-94-942
**MEMORANDUM OPINION AND ORDER**

Rochester Methodist Hospital,
Rochester St. Mary's Hospital,
Mayo Clinic Physicians, Mayo
Clinic Foundation, Drs. Jane
Doe and/or John Doe

Defendants.

---

Timothy J. Hmielewski, Fort Lauderdale, Florida, for Plaintiff.

William R. Stoeri, Dorsey & Whitney, P.L.L.P., Minneapolis, Minnesota, and Benjamin R. Hippe, Legal Department, Mayo Clinic, Rochester, Minnesota, for Defendants.

---

## Introduction

This matter is before the Court on Plaintiff's[1] Objections to the Report and Recommendation ("R & R") of United States Magistrate Judge Ann D. Montgomery of March 14, 1996. After Plaintiff stipulated to the dismissal of the case, Defendants brought their Motion for Costs, Fees, and Sanctions as allowed by the stipulation. Magistrate Judge Montgomery recommends the granting of Defendants' Motion in the

---

[1]The Objections are filed by both Plaintiff and his attorney. See Pl.'s Objs. 1. For simplicity, the Court will generally refer to "Plaintiff" instead of "Plaintiff and his attorney," except in those situations where a distinction must be made.

MAY 03 1996
FILED
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

MAY 07 1996

amount of $105,109, the full amount of Defendants' costs and fees in defending this lawsuit. For the reasons set forth below, the Court will adopt the R & R and will order Plaintiff and his attorney to pay Defendants' counsel $105,109.

**Background**

The facts of this case are largely undisputed. Plaintiff's father was admitted to the Mayo Clinic in Rochester, Minnesota on August 7, 1992; shortly thereafter, he was found unconscious in his hospital bed in a large pool of blood. He was resuscitated, and was released from the hospital approximately three months later. He died in May of 1993. R & R at 2.

Before filing this lawsuit, Plaintiff stole medical records from the Mayo Clinic surrounding this incident. He showed these records to Timothy Hmielewski, an attorney in Plaintiff's home state of Florida. On August 5, 1994, this lawsuit for wrongful death and medical malpractice was commenced by Plaintiff, represented by Mr. Hmielewski. As laid out in the R & R, Plaintiff and his counsel consistently used the fact that these records were missing as a bargaining chip against Defendants. Id. at 3-5. Plaintiff, through his counsel, directly lied to Defendants on numerous occasions, stating that all medical records in his possession had been sent to Defendants when in fact Plaintiff concealed and retained the stolen records. Id.

Magistrate Judge Montgomery found that sanctions were appropriate. See R & R at 7 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 43-46, 111 S. Ct. 2123, 2132-33 (1991) and Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir.), cert. denied, ___ U.S. ___,

114 S. Ct. 94 (1993)). She found that both Plaintiff and his counsel acted in bad faith throughout the litigation, lying about Plaintiff's possession of crucial documents, and using the fact that the records were "missing" to attempt to extort a larger settlement from Defendants. R & R at 8. Further, she found that a monetary sanction of $105,159, representing the total amount of Defendants' fees and costs, should be assessed against Plaintiff. Id.

Plaintiff filed Objections to the R & R,[2] which can be summarized as follows: 1) Plaintiff and counsel did not act in bad faith, as the claim asserted was not baseless or frivolous; 2) Magistrate Judge Montgomery did not give sufficient weight to counsel's duty to protect confidential information given to him by Plaintiff; and 3) Defendants should only be awarded their expenses attributable to the records being withheld.

## Discussion

### I. Standard of Review

A district court must make an independent, de novo review of those portions of a Report and Recommendation to which objections have been made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

---

[2]The Objections were not filed until April 1, 1996. Plaintiff's Objections are untimely. In the interests of justice, and given that the delay caused little discernible prejudice to Defendants, the Court will consider Plaintiff's arguments, which in any case are satisfactorily addressed in the R & R.

## II. Bad Faith of Plaintiff and Counsel

The undisputed facts of this case exhibit a brazen disregard for the law, this Court, ethical behavior, and justice. Plaintiff misses the mark when he argues that the case itself was brought in good faith. The merit of Plaintiff's claim is completely separate from the repugnant behavior engaged in by Plaintiff and his counsel. Plaintiff took the medical records; he showed them to counsel; they then filed a lawsuit; they concealed the documents from Defendants despite proper discovery requests for them; and then Plaintiff and his counsel attempted to use the fact that the records were missing to threaten Defendants into a hefty settlement. During the hearing on this Motion before Magistrate Judge Montgomery, Mr. Hmielewski admitted that he had pointed out to Defendants that the missing records would damage them during settlement talks. He felt "badly" about using this "unfair leverage," but noted that "[f]ortunately, nothing came of it in terms of the settlement offers." Pl.'s Mem. of Law in Response to Hearing on Defs.' Motion for Costs, Fees, and Sanctions, Ex. A, at 18. The fact that his fraudulent effort to obtain a favorable settlement was ineffective does not mitigate his shocking misconduct.

In his Objections, Plaintiff also attempts to argue that records were, in reality, not that important, as they did not shed light on central issues in the case. Pl.'s Objs. 2. Whether, in hindsight, the documents were neither inculpatory nor exculpatory does not subtract from the magnitude of the intolerable acts committed by Plaintiff and his counsel.

## III. Confidentiality Obligations

It is argued that Plaintiff's counsel had an obligation to conceal the fact that his client had stolen the medical records, because of his duty to maintain the confidences of his client. Plaintiff cites the comment to Minnesota Rule of Professional Conduct 1.6: "a lawyer is not permitted . . . to disclose a client's criminal or fraudulent act committed prior to the client's retention of the lawyer's services." Plaintiff neglects to mention that the comment also states: "The confidentiality required under this rule should not allow a client to utilize the lawyer's services in committing a criminal or fraudulent act." Rule 1.6(b)(4) expressly allows a lawyer to reveal "confidences and secrets necessary to rectify the consequences of a client's criminal or fraudulent act in the furtherance of which the lawyer's services were used."

In this case, however, Plaintiff's counsel developed and expanded the fraud through the use of direct lies to opposing counsel. No dilemma between competing ethical obligations exists. Far from merely refraining to disclose a client's past bad act, Mr. Hmielewski abused his profession by sanctioning and operating to further his client's fraud during litigation. He clearly disregarded the Federal Rules of Civil Procedure, R & R at 12-13, and did not transmit documents to Defendants' counsel as he was required to do. Minnesota Rule of Professional Conduct 1.6(b)(2) also allows a lawyer to reveal a client's confidences or secrets when required by law. Moreover, Rule 3.3(a) states that a lawyer shall not knowingly make a false statement of fact to a tribunal or "fail to disclose a fact to a tribunal when disclosure is necessary to avoid assisting a criminal or fraudulent

act by the client." Rule 3.3(b) clearly instructs that the duties in Rule 3.3(a) "apply even if compliance requires disclosure of information otherwise protected by Rule 1.6."

Mr. Hmielewski has also disregarded his obligations under Minnesota Rule of Professional Conduct 1.2(c) ("A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent . . ."); 1.16(a)(1) (". . . a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if . . . the representation will result in violation of the Rules of Professional Conduct or other law); 3.4(a) (a lawyer shall not "unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value" or counsel another person to do so); 3.4(d) (a lawyer shall not "fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party"); 4.1 ("In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law."); 8.4(c) (it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation"); and 8.4(d) (it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice").

Moreover, as Magistrate Judge Montgomery observed, that Mr. Hmielewski created this "dilemma" himself, by instituting this lawsuit knowing that Plaintiff had stolen the records. "Mr. Hmielewski was under no obligation to file a lawsuit on behalf of Scott Schubot." R & R at 11. The "ethical dilemma" defense is groundless, as is any assertion of attorney-client privilege--the privilege does not sanction fraud, violation of

the Federal Rules, or violation of the Rules of Professional Responsibility. R & R at 11-12.

This Court has reviewed all of the relevant material in the file de novo, and finds that Magistrate Judge Montgomery's findings as to the conduct of Plaintiff and his counsel are fairly supported by the record. The record also warrants the imposition of sanctions to the extent they represent the costs and fees of Defendants in proceeding with this litigation.

**IV. Amount of Sanctions**

Magistrate Judge Montgomery properly determined that sanctions were appropriate. Plaintiff argues that the sanction amount suggested, $105,159, is too high, and should be reduced to reflect that proportion of Defendants' costs attributable to the stolen records. Pl.'s Objs. 4-5. Plaintiff also notes that he voluntarily dismissed his case, and that dismissal of a case is normally regarded as the most severe sanction possible. Id. at 6. Thus, "Plaintiff's counsel is left wondering if he did not voluntary [sic] dismiss this action, thereby resolving this matter pre-trial, would the Court merely have dismissed the case as its sanction." Id.

In order to put an end to the speculation of Plaintiff's counsel, the Court notes that the dismissal of the case and the imposition of large monetary sanctions would be entirely appropriate on these facts. Sanctions are also designed to punish misconduct and deter future misconduct, in addition to making the wronged party whole. See National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S. Ct. 2778,

2781 (1976). While the amount of the sanction is sizable, the conduct of Plaintiff and his counsel demands no less.[3]

The Court will adopt the R & R in its entirety. Plaintiff and his counsel will be jointly and severally liable for paying the amount of $105,159 to Defendants' counsel. Of course, Defendants and counsel may reach a separate agreement on the manner of distributing this sum between themselves.

[3]The Court believes that a further monetary sanction as a penalty for the misconduct here involved would have been appropriate.

## Conclusion

Accordingly, based on the foregoing, and all of the records, files, and proceedings herein, **IT IS ORDERED** that the Report and Recommendation of Magistrate Judge Montgomery dated March 14, 1996 (Doc. No. 37) is hereby **ADOPTED. IT IS FURTHER ORDERED** that Defendants' Motion for Costs, Fees, and Sanctions (Doc. No. 29) is **GRANTED**, and that Plaintiff Scott Schubot and his counsel, Timothy J. Hmielewski, pay to Defendants' counsel, William R. Stoeri and/or Benjamin R. Hippe, the sum of $105,159. Plaintiff Scott Schubot and attorney Timothy J. Hmielewski are jointly and severally liable for this amount.[4]

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

May 3, 1996

RICHARD H. KYLE
United States District Judge

---

[4]The Court notes that it has received a copy of a letter from Defendants' counsel dated April 10, 1996, to officials of the Florida Bar, inviting an investigation of Mr. Hmielewski and his misconduct in this matter. A copy of this Memorandum Opinion and Order is also being sent to the Florida Bar.

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Scott Schubot, as trustee for the heirs and next of kin of Richard M. Schubot, deceased,

Plaintiff,

v.

Civil No. 3-94-942
**REPORT & RECOMMENDATION**

Rochester Methodist Hospital,
Rochester St. Mary's Hospital,
Mayo Clinic Physicians,
Mayo Clinic Foundation,
Drs. Jane Doe and/or John Doe,

Defendants.

---

Timothy J. Hmielewski, Esq., Fort Lauderdale, Florida, for Plaintiff.

William R. Stoeri, Esq., Dorsey & Whitney, P.L.L.P., and Benjamin R. Hippe, Esq., Legal Department, Mayo Clinic, for Defendants.

---

## INTRODUCTION

Plaintiff Scott Schubot ("Schubot") commenced this diversity action on August 5, 1994 against the above-named Defendants (hereinafter collectively referred to as the "Mayo Clinic") alleging claims for wrongful death and medical malpractice. On February 6, 1996, Judge Richard H. Kyle signed a stipulated order dismissing this case with prejudice, but allowing Defendants leave to bring this motion. The matter is currently before the Court on the Defendants' Motion for costs, fees and sanctions. For

MAR 19 1996

FILED MAR 15 1996
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

the reasons set forth below, this Court recommends that Defendants' Motion be granted.

**BACKGROUND**

At approximately 1:00 a.m. on August 7, 1992, Richard Schubot (Plaintiff Scott Schubot's father), age 66, arrived at the Mayo Clinic via air ambulance from a Florida hospital. He was admitted and initially examined by Dr. Erwin Buckel. At approximately 7:00 a.m. that morning, Richard Schubot was found lying across his hospital bed unconscious. There was a large pool of blood around him and he was bleeding from a central venous line, a medical device which enters a main vein and is used, among other applications, for administering medications. Richard Schubot was resuscitated and later released from the hospital in November of 1992. Richard Schubot died several months later in May of 1993..

It is undisputed that at some point after the bleeding incident and before this lawsuit was filed, Plaintiff stole the crucial medical records from the Mayo Clinic.[1] See Stoeri Aff., Ex. T. He then showed the records to his attorney, Timothy J. Hmielewski, Esq., an attorney licensed to practice law in the State of Florida, the Schubots' home state. Thereafter, on August 5, 1994, Plaintiff, represented by Mr. Hmielewski, filed this lawsuit alleging claims for wrongful death and medical malpractice. His case centered on

---

[1]At the Mayo Clinic, the records for each patient are located near the patient's hospital room. They are kept in the open so as to be accessible to the doctors and nurses. During the course of several treatment episodes over many years, the Mayo Clinic had generated ten separate folders of treatment records for Richard Schubot. Scott Schubot took one folder from the Mayo Clinic, the folder containing the key records surrounding the bleeding incident. See Hearing Tr. at 7-8, attached as exhibit A to Plaintiff's Memorandum.

the bleeding incident, alleging that the Mayo Clinic's doctors and nurses failed to properly monitor Richard Schubot's central venous line.

After commencing this action, Plaintiff's local counsel sought the production of all of Richard Schubot's medical records. Plaintiff's local counsel noted that the key records regarding Richard Schubot's August 7, 1992 bleeding incident were missing.[2] Later, on December 9, 1994, the Mayo Clinic received Plaintiff's Demand for Production of Documents, which sought production of the missing records. See Stoeri Aff., Ex. A. The Mayo Clinic conducted an extensive search but, of course, was not able to find the missing records which had already been taken by Scott Schubot.

Since it did not have the records, the Mayo Clinic was unable to determine Richard Schubot's condition at the time he was admitted. In addition, Defendants were unable to discover if anything was done which might have caused the bleeding incident. Consequently, its investigation and defense of this case were greatly hindered by the missing records. Moreover, the Mayo Clinic's trial risk was substantially enhanced due to likely negative inferences to be drawn against the Mayo Clinic because of the "missing" records.

From the outset, Plaintiff and his counsel used the missing records as a weapon against the Mayo Clinic. First, in the parties' Rule 26(f) report, when describing material

---

[2]It is undisputed that Plaintiff's local counsel was never informed that Scott Schubot had taken the pertinent records. According to Mr. Hmielewski, he was never authorized by Plaintiff to reveal that important fact to local counsel. See Hearing Tr. 17, Ex. A to Pl.'s Mem.

factual issues to be resolved in this case, Plaintiff included the statement:

> Why defendant hospital has failed to maintain and produce critical patient records which would have been customarily kept during the time frame that the decedent was exsanguating in his hospital bed.

See Stoeri Aff., Ex. B. In addition, in an affidavit regarding Plaintiff's experts, Mr. Hmielewski asserted that one of Plaintiff's experts was of the opinion, based in part on the missing records, that the records had been tampered with after the bleeding incident. Id. at Ex. R. Finally, in a letter seeking a settlement of $400,000, Mr. Hmielewski supported his demand by hammering the fact that liability against Mayo would be established by proof that the hospital had "lost" pertinent medical records. Id. at Ex. S.

While Plaintiff was bludgeoning Defendant with the missing records, he and his counsel were repeatedly denying that they possessed them. On February 3, 1995, in Plaintiff's initial Rule 26(a)(1) disclosure, Plaintiff's counsel wrote that,

> Although not in the Plaintiff's possession, the following documents would be used by the Plaintiff to establish his claim [particularly since the Defendant has not produced a complete medical record related to the Defendants' care and treatment of Richard Schubot] . . . Any incident report for the August 7, 1992 bleed-out of Richard Schubot . . . [or] Laboratory slips and medical charts for Richard Schubot from 11:00 p.m. on August 6, 1992 through 7:00 am. on August 7, 1992.

See Stoeri Aff., Ex. C., p. 8, ¶ 13(a) & (b). Subsequently, in search of the key records, Defendants served two sets of interrogatories and two sets of document requests on Plaintiff. Id. at Exs. D, E, F, G. In order to clarify any misunderstanding, Defendants specifically asked Plaintiff to:

> Please provide copies of any medical records of Richard M. Schubot's in the possession, custody, or control of Scott Schubot, or of any the heirs and next of kin of Richard M. Schubot.

Id. at Ex. G, Req. No. 4. Plaintiff responded by insisting that all medical records in his possession had already been sent. Despite Plaintiff's assurances, Defendants continued to send correspondence to Plaintiff's counsel seeking the medical records in Scott Schubot's possession. Id. at Ex. J. Defendants were never voluntarily told that Scott Schubot had the records.

On January 9, 1996, the Mayo Clinic's counsel took the deposition of Scott Schubot. In that deposition, Schubot was finally forced to admit that he had taken the original Mayo records prior to commencing this lawsuit and that he had revealed this to Mr. Hmielewski prior to beginning this action.[3] See Schubot Dep. at 75-80, Stoeri Aff., Ex. T. Shortly thereafter, Mr. Hmielewski contacted the Mayo Clinic's counsel and informed him that Plaintiff was going to dismiss his case with prejudice. In addition, Plaintiff's counsel agreed that Defendants were entitled to costs and fees incurred in discovery efforts related to the missing records. See Stoeri Aff., Ex. U. As part of the dismissal, Defendants reserved the right to seek fees, costs and sanctions. Id. at V.

In their Motion, Defendants allege that Plaintiff's conduct in stealing the medical records greatly increased its costs, fees and expenses in investigating and defending against this lawsuit. Consequently, Defendants seek to have Scott Schubot and Timothy Hmielewski pay all its costs and fees incurred in defense of this matter, a total of

[3]At the hearing on this Motion, Mr. Hmielewski admitted that he knew that Scott Schubot had taken the records before initiating this litigation. See Hearing Tr., p. 4, Pl. Mem., Ex. A.

$105,159. In the alternative, since it estimates that the inability to use the records in its defense doubled its expenses, the Mayo Clinic seeks an award of half its costs and fees. In his responsive papers filed three days after the hearing,[4] Plaintiff and his counsel request that Defendants only be awarded "those reasonable extraordinary expenses attributable to the Mayo Clinic medical records being withheld and that would otherwise not have been incurred in defending the case." See Pl.'s Mem., at 9. He also requests that he not be sanctioned because he allegedly could not reveal the whereabouts of the missing records for ethical and legal reasons. Specifically, he contends that Minnesota Rule of Professional Conduct 1.6 titled "Confidentiality of Information" and the Attorney-Client Privilege prevented him from informing the Mayo Clinic that Scott Schubot possessed the records.

## DISCUSSION

### I. Propriety of Sanctions.

The first issue to be resolved is whether sanctions are warranted against Scott Schubot and Timothy Hmielewski. In cases which go beyond the scope of Rule 37,[5]

---

[4]Plaintiff never requested permission to submit a memorandum after the hearing. However, because of the nature of the proceeding and the issues at stake, Plaintiff's memorandum was received and considered by the Court prior to issuing this R & R.

[5]"Rule 37, Fed.R.Civ.P., is applicable to the "normal" disputes, delays, or difficulties occurring in civil litigation. Its sanctions are appropriate in instances of a litigant's failure to make or cooperate in discovery. Rule 37 enables a court to punish the litigant who has not responded adequately to discovery requests of an opposing party or to orders of the court compelling discovery." Capellupo v. FMC Corp., 126 F.R.D. 545, 551 n.14 (D. Minn. 1989). Although Rule 37 is applicable to some actions in this case, sanctions permissible under it are designed to address impermissible discovery conduct. Rule 37 is not broad enough to properly address the type of wholesale deception present from the inception of this lawsuit.

Courts are vested with the "inherent power to regulate litigation, preserve and protect the integrity of proceedings before it, and sanction parties for abusive practices." Capellupo v. FMC Corp., 126 F.R.D. 545, 551 (D. Minn. 1989). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Chambers v. Nasco, Inc., 501 U.S. 32, 43, 111 S.Ct. 2123, 2132 (1991), quoting, Link v. Wabash R. Co., 370 U.S. 626, 630-31, 82 S.Ct. 1386, 1388-89 (1962).

As part of its inherent power, a court may dismiss an action, assess attorney's fees and impose monetary or other sanctions appropriate for conduct abusive of the judicial process. Harlan v. Lewis, 982 F.2d 1255, 1259 (8th Cir. 1993). Attorney's fees are warranted when a party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers, 501 U.S. at 45-46, 111 S.Ct. at 2133; Harlan, 982 F.2d at 1260; McEnany v. West Delaware County Comm. School Dist., 844 F.Supp. 523, 534 (N.D. Iowa 1994). Attorney's fees are appropriate when a fraud has been practiced upon the court or when a party shows bad faith by delaying or disputing the litigation. Chambers, 501 U.S. at 46, 111 S.Ct. at 2133. Sanctions serve "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." Id. (citations omitted).

In this case, sanctions against Plaintiff and his counsel are entirely appropriate as the conduct rises well beyond obstinacy to dishonesty. Both Plaintiff and his counsel

acted in bad faith throughout the course of this litigation. From the outset, Plaintiff and his counsel lied to Defendants about Plaintiff's possession of the key records. Throughout discovery, Defendants repeated requests for the key medical records were resisted. Plaintiff and his counsel simply refused to turn over the properly sought records.

Moreover, Plaintiff and his counsel also attempted to use the fact of the missing records as a weapon with which to extract a substantial sum of money from the Mayo Clinic. Several times Plaintiff insisted that the absence of the records would ultimately embarrass the Clinic and serve as a cornerstone of his case. In addition, Mr. Hmielewski premised a settlement request for $400,000 in large part on the difficulty of defending a clinic which had "lost" records. If not for Defendants' resolve to try this case despite the missing records, Plaintiff and his counsel would likely have been successful in their deception.

The conduct of both Plaintiff, in taking the records, and his counsel, in using his client's theft as an offensive weapon, is extremely troubling. It is conduct of just this sort which has thrust the legal profession into public disfavor. "Ethical considerations can no more be excluded from the administration of justice, which is the end and purpose of all civil laws, than one can exclude the vital air from his room and live." John F. Dillon, Laws and Jurisprudence of England and America, Lecture I, (1894). Plaintiff and his counsel have acted in bad faith. Thus, sanctions are appropriate.

II. Amount of Sanctions.

In this case, Defendants request an award of $105,159, or, in the alternative, half of that amount. Plaintiff requests that the award of fees be limited to Defendants' reasonable expenses attributable to the records being withheld.

Where a party acts in bad faith, a court has a wide array of sanctions from which to choose. Harlan, 982 F.2d at 1259. The most severe sanction available to a court is default and dismissal. Capellupo, 126 F.R.D. 545. A court may also impose monetary sanctions including attorney's fees for conduct which abuses the judicial process. Harlan, 982 F.2d at 1259. Sanctions serve several purposes including punishing the party for its improper conduct, deterring others who might be tempted to emulate the wrongdoer and also to make whole the prevailing party. National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643, 96 S.Ct. 2778, 2781 (1976), Chambers, 501 U.S. at 46, 111 S.Ct. at 2133.

In the case at bar, the severe sanction of default and dismissal is not available to the Court because Plaintiff dismissed his case with prejudice after it was discovered that he had stolen the key records. However, considering the expense to Defendants created by this case, dismissal can not appropriately conclude this matter, monetary sanctions can.

From the outset, Plaintiff and his counsel were dishonest with Defendants. Plaintiff stole the key medical records from Defendants and never revealed this fact to them until under oath at his deposition. Moreover, Plaintiff's and his counsel's conduct

went far beyond mere discovery ploys. In fact, they used the allegedly missing records to attempt to gain strategic and monetary advantage.

This case may never have been filed if Plaintiff had not taken the records. The missing records were a substantial part of Plaintiff's case in establishing Defendants' alleged negligence. However, even if a case would have been filed, Plaintiff's conduct greatly increased Defendants' costs in defending against Plaintiff's claims. When Plaintiff's conduct is analyzed in light of the punishment, deterrent and make whole purposes of awarding sanctions, it is apparent that Plaintiff's sanction should be for the full amount of Defendants' costs and fees in this case. Accordingly, Plaintiff and his counsel should pay Defendants a total of $105,159.[6]

III. <u>Mr. Hmielewski's Defenses</u>.

In support of his claim that he should not be sanctioned, Mr. Hmielewski alleges that he was torn between his ethical and legal obligations to his client and his obligations to properly respond to valid discovery requests. He contends that Rule 1.6 of the Rules of Professional Conduct required him to not disclose that his client had taken the Mayo Clinic's records. In addition, he asserts that he was further barred from revealing his client's improper conduct by the attorney-client privilege. His argument is specious and,

---

[6]It is apparent that Plaintiff and his counsel can afford to pay this amount in sanctions and that imposition of this admittedly large award does not impose undue hardship. At the hearing, Mr. Hmielewski did not contest Defendants' claims that Scott Schubot is entitled to all but $8 million of his father's estate valued at $25-30 million. In addition, it was also uncontroverted by Mr. Hmielewski that Plaintiff testified at his deposition that he spent $400,000 to $500,000 annually on his race car hobby in the years 1992 through 1994. <u>See</u> Hearing Tr. at 11, Ex. A, Pl. Mem.

therefore, should fail.

A. The Purported Dilemma.

First, although Mr. Hmielewski paints himself as a sympathetic figure caught on the horns of a painful dilemma, he completely fails to mention that he was aware that Scott Schubot stole the records prior to the time he instituted this lawsuit. Thus, to the extent that any actual dilemma existed, it was entirely self-induced. Mr. Hmielewski was under no obligation to file a lawsuit on behalf of Scott Schubot.

Indeed, Rule 1.16(a) of the Rules of Professional Conduct states that: ". . . a lawyer shall not represent a client . . . if: (1) the representation will result in violation of the Rules of Professional Conduct or other law." Rule 3.4 provides that "A lawyer shall not: (a) unlawfully obstruct another party's access to evidence . . . . A lawyer shall not counsel or assist another person to do any such act." Since, prior to initiating this action, Mr. Hmielewski was aware that he would have to violate Rule 3.4 in representing Plaintiff, he was likely obligated by Rule 1.16(a) not to represent Scott Schubot. Moreover, filing this lawsuit generated any conflict that existed. Consequently, Mr. Hmielewski is not entitled to hide behind a conflict that he actively and knowingly created. His attempts to do so demonstrate a continued pattern of deceptive conduct begun with the filing of this case.

B. Ethical and Legal Obligations.

Mr. Hmielewski contends that his opportunity to respond truthfully to the Mayo Clinic was constrained by both ethical and legal obligations owing to his client. He

claims that Rule 1.6 of the Rules of Professional Conduct required him to refrain from disclosing Scott Schubot's improper and illegal conduct. In addition, he alleges that disclosure of the key records would have been protected by the attorney-client privilege and the Fifth Amendment privilege against self-incrimination.

While the validity of his ethical claims is far from certain, it is clear that Mr. Hmielewski's conduct did not comply with the Federal Rules of Civil Procedure. Federal Rule of Civil Procedure 26(b) permits a party to obtain discovery regarding any relevant, non-privileged matter. If a party claims that information may not be discovered because it is privileged, the party "shall make the claim expressly." Fed.R.Civ.P. 26(b)(5), see also Fed.R.Civ.P. 33(b)(1)("each interrogatory shall be answered . . . unless it is objected to, in which event the objecting party shall state the reasons for objection. . . .") and Fed.R.Civ.P. 34(b)("The response [to each request for production of documents] shall state . . . that inspection and related activities will be permitted as requested, unless the request is objected to, in which event the reasons for the objection shall be stated."). Thus, any claim that some matter or information is exempt from discovery because it is privileged must be expressly raised by the party asserting the privilege. See generally, Wright, Charles A.; Miller, Arthur R. and Marcus, Richard L., 8 Federal Practice and Procedure, § 2016.1 (1994).

In this case, rather than asserting the privilege to Defendants' interrogatories and requests for production, Mr. Hmielewski lied about Scott Schubot's possession of the key records. See Stoeri Aff., Ex. I. This conduct is contrary to that required by the Federal

Rules of Civil Procedure and makes the party, not the court, the ultimate arbiter of what materials are privileged. See 8 Federal Practice and Procedure at § 2016.1. Therefore, Mr. Hmielewski is not entitled to rely on the defenses he asserts to ward off the imposition of sanctions. In fact, it appears that Mr. Hmielewski's defenses amount to nothing more than an ad hoc revisionistic attempt to justify actions that he knew were clearly improper from day one.

IV. Reporting Obligations.

Each licensed attorney is obligated to comply with the Rules of Professional Conduct. As a self-regulating body, the legal profession depends on its members to initiate disciplinary investigations when they know that a violation of the Rules of Professional Conduct has occurred. See Comment to Rule 8.3. Furthermore, Rule 8.3(a) of the Rules of Professional Conduct provides that:

> A lawyer having knowledge that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the Office of Lawyers Professional Responsibility.

Without determining what, if any, action should be taken, the Court wants Defendants' counsel to be cognizant of their reporting obligations. They should conduct an independent evaluation of Mr. Hmielewski's conduct in light of the Rules of Professional Conduct and should take whatever action they deem appropriate.

## CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that:

1. Defendants' Motion for costs, fees and sanctions (Doc. No. 29) be **GRANTED**,

and

2. Defendants' be awarded $105,159 against Plaintiff Scott Schubot and his

counsel, Timothy J. Hmielewski, Esq.

Ann D. Montgomery
United States Magistrate Judge

Dated: March 14, 1996

Pursuant to Local Rule 72.1(c)(2) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by MARCH 29, 1996, a writing which specifically identifies those portions of this Report to which objections are made, the basis of those objections and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.