EXHIBIT X

FILED
JUN 10 2004
CLERK, U.S. DISTRICT COURT
RICHMOND, VA
KS

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

| | |
|---|---|
| MELANIE LEWIS, Plaintiff. v. CAPITAL ONE SERVICES, INC. Defendant. | Civil Action Number 3:04CV186 |

**MEMORANDUM OPINION**

THIS MATTER comes before the Court on Defendant's Motion to Disqualify Counsel. On May 5, 2004, this Court entered an Order granting limited discovery for Defendant Capital One to investigate the nature of the privileged information that Plaintiff's Counsel possessed. Defendant now moves to disqualify Plaintiff's Attorney Mr. Harris D. Butler and his entire firm. For the reasons stated below, the Court hereby GRANTS Defendant's Motion to Disqualify Counsel.

I.

Plaintiff Melanie Lewis ("Plaintiff") held an executive position with Defendant Capital One Services, Inc.'s ("Defendant") Human Resources Department. In her position, Ms. Lewis sought and received privileged legal advice from in-house counsel regarding a wide range of issues, including issues that directly underlie both her individual and class charge of gender discrimination filed with the Equal Employment Opportunity Commission ("EEOC"). In fact, Ms. Lewis received and carried out specific legal advice with respect to the redeployment of one of her direct subordinates, Ms. Jannon Pierce, who has also filed individual and class claims of gender discrimination and who is

35

also represented by Plaintiff's Attorney, Harris Butler ("Plaintiff's Counsel"). Plaintiff also received confidential information regarding a workforce redeployment initiative, which she was leading, while at the same time challenging the Company's redeployment process and decision making as being discriminatory to women.

On the day after Plaintiff's Counsel filed the EEOC charge on Plaintiff's behalf, Plaintiff returned a stack of Company documents that she had in her possession. Defendant alleges that some of the documents were marked attorney-client privileged, while others were not privileged but were highly confidential Company documents. Some of the privileged documents also contained legal strategies and other information regarding one of Plaintiff's Counsel's other clients, Jannon Pierce. Defendant alleges that there was no legitimate business reason for Ms. Lewis to have access to some of the privileged and confidential documents that she returned.

Defendant specifically alleges that Plaintiff has both (1) obtained privileged or confidential information that she was not entitled to have, and shared it with Plaintiff's Counsel and (2) shared privileged or confidential information that she was entitled to have — but that does not relate to her claim with Plaintiff's Counsel.

As a result of its concern that Plaintiff had breached her duties to Capital One, Defendant placed Plaintiff on a paid leave of absence and began an investigation into her possible misconduct. Defendant alleges that the investigation revealed that Plaintiff had been surreptitiously gathering Company-related information and destroying evidence of her actions. Ms. Kim Wheeland ("Ms. Wheeland"), Plaintiff's administrative assistant, has alleged that around the time when Plaintiff first met with Attorney Butler, in November 2003, Plaintiff instructed her to retrieve information including spreadsheets and other information that had been sent to Plaintiff. Ms. Wheeland alleges

that Plaintiff instructed her to make hard copies of the information onto a disk, and immediately delete the original information from her inbox. Ms. Wheeland alleges that she found the requests very unusual, particularly because Plaintiff instructed her not to look at the data "for [her] own good." No computer disks have been returned to Defendant.

Defendant also alleges that Plaintiff's Counsel used the information to prepare the EEOC charges against Capital One. Defendant alleges that immediately after learning about the decision to place Plaintiff on a leave of absence, Plaintiff's Counsel e-mailed Capital One's counsel and referred to the returned documents as "the supporting documents" to her EEOC charge, a claim that implicitly suggests he had knowledge of their content.

Defendant also alleges that in his Memorandum Supporting Plaintiff's Application for Preliminary Injunction, Plaintiff's Counsel argued that Defendant's concerns regarding Plaintiff's access to privileged documents is misplaced because the documents she had access to were "business advice" which "falls outside the privilege." Defendant alleges that Plaintiff's Counsel would only be able to make this statement if he had in fact, reviewed these documents and determined that they were "business" rather than privileged legal advice.

Contrary to this Court's direct Order, Plaintiff refused to provide direct answers to the Court-Ordered discovery, and Plaintiff's Counsel refused to disclose the nature of many of the possibly privileged documents it obtained from Ms. Lewis. Plaintiff's Counsel also admits that one of the associates in his firm reviewed at least one of the documents that clearly contained privileged material. For the reasons discussed below, Defendant's Motion to Disqualify Counsel is GRANTED, and Plaintiff's Counsel and his entire firm must beDISQUALIFIED from this matter.

II.

When a court is determining whether to disqualify counsel, the general rule is that the trial court should prevent even the appearance of impropriety, and resolve all doubts in favor of disqualification. Dacotah Marketing and Research, L.L.C. v. Versatility, Inc., 21 F. Supp. 2d 570, 582 (E.D. Va. 1998). The Fourth Circuit has explained that the court "is not to weigh the circumstances 'with hair-splitting nicety' but, in the proper exercise of its supervisory power over the members of the bar and with a view of preventing 'the appearance of impropriety,' it is to resolve all doubts in favor of disqualification." United States v. Clarkson, 567 F.2d 270, 273 n.3 (4th Cir. 1977).

A party moving to disqualify opposing counsel bears a "high standard of proof" in light of an individual's right to freely choose counsel. Government of India v. Cook Industries, Inc., 569 F.2d 737, 739 (2d Cir. 1978); see also Evans v. Artek Systems Corp, 715 F.2d 788, 794 (2d Cir. 1983). However, the right of a party to retain counsel of the party's choosing must be balanced with "the Court's duty to maintain the highest ethical standards of professional conduct to insure and preserve trust in the integrity of the bar." Tessier v. Plastic Surgery Specialists, Inc., 731 F. Supp. 724, 729 (E.D. Va. 1990). Courts have warned, however, that the conflict must be "actual or likely" and not just conjectural. Id.

Defendant has met the high standard of proof necessary in a motion to disqualify. Plaintiff's actions in both refusing to answer Court-Ordered inquiries into exactly what Plaintiff's Counsel reviewed in this matter, and the actual viewing of at least one privileged document, illustrate that the conflict here is actual and not conjectural. Moreover, because Plaintiff's Counsel has been tainted by the improper review of privileged material, his entire firm must be disqualified.

A. Plaintiff's Counsel's Review of Privileged Information requires his Disqualification.

Plaintiff's Counsel received privileged communications outside the ordinary course of discovery and through no fault of Capital One, and therefore he must be disqualified. As a general rule, a company owns all privileged information and once an employee becomes adverse to the company, that employee's access to the privileged communications ends. Sandberg v. Virginia Bankshares, 979 F.2d 332, 351 (4th Cir. 1992). Because Plaintiff's Counsel's firm has reviewed Defendant's privileged communications, his entire firm must be disqualified.

The facts of this case are analogous to Richards v. Jain, 168 F. Supp. 2d 1195 (W.D. Wash. 2001). In Richards, a client made copies of privileged communications and gave them to his lawyer. The client copied all of the e-mails from his computer hard drive at work, including e-mails that were "clearly marked 'Attorney-Client Privileged' that contained information subject to Defendants' attorney-client privilege and were relevant to [the] case." Id. at 1198. The firm did not inform the opposing side that it had the disk, but produced the relevant e-mails in the course of discovery.

The court in Richards held that the "undisputed facts in this case make it clear that disqualification of [the firm] is necessary to remedy the substantial taint placed on any future proceedings by the possession and review of the Disk." Id. at 1200 (emphasis added). The court explained that once the firm "knew of the possession of the privileged documents, [it] had an affirmative duty not to review the contents of the Disk and to return the Disk." Id. at 1201 (emphasis added).

The court further explained that "[a] reasonable member of the bar or the public would . . . share the nagging suspicion that plaintiffs' trial preparation and presentation of their case had benefitted from confidential information obtained from [the Disk]." Id. at 1209 (quoting Williams

v. Trans World Airlines, Inc., 588 F. Supp. 1037, 1045 (W.D. Mo 1984)). The court reasoned that simply returning the disk, after it had been reviewed would not remove the taint because "disclosure of privileged information cannot be undone." Id. The "only remedy to mitigate the effects of [the firm]'s eleven month possession and review of the Disk is disqualification." Id. The same is true in this case.

The facts of this case are also analogous to the Texas case of In re Marketing Investors Corp., 80 S.W.3d 44 (Tex. App. 1998). In In re Marketing Investors Corp., the former president of a corporation sued after he was fired. Through discovery, the corporation discovered that the former president had several corporation documents in his possession. He returned the documents, but only after he copied them. The trial court denied the corporation's request for a protective order preventing the use of the documents, and refused to disqualify the former president's attorney.

The Court of Appeals reversed the trial court and held that it "abused its discretion in not ordering return of the copies of the documents, barring [the former president] from using [the] documents, and disqualifying [his] counsel for his conduct in this case." Id. at 52. The court explained that the attorney-client privilege belongs to the corporation and that the privilege should not lose its value simply because it is exercised through its employees. Id. at 50. The court explained that the former president could not use the privileged documents without permission of his employer, and because his lawyer had "extensively reviewed the documents, [had] referenced them in new pleadings, and [had] shown an intent to use them in the future" he should have been disqualified. Id. at 52.

Like the attorneys in Richards and In re Marketing Investors Corp., Plaintiff's Counsel was in possession of several privileged documents and in fact reviewed at least one such document. The

full extent of Plaintiff's taint is unclear because Plaintiff was less than cooperative in the Court-Ordered discovery of this matter. Plaintiff argues that she was in a unique situation and would be happy to provide more direct answers to the Court through an "in camera" review. However, it is clear that Plaintiff's Counsel did not make a good faith effort to resolve the discovery issues in the manner the Court directed. Plaintiff's Counsel's review of at least one privileged document, coupled with the fact that the full extent of Plaintiff's taint is unknown, illustrate that Plaintiff's Counsel must be disqualified.

B. Plaintiff's arguments are without merit.

Plaintiff makes several arguments why her attorney should not be disqualified from this matter. First, Plaintiff argues that the Virginia Rules of Professional Conduct (the "Rules") do not provide for disqualification under the present factual situation. Second, Plaintiff argues that her conduct, in gathering privileged information, is protected under Title VII from retaliation. Finally, Plaintiff argues that Defendant has failed to establish that the disputed items were actually privileged. The Court does not find any of these arguments persuasive, and therefore grants Defendant's Motion to Disqualify Counsel.

1. Plaintiff's Professional Conduct argument is without merit

Plaintiff argues that Defendant's Motion to Disqualify should be denied because the Virginia Rules of Professional Conduct do not provide for the disqualification of an attorney under these facts. Plaintiff argues that under the Rules, an attorney may only be disqualified if he or she violated the duty of loyalty to a current or former client. However, the Virginia Rules of Professional Conduct were not intended to be an exhaustive list of prohibited conduct. Accordingly, Plaintiff's Counsel must still be disqualified in the case at bar.

Local Rule 83.1(I) states that, "the ethical standards relating to the practice of law in civil cases in this Court shall be the Virginia Rules of Professional Conduct." Local R. of E.D. Va. 83 (Dec. 1, 2000). Plaintiff argues that the Rules only provide for disqualification when an attorney takes a position adverse to a former client by (1) disclosing the former clients confidences and secrets, Va. Sup. Ct. R. 1.6; (2) participating in a matter substantially related to the former clients matter, Va. Sup. Ct. R. 1.9; or (3) subordinating the current client's interest to those of the lawyer or a third party, Va. Sup. Ct. R. 1.7. Attorney Butler argues that because he never represented Defendant in the past, he does not fall into any of these three categories and therefore cannot be disqualified.

Plaintiff's argument misstates the applicable law because an attorney may be disqualified for reasons other than a violation of the duty of loyalty to his or her client. The Virginia Code of Professional Conduct was not meant to serve as an exhaustive list of prohibitive or actionable conduct by attorneys. See Aetna Cas. & Sur. Co. v. United States, 570 F.2d 1197, 1202 (4th Cir. 1978) cert. denied, 439 U.S. 821 (1978) (warning that courts should not use a mechanical application of the Virginia Code of Professional Responsibility when analyzing ethical issues). In fact, the preamble to the Rules explains that "[t]he Rules do not, however, exhaust the moral and ethical considerations that should inform a lawyer," but that "[t]he Rules simply provide a framework for the ethical practice of law." Va. Sup. Ct., pmbl. The Preamble also states that the Rules of Professional Conduct, "are not intended to govern or affect judicial application of either the attorney-client or work product privilege." Id. Furthermore, many of the cases previously cited were examples where attorneys were disqualified despite no violation of the attorney's duty to his or her client, but to avoid the appearance of impropriety.

Ms. Lewis first consulted with her attorney about her case in mid-November of 2003. She did not return Defendant's privileged communications until March 8, 2004.[1] In that four month time period, Plaintiff had access to and removed Defendant's privileged communications. Also, her attorney's firm has reviewed at least one of the privileged documents, and argues that a number of other documents, clearly marked "attorney-client privileged," were nothing more than business advice, indicating a review of those documents as well. The taint to Plaintiff's Counsel cannot be undone and his firm must too be disqualified.

2. Plaintiff's Title VII argument is without merit.

Plaintiff argues that her conduct is protected participation activity under Title VII. Plaintiff argues that preparing and filing a charge with the EEOC alleging unlawful discrimination are quintessential "participation" activities. Plaintiff asserts that all participation activity under Title VII is protected against punitive employer action, even lying under oath. Glover v. South Carolina Law Enforcement Div., 170 F.3d 411, 414 (4th Cir. 1999).

Plaintiff also argues that her conduct is protected "opposition" activity under Title VII. Plaintiff contends that under Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981), her actions fall under Title VII oppositional activities, as long as they are reasonable, and it is inappropriate for Defendant to retaliate against her for those activities.

Plaintiff, however, fails to explain how her rights under Title VII prevent her attorney from being disqualified for reviewing privileged information. None of the cases cited by Plaintiff address

---

[1]Plaintiff also admits that she may still have other privileged documents in her possession that have not been returned.

this issue. The cases simply state that an employer cannot retaliate against its employee for filing a Title VII claim. This concept cannot negate the fact that Plaintiff's Counsel has improperly reviewed privileged information and must therefore be disqualified for those actions.

3. The disputed items are actually privileged.

Finally, Plaintiff argues that the documents in question are not protected by the attorney-client privilege. Plaintiff argues that Defendant fails to draw the proper distinction between "confidential" information and "privileged" information. She maintains that "confidential" information may be subject to discovery, while attorney-client privileged information is not. See Fed. R. Civ. P. 26(b)(1).

Plaintiff also contends that Defendant overlooks the fact that the attorney-client privilege only protects disclosure of communications; but does not protect disclosure of the underlying facts by those who communicated with their attorney. Upjohn Co. v. United States, 449 U.S. 383, 395-96 (1981). Plaintiff argues that, in that the attorney-client privilege extends only to communications and not to facts, she was at liberty to tell her attorney any fact underlying her complaint of discrimination.

Plaintiff's arguments avoid the central issue in this case—Plaintiff's Counsel's review of documents clearly marked attorney-client privilege, and containing privileged information. Because Plaintiff's counsel has engaged in such a review, his entire firm must be disqualified.

Plaintiff also argues that Defendant has not adequately explained the nature of the privileged information. As a general rule, a party that claims a document is privileged, must show that (1) the holder of the privilege is or sought to become a client; (2) the person to whom the communication

was made is a member of the bar or acting as a lawyer; (3) the communication relates to facts made by a client and without the presence of strangers; and (4) the privilege has been claimed and not waived by the client. United States v. Under Seal (In re Grand Jury Subpoena), 341 F.3d 331, 335 (4th Cir. 2003). Utilizing this standard, the Court shall address each of the five documents in question.

a. Item 7

Plaintiff claims that Item 7 of the Inventory is not privileged because Mr. Knowles' original affidavit did not state whether this particular document met any of the requirements for attorney-client privilege or work product doctrine. Plaintiff also argues that because Item 7 was a presentation, Defendant did not have an expectation of privacy about the document.

Item 7 is a Capital One Diversity Recruiting presentation, created by in-house counsel, and marked confidential and attorney-client privileged. The presentation was designed to provide legal advice and apprise senior management about legal risks associated with diversity issues. The presentation was treated confidentially, and in fact, copies of the presentation were collected after the presentation was made. Item 7 was clearly a communication falling within the attorney-client privilege, and contrary to Plaintiff's arguments, the style of the item in no way detracts from its privileged nature.

b. Item 9

Item 9 was clearly meant to be both protected by the attorney-client privilege and the work product doctrine. Item 9 is a memorandum from Capital One's in-house attorney to Mr. Knowles and Melanie Lewis, created at the request of Ms. Lewis and Mr. Knowles for legal advice, and

clearly marked attorney-client privilege / attorney work product. The memorandum provides legal advice relating to issues of supervision of Jannon Pierce, one of Plaintiff's Counsel's other clients.

Plaintiff argues that Defendant somehow waived the privilege by sharing Item 9 with her during the scope of her employment. Plaintiff argues that she announced her belief that she was being discriminated against on the basis of her sex in October 2003. Plaintiff argues further that it was unreasonable for Defendant to believe that after her announcement, she would not share privileged information provided to her in the scope of her employment with her attorney. Plaintiff's assertion that Defendant waived its privilege by assuming that she would uphold her fiduciary duty to maintain her employer's confidences is unpersuasive. Item 9 falls within the attorney-client privilege and that privilege was not waived by Defendant.

c. <u>Item 10</u>

Plaintiff claims that Item 10 does not meet the privilege requirements because Defendant has not established that the document was a communication from a client to a lawyer for the purpose of obtaining legal advice. Item 10 is a memo created by an employee at Capital One, and addressed to Capital One's in-house counsel, seeking advice in connection with Ms. Jannon Pierce. Specifically, the document asks questions about communications with Ms. Pierece and seeks legal advice on how to minimize any legal risk associated with the threat of anticipated litigation by Ms. Pierce. Item 10 was clearly created as a communication directed to in-house counsel, for the express purpose of obtaining legal advice, and therefore falls within the attorney-client privilege.

d. Item 15

Plaintiff also claims that privilege has not been established for Item 15, because Defendant has not shown that this document was communicated from client to lawyer for the purpose of obtaining legal advice. Item 15 is an e-mail with a two-page spreadsheet attached. The spreadsheets are marked "Confidential—Not for Distribution—Protected by Attorney-Client Privilege." The spreadsheets outline male/female ratios, transfers, and voluntary attrition in a particular group. Defendant has attached the declaration of Katrina C. Randolph, which shows that Item 15 was created at the direction of the assistant general counsel for the purpose of providing confidential legal advice to a business client about employment issues related to anticipated litigation. The document was intended to be confidential communication between corporate counsel and a business client, and was not distributed to individuals other than those who had a "need to know" in connection with the data.

e. Item 16

Finally, Plaintiff claims that Defendant has failed to show that Item 16 is privileged as a communication from a client to an attorney for the purpose of obtaining legal advice. Item 16 is a series of confidential and privileged documents prepared in connection with the above-referenced class action lawsuit against Defendant brought by Plaintiff's Attorney, Harris Butler. The documents included, letters from assistant general counsel to a negotiation team that was attempting to settle the class action lawsuit, mediation strategies, damage estimates, and potential cost estimates. The documents were created for the purpose of rendering legal advice to Defendant, and were always intended to remain confidential and privileged work product.

f. Other Documents

Other "Confidential" documents returned by Plaintiff include Item 5, which is a highly confidential document listing 2003 termination data about Capital One employees world-wide, which Defendant's allege that Ms. Lewis had no legitimate business reason for having. Item 4 was also returned. Item 4 is a "Workforce Diversity Reputational Risk and Action Plan" which was marked confidential and shared only with individuals who needed to know this information.

The attorney-client privilege "applies to individuals and corporations, and to in-house and outside counsel." U.S. v. Cohn, 303 F. Supp. 2d 672, 679 (D. Md. 2003). Defendant has sufficiently alleged that at least five documents that were in Plaintiff's possession were clearly marked attorney-client privileged, and/or work product, and that they all fall within those privileges. Furthermore, Plaintiff's Counsel admits that its associate viewed at least one privileged document, but it is unclear whether that document is one of the five documents that Plaintiff argues fall outside the privilege, or an entirely different document. It is clear, however, that Plaintiff's Counsel reviewed privileged material and therefore must be disqualified.

4. Plaintiff's actions during limited discovery further illustrate the need to disqualify.

Plaintiff's blatant refusal to participate in the Court-Ordered discovery of this matter further illustrates the need to disqualify Attorney Butler's firm. Plaintiff refused to provide clear responses to inquiries regarding which privileged and confidential documents were in her possession, how and when she came into possession of the privileged and confidential documents, which privileged and confidential documents were shared with her attorney, with whom those privileged and confidential documents were shared with, and her attorney's purpose for reviewing Defendant's

privileged and confidential communications. Furthermore, Plaintiff admits that there may be other privileged and confidential documents that have not yet been returned to Defendant.

Ironically, Plaintiff attempts to argue attorney-client privilege to avoid revealing the basic facts regarding her possession and Plaintiff's Counsel's review of Defendant's documents clearly marked attorney-client privileged and confidential. Plaintiff refused to cooperate in the Court-Ordered discovery in this matter and simply argued before this Court that her attorney reviewed only one privileged document. However, she has yet to clearly reveal exactly which document was reviewed and the purpose of that review. The actions of Plaintiff's Counsel during the discovery of this matter, further illustrate taint and leaves the Court with no choice but to disqualify Plaintiff's Counsel.

III.

The Court is faced with the difficult task of balancing the rights of Plaintiff with its supervisory role over the members who practice before it. Although Ms. Lewis has a right to retain counsel of her choosing, courts have continually held that, that right must come second to the Court's duty to "maintain the highest ethical standards of professional conduct" and to "insure and preserve trust in the integrity of the bar." Tessier, 731 F. Supp. at 729. Plaintiff and her attorney have intentionally concealed the full extent of Plaintiff's Counsel's review of privileged material. What is clear, however, is that Plaintiff's Counsel has reviewed at least one document that he feels was privileged material, and disputes whether several other privileged documents are anything more than business advice — indicating a review of those documents as well. Given that Plaintiff's Counsel

is now tainted because of his review of privileged material, the Court hereby GRANTS Defendant's Motion to Disqualify Counsel and DISQUALIFIES Mr. Harris D. Butler and his entire firm.

James R. Spencer

UNITED STATES DISTRICT JUDGE

JUN 10 2004

DATE