EXHIBIT 2



**H**
Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.

Jerrell D. COBURN, et al. Plaintiffs,
v.
DAIMLERCHRYSLER SERVICES NORTH AMERICA, L.L.C., d/b/a Chrysler Financial Company, L.L.C. Defendant.

**No. 03 C 759.**

Oct. 23, 2003.

African-American and Hispanic purchasers of motor vehicles from dealerships in largely-minority neighborhoods in two states brought proposed class action against finance company, alleging that they paid higher interest rates than should have been available due to company's discriminatory "redlining." Company moved to disqualify purchasers' attorney. The District Court, Castillo, J., held that: (1) purchasers failed to rebut presumption that classmember who worked for company provided or was likely to provide attorney with confidential information, and (2) disqualification of other members of attorney's law firm was not warranted.

Motion granted in part and denied in part.

**[1] Attorney and Client 19**

45k19 Most Cited Cases

Disqualifying an attorney is drastic measure which court should hesitate to impose except when absolutely necessary.

**[2] Attorney and Client 21.15**
45k21.15 Most Cited Cases

**[2] Attorney and Client 21.20**
45k21.20 Most Cited Cases

In deciding motion to disqualify attorney due to unfair access to confidential information, court must first determine whether substantial relationship exists between subject matter of prior and present representations, if so, court must ascertain whether presumption of shared confidences with respect to prior representation has been rebutted, if not, court must determine whether presumption of shared confidences has been rebutted with respect to present representation.

**[3] Attorney and Client 21.20**
45k21.20 Most Cited Cases

Court must apply very strict standard of proof in determining whether nonmoving party has rebutted presumption of shared confidences with respect to prior representation, on motion to disqualify attorney due to unfair access to confidential information, and any doubts as to existence of asserted conflict of interest must be resolved in favor of disqualification.

**[4] Attorney and Client 21.20**
45k21.20 Most Cited Cases

Nonmoving party must submit objective and verifiable evidence that clearly and effectively rebuts presumption of shared confidences with respect to prior representation, on motion to disqualify attorney due to unfair access to confidential information.

**[5] Attorney and Client 21.20**
45k21.20 Most Cited Cases

Presumption of shared confidences with respect to prior representation is rebutted, on motion to disqualify attorney due to unfair access to confidential information, if court finds that individual received no confidential information during prior representation.

**[6] Attorney and Client 21.20**
45k21.20 Most Cited Cases

Presumption of shared confidences with respect to present representation, on motion to disqualify attorney due to unfair access to confidential information, is rebutted if court finds that individual did not and is not likely to communicate any confidential information in present representation.

**[7] Attorney and Client 21.15**
45k21.15 Most Cited Cases

Principal manner through which nonmoving party can demonstrate that no confidential information was or is likely to be communicated, on motion to disqualify attorney due to unfair access to

confidential information, is by demonstrating that specific institutional mechanisms have been implemented to effectively insulate against any flow of confidential information.

**[8] Attorney and Client 🔑20.1**
45k20.1 Most Cited Cases

Because disqualifying attorney is drastic measure, court will only do so if it finds that there is substantial likelihood that conflict of interest will eventuate, and that conflict will materially interfere with lawyer's duty to be zealous advocate.

**[9] Attorney and Client 🔑21.20**
45k21.20 Most Cited Cases

Plaintiffs in proposed class action against finance company failed to rebut presumption that classmember who worked for company provided or was likely to provide plaintiffs' counsel with confidential information, warranting disqualification of counsel; classmember had personal incentive to transmit confidential information, information counsel requested from classmember and information counsel prohibited her from discussing were closely related, and classmember, who was not a lawyer, was not qualified to determine confidentiality.

**[10] Attorney and Client 🔑21.5(3)**
45k21.5(3) Most Cited Cases

Disqualification of other members of law firm of counsel disqualified from representing plaintiffs in proposed class action against finance company, based on counsel's communications with classmember who was employed by company, was not warranted; other members of firm had no contacts with class member.

William J. Harte and Erik Daniel Gruber, William J. Harte, Ltd., Chicago, IL, Dennis E. Both, Cicero, IL, R. Eugene Pincham, Attorney at Law, Nicholas Geanopoulos and Edward R. Vrdolyak, Edward R. Vrdolyak, Ltd., William H. Hooks, Hooks Law Offices, P.C., Chicago, IL, Steve W. Berman and Christopher O'Hara, Hagens & Berman, Seattle, WA, and Thomas R Rakowski, Thomas R. Rakowski & Associates, Chicago, IL, for plaintiff.

Howard J. Roin, Lucia Nale, John R. Schmidt, Debra L. Bogo-Ernst and David William Fuller, Mayer, Brown, Rowe & Maw LLP, and Donald Hubert, Myron F. Mackoff and Philip John Fowler, Hubert, Fowler & Quinn, Chicago, IL, for defendant.

***MEMORANDUM OPINION AND ORDER***

CASTILLO, District Judge.

*1 Presently before this Court is Defendant's motion to disqualify Plaintiffs' counsel. (R. 49-1.) Defendant, DaimlerChrysler Services North America, L.L.C., d/b/a Chrysler Financial Company, L.L.C. ("Chrysler Financial"), argues that Plaintiffs' counsel should be disqualified because: (1) their contacts with Karen Bradley, administrative assistant to Chrysler Financial's assistant general counsel, has provided and is likely to provide them with confidential information; and (2) their treatment of Bradley demonstrates that their ability to represent Plaintiffs is materially limited by their representation of two dealerships, Marquette Chrysler Jeep Dealership and Dodge of Midlothian, owned by Gerald Gorman ("Gorman dealerships"). For the reasons provided below, this Court partially grants Defendant's motion to disqualify. (R. 49-1.)

**RELEVANT FACTS**

Karen Bradley was the administrative assistant to Patricia Musso, Chrysler Financial's assistant general counsel. As part of her job, Bradley processed all legal documents received by Chrysler Financial, including confidential legal information and privileged documents, and typed confidential letters, including letters to outside counsel. She also had access to Chrysler Financial's litigation files. (R. 49, Def.'s App., Tab 6, Bradley Dep. at 53- 54, 59, 64, 67-69.)

On February 6 Bradley purchased a Jeep Grand Cherokee from Rochester Jeep, receiving a $2,500 rebate and 10.54% financing. (*Id.,* Tab 7, Sales Contract.) Bradley was unhappy with her purchase as she believed that the salesman lied to her, failed to disclose important information and concealed the true interest rate offered by Chrysler Financial. (*Id.,* Tab 8, Bradley Email at 4.) Bradley asked some of her colleagues at Chrysler Financial for assistance, and they helped her obtain new financing at 2.9% without the $2,500 rebate. (*Id.,* Tab 32, Lahey Aff.) In March Bradley contacted numerous attorneys about potentially suing Rochester Jeep. (*Id.,* Tab 6, Bradley Dep. at 243; Tab 10, Bradley Emails.) She sent two emails explicitly stating that she was "only going after the Dealership." (*Id.,* Tab 10, Bradley Emails.)

*Contacts Between Bradley and Vrdolyak*

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

On June 11, 2003, Bradley's husband called Edward Vrdolyak, one of Plaintiffs' lawyers. (*Id.,* Tab 2, Vrdolyak Dep. at 66.) Bradley and Vrdolyak spoke the next day. At this time, Bradley wanted to sue Rochester Jeep and did not want to sue Chrysler Financial. (*Id.,* Tab 6, Bradley Dep. at 244 ("I was not interested -Edward Vrdolyak was interested in suing Chrysler Financial, everybody. That is not who I wanted to bring litigation against. I just wanted Rochester Jeep only").) As soon as Vrdolyak learned about Bradley's employment at Chrysler Financial, Vrdolyak told her not to tell him anything about her work at Chrysler Financial. (*Id.,* Tab 2, Vrdolyak Dep. at 32.) The following day, June 13, Bradley informed Chrysler Financial that she had hired Vrdolyak, and Chrysler Financial promptly transferred her to the insurance department. (R. 54, Pls.' App., Ex. C, Vrdolyak Dep. at 35.)

***2** On June 18 Vrdolyak traveled to Detroit with Sean Howard, a paid consultant, to meet Bradley and to execute a retention contract. (R. 49, Def.'s App., Tab 6, Vrdolyak Dep. at 276-77; Tab 14, Howard Dep. at 27.) Bradley testified at her deposition that she told Vrdolyak that she only wanted him to bring claims against Rochester Jeep. (*Id.,* Tab 6 at 214 ("I basically told him who we are specifically going after."), 220-21 ("we were retaining him as an attorney and we gave him information as to our claim against Rochester Jeep.... We wanted to be sure that we did have an action against Rochester Jeep and he said definitely you do.").) She subsequently qualified these statements, in response to leading questions from her own lawyer, by stating that she "soon realized that Chrysler Financial was an active party in the racial discrimination." (R. 54, Pls.' App., Ex. B, Bradley Dep. at 456-58.) Her testimony, however, is inconsistent with the language of the retention contract. The contract, which she signed, clearly states that Vrdolyak would represent her with respect to her claims against Chrysler Financial. (R. 49, Def.'s App., Tab 12, Retention Contract.) The contract does not mention Rochester Jeep. Finally, Vrdolyak testified that Bradley's "anger was directed at Chrysler Financial" and that she thought "the dealer really doesn't have that much to say about it." (*Id.,* Tab 2, Vrdolyak Dep. at 108.)

At the airport meeting, Bradley gave Vrdolyak documents that he had requested ("every document that she had on the two cars"), some of which she printed out during work hours from Chrysler Financial's computer system. (*Id.,* Tab 2, Vrdolyak Dep. at 87; Tab 6, Bradley Dep. at 205.) Bradley described the documents she gave Vrdolyak as "information on [her] vehicles with Rochester Jeep." (*Id.,* Tab 6, Bradley Dep. at 276.) Vrdolyak did not ask Bradley if the documents were confidential. (*Id.,* Tab 2, Bradley Dep. at 151.)

Between June 12 and June 23, Bradley estimates that she spoke with Vrdolyak approximately ten times and Vrdolyak estimates that they spoke a half dozen times (*Id.,* Tab 2, Vrdolyak Dep. at 123; Tab 6, Bradley Dep. at 245.) On June 23 this Court ordered Plaintiffs' counsel to have no further communications with Bradley pending resolution of the disqualification issue. Except for one conversation-when Vrdolyak called Bradley to inform her that a different attorney, William Rodegheir, would represent her at her deposition-- Vrdolyak has complied with this Court's order. (*Id.,* Tab 6, Bradley Dep. at 26.) However, Bradley did speak with Sean Howard, Vrdolyak's paid consultant. (*Id.* at 427.) Not only did Bradley call Howard, but Howard also called Bradley. (*Id.,* Tab 14, Howard Dep. at 242; Tab 24, Howard Phone Record.) Phone records show that Howard called her thirty-six times in a twenty-one day period ending on the day Bradley was deposed. (*Id.,* Tab 24, Howard Phone Record.) Howard stated that the purpose of the calls was "prayer or comforting." (*Id.,* Tab 14 at 283-84.)

*Contacts Between Vrdolyak and Plaintiffs' Other Counsel*

***3** In addition to Vrdolyak, Plaintiffs are also represented by William Harte, Dennis Both, Eugene Pincham, Nicholas Geanopoulos, William Hooks, Steve Berman, Christopher O'Hara and Thomas Rakowski. Harte is the only lawyer, besides Vrdolyak, who has had any contacts with Bradley, and his sole contact was at her deposition. (R. 54, Pls.' App., Ex. F, Harte Aff. at ¶ 14.) O'Hara, Harte, Hooks and Pincham's knowledge of Bradley is based entirely on their conversations with Vrdolyak. (*Id.,* Ex. A, O'Hara Dep. at 35-36, 94-114; Exs. F-H, Harte, Hooks and Pincham Affs.) Berman's knowledge of Bradley is based on his conversations with O'Hara. (*Id.,* Ex. E, Berman Aff. at ¶ ¶ 6-13.) O'Hara, Harte, Hooks, Pincham and Berman's testimony is consistent with the facts provided above. (*Id.,* Ex. A, O'Hara Dep. at 94-114; Exs. E-H, Berman, Harte, Hooks and Pincham Affs.) In particular, they maintain that they were informed that Vrdolyak instructed Bradley not to reveal any confidential information and that Bradley has not provided Vrdolyak with any confidential information. (*Id.,* Ex. A, O'Hara Dep. at 35-36, 94-114; Ex. E, Berman Aff. at ¶ 9; Ex. F, O'Hara Aff. at ¶ ¶ 12, 17;

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

Ex. G, Hooks Aff. at ¶ ¶ 11, 16; Ex. H, Pincham Aff. at ¶ ¶ 5, 13.) Neither party discussed whether Both, Geanopoulos or Rakowski knew anything about or learned anything from Bradley.

Finally, Vrdolyak sent Berman copies of the Bradley documents. (R. 49, Def.'s App., Tab 2, Vrdolyak Aff. at 141.) Plaintiffs' counsel stated in a July 17 hearing before this Court that the envelope containing these documents was not opened, but O'Hara testified during his July 28 deposition that he opened the envelope, but did not read the documents. (R. 49, Def.'s App., Tab 13, O'Hara Dep. at 151; R. 56, Def.'s App., Tab 37, July 17 Hearing Transcript at 13.)

## LEGAL STANDARDS

[1] Disqualifying an attorney is a "drastic measure which courts should hesitate to impose except when absolutely necessary." Schiessle v. Stephens, 717 F.2d 417, 420 (7th Cir.1983). Courts must carefully balance "the sacrosanct privacy of the attorney-client relationship" with "the prerogative of a party to proceed with counsel of its choice." Id. Motions to disqualify should be "viewed with extreme caution for they can be misused as techniques of harassment." Freeman v. Chi. Musical Instrument Co., 689 F.2d 715, 722 (7th Cir.1982).

*Confidential Information*

[2] The Seventh Circuit, in Schiessle, enunciated a three-part test to determine when a court should grant a motion to disqualify due to unfair access to confidential information:

> we must determine whether a substantial relationship exists between the subject matter of the prior and present representations. If we conclude a substantial relationship does exist, we must next ascertain whether the presumption of shared confidences with respect to the prior representation has been rebutted. If we conclude this presumption has not been rebutted, we must then determine whether the presumption of shared confidences has been rebutted with respect to the present representation. Failure to rebut this presumption would also make disqualification proper.

***4** Schiessle, 717 F.2d at 420. Schiessle dealt with a lawyer switching from one law firm to another, so the terminology of the test is not directly applicable to the facts of this case. Nonetheless, the test applies with equal force to non-lawyers: paralegals, secretaries and clients. [FN1] Thus, the test, restated in language appropriate to the facts of this case, is: if a court finds that there is a substantial relationship between Bradley's work and claim, the court will presume that she obtained confidential information while working for Defendant and provided that confidential information to Plaintiff's counsel when she hired them to represent her.

[3][4] The Seventh Circuit has identified general principles a court should adhere to when determining whether the non-moving party has rebutted these presumptions. First, a court must apply a "very strict standard of proof" and "any doubts as to the existence of an asserted conflict of interest must be resolved in favor of disqualification." LaSalle Nat'l Bank v. County of Lake, 703 F.2d 252, 257 (7th Cir.1983), *cited with approval in* United States v. Goot, 894 F.2d 231, 235 (7th Cir.1990). Second, the non-moving party must submit "objective and verifiable evidence" that "clearly and effectively" rebuts each presumption. Schiessle, 717 F.2d at 420-21; *see also* Goot, 894 F.2d at 235; Freeman, 689 F.2d at 723 (stating that requiring evidence that "clearly and effectively" rebuts the presumption is reasonable and is not "unattainably high"). Finally, "[u]ncontroverted [sic] affidavits are sufficient rebuttal evidence." Cromley v. Bd. of Educ. of Lockport Township High Sch. Dist. 205, 17 F.3d 1059, 1065 (7th Cir.1994).

[5][6][7] The first presumption is rebutted if the court finds that the individual received no confidential information during the prior representation. Schiessle, 717 F.2d at 420. The second presumption is rebutted if the court finds that the individual did not and is not likely to communicate any confidential information in the present representation. Id. at 421. The principal manner through which a party can demonstrate that no confidential information was or is likely to be communicated is by "demonstrating that 'specific institutional mechanisms' (e.g., 'Chinese Walls') had been implemented to effectively insulate against any flow of confidential information." Id.; Cromley, 17 F.3d at 1059 (identifying "types of institutional mechanisms" and factors that determine a screen's effectiveness). Screening, however, is not the exclusive means of rebutting this presumption. *See* Kapco, 637 F.Supp. at 1240. In situations where formal mechanisms are impractical, for example in very small firms, the presumption can be rebutted with affidavits that "clearly and effectively" demonstrate that no confidential information was or is likely to be communicated. Id.

*Conflict of Interests*

[8] The local rule for conflicts of interests in the Northern District of Illinois, which is based on the ABA Model Rules, provides that:

> *5 (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
> (2) the client consents after disclosure.

L.R. 83.51.7(b). The committee comments to this rule explain that:

> Loyalty to a client is also impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client. Section (b) addresses such situations. A possible conflict does not itself preclude the representation. The critical questions are the likelihood that a conflict will eventuate and, if it does, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client. Consideration should be given to whether the client wishes to accommodate the other interests involved.

*Id.,* Comm. Comment. The local rule and the committee comments indicate that a motion to disqualify does not require an actual conflict; the rule uses the verb "may" and the comment states that a court should consider "the likelihood that a conflict will eventuate." [FN2] Because disqualifying an attorney is a "drastic measure," this Court will only do so if it finds that there is a substantial "likelihood that a conflict will eventuate" and that the conflict "will materially interfere" with the lawyer's duty to be a zealous advocate. *Id.*

## ANALYSIS

[9] Chrysler Financial raises two arguments in its motion to disqualify Plaintiffs' counsel. First, Chrysler Financial argues that Plaintiffs' counsel should be disqualified because their contacts with Bradley provides them with access to confidential information. (R. 49, Defs.' Mot. at 1.) Second, Chrysler Financial argues that Plaintiffs' counsel should be disqualified because their treatment of Bradley, by diverting her grievance against Rochester Jeep into a claim against Chrysler Financial, proves that their ability to advocate on behalf of Plaintiffs is limited by their representation of the Gorman dealerships. (*Id.*)

### I. Confidential Information

There is no dispute regarding the first two steps of the *Schiessle* disqualification test. First, there is a substantial relationship between the subject matter of the prior and present representations. Bradley was the administrative assistant to Defendant's assistant general counsel and then became Plaintiffs' counsel's client. Second, Plaintiffs do not even attempt to rebut the presumption that Bradley possessed confidential information. Bradley's testimony establishes that she did. The only disputed issue is whether Plaintiffs can rebut the presumption that Bradley provided or is likely to provide their counsel with confidential information.

*6 Parties traditionally rebut this presumption by proving that effective screening mechanisms were in place when the disqualifying event occurred. The disqualifying event in this case was a telephone conversation between Bradley and Vrdolyak. The unique facts of this case, however, do not require that screening mechanisms were in place at that time. First, Plaintiffs' counsel do not work in a single law firm; they work in several different firms located in Chicago and Seattle. This loose association of lawyers should not be required to implement the formal prophylactic screening mechanisms that are required of most law firms. Second, the disqualifying event was a communication from a potential client. A lawyer can only discover that a client has confidential information through discussion. Appropriately, this Court focuses on Vrdolyak's actions taken after he learned where Bradley worked, rather than on whether screening mechanisms were in place before they spoke.

As soon as Vrdolyak learned that Bradley worked for Chrysler Financial's assistant general counsel, he told her not to tell him anything about her work. This instruction does not "clearly and effectively" demonstrate that Vrdolyak did not receive and is not likely to receive any confidential information. First, Bradley, as a potential plaintiff in this case, has a personal incentive to transmit confidential information. Second, the information Vrdolyak requested (everything about the two cars Chrysler Financial financed for Bradley) and the information Vrdolyak prohibited (anything about the pending discriminatory financing case) are closely related. As the dispute over the documents that Bradley gave to Vrdolyak exemplifies, the distinction between

confidential and non-confidential information is ambiguous. Finally, Bradley is not a lawyer, so in light of the close relationship between the sought-after and the screened-off information, she is not qualified to determine confidentiality. *See* Kapco, 637 F.Supp. at 1236 n. 11. The effectiveness of Vrdolyak's screen-asking her not to tell him anything about her work-hinges on her ability to identify confidential information. The combination of these three facts convinces this Court that Vrdolyak's instruction does not "clearly and effectively" rebut the presumption that Bradley provided him with confidential information.

Yet effective screening mechanisms are not the only way to rebut the presumption of shared confidences. Uncontradicted testimony can also rebut the presumption. *Cromley,* 17 F.3d at 1065. Vrdolyak states that he did not receive any confidential information. While there is no evidence that directly contradicts this statement, Vrdolyak's testimony does not "clearly and effectively" rebut this presumption. First, Howard, Vrdolyak's paid consultant, spoke with Bradley regularly after the Court ordered Vrdolyak to have no contact with Bradley. The frequency, duration and timing of the calls raises doubts about whether the purpose of these calls was actually "prayer and comfort." Second, Vrdolyak and Bradley's description of the August 18 meeting in the Detroit airport are materially inconsistent. Vrdolyak stated that Bradley's "anger was directed at Chrysler Financial." Bradley stated that she specifically told Vrdolyak that she wanted to sue Rochester Jeep, not Chrysler Financial. While this contradiction does not directly undermine Vrdolyak's claim that he receive no confidential information, it raises doubts about the reliability of his testimony. The Seventh Circuit requires a "strict standard of proof" and instructs this Court to resolve any doubts in favor of disqualification. Accordingly, we resolve these doubts in favor of Defendant and disqualify the law firm of Edward R. Vrdolyak, Ltd., including both Vrdolyak and Geanopoulos.

***7** This Court is aware that Vrdolyak did not create this ethical dilemma. Bradley's husband called him seeking counsel. Vrdolyak is, however, personally responsible for the disqualification of his law firm. He acted aggressively. This Court has previously stated that

> counsel ... must take a conservative rather than aggressive approach. The "chalk lines" drawn by the ethical rules are meant to be avoided at all costs. The goals should not be to come so close to the "chalk lines" that one is covered in white dust. The goal must be to operate at all times well within the ethical "chalk lines" drawn by our ethical rules.

*In re Air Crash Disaster Near Roselawn, Ind. on October 31, 1994,* 909 F.Supp. 1116, 1122 (N.D.Ill.1995). While Vrdolyak took the precautions he thought were necessary, he is covered in ethical white dust. Vrdolyak's first instinct was correct. He informed Bradley not to provide him with any confidential information. His next instinct was not. He continued to speak with her, obtained documents from her and agreed to represent her. Instead of aggressively seeking to secure a new client, Vrdolyak should have acted conservatively; he should have ceased all contacts and immediately sought guidance from this Court. It is much easier for this Court to advise litigants on how to comply with ethical rules than it is to determine after the fact whether they should be disqualified. Litigants faced with an ethical dilemma should act conservatively; they should immediately seek guidance from the Court.

[10] This Court next considers whether Plaintiffs' remaining counsel should be disqualified. Like Vrdolyak, they have submitted uncontradicted affidavits stating that they received no confidential information. Unlike Vrdolyak, however, they have had no proxy contacts, via Howard, with Bradley. Additionally, this Court is unable to identify a single material inconsistency that undermines the reliability of their testimony. O'Hara's testimony contradicting a statement made in open court regarding whether the envelope containing the Bradley documents was opened is not material. Thus, this Court finds that Plaintiffs' remaining counsel have "clearly and effectively" rebutted the presumption that they received confidential information. Accordingly, we deny Defendant's motion to disqualify in regard to Plaintiffs' remaining counsel.

Nonetheless, this Court orders Plaintiffs' remaining counsel to have no additional contacts with Bradley until we have ruled on class certification. This Court cannot predict the future of Bradley's relationship with Plaintiffs' remaining counsel. We do not know if Bradley will be a plaintiff in this case or if she will bring a separate action against Chrysler Financial. And we do not know if Plaintiffs' remaining counsel will represent Bradley. At the present time she has only retained Vrdolyak. Once this Court has ruled on class certification, we expect that Plaintiffs' counsel will promptly determine whether and how they plan to represent Bradley. At that time, this Court will determine the appropriate measures to ensure that Bradley is unlikely to provide Plaintiffs' remaining counsel with any confidential information. Finally,

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

this Court orders Plaintiffs' counsel to return to Bradley all documents and information received from her and to destroy all notes, attorney work product and any other documentation related to her. [FN3]

**II. Conflict of Interests**

***8** Defendant asserts that Plaintiffs' counsel should be disqualified because they have an actual conflict of interests as they also represent the Gorman dealerships. Local Rule 83.51.7 describes two types of conflicts: section (a) pertains to directly adverse representations and section (b) pertains to materially limited representation. Defendant claims that Plaintiffs' counsel have a section (b) conflict as their ability to advocate on behalf of Plaintiffs is materially limited.

This Court will only disqualify Plaintiffs' counsel if we determine that there is a substantial likelihood that Plaintiffs' representation of the Gorman dealerships will materially interfere with Plaintiffs' counsel's "independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued." L.R. 83.51.7, Comm. Comment. There is some likelihood that Plaintiff's representation of the Gorman dealerships will materially interfere with Plaintiff's counsel's duty of zealous advocacy. Indeed, this Court has already noted that Bradley and Vrdolyak's testimony regarding whom Bradley wanted to sue is inconsistent. Yet we are unconvinced that this likelihood is substantial. Defendant assumes that the only reason Plaintiffs and Bradley have not sued any car dealerships is because Plaintiffs' counsel have not advised them to or, even worse, dissuaded them from doing so. This Court finds that Plaintiffs' counsel's conclusion that their representation will not be adversely affected is objectively reasonable. Additionally, Plaintiffs' counsel have represented to this Court that Plaintiffs have consented to the dual representation. (R. 16, Berman Declaration.) This Court believes that litigants, even in class actions, are active parties, not passive pawns. Depriving Plaintiffs of their chosen counsel is much too drastic a measure for this Court. Thus, we deny Defendant's motion to disqualify Plaintiffs' counsel on these grounds.

This Court, nonetheless, is keenly aware that one of the requirements of class certification is that "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). This requirement applies to both Plaintiffs and Plaintiffs' counsel. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 598 (7th Cir.1993). This Court has some doubts whether Plaintiffs' counsel, while representing Plaintiffs and the Gorman dealerships, will "fairly and adequately protect the interests of the class." *See DeLeo v. Swirsky*, No. 00 C 6917, 2002 WL 989526, at *3 (N.D.Ill. May 14, 2002). This Court strongly encourages Plaintiffs' remaining counsel to address this issue prior to seeking class certification. Plaintiffs' motion for class certification is due on or before December 30, 2003.

**CONCLUSION**

Defendant's motion for disqualification is partially granted and partially denied. (R. 49-1.) The law firm of Edward R. Vrdolyak, Ltd. is disqualified. Plaintiffs' counsel are ordered to return to Karen and Larry Bradley all documents and information received from them and to destroy all notes, attorney work product and any other documentation related to them. Plaintiffs' remaining counsel are ordered to have no contacts, directly or indirectly, with Karen or Larry Bradley. Once this Court has ruled on class certification and Plaintiffs' remaining counsel have informed this Court of how they intend to represent Bradley, we will instruct Plaintiffs' remaining counsel on the measures required to ensure that Bradley is unlikely to provide them with any confidential information.

FN1. *See Burrow v. Northeast Ill. Reg'l Commuter R.R. Corp.*, No. 00 C 3648, 2002 WL 924857, at *5 (N.D.Ill. May 6, 2002); *Kapco Mfg. Co. v. C & O Enters., Inc.*, 637 F.Supp. 1231, 1236 n. 1 (N.D.Ill.1985); *Williams v. Trans World Airlines, Inc.*, 588 F.Supp. 1037, 1043 (W.D.Mo.1984), *cited with approval in Kapco*, 637 F.Supp. at 1236 n. 11 (stating that "a persuasive argument can be made that a non-lawyer would be more likely to reveal confidential information").

FN2. This Court is aware that in our previous order we stated that an actual conflict was required for disqualification. In that order, we relied on Local Rule 83.61.7(a), which does require an actual conflict, not Local Rule 83.61.7(b) which requires slightly less than an actual conflict. *See Burrow*, 2002 WL 924857, at *4 (deciding a motion to disqualify based on an alleged violation of local rule 83.61.7(b) by determining whether the lawyer's other

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works

client will cause the lawyer to "temper" his advocacy); *Guillen v. City of Chi.,* 956 F.Supp. 1416, 1426-27 (N.D.Ill.1997) (interpreting Rule of Professional Conduct 1.7(b), an earlier, but identical, version of Local Rule 83.61.7, and noting that Local Rule 83.61.7(b) is "arguably broader" than Local Rule 83.61.7(a) which concerns "directly adverse" representations and requires an actual conflict); *Clay v. Doherty,* 608 F.Supp. 295, 302 (D.C.Ill.1985) (interpreting District Court General Rule 5-105(B), an earlier version of Local Rule 83.61.1(b), and noting that, absent an actual conflict, the likelihood of an adverse effect must be "powerful" in order to disqualify an attorney).

FN3. For clarity's sake this opinion has referred exclusively to Karen Bradley, even though we are aware that Vrdolyak also represents her husband, Larry Bradley. This order pertains to all contacts with, information received from and information about Larry Bradley as well.

2003 WL 22425007, 2003 WL 22425007 (N.D.Ill.)

END OF DOCUMENT

Copr. © West 2003 No Claim to Orig. U.S. Govt. Works