UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, et al.,
Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-CV-2086 (DWF/AJB)

**MEMORANDUM IN SUPPORT OF MOTION TO STRIKE UNTIMELY DECLARATIONS, OR IN THE ALTERNATIVE, TO COMPEL DECLARANT DEPOSITIONS**

## INTRODUCTION

In April 2002, at the very beginning of the discovery period in this case, Cargill asked Plaintiffs to identify each "person with knowledge" of the plaintiffs' allegations and to state the substance of that knowledge. Just weeks before the two-year discovery period came to a close, Plaintiffs disclosed twelve third-party declarations for individuals never previously identified. While these declarations were signed between November of 2003 and January of 2004, Plaintiffs' counsel withheld them until mid-February. Despite the short turnaround time before the discovery cut-off, Cargill promptly noticed and completed ten depositions.

*After* the close of discovery, Plaintiffs disclosed additional third-party declarations. Weeks later even more showed up and then weeks later yet another batch arrived. In total, sixteen declarations have come in *since* discovery closed on March 17, 2004 and Plaintiffs' counsel indicates more are en route. The depositions of the initial third-party declarants identified prior to the close of discovery revealed so many errors, omissions, inconsistencies, and unsupported claims that Cargill will be prejudiced if these newly disclosed declarations are admitted.

Cargill requests that the Court strike the declarations of these untimely declarants (and any others which may follow). In the alternative, Cargill requests that this Court compel the depositions of these sixteen individuals and any potential additional declarants who submit declarations, and prohibit the use of their declarations in any proceedings until after the depositions have been completed.

## BACKGROUND

### I. CARGILL DEPOSED THIRD-PARTY DECLARANTS WHOSE DECLARATIONS ARRIVED SHORTLY BEFORE THE DISCOVERY DEADLINE.

On February 23, 2004, Cargill received twelve declarations from former Cargill employees. *See* Letter from P. Jones to H. Eng dated 2/19/04 attached hereto as Exhibit 1.[1] These declarations ranged from three to nine pages and followed a general template which outlined the declarant's employment history with Cargill then proceeded to make allegations of racial discrimination and/or harassment related to performance reviews, discipline, training, work assignments, work environment, promotions, compensation, demotion, and termination.

Following receipt of the declarations, counsel for Cargill promptly wrote to Sprenger & Lang asking for confirmation that the twelve declarations were the only such ones in their possession, inquiring whether Sprenger & Lang represented any of the twelve declarants, and requesting contact information for all twelve declarants. *See* Letter from H. Eng to P. Jones dated 2/25/04 attached hereto as Exhibit 2. On February 26, 2004, Sprenger & Lang responded with a letter stating that they were reviewing their obligation to provide supplemental information and would respond at a later date. *See* Letter from L. Schaefer to H. Eng dated 2/26/04 attached hereto as Exhibit 3.

---

[1] All exhibits referenced herein are attached to the Affidavit of Melissa Raphan ("Raphan Aff.").

The declarations forwarded by Sprenger & Lang in February 2004 had been signed months earlier—between November 11, 2003 (Lois Cephus) and January 29, 2004 (Glenn Ford)—but Cargill did not receive them until February 23, 2004. *See* Exhibit 1. Cargill promptly noticed the declarants' depositions and proceeded to take ten depositions of third-party declarants.

## II. CARGILL RECEIVED SIXTEEN THIRD-PARTY DECLARATIONS AFTER THE DISCOVERY DEADLINE.

One month after the close of discovery, in mid-April 2004, Plaintiffs sent the first eight of what turned out to be sixteen additional third-party declarations. These declarations were signed between March 1, 2004 (Jason Lewis) and March 29, 2004 (Vance Dupree). *See* Letter from P. Jones to H. Eng dated 4/16/04 attached hereto as Exhibit 4. Two of these declarations were actually signed *before* the close of discovery. Each followed the same general content and pattern of the previous declarations.

Cargill's counsel promptly objected to the receipt of these eight declarations *after* the close of discovery. *See* Letter from H. Eng to L. Schaefer, S. Coler, and P. Jones dated 4/20/04 attached hereto as Exhibit 5. Given the dates on which they were signed it was evident that the declarations were being prepared during discovery, which fact had not been disclosed despite Cargill's direct request for this information in its February 25, 2004 letter. *See* Ex. 2. Cargill objected to these after-the-fact declarations, as well as any that might follow, and refused to consent to their use in any manner in the case. *Id.*

Sprenger & Lang argued that the declarations were prepared in the normal course of supplementing their discovery responses. *See* Letter from L. Schaefer to H. Eng dated 4/20/04 attached hereto as Exhibit 6. Sprenger & Lang made this assertion despite the fact that before the close of discovery Plaintiffs never provided the names of the declarants in response to discovery requests. In its initial set of discovery requests, served on April 1, 2002, Cargill

included an interrogatory asking that Plaintiffs "[i]dentify each person with knowledge of any of the facts or allegations regarding your individual claims, the individual claims of any other named Plaintiff, and the individual claims of any putative class member as defined in the Complaint, and state the information known to each person identified." *See* Cargill's Interrogatories to Plaintiffs (Set I), Interrogatory No. 1 (relevant portion attached hereto as Exhibit 7.)

On May 17, 2004, Cargill received three additional declarations. *See* Letter from P. Jones to H. Eng dated 5/14/04 attached hereto as Exhibit 8. In early June 2004, Cargill received another five declarations. *See* Letter from P. Jones to H. Eng dated June 8, 2004 attached hereto as Exhibit 9. In total, Sprenger & Lang produced an additional sixteen declarations after the close of discovery and have stated that more declarations are forthcoming. *See* Raphan Aff. ¶ 4.

## ARGUMENT

### I. WITHHOLDING THE THIRD PARTY DECLARATIONS UNTIL AFTER THE CLOSE OF DISCOVERY HAS PREJUDICED CARGILL BY IMPEDING ITS ABILITY TO DEFEND ITSELF AGAINST UNSUBSTANTIATED CLAIMS.

Plaintiffs submitted the third-party declarations in an apparent attempt to create anecdotal evidence in support of their class certification motion. This use is fundamentally unfair and prejudicial when Cargill has not had any opportunity to question these declarants about the contents of their declarations. Parties may not use discovery as both a sword and a shield. *See, e.g., Lim v. Citizens Savings and Loan Ass'n*, 430 F. Supp. 802, 809 (N.D. Cal. 1976)(where plaintiff engaged in class-oriented discovery aimed at facilitating its proposed statistical showing as to the existence of a class, it "cannot use the class action as both a sword for discovery purposes and a shield against testing the sufficiency of allegations made as a result of that discovery"); *Krim v. Banctexas Group, Inc.*, 99 F.3d 775, 778-79 (5th Cir. 1996).

Sprenger & Lang has misclassified these additional declarations as "supplemental discovery responses" instead of the untimely disclosures that they are. They make this assertion despite the fact that the existence of many, if not all, of these individuals and their knowledge was known to Sprenger & Lang prior to the close of discovery. Interrogatory 1 of the discovery requests served two *years* before the close of discovery asks for identification of "persons with knowledge," clearly broad enough to encompass the third-party declarants. *See* Ex. 7. Rule 26(e)(2) imposes the duty upon a party to "seasonably amend a prior response to an interrogatory . . . if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." The existence of potentially dozens of additional declarants is certainly material and their existence had not been made known in any way to Cargill before the discovery cut-off.

Instead of supplementing their answers to the discovery requests served two years beforehand, Sprenger & Lang has chosen to submit declarations whenever it sees fit, springing some declarations signed between November and January on Cargill in the final days of the discovery period in mid-March, 2004, and withholding information about the existence of additional declarants until their declarations were sent between and April and June, after the close of discovery.

In *Hill v. Amoco Oil Co.*, plaintiff brought a purported class action alleging race discrimination. 2001 WL 293628, *2 (N.D. Ill. March 19, 2001) attached hereto as Exhibit 10. Defendant propounded discovery to plaintiff, including a request for the identification of all known instances of discrimination and potential class members. After the close of discovery, defendant moved for summary judgment and plaintiff moved for class certification, attaching three declarations describing alleged incidents of discrimination by defendant. Plaintiff later

served ten further declarations of potential witnesses to discrimination. Defendant moved to strike the declarations as the names of the witnesses and the information contained therein was not disclosed prior to the close of discovery even though it was in the possession of the plaintiff. Although the court chose not to strike the declarations, it held that plaintiff's actions had prejudiced the defendant and awarded defendant fees and expenses incurred in bringing the motions to strike. *Id.* The court also granted defendant leave to conduct additional discovery to explore the content of the declarations. *Id.*

In deciding not to grant defendant's motion to strike, the court relied on the "apparent absence of bad faith" on the part of the plaintiff and the fact that striking the declarations would "effectively end [plaintiff's] chances of success on class certification" since he had identified no other person who allegedly had suffered discrimination at the hands of the defendant. *Id.* These facts are distinguishable in the case at bar where multiple putative class members have been identified before the close of discovery. Further, in this case there is evidence that plaintiff deliberately withheld the declarations, as declarations signed between November 11, 2003 and January 29, 2004 were not produced until mid-February and no explanation was ever offered. Plaintiffs' pattern of untimely disclosures continued: in mid-April, Plaintiff served new declarations signed as far back as March 1, 2004; on May 17, 2004, Cargill received new declarations dated as early as May 2; and on June 8, 2004, Cargill received another five declarations dated from May 17.[2] In addition, plaintiffs conspicuously failed to answer Cargill's direct request in its letter dated February 25, 2004, for information regarding any additional

---

2 Among the sixteen untimely declarations were four from current Cargill employees. Plaintiffs' counsel appears to be on a solicitation campaign of current employees. *See* Affidavits of Robert Boardman and Brent German attached hereto as Exhibits 11 and 12 respectively. Plaintiffs' counsel continues to engage in untimely discovery efforts.

third-party declarations. These activities have prejudiced Cargill by foreclosing its opportunity to defend itself against the new allegations.

Plaintiffs should "not be allowed to bring in through the back door those issues which they were too late in bringing to the front." *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263, 1272 (8th Cir. 1975)(holding that defendant was "clearly not acting seasonably" within the meaning of FRCP 26(e)(2) when it failed to disclose discoverable information until five weeks after discovery closed and after the information had been in its possession for four months). The declarations served after discovery closed should be stricken. Absent substantial justification, a party that fails to amend a prior response to discovery as required by the Rules, "is not, unless such failure is harmless, permitted to use as evidence at trial, at a hearing, or on a motion any witness or information not so disclosed." *See* Fed. R. Civ. Proc. 37(c). Here Plaintiffs have *no* apparent justification and Cargill *has* been harmed by its inability to explore the contents of the declarations and the witnesses knowledge. Additional sanctions are available to the Court under Rule 37(c).

## II. IF THE DECLARATIONS ARE ALLOWED, CARGILL SHOULD BE ALLOWED TO DEPOSE THE DECLARANTS TO MINIMIZE THE PREJUDICE OF THE DELINQUENT DISCLOSURES.

Rule 26(b), Fed. R. Civ. P., allows the court to alter the number of depositions allowed under Rule 30. Further, for good cause, the court may order discovery of any matter relevant to the subject matter in the case. *See id.* Cargill indeed has good cause for seeking further discovery related to the third-party declarants. Plaintiffs have prejudiced Cargill by impeding its ability to defend itself against the allegations made and causing Cargill to make decisions based on incomplete information from Plaintiffs.

The court initially allowed 40 depositions to be taken in this case. With this number in mind, Cargill chose to depose a number of individuals, including most of the initial group of

third-party declarants who submitted declarations prior to the close of discovery. The first group of third-party declarations were received very close to the discovery deadline, but Cargill recognized the need to explore these unsubstantiated claims and promptly scheduled these depositions. Since Sprenger & Lang refused to respond to the inquiries about additional declarants or to update their interrogatory responses, Cargill had no way of knowing it might have to choose between numerous additional declarants.

### A. Cargill Should Be Allowed to Level the Playing Field.

In *Fitz v. Ralph Wilson Plastics Co.*, defendants sought sanctions against Plaintiffs, who submitted nine declarations in support of their motion for class certification, after discovery closed. 174 F.R.D. 587, 588 (D.N.J. 1997). The court held that "contrary to the dictates of this court and to the notions of fair play and efficiency, the defendants were left unsuspecting that any information was being withheld" and thus "did not have the requisite knowledge and the consequent opportunity to question the adequacy" of plaintiffs' discovery responses. *Id.* at 590. Thus, the court allowed the defendants to depose the declarants and plaintiff was required to compensate the defendants for fees and costs in "leveling the playing field", including the costs of taking the new depositions. *Id.* at 591. *See also Nordictrack, Inc. v. Consumer Direct, Inc.*, 158 F.R.D. 415, 420 (D. Minn. 1994)(granting plaintiff permission to engage in further discovery after the close of discovery where defendant failed to disclose the identities of key witnesses until "the waning hours of discovery").

All of the declarants would have been subject to deposition under the Federal Rules which allow a non-party to be deposed on any matter "relevant to the subject matter involved in the pending action" or "reasonably calculated to lead to the discovery of admissible evidence" had they been timely disclosed. *See* Fed. R. Civ. Proc. 26(b)(1). Cargill has been deprived of this basic right by Plaintiffs' delayed and untimely disclosures.

The fact that Cargill has exhausted its 40 depositions allotted in the scheduling order should not preclude the court from allowing Cargill to depose these individuals in the event that the after-the-fact declarations are not stricken. In *Alexander v. Federal Bureau of Investigation*, the plaintiff became aware that a non-party witness possessed probative and relevant information on the eve of the close of discovery and had, by that time, exhausted its allotted depositions under the court's scheduling order. Despite this, the court allowed plaintiff to take the deposition, based on a balancing of the probative value the witness possessed, which had only recently come to plaintiff's attention, and plaintiff's considerable need for such information against the relatively minimal burden and delay to the defendants. 192 F.R.D. 20, 22 (D.D.C. 2000). Here, the case for allowing Cargill to take additional depositions is even stronger. As discussed below, Cargill's need for the depositions is bolstered by the fact that the declarations contain information which the declarants contradict, are unaware of, or cannot support. Accordingly, the probative value is significant in light of the inaccuracies in the declarations of those declarants already deposed, and there is no delay or prejudice to Plaintiffs since the depositions will not interfere with the deadlines remaining in the case.[3] Cargill should have the opportunity to challenge the bases of the declarations.

**B. The Depositions Taken to Date Highlight the Inaccuracies in the Declarations Produced During Discovery.**

The importance of deposing the third-party declarants was highlighted further during the depositions of the first set of declarants whom Cargill did have a last-minute opportunity to depose. During these depositions, Cargill discovered that the contents of the declarations,

3 The only remaining deadlines for this phase of the litigation involve expert depositions and class certification briefing—these deadlines would not be affected by the taking of additional depositions.

drafted by Sprenger & Lang, contained allegations that declarants later admitted were unfamiliar to them.[4]

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| Glenn Ford Declaration ¶ 13<br><br>Cargill went through two types of review during my tenure. The first type was called management by objectives. | Glenn Ford Deposition at 126<br><br>Glenn was asked "Q:. . . . Is that management by objectives a phrase that you're familiar with? A: No it's not." |
| Candy Smith Declaration ¶ 10<br><br>Before leaving Cargill, Smith applied for the job of Assistant to the Office Manager. The qualifications were not posted but Smith felt that with her background she would be a perfect fit for the position. Smith was good at multi-tasking, knew the office and had worked closely with and had watched her manager. Instead she thinks Pam Bednarz (Caucasian), got the position after Smith left Cargill. | Candy Smith Deposition at 82-83, 128<br><br>Smith said that she never applied for the position of Assistant to the Office Manager. While she was interested in such a position, no such position was open or available while Smith was employed at Cargill. |

During the declarants' depositions, it became clear that some declarants had no first-hand knowledge of the allegations being made against Cargill.

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| John Selman Declaration ¶ 14<br><br>John Selman said he was unfairly disciplined for sleeping on the job because he claimed two white employees were also caught but just given a verbal warning. | John Selman Deposition at 65-67<br><br>John Selman admitted that he knew his action was wrong and that he knew that company policy called for automatic suspension for sleeping while on the clock. Selman said that he did not know the names of the other employees he alleged were caught sleeping but did not receive discipline, nor does he even know whether or not these employees were in fact disciplined. |

4 The charts are illustrative of the information that came out in the depositions, but are by no means exhaustive. The declarations and excerpts of depositions of Glenn Ford, Candy Smith, John Selman, Raymond Fowler, Angela Reid, Marcia Harrison, and Laverne Gosby are attached hereto as Exhibits 13-26 respectively.

Other depositions revealed significant omissions from the declaration.

| **Sprenger & Lang Declaration** | **Actual Deposition Testimony** |
|---|---|
| Candy Smith Declaration ¶ 11<br><br>Candy Smith said that Cargill knew who they were going to hire in all of the positions. They just went through the process to say they gave you an interview. Smith said she tried to apply for a position in the computer area but was told she was not qualified. The qualifications were familiarity with computer terms and software. Smith tried to apply but was told she was not qualified. | Candy Smith Deposition at 69-74, 84.<br><br>Smith stated that there was nothing about her experience in pursuing the Help Desk job that led her to think that her race was a factor in the decision-making.<br>Smith said that she had never held a help desk or technical position before. Smith was unable to recall what the qualifications were for the job or if she met the qualifications. Smith was interviewed for the help desk position but did not receive this position. |
| Glenn Ford Declaration ¶ 13<br><br>Glenn Ford said that upon making the 25 year club at Cargill, he only received acknowledgment from his department. | Glenn Ford Deposition at 145-148<br><br>Glenn Ford said that he received a 25 year plaque or clock, was invited to attend a companywide recognition dinner and his picture was placed in the company newsletter along with the pictures of other tenured employees. A Caucasian employee, Perry Ames, who also reached 25 years at the same time received the same recognition as Ford, except Ames chose not to have his picture taken and placed in the newsletter. Ford could not think of any Caucasian employees who received more recognition than himself. |

Declarants' deposition testimony also highlighted inconsistencies and recanting of testimony when the declarants were asked about claims made in the declarations.

| **Sprenger & Lang Declaration** | **Actual Deposition Testimony** |
|---|---|
| Candy Smith Declaration ¶ 7<br><br>Candy Smith said there were times her responsibilities increased without a change in title or pay. Smith said Sharon Cess, the other receptionist, would take two to three months off at a time, and when this happened Smith had to complete Cess' job duties as well as her own job duties. | Candy Smith Deposition at 125<br><br>Candy Smith said that other employees, including Joan Stanford, Pam Bednarz and Harriet Harrington, helped take care of Sharon Cess' job duties when Cess was not at work. |

Deposition testimony also revealed the flimsy premises for the declarants' claims.

| **Sprenger & Lang Declaration** | **Actual Deposition Testimony** |
|---|---|
| Raymond Fowler Declaration ¶¶ 6, 7<br><br>Raymond Fowler claimed he was passed over for two promotions while at Cargill. | Raymond Fowler Deposition at 57-60<br><br>Raymond Fowler said that he never formally applied for either the supervisor or Senior Consultant position. |
| Angela Reid Declaration ¶ 10<br><br>Angela Reid said that she did not receive the same training opportunities as Caucasian employees. Reid also said she did not receive loan processing training, although this training was provided for Jackie Icenhour. | Angela Reid Deposition at 61-65<br><br>Angela Reid said that she was not working in loan processing at the time but wanted the opportunity to learn for her own experience. Reid said that she did not know if there was any specific training available or classes relating to loan processing but she just asked her supervisor in general that she would like such training. Reid's supervisor, Judy Ehrenfruend, told Reid that it was a good idea and she would look into it. Reid does not know whether such training was looked into or not. Jackie Icenhour received loan processing training because she was hired in the closing department and this training was required for her job. |

| | |
|---|---|
| Marcia Harrison Declaration ¶ 5<br><br>Marcia Harrison said that Caucasian employees, Christy Ferguson and Brenda McKinney, received a bonus but that she did not. | Marcia Harrison Deposition at 169-171<br><br>Marcia Harrison said that she did not know when Christy Ferguson and Brenda McKinney, received their bonuses, whether the bonus was for a particular year or what there bonus was based upon. |
| Laverne Gosby Declaration ¶ 5<br><br>Laverne Gosby said that she interviewed for a position at the corporate human resources level but did not receive the job. Gosby said that she received a call from a co-worker in Minneapolis who informed her that a recent college graduate received the job. Gosby did not understand how a recent graduate could have more years or experience than me or have the human resources background or training. | Laverne Gosby Deposition at 193-199<br><br>Laverne Gosby applied for and was interviewed for a corporate human resources position. After Gosby learned that she did not receive the position, she received a call from a woman who worked for Cargill in Minneapolis, that Gosby saw when she interviewed in Minneapolis. This is a woman that conducted training sessions for Cargill. She told Gosby that a person who recently graduated from college received the position. Gosby said that she does not know the race of the person who was hired for this position, their name, qualifications, background or even whether or not the information was true that the person hired was a recent college graduate. |

*All* of the declarations contain unsubstantiated claims and Cargill should have a full opportunity to explore this unsubstantiated testimony. Without this opportunity, Sprenger & Lang should not be allowed to use the declarations for any purpose, including the class certification briefing.

**<u>CONCLUSION</u>**

Cargill requests that the declarations produced *after* the close of discovery be stricken from use for any purpose, including class certification briefing because of Plaintiffs' delinquent disclosure. To do otherwise would reward the plaintiffs for conduct which does not comport with

the Federal Rules. In the alternative, Cargill requests that the Court allow it to depose the additional declarants, and prohibit the use of their declarations in any proceeding until the depositions have been completed.

Dated: June 21, 2004

DORSEY & WHITNEY LLP

By /s Melissa Raphan_
Paul Klaas #0056327
Mark Ginder #1016794
Melissa Raphan #0182795
Holly S. A. Eng #0238028
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Defendant
Cargill, Inc.