UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| RODERICK ARNOLD, et al., | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) |
| On behalf of themselves and all others similarly situated, | CLASS ACTION |
| *Plaintiffs,* | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO STRIKE UNTIMELY DECLARATIONS, OR IN THE ALTERNATIVE, TO COMPEL DECLARANT DEPOSITIONS** |
| v. | |
| CARGILL, INCORPORATED, | |
| *Defendant.* | |

**INTRODUCTION**

Amid the jumble of unsupported assertions, misrepresentations and unjustified indignation that constitutes its memorandum in support of its motion to strike declarations submitted by plaintiffs, Cargill apparently seeks relief under two procedural rules. First, Cargill claims that plaintiffs breached their duties under Rule 26(e)(2) to "seasonably" supplement their answer to an interrogatory served by Cargill to identify each person with knowledge of the claims of any member of the potential class and to state the information known to each such person. Second, Cargill appears to claim that by providing signed witness declarations to the company, plaintiffs allegedly violated Rule 26(e)(2) without substantial justification and this supposed violation was not "harmless" to Cargill, thereby entitling Cargill to relief under Rule 37(c)(1). Cargill then asserts that relief is warranted, consisting of the Court's striking of any third-party declarations submitted or to be submitted by plaintiffs after the non-expert discovery cutoff of March 17, 2004, or alternatively, an order permitting Cargill to depose each declarant at plaintiffs' expense.

Cargill's motion is completely without merit and should be denied in its entirety. Plaintiffs did not violate Rule 26(e)(2). The deadline for formal discovery does not apply to or limit plaintiffs' informal efforts to obtain information, including through declarations. Plaintiffs complied with their duty to supplement by producing copies of the declarations themselves in lieu of answering the interrogatories; indeed, this provided Cargill with more information than the interrogatory requested. Plus, the declarations were produced at seasonable intervals in compliance with plaintiffs' obligations.

Even if the Court were to somehow conclude that provision of declarations at seasonable intervals violates Rule 26(e)(2), Cargill is not entitled to relief under Rule 37(c)(1). Any alleged violation was "harmless" to Cargill for several reasons, principally because Cargill had used 30 of its 40 depositions at the time the first declaration was served and had chosen not to depose many persons with knowledge plaintiffs already had disclosed. Regardless how many declarants it might have known about before the discovery cutoff, Cargill could have taken only ten more depositions, the number that it actually took. All of the other factors that courts consider in evaluating claims under Rule 37(c)(1) show that Cargill is not entitled to relief. Finally, even if the Court concludes that Cargill is entitled to some relief, the striking of the declarations would be completely unwarranted.

**BACKGROUND**

Beginning in 2003 and at an increasing pace in 2004, plaintiffs' counsel Sprenger & Lang (S&L) has contacted members of the potential class to ascertain whether they believed that they had experienced racial discrimination and, if so, to inquire whether they would be willing to sign declarations describing their experiences at Cargill. (Thompson Decl., ¶ 3.) This is a closely organized project conducted under procedures designed to ensure compliance with all ethical

obligations. (*Id.*, ¶¶ 1, 3-5.) To date, 30 members of the potential class have signed declarations, and other declarations are in the works. (*Id.*, ¶ 6.) Potential class members have expressed fear of retaliation as a reason for not providing information or signing a declaration. (*Id.*, ¶ 7.)

S&L recognized that plaintiffs needed to supplement their interrogatory and/or document production responses in some way because of the information gained through obtaining the declarations. (*Id.*, ¶ 8.) Cargill's first interrogatory to each plaintiff was to "[i]dentify each person with knowledge of any of the facts or allegations regarding … the individual claims of any putative class member …, and state the information known to each person identified." (*Id*). Collectively, the plaintiffs initially identified many more than forty persons with knowledge in their responses to this interrogatory, and the interrogatory response stated that "Discovery is continuing." (*Id*.) Cargill's first document production request requested each Plaintiff to produce, among other things, "[a]ll … documents that in any way relate to … the claims in the Complaint, including, but not limited to, [documents] … that reference, summarize, describe, or memorialize … any … statements involving you [plaintiff] or any current or former officers, employees, or representatives of Cargill." (*Id*.)

In February 2004, plaintiffs decided to produce to Cargill all the executed declarations ("statements") to date and to continue to serve at reasonable intervals the declarations executed thereafter to comply with their obligations to supplement their responses to Cargill's first sets of interrogatories and document production requests. (Thompson Decl., ¶ 9.) The following table shows the number of declarations signed each month and when they were produced to Cargill:

| **Month** | **Declarations Signed** | **Production Date** |
|---|---|---|
| November 2003 | 3 | February 19, 2004 |
| December 2003 | 4 | February 19, 2004 |
| January 2004 | 5[1] | February 19, 2004 |
| February 2004 | 0 | February 19, 2004 |
| March 1-17, 2004 | 2 | April 16, 2004 |
| March 18-31, 2004 | 6 | April 16, 2004 |
| April 1-16, 2004 | 0 | April 16, 2004 |
| April 17-30, 2004 | 0 | May 14, 2004 |
| May 1-14, 2004 | 3 | May 14, 2004 |
| May 15-31, 2004 | 5 | June 8, 2004 |
| June 1-8, 2004 | 0 | June 8, 2004 |
| June 9-24, 2004 | 2 | June 24, 2004 |

(*Id.*, ¶ 10.) For the reasons explained in the Argument below, the above production amply satisfies plaintiffs' obligation to reasonably and seasonably supplement their discovery responses.

After the initial group of twelve declarations was served by letter dated February 19, 2004, Cargill decided to depose declarants. Its ability to do so, however, was circumscribed by the terms of the Scheduling Order filed March 27, 2002. (Ex. 1.)[2] The schedule, as amended, established March 17, 2004, as the deadline for formal non-expert discovery as to class certification. (Thompson Decl., ¶ 11.) It also limited each party to forty non-expert depositions during the class discovery period. (Ex. 1.) The parties had not been able to agree to a number in their Rule 26(f) negotiations. The Court's selection of forty as the limit represented a compromise between plaintiffs' position that each party should be limited to 35 depositions during the class certification phase and Cargill's position that each party should be able to

---

[1] The January count includes Michael Collier's declaration that was originally signed on January 23, 2004, and produced on February 19, 2004. His amended declaration was produced on March 9, 2004.

[2] All references to "Exhibits" are to the exhibits to the declaration of Mara Thompson.

conduct 100 depositions throughout the case, without breaking the number down between the class certification and merits phases. (Ex. 2.)[3]

By February 19, 2004, Cargill had conducted thirty depositions. (Thompson Decl., ¶ 12.) It already had chosen to depose the plaintiffs, two other witnesses (Michelle Berg and Bill Douglas), and only two persons identified as having knowledge in plaintiffs' interrogatory responses (Toni Greene and John Chavers). (*Id.*, ¶13.) Accordingly, Cargill could depose only ten of the twelve declarants. It did not ask the Court for leave to depose the remaining two declarants. (*Id.*. ¶ 12.)

In addition to taking ten depositions, Cargill responded to the service of the declarations by obtaining counter-affidavits. In support of its motion to disqualify S&L and dismiss plaintiffs' case, filed June 18, 2004, Cargill submitted an affidavit from one employee trying to cast doubt on the allegations of declarant Candy Smith. (Thompson Decl., ¶ 13.) In support of this motion, Cargill filed affidavits from two current employees concerning contacts from S&L with African-American employees. (*Id.*) Cargill also has used affidavits in support of motions filed in this case from persons who were not identified as "persons with knowledge" in its responses to plaintiffs' interrogatories to Cargill. (*Id.*) Unlike plaintiffs, Cargill did not serve the declarations on plaintiffs before filing them in support of its motions.

[3] The Scheduling Order does not establish any deadlines for interviews with witnesses and preparation of declarations. (Ex. 1.)

## ARGUMENT

### I. PLAINTIFFS COMPLIED WITH THEIR DUTY UNDER RULE 26(e)(2) TO SEASONABLY AMEND THEIR INTERROGATORY ANSWERS.

#### A. Cargill Contends that It Is Entitled to Relief Only Because Plaintiffs Allegedly Failed to Supplement Their Interrogatory Responses.

Cargill contends that it is entitled to sanctions because plaintiffs allegedly violated Rule 26(e)(2) by failing to supplement their response to Interrogatory No. 1. (Cargill's Mem. at 5.) At times, its memorandum hints that plaintiffs might have violated their discovery obligations in two other ways: by procuring declarations after the close of formal discovery (*id.* at 1, 2) (labeling declarations as "untimely"), and by failing to produce copies of declarations immediately after they were received by plaintiffs (*id.* at 1, 3) (alleging that plaintiffs' counsel withheld copies of signed declarations for periods of weeks or months). However, neither of these alleged violations – if Cargill even is asserting them – could possibly justify the relief Cargill seeks.

Cargill cannot contend that plaintiffs violated Rule 26(e)(2), or any other Rule of Civil Procedure or court order in this case, merely by obtaining declarations from members of the proposed class after the discovery cutoff established by the Scheduling Order. The Scheduling Order applies to efforts to gather information using the formal discovery techniques set out in Rules 26 through 36. (Ex. 1.) It sets limits on depositions, interrogatories, depositions, document production requests, and requests to admit. (*Id.*) It never addresses the parties' ability to perform investigations and obtain witness statements through means other than formal discovery.

The Scheduling Order in this case was not aberrant in addressing only formal discovery. The Rules provide that pretrial conferences may address "the control and scheduling of



60187

discovery, including orders affecting disclosures and discovery pursuant to Rule 26 and Rules 27 through 37." Fed. R. Civ. P. 16(c)(6). They say nothing about information-gathering that the discovery rules do not control. The Local Rules require a pretrial schedule to address the "date by which all discovery shall be completed" and the "date by which the identity of any expert witnesses and their reports shall be disclosed," not the timing of gathering of witness declarations. D. Minn. LR 16.2(c)(2), (3).

Plaintiffs thus cannot have violated the discovery rules or the Scheduling Order merely by obtaining declarations after the discovery cutoff established by the Order, because neither the rules nor the Order address such informal efforts to procure witness statements. Cargill's memorandum implicitly shows that it understands this proposition. Although Cargill complains in various ways about plaintiffs' gathering of declarations, it never openly asserts that the declaration-gathering process, as opposed to plaintiffs' provision of information about persons with knowledge of claims, is governed by the Scheduling Order.

Cargill's requested relief precludes any argument that plaintiffs violated their duty to supplement their document production seasonably. Even if plaintiffs had produced the signed declarations on the dates they received them, only one could have been produced before the formal discovery cutoff, and Cargill would have had a chance to depose only that declarant.[4] Yet Cargill asks the Court to strike all declarations received after the formal discovery deadline. Thus, any alleged breach of the duty to supplement plaintiffs' document production could not possibly give rise to the requested relief as to the other 17 declarations produced after March 17.

---

[4] Two declarations were signed before the discovery cutoff, but Jerry Summers signed his declaration March 16, 2004, and S&L received it after March 17. (Thompson Decl., ¶ 10.)

It follows that Cargill cannot seek relief based on plaintiffs' alleged failure to seasonably supplement their document production.

Even if Cargill did contend that plaintiffs violated their duty to supplement their document production, that contention would be without merit. Plaintiffs had no duty to produce the declarations at all, even though they arguably fell within the scope of Cargill's document production request number 15.[5] The watershed decision on the work product doctrine, *Hickman v. Taylor*, 329 U.S. 495 (1947), establishes that witness statements gathered by an attorney in the course of litigation are protected from compulsory disclosure, unless the requesting party can show "the necessity for the production of any of this material or … that denial of production would cause hardship or injustice." *Id.* at 509. The federal rules adopt the principle of *Hickman*, allowing a party to discover documents prepared in anticipation of litigation "only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3). Cargill has made no such showing.

Although the declarations thus were protected, plaintiffs chose voluntarily to deliver the declarations to Cargill, nonetheless. But proving that no good deed goes unpunished, Cargill has brought this motion, full of unrighteous indignation against plaintiffs and their lawyers.

Cargill, therefore, must be contending only that plaintiffs violated their duty to supplement their interrogatory responses. Cargill is wrong.

[5] As a further indication that Cargill is not contending that plaintiffs violated their duty to supplement their document production, Cargill did not quote from or even cite to this document production request.

**B. Plaintiffs Did Not Violate Any Duty to Seasonably Amend Their Interrogatory Responses.**

Interrogatory No. 1 asks each plaintiff to "[i]dentify each person with knowledge of any of the facts or allegations regarding … the individual claims of any putative class member …, and state the information known to each person identified." None of the plaintiffs, however, knew the personal and specific information imparted from declarants to S&L. Hence, none was in a position to supplement his or her answer to Interrogatory No. 1 based on personal knowledge.

Parties, however, must include in answers to interrogatories facts known to their counsel, but only to the extent that the facts are not protected under the attorney work product doctrine. *Hickman v. Taylor*, 329 U.S. at 504. The district court in *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631 (N.D. Ga. 2002) recently examined at length a party's obligations to provide the type of information sought in Cargill's Interrogatory No. 1 as to persons interviewed by counsel in connection with prosecution of litigation. It concluded that the law did not require parties to answer interrogatories when doing so would reveal "the substance of plaintiff's counsel's interviews . . . ." *Id.* at 635 (discussing *In re Gupta Corp. Sec. Litig.*, 1995 U.S. Dist. LEXIS 21847, at *2-3 (N.D. Cal. July 14, 1995)). Applying that same authority here, at most plaintiffs had an obligation to supplement their responses to Interrogatory No. 1 with information identifying the declarants. They had no obligation to supplement their interrogatory responses to provide "the information known to each person identified." By providing the completed declarations, plaintiffs went far beyond this obligation.

Moreover, the law does not require immediate disclosure of the identities of potential declarants. It requires only that interrogatory answers be supplemented "seasonably." The advisory committee notes explain, "supplementations need not be made as each new item of

information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trail date approaches." Fed. R. Civ. P. 26 advisory committee notes (1993 amendments). Courts have made clear that supplementation need occur only within a "reasonable interval," *Becton Dickinson & Co. v. Syntron Bioresearch Inc.*, 1998 U.S. Dist. LEXIS 22082, at *51 (S.D. Cal. Dec. 21, 1998), not "immediately." *Cassirer v. Fragin (In re Schick)*, 1997 Bankr. LEXIS 1250, at *23 n.11 (S.D.N.Y. Aug. 12, 1997). When a party is attempting to obtain a declaration from a member of a potential class or other third party, "seasonably," except in unusual circumstances, reasonably should mean after the declaration is signed. By regularly and periodically providing Cargill with copies of the signed declarations that Cargill seeks to exclude, generally within a few weeks of execution, plaintiffs have provided the required information seasonably.

The rationale underlying the work product doctrine affirms the reasonableness of plaintiffs' disclosures after declarations were finalized and signed. One of the primary purposes of the work product doctrine is to permit a lawyer to conduct investigations without undue interference from opposing counsel:

> In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information … without undue and needless interference. … This work is reflected, of course, in interviews, statements, … and countless other tangible and intangible ways -- aptly though roughly termed by the Circuit Court of Appeals in this case as the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. … The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.

*Hickman v. Taylor*, 329 U.S. at 510-11.

If a party whose lawyer is attempting to develop a relationship with a witness sufficient to obtain a statement or declaration is required immediately to provide the opposing party with the identifying information for that witness before obtaining the statement or declaration, that document may never be obtained. Opposing counsel, suddenly receiving names of several persons with knowledge, is likely to contact the witness as well. Faced with inquiries from both parties, the witness may conclude that cooperation with either lawyer is too risky or too much trouble.

The risk that the witness would decline to speak is especially grave for a plaintiffs' lawyer in an employment case. Employers have tremendous power over employees. In this case, current and former employees have expressed fear of retaliation as the reason for declining an interview or later hesitating to execute a declaration. Employees express a similar fear of involvement in most if not all of S&L's cases. Informing an employee of the legal protections against retaliation provides little reassurance for many employees, who believe that their employer has a long memory and can retaliate in numerous ways that will escape legal consequence. This reality, in addition to the fact that a sworn statement has indicia of reliability, makes reasonable the plaintiffs' practice of disclosing declarants after their statement is executed.

In an attempt to argue that plaintiffs somehow violated Rule 26(e)(2), Cargill cites *Hill v. Amoco Oil Co.*, 2001 U.S. Dist. LEXIS 3082 (N.D. Ill. Mar. 19, 2001), for the proposition that plaintiffs are sanctionable for failing to disclose the names of declarants prior to the close of discovery. *Hill*, however, is readily distinguishable. In *Hill*, the declarations in question had been executed prior to the close of discovery and were not produced until defendant submitted a motion for summary judgment and plaintiff responded with a motion for class certification. *Id.*

at *4-7. Amoco truly was subject to "trial by ambush."[6] Here, by contrast, plaintiffs went *beyond* their discovery obligations. They provided not only the requested information but the declarations themselves, even though the declarations were protected by the work product doctrine. With its use of *Hill*, Cargill attempts to sneak through the back door what it cannot bring in through the front: the ill-conceived proposition that all declarations must be executed prior to the close of discovery. Such a contention is tantamount to the proposition that a party's own evidentiary investigations must cease upon close of discovery. That proposition, as shown above, is false.

Granted, plaintiffs have not provided the required information in the form of a document entitled, "Supplement to Interrogatory Answer." Instead, they have provided copies of the declarations themselves. According to Rule 26(e), that is sufficient. A party need not formally supplement "if the additional … information has … otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(2). The declarations contain the information desired by Cargill, and hence there is no need for formal supplementation.

Plaintiffs thus fully complied with their duty to supplement. Cargill's motion to strike should be denied for that reason alone.

## II. CARGILL IS NOT ENTITLED TO RELIEF UNDER RULE 37(c)(1)

Even if the Court concludes that plaintiffs in some way violated their duty to supplement their discovery responses seasonably, Cargill is not entitled to relief under Rule 37(c)(1), the

[6] Similarly, in *Havenfield Corp. v. H & R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975), the defendant discovered the information giving rise to the duty to supplement two and a half months before the discovery cutoff and waited five or six weeks after the close of discovery to comply with its obligations. *Id.* at 1272.

only rule Cargill cites in support of relief and the only rule even arguably relevant. This rule states:

> A party that without substantial justification fails … to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. In addition to or in lieu of this sanction, the court … may impose other appropriate sanctions.

Under this section, evidence may not be excluded if plaintiffs acted with "substantial justification" or if any violation was "harmless." Magistrate Judge Ericksen has explained:

> In determining whether the automatic exclusion provisions of Rule 37(c)(1) should apply, the Court should consider the following four factors in assessing the substantiality of any proffered justification for the failure to disclose, as well as the harmlessness of that failure: 1) the importance of the excluded material; 2) the explanation of the party for its failure to comply with the required disclosure; 3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and 4) the availability of a continuance to cure such prejudice.

*Engleson v. Little Falls Area Chamber of Commerce*, 210 F.R.D. 667, 669 (D. Minn. 2002) (quoting *Transclean Corp. v. Bridgewood Servs., Inc.*, 101 F. Supp. 2d 788, 795-96 (D. Minn. 2000). In this case, "harmlessness" – Judge Ericksen's third factor – is determinative. In addition, all of the other factors likewise indicate that no sanctions are appropriate under Rule 37(c)(1).

**A. Any Violation of Rule 26(e)(2) Did Not Harm Cargill.**

Each party was permitted to take up to forty non-expert depositions during the class discovery period. By February 10, 2004, Cargill had used thirty of its depositions. Even if S&L first contacted every one of the declarants before the discovery cutoff of March 17, 2004, and even if plaintiffs had an obligation to immediately supplement their interrogatory answers – which, as shown in Part I they did not – Cargill could have taken only ten depositions of declarants, the same number that it did take, under the Scheduling Order. The only possible

prejudice that Cargill can identify is either that it would have chosen to depose different declarants than those it selected from among the original twelve declarants or that it would have sought relief from the forty-deposition limit.

Cargill cannot show any harm from not being able to choose from among a broader group of declarants than the original twelve. First, to the extent that S&L had been in contact with some of the post-discovery-cutoff declarants prior to the discovery cutoff, plaintiffs, at most, had an obligation to provide only names to Cargill, as discussed above. Even if plaintiffs elected to provide some information about the declarants' knowledge, that information necessarily would have been only rudimentary before the declarations were completed. Based on names alone, or even names plus rudimentary information about declarants' knowledge, Cargill would not have had any differential basis for making decisions about whom to depose. Indeed, in their initial responses to Interrogatory No. 1, plaintiffs identified many more than forty non-plaintiffs, including current and former employees, with knowledge of the claims of plaintiffs or of members of the proposed class. The information generally was rudimentary. Cargill chose to depose a grand total of two of them prior to service of the declarations. Second, although Cargill has entire declarations, not just rudimentary information, it has not identified in its memorandum one declarant it would have deposed instead of a declarant that it did depose, let alone explain how the substitution of deponents would have strengthened its opposition to class certification. Given the uses to which the declarations will be put in connection with the class certification motion (see Part B below), even if Cargill attempted to provide such an explanation, it would be unable to show any harm.

Cargill also has not provided, and cannot provide, any bona fide basis for thinking that, if plaintiffs had provided them the names of the declarants and a description of the information that

they possessed, the Court would have granted them relief from the forty-declaration limit that the Court imposed as a compromise between the positions of the two parties. Cargill did not seek such relief based on the more than forty persons whom plaintiffs identified in their initial interrogatory responses as having knowledge of the claims of plaintiffs or of members of the proposed class. It also did not do so when plaintiffs provided them with the first group of twelve declarations, even though Cargill knew that it would not be able to depose two of them because of the limitation on the number of depositions.

Contrary to Cargill's contention (Cargill's Mem. at 9), *Alexander v. Federal Bureau of Investigation*, 192 F.R.D. 20 (D.D.C. 2000), does not support its position. In *Alexander*, the plaintiff, who had exhausted his allotted number of depositions, requested leave to depose a single witness possessing what was indisputably critical information who was unwilling to sign a sworn statement. *Id.* at*8-9 & n.3. Under those limited conditions, the district court allowed the plaintiff to conduct one additional deposition. *Id.* at *10-11. That is a far cry from permitting a party to conduct twenty additional depositions, 50% of the original allotted number, with no showing that the depositions would be significant to a class certification decision.

Cargill attempts to make that showing by arguing that, when it deposed ten of the declarants, it elicited testimony casting doubt on the strength and/or accuracy of some of the allegations in the declarations.[7] (Cargill's Mem. at 9-13.) For two reasons, however, analysis of each of the comparisons between declaration allegation and deposition testimony is unnecessary. First, even if there were inconsistencies that might be significant if and when the declarations are used to establish the merits of declarants' individual claims, the imminent motion is for class

[7] If the examples of deposition-declarant conflicts cited in Cargill's brief are the best it can come up with, Cargill was not able during the depositions to poke any significant holes in declarants' averments. (Cargill's Mem. at 9-13.)

certification. As discussed in greater detail in Part B below, the declarations will be used to prove that plaintiffs' claims are typical of the claims of class members and that the claims raise common issues, not to prove that declarants will prevail on their claims. Second, as Cargill already has shown, to the extent that it desires to cast doubt on the allegations – which plaintiffs believe is unnecessary in connection with a class certification motion – it can try to do so by obtaining counter-declarations from current managers, other witnesses, and through documents over which it has control.

In sum, even if Cargill had known of each of the witnesses prior to the discovery cutoff, it has not shown that it would have been able to persuade the Court to allow it to increase the number of depositions it could take. It follows that any claimed breach of plaintiffs' duty to supplement did not harm Cargill in any way.

### B. The Merits of the Claims in the Declarations Are Not Sufficiently Important to Justify Exclusion.

In support of class certification motions in employment discrimination cases, plaintiffs typically introduce anecdotal evidence to help show the similarity of the claims of plaintiffs and class members. *See, e.g., Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) ("the statistical report and anecdotal evidence submitted by the Class Plaintiffs are sufficient to demonstrate common questions of fact"); *Dukes v. Wal-Mart Stores, Inc.*, 2004 U.S. Dist. LEXIS 11364, *85 (N.D. Cal. June 21, 2004) (explaining in the context of a class certification decision that "[c]ircumstantial and anecdotal evidence of discrimination is commonly used in Title VII pattern and practice cases to bolster the statistical proof by bringing 'the cold numbers convincingly to life'"). District courts, however, do not engage in a detailed analysis of each witness's anecdotal testimony to attempt to establish whether the witness would prevail on the merits. *See, e.g., Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 613 (D. Minn. 2000)

(Frank, J.) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs … will prevail on the merits, but rather whether the requirements of Rule 23 are met.") (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974)). Rather, the anecdotal evidence is used to help establish that plaintiffs and class members assert common claims of discrimination. *See, e.g., Dukes*, 2004 U.S. Dist. LEXIS 11364, *86 (holding that declarations from each class representative and from 114 class members around the country "supports an inference that Defendant's policies and procedures have the effect of discriminating against Plaintiffs in a common manner").

Plaintiffs similarly intend to use the declarations of class members in this case to establish that numerous class members believe that they have claims similar to those of the plaintiffs, not to prove that declarants should prevail on the merits of those claims. The possibility that Cargill might be able, if permitted to depose plaintiffs, to raise questions about the validity of some of the class members' claims is utterly irrelevant under *Eisen* and its progeny at the class certification stage of the case. Thus, although the declarations are important to plaintiffs' efforts to obtain a class, deposing the declarants at this time is not important to Cargill or to the Court.[8]

Although the merits are not now in dispute, Cargill has recourse if it wants to raise merits-related issues at the class certification stage of the litigation. Cargill has access to current employee managers whom plaintiffs cannot contact. It can access documents such as personnel files relating to each of the deponents – documents not currently available to the plaintiffs. Finally, it is just as free as plaintiffs to obtain declarations, just as it already has proven it can do.

---

[8] If the Court certifies the proposed class, Cargill, if it so elects, may depose declarants prior to the class liability trial. Similarly, if the Court denies the class and some of the declarants opt into the continuing litigation, Cargill could depose them before their claims were tried.

**C. A Continuance is Unnecessary.**

A third factor that Magistrate Judge Ericksen identified in evaluating a motion brought under Rule 37(c)(1) is whether a continuance is available to cure the prejudice that a violation of Rule 26(e) caused the non-offending party. In this case, Cargill has not been prejudiced, as discussed above, so there is no need for a continuance to cure any prejudice.

**D. Plaintiffs' Efforts to Supplement Their Discovery Responses Were "Substantially Justified."**

The final consideration is whether, even if the Court concludes that plaintiffs violated their supplementation obligation, plaintiffs' position was "substantially justified." A position is "substantially justified" if:

> "parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact. The test is satisfied if there is [a] genuine dispute concerning compliance."

*Ellison v. Windt*, 2001 U.S. Dist. LEXIS 1347, at *4-5 (M.D. Fla. Jan. 24, 2001) (quoting *Chapple v. Alabama*, 174 F.R.D. 698, 701 (M.D. Ala. 1997), which in turn was quoting *Nguyen v. IBP, Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995). *Accord, e.g., Norbrook Labs. v. G.C. Hanford Mfg. Co.*, 2003 U.S. Dist. LEXIS 23933, at *48 (N.D.N.Y. Dec. 18, 2003); *Lesser v. Camp Wildwood*, 2003 U.S. Dist. LEXIS 16921, at *5-6 (S.D.N.Y. Sep. 30, 2003); *Gallup, Inc. v. Kenexa Corp.*, 2003 U.S. Dist. LEXIS 9821, at *5 (E.D. Pa. June 2, 2003).

Plaintiffs' position that production of the declarations within a reasonable time after their execution satisfies their supplementation obligations – indeed, more than satisfies those obligations in view of the protected nature of those declarations – has, at minimum, a reasonable basis in law. If Cargill's position has any legal basis, parties can differ about their interpretation of plaintiffs' production obligation. Thus, plaintiffs' position is substantially justified.

Under all four factors, Cargill is not entitled to entitled to the extreme remedy of striking the declarations under Rule 37(c)(1). Indeed, it is not entitled to any remedy.

**III. CARGILL'S ALTERNATIVE REMEDY IS UNJUSTIFIED.**

As an alternative to striking the declarations, Cargill asks the Court to allow it "to depose the additional declarants, and prohibit the use of their declarations in any proceeding until the depositions have been completed." (Cargill's Mem. at 14.) Even if the Court concludes that plaintiffs violated their supplementation obligations, and even if it concludes that Cargill is entitled to some relief under Rule 37(c)(1) or the Court's inherent powers, this requested relief would be unfair in several respects.

First and foremost, plaintiffs' class certification brief is due July 19, 2004. Depositions could not be completed by that date. This proposed relief would prevent plaintiffs from relying on the declarations in their class certification filing.

Second, plaintiffs, unlike Cargill, do not have scores of lawyers at their disposal. Defending depositions during the next three weeks would substantially prejudice their ability to complete their class certification filing. If Cargill wants to waste its time taking depositions when the merits are not adjudicable at this stage of proceedings, it should be permitted to do so only during its briefing period or later.

Finally, this relief would give Cargill up to twenty more depositions than plaintiffs. Cargill has not shown good cause for modifying the Scheduling Order in this way as these depositions primarily would be useful to Cargill, if at all, in the merits phase of the litigation. Allowing these depositions would be fundamentally unfair to the plaintiffs, particularly when nothing prevents Cargill from contacting witnesses as plaintiffs are doing and when Cargill

already has access to current employee witnesses and extensive documents (including personnel files) for each of the declarants.

## CONCLUSION

For the reasons set forth above, Cargill's motion should be denied. The declarations should not be excluded, and Cargill should not be permitted to conduct additional depositions in excess of the long-established limits in this action.

DATED: June 28, 2004

SPRENGER & LANG, PLLC

By: s/*Susan M. Coler*

Lawrence Schaefer (MN No. 195583)
Susan M. Coler (MN No. 217621)
Teresa K. Patton (MN No. 205679)
Sprenger & Lang, PLLC
325 Ridgewood Avenue
Minneapolis, MN 55403
(612) 871-8910
(612) 871-9270 (*facsimile*)

Michael D. Lieder (DC Bar No. 444273)
Steven M. Sprenger (MO Bar No. 43994)
1614 20th Street, N.W.
Washington, DC 20009-1001
(202) 265-8010

ATTORNEYS FOR PLAINTIFFS