**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**
**FOURTH DIVISION**

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) |
| | ) | |
| On behalf of themselves and all others similarly situated, | ) | CLASS ACTION |
| | ) | |
| *Plaintiffs,* | ) | **PLAINTIFFS' BRIEF IN SUPPORT OF ITS APPEAL OF ORDER ON MOTION TO STRIKE DECLARATIONS OR, IN THE ALTERNATIVE, TO COMPEL DECLARANT DEPOSITIONS** |
| v. | ) | |
| CARGILL, INCORPORATED, | ) | |
| | ) | |
| *Defendant.* | ) | |

## INTRODUCTION

Plaintiffs appeal Magistrate Judge Arthur J. Boylan's July 13, 2004, Order ("the Order") because it is both clearly erroneous and contrary to law. Without finding that plaintiffs had violated any discovery rules or the Scheduling Order, Magistrate Judge Boylan granted Cargill extraordinary relief, requiring non-party out-of-state declarants to be produced for depositions in Minnesota, at plaintiffs' expense, or have their declarations stricken from consideration on class certification. In support of this Order, the Magistrate Judge made a vague reference to "general litigation management authority," Order at 4, and the need to ensure that consideration of the class certification motion not be swayed by declarations that could be "vague, untrue or subject to misinterpretation." Order at 5. This authority and concern, however, provide no support for the relief ordered.

## BACKGROUND

During and continuing after the deadline for formal discovery under the Federal Rules of Civil Procedure, plaintiffs' counsel, Sprenger & Lang ("S&L"), interviewed potential class

members and helped prepare declarations for some. Declaration of Mara R. Thompson, filed June 28, 2004 ("Thompson Decl."), ¶ 3. At the time of the Order, 30 potential class members had signed declarations, and they had been produced to Cargill as supplemental discovery responses within a reasonable period after S&L received them. *Id.*, ¶¶ 6, 8-10. This has more than met any duties to supplement discovery responses.[1]

By February 19, 2004, when plaintiffs served the first twelve declarations, Cargill's capacity to depose the declarants was already circumscribed by the Scheduling Order limiting parties to forty non-expert depositions apiece before the March 17 deadline for formal discovery under the Rules. Thompson Decl., Exs. 1, 2. Having by then already conducted thirty depositions, Cargill knew it could depose only ten of the twelve declarants. Thompson Decl., ¶ 12.[2] It did not seek leave to depose the remaining two. *Id.* ¶ 12.[3]

**ARGUMENT**

Reversal of a magistrate judge's order on a non-dispositive matter is warranted when it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); D. Minn. L.R. 72.1(b)(2). This occurs when the reviewing court, based on consideration of all the evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Chakales v. Comm'r of*

---

[1] Cargill's first interrogatory required each *plaintiff* to identify persons with knowledge "of any of the facts or allegations regarding … the individual claims of any putative class member." *Id.* Plaintiffs identified more than forty persons in response and indicated in every instance that "[d]iscovery is continuing." *Id.* Cargill's first document production request required plaintiffs to produce, among other things, all "statements." *Id.*

[2] Cargill had deposed the 26 plaintiffs, two other witnesses, and only two of more than forty persons identified in plaintiffs' interrogatory responses as having knowledge. *Id.*, ¶13.

[3] In support of various motions in this case, Cargill also has used affidavits from persons not identified in responses to plaintiffs' interrogatories as "persons with knowledge." Thompson Decl., ¶ 13. Cargill has not served these affidavits on plaintiffs before filing them in support of its motions, and plaintiffs have never sought leave to depose these affiants.

*Internal Revenue*, 79 F.3d 726, 738 (8th Cir. 1996) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)). Here, to the extent the Magistrate Judge made findings regarding plaintiffs' compliance with the Scheduling Order or formal discovery rules, these findings warrant no relief at all. Without finding any sanctionable conduct, no law supports the relief ordered.

## I. PLAINTIFFS DID NOT VIOLATE THEIR DISCOVERY OBLIGATIONS.

The basic error in the Order is that it flows from the premise that the process of securing declarations must occur within the pre-class certification discovery period, and that it is subject to the same rules as formal discovery. Order at 4 ("plaintiffs' obligations relating to the production of the declarations are appropriately subject to the Court's pre-class certification scheduling order, as well as the Court's general litigation management authority"). Among other things, Rule 16 pretrial conferences and attendant Scheduling Orders address "the control and scheduling of discovery, including orders affecting disclosures and discovery pursuant to Rule 26 and Rules 29 through 37." Fed. R. Civ. P. 16(c)(6). Rule 16 does not control informal information gathering not governed by formal discovery rules. Nor does the Scheduling Order in this case prohibit such informal discovery or provide a deadline for it. Thompson Decl., Ex. 1.

The process of securing declarations, affidavits, or statements from witnesses or class members is an informal discovery process equally available to both parties and is not subject to the same rules that govern formal discovery. The parties' only obligation in this informal discovery process is to "seasonably" supplement its responses to applicable discovery requests, an obligation that has unquestionably been met by the production of the declarations here. Fed. R. Civ. P. 26(e)(2). Plaintiffs typically pursue informal discovery like this in earnest after the

formal discovery deadline has passed because this is when greater time is available for informal discovery. Thompson Decl., ¶ 6.

The Magistrate Judge found that "it is not patently obvious that the timing of plaintiffs' [sic] post-discovery deadline production of declarations is in violation of procedural rules . . . ." Order at 5. No other finding is possible on this record.[4] Plaintiffs had no duty to produce the declarations at all, even if they fell within Cargill's document production request.[5] Following *Hickman v. Taylor*, 329 U.S. 495 (1947), which concerned witness statements gathered by attorneys, the rules permit discovery of documents prepared in anticipation of litigation only upon a showing of both substantial need and undue hardship in obtaining them by other means. Fed. R. Civ. P. 26(b)(3). Cargill has made no such showing.

Plaintiffs also unquestionably met their obligation to supplement interrogatory responses. Parties must in their interrogatory answers disclose facts known to their counsel, but not attorney work product. *Hickman*, 329 U.S. at 504; *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 631,

---

4 Cargill cites *Hill v. Amoco Oil Co.*, 2001 U.S. Dist. LEXIS 3082 (N.D. Ill. 2001), for the proposition that plaintiffs are sanctionable under Rule 26(e)(2) for failing to disclose the names of declarants prior to the close of discovery. *Hill*, however, is readily distinguishable. In *Hill*, the declarations in question had been executed prior to the close of discovery and were not produced until defendant submitted a motion for summary judgment and plaintiff responded with a motion for class certification. *Id.* at *4-7. Amoco truly was subject to "trial by ambush." Here, plaintiffs went *beyond* their discovery obligations, producing not only the requested information but also the declarations themselves, though they were protected work product. With its use of *Hill*, Cargill attempts to sneak through the back door what it cannot bring in through the front: the ill-conceived proposition that all declarations must be executed prior to the close of discovery.

5 Cargill's requested relief belies any notion of resting on violations of plaintiffs' duty to supplement document production. Even had plaintiffs produced signed declarations on the dates they received them, only one would have been produced before the discovery deadline. (Two declarations were signed before the discovery cutoff, but Jerry Summers' declaration, signed on March 16, 2004, was not received by S&L until after March 17). Thompson Decl., ¶ 10. Hence, Cargill could have deposed only that one declarant. Yet it asks the Court to strike *all* declarations it received after the deadline.

635 (N.D. Ga. 2002) (parties need not reveal "the substance of plaintiff's counsel's interviews" when answering interrogatories). Hence, plaintiffs here were obliged to supplement their interrogatory responses at most by identifying potential declarants. By providing the actual declarations, they exceeded their obligation.

Interrogatory answers must be supplemented "seasonably," but that does not mean "immediately." *In re Schick*, 1997 Bankr. LEXIS 1250, at *23 n.11 (S.D.N.Y. 1997); *Becton Dickinson & Co. v. Syntron Bioresearch Inc.*, 1998 U.S. Dist. LEXIS 22082, at *51 (S.D. Cal. 1998) (a "reasonable interval"); Fed. R. Civ. P. 26 Advisory Committee Notes, 1993 Amendments ("appropriate intervals"). "Seasonably" with respect to witness declarations cannot possibly mean before they are even signed. By producing declarations without undue delay after execution, plaintiffs have supplemented seasonably.

The work product doctrine provides a strong rationale for furnishing only finalized declarations. *Hickman* itself turned on the importance of facilitating lawyer investigations without undue interference from opposing counsel.[6] If potential declarants must be identified before interviews even occur, declarations may never be obtained. Risks that evidence gathering

---

[6] As *Hickman* puts it:

> In performing his various duties … a lawyer [must] work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information … without undue and needless interference. … This work is reflected, of course, in interviews, statements … and countless other tangible and intangible ways …. Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. … And the interests of the clients and the cause of justice would be poorly served.

329 U.S. at 510-11.

will be frustrated are especially grave in cases where employers may intimidate their employees, who often fear retaliation.

## II. RESTRICTING USE OF THE CONTESTED DECLARATIONS IS WARRANTED UNDER NEITHER THE COURT'S INHERENT POWER NOR RULE 37(C)(1).

Without any basis to order relief based on plaintiffs' compliance with their duty to supplement, the Magistrate Judge erred in citing prejudice to Cargill and the Court related to class certification to justify the relief ordered. Sanctions under Rule 37(c)(1)[7] are inappropriate because Cargill cannot demonstrate prejudice and because plaintiffs' production of declarations after the formal discovery deadline, even if deemed erroneous, was substantially justified. *See Engleson v. Little Falls Area Chamber of Commerce*, 210 F.R.D. 667, 669 (D. Minn. 2002) (identifying factors for deciding whether to levy Rule 37(c)(1) sanctions); *see also Mathers v. Northshore Mining Co.*, 217 F.R.D. 474, 482 (D. Minn. 2003). Restricting their use is therefore an abuse of discretion.

In support of class certification, employment discrimination plaintiffs typically introduce anecdotal evidence for the important purpose of showing similarity between their own claims and those of potential class members. *See, e.g., Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 292 (2d Cir. 1999) (anecdotal evidence probative on "common questions of fact"); *Dukes v. Wal-Mart, Inc.*, 2004 U.S. Dist. LEXIS 11365, *85-86 (N.D. Cal. 2004) (anecdotal evidence bolsters statistical proof by bringing "cold numbers" to life). Courts do not scrutinize such anecdotal testimony as to the merits of possible claims, but only to establish whether plaintiffs and class members assert common claims. *Id.* at *86 (declarations from potential class

---

[7] Although the Magistrate Judge never cites Rule 37(c)(1) as the basis for the relief ordered, it is apparent from the nature of this relief that this provision would be the only even arguably applicable authority.

members support an inference that defendant discriminates against class members "in a common manner").

Consistent with this practice, plaintiffs at this point proffer the disputed declarations not on the merits of any claims asserted, but only to show that numerous class members assert claims similar to the plaintiffs'. That Cargill might ultimately use depositions to challenge claims on their merits is irrelevant to class certification. Plaintiffs' use of declarations in the context of class certification does not prejudice Cargill.[8]

Other considerations further demonstrate lack of prejudice. As noted above, Cargill had used thirty of its forty allotted depositions before receiving any declarations. Even if S&L had initiated first contact with all declarants before the discovery cutoff and plaintiffs had immediately produced their names along with rudimentary information, Cargill could have deposed only ten of them. Hence, Cargill's worst conceivable prejudice from post-deadline production of declarations is a somewhat narrowed range on which and how many declarants to depose. Names of potential declarants along with their rudimentary information would have given Cargill no appreciable advantage in deciding whom to depose. Cargill chose to depose only two of more than forty non-plaintiffs, including current and former employees, identified in plaintiffs' initial interrogatory responses as having knowledge of plaintiffs' or proposed class members' claims. Even after receiving executed declarations, Cargill has identified no declarant

---

[8] Moreover, Cargill has ample means at its disposal to the extent it wishes to challenge merits-related issues at class certification: it has access to managers whom plaintiffs cannot currently contact, access to personnel files not currently available to the plaintiffs and the freedom it has already utilized to obtain declarations and affidavits. If the class is ultimately certified, Cargill can depose declarants prior to the class liability trial. If it is not certified, Cargill can depose declarants who opt into the continuing litigation before their claims are tried.

it would have deposed instead of someone it did depose, nor how this might fortify its opposition to class certification. Cargill cannot establish prejudice merely by asserting it.

The Magistrate Judge expressed concern that declarations untested by depositions might sway the Court unduly in favor of class certification. This same "danger" arises with declarations turned over *before* the discovery deadline insofar as the 40-deposition limit precludes deposing some of the declarants. Moreover, this concern ignores the limited purposed of these declarations on the issue of commonality and typicality, and the Court's capacity to consider the fact that some declarants have not been deposed in properly weighing this evidence.

Nor can Cargill maintain that, had plaintiffs provided declarant names before the deadline, it would have secured relief from the forty-deposition limit. Cargill sought no such relief when plaintiffs identified more than forty persons with knowledge of claims, nor when plaintiffs turned over the first twelve declarations.[9] Furthermore, Cargill has not demonstrated that "good cause" requires modifying the Scheduling Order. D. Minn. L.R. 16.3(a).

Rule 37(c)(1) sanctions apply only when failures to supplement discovery are not substantially justified. A position on discovery compliance is "substantially justified" if "parties could differ" as to obligations; if it has a "reasonable basis in law and fact"; or if there could be a "genuine dispute concerning compliance." *Ellison v. Windt*, 2001 U.S. Dist. LEXIS 1347, at *4-5 (M.D. Fla. 2001); *Chapple v. Alabama*, 174 F.R.D. 698, 701 (M.D. Ala. 1997); *Nguyen v. IBP*,

[9] Contrary to Cargill's contention (Cargill Mem. at 9), *Alexander v. FBI*, 192 F.R.D. 20 (D.D.C. 2000), does not support its position. In *Alexander*, the plaintiff, after exhausting his allotted depositions, requested leave to depose a single witness possessing indisputably critical information who was unwilling to sign a sworn statement. *Id.* at 22 & n.3. Under those limited conditions, the district court allowed the plaintiff to conduct one additional deposition. *Id.* at 22. That is a far cry from permitting a party to conduct twenty additional depositions, 50% of the original allotted number, with no showing that the depositions would be significant to a class certification decision.

*Inc.*, 162 F.R.D. 675, 680 (D. Kan. 1995). Plaintiffs' reasonable belief that informal discovery methods are not limited by the Scheduling Order, and their production of declarations at reasonable intervals after their execution have a reasonable basis in law and constitute "substantially justified" conduct for which Cargill cannot demonstrate any prejudice.

## III. THE ORDER'S REMEDIES ARE UNDULY DRASTIC.

Even if plaintiffs violated discovery obligations to Cargill's prejudice and without substantial justification, the relief awarded -- barring use of the disputed declarations, or affording Cargill many more depositions than allowed the plaintiffs and requiring the depositions to occur in the Twin Cities -- is unwarranted and unduly prejudicial to plaintiffs. Besides handing defendants an unfair deposition advantage, the Order bars plaintiffs from using evidence unless they bear considerable expenses that cannot be imposed under the law These declarants are neither parties to this dispute, nor, for the most part, S&L clients over which the firm has any control. Magistrate Judge Boylan's Order nonetheless requires these declarants to be produced for depositions here, at plaintiffs' expense. Order at 2, ¶ 2. Rule 45 governs the power to subpoena non-party witnesses, and requires the party noticing the deposition to compensate the witness for expenses and prescribes the physical location of the deposition to within 100 miles of the witness' residence. Fed. R. Civ. P. 45(b)(1), (2). Requiring plaintiffs to produce non-party witnesses here, at plaintiffs' expense, violates the clear protections against undue burden and highlights the abuse of discretion that has occurred.

If this Court finds that declarations of witnesses not disclosed as persons with knowledge during the discovery period should not be considered on class certification without providing Cargill an opportunity to test these declarations through depositions, this Court could order an alternative means of accomplishing this goal that is consistent with the Rules and the parties'

practice in this case, such as ordering time limited (2 hour) depositions by telephone under Fed. R. Civ. P. 30(b)(7) and (d)(2), without prejudice to Cargill's ability to take additional deposition testimony following the class certification ruling. This would address the Magistrate Judge's concerns while protecting these witnesses and the plaintiffs from undue burden and expense.

**CONCLUSION**

For the reasons set forth above, the Magistrate Judge's Order should be reversed. Use of the disputed declarations should not be excluded, nor should Cargill be allowed to take additional declarant depositions for purposes of opposing class certification.

DATED: July 26, 2004

SPRENGER & LANG, PLLC

By: **s/*Lawrence P. Schaefer***

Lawrence P. Schaefer (MN No. 195583)
Susan M. Coler (MN No. 217621)
Teresa K. Patton (MN No. 205679)
David L. Ramp (MN No. 89357)
Mara R. Thompson (MN No. 196125)
Sprenger & Lang, PLLC
325 Ridgewood Avenue
Minneapolis, MN 55403
(612) 871-8910
(612) 871-9270 (*facsimile*)

Michael D. Lieder (DC Bar No. 444273)
Steven M. Sprenger (MO Bar No. 43994)
1614 20th Street, N.W.
Washington, DC 20009-1001
(202) 265-8010

ATTORNEYS FOR PLAINTIFFS