UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-2086 DWF/AJB

**CARGILL'S MEMORANDUM IN SUPPORT OF APPEAL FROM PARAGRAPH 4 OF JULY 13, 2004, ORDER OF MAGISTRATE JUDGE**

## I. INTRODUCTION

Although discussed only briefly in his Order of July 13, 2004, it appears Magistrate Judge Boylan felt constrained by the language of the Protective Order, as modified by this Court in 2002, to protect the confidentiality of Cargill's personnel data only to the extent it directly discloses information about individual employees. While this is certainly one justification for confidential treatment, it is by no means the only justification; nor does the Protective Order preclude any of the other generally accepted grounds for maintaining the confidentiality of information during the discovery process. Cargill's concerns that publication of these statistics in aggregate format would disclose competitively valuable, non-public information and unfairly present unsound statistical data about Cargill to the general public under the guise of "expert" analysis remain worthy of judicial protection.

Notably, the specific language contained in Paragraph 10 of the Protective Order that creates the problem was inserted by plaintiffs for the first time in their appeal to this Court from Magistrate Judge Boylan's June 5, 2002, Order providing for the protection of confidential information. That language, as adopted by this Court, had never been the subject of briefing or argument before either Magistrate Judge Boylan or this Court. Its application, in particular, to

expert reports based on confidential individual employee data, information which remains confidential to Cargill even in its aggregated format, is contrary to the spirit and intent of the rest of the Protective Order. On this appeal, Cargill asks that Paragraph 10 be considered in the context of the language and intent of the Order as a whole.

Only this Court can say definitively what its amendments to the Protective Order were intended to cover. Magistrate Judge Boylan, understandably, felt constrained by language added after he had last participated. This Court should revise the Magistrate Judge's order on appeal, *sua sponte*, or upon reconsideration of the Order's terms and intent by interpreting its language to afford Cargill the same protection afforded named plaintiffs, non-party employees, and third parties in this litigation and, routinely, in all others.

## II. BACKGROUND

This matter is before the Court on Cargill's appeal of Paragraph 4 of the July 13, 2004, Order of Magistrate Judge Boylan, denying continuing confidentiality protection to Cargill's HRIS data as found in the report of Dr. David Peterson, plaintiffs' statistical expert.[1] The Protective Order in this matter was largely the result of agreement between the parties both in terms of the scope of documents that could be protected and the extent of the protections to be afforded. A few areas of disagreement (primarily, whether the named plaintiffs could have access to "Confidential" documents to which they would not otherwise have had access within the scope of their duties while at Cargill) were presented to the Magistrate Judge early in these

[1] The Magistrate Judge's Order also allows the public disclosure of the report of plaintiffs' expert William Bielby, concerning corporate culture, which relied heavily on documents, deposition excerpts, and information designated as "confidential" by Cargill. See July 13, 2004, Order of Magistrate Judge Boylan ¶ 4. Even under Paragraph 10 of the Protective Order, Bielby's report clearly is not "statistical" in nature and must be filed under seal pursuant to Paragraph 9. To that extent, at a minimum, the Magistrate Judge's ruling should be reversed. The Protective Order – and this Court's August 19, 2002 Order – do not limit confidentiality protections and sealed filing requirements to information that can be linked to individual employees. Rather, they broadly protect all parties' confidential employment documentary and computer data.

proceedings for resolution. In his Order dated June 5, 2002, the Magistrate Judge determined that the named plaintiffs would be allowed access to "Confidential" documents only to the extent they would have had access to them in the course of their employment. See June 5, 2002, Order of Magistrate Judge Boylan ¶ 1 & Ex. A, ¶ 6(a). Notably, neither the arguments of the parties below nor the Magistrate Judge's June 5, 2002, Order focused on the question of whether statistical summaries of employee information, not directly identifying individual employees, could nonetheless be construed as confidential and thus be required to be filed under seal.[2]

Plaintiffs' counsel appealed the Magistrate Judge's June 5, 2002, Order, citing the need for their clients to have access to "Confidential" documents in order to prosecute this action. Plaintiffs argued that "[i]t is untenable for a plaintiffs' counsel to be put in a position where the named plaintiffs, class representatives and, eventually, class members, cannot even review the bulk of the briefs written on their behalf . . .." Plaintiffs' Memorandum of Law in Support of Appeal from Magistrate Judge's June 5, 2002, Order Denying Data on Senior Management and Imposing Restrictive Protective Order at 9 (June 19, 2002).

Although not discussed at all in their brief on that appeal, and certainly not central to any of the arguments they advanced, plaintiffs inserted a new sentence into their proposed language for Paragraph 10 creating an exception to the usual sealed filing requirement for statistical analysis not linked directly to individual employees.[3] Remarkably, plaintiffs' counsel at that

---

[2] Paragraph 10 of Magistrate Judge Boylan's Protective Order provided, in relevant part, that "[a]ny Confidential or Attorneys' Eyes Only documents filed with the Court, and any pleadings, motions, or other papers disclosing Confidential or Attorneys' Eyes Only information shall be filed under seal." Paragraph 10 of plaintiffs' proposed Protective Order similarly provided that, "[a]ny Confidential or Attorneys' Eyes Only documents filed with the Court, shall be filed under seal. Portions of affidavits and briefs quoting Attorneys' Eyes Only information or documents will be filed under seal."

[3] Paragraph 10 of the proposed Protective Order submitted by plaintiffs to this Court on appeal was modified, in pertinent part, to provide that "[a]ny Confidential or Attorneys' Eyes Only documents filed with the Court, shall be filed under seal. Portions of affidavits and briefs quoting Confidential or Attorneys' Eyes Only information or documents will be filed under seal. Statistical analyses that do not

time assured this Court that any revisions to their proposed Protective Order were "even more" of a "compromise" from their original proposal intended "to meet defendant's concerns." (emphasis added). Notwithstanding these assurances, the plaintiffs newly proposed language for Paragraph 10 dramatically reduced the protections available to Cargill, not only from what Magistrate Judge Boylan had ordered but also from what plaintiffs themselves initially had proposed before the Magistrate Judge. Given the lack of discussion in the briefing, or in this Court's August 19, 2002, Order, the applicability of Paragraph 10 to expert reports constructed entirely of and fully disclosing Cargill's confidential information needs to be considered.[4]

On April 21, 2004, plaintiffs produced expert reports, including the report of Dr. David Peterson entitled, "Patterns in the Performance Ratings, Promotion, Pay and Termination of African American Employees at Cargill, Inc. from 1995 to 2003." Cargill, as a "Receiving Party," immediately designated this report as "Confidential" and "Attorneys' Eyes Only" pursuant to Paragraph 5 of the Protective Order. Plaintiffs objected to Cargill's designation, again citing only a need for their named plaintiffs to access the information in defense of the lawsuit. In response to this concern, prior to the hearing before the Magistrate Judge, Cargill revised its designation to "Confidential," thus granting full access by the named plaintiffs to

---

link Confidential or Attorneys' Eyes Only information to specific employees does not need to be filed under seal." Addendum to Plaintiffs' Memorandum of Law in Support of Appeal from Magistrate Judge's June 5, 2002, Order at ii – iii; see also supra note 2.

[4] Of course, this is not to say that Cargill claims to suffer competitive harm from the public disclosure of every statistical analyses of employee data. Summaries of basic demographic information about Cargill's workforce, for example, would be of little value to a competitor and, in some cases, like EEO-1 reports, already are disseminated outside of Cargill. See, e.g., Natural Resources Defense Council, Inc. v. SEC, 432 F. Supp. 1190, 1992 (D.D.C. 1977) (finding that disclosure of information contained in EEO-1 forms would not cause harm to employer's competitive position). Cargill makes no "sealed filing" claim regarding portions of the plaintiffs' expert reports analyzing EEO data.

plaintiffs' expert reports pursuant to Paragraph 6. Cargill also more specifically identified, consistent with an earlier agreement, those precise portions of the report claimed as confidential.[5]

Nonetheless, plaintiffs persisted in their objections. Plaintiffs' counsel's refusal to accept that compromise confirms that their true aim, rather than to inform named plaintiffs, is to publicize the information conveyed through these export reports via their website and media contacts, as plaintiffs' counsel essentially admitted in their brief to the Magistrate Judge and in a recent newspaper interview.[6] The Magistrate Judge agreed, nonetheless, that the Peterson report was "statistical" and an "aggregation," and, relying on a narrow interpretation of the new language in Paragraph 10, concluded that the reports "are not protected from public disclosure under the Protective Order." July 13, 2004, Order of Magistrate Judge Boylan ¶ 4.[7]

Cargill is not just concerned about the privacy of its employees, though that is an important concern. Cargill is also concerned about maintaining the confidentiality of information that is non-public and has economic or competitive value to Cargill. Balanced against those concerns is only plaintiffs' lawyers' desire to publish skewed analyses of private information in an effort to embarrass Cargill.

---

[5] Copies of the reports as more specifically designated "Confidential" were filed under seal with the Magistrate Judge in connection with the proceedings below.

[6] The parties presented their arguments to the Magistrate Judge via confidential letter briefs. Cargill assumes, for purposes of this appeal, that the Court has access to these materials, which include a copy of the newspaper interview mentioned above, and also the prior discovery letters submitted to Magistrate Judge Boylan and referenced herein. Cargill will gladly provide copies of these materials, however, should the Court request it.

[7] What was "Attorneys' Eyes Only" as to individual employees in its raw form (individual employment history, salary history, performance ratings, bonuses, etc.) also was, and remains, confidential to Cargill in the aggregate, whether summarized, analyzed, or otherwise manipulated by plaintiffs' experts on a quest to find evidence of discrimination. Cargill steadfastly and successfully pushed for protection of confidential information of thousands of current and former employees – both African American and Caucasian. Plaintiffs never contested the confidentiality designation of that information, which necessarily was in a format that permitted either individual or aggregate analyses. The confidential nature of that information, if anything, is heightened as to Cargill in the form presented by plaintiffs' experts.

## III. ARGUMENT

According to D.Minn. LR 72.1(b)(2), a district court judge may overturn any magistrate judge's ruling if "clearly erroneous or contrary to law." In addition, under the local rules, a district court judge has the power to "reconsider any matter *sua sponte*." LR 72.1(b)(2). Although a magistrate judge's order is entitled to deference, it is subject to modification, even when there is evidence to support it, if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." Chakales v. Commissioner of Internal Revenue, 79 F.3d 726, 728 (8th Cir. 1996) (internal quotation omitted). On this appeal, Cargill does not argue that Magistrate Judge Boylan's July 13, 2004, Order was an inexplicable mistake; rather, Cargill argues that, because of the strange way the language at issue was inserted into the Protective Order, a mistake has been coming since 2002. Cargill urges this Court to confirm that Cargill, too, will receive the protections generally afforded confidential information in discovery, in accordance with the spirit of the Protective Order as a whole and the intent of this Court's Order of August 19, 2002, modifying that Order.

Protective orders are not only permitted under the Federal Rules of Civil Procedure but also viewed as "essential to the functioning of civil discovery." See, e.g., Fed. R. Civ. P. 26(c); Bayer AG and Miles Inc. v. Barr Laboratories, 162 F.R.D. 456, 465 (S.D.N.Y. 1995). "Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless annoyance, embarrassment, oppression or undue burden or expense."[8] SEC v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001) (internal

---

[8] See also Seattle Times v. Rhinehart, 467 U.S. 20, 33 (1984) ("Restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information."); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1310-14 (11th Cir. 2001) (noting that "[p]ublic disclosure of discovery materials is subject to the discretion of the trial court" and "[a]dditionally, where a party has sought the protection of Rule 26, the fact that sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality

quotations omitted, emphasis added). Indeed, the parties agreed upon (at least in principle), and this Court approved, a Protective Order permitting the designation as "Confidential" of any document deemed to contain any confidential information (not only of individual litigants or Cargill employees, but of Cargill as a company, too). See Stipulation and Protective Order at 1-2 (July 14, 2003). Even in modifying the Protective Order in this case, this Court cautioned that "[b]y modifying Judge Boylan's Protective Order, this Court does not intend to allow Plaintiffs to expose Cargill's confidential or proprietary information to public dissemination. In fact, the language of the Protective Order, as modified, is intended to prohibit that result." August 19, 2002, Order of Judge Frank at 4 (emphasis added).

Despite this admonition, plaintiffs argued to the Magistrate Judge that Paragraphs 9 and 10 of the Protective Order indicate that this Court specifically considered and prospectively and categorically rejected the possibility that any statistical summary of data could divulge confidential information. Cargill respectfully contends that neither the actual language of the Protective Order nor this Court's stated rationale for its modifications thereto supports such a conclusion. This Court's Order of August 19, 2002, in fact, contains no discussion or analysis of the status of statistical summaries derived from confidential data, especially as presented in expert reports. Plaintiffs' counsel's concern in that appeal was whether "Plaintiffs would not be allowed to read any pleadings that contain Confidential or Attorneys' Eyes Only information." August 19, 2002, Order of Judge Frank at 4. It does not appear the Court specifically considered – and certainly no one ever discussed – the implications of adopting in full plaintiffs' revised

imposed by Rule 26 is automatically forgone"); Citizens of First National Bank of Princeton v. Cincinnati Ins. Co., 178 F.3d 943, 945 (7th Cir. 1999) (distinguishing the interests implicated in pretrial discovery and trial proceedings); In re the Reporters Comm. for Freedom of the Press, 773 F.2d 1325, 1338 (D.C. Cir. 1985) (Scalia, J.) (concluding that "material placed before the court in connection with summary judgment motions is not constitutionally required to be open to the public").

language, first presented on that appeal, particularly when Plaintiff's counsel had assured the Court that its revised proposal was more accommodating of Cargill's position than plaintiffs' original proposal to Magistrate Judge Boylan.

Even if this Court had expert reports in mind when it modified the Protective Order in August 2002, neither Paragraph 9 or 10 foreclose Cargill from attempting to assert continuing confidentiality protections for the particular reports at issue here. Paragraph 9, for example, provides that "[n]o Confidential or Attorneys' Eyes Only documents shall be posted on web sites or otherwise published or disseminated by the parties or their counsel without . . . permission . . .." This provision quite obviously is a response to and a prescription against the very actions plaintiffs seem intent on engaging in with their expert reports – that is, taking information produced in this case, with an expectation of confidentiality and for the ostensible purpose of prosecuting this action, and subjecting it to public dissemination.[9]

Similarly, Paragraph 10 does not prevent a party from insisting upon the confidential treatment of expert reports, including reports containing statistical analyses. Rather, Paragraph 10 merely provides that, as a preliminary matter, "statistical analyses that do not link Confidential or Attorneys' Eyes Only information to specific employees do not need to be filed under seal." Nothing about this provision precludes a party from showing that, even in its analyzed form, the information remains highly confidential. At most, it eliminates a presumption

---

[9] See Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2, 197 F.3d 922, 926 (8th Cir. 1999) ("[D]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public." (internal quotation omitted)); Damiano v. Sony Music Entertainment, Inc., 2000 WL 1689081 at *10 (D.N.J. Nov. 13, 2000) (ordering confidential treatment under protective order where it appeared that the plaintiff's purpose for seeking greater access to commercially sensitive information was to expose it to the public, including posting it on plaintiff's website).

of confidentiality under these circumstances and puts the burden on the designating party to make a showing of confidentiality, which Cargill has done.[10]

Finally, plaintiffs' untested expert reports and conclusions are largely advocacy pieces and not scientifically well-founded. Precisely for this reason, and the respectability with which even the most unfounded allegations can be cloaked when presented in the name of an "expert," such reports must be closely monitored and may only be admitted after the *trial court* determines it is both relevant and reliable at trial . See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 591-93 (1993); Fed. R. Evid. 702. The trial court plays a gate-keeping role in keeping out unreliable or irrelevant evidence, precisely because the imprimatur of "scientific method" has the potential to cause people to accord greater weight to expert reports than other evidence. See Lauzon v. Senco Products, 270 F.3d 681, 685 (8th Cir. 2001) (recognizing that "the district court is the 'gatekeeper' for the admissibility of expert testimony"). Exposing Cargill's confidential information to the public under guise of expert analysis doubles the injury to Cargill – in a business sense by giving the data freely to those who compete with Cargill, and in the public's opinion of Cargill by clothing outrageous propositions in a mantle of undeserved respectability.

Cargill's confidential information reflected throughout the skewed "analyses" presented in plaintiffs' expert reports remains confidential and should be protected. This Court should not countenance plaintiffs desire to use it to recruit new clients and to paint a deeply misleading picture of Cargill to the public now.

---

[10] As argued below, a competitor would find information on the average salaries and bonuses Cargill pays by job group, business unit, and geographic region just as useful as the actual salary Cargill pays any individual employee. See, e.g., C.A. Muer Corp. v. Big River Fish Co, 1998 WL 488007 at *4 (E.D. Pa. Aug. 10, 1998) (limiting access to discovery information that could be used by a competitor "for underbidding goods and services, for anticipatory expansion and for interfering with business operations"); Bergen Brunswig Corp. v. Ivax Corp., 1998 WL 113976 at *3 (S.D.N.Y. Mar. 12, 1998) (noting that "[p]otential damage from the release of sensitive business information has been deemed a ground for denying access to court documents" and collecting cases for similar propositions). Summary results can prove to be more informative than individual data and should be protected.

## IV. CONCLUSION

Paragraph 4 of Magistrate Judge Boylan's July 13, 2004, Order should be modified to require that Cargill's confidential information shall continue to be treated as such. Plaintiffs should be required to file the Bielby and Peterson expert reports, which are chock-full of Cargill confidential information, under seal.

Dated: July 27, 2004

DORSEY & WHITNEY LLP

s/Michael Iwan

Paul B. Klaas (#56327)
Mark Ginder (#0182795)
Michael Iwan (#28628X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55502-1498
Telephone: (612) 340-2600

Attorneys for Defendant
CARGILL, INCORPORATED