# Reed

# Duane Reed - October 6, 2003

PAGE 1 TO PAGE 305

## CONDENSED TRANSCRIPT AND CONCORDANCE

PREPARED BY:

*Anderson & Associates Court Reporters*
*247 Third Avenue South*
*Minneapolis, MN 55415*
*Phone: 612-338-8661*
*FAX: 952-934-5495*

Page 193

**external standpoint..**
*Q Right.*
**A Okay.**
*Q Mr. Reed, when did you first retain Sprenger & Lang?*
**A Probably late May, early June 2000.**
*Q That was in connection with the finalization of your separation agreement?*
**A That's correct.**
*Q And you've since considered yourself a client of Sprenger & Lang?*
**A Yes.**
*Q What if anything was told to you during your representation by Sprenger & Lang about communications you may have been exposed to by Cargill in-house lawyers or lawyers retained by Cargill?*
**A I wasn't supposed to discuss any information I may have heard or discussed relative to attorney/client privilege or confidentiality matters at Cargill.**
*Q Who gave you that instruction?*
**A You.**
*Q When did that happen?*
**A Our first or second meeting.**

Page 194

*Q And have you abided by that instruction throughout our relationship, professionally? And personally, I'm sorry.*
**A Yes.**
*Q I don't mean to imply there's anything more than a professional relationship, but that's an instruction that's guided our relationship from the outset?*
**A Yes.**
MR. SCHAEFER: Mr. Reed, thank you for appearing in connection with your subpoena and I don't have any further questions at this time.

EXAMINATION

BY MS. ENG:

*Q Mr. Reed, how did you learn about Sprenger & Lang in approximately May of 2000?*
**A I took it from a reference in the Foster case.**
*Q So, you knew about the Foster litigation?*
**A Yeah, I was there.**
*Q You knew that Sprenger & Lang was the attorneys for it?*
**A Yes.**

Page 195

*Q For Foster. Is it fair to say that you did retain counsel, Sprenger & Lang, to negotiate the terms of your separation from employment with Cargill?*
**A Yes.**
*Q In fact, we already looked at what's been marked as Exhibit 558, do you have in your packet, and that's the settlement agreement and general release, is that right, that you signed in June 2000?*
**A Correct.**
*Q And Larry Schaefer negotiated with Cargill on your behalf with respect to this settlement agreement and release?*
**A Larry Schaefer reviewed and advised me.**
*Q He negotiated with Cargill?*
**A I don't know if he negotiated. I guess he negotiated. I don't know. I know that that document was reviewed by Larry and Cargill. The initial thing that I sent Cargill was not Larry, it was me, sending to Cargill my request for separation. Larry, I retained him after that, per Cargill's council telling me I needed to obtain counsel.**
(Plaintiff's Deposition Exhibit

Page 196

567 marked for identification.)
BY MS. ENG:
*Q Showing you what's been marked as Exhibit 567. I ask that you take a look at this document. Do you recognize what's been marked Exhibit 567?*
**A Yeah, I do. This document I saw on or about the time it was written.**
*Q June 2 of 2000?*
**A Yes.**
*Q To your knowledge, is everything in the document correct?*
**A Yes.**
*Q Is it fair to say in the first paragraph that you retained Sprenger & Lang to advise you regarding the settlement agreement and general release Cargill provided to you on May 23, 2000?*
**A Yes.**
*Q Did you review what's been marked Exhibit 558 with your Counsel before you signed it?*
**A Yes.**
*Q In particular, did you review the release language contained in the document at Paragraph 4c, beginning on Page 3 of the document, which is marked DR0166?*

# Smith

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, NII-AKWEI ACQUAYE, SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, DELLA DICKSON, VIRGINIA DOUGLAS, RONALD GARRUS, MARGO HARVEY, CHENETA HUGHEY, JACQUELINE JENKINS, KEITH LEWIS, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, JACQUELINE WILLIAMS, CHERYL WILLIS, SEAN WRIGHT, )
Plaintiffs, )
)
vs. )Civil File No.
)01-CV-2086
)(DWF/AJB)
CARGILL, INCORPORATED )
Defendants. )

1

INDEX

CANDY SMITH

Examination
By: Mr. Lauth

EXHIBITS:

| | |
|---|---|
| 1 | 4 |
| 2 | 4 |
| 3 | 4 |

3

The deposition of CANDY SMITH, taken in the above-entitled cause before Diane Hromek, Certified Shorthand Reporter in the State of Illinois and Notary Public within the county of DuPage, at Marriott Suites O'Hare, 6155 North River Road, Rosemont, IL 60018, on April 2, 2004, at 9:00 o'clock a.m.

PRESENT:

SPRENGER & LANG PLLC
BY: MS. TERESA PATTON
325 Ridgewood Avenue
Minneapolis, MN 55403
Telephone: 612-871-8910
Fax: 612-871-9270
Appeared on behalf of the plaintiffs.

DORSEY & WHITNEY LLP
BY: MR. DAVID LAUTH, #014552X
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498
Telephone: 612-340-2600
Fax: 612-340-2868
Appeared on behalf of the defendant.

2

(Documents marked as requested.)

CANDY M. SMITH,

after having first been duly sworn, deposeth and saith as follows:

DIRECT EXAMINATION
BY MR. LAUTH:

Q. Could you please state your full name, for the record.
A. Candy M. Smith.
MS. PATTON: Candy, I am having trouble hearing you.
THE WITNESS: Okay, I will speak up.
MR. LAUTH: And I will move that phone and little bit closer.
Oh, off the record.
(Discussion off the record.)
MR. LAUTH: Okay, back on.
BY MR. LAUTH:
Q. Miss Smith, my name is David Lauth, and I represent Cargill in a lawsuit that has been brought by a number of current and former African-American employees.

4

And how did you respond to that?
A. I said yes.
Q. Okay. What questions did she ask you then?
A. How long I had worked for Cargill.
Q. What else?
A. My duties.
Q. What else?
A. I believe promotions.
Q. What else?
A. Had I seen anyone upset within Cargill.
MS. PATTON: I didn't hear the last.
THE WITNESS: Had I saw anyone upset within Cargill, African-Americans.
MS. PATTON: Okay, thanks.
BY MR. LAUTH:
Q. Anything else you recall that she asked you?
A. How long I worked there.
Q. Anything else you recall?
A. And did I ever feel discriminated.
Q. How did you respond to that?
A. Yes.
Q. And did you expand on that and tell her how it was that you felt you had been discriminated against?
A. Yes.

13

Q. What did you tell her?
A. That I had applied for positions at Cargill and I never got the positions.
Q. Did you tell her anything else as far as was it that you thought you had been discriminated against?
A. I'm not sure.
Q. There is nothing else you recall right now that you told her?
A. I can't remember right now.
Q. Okay.
Did Laurie ask you if you were interested in joining a lawsuit against Cargill?
A. No.
Q. Did Laurie ask you if you were interested in hiring Sprenger and Lang as your lawyers?
A. No.
Q. Did she tell you how it was that your name had come to her attention?
MS. PATTON: What was the answer, Candace?
THE WITNESS: No.
MS. PATTON: Thanks.
BY MR. LAUTH:
Q. Did she tell you how it was that your name had come to her attention?

14

A. I believe it came by that they had -- she had talked to other African-Americans and my name may have been given that way.
Q. She didn't identify any particular person as someone who had told you about as someone to talk to?
A. I don't recall that.
Q. During that conversation, did Laurie tell you who the individuals were who had brought the lawsuit against Cargill?
A. No.
Q. In any phone communication with Sprenger and Lang, has anyone there ever told you who the individuals are that had brought the lawsuit?
A. No.
Q. Do you recall ever talking to any of your former Cargill co-workers and telling them that you had been contacted by Sprenger and Lang and that they had read you a list of the individuals who were involved in the case?
A. Can you repeat that?
Q. Sure.
Do you recall --
MS. PATTON: You know, David, I didn't hear that. I am sorry.

15

MR. LAUTH: She asked me to repeat the question.
MS. PATTON: I didn't hear the request for the repeating. We have got to do something about this -- but continue.
MR. LAUTH: Okay.
BY MR. LAUTH:
Q. Do you recall ever telling any of your former co-workers at Cargill about the fact that you had had a conversation with Sprenger and Lang and that someone had read you a list of the names of people involved in the lawsuit?
A. I spoke to one of my former employees, I should say one of my former managers.
Q. Who was that?
A. Harriet Harrington.
Q. When did you speak to Harriet?
A. Last year.
Q. Was it after the phone call that you have been telling us about?
A. Months after.
Q. And did you contact Harriet or did she contact you?
A. I believe I contacted her.
Q. What did you tell her about that phone call?

16

A. When I contacted her I wasn't like calling her to talk about Cargill.
Q. Okay.
A. Cause we were friends, but that as the conversation had gone on, I did mention to her, I never said anything about Sprenger and Lang, I just said that Cargill was involved in a very large discriminatory lawsuit.
Q. And did you tell her anything about the phone call with Sprenger and Lang?
A. No.
Q. That you have been telling us about?
A. Just that I was contacted by -- I was contacted, but I never said Sprenger and Lang. I was just contacted and that Cargill was involved in a very large discriminatory lawsuit.
Q. Did you tell Harriet?
MS. PATTON: David, was there an answer there?
MR. LAUTH: Yes.
MS. PATTON: I didn't hear it, sorry.
Would you read it back?
MR. LAUTH: We will read it back.
(Question read as requested.)

17

BY MR. LAUTH:
Q. Did you tell Harriet that you had been read a list of the individuals who had brought the lawsuit?
A. No.
Q. Did you tell Harriet that you, in fact, had written down on a sheet of paper, the names that had been told you over the phone?
A. No.
Q. Did you tell Harriet that you were upset because the people at Sprenger and Lang were bothering you and trying to get you to be a part of the lawsuit?
A. No.
Q. You are sure about that?
A. Yes.
Q. Did you tell Harriet that you felt like you had been treated like a queen during the time that you worked at Cargill?
A. No.
Q. All right.
What else do you recall being said either by you or by Laurie during this first phone call we have been talking about?
A. Can you repeat the question?
Q. Sure. I just want to make sure that we have

18

covered everything that you can remember that was said by you or Laurie during this first phone call so my question is what else Laurie said to you and what else you said to her during this first phone call.
A. Again, she mentioned that Cargill was in some kind -- was in a disriminatory lawsuit and if I would be willing to answer any questions since I had been an employee of Cargill.
Q. All right.
And I'm not trying to repeat things that we have already talked about, I just want to make sure that you have told me everything that you can remember during that first phone call. Is there anything else that you haven't told us already?
A. No.
Q. When was the next time that you had any communication with anybody from Sprenger and Lang?
A. I was contacted in the fall. She may have contacted me maybe three or four weeks later.
Q. And the "she" again is Laurie?
A. Laurie Bulheim.
Q. And was that another time when she called you on the phone?
A. Yes.

19

Q. All right. What was said during that conversation?
A. To go over information about me being an employee. Again, my duties, and just to make sure to recap everything that I mentioned on the first phone call.
Q. Did she explain why she wanted to do that?
A. Yes.
Q. What was the explanation?
A. To have it documented.
Q. To put into a written statement?
A. Yes.
Q. This second phone call that we are now talking about, I assume that, again, was just you and Laurie on the phone?
A. Yes.
Q. Do you remember how long that conversation took?
A. That may have taken maybe another 45 minutes to an hour.
Q. And part of that was her going over the information that you had mentioned to her in your first phone call?
A. Yes.

20