COPY

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Civil No. 01-2086 (DWF/AJB)

Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**

Cargill Incorporated,

Defendant.

---

Lawrence P. Shaefer, Esq., Susan M. Coler, Esq., and Teresa Kathleen Patton, Esq., Sprenger & Lang, 325 Ridgewood Ave., Minneapolis, MN 55403; Michael P. Lieder, Esq., Paul Carl Sprenger, Esq., and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th St. NW, Washington, DC 20009, counsel for Plaintiffs.

Holly S. A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan, Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney, 50 6th St. S., Ste. 1500, Minneapolis, MN 55402-1498, counsel for Defendant.

Peter N. Thompson, Esq., Hamline Law School, 1536 Hewitt Ave., St. Paul, MN 55104, Special Master.

---

**EXHIBIT 1**

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on April 23, 2004, pursuant to Defendant Cargill, Incorporated's ("Cargill") Motion for Summary Judgment on the Claims of Louis Darden and Cargill's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims. In the Class Action Complaint, Plaintiffs raise the following claims against Cargill: (1) race discrimination in violation of 42 U.S.C. § 1981; (2) disparate impact discrimination under Minn. Stat. § 363.03, subd. 11. For the following reasons, Cargill's Motion for Summary Judgment on the Claims of Louis Darden is granted; Cargill's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims is denied.

## Background

Cargill is a large, privately held corporation with diverse business operations located throughout the world. Cargill's subsidiaries and affiliates include entities involved in the marketing, processing, and distribution of agricultural, food, financial, and industrial products and services. Plaintiffs are a putative class of African-American past and present managerial and professional salaried employees of various Cargill subsidiaries. By their Complaint, Plaintiffs allege that Cargill discriminated against them by way of advancement, compensation, and termination practices. Specifically, Plaintiffs allege a claim of disparate treatment under 42 U.S.C. § 1981 and a claim of disparate impact under the Minnesota Human Rights Act, Minn. Stat. § 363.01, *et seq* ("MHRA").

The specific claims at issue here relate to the termination of Louis Darden and to the alleged constructive discharge of several other plaintiffs, including Nii-Akwei Acquaye, Toya Brown, Dawn

Collins, Virginia Douglas, Jacqueline Jenkins, Keith Lewis, Michael Mitchell, Valerie Mason-Robinson, Tonya Ross, Clintonia Simmons, Tausha Tate, Emily Tyler, Anthony McDowell and Vivian Little.

## I. Louis Darden

Louis Darden, a mechanical engineer, began working at Cargill in 1977. During his 23 years with Cargill, he worked for four divisions of Cargill: (1) Oilseeds in Memphis, Tennessee; Wichita, Kansas; and Norfolk, Virginia; (2) Fertilizer in Tampa and Hookers Prairie, Florida; (3) Salt in Cleveland, Ohio; and (4) Excel in Newnan, Georgia. Darden asserts that he witnessed and was subject to a pattern and practice of discrimination against African-American employees during his time at all of these facilities. Specifically, Darden contends that he was denied advancement opportunities, "effectively demoted," and paid less than his white counterparts.

### A. Darden's Termination

Relative to this motion, Darden was involved in an incident while employed at the Salt facility in Cleveland that ultimately resulted in his termination. Darden was employed as a Surface Superintendent at the Salt facility from 1997 until May 2000. During Darden's time at the Salt facility, Todd Smith, an engineer, reported that a local contractor, Gillespie Construction, had claimed that Cargill owed it $41,000 for a cost overrun on a project. According to Darden, Smith and Darden met with Plant Manager Ken Grimm about the situation, and Grimm told Smith and Darden to meet with Gillespie and find a way to solve the problem.

Darden met with a Gillespie representative. Ultimately, Darden devised a system whereby he would transfer some old equipment to Gillespie and also pay Gillespie the high bid on a project rather than accept a low bid. Darden asserts that Grimm was aware of this situation and that Darden engaged

stone than was originally anticipated that the project would require. Thereafter Todd Smith, engineer, and myself performed an extensive review to ensure the additional $41,000 in stone had actually been required and installed. Based on engineering calculations and bore drillings we concurred that Gillespie had actually placed an amount of stone into the project equal to $41,000 worth of 304 stone.

Almost immediately from the first notification of the scale pit $41,000 cost overrun I was under tremendous pressure and scrutiny from Ken Grimm, plant manager. As a result of this pressure I chose to pay off the Gillespie Company in a means that was not normal and clearly wrong and against Cargill policy. In this regard to slowly pay off Gillespie they were allowed to bid on certain plant projects. Sometimes and although they were the high bidder I assigned the project to them. By awarding them the project the difference in Gillespie's higher bid to the lowest bid on certain projects would be used as a credit payment to reduce the $41,000 they were owed. Other times on certain invoices such as Gillespie invoice no 205265, marked exhibit no 1, the amount of $5,000 for change order 8058.1 was falsely added on to increase the amount of the project for which Gillespie would be paid. However, the change order of 8058 does not correctly reflect on invoice 205265 the total cost or work actually performed. The change order as a false entry was agreed upon between Kirkpatrick and myself.

Between the two methods of manipulating Gillespie records which I just described and for which I approved William Kirkpatrick, Operations Manager for Gillespie to submit, this eventually paid off Gillespie in full. Again although projects were awarded to Gillespie that should not have been I did so because of the increased pressure to maintain costs on Cargill projects. This is not a justification for what I did but is nonetheless a truthful and accurate portrayal of what occurred in regards to the $41,000 project overrun.

Additionally and for the record I recall the concrete work on the brine project was another project whereby Gillespie was a higher bidder on this project. Again the difference between Gillespie's bid and the low bid was used as another credit to reduce the $41,000. Another credit that was agreed to with Kirkpatrick and Gillespie was a Hitachi excavator that they received from Cargill. This piece of equipment was essentially traded to Gillespie whereby the outstanding debt was reduced by several thousand dollars.

I would also add that I was informed by Ken Grimm that a [illegible] amendment would not be allowed. Specifically this referred to allowing for accepting the $41,000 in additional costs Gillespie alleged they were owed.

(Affidavit of Wilda Wahpepah ¶ 6, Ex. 5.) The Statement was signed by Louis Darden and witnessed by C.M. Suter of Cargill Corporate Security.

Darden asserts that he did not want to sign the statement initially because it omitted some of the facts of the situation, but Darden admits that he read the Statement before he signed it and that he initialed each page with his approval. Darden contends that he reluctantly signed the statement because he wanted to refute Gillespie's claims that Cargill owed it money and because he was pressured by Suter. Soon afterward, Darden was terminated from his position at Cargill.

**B. Darden's Compensation and Promotion Claims**

Darden asserts that while he was employed at Cargill, Cargill engaged in a pattern and practice of discrimination with regard to promotions and compensation. Although Darden names several Cargill employees who allegedly earned more or were otherwise treated differently than himself, Darden provides the Court with no specific information as to the details of the promotions and compensation that he challenges as discriminatory.

**II. Plaintiffs' Constructive Discharge Claims**

Fourteen of the twenty-six named Plaintiffs have sought relief for constructive discharge (collectively, the "Constructive Discharge Plaintiffs"). The Constructive Discharge Plaintiffs worked in nine different states and eleven separate locations at the time that they resigned. Cargill asserts that the circumstances regarding these Plaintiffs' resignations all reflect that the Plaintiffs voluntarily resigned from Cargill and have not established claims for constructive discharge.

**Discussion**

**I. Timing of Summary Judgment Motions**

Plaintiffs contend that the Court should not hear Cargill's current motions until after the Court has decided the class certification issue. Plaintiffs contend that the Court should defer decision on Cargill's motions because the matter has been filed as a class action alleging a pattern and practice of discrimination, and Plaintiffs are entitled to a presumption of discrimination for these claims until the Court can evaluate the class-wide issues.

In support of this contention, Plaintiffs rely on the Eighth Circuit's decision in *Craik v. Minnesota State University Bd.*, 731 F.2d 465 (8th Cir. 1984). *Craik* involved a claim for gender discrimination related to promotions and compensation among females who had been employed in a teaching capacity at Saint Cloud State University. *See id.* at 468. After a bench trial, the magistrate judge entered judgment in favor of the defendants, finding that they had not discriminated against the class or the named plaintiffs. The Eighth Circuit determined that, at trial, the magistrate judge had not followed the order of proof required for class action employment discrimination claims. *See id. at 471.*

As determined by one other court in this district, however, *Craik* is distinguishable procedurally because it involved a post-trial judgment. *See Zmora v. State of Minnesota*, 2002 WL 539075 at *4-5 (D. Minn., Kyle, J.). Thus, Craik does not prohibit this Court from determining, prior to class certification, whether a named plaintiff's individual claims must be dismissed because there are no disputed issues of fact that create a genuine issue for trial. *See id.* at *5 (citing *In re Milk Prods. Anitrust Litig.*, 195 F.3d 430, 435-36 (8th Cir. 1999)).

by Darden wherein he admitted to falsifying invoices and violating company policy. Thus, it is appropriate for the Court to address this motion at this time.

In order to establish a *prima facie* case of race discrimination, Darden must demonstrate that: (1) he was a member of a protected group; (2) he was meeting the legitimate expectations of his employer; (3) he suffered an adverse employment action; and (4) similarly situated employees who are not members of the protected group were treated differently. *See Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000). As to the fourth prong, Darden bears the burden to demonstrate by a preponderance of the evidence that there were individuals similarly situated in all respects to him who were treated differently. *See Gilmore v. AT & T*, 319 F.3d 1042, 1046 (8th Cir. 2003). Cargill argues that Darden has failed to demonstrate a *prima facie* case of racial discrimination under 42 U.S.C. § 1981 because he cannot show that similarly situated employees were treated differently. The Court agrees.

Darden has not set forth any instances where a similarly situated employee engaged in similar conduct as Darden–falsifying invoices and otherwise violating company policies–but was not terminated. In fact, Darden admits that he terminated a white individual under his supervision who violated Cargill policy. Darden suggests that his supervisor, Grimm, and Smith, the engineer, were not terminated for their involvement in the situation. However, Darden has not established that Grimm and Smith were similarly situated in all respects. *See Gilmore* at 1046. Darden admits that neither Grimm nor Smith worked at the Salt facility when the false invoices were submitted. Further, Darden has not established that Smith and Grimm engaged in conduct that was as serious as that of Darden. On these bases, Darden has not demonstrated a *prima facie* case of race discrimination.

Even if Darden had established a *prima facie* case of race discrimination, the Court finds that Cargill has offered a legitimate reason for its employment decision to terminate Darden. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Darden was terminated for violating company policy by manipulating bidding, falsifying invoices, and paying for work that was not performed by Gillespie. Darden does not dispute these violations and, in fact, signed a statement acknowledging these incidents on May 9, 2001. Darden argues that his Statement was "coerced" and attempts to place blame on his supervisor, who was allegedly aware of his actions. However, Darden only specifically alleges that Grimm told Darden to meet with Gillespie to resolve the overrun. Darden also does not dispute that the Statement accurately reflects his actions related to paying Gillespie for the cost overrun. Darden has provided the Court with nothing to contradict the facts alleged in his Statement. The record supports Cargill's assertion that Darden was terminated due to violating company policy. Further, Darden has failed to set forth any evidence to support his assertion that Cargill's reason for terminating Darden was pretextual. As such, summary judgment is appropriate on Darden's claim related to the termination.

The Court also finds that summary judgment is appropriate on Darden's claims insofar as they are related to compensation or promotions. Aside from a general list of employees who may or may not have been compensated or promoted differently, Darden has provided the Court with no specific information by which the Court could determine that these employees were similarly situated to Darden in all respects. *See Gilmore* at 1046 (citing *Clark v. Runyon*, 218 F.3d 915, 918 (8th Cir. 2000)).

The Court does not reach the issue of whether the dismissal of the claims against Darden will reduce the class by 10-15%, as asserted by Cargill.

## IV. Plaintiffs' Constructive Discharge Claims

Constructive discharge occurs when an employer deliberately makes an employee's working conditions so intolerable that the employee is forced to quit his job. *See Jackson v. Ark. Dept. of Educ.*, 272 F.3d 1020, 1026 (8th Cir. 2001) (citing *Phillips v. Taco Bell Corp.*, 156 F.3d 884, 890 (8th Cir. 1998)). In addition to showing that the working conditions were subjectively intolerable, the employee must demonstrate that a reasonable person, from an objective viewpoint, would find that the working conditions intolerable. *Id.*

Cargill has moved for summary judgment on the constructive discharge claims of Virginia Douglas, Toya Brown, Jacqueline Jenkins, Valerie Mason-Robinson, Tonya Ross, Emily Tyler, Nii-Akewi Acquaye, Keith Lewis, Michael Mitchell, Clintonia Simmons, Tausha Tate, Anthony McDowell, Vivian Little, and Dawn Collins. Cargill contends that these Plaintiffs have not established a cause of action for constructive discharge because they quit their positions at Cargill to take better jobs, they stayed at Cargill for months after the allegedly intolerable events occurred, or they left Cargill at a time of their own choosing.

Without addressing the question of the timeliness of this motion in light of the pre-certification discovery schedule, the Court finds that the Plaintiffs' constructive discharge claims survive summary judgment. Plaintiffs' constructive discharge claims relate to an alleged pattern and practice of retention problems with African-American employees at Cargill. With this framework in mind, the Court finds that genuine issues of material fact exist as to whether the working conditions and alleged racial discrimination at Cargill were deliberate and intolerable and effectively forced Plaintiffs to quit their

jobs. In light of these considerations, Cargill's motion for summary judgment on Plaintiffs' constructive discharge claims is denied.

For the reasons stated, **IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion for Summary Judgment on the Claims of Louis Darden (Doc. No. 187) is **GRANTED.**

2. Defendant's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims (Doc. No. 195) is **DENIED.**

Dated: May 28, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

SPRENGER & LANG
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

COPY

WRITER'S ADDRESS:

SUSAN M. COLER
MINNEAPOLIS OFFICE
E-Mail: scoler@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

June 15, 2004

The Honorable Donovan W. Frank
Judge of United States District Court
Room 738 Warren E. Burger Federal Bldg.
316 North Robert Street
St. Paul, MN 55101

**Re:** ***Arnold, et al. v. Cargill, Inc.;*** **Civil File No. 01-CV-2086**
**Request for Leave to File Motion to Reconsider Order Granting Defendant's Motion for Summary Judgment on Compensation and Promotion Claims of Louis Darden**

Dear Judge Frank:

We are writing to request permission to file a motion to reconsider the Court's May 28, 2004, order dismissing Louis Darden's compensation and promotion claims. We realize motions for reconsideration are disfavored, but important evidence exists from the class certification analysis that is critical to the Court's consideration of those claims. This includes the following evidence drawn from Cargill's Human Resources database:

- A statistically significant disparity of **–9.67** standard deviations in bonuses, awards, and incentives paid to African American employees for the time period 1995 – 2003;
- A statistically significant disparity of **–5.84** standard deviations in pay increases ("pay progression") for African American employees for the same time period; and
- A statistically significant disparity of **–4.08** standard deviations in promotions for African American employees for the same time period.

These statistics and other evidence are part of plaintiffs' expert reports dated April 22, 2004. Plaintiffs did not seek permission to amend their brief (filed on April 13, 2004) to include this evidence, relying on case law and this court's order in a prior case indicating that it would not consider individual motions until after statistical evidence was presented at the class certification

**EXHIBIT 2**

stage (*Beckmann v. CBS, Inc.*, 192 F.R.D. 608, 612 (D. Minn. 2000))(courts have generally held that class certification issues should be addressed before consideration of a dispositive motion); *See also*, *Craik v. Minnesota State Univ. Bd.*, 731 F.2d 465 (8th Cir. 1984).

As the Court is aware, plaintiffs' pattern and practice evidence regarding Cargill's compensation and promotion decisions, if accepted by the trier of fact, would prevent application of *McDonnell Douglas* to Darden's compensation and promotion claims. Darden would then benefit from a presumption of discrimination, shifting the burden of proof to Cargill to prove that it did not discriminate against him. Moreover, plaintiffs' compensation claims focus, not on base pay, as argued by Cargill in its motion, but rather on pay progression – a comparison of the size of pay increases from year to year. This is a critical distinction developed as part of the class analysis and essential to Mr. Darden's claims.

This evidence is critical to a summary judgment analysis of Mr. Darden's claims in light of the current posture of the case. Plaintiffs, therefore, respectfully move the Court for permission to file a motion for reconsideration.

Very truly yours,

Susan M. Coler

Susan M. Coler

:mbk
cc: Paul B. Klaas, Esq.

FILE COPY

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Civil No. 01-2086 (DWF/AJB)

Plaintiffs,

v.

**ORDER**

Cargill Incorporated,

Defendant.

---

Lawrence P. Shaefer, Esq., Susan M. Coler, Esq., and Teresa Kathleen Patton, Esq., Sprenger & Lang, 325 Ridgewood Ave., Minneapolis, MN 55403; Michael P. Lieder, Esq., Paul Carl Sprenger, Esq., and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th St. NW, Washington, DC 20009, counsel for Plaintiffs.

Holly S. A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan, Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney, 50 6th St. S., Ste. 1500, Minneapolis, MN 55402-1498, counsel for Defendant.

Peter N. Thompson, Esq., Hamline Law School, 1536 Hewitt Ave., St. Paul, MN 55104, Special Master.

---

**EXHIBIT 3**

The above-entitled matter is before the undersigned United States District Court Judge pursuant to Plaintiffs' request to file a motion for reconsideration of the Court's Order of May 28, 2004. Pursuant to that order, this Court granted Defendant Cargill Incorporated's ("Cargill") Motion for Summary Judgment on the Claims of Louis Darden and denied Cargill's Motion for Summary Judgment on Plaintiffs' Constructive Discharge Claims. The Court issued a Memorandum Opinion explaining the reasoning behind its rulings.

In a letter dated June 15, 2004, Plaintiffs requested permission to file a motion for reconsideration of this Court's Order insofar as it dismissed Louis Darden's compensation and promotion claims. Plaintiffs made no request to reconsider the Court's dismissal of Darden's termination claim. Cargill responded to Plaintiffs' letter on June 28, 2004, arguing that Plaintiffs' request should be denied.

"Motions to reconsider are prohibited except by express permission of the Court, which will be granted only upon a showing of compelling circumstances." D. Minn. L.R. 7.1(g). A motion to reconsider should not be employed to relitigate old issues, but to "afford an opportunity for relief in extraordinary circumstances." *Dale & Selby Superette & Deli v. United States Dept. of Agric.*, 838 F. Supp. 1346, 1348 (D. Minn. 1993).

Plaintiffs contend that reconsideration of Darden's compensation and promotion claims is necessary because "important evidence exists from the class certification analysis that is critical to the Court's consideration." (*See* June 15, 2004, letter to the Court from Susan M. Coler, attorney for Plaintiffs.) Specifically, Plaintiffs claim that statistical and other evidence contained in Plaintiffs' expert reports supports its pattern and practice claims regarding Cargill's compensation and promotion

decisions. This evidence was not presented to the Court until now, although the existence of such evidence was discussed generally during the summary judgment hearing. Plaintiffs claim that this evidence, if accepted by the Court, would prevent application of *McDonnell Douglas* to Darden's compensation and promotion claims. In response, Defendant points out that it brought and argued its summary judgment motion assuming that Plaintiffs would offer such statistical evidence.

While Plaintiffs' pattern and practice statistical evidence would have no bearing on this Court's decision with respect to its dismissal, as a matter of law, of Darden's termination claim, the Court is now presented with the issue of whether Plaintiffs' statistical evidence should prevent the summary disposition of Darden's compensation and promotion claims. The Court notes that while Darden's compensation and promotion claims were discussed generally, neither party appears to have attempted, before now, to meaningfully distinguish these claims from Darden's termination claims in the context of Defendant's summary judgment motion. The Court has, therefore, not fully considered whether a distinction exists between Darden's compensation and promotion claims on one hand, and Darden's termination claim on the other hand, when considering the parties' respective burdens on summary judgment and in light of the presentation of statistical pattern and practice evidence. Accordingly, the Court believes the limited issues raised in Plaintiffs' June 15, 2004, letter require further inquiry and grants Plaintiffs' request to submit a motion to reconsider. Further, the Court reiterates that while requests to file a motion for reconsideration shall be granted only upon a showing of compelling circumstances, the present request is not typical in that the issue, whether intended or not, was not fully argued by the parties and therefore not fully considered by the Court.

Based upon the foregoing, submissions of the parties, the record before the Court, and the procedural history of this litigation, the Court hereby enters the following:

**ORDER**

1. Plaintiff's Request for Leave to File a Motion for Reconsideration is **GRANTED** as follows:

a. Plaintiff shall submit a memorandum, not more than 15 pages in length, within 10 days.

b. Defendant shall file a responsive memorandum, not more than 15 pages in length, within 17 days.

The Court reserves the right to set the matter on for oral argument upon receipt and review of the memorandums.

Dated: July 29, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

RECEIVED
04 APR 13 PM 5:03
CLERK U.S. DIST. COURT
MINNEAPOLIS, MN

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) |
| | ) | |
| On behalf of themselves and all others similarly situated, | ) | CLASS ACTION |
| | ) | |
| *Plaintiffs*, | ) | **PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY ~~JUDGMENT~~ JUDGMENT ON THE CLAIMS OF LOUIS DARDEN AND PLAINTIFFS' CLAIMS FOR CONSTRUCTIVE DISCHARGE** |
| v. | ) | |
| CARGILL, INCORPORATED, | ) | |
| *Defendant.* | ) | |

Plaintiffs submit this combined response opposing Cargill's motions for Summary Judgment on the Claims of Louis Darden and for Summary Judgment on Plaintiffs' Claims for Constructive Discharge. Both motions should be denied because they are procedurally improper as well as insufficient under the law of pattern and practice class actions and summary judgment.

## INTRODUCTION

Cargill's summary judgment motions do nothing more than burden this Court with premature requests for individual merits determinations before the Court has determined whether Cargill has engaged in a pattern or practice of discrimination and before individualized discovery has taken place. The motions reveal an ignorance of the proper procedure for resolving individual claims in class litigation. Further, they are inconsistent with this Court's Scheduling Order that clearly delineated the pre-certification and post-certification discovery periods. Finally, even if this Court were to



**EXHIBIT 4**

In *Hyman*, a case litigated by plaintiffs' counsel, the defendant brought summary judgment motions in a time frame similar to those brought here. 980 F. Supp. at 48. The district court found the motions premature and held it improper to address summary judgment motions seeking dismissal of individual claims until after the pattern and practice claims were decided in the liability phase of trial. *Id.* at 51.

Cargill's failure to even mention the *Teamsters/Craik* model for deciding class pattern and practice cases does a disservice to the Court and is at the same time fatal to its motions for summary judgment. Cargill cannot distinguish or persuade this Court not to follow *Teamsters/Craik.* Individual summary judgment motions must await critical determinations about pattern and practice evidence at the class liability stage.

**B. The Court Should Defer Cargill's Motions Under Rule 56(f) Until Plaintiffs Have Had the Opportunity to Take the Discovery Required to Defend Their Individual Claims.**

Even ignoring the *Teamsters* procedural construct, the bifurcation of this case between pre- and post- certification discovery requires that plaintiffs complete individual discovery in the post-certification phase *before* summary judgment motions are addressed, providing an additional basis requiring deferral of Cargill's motions. Rule 56(f) provides that the "court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had" where the party opposing the motion cannot present facts "essential to justify the party's opposition." Fed. R. Civ. P. 56(f). Summary judgment is proper only after the nonmovant has completed individual discovery. *In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1490 (8th Cir. 1997) (citing *Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322 (1986)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

In this case, plaintiffs conducted pre-certification class discovery as directed by the Court's Scheduling Order. Schaefer Decl., ¶¶ 4-5. This discovery was necessarily directed to class-wide matters rather than individual claims. *Id.* Plaintiffs have not yet deposed the managers of individual plaintiffs nor conducted discovery into the detailed individualized circumstances of their claims. Schaefer Decl., ¶¶ 8, 10. Taking just two depositions per plaintiff on individual issues would have required more than fifty additional depositions. That was understandably not done and, as a result, the record is still undeveloped with regard to individual plaintiffs. Substantial discovery remains to be done. Schaefer Decl., ¶¶ 11-12.

Cargill's motion to dismiss the claims of Louis Darden illustrates in stark relief the imbalance favoring defendant on individual claims in the current record. As part of their motion, Cargill submitted affidavits from Salt President Dale Fehrenbach; General Manager Bradley Down; Human Resources Manager Noreen Fitzgerald; and Investigations Manager Charles Michael Suter. These Cargill witnesses are available to plaintiffs only through deposition, and plaintiffs have not deposed any of them in relation to Darden's specific claims. Similarly, plaintiffs have not yet developed through discovery other key documents and information related to each of the plaintiffs' individual claims. Schaefer Decl., ¶¶ 7-9.

Accordingly, plaintiffs move the Court pursuant to Rule 56(f) to defer ruling on Cargill's summary judgment motions until after the plaintiffs have had an opportunity to

complete the discovery required to defend against those motions. Schaefer Decl., ¶¶ 12-14, 17.

## II. EVEN IF CONSIDERED ON THEIR MERITS AT THIS STAGE, CARGILL'S MOTIONS FAIL BECAUSE THEY DO NOT MEET THE REQUIREMENTS OF RULE 56

The above sections demonstrate that Cargill's summary judgment motions are procedurally defective and should not be considered on this record.[3] In the interest of addressing all potential issues, the following sections demonstrate that substantively, even on this undeveloped record, Cargill's motions do not meet the stringent Rule 56 standards, especially as these standards relate to discrimination claims. Plaintiffs stress, however, that the merits of these motions should not be considered at this stage.

### A. Summary Judgment Standard.

Summary judgment is only proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Landon v. Northwest Airlines*, 72 F.3d 620, 624 (8th Cir. 1995). The court must believe the evidence of the nonmoving party and draw all justifiable inferences in the plaintiffs' favor. *Anderson*, 477 U.S. at 255; *Celotex*, 477 U.S. 317; *Enterprise Bank v. Magna Bank*, 92 F.3d 743, 747 (8th Cir. 1996). Summary judgment should seldom be granted in employment discrimination cases because these cases often depend on inferences rather

[3] Early in this litigation the Court granted Cargill's motion to dismiss the claims of Ronald Garrus based on a release he had signed in favor of Cargill. That issue is distinguishable from the present motions, however, in that it involved a purely legal issue concerning the enforceability of a release and did not require inquiry into the myriad facts and circumstances of Garrus' employment, nor into a claim that is asserted on a class-wide basis. *See* Memorandum and Order dated July 15, 2002.

manager. *Id.*, 111. At that time, Tyler was also told she could not post for the newly created position of senior accounting manager. *Id.*

Believing she had no realistic opportunities to advance at Cargill, Tyler resigned in July 2000 after eight years of service. *Id.*, 139-40, 143.

**C. Louis Darden's Claims are not Appropriate for Summary Judgment.**

Louis Darden's claims are unsuitable for summary judgment for the same reasons that plaintiffs' constructive discharge claims are unsuitable for summary judgment. Darden asserts, on behalf of himself and the class, that Cargill engaged in a pattern and practice of discrimination with regard to promotions, compensation, and terminations. Like the other plaintiffs currently before the Court, Darden is entitled to benefit from a presumption in favor of his claims if a finding of pattern and practice of discrimination is made. Like the other plaintiffs before the Court, Darden is also entitled to develop all the evidence to defend his claims.

Finally, even without additional discovery, Darden's claim should survive summary judgment on the merits. Darden's evidence does much more than merely create a "triable issue of fact" to go to the jury. Rather, it portrays powerful discrimination at Cargill. It reveals a company that readily used Darden for twenty-three years as its "black face in management" when it needed one. It also reveals a company that, just as readily, discarded Darden after twenty-three years of loyal service when it needed someone to "take the fall" for one of Darden's white superiors in management.

**1. Factual Background.**

Cargill recruited Louis Darden in 1977 away from a position with Monsanto. Darden, 14. He has a bachelor's degree in mechanical engineering. *Id.*, 12, 14. During

Darden's twenty-three years with Cargill, he worked for four divisions in seven locations: (1) Oilseeds in Memphis, Tennessee; Wichita, Kansas; and Norfolk, Virginia; (2) Fertilizer in Tampa, and Hookers Prairie, Florida; (3) Salt in Cleveland, Ohio; and (4) Excel in Newnan, Georgia. *Id.*, 247-48. Darden held positions ranging from production supervisor to superintendent to maintenance manager. *Id.*, 103, 136, 144. Often Darden was the only black supervisor in the facility. *Id.*, 118, 232, 308-09. Darden had a good rapport with the people who worked for him, and they knew him as an honest person. *Id.*, 73. He also had good relationships with corporate executives and trusted them. Id., 78. These included Guillaume Bastiaens, Fritz Corrigan, Ron Christenson, and Henk Mathot. *Id.*, 79.

When Cargill acquired a new facility with a heavy black population of hourly employees, it relocated Darden there to be the "black face in a position of somewhat authority." *Id.*, 76. Darden felt that he was expected to quell some of the tensions of the work force, and was successful in bringing about change. *Id.*, 76-77. Cargill also used Darden to recruit young, black engineers for Cargill, and he appeared in Cargill's videotapes and other promotional events. *Id.*, 77, 287-88.

**i. Cargill Culture and Discrimination against Darden.**

Throughout his tenure at Cargill, Darden observed a company culture that treated blacks differently. *Id.*, 74. Darden's knowledge of Cargill culture was based on his own experience working in four divisions in seven different locations. He also talked to other employees in different divisions. "It was a prevalent culture throughout." *Id.*, 249. Darden knew that blacks received more scrutiny and harsher punishments than whites, so he always tried to be above board. *Id.*, 67, 74, 118-19, 123-24, 181, 184, 197, 231-32.

Another aspect of Cargill culture was the secretive nature of promotions. Darden testified that basically you were told when there was an opportunity for you. No one really knew who made the decisions, whether it was a committee of individuals or one or two individuals deciding what person to strategically place in a slot. *Id.*, 135, 239-40. On several occasions, Darden discovered that a position for which he was qualified had already been filled. *Id.*, 241, 245. Darden saw his white counterparts advance past him into higher management, including Matt Meyers, Greg Wold, Steve Pinney, Jim Sullivan, Jeff Narrow, and Paul Bell. Often, Darden ended up working for people he had trained or supervised. *Id.*, 79, 133. Darden was also denied specific promotions, effectively demoted although he was told otherwise, and paid less than his white counterparts. *Id.*, 131-32, 323, 308-09.

**ii. Cleveland Salt.**

Darden was Surface Superintendent at the Salt Facility in Cleveland, Ohio from 1997 until May of 2000. *Id.*, 59. While there, engineer Todd Smith reported that a local contractor (Gillespie Construction) was claiming Cargill owed it $41,000 for an overage on a project. Darden and Smith confirmed Gillespie's facts through testing and then met with Plant Manager Ken Grimm about the situation. *Id.*, 29-30. Grimm was angry about the cost overrun and refused to submit a contract "amendment" to corporate management to cover the $41,000. Rather, Grimm told Darden and Smith to find a way to make sure the contractor was paid. *Id.*, 33-35.

Darden met with a Gillespie representative and they worked out a system whereby the contractor would eventually recover its $41,000. *Id.*, 36. This involved transferring a piece of old equipment to Gillespie, and for instance, paying Gillespie the high bid on a

become Cargill's burden to prove that it did not discriminate against him, for instance, in compensation and promotion decisions, as well as the termination. Also, under Rule 56(f), Darden is entitled to have the opportunity for full discovery to show that Cargill's actions toward him were motivated by bias and that white employees were treated more favorably. Compelling reasons exist, therefore, for this Court to deny Cargill's motion for summary judgment on Darden's claims.

## CONCLUSION

For all of the foregoing reasons, plaintiffs respectfully request that the Court deny Defendant's Motions for Summary Judgment on the claims of Louis Darden and Plaintiffs' constructive discharge claims.

Dated: April 13, 2004 SPRENGER & LANG, PLLC

By: ______________________

Lawrence Schaefer (MN No. 195583)
Susan M. Coler (MN No. 217621)
Teresa K. Patton (MN No. 205679)
Sprenger & Lang, PLLC
325 Ridgewood Avenue
Minneapolis, MN 55403
(612) 871-8910
(612) 871-9270 (*facsimile*)

Michael D. Lieder (DC Bar No. 444273)
Steven M. Sprenger (MO Bar No. 43994)
1614 20th Street, N.W.
Washington, DC 20009-1001
(202) 265-8010

ATTORNEYS FOR PLAINTIFFS

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| RODERICK ARNOLD, et al.,<br><br>On behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARGILL, INCORPORATED,<br><br>*Defendant*. | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB)<br><br>CLASS ACTION<br><br>**DECLARATION OF LAWRENCE P. SCHAEFER IN OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON THE CLAIMS OF LOUIS DARDEN AND PLAINTIFFS' CLAIMS FOR CONSTRUCTIVE DISCHARGE** |

Lawrence P. Schaefer declares that the following is true and correct:

1. I am a partner at Sprenger & Lang, PLLC and am lead counsel representing the plaintiffs in the above-captioned matter

2. Attached as Exhibits A and B are true copies of Scheduling Orders entered in the above-referenced matter.

3. Attached as Exhibit C is a true copy of the First Amended Complaint.

4. In the pre-certification discovery period, the Court limited each side to no more than 40 depositions. These limits were appropriate for this phase of the litigation because the focus of discovery was on alleged systematic discrimination relevant to class certification, and not on the claims or individual facts involved with each of the twenty-six named plaintiffs.

5. Pursuant to the Scheduling Orders, in the pre-certification phase of discovery plaintiffs have thus focused on pursuing discovery related to the alleged systemic

**EXHIBIT 6**

discrimination giving rise to the class allegations. This has included, but is not limited to, discovery of all information relating to the following systems at Cargill:

a) The "Performance Management Process," and its predecessor, the "Management by Objectives" system, which are the company-wide systems for evaluating salaried employee work performance at Cargill;

b) Cargill's systems for identifying employees managers considered to have "high potential." This includes the "Key Employee Identification System" (KEIS), and its successor, the "Leadership Talent Management Process" (LTMP);

c) Cargill's "Pay for Performance" compensation system, and related systems that govern discretionary components of compensation (such as bonus, incentive pay and stock options);

d) Cargill's centrally managed development programs for salaried employees, including the "Cargill Leadership Development Program," and successor programs such as the "Advanced Leadership Forum," as well as mentoring programs;

e) Cargill's systems for promoting salaried employees, including the presence or absence of job posting;

f) The policies, procedures and practices governing all aspects of salaried employment at Cargill;

g) Cargill's diversity programs, including the company-wide "Valuing Differences Initiative," which has been in place since 1998;

h) Cargill's affirmative action programs; and

i) The process for addressing race discrimination complaints.

6. All written discovery has focused on how these systems were designed and how they applied company-wide. Cargill has produced more than 86,000 documents, amounting to hundreds of thousands of pages of material in response to document requests. The discovery in this case is extensive, as it extends back 12 years to 1992, and the liability period begins in August 1995.

7. Plaintiffs have taken 37 "offensive" depositions to date, including eight 30(b)(6) depositions (relating to compensation, performance appraisal, KEIS/LTMP, CLDP, promotions, the Selection Grid system, recruitment/retention, and affirmative action), as well as depositions of many of Cargill's senior executives, and most of the senior management in the Human Resource functions throughout the company. Plaintiffs will be completing these depositions on April 14, 2004, when the parties have scheduled the final "embedded" Human Resource manager deposition. Plaintiffs also have noticed and may elect to take the deposition of Cargill in-house counsel Fred Budde, depending on the resolution of various privilege issues and an ongoing dialogue between the parties.

8. Plaintiffs have conducted almost no discovery relating to the individual experiences of the named plaintiffs, apart from having Cargill produce personnel records associated with their employment, and, only following successful motions to compel, having Cargill produce personnel records associated with certain limited numbers of comparable employees. Cargill is currently refusing to produce any documents associated with 79 comparable employees for whom plaintiffs have requested records, objecting that the request is too burdensome. Negotiations regarding this issue are ongoing.

9. This individualized discovery was conducted for the limited purpose of demonstrating that the named plaintiffs have been affected by the systems at issue and that similarly situated non-African-American employees have fared more favorably.

10. Plaintiffs have conducted no written discovery into the circumstances of the named plaintiffs' employment, and have not propounded interrogatories or discovery requests relating to the managers or supervisors who made decisions affecting their

employment. This discovery, if it needs to occur, will only take place following denial of class certification or following a ruling on class-wide liability, after which the legal presumption discussed in the memorandum may or may not apply.

11. It would be inappropriate and a waste of resources to conduct detailed individualized discovery before class certification and a class-wide liability trial. The focus on class certification and class liability is on the alleged pattern of discriminatory treatment and the design and implementation of systems that may give rise to this pattern. The individual merits of named plaintiffs' claims are not at issue at this stage. To notice and take an additional fifty or more depositions, and to devote reams of paper to propound detailed interrogatories and discovery requests relating to the intricate details of the twenty six plaintiffs' employment history, would be contrary to what is universally recognized as the appropriate staging of discovery in class litigation, as recognized by the Scheduling Orders in this case.

12. The individual named plaintiffs, therefore, have not conducted the type of individual discovery that will occur, if at all, in the post-certification discovery phase. At that time, this litigation will follow one of two procedural paths. If the Court denies class certification, the claims of the named plaintiffs (and any other class members who elect to formally join this action once the tolling of claims has ceased) will proceed to phase two individualized discovery, and a Rule 16 conference will then be held to determine, among other things, a schedule for this discovery and a dispositive motion deadline, as contemplated by the Scheduling Orders. If the Court grants class certification and schedules a liability trial, plaintiffs may conduct limited discovery focused on individual circumstances of named plaintiffs in advance of a class-wide liability trial. A liability

trial would soon follow, and, should the class prevail, additional individualized discovery will likely be limited as the legal presumption of discrimination would then attach. If the class does not prevail on class-wide liability, the same discovery and scheduling as would follow an unsuccessful class certification decision would occur. Only then, however, would detailed individual discovery appropriately take place.

13. While it is unnecessary at this stage to detail all of the potential individualized discovery that would occur at that stage, plaintiffs would, at a minimum propound discovery requests seeking identification of all decision makers involved in all claimed adverse employment actions and all documents associated with each of these actions, undertake a more in-depth inquiry into the treatment of alleged comparable employees, and would likely depose many of these decision makers and some of the comparable employees. None of this has occurred for any of the named plaintiffs.

14. As an example, and to provide additional detail in support of plaintiffs' motion for a Rule 56(f) deferral of any decision related to Louis Darden's claims, plaintiffs assert that they will pursue written discovery and depositions including the following:

1) The deposition of Corporate Investigator Charles Michael Suter including questions about:

   a. Why Suter did not interview and obtain a statement from Todd Smith, the engineer who supervised the work with Gillespie Construction and was the key witness to the fact that Plant Manager Ken Grimm instructed Darden and Smith not to file a cost amendment; that Grimm instructed Darden and Smith to find a way to pay Gillespie; and that Grimm was fully aware that payments were being made to Gillespie.

   b. Why Suter's file contains no notes of his alleged interview with former Salt Plant Manager Ken Grimm and no statement from Grimm, the person who instructed Darden and Smith to pay

Gillespie, had full knowledge that Gillespie was being paid, and as Plant Manager, would have been responsible for his decision to "violate" Company policy.

2) Depositions of Ken Grimm; Todd Smith; the Cargill Salt Controller who handled the transfer of the piece of heavy equipment to Gillespie Construction at no charge; and many other witnesses;

3) Depositions of the Cargill executives who made the decision to terminate Darden, including Cargill Deicing Technology (Salt) President Dale Fehrenbach; as well as depositions relating to decisions about discipline of others involved in the Gillespie matter;

4) Depositions of the Cargill manager who withdrew Cargill's appeal of Darden's successful claim for unemployment, after the company failed to prove that Darden had been discharged for "failing to obey rules, orders, instructions, or established procedures of the employer."

15. At class certification, plaintiffs will present detailed evidence relevant to their burden to establish the elements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure. As it relates to the pattern and practice class claim of constructive discharge, plaintiffs will demonstrate that, throughout the liability period, Cargill management has known that Cargill salaried African-American employees as a group were leaving the company in vastly greater numbers than non-African-American employees, that there was a pervasive perception amongst the class that equal employment opportunity was not available to African-American salaried employees at the company, and the specific impact of many of the systems identified above caused this perception. Plaintiffs will also present a pervasive and comprehensive statistical analysis of the experiences of African-American employees compared to non-African-American employees in relation to performance appraisal ratings, advancement, compensation, and termination. This analysis will demonstrate that throughout the liability period African-American employees fared worse than non-African-American employees to a statistically

significant degree that strongly suggests race discrimination is and has been the cause. Plaintiffs will bring the cause of the statistical disparities "convincingly to life" by presenting anecdotal and documentary evidence that the experience of the plaintiffs and class members reflects systemic race bias.

16. Attached are true copies of the following exhibits:

| EXHIBIT NO. | DOCUMENT DESCRIPTION |
|---|---|
| D | Fax from Louis Darden to Gary Bellis, dated 08/15/00 |
| E | Email from Greg Wold to Michael Suter, Tom Bell, Dale Fehrenbach, Timothy Harter and Ken Howe, dated 05/15/01 |
| F | Georgia Department of Labor Claims Examiner's Determination for Louis Darden, dated 05/20/01 |
| G | Georgia Department of Labor Decision of Administrative Hearing Officer, dated 08/16/01 |
| Acquaye | Excerpts of the deposition testimony of Nii-Akwei Acquaye |
| Brown | Excerpts of the deposition testimony of Toya Brown |
| Collins | Excerpts of the deposition testimony of Dawn "Kim" Collins |
| 22 | Memo from Kim Collins to Sue Sjeklocha re: Resignation, dated 09/01/99 |
| 23 | Memo from J. Daniel and S. Sjeklocha to Kim Collins re: Your Letter of Resignation, dated 09/14/99 |
| Darden | Complete deposition testimony of Louis Darden |
| Douglas | Excerpts of the deposition testimony of Virginia Douglas |
| 3 | Email chain re Virginia Douglas, dated 01/27-28/98 |
| Henderson | Excerpts of the deposition testimony of Frenchie Henderson |
| Jenkins | Excerpts of the deposition testimony of Jackie Jenkins |
| 20 | Letter from Jacqueline P. Jenkins to Bruce Weinard, dated 08/15/97. |
| Lewis | Excerpts of the deposition testimony of Keith Lewis |
| Little | Excerpts of the deposition testimony of Vivian Lewis |
| Mason-Robinson | Excerpts of the deposition testimony of Valerie Mason-Robinson |
| McDowell | Excerpts of the deposition testimony of Anthony "Chris" McDowell |
| Mitchell | Excerpts of the deposition testimony of Michael Mitchell |
| Tate | Excerpts of the deposition testimony of Tausha Tate |
| 19 | Letter from Tausha L. Tate to Matt Turner, dated 04/14/00 |
| Tyler | Excerpts of the deposition testimony of Emily Tyler |

17. For all of the above reasons, plaintiffs submit this Declaration pursuant to Rule 56(f) of the Federal Rules of Civil Procedure as an additional basis to deny defendants' motion for summary judgment until plaintiffs have a full and fair opportunity for discovery in opposition to defendants' motions.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of April, 2004, at Minneapolis, MN.

Lawrence P. Schaefer