**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Roderick Arnold, et al.,

Plaintiffs,

v.

Cargill, Incorporated,

Defendant.

Civil No. 01-2086 DWF/AJB

**ORDER ON MOTION TO STRIKE DECLARATIONS, OR IN THE ALTERNATIVE, TO COMPEL DECLARANT DEPOSITIONS**

This matter came is before the Court, Magistrate Judge Arthur J. Boylan, on defendant's motion to strike third-party declarations filed by plaintiffs, or alternatively, to permit defendant to take depositions of the declarants [Docket No. 234]. Plaintiffs oppose the motion. Hearing was held by telephone on June 30, 2004, the Court sitting at the U.S. Courthouse, 316 No. Robert St., St. Paul MN 55101. Melissa Raphan, Esq., and Mark Ginder, Esq., appeared and spoke on behalf of the defendant. Lawrence P. Schaefer, Esq., and Susan Coler, Esq., appeared and spoke on behalf of the plaintiffs. Matters relating to confidentiality of expert reports were also presented to the Court for consideration.

Based upon the file, memorandums, affidavits, exhibits and arguments of counsel, the Court makes the following:

**ORDER**

1. Defendant's Motion to Strike Untimely Declarations, or in the alternative, to Compel Declarant Depositions is **granted in part and denied in part** as further provided herein [Docket No. 234].

**EXHIBIT 1**

2. Defendant's motion to strike third-party declarations is **granted**. However, to the extent that counsel for the putative class are willing and able to produce any already disclosed third-party declarant for deposition to take place in the Twin Cities, on or before August 10, 2004, plaintiffs may submit and reference that individual's declaration for consideration on class certification. No third-party declaration produced after expiration of the time for class discovery may be used by plaintiffs in support of their motion for class certification or in support of plaintiffs' position on any dispositive motion if defendant has been denied the reasonable opportunity to depose the declarant as provided in this Order.

3. Defendant's alternative motion to compel third-party declarant depositions is **denied**, except on conditions otherwise provided in this Order. Defendant shall be permitted to take the deposition of any individual whose declaration was produced subsequent to the close of class certification fact discovery in this case only in the event that the particular individual's declaration is offered in support of class certification. All depositions permitted and conducted pursuant to this Order shall be completed by August 10, 2004.

4. Plaintiffs' request that "Confidential" and "Attorneys' Eyes Only" designations be removed from the reports of plaintiff retained experts William T. Bielby and David W. Peterson is **granted**. Plaintiffs acknowledge that the reports contain analysis of underlying data which has been designated "Confidential" or "Attorneys' Eyes Only," but insist that the reports do not link the data to specific employees and are therefore exempt from the sealed filing requirement under Paragraph No. 10 of the stipulated Protective Order. Defendant does not oppose removal of the "Attorneys' Eyes Only" designation from the reports, thereby allowing access by plaintiffs themselves, but contend that

the "Confidential" designation is justified and that reports should remain sealed because the reports contain information that is otherwise unavailable and could be used to defendant's disadvantage by competitors. Upon review of the reports at issue, the Protective Order, and the letter memorandums submitted by the parties, the Court concludes that the reports do not link confidential information to particular employees and are not protected from public disclosure under the Protective Order. It is therefore not required that the reports be filed under seal.

Dated: July 13, 2004

s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

**MEMORANDUM**

Discovery in this matter was bifurcated to permit an initial period of discovery focused upon class certification issues. The deadline for pre-class certification fact discovery pursuant to Pretrial Scheduling Order dated March 27, 2002, was March 17, 2004.[1] The same scheduling order allowed each side to take 40 depositions. Early in the discovery period defendant served an interrogatory seeking identification of persons having knowledge of facts or allegations regarding individual claims in this case.[2] In the course of certification discovery defendant conducted thirty

---

[1] Declaration of Mara R. Thompson, Exh. 1.

[2] Affidavit of Melissa Raphan, Exh. 7.

depositions. Subsequently, on February 19, 2004, plaintiffs produced twelve third-party declarations by individuals who had not previously been identified through interrogatory responses, but whose declarations are now characterized as supplemental discovery responses pursuant to Fed. R. Civ. P. 26(e). Defendant promptly noticed and conducted ten additional declarant depositions prior to expiration of the discovery period. Plaintiffs thereafter produced at least eighteen additional third-party declarations after the March 17, 2004, discovery deadline.[3] Defendant now objects to the third-party declaration productions as untimely, particularly with respect to certain declarations which were signed before the close of discovery, and moves for an order either striking the late declarations or authorizing depositions of the third-party declarants. Plaintiffs insist that the declarations were timely produced and declarant identities were properly disclosed in the usual course of discovery and in a manner consistent with obligations imposed under Rule 26(e), and striking the depositions is therefore not justified. Plaintiffs further argue that defendant has used up its 40 deposition allotment and the alternative request for relief should therefore be denied.

It is readily apparent to the Court that the third-party declarations now at issue were prepared in support of plaintiffs' class certification efforts and that plaintiffs' obligations relating to production of the declarations are appropriately subject to the Court's pre-class certification scheduling order, as well as the Court's general litigation management authority. Indeed, a review of all the various factors to be considered in making the determination whether to certify a class under Fed. R. Civ. P.

---

[3] Plaintiff has prepared a table indicating that eight additional declarations were produced on April 16, 2004; three additional declarations were produced on May 14, 2004; five declaration were produced on June 8, 2004; and two more declarations were produced on June 24, 2004. Declaration of Mara R. Thompson, para. 10.

23(b) quickly reveals that the court must review the matter comprehensively, and must weigh the evidence supporting each of the opposing positions, rather than merely determine whether class proponents have met a certain minimum standard or made a *prima facie* case which has not been sufficiently rebutted. In the present instance it is not patently obvious that the timing of plaintiffs' post-post discovery deadline production of declarations is in violation of procedural rules, simply because the obligation to supplement interrogatory responses is a continuing obligation and there will undoubtedly be additional merits discovery in this case, regardless of the outcome on class certification. Nonetheless, the Court finds that third-party declarations produced subsequent to the close of class certification discovery are untimely pursuant to the pre-class certification discovery provision of the scheduling order and should be stricken. Furthermore, it appears as though numerous productions were made in a manner calculated to limit the defendant's ability or opportunity to timely test those declarations by deposition or otherwise. Consequently, the late declarations not only compromise the defendant's position with respect to class certification, the materials also have the capacity to improperly influence the court's comprehensive review of the evidence relating to class certification and to inappropriately interfere with the court's litigation management responsibilities. Simply put, justice would not be served if the court was influenced in favor of certifying a class action on the basis of third-party declaration statements that subsequently proved to be vague, untrue or subject to misinterpretation. Under the circumstances presented here the Court concludes that all third-party declarations produced by plaintiffs after the close of discovery on March 17, 2004, are stricken, except to the extent defendant is provided the opportunity to take the deposition of an individual whose declaration was produced and whose declaration is offered in support of plaintiffs' motion for class

certification.

**B. The Depositions Taken to Date Highlight the Inaccuracies in the Declarations Produced During Discovery.**

The importance of deposing the third-party declarants was highlighted further during the depositions of the first set of declarants whom Cargill did have a last-minute opportunity to depose. During these depositions, Cargill discovered that the contents of the declarations,

---

3 The only remaining deadlines for this phase of the litigation involve expert depositions and class certification briefing—these deadlines would not be affected by the taking of additional depositions.

**EXHIBIT 2**

drafted by Sprenger & Lang, contained allegations that declarants later admitted were unfamiliar to them.[4]

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| Glenn Ford Declaration ¶ 13<br><br>Cargill went through two types of review during my tenure. The first type was called management by objectives. | Glenn Ford Deposition at 126<br><br>Glenn was asked "Q:. . . . Is that management by objectives a phrase that you're familiar with? A: No it's not." |
| Candy Smith Declaration ¶ 10<br><br>Before leaving Cargill, Smith applied for the job of Assistant to the Office Manager. The qualifications were not posted but Smith felt that with her background she would be a perfect fit for the position. Smith was good at multi-tasking, knew the office and had worked closely with and had watched her manager. Instead she thinks Pam Bednarz (Caucasian), got the position after Smith left Cargill. | Candy Smith Deposition at 82-83, 128<br><br>Smith said that she never applied for the position of Assistant to the Office Manager. While she was interested in such a position, no such position was open or available while Smith was employed at Cargill. |

During the declarants' depositions, it became clear that some declarants had no first-hand knowledge of the allegations being made against Cargill.

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| John Selman Declaration ¶ 14<br><br>John Selman said he was unfairly disciplined for sleeping on the job because he claimed two white employees were also caught but just given a verbal warning. | John Selman Deposition at 65-67<br><br>John Selman admitted that he knew his action was wrong and that he knew that company policy called for automatic suspension for sleeping while on the clock. Selman said that he did not know the names of the other employees he alleged were caught sleeping but did not receive discipline, nor does he even know whether or not these employees were in fact disciplined. |

4 The charts are illustrative of the information that came out in the depositions, but are by no means exhaustive. The declarations and excerpts of depositions of Glenn Ford, Candy Smith, John Selman, Raymond Fowler, Angela Reid, Marcia Harrison, and Laverne Gosby are attached hereto as Exhibits 13-26 respectively.

Other depositions revealed significant omissions from the declaration.

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| Candy Smith Declaration ¶ 11<br><br>Candy Smith said that Cargill knew who they were going to hire in all of the positions. They just went through the process to say they gave you an interview. Smith said she tried to apply for a position in the computer area but was told she was not qualified. The qualifications were familiarity with computer terms and software. Smith tried to apply but was told she was not qualified. | Candy Smith Deposition at 69-74, 84.<br><br>Smith stated that there was nothing about her experience in pursuing the Help Desk job that led her to think that her race was a factor in the decision-making.<br>Smith said that she had never held a help desk or technical position before. Smith was unable to recall what the qualifications were for the job or if she met the qualifications. Smith was interviewed for the help desk position but did not receive this position. |
| Glenn Ford Declaration ¶ 13<br><br>Glenn Ford said that upon making the 25 year club at Cargill, he only received acknowledgment from his department. | Glenn Ford Deposition at 145-148<br><br>Glenn Ford said that he received a 25 year plaque or clock, was invited to attend a companywide recognition dinner and his picture was placed in the company newsletter along with the pictures of other tenured employees. A Caucasian employee, Perry Ames, who also reached 25 years at the same time received the same recognition as Ford, except Ames chose not to have his picture taken and placed in the newsletter. Ford could not think of any Caucasian employees who received more recognition than himself. |

Declarants' deposition testimony also highlighted inconsistencies and recanting of testimony when the declarants were asked about claims made in the declarations.

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| Candy Smith Declaration ¶ 7<br><br>Candy Smith said there were times her responsibilities increased without a change in title or pay. Smith said Sharon Cess, the other receptionist, would take two to three months off at a time, and when this happened Smith had to complete Cess' job duties as well as her own job duties. | Candy Smith Deposition at 125<br><br>Candy Smith said that other employees, including Joan Stanford, Pam Bednarz and Harriet Harrington, helped take care of Sharon Cess' job duties when Cess was not at work. |

Deposition testimony also revealed the flimsy premises for the declarants' claims.

| Sprenger & Lang Declaration | Actual Deposition Testimony |
|---|---|
| Raymond Fowler Declaration ¶¶ 6, 7<br><br>Raymond Fowler claimed he was passed over for two promotions while at Cargill. | Raymond Fowler Deposition at 57-60<br><br>Raymond Fowler said that he never formally applied for either the supervisor or Senior Consultant position. |
| Angela Reid Declaration ¶ 10<br><br>Angela Reid said that she did not receive the same training opportunities as Caucasian employees. Reid also said she did not receive loan processing training, although this training was provided for Jackie Icenhour. | Angela Reid Deposition at 61-65<br><br>Angela Reid said that she was not working in loan processing at the time but wanted the opportunity to learn for her own experience. Reid said that she did not know if there was any specific training available or classes relating to loan processing but she just asked her supervisor in general that she would like such training. Reid's supervisor, Judy Ehrenfruend, told Reid that it was a good idea and she would look into it. Reid does not know whether such training was looked into or not. Jackie Icenhour received loan processing training because she was hired in the closing department and this training was required for her job. |

| | |
|---|---|
| Marcia Harrison Declaration ¶ 5<br><br>Marcia Harrison said that Caucasian employees, Christy Ferguson and Brenda McKinney, received a bonus but that she did not. | Marcia Harrison Deposition at 169-171<br><br>Marcia Harrison said that she did not know when Christy Ferguson and Brenda McKinney, received their bonuses, whether the bonus was for a particular year or what there bonus was based upon. |
| Laverne Gosby Declaration ¶ 5<br><br>Laverne Gosby said that she interviewed for a position at the corporate human resources level but did not receive the job. Gosby said that she received a call from a co-worker in Minneapolis who informed her that a recent college graduate received the job. Gosby did not understand how a recent graduate could have more years or experience than me or have the human resources background or training. | Laverne Gosby Deposition at 193-199<br><br>Laverne Gosby applied for and was interviewed for a corporate human resources position. After Gosby learned that she did not receive the position, she received a call from a woman who worked for Cargill in Minneapolis, that Gosby saw when she interviewed in Minneapolis. This is a woman that conducted training sessions for Cargill. She told Gosby that a person who recently graduated from college received the position. Gosby said that she does not know the race of the person who was hired for this position, their name, qualifications, background or even whether or not the information was true that the person hired was a recent college graduate. |

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

Roderick Arnold, et al., Civil No. 01-2086 DWF/AJB

Plaintiffs,

v.

**ORDER ON SECOND MOTION TO STRIKE DECLARATIONS**

Cargill, Incorporated,

Defendant.

This matter is before the Court, Magistrate Judge Arthur J. Boylan, on defendant's second motion to strike third-party declarations filed by plaintiffs in support of their motion for class certification [Docket No. 261]. Plaintiffs oppose the motion. Hearing was held on August 5, 2004, at the U.S. Courthouse, 316 No. Robert St., St. Paul MN 55101. Melissa Raphan, Esq., appeared on behalf of the defendant. Susan Coler, Esq., appeared on behalf of the plaintiffs. A related Order on Motion to Strike Declarations dated July 13, 2004, is presently on appeal to the District Court.

Based upon the file, memorandums, declarations, exhibits and arguments of counsel, **IT IS HEREBY ORDERED THAT** defendant's second Motion to Strike Untimely Third-Party Declarations is **denied as moot**. [Docket No. 261].

Dated: August 9, 2004

s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge

**EXHIBIT 3**

# MEMORANDUM

Defendant's motion seeks relief which was previously granted in the Court's Order dated July 13, 2004. Though that prior ruling remains on appeal to the District Court, it has not been stayed and therefore remains in effect as of the hearing on the present motion. With respect to third-party declarations produced by plaintiffs prior to the March 17, 2004, class discovery deadline, the July 13, 2004, Order does not strike the declarations and the materials are properly filed. With regard to third-party declarations which had actually been produced to the defendants, but were produced after the close of discovery, the declarations were stricken. However, defendants were permitted to avail themselves of declarations that had been produced, but were untimely, if depositions were allowed on the terms described in the Order.[1] Finally, with respect to third-party declarations that had not been produced as of the date of the July 13, 2004, Order, the submission of such declarations was entirely prohibited as a result of the provision explicitly granting the motion to strike and providing only the limited exception as described.[2] Since those declarations had not already been disclosed, not even the opportunity for a deposition by defendants would render them available for reference and consideration on class certification. The magistrate judge now finds no circumstances requiring further ruling by this Court with respect to the use of third-party declarations in support of class certification, particularly where the ruling is pending review by the District Court.

---

[1] ". . . to the extent that counsel for the putative class are willing and able to produce any already disclosed third-party declarant for deposition to take place in the Twin Cities, on or before August 10, 2004, plaintiff may submit and reference that individual's declaration for consideration on class certification." Order dated July 13, 2004, para 2.

[2] Id., para. 2.

It appears that in the absence of either a stay of the July 13, 2004, Order, or relief on appeal from the Order, plaintiffs may be in direct violation of the previous Order granting defendant's motion to strike third-party declarations as a consequence of their submission and reference to multiple third-party declarations without providing the defendants a reasonable opportunity to take declarant depositions, as well as by filing third-party declarations that were not produced to defendants until after issuance of the Court's Order on July 13, 2004. The Court acknowledges that plaintiffs counsel faced some logistical problems because the deadline for filing materials on class certification brief arose while their appeal of the magistrate judge's Order of July 13, 2004, is still pending. Setting aside the very tenable argument that plaintiff counsels' problems in that regard were of their own making as a result of the calculated decision to obtain and/or produce third-party declarations at the last possible minute, it seems that counsel proceeded to brief the class certification issue with, at worst, utter disregard for the Court's order striking declarations or, at best, a presumption that the magistrate judge's Order would be reversed on appeal to the District Court. In any event, counsel's actions were based upon self-serving and convenient assumptions. Counsel acknowledged that no stay of the Order pending appeal was requested and there is no indication in the record that counsel requested any accommodations from the District Court with regard to class certification briefing. Though there is perhaps no certainty that a request for relief would have gone unopposed or would have been granted by the Court, granting such relief is not out of the ordinary and it is certain that relief was not going to be provided without some request.