UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) |
| On behalf of themselves and all others similarly situated, | ) | CLASS ACTION |
| *Plaintiffs,* | ) | **PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT'S APPEAL FROM PARAGRAPH 4 OF JULY 13, 2004, ORDER OF MAGISTRATE JUDGE** |
| v. | ) | |
| CARGILL, INCORPORATED, | ) | |
| *Defendant.* | ) | |

## INTRODUCTION

In paragraph 4 of his July 13, 2004, Order ("Expert Report Order"),[1] Magistrate Judge Boylan removed defendant Cargill, Inc.'s confidential designation from plaintiffs' expert reports by David W. Peterson, PhD, and William T. Bielby, PhD. Cargill has failed to show that this Expert Report Order is clearly erroneous or contrary to law, making denial of its appeal appropriate.

## BACKGROUND

The Stipulation and Protective Order ("Protective Order") entered in this case provides at paragraph 5 that a party may designate a "document" as "Confidential" or "Attorneys' Eyes Only" by notifying opposing counsel for the producing party. Either party may challenge a document's designation. Absent informal resolution, the Court ultimately decides designation

[1] The Expert Report Order may be found at docket number 249. The Stipulation and Protective Order may be found at docket number 144. The expert reports by Drs. Peterson and Bielby were filed under seal as Exhibits in Support of Plaintiffs' Motion for Class Certification (Docket No. 253).

disputes. The party *proposing* the confidential or attorneys' eyes only designation bears the burden of justifying it.

Under paragraph 9 of the Protective Order, "*[p]ortions* of affidavits and briefs quoting Confidential and Attorneys' Eyes Only information or documents shall not be posted on web sites or otherwise published or disseminated by the parties . . . ." (Emphasis added.) Paragraph 10 directs that such portions of affidavits or briefs "will be filed under seal." Paragraph 10 further discusses the use of statistics: "Statistical analyses that do not link Confidential or Attorneys' Eyes Only information to specific employees do not need to be filed under seal."

When negotiating the terms of the Protective Order, the parties disputed aspects of both paragraphs 9 and 10. Magistrate Judge Boylan and this Court ultimately had a hand in shaping the final language of both. *See* Docket No. 73, August 19, 2002, Memorandum Opinion and Order. Cargill contends that it did not have the opportunity to argue against that portion of paragraph 10 exempting from the sealing requirement any statistical analyses not linked to specific employees. To the contrary, plaintiffs proposed that language in an "Addendum" to its appeal of the Magistrate Judge's June 5, 2002, Order, filed with this Court on June 19, 2002. *See* Docket No. 53.[2] On page 9 of their memorandum, plaintiffs argued for the adoption of the Addendum text. They identified the proposed language as a "modification" of prior proposals for paragraphs 9 and 10, thereby informing Cargill that plaintiffs were proposing something other than what had been discussed or argued previously. Cargill could have argued against that modification and the sentence about statistics when it filed its opposition memorandum two weeks later on July 1, 2002, but it failed to do so. *See* Docket No. 61, Defendant's

[2] For the Court's convenience, Plaintiffs' Memorandum with Addendum is attached to the Declaration of Susan M. Coler in Opposition to Defendant's Appeal from Paragraph 4 of July 13, 2004, Order of Magistrate Judge as Ex. 3. Hereafter, all exhibits referred to as "Ex. __" are to the Coler Declaration.

Memorandum of Law in Opposition to Plaintiffs' Appeal from Magistrate Judge's June 5, 2002, Discovery Order. Cargill cannot now legitimately complain that it was deprived of the opportunity to challenge the language in paragraph 10 proposed by plaintiffs and adopted by the Court.

At issue in this appeal are expert statistical reports prepared by David W. Peterson, PhD, titled "Patterns in the Performance Ratings, Promotion, Pay and Termination of African American Employees at Cargill, Inc. from 1995 to 2003" (April 21, 2004, revised July 9, 2004) and "Patterns in the Performance Ratings, Promotion, Pay and Termination of African American Employees at Cargill, Inc. from 1997 to 2003" (June 10, 2004) (together, "Peterson Reports"), as well as the "Expert Report of William T. Bielby" (April 22, 2004) ("Bielby Report").

Shortly after plaintiffs served their expert reports, Cargill's counsel declared that it was designating the reports in their entirety as attorneys' eyes only and confidential. While the plaintiffs disagreed with the propriety of Cargill's designation, they treated the documents as if designated in that manner until the matter could be resolved pursuant to the Protective Order. Cargill later agreed to remove the attorneys' eyes only designation from the reports, arguing instead that the reports must be designated confidential almost in their entirety.[3]

After briefing and oral argument, Magistrate Judge Boylan granted plaintiffs' request to remove the confidential designation from the Peterson and Bielby Reports. He stated in paragraph 4 of his Order, "[u]pon review of the reports at issue, the Protective Order, and the letter memorandums submitted by the parties, the Court concludes that the reports do not link

[3] Cargill modified its initial designations of the reports as entirely confidential. Instead, it submitted mark-ups showing the portions of the reports it claimed were confidential and therefore required redaction. Cargill redacted almost every statement about itself in the reports, leaving only a very small portion of the reports unredacted. *See* Exs. 1-2 (defendant's redacted versions of Dr. Peterson's April 21, 2004, report and the Bielby Report).

confidential information to particular employees *and* are not protected from public disclosure under the Protective Order. It is therefore not required that the reports be filed under seal." (Emphasis added.)

## ARGUMENT

Reversal of a magistrate judge's order on a non-dispositive matter is warranted when it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); D. Minn. L.R. 72.1(b)(2). This occurs when the reviewing court, based on consideration of all the evidence, "'is left with the definite and firm conviction that a mistake has been committed.'" *Chakales v. Comm'r of Internal Revenue*, 79 F.3d 726, 728 (8th Cir. 1996) (*quoting United States v. United States Gypsum Co.*, 333 U.S. 364 (1948)).

The party seeking a protective order bears the burden of making the "good cause" showing that the information being sought falls within the scope of Rule 26(c), and that the party will be harmed by its disclosure. *Iowa Beef Processors, Inc. v. Bagley*, 601 F.2d 949, 954 n.5 (8th Cir. 1979). That party must make a particular request and a specific demonstration of facts in support of the request as opposed to conclusory or speculative statements about the need for a protective order and the harm that would be suffered without one. *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 102 n.16 (1981). Similarly, the Protective Order requires Cargill to justify its designation of the reports as confidential almost in their entirety. The Magistrate Judge committed no error in concluding that Cargill has not met this burden. After a brief overview of the context of this dispute, plaintiffs will address the Peterson and Bielby Reports separately.

### I. The Context for Review of the Expert Report Order Includes the Public Interest in Open Proceedings, Particularly Where Allegations of Discrimination Are Involved.

The Court has discretion under Fed. R. Civ. P. 26(c) to balance the public interest in and access to court proceedings with its obligation to protect parties from unjust treatment and to

appropriately protect a company's "trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 26(c)(7). The plaintiffs, putative class members and the public have an interest and a corresponding right to know the issues involved in publicly filed discrimination disputes. *See Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1029 (D. Minn. 1998) (noting the importance of "public scrutiny of the dispute and the proceeding" in a discrimination context). There is a recognized policy favoring public access to hearings and records. *Gannett Co. v. DePasquale*, 443 U.S. 368, 386 n.15, (1979); *Capellupo v. FMC Corp.*, 1989 U.S. Dist. LEXIS 4916, at *3 (D. Minn. Apr. 28, 1989). This access "can enhance the quality and safeguard the integrity of the fact-finding process and foster an appearance of fairness." *In re Iowa Freedom of Information Council*, 724 F.2d 658, 661 (8th Cir. 1983); s*ee also Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 n.17 (1980).

Because discrimination cases "frequently involve issues critical to the public," the public has a right to "watch and participate" in the litigation in order for adjudication to provide the necessary "community catharsis." *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1179 (6th Cir. 1983). In contrast, "secrecy insulates the participants, masking impropriety, obscuring incompetence, and concealing corruption." *Id.* The burden is on the party seeking secrecy to make a compelling justification for departing from the principle of openness that is critical to our system of justice. *Capellupo*, 1989 U.S. Dist. LEXIS 4916, at *4; *see also Leucadia, Inc. v. Applied Extrusion Technologies, Inc.*, 998 F.2d 157, 165 (3d Cir. 1993); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982).

Where, as here, a defendant has designated almost all of the documents produced in litigation as confidential, the public's interest in open proceedings is particularly threatened. Among other things, unjustified confidentiality dramatically limits potential class members'

access to information about the case. In this context, the Magistrate Judge appropriately ruled that the expert reports here "are not protected from public disclosure under the Protective Order." Expert Report Order, ¶ 4.

## II. Cargill Has Failed to Show Any Error in the Removal of the Confidential Designation from the Peterson Reports.

The Peterson Reports primarily are derived from computerized employment data provided by Cargill. The *underlying* data is designated attorneys' and experts' eyes only. However, none of the data reported and none of the analyses provided by Dr. Peterson identify or can be traced to any specific employee. Nor are any confidential or attorneys' eyes only documents quoted in the reports. Accordingly, paragraph 10 of the Protective Order does not require plaintiffs to file these reports under seal. Cargill therefore cannot meet its burden of justifying any overall designation of the Peterson reports as confidential.

Cargill's primary argument on appeal is its misguided complaint that it did not get a chance to argue against inclusion of the reference to statistical data in paragraph 10 of the Protective Order. As shown above, Cargill had the opportunity to make its arguments but failed to do so. This Court decided to include the reference to statistical data, no doubt, for many of the public policy reasons cited in Section I of this argument.

Cargill also argues in a circular manner that when it claims aggregated data is confidential, it has made a showing of confidentiality. This kind of pronouncement offers no explanation for the claimed confidentiality, let alone any admissible evidence supporting it. Similarly, in footnote 10, Cargill asserts "a competitor would find information on the average salaries and bonuses Cargill pays . . . just as useful as the actual salary Cargill pays any individual employee." Cargill's Memorandum in Support of Appeal from Paragraph 4 of July 13, 2004, Order of Magistrate Judge ("Def's Mem.") at 9 n.10. This unsupported

proposition is neither self-explanatory, nor intuitive, nor a fact of which the Court could take judicial notice. Moreover, Cargill's cases say nothing about how the use of aggregated employment data could be harmful to an employer. *See C.A. Muer Corp. v. Big River Fish Co.*, 1998 U.S. Dist. LEXIS 12639, at *3 (E.D. Pa., Aug. 10, 1998) (at issue were the company's financial reports, budgets, forecasts, and media and advertising schedules); *Bergen Brunswig Corp. v. IVAX Corp.*, 1998 U.S. Dist. LEXIS 3045, at *1 (S.D.N.Y., Mar. 11, 1998) (involving "sensitive and privileged business information in contemplation of a merger").

The Protective Order allows a party to challenge confidential designations. The fact that Cargill previously designated material confidential does not make such a challenge inappropriate, and it does not relieve Cargill of the obligation to justify its designation. Because Cargill has failed to do so, plaintiffs ask the Court to affirm that the Peterson Reports need not be filed under seal and should not be designated in any part as confidential.

**III. Cargill Has Failed to Show Any Error in the Removal of the Confidential Designation from the Bielby Report.**

Dr. Bielby's report examines Cargill's corporate culture and equal employment opportunity policies and practices to assess whether they created barriers to career advancement for salaried African-American employees. Cargill's sole argument against removal of the confidential designation from any portions of the report is contained in a footnote. *See* Def's Mem. at 2 n.1. Again, Cargill's argument is circular. Because Cargill has designated the information and documents referenced in the Bielby Report as confidential, it argues that the Court should do the same. Cargill misses the point. It must prove – not declare – that the information and documents warrant confidential treatment.

Cargill also argues that the Magistrate Judge mistakenly evaluated the designation of the Bielby Report under the rubric of the statistics sentence from paragraph 10 of the Protective

Order. To the contrary, the Magistrate Judge's rationale for his decision in paragraph 4 had two parts: "the Court concludes [1] that the reports do not link confidential information to particular employees *and* [2] are not protected from public disclosure under the Protective Order." Expert Report Order, ¶ 4 (emphasis added). The Magistrate Judge therefore stated that he examined whether the materials fell within the purview of the Protective Order as a whole, and he concluded that they did not.

The Magistrate Judge's decision is neither erroneous nor contrary to law. While plaintiffs do not bear the burden of *dis*proving the confidential nature of the documents, they have shown that Cargill has already published information similar to that it claims is confidential in the Bielby Report. For example, the Bielby Report at pages 7-10 discusses a Cargill initiative called Strategic Intent and a culture scan done at the company. Cargill proposed extensive redaction of that discussion. However, those events and the outcomes (positive and negative), were discussed in a public speech by Warren Staley published on Cargill's website. Ex. 4 at 2-3.

A review of the Bielby Report further demonstrates that the information and documents referenced do not constitute proprietary or confidential information that would justify Cargill's efforts to cast a veil over it. The Bielby Report does not report personnel information about the performance or pay of individual employees, and it does not disclose Cargill trade secrets, non-public financial information or business strategies. Statistical data cited on page 16 does not link the data to specific employees. The only employment policy cited *per se* in the Bielby Report is a statement of Cargill's EEO policy at page 20 that has been circulated to employees. Again, Cargill will not be able to show that disclosure of this statement unjustly disadvantages the company or has truly been maintained in a confidential manner. Cargill's remaining quotations

primarily consist of witness fact observations that do not disclose proprietary or trade secret information or confidential information that falls within the scope of the Protective Order.

Cargill's failure to offer any admissible evidence supporting its designation of extensive portions of the Bielby Report as confidential should be the end of the matter. Plaintiffs therefore ask the Court to affirm the removal of the confidential designation from the Bielby Report.

**IV. Admissibility at Trial and Approval by Cargill Are Not Appropriate Criteria for Designating the Expert Reports as Confidential.**

Cargill makes a final argument that removal of the confidential designation is inappropriate because the Court has not yet deemed the Peterson and Bielby Reports admissible at trial under *Daubert*[4] and because Cargill claims the reports are "misleading" and "skewed." The Court may easily dismiss this argument as without support in the law.[5] The question is not whether the reports are admissible, or whether Cargill approves of their content, but whether Cargill has proven that the information and documents referenced in the reports warrant treatment as confidential pursuant to the Protective Order and Fed. R. Civ. P. 26(c). Cargill has failed this burden.

**CONCLUSION**

For the reasons set forth above, plaintiffs respectfully request this Court to deny Cargill's appeal of paragraph 4 of Magistrate Judge Boylan's July 13, 2004, Order and affirm the removal of the confidential designation from the Peterson and Bielby Reports.

---

[4] *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579 (1993).

[5] Plaintiffs are confident that the Court will admit these reports at trial. Peterson and Bielby are competent and experienced experts who used methodology accepted in their fields and arrived at well-documented and sound conclusions. Cargill's challenges to the reports go to their weight, not their admissibility. A jury will decide whether the Peterson and Bielby Reports are accurate and on point.

DATED: August 10, 2004

SPRENGER & LANG, PLLC

By: ***s/Susan M. Coler***

Lawrence P. Schaefer (MN No. 195583)
Susan M. Coler (MN No. 217621)
Teresa K. Patton (MN No. 205679)
David L. Ramp (MN No. 89357)
Mara R. Thompson (MN No. 196125)
Sprenger & Lang, PLLC
325 Ridgewood Avenue
Minneapolis, MN 55403
(612) 871-8910
(612) 871-9270 (*facsimile*)

Michael D. Lieder (DC Bar No. 444273)
Steven M. Sprenger (MO Bar No. 43994)
1614 20th Street, N.W.
Washington, DC 20009-1001
(202) 265-8010

ATTORNEYS FOR PLAINTIFFS



60664