UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| RODERICK ARNOLD, et al.,<br><br>On behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CARGILL, INCORPORATED,<br><br>*Defendant.* | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB)<br><br>CLASS ACTION |

**APPENDIX 8 (REPLY): OTHER DOCUMENTS**
**Ox 32-34**

| Ox # | DESCRIPTION | DATE |
|---|---|---|
| 32 | Declaration of Lawrence P. Schaefer in Opposition to Defendant's Motions for Summary Judgment on the Claims of Louis Darden and Plaintiffs' Claims for Constructive Discharge | 04/13/04 |
| 33 | Declaration of Sean Wright | 08/02/04 |
| 34 | Declaration of Mara R. Thompson | 08/03/04 |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| RODERICK ARNOLD, et al.,<br><br>On behalf of themselves and all others similarly situated,<br><br>*Plaintiffs*,<br><br>v.<br><br>CARGILL, INCORPORATED,<br><br>*Defendant*. | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB)<br><br>CLASS ACTION<br><br>**DECLARATION OF LAWRENCE P. SCHAEFER IN OPPOSITION TO DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT ON THE CLAIMS OF LOUIS DARDEN AND PLAINTIFFS' CLAIMS FOR CONSTRUCTIVE DISCHARGE** |

Lawrence P. Schaefer declares that the following is true and correct:

1. I am a partner at Sprenger & Lang, PLLC and am lead counsel representing the plaintiffs in the above-captioned matter

2. Attached as Exhibits A and B are true copies of Scheduling Orders entered in the above-referenced matter.

3. Attached as Exhibit C is a true copy of the First Amended Complaint.

4. In the pre-certification discovery period, the Court limited each side to no more than 40 depositions. These limits were appropriate for this phase of the litigation because the focus of discovery was on alleged systematic discrimination relevant to class certification, and not on the claims or individual facts involved with each of the twenty-six named plaintiffs.

5. Pursuant to the Scheduling Orders, in the pre-certification phase of discovery plaintiffs have thus focused on pursuing discovery related to the alleged systemic

discrimination giving rise to the class allegations. This has included, but is not limited to, discovery of all information relating to the following systems at Cargill:

a) The "Performance Management Process," and its predecessor, the "Management by Objectives" system, which are the company-wide systems for evaluating salaried employee work performance at Cargill;

b) Cargill's systems for identifying employees managers considered to have "high potential." This includes the "Key Employee Identification System" (KEIS), and its successor, the "Leadership Talent Management Process" (LTMP);

c) Cargill's "Pay for Performance" compensation system, and related systems that govern discretionary components of compensation (such as bonus, incentive pay and stock options);

d) Cargill's centrally managed development programs for salaried employees, including the "Cargill Leadership Development Program," and successor programs such as the "Advanced Leadership Forum," as well as mentoring programs;

e) Cargill's systems for promoting salaried employees, including the presence or absence of job posting;

f) The policies, procedures and practices governing all aspects of salaried employment at Cargill;

g) Cargill's diversity programs, including the company-wide "Valuing Differences Initiative," which has been in place since 1998;

h) Cargill's affirmative action programs; and

i) The process for addressing race discrimination complaints.

6. All written discovery has focused on how these systems were designed and how they applied company-wide. Cargill has produced more than 86,000 documents, amounting to hundreds of thousands of pages of material in response to document requests. The discovery in this case is extensive, as it extends back 12 years to 1992, and the liability period begins in August 1995.

7. Plaintiffs have taken 37 "offensive" depositions to date, including eight 30(b)(6) depositions (relating to compensation, performance appraisal, KEIS/LTMP, CLDP, promotions, the Selection Grid system, recruitment/retention, and affirmative action), as well as depositions of many of Cargill's senior executives, and most of the senior management in the Human Resource functions throughout the company. Plaintiffs will be completing these depositions on April 14, 2004, when the parties have scheduled the final "embedded" Human Resource manager deposition. Plaintiffs also have noticed and may elect to take the deposition of Cargill in-house counsel Fred Budde, depending on the resolution of various privilege issues and an ongoing dialogue between the parties.

8. Plaintiffs have conducted almost no discovery relating to the individual experiences of the named plaintiffs, apart from having Cargill produce personnel records associated with their employment, and, only following successful motions to compel, having Cargill produce personnel records associated with certain limited numbers of comparable employees. Cargill is currently refusing to produce any documents associated with 79 comparable employees for whom plaintiffs have requested records, objecting that the request is too burdensome. Negotiations regarding this issue are ongoing.

9. This individualized discovery was conducted for the limited purpose of demonstrating that the named plaintiffs have been affected by the systems at issue and that similarly situated non-African-American employees have fared more favorably.

10. Plaintiffs have conducted no written discovery into the circumstances of the named plaintiffs' employment, and have not propounded interrogatories or discovery requests relating to the managers or supervisors who made decisions affecting their

employment. This discovery, if it needs to occur, will only take place following denial of class certification or following a ruling on class-wide liability, after which the legal presumption discussed in the memorandum may or may not apply.

11. It would be inappropriate and a waste of resources to conduct detailed individualized discovery before class certification and a class-wide liability trial. The focus on class certification and class liability is on the alleged pattern of discriminatory treatment and the design and implementation of systems that may give rise to this pattern. The individual merits of named plaintiffs' claims are not at issue at this stage. To notice and take an additional fifty or more depositions, and to devote reams of paper to propound detailed interrogatories and discovery requests relating to the intricate details of the twenty six plaintiffs' employment history, would be contrary to what is universally recognized as the appropriate staging of discovery in class litigation, as recognized by the Scheduling Orders in this case.

12. The individual named plaintiffs, therefore, have not conducted the type of individual discovery that will occur, if at all, in the post-certification discovery phase. At that time, this litigation will follow one of two procedural paths. If the Court denies class certification, the claims of the named plaintiffs (and any other class members who elect to formally join this action once the tolling of claims has ceased) will proceed to phase two individualized discovery, and a Rule 16 conference will then be held to determine, among other things, a schedule for this discovery and a dispositive motion deadline, as contemplated by the Scheduling Orders. If the Court grants class certification and schedules a liability trial, plaintiffs may conduct limited discovery focused on individual circumstances of named plaintiffs in advance of a class-wide liability trial. A liability

trial would soon follow, and, should the class prevail, additional individualized discovery will likely be limited as the legal presumption of discrimination would then attach. If the class does not prevail on class-wide liability, the same discovery and scheduling as would follow an unsuccessful class certification decision would occur. Only then, however, would detailed individual discovery appropriately take place.

13. While it is unnecessary at this stage to detail all of the potential individualized discovery that would occur at that stage, plaintiffs would, at a minimum propound discovery requests seeking identification of all decision makers involved in all claimed adverse employment actions and all documents associated with each of these actions, undertake a more in-depth inquiry into the treatment of alleged comparable employees, and would likely depose many of these decision makers and some of the comparable employees. None of this has occurred for any of the named plaintiffs.

14. As an example, and to provide additional detail in support of plaintiffs' motion for a Rule 56(f) deferral of any decision related to Louis Darden's claims, plaintiffs assert that they will pursue written discovery and depositions including the following:

1) The deposition of Corporate Investigator Charles Michael Suter including questions about:

   a. Why Suter did not interview and obtain a statement from Todd Smith, the engineer who supervised the work with Gillespie Construction and was the key witness to the fact that Plant Manager Ken Grimm instructed Darden and Smith not to file a cost amendment; that Grimm instructed Darden and Smith to find a way to pay Gillespie; and that Grimm was fully aware that payments were being made to Gillespie.

   b. Why Suter's file contains no notes of his alleged interview with former Salt Plant Manager Ken Grimm and no statement from Grimm, the person who instructed Darden and Smith to pay

Gillespie, had full knowledge that Gillespie was being paid, and as Plant Manager, would have been responsible for his decision to "violate" Company policy.

2) Depositions of Ken Grimm; Todd Smith; the Cargill Salt Controller who handled the transfer of the piece of heavy equipment to Gillespie Construction at no charge; and many other witnesses;

3) Depositions of the Cargill executives who made the decision to terminate Darden, including Cargill Deicing Technology (Salt) President Dale Fehrenbach; as well as depositions relating to decisions about discipline of others involved in the Gillespie matter;

4) Depositions of the Cargill manager who withdrew Cargill's appeal of Darden's successful claim for unemployment, after the company failed to prove that Darden had been discharged for "failing to obey rules, orders, instructions, or established procedures of the employer."

15. At class certification, plaintiffs will present detailed evidence relevant to their burden to establish the elements of Rules 23(a) and (b) of the Federal Rules of Civil Procedure. As it relates to the pattern and practice class claim of constructive discharge, plaintiffs will demonstrate that, throughout the liability period, Cargill management has known that Cargill salaried African-American employees as a group were leaving the company in vastly greater numbers than non-African-American employees, that there was a pervasive perception amongst the class that equal employment opportunity was not available to African-American salaried employees at the company, and the specific impact of many of the systems identified above caused this perception. Plaintiffs will also present a pervasive and comprehensive statistical analysis of the experiences of African-American employees compared to non-African-American employees in relation to performance appraisal ratings, advancement, compensation, and termination. This analysis will demonstrate that throughout the liability period African-American employees fared worse than non-African-American employees to a statistically

significant degree that strongly suggests race discrimination is and has been the cause. Plaintiffs will bring the cause of the statistical disparities "convincingly to life" by presenting anecdotal and documentary evidence that the experience of the plaintiffs and class members reflects systemic race bias.

16. Attached are true copies of the following exhibits:

| EXHIBIT NO. | DOCUMENT DESCRIPTION |
|---|---|
| D | Fax from Louis Darden to Gary Bellis, dated 08/15/00 |
| E | Email from Greg Wold to Michael Suter, Tom Bell, Dale Fehrenbach, Timothy Harter and Ken Howe, dated 05/15/01 |
| F | Georgia Department of Labor Claims Examiner's Determination for Louis Darden, dated 05/20/01 |
| G | Georgia Department of Labor Decision of Administrative Hearing Officer, dated 08/16/01 |
| Acquaye | Excerpts of the deposition testimony of Nii-Akwei Acquaye |
| Brown | Excerpts of the deposition testimony of Toya Brown |
| Collins | Excerpts of the deposition testimony of Dawn "Kim" Collins |
| 22 | Memo from Kim Collins to Sue Sjeklocha re: Resignation, dated 09/01/99 |
| 23 | Memo from J. Daniel and S. Sjeklocha to Kim Collins re: Your Letter of Resignation, dated 09/14/99 |
| Darden | Complete deposition testimony of Louis Darden |
| Douglas | Excerpts of the deposition testimony of Virginia Douglas |
| 3 | Email chain re Virginia Douglas, dated 01/27-28/98 |
| Henderson | Excerpts of the deposition testimony of Frenchie Henderson |
| Jenkins | Excerpts of the deposition testimony of Jackie Jenkins |
| 20 | Letter from Jacqueline P. Jenkins to Bruce Weinard, dated 08/15/97. |
| Lewis | Excerpts of the deposition testimony of Keith Lewis |
| Little | Excerpts of the deposition testimony of Vivian Lewis |
| Mason-Robinson | Excerpts of the deposition testimony of Valerie Mason-Robinson |
| McDowell | Excerpts of the deposition testimony of Anthony "Chris" McDowell |
| Mitchell | Excerpts of the deposition testimony of Michael Mitchell |
| Tate | Excerpts of the deposition testimony of Tausha Tate |
| 19 | Letter from Tausha L. Tate to Matt Turner, dated 04/14/00 |
| Tyler | Excerpts of the deposition testimony of Emily Tyler |

17. For all of the above reasons, plaintiffs submit this Declaration pursuant to Rule 56(f) of the Federal Rules of Civil Procedure as an additional basis to deny defendants' motion for summary judgment until plaintiffs have a full and fair opportunity for discovery in opposition to defendants' motions.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of April, 2004, at Minneapolis, MN.

Lawrence P. Schaefer

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | |
|---|---|
| RODERICK ARNOLD, et al., | CIVIL ACTION NO. 01-CV-2086(DWF/AJB) |
| On behalf of themselves and all others similarly situated, | CLASS ACTION |
| *Plaintiffs,* | |
| v. | **DECLARATION OF SEAN WRIGHT** |
| CARGILL, INCORPORATED, | |
| *Defendant.* | |

I, Sean Wright, declare that the following is true and correct:

1. I am a named plaintiff in the above-referenced matter. In fact, I was the first plaintiff in this case to formally retain the firm for the purpose of investigating these allegations and bring this class action. I retained Sprenger & Lang, PLLC ("S&L") in August 2000, and was in contact with the firm well before then.

2. I sought to retain S&L based on discussion I had with other current and former African-American employees at Cargill. I learned from these discussions that S&L had previously brought a class race discrimination case against Cargill, and that it was one of the few firms in the country capable of effectively pursuing this type of case. I contacted S&L about my circumstances, the firm did not initiate contact with me. I never discussed this matter with Bill Douglas before I approached S&L. I didn't know Bill Douglas well at the time.

Ox 33

3. I was present at a number of "group" meetings at S&L where witnesses, clients and potential class members were present. The purpose of these meetings was for S&L to update this group on the status of the investigation it was conducting into allegations of company-wide race discrimination at Cargill. Larry Schaefer, the lead counsel at S&L from the beginning of this investigation, made clear at these meetings that no one present should communicate any documents or communications we may have had with Cargill lawyers, either inside the company or retained by the company. I remember Bill Douglas being present at one of these meetings in December 2000 where this instruction was communicated by Mr. Schaefer.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2 day of August, 2004 at Minneapolis MN.
[*city, state*]

Sean E. Wright
Sean Wright



60583

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| RODERICK ARNOLD, et al.,<br><br>On behalf of themselves and all others similarly situated,<br><br>*Plaintiffs,*<br><br>v.<br><br>CARGILL, INCORPORATED,<br><br>*Defendant.* | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB)<br><br>CLASS ACTION<br><br>**DECLARATION OF MARA R. THOMPSON** |

I, Mara R. Thompson, declare under penalty of perjury that the following is true and accurate to the best of my personal knowledge.

1. I am Of Counsel with Sprenger & Lang, PLLC ("S&L"), and I am one of the attorneys who supervise the witness contact project in this case.

2. To investigate this case, S&L law clerks, paralegals and legal assistants contact potential witnesses under the supervision of attorneys.

3. Before attempting to contact any potential witness, S&L checks that witness' job title and grade level, if possible. In this case, I automatically eliminate any individuals at or above Salary Grade 10, those whose job titles include the words "superintendent," "manager," "director," "VP" and the like; and anyone in the human resources or law departments. I designate these people as "Do Not Contact" and instruct S&L staff members not to attempt to contact anyone in this category.

4. I instruct S&L staff members to call potential clients at their home telephone numbers only. No witness is to be called for the first time at work, and no current Cargill employees are ever to be called at work.

5. I train and supervise S&L staff members as follows: At the beginning of the telephone call they must identify themselves by name, title, and the fact that they work for S&L. They must also explain that we are investigating a race discrimination case against Cargill. They must also ask for the person's position or title with Cargill as a second check to make sure they do not fall into the "Do Not Contact" category. If there are no indications that the potential witness is within the "Do Not Contact" category, the interviewer is then to proceed to ask the potential witness if s/he would be willing to answer some questions about his/her work experience at Cargill.

6. If the witness indicates that s/he is management of some kind or otherwise in the "Do Not Contact" category, the staff person must immediately terminate the call and notify an attorney to review the situation. The same policies apply to potential witnesses who call S&L on their own initiative.

7. I always instruct S&L staff members that we are absolutely prohibited from asking any witness if they would like to be a plaintiff, join the lawsuit, or any other question of that nature. This is a very strict policy at S&L, both for staff members and for attorneys.

8. If a potential witness does ask one of our staff members if they can join the lawsuit or become a plaintiff, or any other question of that nature, the staff member must immediately refer that person to an attorney.

9. For witnesses who are not managerial, are not part Cargill's human resource or law departments, and who are willing to be interviewed, S&L staff members continue with a fact interview. If the witness is then willing to sign a declaration based on that interview, the staff member goes ahead and prepares a declaration for the witness. The communications with the witnesses typically include the following written instruction:

> If you wish to make any revisions [to your declaration], no matter how small, or if you are uncomfortable with the wording anywhere in your declaration, please let us know so we can revise it. You should be comfortable with everything in this statement. If there are even any words or phrases you wouldn't use, we should change them to reflect your sentiments and grammatical preferences. You can make any revisions you want and return it to me.

10. The witnesses make changes in tone and content as desired, and the staff person does not finalize the declaration for signature until the witness approves it.

11. According to Cargill's last-produced HRIS data, Anthony Skipper is a Grade 7 Production Supervisor in Akron, Ohio.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 3rd day of August, 2004 in Minneapolis, Minnesota.

*s/Mara R. Thompson*
Mara R. Thompson