FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) |
| On behalf of themselves and all others similarly situated, | ) | CLASS ACTION |
| *Plaintiffs,* | ) | |
| v. | ) | |
| CARGILL, INCORPORATED, | ) | |
| *Defendant.* | ) | |

**PLAINTIFFS' OPPOSITION TO CARGILL'S MOTION TO RECONSIDER THE COURT'S JULY 15, 2002 MEMORANDUM AND ORDER ESTABLISHING A SIX-YEAR LIMITATION PERIOD IN THIS CASE**

**Dated: September 17, 2004**

**SPRENGER & LANG, PLLC**

By: ***s/Lawrence P. Schaefer***

Lawrence Schaefer (MN No. 195583)
Susan M. Coler (MN No. 217621)
Teresa K. Patton (MN No. 205679)
Sprenger & Lang, PLLC
325 Ridgewood Avenue
Minneapolis, MN 55403
(612) 871-8910
(612) 871-9270 (*facsimile*)

Michael D. Lieder (DC Bar No. 444273)
Steven M. Sprenger (DC Bar No. 418736)
1614 20th Street, N.W.
Washington, DC 20009-1001
(202) 265-8010

ATTORNEYS FOR PLAINTIFFS

## INTRODUCTION

In support of its motion for reconsideration of the Court's July 15, 2002 Order, Cargill argues that the four-year limitations period set out in 28 U.S.C. § 1658 applies to all claims of plaintiffs and potential class members in this case. According to Cargill, any claim arising from an event that occurred prior to August 22, 1997, is barred as a matter of law. Cargill is wrong for three reasons.

First, plaintiffs and class members may be able to assert most promotion and pay claims predating August 22, 1997, under the continuing violations doctrine. Whether a continuing violation existed cannot be determined as a matter of law. The jury in the first stage of the litigation should decide whether there was a continuing violation, and if so, how far back in time it reached.

Second, Cargill's argument assumes that *Jones v. R. R. Donnelley & Sons Co*, 541 U.S. __, 124 S. Ct. 1836 (2004) requires retroactive application of § 1658 to this case. That decision, however, should be applied prospectively only, not to pending cases.

Finally, even if *Jones* applies retroactively, a six-year limitations period governs promotion and compensation claims that were actionable under 42 U.S.C. § 1981 ("§ 1981") prior to the passage of the Civil Rights Act of 1991. Those claims are not extinguished by *Jones*.

## ARGUMENT

### I. THE JURY SHOULD DETERMINE THE APPLICABILITY OF THE CONTINUING VIOLATION DOCTRINE DURING THE FIRST STAGE OF TRIAL.

The continuing violation doctrine, developed by courts in employment discrimination cases over several decades, permits plaintiffs under certain circumstances



2010670

to seek relief for discriminatory actions that precede the start of the applicable limitations period. Under the doctrine, a plaintiff may obtain relief for at least certain types of discriminatory actions that occurred prior to the start of the limitations period if those actions are sufficiently linked to at least one discriminatory action that occurred within the liability period. *See National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107-09 (2002) (discussing continuing violation doctrine prior to issuance of decision in *Morgan*). In *Morgan*, the Supreme Court addressed some of the circumstances under which the continuing violation doctrine may apply.

The *Morgan* plaintiff alleged that his employer, Amtrak, discriminated and retaliated against him in a variety of ways prior to and within the limitations period. *Id.* at 104-05. The Supreme Court held that all claims arising from events occurring prior to the start of the limitations period, except for Morgan's hostile environment claim, were time-barred. The Court explained:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." Morgan can only file a charge to cover discrete acts that "occurred" within the appropriate time period. While Morgan alleged that he suffered from numerous discriminatory and retaliatory acts from the date that he was hired through March 3, 1995, the date that he was fired, only incidents that took place within the timely filing period are actionable.

*Id.* at 114 (footnote omitted).

By contrast, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. Hostile environment claims are different than claims involving discrete acts:

> Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

*Id.* at 115 (citation omitted).

Morgan's claims dealt only with actions directed against him. Nonetheless, the Supreme Court went out of its way to note, "We have no occasion here to consider the timely filing question with respect to 'pattern-or-practice' claims brought by private litigants as none are at issue here." *Id.* at 115 n.9.

The logic of *Morgan* makes clear, however, that the continuing violation doctrine should apply to pattern or practice claims to the same extent that it applies to hostile environment claims. The very nature of pattern or practice claims, like hostile environment claims, involves "repeated conduct." As the Supreme Court explained in *International Bhd. of Teamsters v. United States,* 431 U.S. 324 (1977), a plaintiff bringing a pattern or practice claim must "prove more than the mere occurrence of isolated or 'accidental' or sporadic discriminatory acts"; it must "establish … that racial discrimination was the company's standard operating procedure - the regular rather than the unusual practice." *Id.* at 336. And again like hostile environment claims, a pattern or practice claim does not "occur on any particular day. It occurs over a series of days or perhaps years …." *Morgan*, 536 U.S. at 115. In this case, plaintiffs present statistical and anecdotal evidence and evidence concerning Cargill's culture, policies, and willful refusal to correct known deficiencies that cover many years. Plaintiffs could not pick out evidence occurring on only a few particular days and possibly support their pattern or practice claims. And finally, like hostile environment claims, not every event

constituting part of the pattern or practice may be actionable on its own. For example, disparities in performance ratings between white and black employees, while critical to the pattern or practice, do not give rise to separate claims.

Thus, under the continuing violation doctrine, pattern or practice cases are indistinguishable from hostile environment cases. The continuing violation doctrine should apply equally to pattern or practice claims and hostile environment claims.[1]

Based on this same logic, courts since *Morgan* have applied the continuing violation doctrine in pattern or practice cases. In *Anderson v. Boeing Co.*, 222 F.R.D. 521 (N.D. Okla. 2004), a gender discrimination class action, Title VII's limitation period reached back, at most, to May 1, 1999. Nonetheless, the district court held that, under *Morgan*, the continuing violation doctrine could apply in pattern or practice cases. Based on the evidence presented, the court concluded that plaintiffs' claims of salary discrimination could reach back to February 5, 1999. *Id.* at 545-48. Other courts refused to dismiss claims as time-barred because plaintiffs had adequately alleged pattern or practice claims. *See Svenningsen v. College of Staten Island*, 2003 U.S. Dist. LEXIS 25816, at **3-4 (E.D.N.Y. Mar. 28, 2003); *Campbell v. National R.R. Passenger Corp.*, 222 F. Supp. 2d 8, 11 (D.D.C. 2002). In a related context, the court held in *Wallace v. Chicago Hous. Auth.*, 321 F. Supp. 2d 968 (N.D. Ill. 2004), that claims arising from actions committed prior to the Fair Housing Act's two-year limitations period "may be

[1] The fact that the claims in *Morgan* were asserted under Title VII and those in this case under section 1981 does not alter the analysis. In *Madison v. IBP, Inc.*, 330 F.3d 1051 (8th Cir. 2003), the Eighth Circuit held that the continuing violation doctrine applies to claims arising under section 1981 as well as Title VII. *Id.* at 1061. It affirmed an award of punitive damages in the hostile environment case based in part on events occurring prior to the limitations period.

timely under the continuing-violations theory where the asserted claim necessarily arises from a pattern of unlawful conduct." *Id.* at 973.[2]

Ignoring these decisions, Cargill implies that *Pruitt v. Chicago*, 2004 U.S. Dist. LEXIS 9103 (N.D. Ill. May 19, 2004), suggests that the continuing violation doctrine does not apply. Def's Mem. at 5. Besides the fact that *Pruitt* is not controlling in any way, the continuing violations doctrine was not even mentioned in *Pruitt*; and the facts do not suggest any basis for such a claim. Cargill might have done better to cite *Maki v. Allete, Inc.*, 2003 U.S. Dist. LEXIS 14500 (D. Minn. Aug. 18, 2003). Judge Montgomery at least mentioned the continuing violation doctrine in the same paragraph as pattern or practice cases. *Id.* at **18, 23. However, *Maki* was not a pattern or practice case, but a case involving a single corporate decision that affected a large number of employees in an allegedly discriminatory manner. Moreover, even if *Maki* was a pattern or practice case, the decision was reversed by the Eighth Circuit on the ground that the relevant corporate action occurred within the liability period. *Maki v. Allete, Inc.*, 2004 U.S. App. LEXIS 18813 (8th Cir. Sept. 7, 2004).

Finally, Cargill inaccurately argues that this Court already has decided that the continuing violation doctrine may not extend the limitations period in the parallel context of the Minnesota Human Rights Act. Def's Mem. at 5. Cargill confuses two situations. In its July 15, 2002 Order, the Court correctly held that a party who did not experience

---

[2] Several courts refused to apply the continuing violation doctrine because the plaintiff had failed to provide any facts to support a finding that the complained-of acts were part of a pattern or practice. *See, e.g.*, *Tademe v. St. Cloud State Univ.*, 328 F.3d 982, 988 n.4 (8th Cir. 2003); *Timothy v. Our Lady of Mercy Medical Ctr.*, 2004 U.S. Dist. LEXIS 3970, at **9-10 (S.D.N.Y. Mar. 12, 2004); *Blake v. Bronx Lebanon Hospital Ctr.*, 2003 U.S. Dist. LEXIS 13857, at **13-15 (S.D.N.Y. Aug. 7, 2003).

any discrimination during the limitations period may not resuscitate his or her claim under the continuing violations doctrine. Thus, the doctrine does not help anyone whose employment was terminated prior to the start of the limitations period. The Court, however, did not bar continuing violation claims of plaintiffs or members of the proposed class whom Cargill employed during the limitations period and who claimed that they were victims of discrimination both before and within the limitations period. Indeed, the Court recognized that "the facts of this case may allow for the application of the continuing violation theory for some individuals." July 15, 2002 Order, at 8-9.

Whether plaintiffs can prove a pattern or practice of promotion and pay discrimination that extends the liability period as to plaintiffs and proposed class members employed during the limitations period cannot be determined now as a matter of law. It should be decided as a common issue by the stage one jury. *Warren v. Xerox Corp.*, 2004 U.S. Dist. LEXIS 5115, at **62-63 (E.D.N.Y. Jan. 26, 2004).

## II. *JONES* SHOULD APPLY ONLY PROSPECTIVELY.

In *Chevron Oil Co. v. Huson*, 404 U.S. 97 (1971), the Supreme Court established a three-factor balancing test to determine whether new rules of law handed down in judicial decisions should apply prospectively only instead of having retroactive application, as is normal. As the Eighth Circuit summarized, however, *Chevron* has since been greatly limited:

> The Supreme Court, however, largely superseded *Chevron Oil* when, in *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 96-97 (1993), it enunciated a new standard for assessing when a legal principle should be applied retroactively. Under this new standard, "when [the Supreme] Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events."

*Fogie v. THORN Americas, Inc.*, 190 F.3d 889, 902 n.7 (8th Cir. 1999) (quoting *Harper v. Virginia Dep't of Taxation*, 509 U.S. 86, 97 (1993)).

In *Jones*, the Supreme Court held that the four-year statute of limitations established by 28 U.S.C. § 1658 governs claims that could not have been brought under § 1981 before that statute was amended by the Civil Rights Act of 1991 (see Part III below for a fuller discussion of *Jones*). If that ruling applied "to the parties before" the Court, then that ruling must be given full retroactive effect in this case. The majority in *Harper*, however, did not spell out when the Court "applies a rule of federal law to the parties before it." 509 U.S. at 97.

In dissent, Justice O'Connor argued that for the Court to be deemed to have "applie[d] a rule of federal law to the parties before it," the issue of retroactivity must actually be briefed and decided:

> It is one thing to say that, where we have considered prospectivity in a prior case and rejected it, we must reject it in every case thereafter. But it is quite another to hold that, because we did *not* consider the possibility of prospectivity in a prior case and instead applied a rule retroactively through inadvertence, we are foreclosed from considering the issue forever thereafter. Such a rule is both contrary to established precedent and at odds with any notion of fairness or sound decisional practice.

*Id.* at 117 (O'Connor, J., with Rehnquist, C.J., dissenting); *see also id.* at 117-22 (explaining deficiencies in a doctrine that would permit the retroactivity issue to be decided for all federal litigants when parties to the lawsuit did not address the issue). The majority in *Harper* did not respond to, and hence did not reject, Justice O'Connor's argument; it remained silent as to whether silent acquiescence in retroactivity by the parties to the lawsuit in which a new rule of law is announced is sufficient to make the

decision retroactive for everyone. This Court should follow Justice O'Connor's unrebutted logic.

The employer in *Jones* did not argue that the decision should be applied prospectively only, and the Court's opinion contained no analysis concerning the issue. Thus, the ruling in *Jones* has not been applied to the parties within the meaning of *Harper*.[3]

Without application of the ruling to the *Jones* parties, resort must be had to *Chevron Oil*'s three-factor test to decide whether the decision should be applied retroactively or prospectively. *Cf. McKinney v. Pate*, 20 F.3d 1550, 1566 (11th Cir. 1994) (deciding that *Chevron* analysis should be used to determine whether the holding that constituted new rule of law should be applied to the parties whose case gave rise to that new rule).

The three factors in *Chevron* are:

> First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, it has been stressed that "we must . . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." Finally, we have weighed the inequity imposed by retroactive application . . . .

*Chevron*, 404 U.S. at 106-07 (citation omitted).

[3] Cargill's principal argument against non-retroactive application is that a number of courts since *Jones* have applied the ruling to the cases before them. Def's Mem. at 3-4. In none of those cases, however, has the party adversely affected by application of a four-year limitations period apparently argued for prospective application under *Chevron*. Thus, this argument suffers from the same flaw as the argument that inadvertence in the decision establishing the new rule of law can establish retroactive application in all pending cases.

These factors weigh in favor of prospective application of the decision in *Jones*. First, *Jones* was the Supreme Court's first decision on the meaning of 28 U.S.C. § 1658, and its resolution "was not clearly foreshadowed." Indeed, in 2001, the Eighth Circuit ruled that the four-year period of 28 U.S.C. § 1658 did not apply to claims under § 1981. *Madison v. IBP, Inc.*, 257 F.3d 780, 797-98 (8th Cir. 2001), *vacated and remanded*, 536 U.S. 919 (2002); *see Hardin v. CNA Ins. Cos.*, 103 F. Supp. 2d 1091, 1093 (S.D. Ind. 1999) ("we adopt the majority view that § 1658 does not apply to claims arising under § 1981").

Second, Congress itself made the determination that retroactive application of § 1658 would retard its operation. The law states: "The amendments made by this section [adding this section] shall apply with respect to causes of action accruing on or after the date of the enactment of this Act." Pub. L. No. 101-650, § 313(c), 104 Stat. 5115 (1990). Moreover, simplifying judicial decision making was one of the Supreme Court's principal rationales for adopting the view that 28 U.S.C. § 1658 should govern claims under § 1981 that could not have been asserted prior to adoption of the 1991 Civil Rights Act. *Jones*, 124 S. Ct. at 1842-45. As shown in Part III below, application of *Jones* raises difficult issues concerning which limitations period should apply. Retroactive application complicates rather than simplifies resolution of cases such as this one.

Third, applying this four-year limitations period to litigants in employment discrimination cases is inequitable. Plaintiffs in cases like this relied on the longer period in filing their claims, engaging in discovery, participating in depositions, and otherwise expending extensive resources in the reasonable belief that the limitation period extends back six rather than four years. *See, e.g., McNeil v. National Football League*, 790 F.

Supp. 871, 889 (D. Minn. 1992) (weighing equities in favor of party that has expended "significant price" in reliance). Moreover, the remedial nature of § 1981 weighs in favor of not applying § 1658 to narrow the limitations period, thereby extinguishing already-filed claims. *See Fairfax Covenant Church v. Fairfax County Sch. Bd.*, 17 F.3d 703, 710 (4th Cir. 1994) ("We are struck, however, by the notable absence in *Harper* of any statement that *Chevron* is overruled for use in civil cases involving a question of 'pure' prospectivity or that all prospective decision making is prohibited.").

## III. *JONES* DOES NOT EXTINGUISH PROMOTION AND COMPENSATION CLAIMS THAT WOULD HAVE BEEN ACTIONABLE UNDER § 1981 PRIOR TO THE PASSAGE OF THE CIVIL RIGHTS ACT OF 1991.

Plaintiffs anticipate that the stage one jury will decide that Cargill engaged in a continuing pattern of discrimination in its pay and promotion decisions that reached back until at least August of 1995, if not further. If it does, then even if *Jones* applies retroactively, the issue whether the claims are governed by a four-year or six-year limitations period will be meaningful only to plaintiffs and class members whose employment terminated on or after August 22, 1995 through August 21, 1997 and who assert a pay or promotion claim during that two-year window.[4]

Cargill's argument in favor of a four-year limitations period is premised on a misstatement of the 2004 Supreme Court holding in *Jones.* According to Cargill, the Court "ruled that causes of action alleging violations of 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991, are governed by the federal catchall statute of limitations set forth at 28 U.S.C. § 1658(a) (2004)." Def. Mem. at 1. In fact, the Court held that certain

[4] Of course, if there was not a continuing violation, then the issue whether a four- or six-year limitations period governs will affect far more plaintiffs and class members.

claims alleging violations of § 1981 are subject to the four-year limitations period set forth in § 1658, while other claims are not.

Prior to 1991, § 1981 guaranteed all persons "the same right … to make and enforce contracts … as is enjoyed by white citizens." In *Patterson v McLean Credit Union*, 491 U.S. 164, 176 (1989), the Supreme Court held that "the right to make and enforce contracts" in § 1981 extended only to the formation of contracts but not to the administration of contracts. Congress overturned that result prospectively in the 1991 Civil Rights Act, adding subsection (b) to § 1981, which defines "make and enforce contracts" to include the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

Section 1981 does not contain an express limitations period. In 1990,[5] Congress adopted 28 U.S.C. § 1658, which provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues." In *Jones*, the Supreme Court held that § 1658(a) applied to claims that were not cognizable under § 1981, as interpreted in *Patterson*, prior to adoption of the Civil Rights Act of 1991. 124 S. Ct. at 1845-46. The Eighth Circuit recently summarized the current state of the law in *Jackson v. Homechoice, Inc*, 368 F.3d 997 (8th Cir. 2004):

> the four-year statue of limitations set forth in 28 U.S.C. § 1658 applies to any claim that was made possible by an Act of Congress enacted after December 1, 1990. Thus, any claim created by the Civil Rights Act of

[5] Cargill erroneously states that § 1658 was enacted in 1999, not 1990. Def. Mem. at 2. The existing section was redesignated subsection (a) in 2002, and a new subsection (b), irrelevant to this case, was added.

> 1991, which expanded the scope of section 1981, is governed by a four-year limitations period.

*Id.* at 999.

The critical question after *Jones* is whether plaintiffs' claims were cognizable under § 1981 prior to 1991. Certainly, some of them could have been asserted under the pre-1991 version of § 1981.

### A. Promotion Claims that Were Actionable Under *Patterson* Are Subject to the Six-Year Statute of Limitations.

In *Patterson***,** the Supreme Court determined that:

> whether a promotion claim is actionable under § 1981 depends upon whether the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer. . . . Only where the promotion rises to the level of an opportunity for a *new and distinct relation* between the employee and the employer is such a claim actionable . . . .

*Patterson*, 491 U.S. at 185 (emphasis added); *see also Winbush v. Iowa by Glenwood State Hosp.*, 66 F.3d 1471, 1486 (8th Cir. 1995) (recognizing that whether promotion claim could have been asserted prior to 1991 under § 1981 depends on whether it would have created the opportunity for a "new and distinct relation"). Thus, a plaintiff could have brought a claim over a discriminatorily-denied promotion that "rises to the level of an opportunity for a new and distinct relation" under § 1981 even before passage of the Civil Rights Act of 1991.

Under *Jones*, claims over such lost promotions in this case are governed by the six-year statute of limitations. Claims arising out of discrimination associated with other lost promotions are subject to the four-year statute set out in 28 U.S.C. § 1658 as well as whatever extension of the limitation period results from successful litigation of plaintiffs' continuing violation claim.

The Supreme Court did not attempt to define when a promotion "rises to the level of an opportunity for a new and distinct relation." The Eighth Circuit, relying on decisions from other circuit courts, has provided guidance:

> "[*Patterson*] strongly suggests that, in addition to an increase in pay and duties, an actionable promotion claim must involve a meaningful, qualitative change in the contractual relationship." *Sitgraves v. Allied-Signal, Inc*., 953 F.2d 570, 573 (9th Cir. 1992) (noting as examples of actionable promotion claim moves from non-supervisory to supervisory position and from hourly to salaried compensation); see *Rodriguez v. General Motors Corp.*, 27 F.3d 396, 399-400 (9th Cir. 1994) (holding essentially lateral change not actionable refusal to promote); *Butts v. City of New York Department of Housing Preservation & Development*, 990 F.2d 1397, 1411-12 (2d Cir. 1993) (*Butts*) (noting inquiry should not be confined to job titles but should examine actual changes in responsibility and status); cf. *Winbush v. Iowa*, 66 F.3d 1471, 1477 (8th Cir. 1995) (issue noted but not decided).

*Kim v. Nash Finch Co.*, 123 F.3d 1046, 1055 (8th Cir. 1997); *see Fray v. Omaha World Herald Co.*, 960 F.2d 1370, 1373 (8th Cir. 1992) (also quoting *Sitgraves v. Allied-Signal, Inc.*, 953 F.2d 570, 573 (9th Cir. 1992), that, to qualify under pre-1991 version of § 1981, promotion "must involve a meaningful, qualitative change in the contractual relationship"); *Conerly v. CVN Cos.*, 785 F. Supp. 801, 809 (D. Minn. 1992) (Doty, J.) (concluding, in a pre-*Fray* decision, that to qualify under pre-1991 version of § 1981, promotion must entail "a fundamental change in the employment relationship, such as a promotion from a nonsupervisory to a supervisory position), *aff'd*, 34 F.3d 1070 (8th Cir. 1994).[6]

---

[6] The recent Eighth Circuit decision, *Jackson*, 368 F.3d 997, cited by Cargill, does not overrule the holding in *Kim*, 123 F.3d 1046, that some types of promotion claims were cognizable under the pre-1991 version of section 1981. The claims in *Jackson* involved discriminatory termination, hostile environment, and retaliation, not discriminatory promotion. The only case that Cargill cites that arguably suggests that failure to promote claims could not have been asserted under section 1981 prior to adoption of the Civil Rights Act of 1991 is *Lakshman v. University of Maine System*, 2004 U.S. Dist. LEXIS

In *Sitgraves*, the decision quoted twice by the Eighth Circuit, the court explained that "a meaningful, qualitative change in the contractual relationship" occurs when a promotion involves a change in "one or more" of the following: "the addition of supervisory duties; a change in the manner in which the contractual relationship can be terminated; a change in the method of compensation and acquisition of potential liability for firm obligations." 953 F.2d at 573; *see also Hooks v. Diamond Crystal Specialty Foods*, 997 F.2d 793, 802 (10th Cir. 1993) (characterizing *Sitgraves* analysis as "both thorough and persuasive").

Whether resort is had to the examples in *Kim* or the standard in *Sitgraves*, some promotions at issue in this case clearly would be actionable under the pre-1991 version of § 1981 as entailing "a new and distinct relation." Many of the actionable promotions will be identifiable on a categorical basis, as in promotions involving movement from non-exempt to exempt status or from non-supervisory to supervisory responsibilities.[7] Whether any remaining promotions from that time period are actionable can be determined at the second phase of trial. *See Butts v. New York Dep't of Taxation*, 990 F.2d 1397, 1412 (2d Cir. 1993) (disposition of § 1981 promotion claim is inappropriate at pleadings stage because some factual information about the claims is needed).

---

15579 (D. Me. Aug. 6, 2004). However, *Lakshman* contains no analysis on this issue, and it is unclear whether the court ruled that the four-year limitations period applied because it thought that no promotion claims were cognizable pre-1991 or because it concluded that the promotion in issue would not have involved a "new and distinct relation." Even if the *Lakshman* court incorrectly believed the former, it could not overrule the Eighth Circuit, let alone the Supreme Court.

[7] Determination of these categories may be accomplished by stipulation or briefing to the Court.

**B. Compensation Claims that Were Actionable Under *Patterson* Are Subject to the Six-Year Statute of Limitations.**

The Supreme Court's decision in *Patterson* likewise makes clear that some claims of discrimination in pay were cognizable under the version of § 1981 in effect prior to passage of the Civil Rights Act of 1991. Justice Brennan dissented from the decision in *Patterson*, arguing that "racial harassment is actionable under [the then-version of] § 1981 when 'the acts constituting harassment [are] sufficiently severe or pervasive as effectively to belie any claim that the contract was entered into in a racially neutral manner.'" *Patterson*, 491 U.S. at 184. The majority replied:

> The fact that racial harassment is "severe or pervasive" does not by magic transform a challenge to the conditions of employment, not actionable under § 1981, into a viable challenge to the employer's refusal to make a contract. We agree that racial harassment may be used as evidence that a divergence in the explicit terms of particular contracts is explained by racial animus. *Thus, for example, if a potential employee is offered (and accepts) a contract to do a job for less money than others doing like work, evidence of racial harassment in the workplace may show that the employer, at the time of formation, was unwilling to enter into a nondiscriminatory contract. However, and this is the critical point, the question under § 1981 remains whether the employer, at the time of the formation of the contract, in fact intentionally refused to enter into a contract with the employee on racially neutral terms.*

*Id.* (emphasis added, footnote omitted).

Thus, the Supreme Court made clear that an employer's discrimination in pay offered at the time of contracting could be actionable under the pre-1991 version of § 1981. The time of contracting, as discussed above, includes both initial hire and, relevant to the claims here, any promotion that involves a "new and distinct relation." Accordingly, any discrimination in pay increase accompanying promotions received by African-American employees that involve a "new and distinct relation" are actionable under the pre-1991 version of § 1981 and are therefore subject to a six rather than four-

year statute of limitations. Again, many of the promotions that may have actionable pay claims under *Patterson* will be identifiable on a categorical basis, as in promotions involving movement from non-exempt to exempt status or from non-supervisory to supervisory responsibilities. Whether any remaining pay increase claims from that time period are actionable because they are connected to promotions involving a "new and distinct relation" can be determined at the second phase of trial.

## **CONCLUSION**

Based on the arguments above, plaintiffs respectfully request the Court to deny Cargill's Motion to Reconsider and to order that:

1. *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. ___, 124 S. Ct. 1836 (2004) does not extinguish promotion and compensation claims of current and former Cargill employees, who were employed at Cargill on or after the beginning of the liability period, where those promotion and compensation claims pre-date the liability period *and* occurred during any continuing violation period proved during the first phase of trial;

2. The holding regarding 28 U.S.C. § 1658 in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. ___, 124 S. Ct. 1836 (2004), applies only prospectively to cases arising under 42 U.S.C. § 1981; and

3. 28 U.S.C. § 1658 does not apply to promotion and pay increase claims related to promotions that involve a "new and distinct relation" as articulated in *Patterson v McLean Credit Union*, 491 U.S. 164, 185 (1989).