**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Margo Harvey, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Civil No. 01-2086 (DWF/AJB)

Plaintiffs,

v.

**MEMORANDUM OPINION AND ORDER**

Cargill Incorporated,

Defendant.

---

Lawrence P. Shaefer, Esq., Susan M. Coler, Esq., and Teresa Kathleen Patton, Esq., Sprenger & Lang, 325 Ridgewood Ave., Minneapolis, MN 55403; Michael P. Lieder, Esq., Paul Carl Sprenger, Esq., and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th St. NW, Washington, DC 20009, counsel for Plaintiffs.

Holly S. A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan, Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., and Ryan E. Mick, Esq., Dorsey & Whitney, 50 6th St. S., Ste. 1500, Minneapolis, MN 55402-1498, counsel for Defendant.

Peter N. Thompson, Esq., Hamline Law School, 1536 Hewitt Ave., St. Paul, MN 55104, Special Master.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on August 13, 2004, pursuant to Defendant Cargill, Inc.'s ("Cargill") Motion to Dismiss, Disqualify, and Impose Additional Sanctions. For the reasons set forth below, Cargill's motion is granted in part and denied in part. The law firm of Sprenger & Lang is hereby disqualified from further representation of Plaintiffs in this case.

## Background

### I. Parties and Claims Alleged

Plaintiffs include current and former African American managers and professional employees. Plaintiffs are alleging a class action on behalf of themselves and, pursuant to Federal Rule of Civil Procedure 23, the following class: "All salaried African Americans through salary grade 15 who were employed by Cargill at any time during the liability period." By its Complaint, Plaintiffs allege that Cargill has engaged in systematic discrimination in violation of federal and state civil rights laws, namely by fostering an exclusionary culture that affects its own systems for performance appraisal, advancement, compensation and termination. Plaintiffs' allegations relate primarily to the company-wide systems purportedly implemented to standardize advancement and compensation procedure. Such systems include the "Key Employee Identification System" ("KEIS"), the "Selection Grid Process," the "Performance Management Process" ("PMP"), "Management by Objectives," and Cargill Leadership Development Program ("CDLP").

Defendant Cargill is a large, privately held Delaware corporation, headquartered in Wayzata, Minnesota. Cargill is an international marketer, processor and distributor of

agricultural, food, financial and industrial products and services. Cargill employs approximately 97,000 people in 59 countries.

The law firm of Sprenger & Lang ("S&L") represents Plaintiffs. S&L began investigating the possibility of litigating this race discrimination class action lawsuit in the summer of 2000. This case was commenced in November 2001.

## II. Facts Relevant to this Motion

Lawrence Schaefer, a partner at S&L, is the lead attorney representing Plaintiffs and the putative class in this action. (*See* Declaration of Lawrence P. Schaefer Regarding Deposition of R. Bill Douglas, dated May 2, 2003, ("Schaefer Decl. I"), ¶ 1.) Prior to initiating this suit, S&L represented other parties litigating discrimination suits against Cargill. (*Id.* at ¶ 6.) One of these cases involved discrimination claims on behalf of two salaried female employees which allegedly arose from the same human resources systems that Plaintiffs challenge here. S&L also represented plaintiffs in a class-action case, *Foster v. Cargill, Inc.*, Civ. No. 3-82-1829 (D. Minn.), which involved allegations of racial and gender discrimination.

### A. S&L's Dealings with Douglas

Ray Bill Douglas ("Douglas") worked for Cargill for 22 years and was a Cargill manager for several years. His positions included Corporate EEO Director and senior manager of Human Resources for Cargill's Food Sector. During his tenure at Cargill, Douglas worked with both Cargill's in-house law department and Cargill's outside counsel at Dorsey & Whitney. Douglas testified that he routinely spoke with Cargill attorneys about issues involving employment law and discrimination claims and had access to documents regarding the same. Douglas also assisted the Cargill defense team in *Foster v. Cargill*. By virtue of the work he performed at

Cargill, Douglas possessed information that was privileged and confidential to Cargill and had "knowledge of Cargill's litigation theory." (*See* Declaration of Michael Iwan, dated June 18, 2004 ("Iwan Decl. I."), at ¶ 2, Ex. C at 17-22, 45, 116, 201-02, 216-17.)

Plaintiffs question the extent of Douglas' access to Cargill's attorney-client communications. Specifically, Plaintiffs argue that Douglas was never an officer at Cargill, his position as Corporate EEO Manager ended in 1985 (about 10 years prior to the liability period here), and that Cargill's lengthy privilege log contains only three documents referencing Douglas that fall within the liability period.

Douglas accepted an early retirement package from Cargill, which was finalized in January 1998. The package included a $60,000 annual pension and a Release and Settlement Agreement ("Release") prohibiting Douglas from bringing any legal or administrative claims against Cargill. Douglas contacted S&L in 1998 for advice about whether a consulting opportunity conflicted with the terms of the Release he signed upon departing Cargill. (*See* Schaefer Decl. I at ¶ 3.) During this consultation, Douglas also inquired into whether he could "reopen[]" or "undo" his Release with Cargill. (*See* Iwan Decl. I. at ¶ 2, Ex. C at 26.) There is no evidence in the record that S&L ever suggested in 1998 that the Release was unenforceable. Both parties agree that this initial contact consisted of one meeting and was limited in its nature.

S&L approached Douglas in July 2000 for the purpose of obtaining information regarding Cargill's employment practices as part of its investigation of this suit. That S&L initiated this contact is amply supported by notes taken by S&L personnel. (*See* Iwan Decl. I at ¶ 2, Ex. C at Exs. 10, 11; Declaration of Michael Iwan, dated August 12, 2004 ("Iwan Decl. II"), at ¶ 2, Ex. A.) S&L immediately learned that Douglas possessed information that could assist

them in their investigation. According to S&L's own notes, on July 6, 2000, Douglas explained in a telephone interview:

> I have docs from case Paul Sprenger filed - [Foster] lawsuit brought against Cargill. There's a lot that Paul Sprenger missed. I could give you names, but I have to ask - in absolute terms - that I not be identified with having provided this information.... But, I know much. It's all probably the same now as it was then.

(*See* Iwan Decl. I at ¶ 2, Ex. C at Ex. 11)(emphasis in original.)

After being contacted by S&L, Douglas participated in the investigation and preparation of this litigation. It is undisputed that Douglas identified names of current and former African American Cargill employees whom S&L could contact, personally contacted witnesses and potential class members, and reviewed and commented on the Complaint. Douglas also explained, and provided documents related to, the internal employment related systems within Cargill that S&L was investigating, such as the KEIS, PMP, and CDLP systems.

On November 27, 2000, S&L attorney David Schulman ("Schulman") conducted a phone interview with Douglas, during which Schulman learned that Douglas had a box of Cargill documents.[1] Douglas agreed to provide these documents to S&L. Some of these documents were marked "Privileged and Confidential." When asked whether Schulman told Douglas to separate out privileged documents and not to bring them to S&L's offices, Douglas answered: "Not to my recollection. No, not to my recall he did not." (*See* Iwan Decl. I at ¶ 2, Ex. C at 342.) Douglas also testified that when he specifically asked what to do with documents labeled confidential or privileged, he was instructed to send all documents to S&L's offices and was told

[1] According to his own notes, Schulman learned that "Bill has a box of documents from his days at Cargill. He said that he needed to start looking through them. I encouraged him to do so, and we agreed that he would pass on to us anything that he thinks might be of interest." (*See* Iwan Decl. at ¶ 2, Ex. C at Ex. 13.)

that they would "sort them out." (*See id.* at ¶ 2, Ex. C at 99-100.) A portion of his testimony reads as follows:

> . . . I was invited to bring all the documents, including those that were privileged, to S&L's office and help and/or assist, and a space or place to sort through them.

(*Id.* at ¶ 2, Ex. C at 336-37.)

Schaefer claims that at the outset of his interactions with Douglas, he "emphatically and unequivocally" instructed Douglas not to disclose any "confidential or attorney-client communications." (*See* Schaefer Decl. I at ¶ 5.)[2] Douglas' testimony contradicts this. (*See* Iwan Decl. I at ¶ 2, Ex. C at 337.) There is no evidence that S&L cautioned Douglas in writing at any time.

Douglas produced all Cargill documents in his possession to S&L (totaling about 2,000 pages) beginning in November 2000 (*see* Schaefer Decl. I at ¶ 8), and met with S&L on four to six occasions to go over them. (*See* Iwan Decl. I at ¶ 2, Ex. C at 39-40, 42, 99-100.)[3] There is no direct evidence that Douglas ever specifically discussed the substance of the privileged

---

[2] Sean Wright, a witness and named plaintiff, stated that Schaefer gave a similar instruction in Douglas' presence at a meeting in December 2000. (*See* Declaration of Sean Wright at ¶ 3.) Douglas does acknowledge that he heard certain rules prohibiting disclosure of privileged documents and stated: "I've heard it- it was brought up, I think, in a meeting, at a meeting in that context. But to me directly, one-on-one, not that I recall." (*See* Iwan Decl. I at ¶ 2, Ex. C at 339.) Based on the corroborating declaration of Sean Wright, it is likely that Douglas was referring to the December 2000 meeting. There is no indication that this meeting occurred prior to S&L's receipt of Cargill documents marked privileged and confidential in November 2000.

[3] S&L claims that the privileged documents were segregated out and returned to Douglas prior to these meetings. Douglas acknowledges that at least "some of them" were returned, but left open the possibility that not all privileged documents were returned. (*Id.* at 2, Ex. C at 46-47, 270-81.) Douglas testified that "any documents that were returned to me were not returned to me by December 2001." (*See id.* at 2, Ex. C at 336.)

documents with S&L attorneys. During Douglas' deposition, attorneys for Cargill never asked him whether he had reviewed any allegedly "privileged" materials with S&L. Cargill's attorneys did ask whether Douglas had "go[ne] over" all the documents he had produced with Schaefer, including documents that "were confidential" or "from the law department." Douglas replied:

> No, no. The documents that I recall most clearly presently were involved with the key areas or the key programs that he wanted to know more about. One was, like I indicated, CLDP, the Cargill leadership development program; the KEIS initiative; oh, PMP; the selection grid; and there may have been another one, but those, I think that was the bulk of it, the crux of it.

(*Id.* at ¶ 2, Ex. C at 42-43; *see also* Declaration of Lawrence P. Schaefer, dated August 3, 2004 ("Schaefer Decl. II"), at ¶ 6, Douglas at 374-75.) However, Douglas testified earlier that "there were documents that clearly I had gone over with Larry, . . . whether it was confidential or not, I can't recall . . . ." (*See* Iwan Decl. I. at ¶ 2, Ec. C at 96.)

Eventually, S&L realized that certain documents provided by Douglas were marked "Privileged and Confidential" or "otherwise appeared to originate from, or be directed to, internal or outside legal counsel for Cargill." (*See* Schaefer Decl. I at ¶ 11.) Schaefer claims not to have reviewed them substantively, except for noting the dates of the documents and the "designation or the indication on the face of the document that legal counsel authored or received the document." *Id.* Schaefer asserts that he segregated out and returned approximately 200 to 300 documents to Douglas. (*See* Schaefer Decl. I at ¶ 8; Declaration of Susan M. Coler in Support of Motion to Quash at ¶ 5.) S&L did not immediately inform Cargill that it was in possession of its confidential and privileged documents.

Schaefer claims that he instructed the paralegal working on the matter not to retain copies of the segregated documents and to return them to Douglas. (*See* Schaefer Decl. I at ¶ 12.)

Despite this instruction, however, an unidentified "case clerk" for S&L did make and store a copy of the documents marked privileged or confidential. (*See id.* at ¶ 16.) When questioned during oral argument, counsel for S&L was unable or unwilling to identify the case clerk.

S&L also claims that it was unaware that the documents had been copied and retained until June 2002, when the copies of Cargill's documents were rediscovered. On July 15, 2002, approximately 18 months after they were received, S&L sent a package containing the rediscovered documents to counsel for Cargill. (*See* Schaefer Decl. I at ¶ 18.) Before doing so, S&L received an advisory opinion from the Minnesota Lawyers Board of Professional Responsibility, which indicated that S&L's ethical obligation could be interpreted to include returning the documents to Cargill, the potential privilege holder. (*See id.*)

During a phone conversation between counsel for the parties within days of counsel for Cargill's receipt of the documents, Janice M. Symchych, one of Cargill's outside counsel, told Schaefer that she believed she knew the source of the documents and intended to seek full legal recourse for the alleged privilege breach. (*See* Affidavit of Janice M. Symchych at ¶ 5.) Soon thereafter, Schaefer called Douglas. Douglas then disposed of all Cargill records in his possession. What was said during this phone conversation is contested. Douglas testified that S&L told him to destroy Cargill's privileged and confidential documents before Cargill could subpoena them:

> MS. COLER: Mr. Douglas. My question is what precise words do you recall, or do you claim Mr. Schaefer said to you with regard to what you should do with those records?
>
> MR. DOUGLAS: Toss the records. Get rid of them.

(*See* Iwan Decl. I at ¶ 2, Ex C at 379-80; *see also id.* at 104-05.)

Plaintiffs deny that Schaefer instructed Douglas to throw the documents away. Plaintiffs claim that when Schaefer informed Douglas that S&L had inadvertently copied and retained a copy of the documents, and that S&L was going to turn these documents over to Cargill and its attorneys, Douglas became very angry. Plaintiffs suggest that Douglas may have tossed the documents out of anger and frustration or even faulty memory. It is undisputed that soon after this phone call, Douglas deposited the Cargill documents that had been returned by S&L into the trash. Douglas' testimony was subpoenaed by Cargill on March 4, 2003.

After discovering that S&L had been in possession of Cargill documents marked confidential and privileged, Cargill launched what became a protracted effort to depose Douglas and elicit discovery from S&L to account for how the documents came into their possession. On June 27, 1993, Magistrate Judge Arthur J. Boylan ordered Douglas to appear for two days of deposition and to answer all of Cargill's inquiries regarding his interaction with S&L, regardless of any claim of attorney-client privilege by S&L. *See Arnold v. Cargill*, *Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op., (D. Minn. June 27, 2003) (Boylan, M.J.) (the "June 27, 2003, Order).

During the first day of deposition testimony, Douglas' testimony raised several serious ethical issues, one being that S&L instructed Douglas to destroy copies of Cargill confidential and privileged documents. Counsel for Cargill suspended the deposition and promptly wrote the Court to apprise it of Mr. Douglas' testimony and to seek guidance. (*See* Iwan Decl. at ¶ 2, Ex. G.) The Court acknowledged Cargill's right to seek additional discovery from S&L as a prelude for a possible motion to disqualify and/or dismiss the action. (*See* Iwan Decl. at ¶, Ex. H.)

Cargill served subpoenas for documents and testimony, which S&L promptly moved to quash. On November 26, 2003, the Court ordered S&L to respond to the document requests and

ordered Cargill to complete Douglas' deposition after receipt of those responses. *See Arnold v. Cargill*, *Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op., (D. Minn. November 26, 2003) (Boylan, M.J.). Ultimately, Douglas' deposition was completed on May 10, 2004.

Cargill claims, for purposes of this motion, that Plaintiffs' counsel wrongfully solicited, received, reviewed, retained and transferred Cargill's confidential and privileged documents, and that Plaintiffs' counsel bears the responsibility for the subsequent destruction of those documents. Moreover, Cargill claims that Plaintiffs' counsel have and are employing similar tactics with non-parties and unrepresented persons in this action. Because of these improprieties, Cargill argues that the case has been tainted and that the Court should disqualify Plaintiffs' counsel, dismiss the Complaint, impose monetary sanctions, and award Cargill the costs and fees incurred in defending this action to date.

**Discussion**

## I. Standard of Review

Disqualification is committed to the trial court's discretion. *See Jenkins v. State of Missouri*, 931 F.2d 470, 484 (8th Cir. 1991). This discretion is especially broad in class action cases. *See id.* "Disqualification is an ethical, not a legal matter, and it is in the public's interest, as well as the client's interest. *In re Potash Antitrust Litigation*, Civ. No. 3-93-197, MDL 981, 1993 WL 5403013 at *16 (citation omitted). Among the factors to be considered in determining whether S&L's conduct warrants disqualification are "the Court's duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings." *Id.* (citing *United States v. Agosto*, 675 F.2d 965, 969 (8th Cir. 1982)). In addition, a party has an "interest in a trial free from even the *risk* that confidential information has been unfairly used

against it." *Id.* (emphasis in the original). Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial. *See id.* at *16. Finally, "any doubt must be resolved in favor of disqualification." *Id.*; *see also Olson v. Snap Prods., Inc.,* 183 F.R.D. 539, 542 (D. Minn. 1998).

The Minnesota Rules of Professional Conduct govern the attorneys' conduct in this case. *See* D. Minn. L.R. 83.6(d)(2). Cargill argues that S&L violated its ethical obligations by: (1) suggesting that Douglas might stand to benefit financially from this suit, despite their knowledge to the contrary, to gain his cooperation; (2) soliciting improper assistance from Douglas and inducing a breach of Cargill's confidences and privileges by using methods of obtaining evidence that violate Cargill's rights; (3) conducting their own "privilege review" and returning privileged documents to Douglas rather than Cargill; (4) contributing to the destruction of Cargill documents; (5) violating their duty of candor to this Court; and (6) inappropriately contacting class members.[4]

While the Court will refer to specific rules of professional conduct throughout this order, where appropriate, the Court also notes that the Minnesota Rules of Professional Conduct are not intended to be an exhaustive list of prohibited conduct. The Preamble of the Professional Rules of Conduct provide:

> The Rules do not, however, exhaust the moral and ethical consideration that should inform a lawyer, for no worthwhile human activity can be completely defined by legal rules. The Rules simply provide a framework for the ethical practice of law.

---

[4] In its motion, Cargill claims S&L has violated a host of ethical obligations. Most are discussed in the body of this opinion. However, several, which are cited without discussion or meaningful argument, will not be considered herein.

It is this Court's inherent power, authority, and duty to ensure the administration of justice and the integrity of the litigation process. *See, e.g., Capellupo v. FMC Corp.*, 126 F.R.D. 545, 551 (D. Minn. 1989). Moreover, "[t]hese powers are 'governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)).

## II. Ethical Considerations

### A. Cargill's Solicitation of Assistance from Douglas

Cargill suggests that S&L violated several ethical and confidentiality obligations while soliciting assistance from Douglas.

#### (1) Rule of Professional Conduct 4.1

Cargill argues that S&L violated Rule of Professional Conduct 4.1, which provides: "In the course of representing a client a lawyer shall not knowingly make a false statement of fact or law." Cargill asserts that S&L improperly ingratiated themselves to Douglas, who S&L has claimed remained a client, by suggesting that he might stand to gain in any recovery or settlement of this action when they knew Douglas was not eligible to participate in the class action. Cargill argues that S&L knew Douglas was not eligible to participate because he signed the Release with Cargill and was never within the putative class identified in the Complaint because he held a salary position above grade 15.

As late as March 18, 2003, Schaefer sent Douglas a detailed letter prior to his deposition, wherein he stated:

> It is our position that you are a potential class member in this case who, despite having signed a release, may be eligible and elect to participate in class-wide relief should this be awarded by judgment or settlement.

(*See* Iwan Decl. at ¶ 2, Ex. C at Ex. 9.) At this point, this Court had ruled that two individuals who–like Douglas–had signed and not rescinded a release of claims upon termination of their employment with Cargill could not participate in this litigation. *See Arnold v. Cargill, Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op., (D. Minn. May 16, 2002). Accordingly, Cargill argues that S&L violated its general duty of candor and truthfulness and its obligations toward unrepresented parties.

S&L denies that it violated its duty of candor and truthfulness, arguing that the firm had "good reason to believe" that Douglas could benefit financially from the suit. (*See* Plaintiffs' Memorandum in Response to Defendant's Motion Dismiss, Disqualify, and Impose Additional Sanctions at 20.) First, S&L asserts that it decided late in the investigatory process to limit the putative class to persons in grades 15 or below, which eliminated Douglas, and that Plaintiffs tried to amend the Complaint to expand the class in a way which would have included Douglas. Second, S&L claims that it believed Douglas' Release was unenforceable. Finally, S&L claims that Douglas did not need any encouragement to participate and was not motivated by financial considerations.

The Court finds S&L's ongoing representations to Douglas that he might stand to gain financially from this suit troublesome for several reasons. First, Douglas signed the Release in 1998, which has not been rescinded. On July 15, 2002, this Court ruled that a named plaintiff who--like Douglas--had signed a release was, as a matter of law, ineligible to participate in the class action. Moreover, despite the fact that during his initial consultation with S&L in 1998

Douglas inquired into whether he could "reopen[]" or "undo" his Release with Cargill (*see* Iwan Decl. I. at ¶, Ex. C at 26), there is no evidence in the record that S&L ever suggested at this time that the Release was unenforceable. Second, Douglas has never been within the defined putative class. The Court recognizes that S&L did make a motion to amend the Complaint to remove the ceiling on their class definition, which was denied on June 30, 2003. However, in making that motion, Plaintiffs acknowledged that Douglas had signed a release "that would likely prevent [him] from being [a] class member[]." (*See* Declaration of Teresa K. Patton dated May 7, 2003, ¶ 4.) Therefore, S&L clearly understood that even if their motion to amend the Complaint was granted, Douglas could not participate.

The Court finds that regardless of whether S&L was justified in claiming that Douglas stood to gain financially from this suit at the initial stages of the investigation, there is no justification for S&L's continued representations as the suit progressed.[5] The representation contained in Schaefer's March 18, 2003, letter to Douglas is particularly troubling because it disregarded the reality that Douglas was not eligible to participate in this suit. Accordingly, the Court finds that S&L violated Rule 4.1.

**(2) Rule of Professional Conduct 4.4**

Cargill asserts that S&L improperly induced a breach of Cargill's confidences and privileges by using methods of obtaining evidence that violate the legal rights of a non-client under Rule 4.4. Specifically, Cargill claims that by soliciting privileged and confidential

[5] The Court accepts the fact that S&L never promised Douglas that he would benefit from this suit. However, S&L need not have promised anything to violate Rule 4.1.

information from Douglas, it sought to obtain information in opposition to Cargill's rights to confidentiality and privilege.

The Court finds that Douglas' entire relationship with S&L was based on his knowledge of Cargill that was relevant to this suit. At least some of the information possessed by Douglas (documents and otherwise) was privileged and/or confidential to Cargill. This is not simply a situation where Plaintiffs' counsel contacted a prospective witness with knowledge of underlying facts relevant to their investigation. Here, S&L cultivated its relationship with Douglas, a former highly placed employee of Cargill who had extensive knowledge of the systems at issue in this suit and Cargill's past litigation strategies in similar cases, precisely because he possessed a wealth of relevant information.

S&L argues correctly that Rule 4.4 does not prohibit S&L from obtaining information from Douglas, a former corporate manager. In light of the evidence, which demonstrates that Douglas was not eligible to participate in this litigation, S&L should have (and claims to have) treated Douglas as a witness from the start. That being the case, S&L was obligated to advise Douglas that he could not disclose privileged communications. *See FleetBoston Robertson Stephens, Inc. v. Innovex, Inc.*, 172 F. Supp. 2d 1190, 1195 (D. Minn. 2001).

Despite S&L's aggressive pursuit of the documents in Douglas' possession, there is no evidence, other than the declaration of Schaefer, that anyone at S&L ever explained to Douglas *at or prior to the time* Douglas gave S&L his Cargill documents, that privileged documents were to be excluded. In fact, it appears that S&L actually encouraged Douglas to send over to its offices "any documents" pertaining to Cargill, including privileged documents. In fact, Douglas testified that he asked S&L what to do with documents marked privileged and confidential and

was told to send them all over to S&L and told that they would go through them. (*See* Iwan Decl. at ¶ 2, Ex. C at 39-40.) Moreover, there is no evidence that S&L ever cautioned Douglas in writing or "one-on-one." (*See id.* at ¶ 2, Ex. C at 339.)

The Court finds that S&L knew that Douglas was extensively exposed to confidential and privileged information, including information learned through regular contact with Cargill's in-house and outside legal teams. The Court also finds that S&L made no meaningful effort to protect Cargill's confidences and that S&L eventually came into possession of documents marked privileged and confidential.

Plaintiffs deny that S&L substantively reviewed documents marked privileged and confidential and that Douglas never discussed the substance of these documents with S&L. Those denials, however, ring-hollow for two reasons. First, considering Douglas' regular interactions with Cargill's legal representatives and the fact that he is not trained in the law, he was not in a position to determine what Cargill information was discloseable and what was not discloseable without assistance of counsel. Moreover, it is conceivable, if not likely, that privileged and confidential information was disclosed by Douglas in conversation, even if unconsciously. Second, the Court's concern that privileged and confidential information was indeed disclosed and discussed, is not assuaged by S&L's assertions to the contrary. *See, e.g., MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F. Supp. 712 (D. Conn. 1991).

Accordingly, this Court finds that S&L violated Cargill's confidentiality rights as prohibited by Rule 4.4.

**(3) Rule of Professional Conduct 4.2**

Cargill suggests that S&L violated Rule of Professional Conduct 4.2. Rule 4.2 bars a "lawyer from communicat[ing] about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter." When the party is an organization, the Rule:

> prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admission on the part of the organization.

52 Minn. Stat. Ann., Rules of Prof. Conduct, Rule 4.2, Comment (emphasis added).

There can be no dispute that Douglas, when employed by Cargill, held positions in the organization that would place him within the scope of the Rule. The question, therefore, is whether this Rule applies to former employees. The Eighth Circuit has not settled the issue of whether *ex parte* communications with former managerial employees of an adverse party violates Rule 4.2. A majority of courts have held that, in general, Rule 4.2 does not bar *ex parte* communications with an adversary's former employee who is not represented. *See Snap Prods*, 183 F.R.D. at 544 (citations omitted). A minority of courts have prohibited contact with the former employees of adverse parties. *See, e.g., Camden v. State of Maryland*, 910 F. Supp. 1115, 1121 (D. Md. 1996).

Because of the close relationship between Rule 4.2 and rules protecting against the disclosure of attorney-client privileged information, courts in this district have adopted a flexible approach to prevent privileged information from being disclosed to an adverse party in the

context of lawyer contact with a former managerial employee. *See Snap Prods.*, 183 F.R.D. at 544-45; *see also FleetBoston*, 172 F. Supp. 2d at 1195.

In *Snap Prods.*, the court considered a party's motion to disqualify opposing counsel based on counsel's *ex parte* communication with former employees, including a former vice-president and a former C.E.O. of the adverse party. *See Snap Prods.*, 183 F.R.D. at 544. The court noted the majority rule, but recognized that other courts have been "concerned with the unfairness of litigants being able to obtain the sensitive information of an opponent from the opponent's past employees[.]" *Id.* The court declined to adopt a "bright-line" rule, and instead held that the key factor in evaluating the propriety of a lawyer's conduct under Rule 4.2 with respect to former managerial employees is the likelihood that any privileged matters were intruded upon. *Id.* at 545; *see also FleetBoston,* 172 F. Supp. 2d at 1195 (citing *Snap Prods.* with approval and adopting this approach). In *Snap Prods.*, the attorneys involved did not ask former employees to discuss privileged matters and there was no evidence that privileged matters were disclosed or discussed; the court accordingly declined to find a violation of Rule 4.2. *Id*. In doing so, however, the court cautioned that "as a prospective matter . . . an attorney's discussions with former members of an . . . opponent's management could intrude upon privileged matters, which would not be permissible under Rule 4.2." *Id.*

Unlike in *Snap Products*, here there is no dispute that hundreds of Cargill documents marked privileged and confidential were given to S&L by Douglas. In addition, Douglas testified that Schaefer and Douglas had at least one conversation about an in-house attorney that Douglas had worked with while at Cargill, during which Cargill's investigation and litigation processes were discussed. (*See* Schaefer Decl. II at ¶ 6, Douglas at 351-53.) The evidence

before this Court also demonstrates that S&L took grossly inadequate measures to prevent the disclosure of privileged information from Douglas. (*See* discussion above.) There can be no question that S&L's discussions and exchange of information with Douglas did impermissibly intrude upon privileged matters. Therefore, this Court finds that S&L violated Rule 4.2.[6]

**B. S&L's Review and Retention of Confidential and Privileged Documents**

Cargill argues that even after recognizing that it was in possession of documents marked confidential and privileged, it was improper for Schaefer to conduct his own privilege review, to return the documents to Douglas and not Cargill, and to retain a copied set.

S&L argues that no one at its firm ever reviewed the documents substantively and that it met its obligations by returning the documents to Douglas in December 2000. S&L asserts that the copy of Cargill's documents that was made and stored was the result of a mistake made by a case clerk and was directly at odds with the lead attorney's instruction not to retain a copy of the documents. S&L also claims that after discovering these documents in July 2002, it promptly turned the documents over to Cargill.

An attorney who receives privileged documents has an ethical duty to cease review of the documents, notify the privilege holder, and return the documents. *See Richards v. Jain*, 168 F. Supp. 2d 1195, 1200-01 (W.D. Wash. 2001) (noting requirement to return privileged materials to the privilege holder even if no pending litigation) (citing ABA Comm. on Ethics and

---

[6] Plaintiffs suggest that Rule 4.2 does not cover S&L's communications with Douglas during the investigation of this suit. Rule 4.2 applies when a dispute has become a "matter." It is not necessary to decide the precise moment when S&L's investigation evolved into a "matter" with Cargill because S&L's contact with Douglas started in 2000 and continued past the initiation of litigation. Moreover, the privileged documents received by S&L from Douglas remained in S&L's possession until July 2002.

Professional Responsibility, Formal Op. 94-382 (1994)). The Court finds that upon discovering that there were documents marked privileged or confidential in the box of documents provided by Douglas, the prudent response by S&L would have been to return the documents unreviewed to Cargill, the privilege holder.[7] Instead, S&L chose to conduct its own privilege review, during which Schaefer reviewed the documents at least to a degree that allowed him to determine whether the documents were privileged or confidential and to note the dates on the documents. At this point, Schaefer and his firm blatantly risked creating the appearance of impropriety, which is only exacerbated by the fact that S&L actually made a copy and stored the documents for almost 18 months. S&L now boldly asks this Court, the parties, and the public to ignore the appearance of impropriety and simply trust that upon conducting its own privilege review of Cargill's documents, S&L did not substantively review the documents.

This Court is skeptical of S&L's account with respect to the copying and retention of Cargill's documents. The Court rejects the notion that S&L is unable to identify the mysterious "case clerk" who defied Schaefer's instructions not to copy the documents. Conveniently, the case clerk has been unavailable to be deposed or give sworn testimony. The conspicuous absence of the testimony of this key individual only adds to the questionable circumstances surrounding S&L's handling of the documents. The Court also rejects the S&L's assertion that it never substantively reviewed the documents.

---

[7] Plaintiffs argue that because it was engaged in pre-suit investigation, there was no adversary, and therefore no ethical violation was committed. The Court finds Plaintiffs argument dubious. *See, e.g., See Richards v. Jain*, 168 F. Supp. 2d at 1200-01. However, this Court's decision is not premised solely on S&L's failure to return the documents in 2000, but it is also based on the retention of the documents until July 2002.

At a minimum, S&L's behavior recklessly disregarded the risks associated with playing fast and loose with the rules protecting against disclosure of privileged and confidential material. At worst, S&L is guilty of a serious deception with respect to its role in the disclosure and retention of Cargill's privileged and confidential information. Either way, these proceedings have been tainted by the mishandling of Cargill's privileged and confidential material. *See, e.g., Richards*, 168 F. Supp. 2d at 1201 (explaining eleven months of "access to privileged documents creates appearance of impropriety" and taints proceedings); *see also Lewis v. Capital One Servs., Inc.,* Civ. Action No. 3:04CV186 at 6-7 (E.D. Va. .June 10, 2004). There is no doubt that the spirit of ethical standards in this district, if not the letter of the rules, prohibits an attorney from conducting his or her own privilege review of documents belonging to a corporation he or she is preparing to sue, and then copying and retaining documents marked privileged or confidential for nearly 18 months before notifying the privilege holder.

**C. S&L's Contribution to the Destruction of Documents**

The Court is also troubled over the circumstances surrounding the destruction of the documents S&L returned to Douglas. It goes without saying that the destruction of evidence is a violation of the most serious nature. The following facts are undisputed. In or around December 2000, S&L returned several hundred documents to Douglas, some if not all, marked privileged and confidential. In July 2002, S&L returned the copy of privileged and confidential documents that were retained by S&L (mistakenly or not) to Cargill. Shortly thereafter, an attorney for Cargill contacted Schaefer requesting the identity of the source of the Cargill documents. Schaefer called Douglas on July 22, 2002, and informed Douglas that S&L had mistakenly kept a set of the Cargill documents provided by Douglas and that the firm had turned

the documents over to Cargill. Douglas then threw away the documents that S&L had returned to him prior to receiving a subpoena from Cargill.

Although the Court is very skeptical that S&L has been entirely forthcoming in accounting for its actions, the Court need not make a factual determination as to whether Schaefer did or did not instruct Douglas to "toss" the documents. Because the Court has already determined that this case has been tainted, it will not seek to untangle the web of contradictory testimony regarding what was said during that July 2002 telephone conversation.

**D. Duty of Candor to this Court**

Cargill argues that S&L violated its ethical duty of candor to this Court by concealing several material facts in these proceedings. The thrust of Cargill's argument concerns the representations made by Schaeffer in his May 2, 2003, Declaration. Despite S&L's own documented efforts to contact Douglas during the summer of 2000, Schaefer stated that his first contact with Douglas with respect to the alleged systematic discrimination against salaried African Americans at Cargill occurred on September 15, 2000. (*See* Schaefer Decl. I, ¶ 4.)[8] Just days before oral argument on this motion, Schaefer submitted a second declaration correcting the omission of S&L's July 2000 contact with Douglas. (*See* Schaefer Decl. II.)

Although the Court takes very seriously Cargill's charge that Schaefer and S&L omitted key details about this relationship with Douglas and has concerns about the veracity of some of

---

[8] This declaration was provided to the Court for the purpose of opposing Cargill's Motion to Overcome Attorney-Client Privilege and Work-Product Claims of R. Bill Douglas and Others. The declaration purports to provide the Court with information "to allow a full evaluation of these communications and the circumstances surrounding the firm's coming into possession of certain documents described herein." (*See* Schaefer Decl. I at ¶ 2.) Because Schaeffer was accounting for the firm's communications with Douglas, the scope was not limited to his personal contact with Douglas.

the statements made by Schaefer in his declaration, the Court declines to examine this issue further. Because the Court has already determined that these proceedings are tainted, the Court need not determine whether or not Schaefer and S&L violated their duty of candor to the court.

**E. S&L's Conduct With Non-Parties and Unrepresented Persons**

Cargill also asserts that S&L violated its ethical obligations while dealing with non-parties and unrepresented persons. Cargill focuses its argument primarily on its allegation that S&L improperly solicited current and former Cargill employees to participate in their lawsuit for their own pecuniary gain. Cargill argues that in addition to doing so directly, they also did so through the assistance of Douglas.

Cargill argues that Douglas, with the full knowledge and approval of S&L, actively solicited individuals to participate in this action by providing S&L with names of current and former African American employees to contact, contacting witnesses, and discussing specifics with individuals, including the details of the retainer agreement they would be asked to sign. Cargill also argues that Douglas tried to convince individuals that they were victims of discrimination.

S&L denies that it violated any ethical obligations with respect to its early contacts with potential plaintiffs and points out that Douglas himself denies that he "solicited" or "recruited" any of the named plaintiffs to join the suit. (*See* Schaefer Decl. II at ¶ 6, Douglas at 59-79.) S&L points out that only one of the 26 named plaintiffs–Ron Arnold–was referred to S&L by Douglas, and that this referral came after Arnold indicated he was looking for an attorney. S&L also maintains that it has an ethical obligation to pursue all leads that might uncover witnesses that might corroborate its clients' allegations of discrimination.

Rule 7.3 prohibits direct contact with prospective clients, when a significant motive for doing so is pecuniary gain. Courts have generally recognized an exception to the solicitation prohibition for federal class actions. *See Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981) (interpreting Federal Rule of Civil Procedure 23 as allowing direct contact with potential class members when necessary to proceed under the Rule). Class actions serve an important function in our system of civil justice and this Court recognizes that it may be necessary for plaintiffs and plaintiffs' counsel to inform potential class members of the existence of a lawsuit and to collect information about the merits of the case. On the evidence presented, the Court is not persuaded that S&L violated Rule 7.3.

Cargill also argues that S&L convinced several individuals to sign declarations drafted by S&L which contained allegations that several declarants later admitted were unfamiliar to them. Cargill points to the deposition testimony of two individuals, Glen Ford and Candy Smith. Both Mr. Ford and Ms. Smith testified during their depositions that certain phrases or facts stated in their declarations were unfamiliar to them or untrue. S&L denies any wrongdoing and claims to have adequate controls to ensure that declarations are accurate. On the evidence before it, the Court cannot conclude that any ethical violation was committed with respect to the drafting of declarations.

Finally, Cargill argues that S&L committed an ethical violation by offering legal representation to individuals subpoenaed by Cargill for deposition. Cargill asserts that in some cases, S&L purported to represent declarants despite contrary assertions by the declarants. With respect to deponent Candy Smith, Cargill argues she was told by S&L that she had to retain S&L as counsel to represent her in a deposition. Ms. Smith further testified that she was called nine

more times by a S&L paralegal to discuss matters related to the case. S&L denies any wrongdoing and claims that it has a policy of offering to represent declarants whose depositions are noticed by a defendant employer, at no cost to the declarant. While the Court acknowledges that S&L has engaged in aggressive advocacy tactics, the Court does not find that any ethical violations have occurred.

**III. Appropriate Remedy**

Having concluded that S&L violated several ethical duties, the Court must determine the appropriate remedy. Cargill urges the Court to disqualify counsel, dismiss the Complaint and impose other sanctions. S&L argues that even if the Court finds an ethical violation, Cargill has not and cannot demonstrate that it has been prejudiced.

This Court has "wide discretion in framing sanctions to remedy abuses, including attorneys fees, monetary sanctions, and the dismissal fo the action." *Snap Prods.*,183 F.R.D. at 541 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)). Because of the potential for abuse, disqualification motions should be subjected to strict judicial scrutiny. *Id.* (citation omitted). In deciding whether to disqualify an attorney, the court balances the interests of the attorneys, clients and the public. *See, e.g., Marvin Lumber & Cedar Co. v. Norton Co*., 113 F.R.D. 588, 592 (D. Minn. 1986). "Because the interests to be protected are critical to the judicial system, the court should resolve doubts in favor of disqualification." *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998).

After a careful analysis of the facts and circumstances of this case, and balancing the equities involved, the Court finds that Cargill has met the high standard of proof necessary for a motion to disqualify. S&L's solicitation of information from Douglas without protecting against

the disclosure of confidential and privileged materials, decision to conduct its own privilege review of Cargill's documents marked confidential and privileged, and retention of Cargill's documents for nearly a year and a half compromise the integrity of these proceedings.

The Court is mindful of Plaintiffs' argument that even if ethical violations are found, Cargill's motion should be denied because it has not shown prejudice. In support, Plaintiffs strenuously claim that: Douglas did not share privileged information with S&L; the 200-300 documents bearing privileged markings were ultimately returned to Cargill; the documents are not relevant; and even if the documents contained relevant, privileged information, Cargill could not have been prejudiced because no one at S&L ever substantively reviewed or used any documents marked privileged or confidential. Plaintiffs also argue that Cargill delayed in bringing this motion, which should weigh against disqualification.

Plaintiffs arguments are unavailing. First, the Court does not accept S&L's claims that no one at S&L reviewed any documents marked privileged or confidential. The inference is inescapable that S&L inappropriately reviewed these documents. Schaefer's sole declaration that the privileged documents were not substantively reviewed does not convince the Court that Cargill's confidential and privileged information was not disclosed. *See, e.g., Biocore,* 181 F.R.D. at 673-74 (refusing to accept self-serving denials of impropriety); *MMR/Wallace*, 764 F. Supp. at 727. Second, that S&L reviewed (substantively or not) and retained these documents for 18 months is enough to taint these proceedings. *See, e.g., Richards v. Jain*, 168 F. Supp. 2d at 1201. Finally, under the facts of this case, it is not possible to accurately track exactly which documents were delivered to S&L, which documents were "segregated" out, which documents were returned to Douglas, and which documents were ultimately destroyed. Therefore, the

Court will never know whether those documents were relevant. The extent of the breach of confidentiality and privilege is, likewise, unknown. For all the above reasons, the Court holds that Cargill has, indeed, been prejudiced. More importantly, the "risk" that improperly obtained confidential and privileged information might be used against Cargill justifies disqualification here. *See Potash*, 1993 WL 543013 at 16-19; *Marvin,* 113 F.R.D. at 591.[9]

**CONCLUSION**

The Court recognizes the difficult and complicated position that Plaintiffs and the putative class are placed in and does not minimize the hardship Plaintiffs will incur in trying to secure other counsel at this stage in the proceedings. The Court also recognizes the importance of Plaintiffs' right to counsel of their choice, especially in class-action cases of this magnitude. These considerations, however, must yield to the ethical considerations presented here, which implicate the integrity of the judicial process. The preservation of the public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. The integrity of these proceedings, the system and the profession have been damaged by S&L's conduct. The only remedy is to disqualify Plaintiffs' counsel. Plaintiffs will be given 120 days to secure counsel to continue these proceedings. If new counsel are not obtained within 120 days, this case will be dismissed without prejudice.

It is true, that the class action as a procedural device was designed to serve unique purposes. Of course, it necessarily follows that there must be appropriate accommodations made

---

[9] In addition, apart from prejudice or risk to Cargill, the Court cannot conceive of any circumstance in which S&L could continue to properly represent Plaintiffs and the class. This factor also weighs in favor of disqualification.

to the ethical rules in a class action situation so that the unique purpose the class action serves is not judicially or otherwise nullified.

The Court further recognizes the need for zealous advocates willing to creatively, and oftentimes aggressively, represent plaintiffs in class actions. Here, however, S&L crossed the line. There is no circumstance under which this Court can countenance S&L's conduct. However, there is no reason why the Court's decision should discourage plaintiffs' firms from representing others in difficult cases.

Accordingly, based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS ORDERED** that:

A. Defendant's Motion to Dismiss, Disqualify, and Impose Additional Sanctions (Doc. No. 225) is **DENIED IN PART** and **GRANTED IN PART**, as follows:

1. Defendant's motion to dismiss is **DENIED**;
2. Defendant's motion for additional sanctions is **DENIED**; and
3. Defendant's motion to disqualify Plaintiffs' counsel is **GRANTED**.

Plaintiffs have 120 days from the date of this order to secure counsel to continue these proceedings. If new counsel are not obtained by January 24, 2005, this case will be dismissed without prejudice.

Dated: September 24, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court