**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

RODERICK ARNOLD, ET AL,
on behalf of themselves and all others
similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil Action No.: 01-CV-2086 (DWF/AJB)

**SPRENGER & LANG'S MEMORANDUM IN SUPPORT OF THEIR MOTION FOR DIRECTIONS FROM THE COURT FOR THE IMPLEMENTATION OF THE SEPTEMBER 24, 2004 ORDER AND TO AMEND THE PROTECTIVE ORDER**

---

The law firm of Sprenger & Lang, PLLC ("S&L") respectfully moves the Court in its own name for directions on how to implement the Court's September 24, 2004 Order disqualifying S&L as counsel for the Plaintiffs. S&L cannot file a motion and memorandum on behalf of Plaintiffs because the firm has been disqualified from representing Plaintiffs. Plaintiffs presently do not have counsel to file anything on their behalf. Accordingly, S&L files as an interested party, but believes and intends that its motion and argument will benefit the Plaintiffs.

In its Order of September 24, 2004 disqualifying S&L, the Court gave Plaintiffs 120 days to find replacement counsel or face dismissal of this case. S&L has to date identified and contacted four firms with the resources, experience, and ability to prosecute this case as a class action, in the face of the vigorous defense that Cargill has mounted, to determine whether they would be willing to be considered by Plaintiffs as possible replacement counsel. One already has declined; three remain interested, but need further information before they can make a decision.

Cargill, however, is taking the position that S&L can provide very few, if any, court filings or documents produced or generated during discovery to possible replacement counsel. (Lundberg Decl. ¶¶ 2 and 4; Exs. D and E) Cargill maintains that providing these documents to

replacement counsel may taint that counsel, will violate the protective order in this case (Coler Decl. ¶ 2; Ex. B), or both. (*Id.*) Even the expert reports that the Court has determined are not subject to the protective order (and that anyone presumably could obtain from the Clerk of Court) are off-limits, according to Cargill. (Lundberg Decl. ¶ 4; Ex. E) S&L believes that Cargill's position is without merit, but is very hesitant to provide the challenged information to possible replacement counsel and risk their disqualification without further direction from the Court.

The lack of information about the case is hamstringing possible replacement counsel in evaluating whether to offer representation to Plaintiffs. Cargill's position concerning the court filings and documents that may be provided to possible replacement counsel also presages a position that the litigation will have to start all over again with new counsel. Lawyers evaluating whether to become involved should have at least some indication whether they will be able to use the huge amount of discovery already generated in this case or whether they will have to start from scratch. That undoubtedly will greatly influence their decision as to whether to offer representation.

Cargill's position unfairly punishes Plaintiffs, who are innocent of any wrongdoing, by making it virtually impossible for them to secure adequate replacement counsel by the deadline established by the Court. This type of punishment is especially inappropriate when Cargill cannot identify any documents that S&L could provide to potential counsel that even arguably were the product of information that S&L improperly obtained from Bill Douglas.

The Court should strike a proper balance between the interests of Plaintiffs and Cargill by entering the order that S&L proposes. As explained below, it would amend the protective order in this case to permit potential replacement counsel to review documents; if such counsel is not

selected to replace S&L, the documents will be returned to Cargill. It would also make clear that potential replacement counsel could review the critical pending motions in this case, specifically the briefs and supporting documents filed by both parties for Plaintiffs' Motion for Class Certification and Cargill's Motion for Reconsideration of the Court's July 15, 2002 Order (together, "class certification and liability period filings") and all court orders. Finally, it would allow replacement counsel selected by Plaintiffs to argue what, if anything, of Cargill documents and S&L's additional work product should be turned over to it.

**PROCEDURAL BACKGROUND**

Since the Court issued its Order on September 24 disqualifying S&L, the firm has taken steps to assist Plaintiffs in finding replacement counsel. On Monday, September 27, it wrote to Plaintiffs, enclosing a copy of the Order and informing Plaintiffs that the firm was evaluating "what steps we can take to assist you in getting new counsel and will be communicating with you about this as soon as possible. … [W]e do not want to do or say anything that will jeopardize your ability to retain new counsel until we have further guidance." (Coler Decl., ¶ 3; Ex. C) The next day S&L engaged ethics counsel Charles Lundberg to advise it about the process of finding replacement counsel as well as to represent S&L member Larry Schaefer in proceedings before the Lawyers Professional Responsibility Board that S&L had itself already initiated. (Lieder Decl., ¶ 2)

By Thursday, September 30, S&L had identified certain limited information it could provide to potential replacement counsel. (*Id.*, ¶ 3) Over the next few business days, it communicated that information to four firms that it had identified as having the resources, experience and skills to step in as potential replacement counsel: Cohen, Milstein, Hausfeld & Toll, P.L.L.C.; Mehri & Skalet, PLLC; Lieff, Cabraser, Heimann & Berstein LLP; and,

Goldstein, Demchak, Baller, Borgen & Dardarian. (*Id.*, ¶ 4) There are few other firms throughout the country that S&L believes have the resources and qualifications to step into this case. (*Id.*, ¶ 5) Lieff Cabraser has withdrawn from consideration by the Plaintiffs. (*Id.*, ¶ 6)[1]

S&L communicated only the bare bones of information about the suit to potential replacement counsel. Because of the position communicated by Cargill, the only documents provided to any potential replacement counsel have been the current version of the Complaint, the docket sheet, orders not under seal, and Cargill's Notice of Motion and Memorandum in Support of Motion to Dismiss. (*Id.*, ¶ 4)

**Cargill's Position**

Cargill's counsel, Paul Klaas, wrote to S&L on Tuesday, September 28, stating that S&L could not "disclose confidential Cargill information or documents (including work product, briefs, portions of briefs, or attachments that are under seal …)" because of the protective order.[2] S&L also could not disclose any "information and work product gained or created" by S&L after July 6, 2000, the date of the initial contact with Douglas, because of the "taint" created by "the breach of Cargill's confidentiality and privilege." (Lundberg Decl., ¶ 2; Ex. D) Cargill further took the position that S&L itself could no longer maintain possession of Plaintiffs' legal files.

S&L, through its counsel, tried to negotiate with Cargill, both by email and in face-to-face meetings. The parties made no progress at all. Rather, S&L found out how sweeping Cargill's position was. According to Cargill, S&L could not even show prospective replacement counsel the expert reports that the Court had already ruled were not subject to filing under seal,

[1] S&L also has been contacted by J. Gordon Rudd of Zimmerman Reed and Wood R. Foster of Siegel, Brill, Greupner, Duffy & Foster, P.A. about the possibility of serving as replacement counsel. S&L has been able to tell them no more than it has told the firms that it contacted.

[2] Of the approximately 378 documents produced by Cargill that were cited by Plaintiffs in support of class certification, all but 11 were designated as "confidential" or "attorneys' eyes only." (Coler Decl., ¶ 4)

claiming that those public reports constituted work product that may have been influenced by tainted information supposedly obtained from Douglas. (Lundberg Decl., ¶ 4; Ex. E)[3] In essence, virtually any document (except for Court orders not under seal, apparently) that would help counsel decide whether to offer representation would be forbidden.

## ARGUMENT

Cargill would deny potential replacement counsel any basis for determining whether to step into this case. Without access to information about the case, no reputable counsel would be willing to offer representation. Knowing that an employment discrimination class action lawsuit typically represents an investment of millions of dollars in time and expenses, firms generally engage in a lengthy due diligence process. (Lieder Decl., ¶ 7) As the Court knows from the declarations submitted in connection with the disqualification motion, S&L took over a year between the initiation of its investigations of this case and the filing of the Complaint. The 120-day period that the Court allowed would be sufficient if potential replacement counsel has access to the class certification and liability period briefing of both parties and the supporting documents, especially the expert reports, on which the parties rely. That would allow replacement counsel to assess the parties' opposing views of the critical facts and evaluate the case. Without access to at least these materials, however, such evaluation is virtually impossible.

There is no reason to deny critical information to potential replacement counsel. The Court can modify the protective order to adequately protect Cargill against disclosure of the information it claims is confidential. The Court also can enter an order that properly balances Cargill's interest in minimizing any supposed advantage that Plaintiffs have gained from lawyers

---

[3] Indeed, under Cargill's extreme version of what may not be communicated, it may have been improper to deliver even a copy of the Complaint to prospective counsel.

at S&L having had contact with Mr. Douglas against Plaintiffs' interest in having a chance to continue the litigation.

## I. THE COURT SHOULD MODIFY THE PROTECTIVE ORDER.

The Court has the power to modify the Protective Order. Paragraph 15 provides in relevant part, "Any party may request modification of this Order from the Court, after written notice to the other party." Of course, even without such an express reservation of rights, the Court would have the power to amend the Order. *See In re Olsen*, 861 F.2d 188, 189 (8th Cir. 1989).

The Court should modify the Protective Order in several ways to accommodate the transition of this case to new counsel. New subparagraphs should be added to paragraphs 6 and 7, which identify the persons to whom "confidential" and "attorneys' eyes only" information and documents may be disclosed or made available, to include potential replacement counsel:

> Counsel who have agreed to be considered by plaintiffs as replacement counsel after the disqualification of Sprenger & Lang on the conditions that (a) each firm to whom the disclosure is made acknowledges that it is bound by this Stipulation and Order by signing a copy of Exhibit B, (b) a copy of Exhibit B has been provided to counsel for Cargill, and (c) Sprenger & Lang prepares and maintains a list of all "confidential" and "attorneys' eyes only" information and documents that it provides to such potential replacement counsel and such list shall be sent to counsel for Cargill as to each firm not selected as replacement counsel or co-counsel within five days after that firm is eliminated as a potential replacement counsel or co-counsel.

Exhibit B should be substantially identical to Exhibit A, the agreement to be signed by persons noticed for deposition, persons designated as trial witnesses, and outside consultants or experts.[4]

[4] Exhibit B should also contain an additional paragraph:

> I agree that if [Name of Firm] does not become counsel or co-counsel of record for plaintiffs in this action, it shall return to counsel for Cargill all documents

These provisions should adequately protect Cargill against any disclosure by prospective replacement counsel of the information and documents that Cargill has designated as confidential. Any documents provided to firms not selected by Plaintiffs as replacement counsel will be returned to Cargill. Obviously, the firm(s) selected as replacement counsel will retain the documents and information that they have received in order to prosecute the claims.

Cargill has demanded that S&L immediately return all documents it marked as "Confidential" or "Attorneys' Eyes Only" under Protective Order. Notwithstanding S&L's disqualification, S&L continues to be qualified to hold these documents as an agent of the Plaintiffs to whom it still owes duties as clients. Alternatively, pursuant to Paragraphs 6(g) and 7(e) S&L requests the Court to name S&L as "persons designated by the Court in the interests of justice" to hold these documents until further order of the Court. These provisions will protect Cargill against any improper disclosure of the information and documents that Cargill has designated as confidential.

The proposed Order that S&L has submitted contains precise language that will properly balance the interests of Cargill in confidentiality and of Plaintiffs in securing replacement counsel. The Court should not adopt Cargill's position. To do so would deny Plaintiffs any realistic opportunity of finding replacement counsel.

---

provided to [Name of Firm] by Sprenger & Lang with respect to the action within the earlier of (a) ten days after [Name of Firm] withdraws from consideration as replacement counsel or (b) by February 1, 2005 unless [Name of Firm] has been selected as counsel or co-counsel for plaintiffs in this action.

## II. THE COURT SHOULD ALLOW S&L TO PROVIDE PROSPECTIVE REPLACEMENT COUNSEL WITH THE COMPLETE CLASS CERTIFICATION AND LIABILITY PERIOD FILINGS AND ALL COURT ORDERS.

Contrary to Cargill's position, the mere fact of S&L's disqualification in and of itself does not mean that this Court should refuse prospective replacement counsel access to the complete class certification and liability period filings and all court orders. Rather, the issue of disqualification and that of turnover of work product are analytically separate and must be addressed separately. *See First Wis. Mortg. Trust v. First Wis. Corp.,* 584 F.2d 201, 204 (7th Cir. 1978) (". . .an automatic or per se equation of denial of work product to the disqualification of representation is not good law and the application of such rule without more requires reversal.").

Based on *First Wisconsin*, the leading case on this issue,[5] S&L's work product is not per se "tainted" simply because of the disqualification itself. *See id.* at 207 (finding that the work product sought to be turned over was not tainted by virtue of having been based upon confidential information and, thus, to deny access would amount to adoption of a per se rule.) Instead, the standard courts should employ "must be a flexible one based upon an examination of the particular facts of the case under consideration." *Id.* at 202. Under the facts of *First Wisconsin* and other case law, S&L should be permitted to provide the specified court filings and

[5] Cargill relies on *In re Potash Antitrust Litigation*, No. 3-93-197 1994 WL 2255 (D. Minn. Dec. 8, 1993), an 11-year old unpublished decision that differs greatly from this case and does not control here. (*See* Lundberg Decl. ¶ 2; Ex. D) *Potash* involved a former General Counsel of a Canadian potash producing corporation who used information he had obtained through his position as General Counsel to later assist plaintiffs' counsel in prosecuting potash class action suits in the United States. *In re Potash,* at *4-7. He did this for his own pecuniary gain. *Id.* at *13, 17-18. The former General Counsel's conduct is far more egregious than anything present here, and he had actual knowledge related to the litigation at issue. *See id.* at 17-18. The same is not true here.

orders to prospective replacement counsel.[6] *See also, In re George*, 28 S.W.3d 511, 514-15 (Tex. 2000) (holding that when an attorney is disqualified, successor counsel is "presumptively entitled to obtain the pleadings, discovery, correspondence and all other materials in the public record or exchanged by the parties.").

**A. The *First Wisconsin* "Balancing Test" weighs in S&L's favor.**

After first rejecting any per se rule that a disqualified attorney's work product could not be given to successor counsel, the *First Wisconsin* court also found that barring access to disqualified counsel's work product harms the judicial process by imposing additional costs and delay. *Id.* at 209. In addition, barring access to work product does not further punish disqualified counsel; rather, it harms the client, which may be innocent of any wrongdoing. *Id.* Because of these harms caused by the exclusion of disqualified counsel's work, a flexible approach to the issue is required.

In deciding whether to exclude disqualified counsel's work, the *First Wisconsin* court identified several factors for a court to consider, including "the extent to which the complaining party may have caused the work in question to be done," "whether the work [to be] destroyed involved the use of any confidential information obtained from the complaining party," and "any fault on the part of the party for whom the work was done." *Id.* at 208; *see also, Behunin v. Dow Chem. Co.*, 642 F. Supp. 870, 873 (D. Col. 1986) (balancing the harm allowing work product to be passed on imposes on the opposing party against the harm unavailability of work product will cause the party whose counsel was disqualified).

Several other courts have also adopted a balancing approach to determine whether to allow access to disqualified counsels' work product. For example, in *Wagner v. Lehman Bros.*

[6] If replacement counsel decides that it needs additional documents and work product of S&L, it can move to obtain that additional material after it has become Plaintiffs' counsel of record.

*Kuhn Loeb,* 683 F. Supp. 189, 192 (N.D. Ill. 1987), the court adopted a flexible, case by case approach in deciding what access successor counsel may have to pre-disqualification work. The *Wagner* court analyzed the issue by examining the improper advantage obtained by the misconduct leading to the disqualification. *See id.* at 194-96. Based upon its examination of the record, the *Wagner* court held that plaintiff and successor counsel could have access to all of the materials generated in the case, but would be barred from introducing as evidence improperly obtained materials that led to the disqualification. *Id.* at 195-96. The court further held that disqualified counsel were prohibited from consulting with plaintiffs and successor counsel, except to the limited extent necessary to arrange the physical transfer of the file. *Id.* at 196.

Similarly, the District of Colorado has held that courts should always authorize the turnover of work product *unless* the disqualification is grounded on the possibility that the disqualified attorney would use confidences and secrets to the detriment of the disqualifying party, in which case a balancing approach should apply: "Only if the possibility that confidences or secrets will be used against the disqualifying party outweighs the deleterious effect of unavailability on the abandoned client should the court deny the work product request." *Behunin v. Dow Chemical Co.*, 642 F. Supp. 870, 873 n.3 (D. Colo. 1986) (adopting "the well conceived analytical framework" and balancing approach formulated by the author of Note, The Availability of the Work Product of a Disqualified Attorney: What Standard?, 127 U. Pa. L. Rev. 1607, 1611, 1619 (1979)). The *Behunin* court held that disallowing access to work product was not warranted by the possibility that the moving party's confidences and secrets could be used against it, because elimination of that threat could be accomplished by counsel's withdrawal. *Id.* at 874.

In applying this balancing approach, courts emphasize that not allowing work product to be available to successor counsel works as a penalty not against the lawyer, but against the innocent client. *Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1, 17-18, 60 Cal. Rptr.2d 207, 217 (Cal. Ct. App. 1997) (citing *Wagner v. Lehman Bros. Kuhn Loeb, Inc.*, 683 F. Supp. 189 (N.D. Ill. 1987)). In determining whether to impose such a penalty, the court must, among other things, focus on "the specific injury to the movant caused by the disqualifying conduct and formulate a remedy which removes any improper advantage that has been, or might be, gained over the movant." *Id.* at 17-18, 217.

But even where the improper advantage gained from the misconduct is great, withholding all of disqualified counsels' work product is not necessarily warranted. *See Wagner*, 683 F. Supp. at 195 (ordering that improperly obtained evidence may not be used against the movant, but that successor counsel may access the rest of disqualified counsels' work product). Again, courts must use a flexible, case by case approach in deciding what access successor counsel may have to pre-disqualification work. *Id.* at 193 (citing *First Wis. Mortg.*, 584 F.2d at 204).

In applying these factors, the instant case stands out because of the vast volume of work that Cargill seeks to deny to successor counsel. In *First Wisconsin*, for example, the plaintiff did not seek to bar successor counsel from any of the court filings and discovery that had occurred between the initiation of the case and disqualification of the defendant's original counsel about a year and a half later. *Id.* at 205. It sought (unsuccessfully) only to bar successor counsel from receiving loan analyses performed by disqualified counsel, which had served as general counsel to both plaintiff and defendants until shortly before the litigation commenced. *Id.* at 202-03. In *EZ Paintr Corp. v. Padco, Inc.*, 1984 U.S. Dist. LEXIS 20683 (D. Minn. Jan. 6, 1984), *aff'd* 746 F.2d 1459 (Fed. Cir. 1984), the plaintiff successfully sought to preclude successor counsel from

obtaining the work product defendant's original counsel generated after two lawyers from plaintiff's local counsel switched sides. In reaching this result, the district and appellate courts both seriously considered the small proportion of work product involved. 1984 U.S. Dist. LEXIS 20683, at *7; 746 F.2d at 1464.

In this case, by contrast, barring successor counsel from the work product challenged by Cargill would prevent that counsel from reviewing essentially any of the work performed by S&L on this case. S&L is unaware of any case in which a court ordered so much work, including close to 400 listings on the Court's docket and about 100 days of depositions, to be discarded.

**B. Cargill has not shown that S&L's work product, or any of the court filings or documents produced in this litigation are tainted.**

Even though it cannot show that it will be harmed by allowing prospective successor counsel access to the class certification and liability period filings and all orders, Cargill nevertheless employs an aggressive litigation strategy calculated to rob Plaintiffs of any opportunity to obtain new counsel to prosecute their claims. *See generally, Cal Pak Delivery, Inc. v. United Parcel Service, Inc.*, 52 Cal. App. 4th 1, 17, 60 Cal. Rptr. 2d 207, 216 (Cal. Ct. App. 1997) (criticizing a similar attempt to deny successor counsel access to disqualified counsel's work product as "an effort to secure maximum tactical benefit from opposing counsel's ethical breach.")

To justify discarding so much work, to the grave detriment of Plaintiffs, Cargill should have to show--on a document-by-document basis--that the specified court filings, including supporting documents were influenced by privileged information obtained by lawyers at S&L

either from reviewing the documents that Mr. Douglas delivered or from discussions with him.[7] Courts have repeatedly permitted work to be given to successor counsel when opposing counsel cannot make such a showing. *See, e.g., First Wisconsin*, 584 F.2d at 204-05 (permitting successor counsel to review work product when plaintiff did not challenge that the work in question "was not aided by any confidential information acquired" by the disqualified lawyers); *IBM v. Levin*, 579 F.2d 271, 283 (3d Cir. 1978) (affirming order allowing disqualified counsel to turn over work to successor "where specific injury to the moving party has not been shown"); *Actel Corp. v. Quicklogic Corp.*, 1996 U.S. Dist. LEXIS 11815, at *32 (N.D. Cal. Apr. 23, 1996) (disqualified counsel may turn files over to successor counsel when opposing party "has made no showing of special damage as a result of use of any confidential information"); *Lone Star Indus., Inc.*, 1995 U.S. Dist. LEXIS 19570, at *3-4 (permitting former counsel to turn over files to and discuss files with successor counsel when court's review of work product did not reveal any materials "based upon any advantage derived from confidential information disclosed to plaintiff's counsel" and opposing counsel had not gone "beyond conjecture about the potential for confidential information to be exploited"); *Black v. Missouri*, 492 F. Supp. 848, 871-72 (W.D. Mo. 1980) (permitting former counsel to turn over files to and consult with successor counsel where opposing parties had not shown that they "had been injured").[8]

---

[7] "The movant. . .should be in the best possible position to point out to the district court the facets of the relationship which it had had with the disqualified counsel which would somehow give an improper advantage against it. Certainly the movant should be aware of the confidence or secrets which it imparted to the counsel which might reflect on the current litigation. Such matters, of course, if protection thereof is needed, can be addressed to the court on an in camera basis." *First Wisconsin*, 584 F.2d at 209.

[8] Indeed, in *EEOC v. Orson H. Gygi Co.*, 749 F.2d 620 (10th Cir. 1984), the Tenth Circuit upheld an order allowing an attorney (who had simultaneously represented the defendant employer and one of its employees whose charge the EEOC was prosecuting) to turn over all work product to the employer's successor counsel even though the employee might have divulged confidences to the disqualified attorney that could be used against the employee. *Id.* at 622. And in *Esser v.*

In the *EZ Paintr* case, on the other hand, the risk of prejudice was far more direct than in this case. In that case, two lawyers for the plaintiff switched sides in the middle of the litigation. The plaintiff presented specific evidence that these lawyers had acquired information about the merits of the case during their employment. *EZ Paintr*, 746 F.2d at 1461-62. In this case, however, Mr. Douglas, who is not a lawyer, had left the employ of Cargill almost four years before the lawsuit was filed. He clearly could not communicate any privileged or confidential information concerning this lawsuit.

In its Disqualification Order, the Court mentioned that "Douglas testified that Schaefer and Douglas had at least one conversation about an in-house attorney that Douglas had worked with while at Cargill, during which Cargill's investigation and litigation processes were discussed." (Disqualification Order, at 18.) While the fact might be deemed pertinent to the disqualification issue, the *Behunin* court has rejected such knowledge as a basis for refusal to permit turnover of files to successor counsel:

> As to ACL's knowledge of Dow's approach to defending itself against a products liability suit, these secrets and confidences are of such a general, vague nature that they are of little benefit to plaintiff or detriment to Dow. … Any prejudice to Dow this knowledge creates is intangible.

*Behunin*, 642 F. Supp. at 873.[9]

---

*A.H. Robins Co.*, 537 F. Supp. 197 (D. Minn. 1982), Judge Alsop permitted files of first counsel to be turned over to successor counsel, albeit with prior special master review and deletion of any tainted material, despite egregious violations of ethical rules by plaintiffs' counsel. *Id.* at 203-04. In that case, plaintiffs' counsel employed Aetna's senior claims adjuster on Dalkon Shield cases, both while the adjuster was still employed by Aetna (and negotiating settlements with plaintiffs' counsel) and for several years afterward. Clearly, the adjuster had access to privileged and confidential knowledge about Aetna that he was employed in part to communicate to plaintiffs' counsel over many years. Even on these extraordinary facts, not all of counsel's files were considered tainted.

[9] Similarly, Cargill has not shown that Mr. Douglas communicated to Mr. Schaefer anything more than Cargill's general and vague approach to litigation.

Cargill has not shown any prejudice, or even any specific risk of prejudice, from any information improperly obtained from Mr. Douglas. Plaintiffs did not use even one document produced by Mr. Douglas in supporting their motion for class certification; the motion was supported in excruciating detail through information developed during formal and informal discovery.

**C. Denial of access to S&L's work product will unfairly punish the innocent Plaintiffs.**

The final factor mentioned in *First Wisconsin*, the extent of "fault on the part of the party for whom the work was done," also suggests that documents should be provided to successor counsel. No evidence in this case suggests that Plaintiffs themselves were in any way responsible for any actions or inactions of S&L's lawyers that contributed to the firm's disqualification. Mr. Douglas was not a plaintiff. Under these circumstances, courts are reluctant to deny a party's successor counsel access to former counsel's records. *See Actel Corp.*, 1996 U.S. Dist. LEXIS 11815, at *32 (permitting disqualified counsel to turn over files and offer assistance in the transition to successor counsel in part because plaintiff "was not at fault in any way and destruction of work product would be a major injustice and financial burden to that company"); *Little Rock School Dist. v. Borden, Inc.*, 1979 U.S. Dist. LEXIS 13217, at *10 (E.D. Ark. Apr. 5, 1979) (refusing to bar transfer of disqualified counsel's files because "a ban on the use of such work could do a substantial injustice to the client of the disqualified counsel, imposing a sanction not on the attorney but upon the client").

Thus, each of the factors considered by the courts in *First Wisconsin* and its progeny compel the conclusion that the Court should permit S&L to provide to potential replacement counsel at minimum the documents identified in Plaintiffs' motion and proposed order.

Moreover, one additional factor argues powerfully for the same result. None of the other

cases present a situation where refusal to allow transfer of work product may result in the disqualified lawyer's clients being unable to obtain replacement counsel. In most of the cases, the party whose lawyer was disqualified was a business that presumably compensated its lawyers on an hourly basis. In such cases, refusal to allow files to be turned over to successor counsel would "impos[e] an unnecessary financial burden on its opponent." *First Wisconsin*, 584 F.2d at 209, but would not result in dismissal or default judgment. Even in a typical individual tort case, myriad lawyers generally are ready and able to step in. This case is not typical. Replacement counsel must be willing to bear millions of dollars in fees and expenses and have sufficient experience in both employment discrimination and class action law. Very few firms throughout the country meet these criteria. (Lieder Decl., ¶ 5)

Courts recognize that overly strict disqualification rules may leave clients with "substantially diminished" choice of counsel, "particularly in specialized areas of law." *Hoglund v. United States Dist. Ct.*, 223 F.3d 990, 996 (9th Cir. 2000); *accord, e.g., Freeman v. Chicago Musical Instrument Co.*, 689 F.2d 715, 723 n.11 (7th Cir. 1982). Just as a court should take into account the possibility of depriving a client of a lawyer in construing the disciplinary rules, so too should a court take that same factor into account in deciding whether to permit documents to be provided to potential replacement counsel.

## III. S&L'S PROPOSED PROCEDURE STRIKES A PROPER BALANCE IN TERMS OF FAIRNESS AND EFFICIENCY.

S&L suggests that, at this time, it be allowed to provide prospective replacement counsel only copies of documents known to both parties and the Court: both parties' complete filings with respect to the pending motions for class certification and reconsideration of the liability period as well as all orders previously entered in this case.

S&L has a tremendous volume of factual and legal work product that has not made it into filings with the Court. If and when Plaintiffs select replacement counsel, that counsel should be able to decide the extent, if any, to which it needs access to S&L's remaining work product and try to work out terms for a turnover with Cargill's counsel. If they are unable to reach an agreement, replacement counsel could file a motion with the Court.

This two-step procedure is more efficient than trying to decide now what work product may be turned over, when the scope of the work product in which replacement counsel will be interested is unknown. Replacement counsel may be interested in only a fraction of S&L's work product, rendering unnecessary disputes about the rest. Moreover, replacement counsel, who will have the most direct interest in acquiring the information that it deems necessary to zealously and efficiently represent Plaintiffs and the proposed class, should be able to argue the motion rather than be forced to live with the results of a motion argued by S&L.

***

Finally, the Court should not allow Cargill to obtain indirectly the remedy that it sought but that the Court has already specifically denied--dismissal of this case. Cargill should not be allowed to profit by strategically exploiting S&L's disqualification.

## CONCLUSION

The Court, having given Plaintiffs 120 days to obtain replacement counsel, should not make that opportunity illusory. Therefore, S&L respectfully requests that the Court grant S&L's Motion for Directions from the Court for the Implementation of the September 24, 2004 Order and to Amend the Protective Order, thus permitting S&L to provide the identified documents to prospective replacement counsel within the 120 day period.

**BASSFORD REMELE**
***A Professional Association***

Dated: October 22, 2004

By s/_Charles E. Lundberg
Lewis A. Remele, Jr. (License #90724)
Charles E. Lundberg (License #6502X)
Tiffany M. Quick (License #0313038)
Attorneys for Sprenger & Lang PLLC
33 South Sixth Street, Suite 3800
Minneapolis, Minnesota 55402-3707
(612) 333-3000

440002.doc