UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-CV-2086 (DWF/AJB)

**CARGILL'S MEMORANDUM IN RESPONSE TO SPRENGER & LANG'S MOTION FOR DIRECTION FROM THE COURT FOR IMPLEMENTATION OF THE SEPTEMBER 24, 2004 ORDER AND TO AMEND THE PROTECTIVE ORDER**

## I. INTRODUCTION

Sprenger & Lang's new counsel, by this motion, seeks to have this Court designate Sprenger & Lang as the custodian of Cargill's confidential information (despite the Court's September 24 Order, which establishes that Sprenger & Lang is the least appropriate custodian of Cargill confidential information on Earth); to authorize Sprenger & Lang to disclose Cargill's confidential information to any lawyer who "agrees to be considered as replacement counsel" (including Sprenger & Lang's listed friends, some of whom were among those disqualified in In re Potash for unethical behavior similar to that which Sprenger & Lang committed here); and to declare that these "replacement counsel" will not be "tainted" by exposure to the documents and work product Sprenger & Lang created after Sprenger & Lang breached Cargill's privileges (despite this Court's finding that the full extent of the "taint" cannot be determined because of the Sprenger & Lang/Douglas document destruction, and the directly contrary authority of the In re Potash and EZ Paintr decisions in this District).

Sprenger & Lang's motion reflects a fundamental misunderstanding of the priorities applicable here. It is not important to maximize Sprenger & Lang's on-going role in this lawsuit. It is not important to maximize the ease with which Sprenger & Lang can shop this lawsuit to its friends. It is not important to help Sprenger & Lang recoup its investment in this lawsuit.

Rather, as this Court held in disqualifying Sprenger & Lang, the important priorities are "the ethical considerations presented here, which implicate the integrity of the judicial process. The preservation of the public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. The integrity of these proceedings, the system and the profession have been damaged by S&L's conduct." September 24, 2004, Memorandum Opinion and Order ("Disqualification Order") at 27.

This Court well understood and considered the implications of the findings it made in disqualifying Sprenger & Lang, including particularly "the hardship Plaintiffs will incur in trying to secure other counsel." Id. That "hardship" must entail, at least, keeping successor counsel at arm's length from both Sprenger & Lang and everything Sprenger & Lang did that could be tainted by their unethical behavior. If Plaintiffs have legitimate class claims (and this action actually is something other than a lawsuit created and driven by Sprenger & Lang), then there is no reason why a reputable plaintiff's firm would not be able to assess this case based upon consultations with the named Plaintiffs and a review of those portions of the record that are neither confidential nor possibly tainted.

Every other employment class action has been commenced on less.

## II. BACKGROUND

On September 28, 2004, counsel for Cargill wrote to Sprenger & Lang, asking them either to return Cargill's "Confidential" and "Attorneys' Eyes Only" material or to explain how they intended to comply with the terms of the Court's Protective Order, given that Sprenger & Lang no longer met the Protective Order's definition of a "qualified person" entitled to possess that material. See Ex. D to Declaration of Charles E. Lundberg. In follow-up correspondence, Cargill offered to archive its confidential material or have it transferred into the custody of a

"qualified person," including the Court. See Ex. A to Declaration of Michael Iwan (accompanying this Memorandum).

For several weeks, until bringing the present motion, Sprenger & Lang neither surrendered Cargill's confidential information to a "qualified person" nor explained how they could legally continue to retain it. Instead, Sprenger & Lang brought the present motion asking the Court to countenance, among other things, the following:

- That Sprenger & Lang be allowed to retain Plaintiffs' "legal file, including the firm's 'work product'" indefinitely. See Proposed Order ¶ 2.

- That Sprenger & Lang be allowed to share with "prospective replacement counsel" (whoever that might be) "complete briefing for Plaintiffs' Motion for Class Certification . . . including all supporting documents" (whatever that might encompass). See id.

- That Sprenger & Lang be allowed to retain and regulate access to all Cargill "Confidential" and "Attorneys' Eyes Only" in its possession by "[c]ounsel who have agreed to be considered by plaintiffs as replacement counsel." See id. ¶ 3.

Sprenger & Lang contends that these concessions are necessary in order to "strike a proper balance between the interests of Plaintiffs and Cargill," because: (1) it is unfair to expect potential replacement counsel to represent Plaintiffs without having use of the discovery and work product generated by Sprenger & Lang; and (2) Cargill cannot identify any documents that S&L could provide to potential counsel that even arguably were the product of information that S&L improperly obtained from Bill Douglas." Sprenger & Lang's Mem. Supp. at 2.

In making these extraordinary claims, Sprenger & Lang is just recycling the same argument the Court utterly rejected in disqualifying Sprenger & Lang in the first place (*i.e.*, that Cargill has no recourse unless and until it can prove the precise content of the privileged and confidential documents that Sprenger & Lang received, reviewed, and returned to Mr. Douglas and that ended up in Mr. Douglas' trash can, either at Sprenger & Lang's direction or with their complicity). In fact, the Court held that disqualification was not only justified but also necessary

precisely *because* the actions of Sprenger & Lang deprived both Cargill and the Court of the opportunity to determine the full extent of the breach and, thus, the taint on this litigation.

## III. ARGUMENT

### A. The Court's Protective Order Should Be Obeyed

Counsel of record are "qualified persons" under the Court's Protective Order. See Ex. B to Declaration of Susan M. Coler ¶¶ 6, 7. That limitation is common, and wise, for once lawyers are "counsel of record" they are officers of the Court, and subject to the Court's full control. Cargill, of course, knew that the Court had such control over "counsel of record," and relied upon it in producing Confidential and Attorneys' Eyes Only information to Sprenger & Lang and in filing matters under seal with the Court. Such limitations in Protective Orders, and the reliance of parties upon them, are routine.[1]

Lawyers prospecting for a case (either undertaking to reimburse Sprenger & Lang's alleged $7 million investment, or hoping to take advantage of that $7 million investment,

---

1 See, e.g., Jochims v. Isuzu Motors, Ltd., 148 F.R.D. 624, 630 (S.D. Iowa 1993) (recognizing the rule that a request to modify a protective in order to provide greater access to confidential information should be denied where it would "tangibly prejudice substantial rights of the party opposing modification" (internal quotation and citation omitted)). See also, e.g., Miscellaneous Docket Matter # 1 v. Miscellaneous Docket Matter # 2, 197 F.3d 922, 926 (8th Cir. 1999) ("[D]iscovery involves the use of compulsory process to facilitate orderly preparation for trial, not to educate or titillate the public." (internal quotation omitted)); SEC v. TheStreet.Com, 273 F.3d 222, 229 (2d Cir. 2001) ("Without an ability to restrict public dissemination of certain discovery materials that are never introduced at trial, litigants would be subject to needless annoyance, embarrassment, oppression or undue burden or expense." (internal quotations omitted)); Chicago Tribune Co. v. Bridgestone/Firestone, Inc., 263 F.3d 1304, 1310-14 (11th Cir. 2001) (noting that "where a party has sought the protection of Rule 26, the fact that sealed material is subsequently submitted in connection with a substantive motion does not mean that the confidentiality imposed by Rule 26 is automatically forgone"); C.A. Muer Corp. v. Big River Fish Co, 1998 WL 488007 at *4 (E.D. Pa. Aug. 10, 1998) (limiting access to discovery information that could be used by a competitor "for underbidding goods and services, for anticipatory expansion and for interfering with business operations"); Bergen Brunswig Corp. v. Ivax Corp., 1998 WL 113976 at *3 (S.D.N.Y. Mar. 12, 1998) (noting that "[p]otential damage from the release of sensitive business information has been deemed a ground for denying access to court documents" and collecting cases for similar propositions).

including whatever "taint" resides therein) are not "qualified persons" under the Court's Protective Order. And, for good reason, they should not be.

Indeed, in this instance, it is particularly clear that the lawyers identified by Sprenger & Lang should not have access to the confidential material Cargill produced or filed under seal in reliance upon the Court's Protective Order. Sprenger & Lang has close ties with a number of the identified potential replacement counsel and others have actually sued Cargill in other matters.[2]

It is an extraordinary irony, and an alarming illustration of how unwise it would be to expand a Protective Order as requested by Sprenger & Lang, to see that two of the potential replacement counsel who have been identified Sprenger & Lang were among those firms disqualified by Judge Kyle in In re Potash Antitrust Litig., 1993 WL 543013 at *17 (D. Minn. Dec. 8, 1993), as amended, 1994 WL 2255 (D. Minn. Jan. 4, 1994), for either cultivating an improper relationship with a former insider of their litigation opponent (Cohen, Milstein, Hausfeld & Toll) or due to exposure to work product potentially tainted by confidences improperly disclosed by that insider (Siegel, Brill, Gruepner & Duffy).

2 Based on the results of admittedly preliminary investigation, Cargill has determined, for example, that Sprenger & Lang has served as co-counsel with Goldstein, Demchak, Baller, Borgen & Dardarian on at least two matters: Novack v. Northwest Airlines, Inc., 525 N.W.2d 592 (Minn. Ct. App. 1995); Sondel v. Northwest Airlines, Inc., 56 F.3d 934 (8th Cir. 1995). Sprenger & Lang similarly has served as co-counsel with Cohen, Milstein, Hausfeld & Toll on at least four matters: Young v. Potomac Elec., Case No. 1:87cv1177 (D.D.C.); Mehling v. New York Co., Case No. 2:99cv5417 (E.D. Pa.); Johnson v. Pepco, Case No. 1:87cv2094 (D.D.C.); Gottlieb v. SBC Comm., Case No. 2:00cv4139 (C.D. Cal.). Cohen, Milstein and Zimmerman Reed, moreover, have a history of suing Cargill in non-employment related matters, which at least raises concerns about their true motivation for wanting access to 12 years worth of confidential Cargill documents and data produced in this case. See, e.g., Pepsi-Cola Bottling v. Cargill, Inc., Case No. 1:95cv1504 (C.D. Ill.); Trio Beverage Co. v. Cargill, Inc., Case No. 1:96cv1035 (C.D. Ill.); Clinton's Ditch Coop v. Cargill, Inc., 3:95cv785 (D. Minn.); In re High Fructose Corn Syrup Antitrust Litig., 2000 U.S. Dist. LEXIS 20659 (C.D. Ill. July 19, 2000); Grist Mill Co. v. ADM, Case No. 1:95cv1502 (C.D. Ill.). See Ex. B to Iwan Decl. Far from being the arm's length transition described by Sprenger & Lang, see generally Declaration of Michael D. Lieder, this effort to find potential replacement counsel seems designed to keep Sprenger & Lang closely connected to this action.

Appropriate replacement counsel would not need Sprenger & Lang's material, and, we suggest, appropriate replacement counsel, upon reading the Court's Disqualification Order, would not want it or the "taint" that goes with it. A reputable firm should have no difficulty ascertaining whether the group of already assembled named Plaintiffs have legitimate claims, using materials that are not "tainted."

**B. The Court Should Not Allow Sprenger & Lang to Spread the "Taint" Caused by Its Unethical Behavior**

Sprenger & Lang also asks the Court to rule specifically that prospective replacement counsel may review the complete class certification briefing and supporting documentation. By itself, that is a wholesale disclosures of tens of thousands of pages of documents. Moreover, Sprenger & Lang's request is intended to, and does, lay the groundwork for a later claim by actual replacement counsel that it may review any and all of Sprenger & Lang's work product and prior briefing with immunity unless Cargill can show – "on a document-by-document basis" – that such work product was "influenced by privileged information obtained by lawyers at S&L either from reviewing the documents that Mr. Douglas delivered or from discussions with him." Sprenger & Lang's Mem. Supp. at 12-13.

Again, the premise of Sprenger & Lang's request now is exactly the same premise Sprenger & Lang offered in opposing disqualification, *i.e.*, it should be Cargill's burden to prove "on a document-by-document basis" the full extent of Sprenger & Lang's breach of Cargill's privilege, even though Sprenger & Lang caused or permitted the best evidence of the breach of Cargill's privileges to get "tossed" into Mr. Douglas' trash can. Sprenger & Lang's premise was rejected by the Court on September 24; it should be rejected again.

To be clear, Cargill is not seeking to shirk some responsibility to demonstrate where the taint lies. Cargill certainly would have done so had Sprenger & Lang not deprived Cargill, the Court, and even themselves of the means to demonstrate precisely to what extent the taint caused

Sprenger & Lang's misappropriation and mishandling of documents and information from Mr. Douglas has seeped into this case. See Disqualification Order at 26-27. Sprenger & Lang's position proves particularly disingenuous, because, among other things, Sprenger & Lang either will not or cannot identify the people responsible for mishandling confidential and privileged material supplied by Mr. Douglas, thereby precluding effective discovery on this issue. See id. at 20. Sprenger & Lang nonetheless persists in trying to create the impression (by misapplying case law) that the responsibility lies with Cargill to identify – on a document-by-document basis – where the taint lies, when Sprenger & Lang, the party undeniably in the best position to comment upon their own activities and work product, cannot even do so.

Sprenger & Lang attempts to sidestep the obvious implications of the Court's prior rejection of this argument, in part, by asserting that "the issue of disqualification and that of turnover of work product are analytically separate and must be addressed separately." Id. at 8. It is true that the disqualification of counsel does not *per se* preclude the turnover of work product. However, it is not true that the very reason for disqualification is irrelevant to whether work product can be spread to others.

In fact, as the courts have recognized, it would accomplish little to disqualify counsel because they have been exposed to confidential information of a litigation adversary, then allow that very confidential information to remain and perpetuate itself in the case through the work product disqualified counsel leaves behind. See, e.g., In re George, 28 S.W.3d 511, 515 (Tex. 2000) ("If the work product contains confidential information, transferring the work product to [successor counsel] poses the same threat as . . . [disqualified counsel's] presence in the case. Thus, a restriction on [successor counsel's] access to the work product is necessary to effectuate the purpose of disqualification."); Blinder, Robinson & Co., Inc. v. Securities Investor Protection Corp., 123 B.R. 900, 912-13 (D. Colo. Bky. 1991) (enjoining disqualified "absolutely" from

sharing information with successor counsel because "[i]t is not a question of the game being over if the Attorneys are disqualified[; i]t is a question of leveling the playing field in terms of access to information"); Wagner v. Lehman Bros. Kuhn Loeb, Inc., 683 F. Supp. 189, 195 (N.D. Ill. 1987) (barring use by successor counsel for plaintiff of evidence improperly obtained by disqualified counsel because "by removing an improper advantage now held by [the plaintiff] the Court does not believe that it is punishing the [plaintiff] for [it's counsel's] actions[; i]nstead all the Court is doing is restoring an equilibrium that should never have been disturbed").

This Court has determined that Sprenger & Lang induced and took advantage of a breach of Cargill's confidences and privileges by soliciting Mr. Douglas from July 2000 on, and by having Mr. Douglas play a central role in the identification of potential plaintiffs, providing information and documents, and reviewing and commenting upon the Complaint and other pleadings in this matter. As a result, Sprenger & Lang and their work in this case has been tainted, and the risk that such confidential and privileged information may have been, is being, and may continue to be unfairly used against Cargill persists all the way back to Mr. Douglas' introduction into this lawsuit. Moreover, as Judge Kyle noted in In re Potash, 1993 WL 543013 at *16-17 & n.41 such a taint can infect work product (including pleadings, internal memoranda, and overall strategic litigation decisions) just as readily as individual attorneys and can be spread by contact with either.

That is why successor counsel were barred from access to the work product of prior counsel in EZ Paintr Corp. v. Padco, Inc., 1983 WL 423 (D. Minn. Nov. 9, 1983) (Murphy, J.), aff'd, 746 F.2d 1459, 1464 (Fed.Cir.1984) (applying Eighth Circuit law). In EZ Paintr, prior counsel was disqualified simply because it hired two associates from the opposition counsel's firm. There was no evidence to suggest the two associates hired actually worked on the matter in question or that confidential information improperly found its way into the disqualified firms

handling of the case; although, the court found it reasonable to assume that discussions concerning this case may have taken place. Id. at 1463 & n.6. After disqualification, the defendant sought an order permitting its prior, disqualified counsel to turn over its work product to successor counsel. The district court denied the request as to all work product created after the time the taint first could have arisen, namely the associates' hiring date, but granted the request as to all prior work product. The defendant appealed and the Federal Circuit affirmed on the ground that, "[i]n the end the crux of this case is that the [disqualified] firm did not do what it should have done. . .." Id. at 1464; see also Quark, Inc. v. Power Up Software Corp., 812 F. Supp. 178, 181 (D. Colo. 1992) (prohibiting the turning over of any work product or any working "behind the scenes" by counsel disqualified due to confidences regarding litigation adverse possessed by single member of law firm because the individual attorney's knowledge "infects his entire firm[, t]his infection is not limited to persons but necessarily seeps into the work product produced by those persons[, and m]erely disqualifying the individual . . . attorneys would not prevent any confidential information that found its way into their work-product from being used against plaintiff by successor counsel").

Sprenger & Lang demeans In re Potash as "an 11-year old unpublished decision" and distinguishes EZ Paintr Corp. only as to "the small proportion of work product involved."

Sprenger & Lang's Memorandum at 8 n.5, 12.[3] Sprenger & Lang suggests that these direct precedents, from this District, should be dismissed as anomalous and the "leading case" (as proclaimed by Sprenger & Lang), First Wisconsin Mortg. Trust v. First Wis. Corp., 584 F.2d 201, 204 (7th Cir. 1978), should be followed.

Even if First Wisconsin were not older, from a different Circuit, and involving far less egregious circumstances, Sprenger & Lang grossly mischaracterizes its facts and holding. The disqualification in First Wisconsin, like virtually every other one of Sprenger & Lang's cited authorities, was based upon a technical conflict-of-interest that arose when the plaintiff and defendant became adverse after the disqualified counsel had provided general legal counsel to each of them. See id. at 202-03. The defendant originally retained disqualified counsel to represent it in this litigation, and during the initial months of discovery approximately 15 junior associates from disqualified counsel's firm reviewed and prepared written summaries of loan files. See id. at 203. Ultimately, the plaintiff objected to its former outside business counsel representing defendant in the litigation and sought to disqualify them. See id. Disqualification eventually was ordered, even though plaintiff never alleged that the preparation of the factual summaries was enhanced or aided by disqualified counsel's prior relationship with plaintiff .

---

[3] Cargill submits that the greater amount of work product here that could be tainted by Sprenger & Lang's breach of Cargill's privilege justifies tighter measures to avoid spreading the taint, not the looser measures that Sprenger & Lang suggests. Indeed, this Court, in denying reconsideration of its September 24 disqualification order, suggested "*in camera* review of disputed documents." October 13, 2004, Order at 5. As EZ Paintr teaches, Cargill has already suggested that documents created before Sprenger & Lang's substantive contact with Mr. Douglas concerning this action, *i.e.*, July 6, 2000, could be deemed untainted, as could other categories of documents, *e.g.*, most documents produced by Cargill and most discovery conducted by Cargill, such as transcripts of named Plaintiff and declarant depositions. Cargill will work with plaintiffs' successor counsel of record, if any, to identify documents that could not be tainted and minimize *in camera* review. Sprenger & Lang and its counsel, however, have not focused on identifying documents that could be untainted; rather, they have focused entirely on identifying documents that could be useful to prospective successor counsel and recycling arguments this Court already has rejected. That is not appropriate at this stage of the proceedings.

See id. at 204. "Indeed, it appears that the summaries are no different than they would have been if made in their entirety by lawyers who were strangers to all of the parties." Id. The defendant thereafter sought and received permission from the court for its successor counsel to have access to these loan file summaries. See id. at 203.

Sprenger & Lang suggests that the First Wisconsin court found that "the work product sought to be turned over was not tainted by virtue of having been based upon confidential information." Sprenger & Lang's Mem. Supp. at 8. In fact, the First Wisconsin court concluded that there was no possibility that the work product (the loan file summaries) could have been influenced by any confidential information disqualified counsel possessed regarding the plaintiff. Thus, that court held, there was no way such work product could have been tainted and no way that disclosing such work product could taint successor counsel.

Virtually the opposite situation presents itself here. This Court found that Mr. Douglas disclosed to Sprenger & Lang confidential and privileged information relating to this litigation and, given the nature of Mr. Douglas's role at Cargill and the level of his involvement on behalf of Sprenger & Lang in this action, there was no way to be assured that the resulting taint could be isolated and contained.

That is what distinguishes the present case from every case cited by Sprenger & Lang and from virtually every available court opinion on the issue, with the possible exception of In re

Potash.[4] See, e.g., Behunin v. Dow Chemical Co., 642 F. Supp. 870, 873 (D. Colo. 1986) (allowing work product to be transferred to successor counsel because "Dow has failed to persuade me that the secrets and confidences allegedly known to [Attorneys] are at all relevant to the instant suit"); Cal Pak Delivery, Inc. v. United Parcel Serv., Inc., 60 Cal. Rptr.2d 207, 217 (Cal. Ct. App. 1997) (declining to limit transfer of work product to successor counsel following the disqualified unethical attempt to seek a direct payment from defendant to drop the suit because "the ethical breach does not involve the acquisition of privileged or confidential information by counsel as a result of the breach of ethics").

If this were a case in which disqualification resulted from dual representation on unrelated matters, or if this were a case where none of the confidential information at issue pertained to the present litigation, or if this were a case where the influence of such confidential information could be isolated and easily excised, then perhaps more of Sprenger & Lang's precedents would be applicable, and perhaps more of Sprenger & Lang's work product could be declared untainted. But, this is a case in which disqualification resulted from a fundamental, intentional invasion of Cargill's privileges by Sprenger & Lang, in successful pursuit of information directly relevant to this lawsuit, which was then destroyed before Cargill's subpoena could retrieve it.

---

4 Cf. Esser v. A.H. Robins Co., 537 F. Supp. 197, 200 (D. Minn. 1982). In Esser, counsel for the plaintiff withdrew (in the face of motion for disqualification) due to inappropriate contacts with the defendant's insurer's "senior claims adjuster in charge of Dalkon Shield cases in Minnesota." The court allowed a limited transfer of the file, but only *after* review by Special Master to identify and remove all vestiges of confidential information. See id. Sprenger & Lang's attempt to claim this result as their own, because presumably not all of the disqualified counsel's files were considered tainted, merely points out the inherent problem facing the Court here – thanks to Mr. Douglas' trash can and incomplete memory, it is impossible for the Court to determine which of Sprenger & Lang's files are tainted and which are not. See Sprenger & Lang's Mem. Supp. at 14 n.8.

This kind of egregious case was identified, and distinguished, by the First Wisconsin court itself and even by the law review article Sprenger & Lang itself cites. See First Wisconsin, 584 F.2d at 205 ("[t]he judge to whom a motion for disqualification is presented, in evaluating whether work product should be denied to the client on whose behalf it is done, will certainly consider factors which indicate the propriety of denial such as the use of confidential information or unfair detriment to the other side. Conceivably also if the basis for the disqualification is so obvious that no good faith justification could be advanced for it, weight should be given to the fact that attorneys persisted in performing work when it was patent that their professional responsibility mandated their complete withdrawal. From the record of the case before us we do not deem that was the situation here"); see also Note, The Availability of the Work Product of a Disqualified Attorney: What Standard?, 127 U. Pa. L. Rev. 1607, 1620, 1624 n.107 (1979) ("[d]isqualification prevents the disqualified attorney from misusing confidences, but it neglects the problem of the work product: the work product may contain, or be a product of, confidential information. If the substitute attorney has access to a tainted work product, confidences may be used to the detriment of the disqualifying party, defeating the primary purpose of disqualification… [t]he court cannot tell if substitute counsel will actually discover any confidences which the work product contains because the court cannot inspect the work product . . . the court should simply assume that there is a constant probability that substitute counsel will find and use any confidences that are in the work product.").

It is not appropriate to accommodate Sprenger & Lang or its friends by "balancing the harms" or adopting "flexible approaches, " as Sprenger & Lang's counsel proposes. Here, we face fundamental ethical and moral issues, and a serious affront to the "integrity of the judicial process," and the Court has "wide discretion" to take whatever action it deems appropriate to "remedy abuses" and safeguard Cargill's privileges and confidences, the integrity of this action,

and the public trust. See Disqualification Order at 25, 27 (citing Olson v. Snap Prods., Inc., 183 F.R.D. 539, 541 (D. Minn. 1998).

Even if the Court were limited in its discretion and required to engage in a balancing of the respective harms, the harm suffered by the Sprenger & Lang law firm, Cargill submits, should not be weighed at all. The plaintiffs themselves suffer no harm, because, Cargill believes and understands, Sprenger & Lang, not the plaintiffs themselves, has been financing this lawsuit. Cargill alone suffers. Cargill has already suffered the breach of its confidences and privileges and borne tremendous litigation costs. And, if Cargill insists upon an untainted proceeding, some of its witnesses may have to be re-deposed by untainted plaintiffs' lawyers. Cargill deeply regrets having to pay that price for Sprenger & Lang's breach of its privilege, but it is willing to pay that price for the very reasons it brought its motion to disqualify Sprenger & Lang – because a litigant has a right to a trial free from even the risk that its confidential and privileged information will be used against it.

Sprenger & Lang's proposal merely revives that risk and would undo all that the Court's well-reasoned disqualification order was designed to accomplish.

## IV. CONCLUSION

Sprenger & Lang's motion, to Cargill, seems disrespectful of the gravity of these circumstances and Sprenger & Lang's responsibility for those circumstances. Sprenger & Lang portray themselves as the victim of forces beyond their control, when, in truth, it is Cargill and the judicial process that has been victimized by Sprenger & Lang.

Cargill does not consent to being victimized again, either by the unauthorized dissemination of its "Confidential" and "Attorneys' Eyes Only" information or by the further spreading of the taint of breached privileges and confidences. Cargill urges that the Court's

Protective Order by obeyed and that the taint caused by Sprenger & Lang's breach of Cargill's privilege not be allowed to spread.

Sprenger & Lang's motion should be denied.

Dated: November 1, 2004

DORSEY & WHITNEY LLP

s/Paul B. Klaas
Paul B. Klaas (#56327)
Michael Iwan (#28628X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55502-1498
Telephone: (612) 340-2600

Attorneys for Defendant
CARGILL, INCORPORATED