UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File NO. 01-CV-2086 (DWF/AJB)

DECLARATION OF
JOSEPH M. SELLERS

I, Joseph M. Sellers, hereby declare the following:

1. I am a partner at the law firm of Cohen, Milstein, Hausfeld & Toll, P.L.L.C., located at 1100 New York Avenue, N.W. Ste 500, Washington, DC, where I head the firm's Civil Rights and Employment practice.

2. On Friday, October 1, 2004, I received a telephone call from Michael Lieder, whom I know as a partner in the Washington, D.C. office of Sprenger & Lang. Mr. Lieder told me that his firm had been counsel for the plaintiffs in a race discrimination case that had been pled as a class action against Cargill and that the case was pending in the federal court in Minneapolis. He further advised me that his firm had recently been disqualified from continued participation in the case by an order of the Court. Mr Lieder told me that the Court had given the plaintiffs 120 days from the issuance of its disqualification order within which to locate new counsel and asked me whether my firm would be interested in being considered for that role.

3. I asked Mr. Lieder to tell me more about the case and he responded by offering to send

me a copy of the complaint, a copy of the docket sheet, a list of the named plaintiffs in the complaint, and a copy of the decision and order disqualifying Sprenger & Lang. He advised me that because the parties disagreed as to what, if any, additional information he could share with me, he was hesitant to discuss any other features of the case.

4. I asked Mr. Lieder about the procedural posture of the case. He advised me that the parties had concluded discovery germane to the class certification determination and that class certification issue had been fully briefed, but not yet argued. He further advised me that the parties had together taken more than 50 depositions and that each side had retained experts who had prepared reports that had been submitted to the Court in connection with the class certification briefing. Mr. Lieder identified the experts whom the plaintiffs retained. The only expert whom I recognized was William Bielby, whom I had used in another case.

5. I asked Mr. Lieder about the next step in the process. He advised me that he was making similar inquiries of several other law firms whom he knew had the knowledge and resources to undertake the representation of plaintiffs in a large employment discrimination class action. He advised me that he would be sending to the named plaintiffs a list of firms who were willing to be considered to represent the class and that the decision about successor counsel would be made by the named plaintiffs.

6. Before speaking with Mr. Lieder on that day, I had never heard of this action and was unaware that Sprenger & Lang had represented the plaintiffs in the case.

7. On Tuesday, October 19, 2004, I received a telephone call from Ms. Jacqueline Williams who represented that she was one of the named plaintiffs in the case against Cargill. She

asked me if I would be willing to be interviewed by a group of the named plaintiffs as to my suitability to serve as new counsel for the class. I advised her that I was willing to speak with this group, but that my firm would be unable to make a decision about whether it would offer representation to the plaintiffs until it was provided with substantially more information about the case. We scheduled a date and time for a telephone conference with the plaintiffs; it occurred Sunday, October 24, 2004 at 8pm and lasted about 90-100 minutes.

8. On Friday, October 29, 2004, I received a telephone call from Ms. Williams who advised me that the named plaintiffs had voted to retain my firm as successor counsel for the plaintiffs and inquired when my firm would determine whether it would enter an appearance for the plaintiffs. I reminded Ms. Williams, as I had told Mr. Lieder, that my firm would need substantial additional information about the case in order to make an informed decision whether it would enter an appearance for the plaintiffs.

9. Immediately thereafter, Ms. Williams and I called Mr. Lieder to inform him that the plaintiffs had selected this firm to serve as successor counsel in this action. Ms. Williams said she had never spoken with Mr. Lieder before and was unaware of his role in this case.

10. At the outset of his first telephone call with me about this case, Mr. Lieder had explained that he was inquiring about my interest in serving as successor counsel because of my extensive experience in handling equal employment opportunity class actions.

11. For more than 15 years – from 1982 through 1997 – I worked at the Washington Lawyers' Committee for Civil Rights and Urban Affairs, where I served as the Director of

the EEO Project. The Washington Lawyers Committee is a not-for-profit organization founded in 1968 to address problems of entrenched poverty and discrimination in urban areas, including the Washington DC area. I left the Washington Lawyers Committee to come to Cohen, Milstein, Hausfeld & Toll in 1997 in order to develop a national Civil Rights and Employment practice.

12. Over the course of my legal career, I have served as lead counsel or co-lead counsel in more than 30 civil rights and employment class actions. They include *Conway, et al. v. Deutsch* (E.D. Va.), a class action alleging sex discrimination against women case officers by the CIA; *Johnson, et al. v. Freeh* (D.D.C.), a class action alleging race discrimination against African American special agents by the FBI; *Kernan, et al. v. Holiday Universal* (D. Md.), a class action alleging racial discrimination against African Americans seeking memberships at spa health clubs; *Beck, et al. v. Boeing Company* (W.D. Wash.), a class action alleging sex discrimination against women employees by the Boeing Company; *McKnight, et al. v. Circuit City Stores*, (E.D. Va.), a pattern and practice case in which the plaintiffs proved, after a trial by jury, that African American employees had been the subject of a pattern of discrimination in promotions by Circuit City; *Neal, et al. v. Director, D.C. Dept. of Corrections*(D.D.C.), a class action in which the plaintiffs proved, in a trial by jury, that women correctional employees had been subject to a pattern of sexual harassment committed by top officials at the D.C. Department of Corrections; *Keepseagle, et al. v. Venemen* (D.D.C.), a class action in which Native American farmers and ranchers allege that the USDA has engaged in racial discrimination in denying them equal access to credit opportunities; and, very recently,

*Dukes, et al v. Wal-Mart Stores, Inc.* (N.D. Cal.), a class action brought on behalf of more than 1.6 million women employees at Wal-Mart Stores in the United States, alleging sex discrimination in promotion and pay decisions.

13. For several years, I taught a course on the subject of professional responsibility at Georgetown University Law Center. I have never been sanctioned by a Court or any other entity and have never been disqualified from any case in which I have entered an appearance.

14. After the named plaintiffs asked me to serve as successor counsel for the putative class, I was provided with copies of Sprenger & Lang's Notice of Motion for Directions from the Court for the Implementation of the September 24, 2004 Order and to Amend the Protective Order and Cargill's Memorandum in response to that brief. Both briefs were provided to me by Charles Lundberg, whom I understand has entered an appearance in this case as well.

15. I observed that the brief filed by Cargill referred to a decision in *In re Potash Antitrust Litigation,* as well as four cases in which I or my firm served as co-counsel with Sprenger & Lang at one time. *See* Cargill's Mem. at 5 & n.2. I am not familiar with the *Potash Antitrust Litigation* and do not practice anti-trust law at my firm. Nor was I associated with my firm during the time it was involved in that litigation. None of the lawyers who would work on this case were at the firm at the time of the *Potash* litigation.

16. Of the other four cases cited by Cargill in which either I or my firm was involved with Sprenger & Lang, two of those cases, *Young v. Potomac Electric* and *Johnson v. Pepco*, were consolidated as a single action and involved charges of racial discrimination against

a class of African American employees at electric utilities located in the Washington DC area. The cases ended more than a decade ago. I served as co-counsel with Sprenger & Lang in representing the plaintiffs in those cases and worked with Paul Sprenger and Jane Lang in the litigation. The cases settled and the Court commended our work during the fairness hearing. Of the other two cases cited by Cargill, *Mehling v. New York Co.* and *Gottlieb v. SBC Communications*, I was personally unfamiliar with both of these cases. Upon inquiry of my partners, I learned that while the *Mehling* case is pending, Sprenger & Lang is no longer a counsel of record and that the *Gottlieb* case was resolved a few years ago. Neither case involved civil rights claims.

17. Cargill also referred to several other cases, which it characterized as "non-employment related matters," on the basis of which it questioned my firm's motivation for offering to serve as successor counsel in this action. *See* Cargill's Memo. at 5 n.2. I was not involved in any of that litigation and was personally unaware of the details of it. Upon inquiry of my partners, I learned that the litigation to which Cargill referred has concluded.

18. I have advised the plaintiffs and Sprenger & Lang that, although my firm is willing to consider serving as successor counsel for the plaintiff class, it lacks sufficient information with which to make an informed judgment as to whether it would undertake that substantial responsibility.

19. Ordinarily, in the course of investigating claims of discrimination to determine whether my firm would recommend class litigation, we conduct scores of interviews of witnesses, review documents that may properly be shared with us, and conduct an extensive

investigation of the company or entity against which the case would be brought. This investigation ordinarily takes 6 to 12 months to conclude. It is very unlikely that we will be able to undertake and conclude that kind of investigation of the plaintiffs' claims in this case within the time allotted by the Court in its September 24, 2004 Memorandum Opinion and Order.

20. In order to avoid the need for such a time-intensive investigation, I asked Mr. Lieder to see copies of the parties' briefs and attachments addressing class certification. I requested these particular documents because, in my experience, those materials contain most of the information that each party believes speaks to whether the proposed class should be certified and might provide some insight, albeit not conclusive, into the ultimate merits of the case.

21. Mr. Lieder advised me that the parties disagree as to whether those materials may be shared with successor counsel. Out of that disagreement, I understand, Sprenger & Lang filed the pending motion seeking leave to share these materials with me.

22. The opportunity to review these materials would assist my firm greatly in making a prompt determination whether it is prepared to enter an appearance as successor counsel for the plaintiff class. I have every confidence that, were I provided these materials, my firm could make such a determination well within the time allotted by the Court for the identification of successor counsel.

23. I have read the stipulation and protective order entered in this case – governing the confidential treatment of certain materials in this case – which was attached as Exhibit B to Sprenger & Lang's notice of motion for direction from the court. I would be prepared

to submit to the terms of that Order.

24. I have had no discussions with Sprenger & Lang about the substance of this action or its merits and will not engage in any such discussions absent leave of the Court.

25. I plan to attend the November 16, 2004 hearing on the pending motion to afford the Court the opportunity to ask any questions it may have.

Pursuant to 28 USC §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 5, 2004

__________/s/____________________________

Joseph M. Sellers