**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Civil No. 01-2086 (DWF/AJB)

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Cargill Incorporated,

Defendant.

**MEMORANDUM OPINION AND ORDER**

---

Lawrence P. Schaefer, Esq., Susan M. Coler, Esq., and Teresa Kathleen Patton, Esq., Sprenger & Lang, 325 Ridgewood Ave., Minneapolis, MN 55403; Michael P. Lieder, Esq., Paul Carl Sprenger, Esq., and Steven M. Sprenger, Esq., Sprenger & Lang, 1614 20th St. NW, Washington, DC 20009, counsel for Plaintiffs.

Holly S. A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan, Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., Ryan E. Mick, Esq., Shari L. Jerde, Esq., Emily L. Fitzgerald, Esq., and Heather Toft, Esq., Dorsey & Whitney, 50 6th St. S., Ste. 1500, Minneapolis, MN 55402-1498, counsel for Defendant.

Lewis A. Remele, Jr., Esq. and Charles E. Lundberg, Esq, Bassford Remele P.A., 33 South Sixth Street, Suite 3800, Minneapolis, MN 55402-3707, counsel for Sprenger & Lang.

Peter N. Thompson, Esq., Hamline Law School, 1536 Hewitt Ave., St. Paul, MN 55104, Special Master.

---

## Introduction

The above-entitled matter came on for hearing before the undersigned United States District Judge on November 16, 2004, pursuant to Sprenger & Lang's ("S&L") Motion for Directions from Court for the Implementation of the September 24, 2004 Order and to Amend the Protective Order. For the reasons set forth below, the Court grants S&L's motion as follows.

## Background

On September 24, 2004, the Court issued an order disqualifying S&L as counsel for Plaintiffs. The factual background of this case and the facts underlying the Disqualification Order are set forth at considerable length in the Court's September 24, 2004, Order (the "Disqualification Order"). In the Disqualification Order, the Court found that S&L's solicitation of information from R. Bill Douglas, a former Cargill manager, without protecting against the disclosure of confidential and privileged materials and S&L's handling and retention of those materials, compromised the integrity of the proceedings. The Court disqualified S&L and gave Plaintiffs 120 days to find replacement counsel or face dismissal of the case.[1]

S&L asserts that Plaintiffs have selected the law firm Cohen, Milstein, Hausfeld & Toll ("Cohen Milstein") and one of its members, Joseph Sellers, as their new counsel. Cohen Milstein has not decided whether it will represent Plaintiffs.[2] S&L asserts that its efforts to assist Plaintiffs in finding

---

[1] Because S&L has been disqualified and Plaintiffs are not presently represented by counsel, the law firm of Bassford Remele P.A., which has been retained to represent S&L, brought this motion on behalf of S&L as an interested party.

[2] If Cohen Milstein does not agree to represent Plaintiffs in this action, S&L contends that at least two other firms are interested in representing Plaintiffs.

replacement counsel are being thwarted by the positions taken by Cargill with respect to the transfer of documents (such as filings, documents produced or generated during discovery, expert reports, deposition transcripts, etc.) to potential counsel. On September 28, 2004, Cargill's counsel wrote to S&L and stated that S&L could not disclose confidential Cargill information or documents, including work product, briefs, portions of briefs or attachments that are under seal pursuant to the July 14, 2003, Stipulation and Protective Order ("Protective Order"). (*See* Declaration of Charles E. Lundberg ("Lundberg Decl.") ¶ 2, Ex. D.) Cargill's counsel also informed S&L that it could not disclose "information and work product gained or created" by S&L after July 6, 2000, the date of the first contact between Douglas and S&L. (*Id*.)

For purposes of this motion, S&L asserts that it should be able to provide potential successor counsel the briefs and supporting documents filed by both parties in support of and in opposition to Plaintiffs' Motion for Class Certification and Cargill's Motion for Reconsideration of the Court's July 15, 2002, Order (the "class certification and liability period filings") and all orders entered by the Court (collectively, the "Specified Materials"), provided that potential counsel agree to be bound by the Protective Order. Without access to the Specified Materials, S&L contends that potential successor counsel will be unable to evaluate whether they wish to represent Plaintiffs. Moreover, S&L asserts that Cargill's position unfairly punishes the Plaintiffs, who were innocent of the wrongdoing that lead to the disqualification of S&L. Therefore, S&L moves the Court for an order: (1) amending the Protective Order to allow potential successor counsel to review certain documents; (2) stating that potential successor counsel can review critical pending motions, specifically the class certification and liability period filings, and all Court orders (the Specified Materials); and (3) allowing successor counsel

to argue what, if anything, of Cargill's documents and S&L's additional work product should be turned over to it.

Cargill asserts that providing the Specified Materials to potential successor counsel may taint that counsel because the Specified Materials might contain work product that was influenced by privileged information wrongfully obtained by S&L from Douglas. Cargill also opposes S&L's proposed changes to the Protective Order and contends that potential successor counsel should not be allowed to review Cargill's confidential information under the Protective Order. The parties have been unable to reach an agreement on these issues.

## Discussion

### 1. Standard of Review

The Court has "wide discretion in framing sanctions to remedy abuses, including attorney disqualification, the assessment of attorneys fees, monetary sanctions, and the dismissal of the action." *Olson v. Snap Prods., Inc.*, 183 F.R.D. 539, 542 (D. Minn. 1998). Moreover, the Court has the power to modify the Protective Order, under the express reservation of rights in the Protective Order itself and through its inherent power. (*See* Declaration of Susan M. Coler ¶ 2, Ex. B. ("Protective Order"), at ¶ 15); *In re Olsen*, 861 F.2d 188, 189 (8th Cir. 1988).

#### A. Class Certification and Liability Period Filings and All Court Orders

S&L asserts that it should be allowed to provide the Specified Materials to Plaintiffs' potential successor counsel.[3] These documents include, for example, the parties' class certification and liability

---

[3] In addition to the Court orders, the Specific Materials that are the subject of this motion are listed in Exhibit A to the Reply Declaration of Michael Lieder. S&L concedes that whether additional (continued...)

period briefs, expert reports, documents produced during discovery and deposition testimony. S&L asserts that barring Plaintiffs' potential successor counsel from the materials at issue would prevent that counsel from reviewing a significant portion of work performed by S&L and therefore hinder successor counsel's ability to determine whether or not to take the case. S&L asserts that such an outcome would unfairly punish the Plaintiffs. In addition, S&L contends that Cargill has not demonstrated that any of the Specified Materials have been tainted by S&L's contact with Douglas.

In order to address the parties' dispute, S&L suggests that the Court engage in a balancing test like the one used in *First Wisconsin Mortg. Trust v. First Wis. Corp.*, 584 F.2d 201, 204 (7th Cir. 1978). In *First Wisconsin*, the Seventh Circuit Court of Appeals explained that in cases where attorneys have been disqualified to represent a client because of prior simultaneous representation of that client's adversary, the answer "is not a per se preclusion [of work product performed during the period of disqualification] but must be a flexible one" based on the facts and circumstances of the case. *Id*. at 202.

Cargill, on the other hand, asserts that S&L's disqualification was based on an improper intrusion into Cargill's privileges by S&L and, as a result, much of their work in this case has been tainted. Cargill asserts that there is a risk that confidential and privileged information has been used by S&L as early as S&L's first contact with Mr. Douglas on July 6, 2000, and that this risk will persist if successor counsel has access to tainted material. Cargill insists that it is not required to prove document-by-document which materials have been tainted and asserts that successor counsel should be

---

[3](...continued)
documents or work product not listed in Exhibit A should be turned over to replacement counsel will appropriately be addressed after replacement counsel is retained.

barred from access to any potentially tainted work product.[4] Finally, Cargill argues that even if the Court were to engage in a balancing test, Cargill is the only party that will suffer harm.

Borrowing Cargill's breakdown of document categories, the Court finds that there is no reason to bar potential successor counsel from access to the deposition transcripts of plaintiffs, documents produced by Cargill, and Cargill's written discovery responses. These materials and information, which were either provided by Cargill or Plaintiffs themselves through testimony, cannot reasonably be found to have been tainted by S&L's improper contact with Douglas. Therefore, the Court finds that these materials, insofar as they are contained in or are part of the Specified Materials, can be provided to potential successor counsel subject to the provisions of the Protective Order as to be amended per this order. In addition, the Court finds no justification for prohibiting the transfer of the filings concerning the pending statute of limitations issue. The arguments made in the parties' briefs are almost entirely legal in nature and neither party has attached any factual materials as exhibits. It is not reasonable to presume that those filings are tainted.

The question of whether potential successor counsel can review the class certification briefs and supporting exhibits requires further analysis. The exhibits submitted with the class certification motions consist of expert reports (including those prepared by Cargill's experts), documents produced by the

[4] At the hearing on this motion, counsel for Cargill suggested that different general categories of information present different levels of risk of being "tainted." In order of increasing risk, these categories are: (1) depositions of plaintiffs; (2) documents produced by Cargill; (3) written discovery responses from Cargill; (4) depositions of Cargill witnesses; and (5) S&L materials created after July 6, 2000 (work product, motion papers, pleadings, and expert reports).

parties in this action, deposition transcripts, and summaries of the above information. All of these materials are part of the case record or have been exchanged between the parties.[5]

As an initial matter, the Court respectfully rejects the notion that S&L's successor counsel must be denied access to virtually everything that was generated after July 6, 2000, based on the theory that all such materials are presumably tainted by S&L's misconduct. Although there is no case squarely on point, the weight of authority leads the Court to conclude that the specified court filings and orders at issue here are not *per se* tainted simply because S&L was disqualified. *See First Wisconsin*, 584 F.2d at 207; *see also Behunin v. Dow Chem. Co.*, 642 F. Supp. 870, 872 (D. Colo. 1986) (reasoning that the issue of work product turnover should be considered apart from the determination of disqualification). The Court agrees with the line of cases that have adopted a flexible case-by-case approach to determine whether to allow access to disqualified counsels' work product. *See First Wisconsin*, 584 F.2d at 207; *see also Behunin*, 642 F. Supp. at 872. Using such an approach here, the Court finds that after careful balancing, the facts and circumstances of this case weigh in favor of allowing potential successor counsel access to the materials at issue.

First, Cargill made no attempt to demonstrate that any of the specified materials are tainted or even reasonably likely to be tainted. Here, the Court disqualified S&L for ethical

---

[5] It bears repeating that the Court is not considering the transfer of any other S&L work product, disclosed or undisclosed, at this time.

violations that tainted the proceedings and implicated the integrity of the judicial process.[6] The underlying ethical violations prompting disqualification involved S&L's mishandling of Cargill's confidential and privileged material. While S&L's conduct is relevant to the issue of the turnover of work product and other materials, it is not determinative. The Court's analysis on the motion before it is different from that used for disqualification and requires a higher showing by Cargill. The Court is mindful of Cargill's argument that the "best evidence" of the breach of Cargill's privileged materials disappeared when Douglas threw away the documents S&L returned to him; however, Cargill is in possession of at least some of those documents and has yet to present the Court with a single example of how any information improperly received from Douglas has been incorporated in any way into the Specified Materials at issue here. In addition, Cargill has not identified a single deposition question or statement in an expert report that it suspects was influenced by information improperly obtained from Douglas. Instead, Cargill asks the Court to presume that the vast body of materials generated after July 6, 2000, in this case are tainted.[7] The Court is unwilling to do so.

Cargill's reliance on *EZ Paintr Corp. v. Padco, Inc.*, 1983 WL 423 (D. Minn. Nov, 9, 1983) (Murphy, J.), *aff'd*, 746 F.2d 1459, 1464 (Fed. Cir. 1984), does not persuade the Court otherwise. In *EZ Paintr*, the Federal Circuit Court of Appeals affirmed a ruling that limited the turnover of work product by a disqualified law firm. In *EZ Paintr*, there was evidence that two lawyers, who had

---

[6] While the Court certainly has oversight responsibility to watch for the possibility of prejudice and will continue to do so, a specific showing of prejudice or taint was not a predicate to the Court's decision to disqualify S&L.

[7] Such a presumption would be particularly inappropriate for certain categories of documents, such as Cargill's own expert reports or legal briefs, that cannot reasonably be said to have been influenced by tainted information.

previously been partners at a law firm that represented the opposing party in the same litigation, had acquired information about the merits of the opposing party's legal theories and other confidential information. *See EZ Paintr*, 1983 WL 423 at *3; 746 F.2d at 1461-62. There was also evidence that at the time the two lawyers worked for this law firm there were only seven attorneys and that it was common practice for the attorneys to discuss the merits of legal matters being handled by the individual attorneys. *See EZ Paintr*, 1983 WL 423 at *4; 746 F.2d at 1461. In addition, both the district and appellate courts in *EZ Paintr* considered the small proportion of work product involved. *See EZ Paintr*, 1983 WL 423 at *4; 746 F.2d at 1464.

S&L's contacts with Douglas, on the other hand, while sufficient to warrant disqualification, do not carry the same level of risk presented in the *EZ Paintr* case. Without minimizing the ethical violations that led this Court to disqualify S&L, for purposes of this motion, the Court is not convinced that Douglas possessed and imparted the type of contemporaneous legal information about the merits of this case or had the amount and type of contact with S&L's attorneys that would justify a blanket presumption that all S&L materials generated after its initial contact with Douglas are tainted.

Second, denying the materials that are subject to this motion to potential successor counsel would unfairly punish Plaintiffs. There is no evidence and there has been no allegation that Plaintiffs are responsible in any way for S&L's misconduct. Denying potential successor counsel access to the specified materials at issue here would greatly harm Plaintiffs. Not only would it jeopardize their chances of obtaining replacement counsel, it would destroy the work already performed and require successor counsel to effectively start over. In effect, Cargill seeks a result that would unfairly punish the

Plaintiffs in return for no demonstrable benefit to Cargill, other than the advantage gained in imposing strategic and financial costs on Plaintiffs.

Thus, the Court finds that the harm that Plaintiffs would suffer by denying potential successor counsel access to the Specified Materials outweighs any risk to Cargill, particularly in light of the fact that Cargill has failed to demonstrate even a reasonable possibility that any information passed from Douglas to S&L has manifested itself in any of the materials at issue. Admittedly, the balance is a delicate one and it is certainly possible, as counsel for Cargill suggests, that the turnover of documents, including work product, creates *some* possibility that confidences or secrets that may reside with S&L may be used to the detriment of Cargill. While the Court acknowledges this possibility, the Court believes that the balancing test utilized by the Court is the only appropriate approach. The mere possibility that confidences or secrets will be used against Cargill does not outweigh the prejudicial effect of making the Specified Materials unavailable to Plaintiffs' prospective successor counsel. Therefore, the Court grants S&L's motion and holds that S&L can transfer class certification and liability period filings, along with all Court orders issued in this case, to Plaintiffs' potential successor counsel; provided that potential replacement counsel agrees to be bound by the Protective Order, as amended.

The Court disagrees with Cargill's suggestion that an order allowing S&L to turn over the Specified Materials would defeat the disqualification order. S&L's sanction in this case was disqualification. Moreover, disqualification was necessary to preserve "the public trust in both the scrupulous administration of justice and in the integrity of the bar." (Order at 27.) Even though Cargill was likely prejudiced by S&L's ethical violations, the primary justification for disqualification was the

vindication of the integrity of the bar and the Court. Indeed, in the Disqualification Order, the Court noted that the extent of the privilege breach by S&L was unknown and that the risk that S&L might use improperly obtained information against Cargill justified disqualification. The Court is satisfied at least with respect to the limited documents at issue here, that disqualification substantially reduced the possibility of the misuse of such information.

Counsel for Cargill has suggested that any balancing of harms will result in prejudice to Cargill. Counsel for Cargill is appropriately concerned about this issue, as is the Court. S&L and any successor lawyer and law firm remain under a clear ethical duty not to use any information, be it work product or not, that is the derivative of improperly obtained confidential or privileged information. The Court has no intention of permitting the spread of any taint and underscores the fact that there are safeguards available to protect Cargill, including for example, *in limine* motions, a meaningful pretrial, and close scrutiny by this Court of all materials and evidentiary matter submitted. In addition, Cargill remains free to challenge the use or disclosure of specific documents or categories of documents it believes to be tainted, but it must be prepared to offer some support to that effect. Being mindful of Cargill's concerns and to further reduce any potential risk to Cargill, the Court also holds that S&L shall be prohibited from communicating with new successor counsel about the merits of this case, except to discuss the logistics of transferring the class certification and liability period filings to new counsel or until further order of the Court.

**B. Modification of the Protective Order**

S&L also moves the Court for an order modifying the Protective Order to accommodate the transition of this case to potential successor counsel. First, S&L requests that the Court add new

subparagraphs to paragraphs 6 and 7 of the Protective Order, which identify the persons to whom "confidential" and "attorneys' eyes only" information and documents may be disclosed or made available, to include potential replacement counsel. The new subparagraphs would read as follows:

> Counsel who have agreed to be considered by plaintiffs as replacement counsel after the disqualification of Sprenger & Lang on the conditions that (a) each firm to whom the disclosure is made acknowledges that it is bound by this Stipulation and Order by signing a copy of Exhibit B, (b) a copy of Exhibit B has been provided to counsel for Cargill, and (c) Sprenger & Lang prepares and maintains a list of all "confidential" and "attorneys' eyes only" information and documents that it provides to such potential replacement counsel and such list shall be sent to counsel for Cargill as to each firm not selected as replacement counsel or co-counsel within five days after that firm is eliminated as a potential replacement counsel or co-counsel.

Second, S&L requests that Exhibit B of the Protective Order should be substantially identical to Exhibit A, the agreement to be signed by persons noticed for deposition, persons designated as trial witnesses, and outside consultants or experts. In addition, S&L suggests that an additional paragraph be added to Exhibit B as follows:

> I agree that if [Name of Firm] does not become counsel or co-counsel of record for plaintiffs in this action, it shall return to counsel for Cargill all documents provided to [Name of Firm] by Sprenger & Lang with respect to the action within the earlier of (a) ten days after [Name of Firm] withdraws from consideration as replacement counsel or (b) by February 1, 2005 unless [Name of Firm] has been selected as counsel or co-counsel for plaintiffs in this action.

Cargill asserts that the Protective Order should remain as it is, and accordingly, because S&L is no longer a "qualified person" under the Protective Order, it should no longer retain custody of any of Cargill's confidential documents. Cargill also asserts that Plaintiffs' potential successor counsel are not, and should not be, "qualified persons." Cargill contends that the lawyers identified by S&L in its opening brief, including Cohen Milstein, should not have access to the confidential material Cargill

produced or filed under seal, and it suggests that S&L has "close ties" with some of these lawyers. Cargill asserts that the fact that certain of the firms have been adverse to Cargill in previous cases is further reason that these firms should not be allowed access to Cargill's confidential information.[8] Moreover, Cargill maintains that access to these documents by another firm will taint that firm.

The Court sees no reason why the Protective Order should not be modified to allow potential successor counsel to review "confidential" and "attorneys' eyes only" information and documents as contained in the Specified Materials. The Court believes that the changes proposed by S&L will adequately protect Cargill against improper disclosure or use of the confidential documents S&L has specified. Moreover, the Court finds no reason that S&L should not be allowed to retain custody of Cargill's documents until successor counsel is retained and the documents are transferred. As discussed above, there is little chance that the documents Cargill produced during discovery pursuant to the Protective Order contain any tainted information. In addition, the Court anticipates that once replacement counsel is retained, there will be further motions to determine what, if any, other documents or work product can be turned over. Until then, S&L can retain custody of its files in this matter.

---

[8] Cargill also suggests that because certain firms may have been disqualified from representing parties in past cases, it would be unwise to consider them as "qualified persons" under the Protective Order. The Court declines to consider any firm's past disqualification as relevant to the present motion. Any sweeping assumptions as to a firm's fitness to represent Plaintiffs (and therefore to have access Cargill's confidential information) based on past activities of the firm's members are inappropriate.

**Conclusion**

Based on the files, records, and proceedings herein, and for the reasons set forth above, **IT IS HEREBY ORDERED** that:

1. Sprenger & Lang's Motion for Directions from the Court for the Implementation of the September 24, 2004 Order and to Amend the Protective Order (Doc. No. 384) is **GRANTED** as follows:

a. Sprenger & Lang, PLLC is authorized to retain Plaintiffs' legal file, including the firm's "work product" until further order of the Court. In addition, Sprenger & Lang, PLLC is hereby authorized to provide potential replacement counsel the parties' complete briefing for Plaintiffs' Motion for Class Certification and Cargill's Motion for Reconsideration of the Court's July 15, 2002 Order, including all supporting documents, and all orders entered by the Court; provided, however, that potential counsel agree to be bound by the Protective Order, as amended below.

b. Paragraph 6 of the Protective Order is hereby amended to include the following language:

> (h) Counsel who have agreed to be considered by plaintiffs as replacement counsel after the disqualification of Sprenger & Lang on the conditions that: (a) each firm to whom the disclosure is made acknowledges that it is bound by this Stipulation and Order by signing a copy of Exhibit B; (b) a copy of Exhibit B has been provided to counsel for Cargill; and (c) Sprenger & Lang prepares and maintains a list of all "confidential" and "attorneys' eyes only" information and documents that it provides to such potential replacement counsel and such list shall be sent to counsel for Cargill as to each firm not selected as replacement counsel or co-counsel

within five days after that firm is eliminated as a potential replacement counsel or co-counsel.

c. Paragraph 7 of the Protective Order is hereby amended to include the following language:

(f) Counsel who have agreed to be considered by plaintiffs as replacement counsel after the disqualification of Sprenger & Lang on the conditions that: (a) each firm to whom the disclosure is made acknowledges that it is bound by this Stipulation and Order by signing a copy of Exhibit B; (b) a copy of Exhibit B has been provided to counsel for Cargill; and (c) Sprenger & Lang prepares and maintains a list of all "confidential" and "attorneys' eyes only" information and documents that it provides to such potential replacement counsel and such list shall be sent to counsel for Cargill as to each firm not selected as replacement counsel or co-counsel within five days after that firm is eliminated as a potential replacement counsel or co-counsel.

d. The Protective Order is hereby amended to include a new Exhibit B, which will be identical to Exhibit A, except that Exhibit B shall contain the following additional paragraph:

I agree that if [Name of Firm] does not become counsel or co-counsel of record for plaintiffs in this action, it shall return to counsel for Cargill all documents provided to [Name of Firm] by Sprenger & Lang with respect to the action within the earlier of (a) ten days after [Name of Firm] withdraws from consideration as replacement counsel or (b) by February 1, 2005 unless [Name of Firm] has been selected as counsel or co-counsel for plaintiffs in this action.

Dated: November 23, 2004

s/Donovan W. Frank
DONOVAN W. FRANK
Judge of United States District Court