FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., On behalf of themselves and all others similarly situated, *Plaintiffs,* | ) | CIVIL ACTION NO. 01-CV-2086 (DWF/AJB) CLASS ACTION |
| v. | ) | |
| CARGILL, INCORPORATED, *Defendant.* | ) | **MEMORANDUM IN SUPPORT OF MOTION TO SEVER FORMER S&L ATTORNEY TERESA PATTON FROM DISQUALIFICATION ORDER** |

## INTRODUCTION

Former Sprenger & Lang attorney Teresa Patton ("Patton") brings this motion to sever her from the Court's Disqualification Order dated September 24, 2004. Patton had no involvement in or knowledge of the conduct resulting in the Court's disqualification of Sprenger & Lang. However, Patton was the primary Sprenger & Lang contact for most of the named plaintiffs. Severing Patton from this Court's Disqualification Order, in light of the fact that she had no role in the misconduct, would allow her to communicate with potential successor counsel and continue to work on the case if appropriate. The Plaintiffs, who were unavoidably harmed by the Disqualification Order through no fault of their own, would benefit greatly as a result, and defendant Cargill Incorporated ("Cargill") would suffer no prejudice.

SCANNED
JAN 03 2005
U.S. DISTRICT COURT ST. PAUL

## FACTS

### PATTON'S BACKGROUND

Patton has been an attorney in good standing licensed to practice law in Minnesota since November 1989. She has practiced in the area of employment discrimination for sixteen years. Patton started work with the law firm of Sprenger & Lang, PLLC ("S&L") in January 2001 as an attorney, of counsel. She was hired to work on class action cases, as well fifteen individual cases she brought to the firm. (Declaration of Teresa K. Patton at 1, 2).

### PATTON'S RELATIONSHIP WITH THE CARGILL PLAINTIFFS

Some time during the first half of 2002, Patton was assigned to work on the Cargill case. From that point forward, she was the primary contact for many of the plaintiffs. Among other things, she prepared and defended the depositions of eighteen of the twenty-seven named plaintiffs: Nii-Akwei Acquaye (in part); Sean Allen; Hollis Branham; Louis Darden; Della Dickson; Virginia Douglas; Cheneta Hughey; Keith Lewis; Vivian Little; Valerie Mason-Robinson; Anthony McDowell; Phyllis Reece; Tonya Ross; Charles Scott; Clintonia Simmons; Emily Tyler; Steve Wint, and Sean Wright. She was also involved in other aspects of the case, including taking the depositions of Cargill witnesses and working on the motion for class certification. (*Id.* at 3).

In the course of preparing for and participating in client depositions, Patton would typically spent a minimum of three full days with the clients. She also maintained ongoing contact with the clients for other purposes, including updating discovery responses and preparing the class certification memorandum, for which she was the

project manager for plaintiff facts. As a result of her extensive contact with the plaintiffs, Patton forged deep personal connections with them as individuals and a strong commitment to and belief in their case. (*Id.* at 4, 5).

**PATTON'S LACK OF INVOLVEMENT IN S&L MISCONDUCT**

Although Patton was assigned to the Cargill case in 2002, she had absolutely no involvement in any of the misconduct cited in this Court's Disqualification Order dated September 24, 2004 (the "Disqualification Order"). Patton has never met Bill Douglas, the witness whose contact with S&L was the subject of much of S&L's misconduct, nor has she ever seen him to her knowledge. She has never had a conversation with Douglas, communicated with him in any way, or participated in any meetings where he was present in person or by telephone. (*Id.* at 6, 7).

Patton was unaware of the existence of the documents S&L obtained from Bill Douglas prior to the time that S&L returned the documents Cargill's counsel. She was not aware of or involved in the acquisition, retention, or disposition of those documents. She has never seen the documents nor is she aware of their contents. (*Id.* at 8).

Patton was aware of Cargill's motion to disqualify S&L, but her involvement in the defense of that motion was very limited. She edited her own and two other affidavits unrelated to the matters resulting in S&L's disqualification, and she attended a mock oral argument just prior to the hearing in August 2004. She may also have edited parts of S&L's brief, but she has no memory of doing so. (*Id.* at 9).

This Court cited paragraph 4 of the Declaration of Teresa K. Patton dated May 3, 2003 in its Disqualification Order (page 14). Paragraphs 3 and 4 of that Declaration were based on information communicated to Patton by others at the firm, regarding items in

which she had no involvement. Paragraphs 5 through 10, which the Court did not mention in its Disqualification Order, pertained to an unrelated motion (to dismiss a particular named plaintiff without prejudice). (*Id.* at 10).

**TERMINATION OF PATTON'S EMPLOYMENT AND CONTACT WITH S&L**

On September 13, 2004, Sprenger & Lang terminated the employment of its two least senior attorneys, including Patton, without warning. At the time, the disqualification motion had been argued but the Court had not issued its decision. September 13, 2004 was Patton's last day at S&L and September 24, 2004 was her last day on the payroll. The Disqualification Order, coincidentally, was issued at the end of the day on September 24, 2004. Since leaving S &L, Patton has limited her contact with S&L attorneys. Her only communication with any S&L attorney since September 2004 has been to respond to written questions about a case unrelated to Cargill. (*Id.* at 11, 12).

**PATTON'S REQUEST TO CONTINUE TO BE AVAILABLE TO REPRESENT THE CARGILL PLAINTIFFS**

In the course of the past two and a half years, Patton has developed strong relationships with most of the Cargill plaintiffs. She wants them to have the best representation possible, and she is a unique position to contribute to that representation because of her long-standing relationships with them. Patton would like to communicate with the potential successor counsel identified in the Court's November 23, 2004 "Implementation Order" about the possibility of continuing to represent the Cargill plaintiffs as local counsel or in some other capacity. However, she has not contacted that firm because she wanted to obtain the Court's permission first, to avoid any appearance of impropriety. (*Id.* at 13, 14).

Patton is now seeking the Court's guidance on how to proceed. S&L's misconduct, in which she played absolutely no part and of which she was not aware, has impaired her ability to practice law on behalf of these clients, to their detriment and hers. That is a source of unintended harm to the Plaintiffs as a result of the Court's Disqualification Order. If the Court issues an order severing Patton from its Disqualification order, that would allow her to communicate with potential successor counsel and possibly to continue to represent Plaintiffs if appropriate. (*Id.* at 15, 16).

**ARGUMENT**

Disqualification is committed to the trial court's discretion. See *Jenkins v. State of Missouri*, 931 F.2d 470, 484 (8th Cir. 1991). This discretion is especially broad in class action cases. See id. "[T]hese powers are governed not by rule or statute, but by the control necessarily vested in courts to manage their affairs so as to achieve the orderly and expeditious disposition of cases." *Chamber v. NASCO, Inc.*, 501 32, 43 (1991) (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962)). The Court has "wide discretion in framing sanctions to remedy abuses, including attorney disqualification, the assessment of attorneys fees, monetary sanctions, and the dismissal of the action." *Olson v. Snap Prods., Inc.*, 183 F.RD. 539 (D. Minn. 1998).

When it issued its Disqualification Order, the Court recognized "the difficult and complicated position that Plaintiffs and the putative class are placed in", and the Court stated that it did not "minimize the hardships Plaintiffs will incur in trying to secure other counsel at this stage in the proceedings". (Disqualification Order at 27). However, the Court determined that "these considerations must yield to the ethical considerations presented by S&L's conduct, which implicate the integrity of the judicial process." (*Id.*

at 27). Granting Patton's motion to sever at this juncture would be an appropriate further balancing of the Court's concerns about the integrity of the judicial process and the hardship to Plaintiffs, completely consistent with its Disqualification Order and without causing any prejudice to Defendant.

The Court's recent Implementation Order dated November 23, 2004 in response to S&L's Motion for Directions from Court for the Implementation of the September 24, 2004, Order and to Amend the Protective Order, is instructive as to this motion as well. In that motion, S&L sought the Court's guidance regarding the transfer of its file to successor counsel. The Court ruled that, despite S&L's disqualification, certain "materials and information," unrelated to S&L's misconduct, "cannot reasonably be found to have been tainted." Implementation Order at 6. The Court further held that certain court filings and orders were not *per se* tainted simply because S&L was disqualified. *Id.* at 7. Finally, the Court recognized the risk of "unfairly punish[ing]" the plaintiffs by jeopardizing their chances of obtaining replacement counsel and destroying the work already performed on the file and essentially forcing the plaintiffs to start over. *Id.* at 9.

The Court noted in the Implementation Order that there was no evidence or allegation that Plaintiffs were responsible in any way for S&L's misconduct. (*Id.* at 9). Similarly, attorney Patton, who was not involved in or aware of S&L's misconduct, cannot reasonably be found to have been tainted, simply because she worked for S&L at the time. Prohibiting Patton from continuing to work on the case would further harm the plaintiffs by jeopardizing their chances of retaining counsel of their choice, and by forcing their new counsel to "start over" without the benefit of Patton's relationships with

many of the plaintiffs. The harm that the Cargill Plaintiffs and Patton would suffer far outweighs any risk to Cargill.

Moreover, with regard to that potential risk to Cargill, the Court recognized in its Implementation Order that such risks could be minimized through numerous safeguards, such as "*in limine* motions, a meaningful pretrial, and close scrutiny by the Court of all materials and evidentiary matter submitted." *Id.* at 11. The same is true here: any potential risk to Cargill may be effectively minimized by those same procedural safeguards.

## CONCLUSION

Just as the Plaintiffs were not responsible in any way for S&L's misconduct, neither was Patton, even though she worked for S&L at the time. Granting Patton's motion to be severed from the Disqualification Order would allow her to communicate with potential successor counsel. If successor counsel then decides to retain her services, Plaintiffs would benefit greatly from that contribution to their case.

Date: 12/30/04

Teresa K. Patton
Teresa K. Patton, Esq., pro se
MN ID Number 205679
1546 Chelsea Street
Saint Paul, MN 55108
(651) 488-8875