UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, *et al.*, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-CV-2086 (DWF/AJB)

**CARGILL'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO OBTAIN BALANCE OF CASE RECORD**

## I. INTRODUCTION

As Cargill predicted, Plaintiffs' earlier request for a modification of the Protective Order merely set the stage for Plaintiffs' successor counsel to seek the balance of the materials obtained and generated by Sprenger & Lang in this case, including matters tainted by Sprenger & Lang's improper relationship with a former Cargill human resources manager. What Cargill could not predict, however, is that successor counsel would demonstrate such little actual need and scant legal support to justify reintroducing into this case matters the Court already once has determined necessitated the total disqualification of Plaintiffs' counsel, including Sprenger & Lang attorneys who professed to having nothing more than a passing or indirect exposure to the ethical taint. Successor counsel, in fact, fails to distinguish or even acknowledge contrary case law from within this jurisdiction. Successor counsel fails to explain how its generalized desire for the information outweighs the specific harms Cargill would suffer from such a disclosure, as discussed by Cargill in prior briefing. Most importantly, successor counsel fails to address the concerns the Court previously expressed about the integrity of the judicial process, the preservation of the public trust, and the scrupulous administration of justice. In short, successor counsel has articulated neither the need nor justification for the access sought.

## II. BACKGROUND

The Court well knows and understands the series of events that resulted in the difficult decision to disqualify Sprenger & Lang from further representing Plaintiffs in this matter. One of the ultimate rationales behind the Court's decision to disqualify Sprenger & Lang was the realization that Sprenger & Lang had deprived Cargill, the Court, and even themselves of the means to demonstrate precisely to what extent the taint caused by the misappropriation and mishandling of documents and information received from Bill Douglas had prejudiced this case. See September 24, 2004, Memorandum Opinion and Order ("Disqualification Order") at 26-27 [Docket No. 380].

This Court subsequently authorized "limited" access to "complete briefing for Plaintiffs' Motion for Class Certification and Cargill's Motion for Reconsideration of the Court's July 15, 2002 Order, including all supporting documents, and all orders entered by the Court." November 23, 2004, Memorandum Opinion and Order ("Order Amending Protective Order") at 11, 14 [Docket No. 396]. Because of the still present threat that the taint that had irremediably infected Sprenger & Lang might spread, however, the Court also ruled that Sprenger & Lang "shall be prohibited from communicating with new successor counsel about the merits of this case." Id. at 11. Moreover, the Court cautioned that "any successor lawyer and law firm remain under a clear ethical duty not to use any information, be it work product or not, that is derivative of improperly obtained confidential or privileged information" and confirmed that "the Court has no intention of permitting the spread of any taint." Id.

By contrast, successor counsel's casual suggestion that it be granted access "to the remainder of materials generated in connection with this action," except for those that *Sprenger & Lang* determines to have been "materials produced by Mr. Douglas" or "notes, compilations or other references to information provided by Mr. Douglas." Pls.' Mem. Supp. Mot. To Obtain

Balance of Case Record ("Pls.' Mem.") at 2, 3 [Docket No. 415], disregards every concern that led this Court to disqualify Sprenger & Lang in the first instance.

Successor counsel's request also needlessly delays resolution of the pending class certification motion, the briefing for which successor counsel now has had months to study, which, according to Rule 23(c)(1)(A), must be resolved "at an early practicable time," and which Plaintiffs' successor counsel concedes "has been fully briefed and awaits argument," Pls.' Mem. at 2. Cargill wrote to successor counsel on January 24, 2005, seeking to schedule a new date for the class certification hearing. Cargill, in accordance with Rule 23(c)(1)(A), believes we should get on with it.

## III. ARGUMENT

### A. Numerous Courts, Confronted With Similar (Or Less Egregious) Circumstances, Have Determined That The Balance Of Harms Favors A Categorical Ban On Access By Successor Counsel To Disqualified Counsel's Files.

As Cargill noted in prior briefing,[1] the courts have recognized that it would accomplish nothing to disqualify counsel because they have been exposed to confidential information of a litigation adversary, then allow that same confidential information to remain and perpetuate itself in the case through the work product disqualified counsel leaves behind. See, e.g., In re George, 28 S.W.3d 511, 515 (Tex. 2000) ("If the work product contains confidential information, transferring the work product to [successor counsel] poses the same threat as . . . [disqualified counsel's] presence in the case. Thus, a restriction on [successor counsel's] access to the work product is necessary to effectuate the purpose of disqualification."); Quark, Inc. v. Power Up Software Corp., 812 F. Supp. 178, 181 (D. Colo. 1992) (prohibiting the turning over of any work product or any working "behind the scenes" by counsel disqualified due to confidences regarding

---

1 See Cargill's Memorandum in Response to Sprenger & Lang's Motion for Direction from the Court for Implementation of the September 24, 2004 Order and To Amend the Protective Order at 6-14 [Docket No. 387].

litigation adversary possessed by single member of law firm because the individual attorney's knowledge "infects his entire firm[, t]his infection is not limited to persons but necessarily seeps into the work product produced by those persons[, and m]erely disqualifying the individual . . . attorneys would not prevent any confidential information that found its way into their work-product from being used against plaintiff by successor counsel").

Cargill recognizes that, with respect to the limited collection of briefing materials disclosed for the limited purpose of enabling Plaintiffs to obtain new counsel, this Court deemed such a categorical ban too restrictive. Successor counsel having been secured, however, the current request for unsupervised access to the remainder of the case file implicates different concerns and warrants a different result. No longer is the pertinent question *whether* Plaintiffs will be represented but, rather, *how* Plaintiffs will be represented. See Blinder, Robinson & Co., Inc. v. Securities Investor Protection Corp., 123 B.R. 900, 912-13 (D. Colo. Bky. 1991) (enjoining disqualified counsel "absolutely" from sharing information with successor counsel because "[i]t is not a question of the game being over if the Attorneys are disqualified" but rather "a question of leveling the playing field in terms of access to information").

There is a reason why, even at great risk and in the face of contrary ethical obligations, Sprenger & Lang cultivated a relationship with Mr. Douglas at the outset of the litigation – because having an insider provide a privileged and confidential insider's view of a litigation adversary provides a tremendous strategic advantage. This is also, of course, the reason that Sprenger & Lang's work product (both that in their files and that which has been filed) proves so tempting for successor counsel, even when successor counsel can articulate no specific, present need for the requested materials. See Wagner v. Lehman Bros. Kuhn Loeb, Inc., 683 F. Supp. 189, 195 (N.D. Ill. 1987) (barring use by successor counsel of evidence improperly obtained by disqualified counsel because "by removing an improper advantage now held by [the plaintiff] the

Court does not believe that it is punishing the [plaintiff] for [it's counsel's] actions[;] [i]nstead all the Court is doing is restoring an equilibrium that should never have been disturbed").

Plaintiffs' successor counsel has averred, but only in a general and conclusory fashion, that it needs every piece of paper ever generated by Sprenger & Lang (except that which Sprenger & Lang voluntarily elects to withhold), "[i]n order to be properly prepared to represent the plaintiffs in the balance of this litigation," see Pls.' Mem. at 1-2, but Plaintiffs' successor counsel has not effectively explained why it needs any or all of the requested material at this time. Rather, successor counsel simply has recycled the time-worn argument that it should be Cargill's burden to prove initially and "on a document-by-document basis" the full extent of Sprenger & Lang's breach of Cargill's confidences and privileges, even though it was Sprenger & Lang that either caused or permitted Mr. Douglas to disclose confidential and privileged information relating to this litigation, resisted months of effort by Cargill to understand the scope of the breach, and then either caused or permitted the last, best record of the disclosure to end up in Mr. Douglas' trash can. As a result, given the nature of Mr. Douglas's role at Cargill and the level of his involvement in this action, there remains no way to be assured that the resulting taint can be isolated and contained, and certainly no reason to believe that Sprenger & Lang has the capacity or incentive to be scrupulous with Cargill's documents and information. See In re Potash, 1993 WL 543013 at *16-17 & n.41 (D. Minn. Dec. 8, 1993), as amended, 1994 WL 2255 (D. Minn. Jan. 4, 1994) (recognizing that the taint caused by a privilege breach can infect work product, including pleadings, internal memoranda, and overall strategic litigation decisions, just as readily as individual attorneys and can be spread by contact with either).

Under these circumstances, the importance of safeguarding the integrity of the judicial process, see Disqualification Order at 27, and restoring "an equilibrium that should never have been disturbed," Wagner, 683 F. Supp. at 195, demands a showing from Plaintiffs' successor

counsel beyond the mere assertions offered here. Cf. Note, The Availability of the Work Product of a Disqualified Attorney: What Standard?, 127 U. Pa. L. Rev. 1607, 1620, 1624 n.107 (1979) (noting that "[d]isqualification prevents the disqualified attorney from misusing confidences, but it neglects the problem of the work product: the work product may contain, or be a product of, confidential information" and proposing that "[t]he court should simply assume that there is a constant probability that substitute counsel will find and use any confidences that are in the work product").

The sole case cited by successor counsel in support of its blanket request, Ag Gro Servs. Co. v. Sophia Land Co., Inc., 8 F. Supp.2d 495, 499 (D. Md. 1997), clearly does not suggest that successor counsel has a presumptive right to materials generated by disqualified counsel. In fact, much like Judge Murphy in EZ Paintr Corp. v. Padco, Inc., 1983 WL 423 (D. Minn. Nov. 9, 1983), aff'd, 746 F.2d 1459, 1464 (Fed.Cir.1984), the Ag Gro court held that only material generated prior to the earliest date the privilege breach could have occurred could be presumed to be untainted. See Ag Gro Servs. Co., 8 F. Supp.2d at 499. Moreover, contrary to Plaintiffs' successor counsel's suggestion that it ought to have access to any and all material unless Cargill can show such materials are tainted, the Ag Gro court went on to hold that successor counsel would be permitted to have access only to documents found to be *untainted*. This difference is significant, because it recognizes that a party who has had its privileges and confidences violated cannot then be burdened to prove, on a document-by-document basis, exactly how the breach has been manifested and spread, at least not until successor counsel has made a reasonable showing both of need and that the requested material is, in fact, untainted.

**B. Plaintiffs Have Not Demonstrated Any Actual And Present Need For The Material In Question.**

**1. Plaintiffs' successor counsel has not explained why it needs any additional material in order to argue a class certification motion it concedes has been fully briefed and to which it already has been granted complete access.**

Plaintiffs' successor counsel first contends that it needs such material in order to represent Plaintiffs with respect to class certification; however, successor counsel admits that the "motion for class certification has been fully briefed and awaits argument." Pls.' Mem. at 2. Moreover, Plaintiffs' successor counsel already received the thousands of pages of "complete briefing for Plaintiffs' Motion for Class Certification . . ., including all supporting documents" pursuant to this Court's prior Order. See Order Amending Protective Order at 14. Plaintiffs' successor counsel offers no actual reason, because there is no reason, why it needs further materials from the record in order to argue that motion. In all fairness, the record on which that motion will be decided already has been submitted to the Court, and if Plaintiffs' successor counsel cannot effectively argue that motion from the thousands of pages contained in that record, then the means to do so simply do not exist.[2]

**2. Plaintiffs' successor counsel has not explained why it needs any additional material in order to prepare a response to a narrowly drawn motion challenging the methodology of Plaintiffs' experts, where Plaintiffs' successor counsel already has been granted access to the expert reports in question and could be permitted to review Cargill's motion and supporting documents.**

Plaintiffs' successor counsel next contends that the it needs access to the full record in order to respond to Cargill's motion to strike Plaintiffs' expert reports on Daubert grounds. See Pls.' Mem. at 2. By virtue of the Court giving Plaintiffs' successor counsel access to the complete class certification briefing materials, however, Plaintiffs' successor counsel already has received each of Plaintiffs' expert's reports, much of the accompanying deposition testimony,

---

[2] There has been no suggestion by successor counsel that Plaintiffs' former counsel did not competently develop and present the record on class certification through its motion that "has been fully briefed and awaits argument." Pls.' Mem. at 2.

and extended analysis and discussion of each expert report in the context of the class certification question. See, e.g., Appendix 3: Expert Reports and Deposition Testimony in Support of Plaintiffs' Motion for Class Certification [Docket Nos. 324 & 355]. Further, Cargill brought its motion on a limited evidentiary record (consisting essentially of the expert reports in question and the accompanying deposition testimony of the Plaintiffs' experts) and a narrow legal basis, typical for a Daubert challenge. Because the crux of a Daubert motion is a challenge to the methodology and process employed by the expert, and not the ultimate conclusion, there is no reason Plaintiffs' successor counsel would need anything beyond Cargill's moving papers and Plaintiffs' own expert reports in order to prepare an appropriate response, and successor counsel certainly has offered none.

Cargill would not object to a limited disclosure to Plaintiffs' successor counsel of Cargill's Motion to Strike Expert Reports and Opinions of Ronald L. Adler, William T. Bielby, and David W. Peterson and any documents submitted by Cargill in support of this motion [Docket Nos. 374-79]. But there is simply no need for Plaintiffs' successor counsel to have access to "[m]aterials produced informally to S&L by the plaintiffs and other persons knowledgeable about Cargill" (whatever that might mean and entail), "[l]egal and factual compilations and analyses prepared by S&L," "[a]ny materials regarding settlement discussions that may have taken place," or any of the other voluminous material they have outlined, see Pls.' Mem. at 2-3, in order to answer the narrow question whether Plaintiffs' three experts utilized a scientifically recognized and accepted methodology in the analyses described in the reports themselves.

**3. Plaintiffs' successor counsel has not explained why it needs any additional material in order to propose a joint order responding to a purely legal determination by this Court regarding the length of the limitations period.**

Third, Plaintiffs' successor counsel suggests that it "must have access to the balance of the materials generated in this case," in order to "submit a proposed order specifying the relief that the plaintiffs may pursue after [the Court's] ruling on the statute of limitations that governs claims in this case." Pls.' Mem. at 2. Like the foregoing, successor counsel's statement of need is an assertion, not an explanation. The Court has provided the parties with a thorough analysis of the limitations issue. See January 21, 2005, Memorandum Opinion and Order ("Statute of Limitations Order") at 2-5 [Docket No. 407]. Plaintiffs' successor counsel, moreover, has had an opportunity to review Cargill's Memorandum Regarding the Effect of Jones v. R.R. Donnelly on Plaintiffs' Promotion and Compensation Claims [Docket No. 412], to which Plaintiffs' successor counsel has even submitted a reply. See Plaintiffs' Reply to Cargill's Memorandum Regarding the Effect of Jones v. R.R. Donnelly on Plaintiffs' Promotion and Compensation Claims [Docket No. 417].

The underlying limitations issue raised a question of law. The ability to craft a joint proposed order based on this Court's answer to that question similarly turns on legal concerns, not factual details.

**C. Rather Than Permit Further Delay Through An *In Camera* Review Process, The Parties and The Court Should Resolve The One Issue Truly At Hand And Ready For Determination – Class Certification.**

There is no reason to provide Plaintiffs' successor counsel with access to the rest of the case materials, when the rest of the case materials include materials tainted by exposure to Mr. Douglas and the confidences and privileges he breached. Further, because there is no need for the additional requested materials at this time, there is similarly no need to invoke the elaborate

and time consuming *in camera* review process Plaintiffs' successor counsel has proposed. See Pls.' Mem. at 3.

Before going down that road, the parties and this Court should proceed with the issue at hand and ready for determination – class certification (and to the extent necessary to decide class certification, resolving Plaintiffs' expert reports and statute of limitations).

## IV. CONCLUSION

Cargill should not again be the victim of a breach of its confidences and privileges. Successor counsel has identified no present need for the additional material it seeks, while Cargill faces the undeniable harm of a further exploitation of its breached confidences and privileges from additional disclosures. Cargill therefore respectfully requests that the Court denies Plaintiffs' Motion for to Obtain Balance of Case Record in its entirety, and reset the class certification motion on for hearing as soon as possible.

Dated: March 4, 2005

DORSEY & WHITNEY LLP

s/Michael Iwan

Paul B. Klaas (#56327)
Michael Iwan (#28628X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55502-1498
Telephone: (612) 340-2600

Attorneys for Defendant
CARGILL, INCORPORATED