**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Roderick Arnold, Nii-Akwei Acquaye, Sean Allen, Hollis Branham, Toya Brown, Dawn Collins, Louis Darden, Della Dickson, Virginia Douglas, Ronald Garrus, Cheneta Hughey, Jacqueline Jenkins, Keith Lewis, Valerie Mason-Robinson, Michael Mitchell, Phyllis Reece, Tonya Ross, Charles Scott, Clintonia Simmons, Tausha Tate, Emily Tyler, Jacqueline Williams, Cheryl Willis, and Sean Wright, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

Cargill Incorporated,

Defendant.

Civil No. 01-2086(DWF/AJB)

IN CAMERA REPORT OF THE SPECIAL MASTER RE: SPRENGER & LANG DOCUMENTS

---

Samuel D. Heins, Esq., and Susan E.MacMenamin, Esq., Heins Mills & Olson; and Joseph Sellers, Esq., and Llezlie Green, Esq., Cohen Milstein Hausfield & Toll, PLLC - DC, counsel for Plaintiffs.

Holly S.A. Eng, Esq., Mark John Ginder, Esq., Melissa Raphan Esq., Michael Iwan, Esq., Paul Barry Klaas, Esq., Ryan E. Mick, Esq., Shari L. Jerde, Esq., Emily L. Fitzgerald, Esq., and Heather Toft, Esq., Dorsey & Whitney - Mpls, counsel for Defendant.

Peter N. Thompson, Esq., Hamline Law School, Special Master.

---

ATTACHMENT A

This matter is before the undersigned Special Master pursuant to an order of reference dated March 24, 2005. In that order the Court directed Sprenger & Lang (S&L) to provide Plaintiffs' successor counsel with the complete pleading file, all transcripts of depositions, materials produced by Cargill in response to formal discovery requests, and materials relating to settlement. S&L was to produce to the Special Master, with a complete index, the correspondence file, materials produced informally to S&L by the plaintiffs and other persons, legal and factual compilations and analyses prepared by S&L and "any databases that contain documents or data produced in this action." The Special Master was directed to review the materials to determine "whether such materials are 'tainted' by S&L's contacts with [Cargill's former employee] R. Bill Douglas as described in detail in the Court's previous orders," and make a report to the Court for *in camera* review.

S&L produced the documents and a complete index to the Special Master. S&L also met with the Special Master in their offices to demonstrate the database systems at issue. Counsel for Cargill, Dorsey & Whitney (Dorsey), provided the Special Master with relevant briefs, affidavits and transcripts relating to this matter. The Special Master presided over a telephone conference with Dorsey and successor counsel for plaintiffs, Cohen Milstein Hausfeld & Toll (Cohen) on April 25, 2005. Counsel did not request additional argument. After reviewing the documents, databases and files I provide the following *in camera* report to the Court.

**Documents**

S&L has produced to the Special Master 32 boxes containing the relevant documents along with an extensive index. An overview of the documents produced includes:

| | |
|---|---|
| Boxes 1-3 | Correspondence |

| | |
|---|---|
| Boxes 4-6 | Plaintiffs' files |
| Boxes 7 - 10 | Witness files |
| Box 11 | Miscellaneous internal files, privilege logs, e-mails with experts, EEO reports and audits, African American complaints, Cargill data codes. |
| Boxes 12-14 | Douglas documents (disqualification pleading files, Douglas deposition, documents produced by Douglas) |
| Boxes 15-24 | Plaintiffs' documents produced to Cargill |
| Boxes 25-28 | Witness documents produced to Cargill |
| Box 29 | Plaintiffs' medical records |
| Box 30 | Contacts, documents and exhibits databases |
| Boxes 31-32 | Plaintiffs' documents not produced to Cargill |

**History of the Case**

This class action law suit was brought on behalf of "all salaried African Americans through salary grade 15 who were employed by Cargill at any time during the liability period." The complaint alleges that Cargill engaged in systematic discrimination in violation of federal and state laws. More specifically it is claimed that Cargill fostered an exclusionary culture affecting its systems for performance appraisal, advancement, compensation and termination. The company-wide systems include a "Key Employee Identification System," the "Selection Grid Process," the "Performance Management Process," "Management by Objectives" and "Cargill Leadership Development Program." Cargill vigorously denies all claims of discrimination.

The law firm Sprenger & Lang brought this law suit on behalf of the named Plaintiffs and the class in November, 2001. The Court in its Order of September 24, 2004 disqualified

S&L from representing Plaintiffs in this matter based on its dealings with a former employee R. Bill Douglas (Douglas). Arnold et. al. v. Cargill Incorporated, Civ. No. 01-2086 (DWF/AJB), 2004 WL 2203310 (D. Minn. Sept. 24, 2004)(Arnold I). The Court disqualified counsel because of violations of the Minnesota Rules of Professional Conduct and in the exercise of the Court's "inherent authority and duty to ensure the administration of justice and the integrity of the litigation process." *Id.* at *6.

Douglas worked for Cargill for 22 years, was corporate EE0 manager until 1985 and then worked as senior manager of human resources for Cargill's food sector until his retirement on January 1, 1998. While at Cargill Douglas worked with in-house counsel and with lawyers from Dorsey, current counsel for Cargill in this litigation. Douglas played a role in a prior class action lawsuit brought by S&L against Cargill that resulted in a consent decree that expired in 1989. Foster, et al v. Cargill, Inc., Civ. No 3-82-1829 (D. Minn.).

**Prior Orders Describing Taint**

I was directed to assess "taint" "as described in detail in the Court's previous orders." When it appeared that S&L might have improperly received and retained some of Cargill's confidential and privileged documents, Cargill moved to dismiss, to disqualify counsel and for additional sanctions.[1] After extensive litigation on this issue the Court found that Douglas provided internal Cargill documents to S&L, some marked "privileged and confidential," and some related to the employment related systems within Cargill. The Court also found that Douglas "participated in the investigation and preparation of the Plaintiffs' case, identified names of current and former African American Cargill employees whom

[1] Cargill learned of this possibility when S&L returned to Cargill numerous Cargill privileged documents.

S&L could contact, personally contacted witnesses and potential class members, and reviewed and commented on the complaint. Arnold I, 2004 WL 2203310 at *2-3.

The Court found that S&L violated Minn. R. Prof. Conduct 4.1, as well as Cargill's confidentiality and privilege interests in violation of Minn. R. Prof. Conduct 4.4. S&L claimed it did not discuss confidential or privileged matters with Douglas and did not substantively review the privileged documents. S&L maintained it attempted to return the documents to Douglas but inadvertently made and retained a copy. The Court found that these denials "r[a]ng hollow," and did not "assuage" the "Court's concern that privileged and confidential information was indeed disclosed and discussed." *Id.* at *7-10.

Douglas also testified that at Lawrence Schaefer's direction, he destroyed documents in his possession before the Cargill subpoena arrived. Schaefer, an S&L attorney, denied that he told Douglas to destroy documents. The Court made no finding on the disputed testimony about whether Schaefer instructed Douglas to destroy the documents in his possession, although the Court was "troubled over the circumstances surrounding the destruction of the documents," and was "skeptical that S&L had been entirely forthcoming in accounting for its actions." *Id.* at *11. Finally, the Court did not find that S&L violated Minn. R. Prof. Conduct 7.3 in its contacts with prospective clients. *Id.* at *12. The Court concluded that "[the] integrity of the proceedings, the system and the profession have been damaged by S&L's conduct." *Id.* at *14. The Court granted the motion to disqualify S&L as Plaintiffs' counsel, but denied the motion to dismiss the proceedings.

In its attempts to assist Plaintiffs in finding new counsel, S&L was limited by confidentiality orders in what it could disclose to prospective successor counsel. S&L subsequently brought a motion for direction from the Court and a request to amend the

protective order. S&L asked permission to disclose to successor counsel briefs and supporting documents filed in reference to the pending motion for Class Certification, Cargill's Motion for Reconsideration of the Court's July 15 Order, as well as all Orders of the Court.

Cargill opposed the motion. Cargill argued that disclosure of the documents would taint successor counsel because the documents might contain materials influenced by privileged or confidential information wrongfully obtained by S&L from Douglas. Cargill urged the Court to adopt a bright line cut off precluding disclosure of documents created after Douglas' July 6, 2000 contact with S&L. The Court rejected the bright line cut off adopting a "flexible case-by-case approach to determine whether to allow access to disqualified counsel's work product." Arnold v. Cargill Inc., Civ. No. 01-2086 (DWF/AJB) (D. Minn. Nov. 23, 2004) (Arnold II), slip opinion at 7.

The Court noted that its prior disqualification Order (Arnold I) expressed concern about prejudice to Cargill but "the primary justification for the disqualification was the vindication of the integrity of the bar and the Court." Arnold II, slip opinion at 8. The Court found "no reason to bar successor counsel access" to Plaintiffs' deposition transcripts and discovery from Cargill relating to the class action certification and the court filings relating to the statute of limitations issue. According to the opinion these documents could "not reasonably be found to have been tainted by S&L's improper contact with Douglas." Arnold II, slip opinion at 6. The Court also allowed access to the class certification briefs and exhibits after balancing the interests of Cargill, the interests in maintaining public trust and the integrity of the bar and Court, along with the interests of the plaintiffs, who were not implicated in S&L's misconduct.

The Court observed that it was "not convinced that Douglas possessed and imparted the type of contemporaneous legal information about the merits of the case or had the amount and type of contact with S&L's attorneys that would justify a blanket presumption that all S&L materials generated after its initial contact with Douglas are tainted." Slip opinion at 9. Further, Cargill provided no examples of any specific document or discovery questions that reasonably could have been tainted by Douglas.[2] Of course this opinion focused only on the class certification and statute of limitations documents at issue in the motions.

The present motion was brought by Plaintiffs' new counsel, Cohen , to obtain the balance of the case record. Cargill opposed the motion, but again did not make arguments as to how the taint affected specific documents.[3]

In addressing this motion the Court continued its use of a case-by-case balancing approach. The Court stated that "absent a showing of how a document or a class of documents is connected with the taint the Court [did] not intend to revisit the issue at every juncture of the case." Arnold v. Cargill Inc., Civ. No. 01-2086 (D. Minn. Mar. 24, 2005) (Arnold III), slip opinion at 3. The Court ruled that successor counsel should have access to the complete pleading file, transcripts of depositions, Cargill discovery responses and settlement materials. The Court directed that the correspondence file, materials produced informally to S&L by Plaintiffs and witnesses, legal and factual compilations and analyses prepared by S&L and databases should be submitted "for review by the Special Master in

---

[2] The Court acknowledged that "the best evidence of the breach of Cargill's privileged materials disappeared when Douglas threw away the documents S&L returned to him." Slip opinion at 8.

[3] Cargill again made a categorical argument which is described in the Court's order in Arnold II, slip opinion at 6 note 4:

> "Cargill suggested that different general categories of information present different levels of risk of being 'tainted.' In order of increasing risk, these categories are (1)depositions of plaintiffs; (2) documents produced by Cargill; (3) written discovery responses from Cargill; (4) deposition of Cargill witnesses; and (5) S&L materials created after July 6, 2000 (work product, motion papers, pleadings and expert reports)."

this case and will only be released if determined to be 'untainted.'" *Citing* Ag Gro Services Co. v. Sophia Land Co. Inc., 8 F. Supp.2d 495,499 (D. Md. 1997).

**Taint**

In assessing "taint" the Court has expressed concern about a number of considerations. Initially the Court has clearly indicated that it will protect Cargill from having its privileged or confidential information that was improperly obtained by S&L being used against it by Plaintiffs in this trial in an unfair manner. Secondly, after validating Cargill's concern that its confidences have been improperly breached , the Court indicated it will be sensitive to Cargill's legitimate need for solicitude in believing that this is a fair proceeding and that Cargill's confidential communications are not being improperly used against them . Finally, the Court made it clear that it will vigorously uphold the integrity of the bar and judicial system. As the initial means of accomplishing these goals the Court asked for a report from the Special Master relating to whether the documents are untainted.[4]

As directed in the Court's previous orders there is no general presumption that all of S&L's documents are tainted. There must be some showing or reasonable basis to believe that a document or class of documents is connected with S&L's improper contact with Douglas. Although Cargill should bear no burden of persuasion on the issue of taint, at least with regard to the documents reviewed by Cargill, the Court and Special Master have asked Cargill for some explanation or argument suggesting how these documents could be tainted. With regard to the documents that Cargill has not seen, the Special Master will assume the responsibility to uphold Cargill's interests and the interests of the Court consistent with the arguments set forth in this case.

Potential taint from Douglas could have resulted from a number of actions including, among others:

1. Improperly using Cargill's confidential or privileged information to locate, contact and recruit witnesses and clients.

2. Improperly using Cargill's confidential or privileged information to develop the theory of the case or case strategy.

3. Improperly providing S&L with confidential or privileged materials providing plaintiffs counsel with evidence or insights into the work product and or case strategy of Cargill in the present litigation.

4. The unknown potential taint stemming from the unknown documents that Douglas testified he destroyed.

Douglas clearly had an active role in identifying and recruiting potential plaintiffs. Through his position at Cargill and through informal channels Douglas was well connected to many of the African American employees at Cargill. S&L included Douglas on several e-mails among S&L lawyers discussing and reporting on contacts with potential witnesses or class members. Cargill argues that because of Douglas' reference or contacts with a prospective plaintiff or witness, all subsequent documents produced by that witness or plaintiff are tainted. A bright line rule that all communications with clients or witnesses after Douglas referred or contacted the client or witness, however, is inconsistent with the Court's balancing approach and inconsistent with prior rulings. Further, in Arnold 1, the Court did not find that S&L violated ethical rules in its contact with prospective clients. Rather than follow a bright line rule that all documents produced by witnesses or plaintiffs referred or contacted by Douglas are tainted, I did a document by document review as directed by the

[4] The Court also noted that "plaintiffs counsel will remain under an obligation not to use any information . . . that is derivative of improperly obtained confidential or privileged information or is otherwise tainted in any way." Arnold 3, slip opinion at 4.

Court looking for a reasonable connection between the specific document and S&L's improper contacts with Douglas.

Douglas did consult with counsel about drafting the complaint and offered views about the structure of the litigation. It is possible the complaint was influenced in some way by Douglas, but the court has already rejected the motion to dismiss the complaint. Nothing in these documents suggests that any influence Douglas had in structuring the complaint or initial case strategy will prejudice Cargill's and the Court's interest in a fair trial on the factual issues in this case.

It is true that Douglas had access to S&L attorneys and was sought out by S&L for his opinions. But it is less clear the extent to which Douglas' views actually influenced counsel, were rejected by counsel or were merely cumulative with the other information considered by counsel. In the planning stages of the litigation Douglas was treated as if he were a client. It was common practice for S&L to seek feedback from its clients about drafts of documents including the complaint, as well as leads to contact other witnesses or potential clients. S&L solicited and received feedback from hundreds of clients and witnesses, who were present or former employees of Cargill, in addition to Douglas.

While communications with Douglas may have had some influence, and perhaps he was one of the more influential employee witnesses for S&L at the beginning of the litigation, most of his information was dated. He left his position as EEO manager in 1985. From 1985 until 1998, as senior human resources manager for the food sector Douglas did have contact with Cargill counsel as well as access to HR communications. But after reviewing all the documents in the 32 boxes produced by S&L, the Court's observation that Douglas did not possess nor impart the " type of contemporaneous legal information about the merits of the

case or had the amount and type of contact with S&L's attorneys that would justify a blanket presumption" of taint is borne out.[5] Consequently, I reviewed each document to determine whether it was untainted by S&L's contacts with Douglas. Where specific documents give rise to a reasonable connection to the improper Douglas contacts I have concluded that the documents are tainted.

To the extent that Douglas' assessment of the litigation decision making process at Cargill provided any unfair advantage to Plaintiffs' lawyers, this advantage will disappear now that S&L is disqualified and documents with a connection to the taint are not turned over to counsel. There are no documents or information being turned over to successor counsel that reveal private information about how Cargill lawyers think, plan a defense or Cargill strategy in defending this present class action.

Cargill argues most strenuously, that the taint comes from the documents that Douglas testified he destroyed at the request of S&L. First, the Court made no final finding that Schaefer instructed Douglas to destroy the documents, although why the documents were destroyed is less important on the issue of taint than the content of these documents and any use of the documents by S&L. For these destroyed documents to taint the current documents, the destroyed documents would have had to have been confidential and privileged, have been more relevant to the current litigation than almost all of the preserved documents produced thus far, and have been preserved, used or perpetuated in some form in S&L's documents. After reviewing all of the documents produced by S&L, there is no reason

[5] I did not have access to the privileged documents that S&L returned to Cargill. Cargill has these documents and has not made a specific argument to the Special Master as to how improper use of these privileged materials could have tainted the documents at issue. In the Affidavit of Matthew E. Klein in Opposition to Plaintiff's Motion for Protective Order Regarding the Deposition of R. Bill Douglas, at least some of the privileged documents are characterized as relating to the Foster litigation that ended in the late 1980s .

to believe that these destroyed documents have improperly tainted the S&L documents that will be produced to Cohen.[6]

**1. Correspondence File-Boxes 1-3**

Boxes 1-3 contain well over 1000 documents, representing the correspondence to and from S&L during this litigation. The files do not contain attachments, or if the letter is a letter transmitting another document, such as the complaint, the transmitted document is not included. The correspondence includes letters to and from Dorsey, some to the court or magistrate judge, and to and from expert witnesses. Much, if not most, of the correspondence consists of letters to the clients, with status updates, notices of meetings or hearings or requests for information. The great bulk of the correspondence documents have no connection to Douglas or S&L's improper contacts with Douglas and are untainted.

Because Douglas was treated as a client, the status updates, notices and transmittals were sent to him. Most of the correspondence to Douglas does not reveal any information that would provide successor counsel with an unfair advantage. Because Cargill lawyers can not see these documents, however, they understandably will be concerned that these communications between S&L and Douglas might reveal Cargill confidential or privileged information. The Court has indicated it will be sensitive to Cargill's legitimate need for solace. Consequently, I cannot conclude that they are untainted. Correspondence involving Douglas or addressing matters implicating S&L's improper contacts with Douglas are listed below as tainted. The remaining documents are untainted.

---

[6] If subsequent developments reveal a possibility of taint affecting specific documents, the Court has indicated that it will continue to protect Cargill's interests through "in limine motions, close scrutiny and a meaningful pretrial ." Arnold II, slip opinion at 11.

I originally attempted to provide a ruling for each specific document, but the volume of the documents, coupled with the very few documents that actually have a connection to S&L's improper contacts with Douglas led me to address specifically only the documents that I found were tainted. If the Court would like a specific explanation about specific documents or categories of documents I would be pleased to comply. Based on my review of each of the documents in the Correspondence file I conclude the following are tainted:

Correspondence - **Tainted**

| Vol.# * | Id#* | Date* | From* | To* | Type of* Correspondence | General Subject* | Special Master Comments |
|---|---|---|---|---|---|---|---|
| 1 | 26 | 11/21/00 | S&L | R. Bill Douglas | Informational | status meeting | client meeting notice |
| 1 | 29 | 12/2/00 | S&L | Reed | informational | status meeting mentions R. Bill Douglas | |
| 1 | 37 | 1/18/01 | S&L | R. Bill Douglas | transmittal | documents | |
| 1 | 42 | 2/2/01 | S&L | R. Bill Douglas | request | document request;complaint | client status report and request for documents |
| 1 | 65 | 3/21/01 | S&L | R. Bill Douglas | informational | status meeting | client meeting notice |
| 2 | 20 | 6/6/01 | S&L | R. Bill Douglas | request | complaint | transmittal; request for feedback |
| 2 | 59 | 6/19/01 | S&L | R. Bill Douglas | informational | settlement demand letter | transmittal update |
| 2 | 123 | 7/27/01 | S&L | R. Bill Douglas | informational | case status | client update |
| 3 | 27 | 1/24/02 | S&L | R. Bill Douglas | request | meeting re: Cargill's answer to complaint and motions to dismiss | personal request |

* The Vol.#, Id#, Date, From, To, Type of Correspondence and General Subject were taken from S&L's Index.

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 3 | 33 | 1/28/02 | S&L | R. Bill Douglas | transmittal | complaint | |
| 5 | 120 | 7/12/02 | S&L | Dorsey Whitney | informational | return of potentially privileged documents | |
| 6 | 99 | 8/14/02 | Dorsey & Whitney | S&L | discussion | receipt of privileged documents by S&L: notice of deposition of R. Bill Douglas; notice of 30(b)(6) deposition of S&L; discovery requests; stipulation and protective order | |
| 7 | 35 | 8/30/02 | S&L | Dorsey & Whitney | discussion | discovery; S&L case website; R. Bill Douglas documents; proposed stipulation | |
| 7 | 36 | 8/30/02 | S&L | Mag. Judge Boylan | discussion | R. Bill Douglas privileged issue raised by Cargill attaches #35 | |
| 7 | 47 | 9/5/02 | S&L | Dorsey & Whitney | discussion | discovery and scheduling issues | discusses Douglas deposition |
| 7 | 50 | 9/9/02 | Dorsey & Whitney | S&L | discussion | discovery, scheduling; S&L case website; R. Bill Douglas documents And deposition | |
| 7 | 90 | 9/27/02 | Dorsey & Whitney | Mag. Judge Boylan | discussion | scheduling order; motion to compel discovery requests | discusses Douglas documents |
| 7 | 92 | 9/30/02 | S&L | Mag. Judge Boylan | discussion | plaintiff's opposition to motion to compel discovery requests | discusses Douglas documents |
| 8 | 6 | 10/22/02 | Dorsey &Whitney | S&L | transmittal | discovery Cargill's interrogatories production of documents, admissions, and amended notice of taking deposition of R. Bill Douglas | |

| | | | | | | |
|---|---|---|---|---|---|---|
| 8 | 25 | 10/31/02 | S&L | R. Bill Douglas | transmittal | amended notice of taking deposition |
| 8 | 55 | 11/19/02 | S&L | Dorsey & &Whitney | informational | deposition dates for R. Bill Douglas |
| 8 | 59 | 11/21/02 | Dorsey & Whitney | S&L | informational | deposition dates for R. Bill Douglas |
| 8 | 60 | 11/21/02 | S&L | R. Bill Douglas | informational | deposition dates for R. Bill Douglas |
| 8 | 82 | 12/4/02 | Dorsey &Whitney | S&L | discussion | request meet and confer re: plaintiff Harvey, plaintiff Acquaye, discovery requests disclosure of current and former Cargill employees who are S&L clients, mentions R. Bill Douglas Cargill documents as S&L |
| 8 | 90 | 12/10/02 | S&L | Mag. Judge Boylan | Discussion | disclosure of clients who are current or former Cargill employees including R. Bill Douglas; Acquaye deposition |
| 8 | 94 | 12/11/02 | S&L | R. Bill Douglas | informational | re-scheduling deposition |
| 9 | 1 | 3/3/03 | Dorsey & Whitney | S&L | transmittal | document production and deposition notices re: R. Bill Douglas |
| 9 | 9 | 3/14/03 | Dorsey &Whitney | S&L | transmittal | subpoena and affidavit of service re: R. Bill Douglas |
| 9 | 10 | 3/18/03 | S&L | R. Bill Douglas | informational | Plaintiff's position re: R. Bill Douglas deposition subjects that may arise attorney/client relationship communications with sl document issues and other questions |
| 9 | 25 | 4/1/03 | Dorsey & Whitney | S&L | discussion | MacMillan and plaintiff Harvey depositions — mentions Douglas motion |

| | | | | | | |
|---|---|---|---|---|---|---|
| 9 | 35 | 4/15/03 | S&L | Dorsey & Whitney | discussion | discovery issues; privilege log production of R. Bill Douglas documents; inadvertenly produced documents; motion to amend the Complaint and attaches previous correspondence and log of documents received from third parties that have not been produced |
| 9 | 49 | 4/18/03 | S&L | Dorsey &Whitney | transmittal | filing re: R. Bill Douglas |
| 9 | 79 | 5/1/03 | Dorsey & Whitney | S&L | discussion | production of privilege log and other privilege issues |
| 9 | 80 | 5/2/03 | S&L | R. Bill Douglas | transmittal | copy of documents filed re: R. Bill Douglas and protective order |
| 9 | 84 | 5/2/03 | S&L | Dorsey & Whitney | transmittal | filing re: R. Bill Douglas |
| 9 | 85 | 5/2/03 | S&L | Clerk | transmittal | filing re: R. Bill Douglas |
| 9 | 95 | 5/8/03 | Dorsey & Whitney | S&L | transmittal | R. Bill Douglas amended deposition notice |
| 9 | 102 | 5/13/03 | Dorsey & Whitney | R. Bill | informational | deposition obligations |
| 10 | 21 | 6/19/03 | Dorsey & Whitney | S&L | informational | deposition of R. Bill Douglas will be re-noticed after ruling from Mag. Judge Boylan regarding the scope |
| 10 | 48 | 7/3/03 | S&L | R. Bill Douglas | transmittal [including order] | order regarding R. Bill Douglas deposition |
| 10 | 57 | 7/7/03 | S&L | R. Bill Douglas | informational | decision not to appeal |
| 10 | 65 | 7/11/03 | Dorsey & Whitney | S&L | transmittal | filing of amended notice of taking deposition of R. Bill Douglas and other pl |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 10 | 71 | 7/21/03 | Dorsey & Whitney | SM | informational | recent order by Mag. Judge Boylan regarding privilege issues with R. Bill Douglas | |
| 11 | 7 | 7/24/03 | Dorsey & Whitney | S&L | request | production of documents S&L received | |
| 11 | 10 | 7/29/03 | S&L | Dorsey &Whitney | informational | agreement to provide documents S&L received from R. Bill Douglas; other witness documents to be produced prior to depositions | |
| 11 | 27 | 8/4/03 | S&L | Dorsey & Whitney | transmittal | document produced by R. Bill Douglas | |
| 12 | 20 | 9/1/03 | S&L | Dorsey & Whitney | request | R. Bill Douglas desposition is scheduled; produce documents given by R. Bill Douglas | |
| 12 | 34 | 9/15/03 | Dorsey & Whitney | S&L | transmittal | documents produced by R. Bill Douglas pursuant to subpoena; amended notice provides recording the deposition of R. Bill Douglas | |
| 12 | 76 | 10/7/03 | Dorsey & Whitney | S&L | discussion | investigating issues raised by R. Bill Douglas | |
| 12 | 80 | 10//7/03 | Dorsey & Whitney | S&L | transmittal | discovery | |
| 12 | 81 | 10/7/03 | S&L | Dorsey & & Whitney | discussion | R. Bill Douglas | Douglas motions |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12 | 88 | 10/10/03 | S&L | Dorsey & Whitney | discussion | quash subpoenas; supplement privilege log and provide information to Mag. Judge Boylan for each of the R. Bill Douglas documents for which it asserts attorney-client privilege (200-300 pages that were returned to Cargill 7/12/2002) | |
| 12 | 133 | 10/16/03 | Dorsey & Whitney | S&L | discussion | quashing subpoenas; stay of discovery; request for supporting memo | reference to Douglas issues |
| 12 | 134 | 10/16/03 | Dorsey & Whitney | S&L | transmittal | subpoenas for S&L attorneys and R. Bill Douglas | |
| 14 | 30 | 12/22/03 | Dorsey & Whitney | S&L | discussion | status conference schedule Budde deposition; reopening depositions; mandamus petition; document production including documents related to R. Bill Douglas; settlement discussion | reference to document production |
| 14 | 31 | 12/23/03 | S&L | Dorsey & Whitney | discussion | status conference schedule; Budde deposition; reopening depositions; mandamus petition; document production, including documents related to R. Bill Douglas settlement | reference to document production |
| 15 | 28 | 1/29/04 | Dorsey & Whitney | R. Bill Douglas | transmittal | amended deposition notice | |
| 17 | 17 | 3/4/04 | Dorsey & Whitney | S&L | discussion | agreement/ status conference re: resumption of R. Bill Douglas deposition; Privileged documents And log pertaining to S&L contact with R. Bill Douglas | |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 17 | 20 | 3/5/04 | Dorsey & Whitney | R. Bill Douglas | transmittal | transcript and tapes | |
| 17 | 81 | 3/29/04 | S&L | Dorsey & Whitney | discussion | privilege log and production Of documents Responsive to Subpoena duces tecum Re: S&L contacts with R. Bill Douglas | |
| 17 | 84 | 3/30/04 | Dorsey & Whitney | R. Bill Douglas | transmittal | amended notice of deposition and subpoenas; schedule of deposition | |
| 18 | 40 | 4/23/04 | Dorsey & Whitney | R. Bill Douglas | transmittal | amending notice of taking deposition; deposition scheduling | |
| 19 | 23 | 5/12/04 | S&L | Dorsey & Whitney | discussion | inquiry re: settlement negotiations; Deposition discovery and expert reports; R. Bill Douglas issues; class Certification issues on the Record; size of Potential class and damage exposure; Attorneys fees; mediation | characterizes evidence in disqualification motion |
| 20 | 1 | 6/1/04 | court reporter | R. Bill Douglas | request | review transcript for corrections, sign and return | |
| 22 | 12 | 8/10/04 | Dorsey & Whitney | Judge Frank | transmittal | copies of transcript and videotape of R. Bill Douglas' deposition | |
| 22 | 47 | 9/7/04 | S&L | plaintiff Arnold | informational | case update | addresses motion to disqualify |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 22 | 60 | 9/16/04 | S&L | plaintiff Ross | transmittal | case update | addresses motion to disqualify |
| 22 | 64 | 9/17/04 | S&L | plaintiff Tate | transmittal | case update | addresses motion to disqualify |
| 23 | 85 | 9/28/04 | Dorsey & Whitney | S&L | discussion | return of documents; Cargill's press contact | discusses taint |
| 23 | 86 | 9/29/04 | D. Shulman | Judge Frank | request | changes to 9/24/04 order Re: involvement in Cargill case | discusses Douglas matters |
| 23 | 89 | 10/12/04 | Dorsey & Whitney | Judge Frank | discussion | opposition to reconsideration of language in 9/24/04 addressing S&L as such | |
| 23 | 91 | 10/13/04 | Dorsey &Whitney | C. Lundberg | discussion | filing of letter in opposition to reconsideration of language in 9/24/04 addressing S&L as such | |
| 23 | 94 | 10/26/04 | vendor | Dorsey & Whitney | transmittal | original deposition | |

**2. Plaintiffs' Files-Boxes 4-6**

The Plaintiffs' files included sub files for external correspondence including emails and letters. The emails varied from inquiries about interest in the lawsuit, seeking feedback on the drafts of documents, requests for information, case updates, case inquiries, or deposition arrangements. Few of these documents revealed any connection to Douglas and would not provide Plaintiffs any unfair advantage. I find them to be untainted, except as set forth below.

The regular correspondence section (letters) included retainer agreements, case updates, letters transmitting documents and notices and tended to be largely identical from file to file.

These letters and documents are not connected to Douglas, and will not provide Plaintiffs with any unfair advantage with one possible exception. In each of the client files is a letter to the clients dated on or about September 7, 2004. The letter is labeled "Confidential, Attorney-Client Privileged Communication" and is signed by Lawrence Schaefer. The letter provides an update on many aspects of the case and a notice of the class certification hearing. As part of the update Mr. Schaefer provides a short status report on Cargill's motion to dismiss, disqualify and impose additional sanctions based on the Douglas contacts. The one paragraph update explains Cargill's contentions and S&L's response. It is unlikely that anything said in this paragraph is not found also in the published order disqualifying S&L. Consequently, producing this document should not provide an unfair advantage to successor counsel. Based on the concerns of providing solace to Cargill, however, and upholding the integrity of the bench and bar I cannot, conclude that the document is untainted by improper contacts. Because Cargill has not seen the statement, Cargill will understandably be concerned about disseminating S&L's private assessment of the Douglas issues to successor counsel. This document is tainted.

**A. Internal Notes, Memos, emails**

These sub folders again contain typical client documents including interview notes, intra-office emails, portions of draft declarations or complaints. Most of the materials are specific to the situation of the client, although some include references to other clients or witnesses, as well as inquiries and directions about future avenues to explore with the Plaintiffs. These files contain a typed witness interview questionnaire (some include only the answers). The questionnaire, which is marked "privileged and confidential work product" includes the types of inquiries one would expect in an employment discrimination lawsuit, including a request

to identify other potential witnesses and an assessment by the interviewer. Almost all of these documents reveal no connection to Douglas and will not provide successor counsel with an unfair advantage. A handful of these documents may have some connection to Douglas and are listed below as tainted, or at least I cannot conclude that they are untainted. In my judgment most of these documents will not provide plaintiff any unfair advantage or confidential or privileged information but are listed as tainted because of a reference to Douglas. All the documents in the Plaintiffs' files are untainted except as set forth below:

PLAINTIFF'S FILES **TAINTED**

| Plaintiff* | ID#* | Date* | Author* | General Description* | Special Masters Comments |
|---|---|---|---|---|---|
| All | NA | 09/07/04 | L. Schaefer | update | includes paragraph describing disqualification motion and S&L's response |
| Allen, Jean | 16 | 03/1/01 | P. Jones | email re: information gleaned from conversation with Plaintiff Mason | mentions Douglas as referring a different witness |
| Jenkins, Jackie | 6 | 01/29/02 | S. Nelson | documents | Refers to charts produced by Douglas |
| Lewis, Keith | 7 | 10/25/00 | L. Schaefer | notes re: interview of Plaintiff Lewis | Indicates client referred by Douglas . No other reference to Douglas |
| Mason-Robinson | 7 | 03/15/01 | P. Jones | information not contained in Plaintiff Mason Robinson's declaration | Mentions Douglas. Suggests Douglas may have referred client. No other Douglas references. |
| Reece, Phyllis | 7 | 03/1/01 | S. Nelson | documents | Refers to charts and graphs produced by Douglas |

* The Plaintiff, Id#, Date, Author, General Description are taken from S&L's Index.

The client files contain a sub file with portions of Cargill's briefs and charts that relate to the client. This sub file would also contain S&L's response to Cargill's defense, and an employee profile produce by Cargill. These materials are specific to the individual clients and are not tainted. Sub files for the retainer agreements and damage questionnaire also are not tainted by S&L's contacts with Douglas.

**B. Discovery and Pleadings**

The Discovery and Pleadings sub file for each Plaintiff includes relevant sections of the answer, verifications and drafts for responses to interrogatories, a class certification summary exhibit and an annotated deposition reference tracker. With the exception of the deposition tracker, which relates testimony to various legal theories, these materials tend to be fact specific focusing on the experience of the client. These materials are not tainted by improper contacts with Douglas.

**3. Witness Files-Boxes 7-10**

Boxes 7-10 contain hundreds of witness files. Some of the witnesses were clients, and these files contained most of the categories of materials found in the Plaintiffs' files discussed above. The client files did not contain the same pleadings materials, however, because these clients were not named parties. In addition, none of these files contained the September 7, 2004 letter from Larry Schaefer discussed above that contained the paragraph describing the Douglas issue.

Many of the witness files contained only computer printouts with the results of searches for contact information. The remaining files contained various documents ranging from

interview notes, retainer agreements, materials relating to the witness' employment situation or drafts of declarations. Some of the documents involved inquiries about other employment law related issues. These documents were almost entirely related to the experience of the individual witness and had no connection to Douglas. A few documents mentioned Douglas. To the extent that they mentioned Douglas in the context of the prosecution or issues in this lawsuit, I listed them below as tainted. The bulk of the documents in the witness files, those not listed below as tainted, are untainted.

WITNESS FILES **TAINTED**

| Witness* | ID#* | Date* | Author* | General Description* | Special Masters Comments |
|---|---|---|---|---|---|
| Franklin, Beverly | 3 | 04/12/01 | D. Olson | interview notes to Jones | refers to Douglas being present at meeting |
| Franklin, Beverly | 5 | 10/11/00 | D. Olson | interview notes to Jones | refers to Douglas being present at meeting |
| Henderson, Frenchie | 5 | 02/03/03 | D. Olson to Jones, Schaefer, Nelson, Coler, Patton | email | refers to Douglas |
| Reed, Duane | 1 | 11/27/00 | P. Jones | email re: status to Reed | refers to Douglas |
| Reed, Duane | 4 | 12/02/02 | D. Olson to Larry Schaefer | email re: status | refers to Douglas |

**4. Miscellaneous Internal Files - Box 11**

**A. Email Correspondence with Statistical Experts**

The emails with experts do not mention Douglas. I found no connection between the improper Douglas contacts and the statistical expert information. Nor has Cargill pointed out

any possible connection between the expert witnesses and improper Douglas contacts. For example, the expert report prepared by David W. Peterson et. al at Peopleclick Research Institute, dated April 21, 2004 lists the sources of information at p 3-4. The list includes no communications or documents linked to Douglas. I find that the email correspondence with statistical experts and the accompanying CD are untainted.

**B. Sprenger & Lang Internal documents.**

Box 11 also contains miscellaneous internal documents including S&L internal reports. These documents contain legal and factual compilations and analyses. Cargill was quite concerned about turning over to successor counsel S&L's case strategy arguing that if the litigation strategy was based upon Douglas' improper contributions, turning over counsel's work product will perpetuate the taint. After reviewing the S&L documents, it appears that Douglas' main contribution to the litigation was as a source for witnesses and Plaintiffs. It is from the testimony of these witnesses, parties, Cargill employees and the documents produced from Cargill that the Plaintiffs' case is built. Early in the litigation, however, it is possible that S&L was relying on Douglas' information. For example, two internal memos in June and August of 2002 provide an historical analysis of Cargill's race related employment issues going back to the Foster litigation that might have included confidential materials or insights provided by Douglas. (ID 2 and 3). A third document (Id No. 10) produced in 2003 also contains this historical analysis. It is possible S&L, which was quite familiar with the Foster litigation, was not relying on improper Douglas information. Furthermore, the documents do not refer in any way to Douglas. But I could not

* Taken from S&L's index.

conclude that these older assessments were untainted since they address the subject areas associated with the Douglas documents and were created near the time of Douglas' contacts.

A later document, in fact lists Douglas as one of several potential witness on two issues (ID. 16). I cannot conclude that this document is untainted either.

The more recent S&L case analyses prepared in 2004 however, rely on the materials obtained in the discovery process. I find these later analyses were not linked to Douglas and were untainted. Because I believe Cargill will be particularly interested in how these internal assessments are handled I provide specific rulings on each of these documents with some commentary as provided in Appendix A.

I also found the following categories of documents untainted:

1. Plaintiffs' Privilege Logs and Privileged Documents from plaintiffs Acquaye, Branham, Brown, Darden, Virginia Douglas, Reece, Tyler, Williams and Willis. These included handwritten notes, chronologies and miscellaneous writings, none relating to Douglas.

2. EE0 Consolidated Reports and Compliance Audits

3. African American Complaints

4. Cargill Data codes

5. Comparables Review

6. Plaintiff and Possible Comparables Employee Data

7. EEO Policy violators' Employee Data

8. Employee Exit Interviews

9. Cargill Open Line

10. Other lists and Compilations.

**5. Douglas Materials-Boxes 12-14**

Boxes 12, 13 and 14 include Bill Douglas Materials. Although Judge Frank's order directed S&L to produce depositions and the entire pleading file (Arnold III), S&L properly read the order in context and did not produce to Cohen the Douglas disqualification pleadings file. This file includes the deposition transcript, motions, affidavits, exhibits and orders relating to the disqualification motion and copies of documents that Douglas produced. (P0001-1033, P1978-1982; P 2026-2029; SL RBD 100000-103083). These materials are tainted.

**G. Documents produced by Plaintiffs and Witnesses to Defendants – Boxes 15-28**

Boxes 15 to 28 include documents produced by plaintiffs and witnesses to defendants. These boxes include the following documents:

Documents Produced by Plaintiffs

Acquaye NA0001-49
Allen SA0001-154
Arnold RA0001-461
Branham HB0001-294
Brown TB0001-473
Collins KC0001-543
Darden LD0001-409
Dickson DD0001-241
Douglas[Virginia] VD 0001-256
Hughey CH0001-87
Jenkins JJ0001-1031
Lewis KL0001-47
Little VL0001-2171
Mason-Robinson VM0001-451
McDowell ACM0001-101

Mitchell MM0001-120
Reece PR0001-2740
Ross TR0001-11
Scott CS0001-50
Simmons CTS0001-23
Tate TT0001-53
Tyler ET0001-282
Williams JW0001-1844
Willis CW0001-4339
Wint SWW0001-345
Wright SW0001-2187

Documents Produced by Witnesses

Chavers JC 0001-0050; P1657-58
Ford GF 0001-0100
Fowler RF0001-0204
Green TG0001-1051
Harrison MWH0001-0015
Harvey MH0001-0400
Reed DR0001-0200
Selman JS0001-0012
Sharp JS0001-0406
Cephus LC0001-3523
P1034-2825

Because Cargill had the opportunity to see these documents I asked that Cargill provide its views as to how any of these documents might reasonably be connected to the taint. As it turned out Cargill had not received documents from Fowler, Harrison, Selmon and Sharp, but had received the others. Cargill's response tended to be categorical and not specific to any of the documents. In particular, Cargill argued that because Douglas recruited some of these plaintiffs, that their documents should be tainted. As discussed previously the Court has rejected this bright line approach and has directed the Special Master to look at each document.

The files include a variety of documents. For the most part the documents relate to the Plaintiff's or witness' specific experiences along with some general Cargill documents. They

range from personal documents such as tax or financial information, documents from prior proceedings with Cargill, as well as declarations and other documents or notes prepared for the present litigation. The files include typical HR documents, memos, letters relating to Cargill employment, salary history or performance evaluations. The Plaintiffs and witnesses also produced internal company memos, internal Cargill publications, including handbooks, directories or assorted charts and graphs. Cargill makes no specific argument how any particular document could be tainted. Other than the fact that Douglas may have contacted or referred the Plaintiff or witness to S&L there is no other connection between these documents and Douglas' contacts with S&L with few exceptions. Several documents were produce that involved Douglas when he was employed by Cargill. In Plaintiff Arnold's files Douglas is listed as an EEO contact in a Cargill EEO Update (RA0102). Douglas was the author of internal Cargill Memos dated October 22,1993 (RA0108) and April 17, 1995 (RA 0111), and was once copied on an internal Cargill Memo dated January 24, 1995 ( RA0126). None of these documents are tainted by Douglas contacts with S&L. From my review of the documents I conclude that the plaintiffs' and witness documents produced to Cargill are untainted.

**7. Plaintiffs' Medical Records – Box 29**

Box 29 contains Plaintiffs' medical records produced to Defendant. I have briefly reviewed these documents to confirm that they are in fact medical records and conclude that they are untainted by S&L's improper contacts with Douglas.

**8. Databases – Box 30**

Box 30 contains S&L database material. S&L created three databases that S&L would produce in electronic form to Cohen. The Cargill documents database includes images of

almost all of the documents produced by the parties. This database includes the following fields: Beginning Bates number (begno); Ending Bates number (endno); Source (source) and Optical character recognition (ocr). The ocr text results from a scanning process and is searchable. All of the documents in this database have been copied and produced in hard copy and reviewed by Special Master. If the Court concludes that some of the S&L documents are tainted and should not be turned over to successor counsel, S&L can remove the documents from the database before delivering the hard copy and the electronic database to successor counsel.

The exhibits database includes images of 1373 documents marked as exhibits in the depositions. They include the following fields: Beginning Bates number (begno); Middle Bates number (midno); Ending Bates number (endno); date (date); author (author); recipient (recipient); description (description); deposition exhibit number (depoex); deposition where marked (depomarked); deposition where used (depoused); source (source); status when produced (prostatus) and optical character recognition (ocr). S&L has provided a hardcopy printout to this database. I have reviewed both the hardcopy and the electronic database.

S&L originally included additional fields in these databases. Because these fields are incomplete they will not be produced to successor counsel. I did not review these additional fields to determine taint because they will not be provided to Cohen.

Finally the Contacts Database tracks factual information and contacts with plaintiffs and witnesses. The database contains the following fields : first name, midinitial, lastname, gender, dod, ssn, donotcall, homephone, workphone, cellphone, otherphone, besttime, email , address, city, state zip, empcurrent, startdate, enddate, reasonleft, release, position, payclass, location, interview, interviewer, legalclaims, contactinfo, clientemails, delcarant, declaration,

retained, retainer, status, comments. This database was produced in hardcopy (excluding the fields for the questionnaire and declaration which I reviewed in the plaintiffs' and witness' file. Some of the entries include parts of memos or short descriptions of a conversation. Three of these documents include references to Douglas and are tainted.

They include:

1. p. 150 which is the contact report for Douglas
2. p. 488 refers to Douglas
3. p. 547 refers to Douglas

The remaining pages are untainted.

I conclude that the databases, once the tainted entries are removed, are untainted.

**9. Documents not subject to discovery – Boxes 31-32**

Boxes 31 and 32 include documents that were given to S&L by plaintiffs that were not produced to Cargill. These documents were not responsive to discovery requests because S&L determined that they were out of date or related to subjects outside the scope of this lawsuit.[7] After reviewing the documents, it certainly appears that most, if not all of them are not relevant to the issues in this litigation, nor likely to lead to relevant or other discoverable evidence. They include out-of-date handbooks, various company forms, unrelated memos, charts, publications and personal or financial information. All of the documents are unrelated to Douglas. These documents are untainted.

## Conclusion

As set forth in this report I find all of the documents untainted except as set forth below. The tainted documents are identified by S&L's document numbers as provided in the index:

## Tainted Correspondence

| | |
|---|---|
| Vol. 1 | 26, 29, 37, 42, 65 |
| Vol. 2 | 20, 59, 123 |
| Vol. 3 | 27, 33 |
| Vol. 5 | 120 |
| Vol. 6 | 99 |
| Vol. 7 | 35, 36, 47, 50, 90, 92 |
| Vol. 8 | 6, 25, 55, 59, 60, 82, 90, 94 |
| Vol. 9 | 1, 9, 10, 25, 35, 49, 79, 80, 84, 85, 95, 102 |
| Vol. 10 | 21, 48, 57, 65, 71 |
| Vol. 11 | 7, 10, 27 |
| Vol. 12 | 20, 34, 76, 80, 81, 88, 133, 134 |
| Vol. 14 | 30, 31 |
| Vol. 15 | 28 |
| Vol. 17 | 17, 20, 81, 84 |

[7] Documents printed from a computer file from Plaintiff Darden were also included in this group. S&L had not yet reviewed these documents to determine responsiveness. I reviewed these documents as well. None of the documents from Darden are connected to Douglas or the improper contacts with S&L. They are untainted.

| | |
|---|---|
| Vol. 18 | 40 |
| Vol. 19 | 23 |
| Vol. 20 | 1 |
| Vol. 22 | 12, 47, 60, 64 |
| Vol. 23 | 85, 86, 89, 91, 94 |

**Tainted Plaintiffs' Files**

All Plaintiffs - Letter from Schaefer 09/07/04

| | |
|---|---|
| Allen | No. 16 |
| Jenkins | No. 6 |
| Lewis | No. 7 |
| Mason-Robinson | No. 7 |
| Reece | No. 7 |

**Tainted Witness Files**

| | |
|---|---|
| Franklin | No. 3, 5 |
| Henderson | No. 5 |
| Reed | No. 1, 4 |

**Tainted Internal Documents**

No. 2, 3, 10, 14

**Tainted Douglas Materials**

All documents in boxes 12, 13, 14

**Tainted Database**

Contacts database pp. 150, 488 and 547

The remaining documents are untainted.

Respectfully submitted,

Dated: June 6, 2005

Peter N. Thompson

Peter N. Thompson
Special Master

**Appendix A**

**Internal Sprenger & Lang Documents**

| RULING | ID#* | DATE RANGE* | AUTHOR* | TYPE OF DOCUMENT* | GENERAL SUBJECT* | SPECIAL MASTER COMMENTS |
|---|---|---|---|---|---|---|
| Untaint | 1 | 10/16/2000 | L. Schaefer (atty) | memo | Plaintiff Rod Arnold's Claims | Assessment of Arnold's claims, duplicate in plaintiff's file |
| **Taint** | 2 | 06/20/2001 | S. Nelson (case assistant) | memo | Cargill's complaint procedure | Internal assessment of Cargill's complaint procedure. May have been tainted by Douglas disclosure of confidential documents see RBD 100312 email from Douglas to S&L, 02/06/01 |
| **Taint** | 3 | 08/14/2001 | S. Nelson (case assistant) | memo | Cargill's complaint procedure | " |
| Untaint | 4 | 01/17/2002 | S. Madsen (atty) | memo | curative notice issues | |
| Untaint | 5 | 05/06/2002 | T. Patton (atty) | chart | discovery related to emotional distress damages | |
| Untaint | 6 | 06/16/2002 | T. Patton (atty) | memo | notes from first client deposition | |
| Untaint | 7 | 10/04-10/05/02 | M. Lieder (atty); L. Harpe (expert); S. Coler (atty) | email chain | analysis of terminations | |
| Untaint | 8 | 01/02/2003 | M. Lieder (atty) L. Harpe (expert); S. Coler (atty) | email memo | statistical analysis | |
| Untaint | 9 | 03/21/2003 | M. Lieder (atty) | email memo | KEIS and LTMP | statistical analysis |
| **Taint** | 10 | 04/00/03 | S. Coler (atty) | memo | facts plaintiffs must establish for class certification and beyond | includes historical analysis; Foster consent decree - although dated in 2003, may include Douglas materials |
| Untaint | 11 | 04/10-4/15/2003 | D. Olson (paralegal); S. Coler (atty) | email chain | facts re September 1995 RIFS | data |
| Untaint | 12 | 05/21/2003 | L. Doman (atty) | email memo | cases on A/C privilege | legal research |
| Untaint | 13 | 09/23/2003 | T. Patton (atty); S. Coler (atty) | email | analysis of order re medical authorizations for emotional distress damages | |
| **Taint** | 14 | 09/26/2003 | L. Schaefer (atty) | memo | case overview | relies on prospective testimony from Douglas |
| Untaint | 15 | 12/04/2003 | S. Nelson (case assistant) | memo | EEO audits--results and meeting minutes | |
| Untaint | 16 | 01/21/2004 | L. Schaefer (atty) | memo | analysis of issues, facts and tasks for preparing for class certification | identifying future issues and tasks |
| Untaint | 17 | 01/29/2004 | D. Ramp (atty) | email memo | analysis of status of email discovery issues | |

1*The ID#, Date, Author, Type of Document and General Subject are taken from S&L's Index

**Appendix A**

**Internal Sprenger & Lang Documents**

| RULING | ID#* | DATE RANGE* | AUTHOR* | TYPE OF DOCUMENT* | GENERAL SUBJECT* | SPECIAL MASTER COMMENTS |
|---|---|---|---|---|---|---|
| Untaint | 18 | 02/04/2004 | L. Schaefer (atty) | memo | summary of class certification evidence | analysis based on current evidence and interviews, refers to Foster history but relies on documents produced in discovery |
| Untaint | 19 | 02/09/2004 | M. Lieder (atty); S. Coler (atty); L. Schaefer (atty) | email chain | approaches to statistical analysis | |
| Untaint | 20 | 02/17/2004 | S. Coler (atty); L. Schaefer (atty); | email chain | discussion of Coler's legal themes memo | |
| Untaint | 21 | 02/17/2004 | S. Coler (atty) | memo | legal themes | legal analysis |
| Untaint | 22 | 03/00/04 | S. Coler (atty) | outline | embedded HR team leader outline | deposition question outline |
| Untaint | 23 | 03/10/2004 | S. Coler (atty) | outline | outline for declarant deposition preparation | " |
| Untaint | 24 | 03/30/2004 | M. Lieder (atty); S. Coler (atty); L. Harpe (expert) | email memo and chain | analysis of statistics: study tables (handwritten markings--S. Coler) | analysis of data |
| Untaint | 25 | number not used | | | | |
| Untaint | 26 | 04/02/2004 | C. Finck (paralegal) | email | transcript analysis for KRA on valuing diversity | |
| Untaint | 27 | 04/16/2004 | L. Schaefer (atty) | email memo | issues for experts Bielby and Adler | deposition preparation |
| Untaint | 28 | 04/16/2004 | D. Ramp (atty) | email | identification of full text names for job groups for statistical analysis | |
| Untaint | 29 | 06/29/2004 | S. Coler (atty); M. Ginder (Dorsey& Whitney atty) | email chain | facts about what reports Cargill's expert reviewed | |
| Untaint | 30 | 07/00/04 | L. Schaefer (atty) | memo | response to anticipated defenses in class certification response | analysis of legal defenses |
| Untaint | 31 | 07/02/2004 | M. Lieder (atty) | email memo | analysis of Topel's report | statistical analysis |
| Untaint | 32 | 07/07/2004 | D. Ramp (atty) | email memo | PMP distributions and scores | |
| Untaint | 33 | 07/13/2004 | L. Schaefer (atty) | email memo | analysis of complaints attached to Budde stipulation | |
| Untaint | 34 | 07/18/2004 | C. Finck (paralegal) | email | resolution of plaintiff employment facts | fact analysis |
| Untaint | 35 | 08/03/2004 | D. Ramp (atty) | email memo | retroactivity legal issues | legal analysis |
| Untaint | 36 | 08/17/2004 | D. Ramp (atty) | draft | analysis relevant to motion to strike expert reports | |
| Untaint | 37 | 08/23/2004 | D. Ramp (atty); S. Coler (atty) | email chain | analysis of PMP materials in Topel's expert report | |
| Untaint | 38 | 08/23/2004 | D. Ramp (atty) | email and list | analysis of job titles used in Topel's report | |

2*The ID#, Date, Author, Type of Document and General Subject are taken from S&L's Index

**Appendix A**

**Internal Sprenger & Lang Documents**

| RULING | ID#* | DATE RANGE* | AUTHOR* | TYPE OF DOCUMENT* | GENERAL SUBJECT* | SPECIAL MASTER COMMENTS |
|---|---|---|---|---|---|---|
| Untaint | 39 | 08/24/2004 | D. Ramp (atty) | memo | analysis of Topel's references to job groups and their meaning | |
| Untaint | 40 | 08/25/2004 | D. Ramp (atty) | memo | analysis of Topel's criticism of Peterson's aggregation methodology | |
| Untaint | 41 | 08/27/2004 | D. Ramp (atty) | memo | analyses rebutting Cargill's response to motion for class certification | draft brief |
| Untaint | 42 | 08/31/2004 | L. Schaefer (atty) | email memo | suggesting legal analysis reply brief | |
| Untaint | 43 | 09/08/2004 | D. Ramp (atty) | notes | suggesting challenge to Cargill's expert analysis of rater/ratee studies | |
| Untaint | 44 | 09/20-09/22/04 | M. Lieder (atty); L. Schaefer (atty) | email | email exchange about factual and legal approach to class certification oral argument | legal analysis |
| Untaint | 45 | 09/20/2004 | L. Schaefer (atty) | draft oral argument | for class certification | |
| Untaint | 46 | 09/21/2004 | P. Jones (paralegal) | email | recounting plaintiff report that Sue Sjeklocha (Valuing Difference Initiative) has left Cargill | |
| Untaint | 47 | 09/22-09/23/04 | M. Lieder (atty); S. Coler (atty); M. Thompson (atty) | email chain | re Jackie Jenkins' status as a class member | |

3*The ID#, Date, Author, Type of Document and General Subject are taken from S&L's Index