UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

RODERICK ARNOLD et al.,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-cv-2086 (DWF/AJB)

**CARGILL, INCORPORATED'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES INCURRED AS A RESULT OF FORMER CLASS COUNSEL S&L'S CONDUCT**

Following entry of final judgment on the claims of the individual plaintiffs, there remains one deserving party yet to be made whole in this case – Defendant Cargill, Incorporated ("Cargill"). As a direct and foreseeable consequence of the conduct of plaintiffs' former counsel, Sprenger & Lang ("S&L") – conduct the Court described as intentional, harming the integrity of the judicial process, impairing Cargill's rights, and violating the Rules of Professional Conduct – Cargill incurred several hundred thousand dollars in otherwise avoidable fees and costs. Cargill respectfully submits that it has a right to be reimbursed for these fees and costs by S&L.

To be clear, this is not a conclusion reached solely with the benefit of hindsight. From the outset, S&L's "tooth and nail" resistance to legitimate inquiry into the nature of its dealing and contacts with former Cargill manager Bill Douglas, often in the face of Court orders authorizing such inquiry, demonstrates S&L's keen awareness of the

impropriety and likely consequences of its conduct. This awareness should have led S&L simply to make a prompt and full disclosure at the time, but in any event S&L cannot now avoid the consequences of having chosen the opposite path. Nor is this retribution. In addition to suffering the essentially unquantifiable breach of its confidences and privilege, Cargill incurred real fees and costs in ferreting out S&L's mendacious conduct, moving the Court for minimally appropriate redress through disqualification of S&L, and safeguarding what was left of its confidences and privileges during the transition of this matter to new counsel for plaintiffs.

Accordingly, Cargill hereby requests that the Court, pursuant to its authority under 28 U.S.C. § 1927, the common law, and its equitable powers and inherent authority to regulate the proceedings and those who appear before it, order S&L to reimburse Cargill for its itemized fees and costs set forth in this Memorandum.

## PROCEDURAL HISTORY

On September 24, 2004, the Court ended an unfortunate chapter in the history of this case by granting Cargill's motion to disqualify S&L as class counsel in this case. The Court found that "[t]he integrity of these proceedings, the system and the profession have been damaged by S&L's conduct." *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), 2004 WL 2203410, at *14 (D. Minn. Sept. 24, 2004) (Frank, J.). In Cargill's memorandum in support of its motion to disqualify, it included a nonspecific request for any additional sanctions the Court deemed appropriate, including monetary sanctions. *See* Cargill's Memorandum of Law in Support of Motion to Dismiss, Disqualify, and Impose Additional Sanctions (June 18, 2004), at 32. The Court declined

to impose additional sanctions on S&L at that time, noting that it did not wish to "discourage plaintiffs' firms from representing others in difficult cases." *See Arnold*, 2004 WL 2203410, at *14. (Ultimately, plaintiffs secured successor counsel; although, that process in and of itself forced Cargill to incur unnecessary fees and costs, as detailed below.)

For a number of reasons, the Court appropriately restrained itself from prematurely ruling on sanctions, beyond disqualification, at that time. For example, Cargill did not know whether the Court would order disqualification or on what grounds, and, thus, Cargill could not predict the scope of recoverable fees and costs. Moreover, a decision to disqualify would remain subject to appeal by S&L until the conclusion of the case on the merits, making it similarly impossible to define the scope of recovery. Even in the absence of an appeal, there would be as of yet undetermined fees and costs expended by Cargill to protect its rights during the transition of the case from S&L to successor counsel (including, among other things, the ultimate involvement of a special master). All of these fees and costs flow directly from the breach of Cargill's confidences and privileges by S&L and subsequent dissembling, but it was not until the case had reached its conclusion that either Cargill or the Court could fairly assess the true impact of S&L's wrongdoing and its vexatious opposition to the discovery of that wrongdoing.[1]

---

[1] That said, Cargill is not reluctant to admit the possibility that it would have foregone its well-recognized right to recover these fees and costs had S&L not elected to seek an award, *from Cargill*, of over $1 million for fees and costs that, notwithstanding the bar to

## FACTUAL BACKGROUND

Except as it relates to the itemized account of the fees and expenses, *see* Exhibit A to the accompanying Declaration of Michael Iwan ("Iwan Decl."), this Memorandum will avoid rehashing the facts of this case – which are well known to the parties and the Court, in any event. For the Court's reference, however, the pertinent events are grouped thematically into three categories: (A) the efforts needed to uncover the breach of Cargill's confidences and privileges; (B) the briefing, arguing, and supplemental briefing of Cargill's disqualification motion; and (C) the transition of the case to successor counsel.

### A. S&L Discloses Their Possession And Retention Of Cargill Confidential And Privileged Information, And Thereupon Commences A Campaign To Obstruct Legitimate Discovery By Cargill Into The Issue.

On July 15, 2002, counsel for Cargill received an envelope from plaintiffs' then-counsel, S&L, containing approximately 450 pages of clearly confidential and privileged Cargill documents, which S&L said had inadvertently come into their possession. *See* Iwan Decl. Ex. B (Declaration of Lawrence P. Schaefer in Proceedings Regarding Deposition of R. Bill Douglas) at ¶ 18. Sometime between July 15 and 18, 2002, in a phone conversation with Cargill's counsel, S&L attorney Larry Schaefer refused to reveal where he had gotten Cargill's privileged documents. *See* Iwan Decl. Ex. C (Affidavit of Janice M. Symchych Dated Oct. 23, 2003) at ¶ 5. Cargill's counsel told Mr. Schaefer that she believed she knew his source and intended to seek full legal recourse for the

---

such recovery raised by their own unethical conduct towards Cargill, contributed nothing to the resolution of the plaintiffs' individual claims.

privilege breach. *See id.* It is now well-known that the source of the documents was former Cargill Human Resources executive, Bill Douglas.

On August 14, 2002, Cargill noticed the deposition of Mr. Douglas, served interrogatories on S&L seeking a complete account of how the documents came into their possession, and served document requests on S&L seeking all documents related to the July 15 documents. *See* Iwan Decl. Ex. D. On August 30, 2002, S&L wrote the Court objecting to this discovery, the first salvo in a protracted fight to resist Cargill's legitimate inquiry into this matter. *See id.* Ex. E.

After hearing arguments on October 1, 2002, Magistrate Judge Boylan ordered S&L to respond to Cargill's interrogatories regarding the July 15 documents. *See Arnold v. Cargill, Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op. (D. Minn. Oct. 1, 2002) (Boylan, M.J.). Thereafter, Cargill attempted repeatedly to obtain, via subpoena and discovery requests, information regarding Mr. Douglas's interactions with S&L, but consistently was rebuked with a dubious assertion of attorney-client privilege and work product, which necessitated the filing of a motion to compel on April 18, 2003. *See* Cargill's Motion to Overcome Attorney-Client Privilege and Work Product Claims of Bill Douglas and Others and to Amend Pretrial Schedule (Apr. 18, 2003). Ultimately, following a May 9, 2003, hearing, the Court ordered Mr. Douglas to appear for two days of deposition and to answer all Cargill's inquiries regarding his interaction with S&L, regardless of any claim of attorney-client privilege by S&L. *See Arnold v. Cargill, Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op. (D. Minn. June 27, 2003) (Boylan, M.J.). On July

11, 2003, Cargill re-noticed Mr. Douglas's deposition, the first day of which took place on September 18, 2003. *See* Iwan Decl. Ex. F.

Mr. Douglas's testimony that day raised several troubling and unanticipated issues, most notably, that S&L had instructed Mr. Douglas to destroy copies of confidential and privileged documents in his possession before Cargill could subpoena them. *See* Douglas Depo. at 104-05 ("Q: So Mr. Schaefer called you on July 22nd and instructed you to toss records or documents before a subpoena was served. Is that right? . . . A: Yes."). Given the obvious ethical and potentially criminal implications of this testimony both for S&L and Mr. Douglas, Cargill suspended Mr. Douglas's deposition. On September 23, 2003, Cargill wrote the Court to apprise it of Mr. Douglas's remarkable testimony and to ask for guidance. *See* Iwan Decl. Ex. G. S&L submitted responsive correspondence, arguing, remarkably, that the Court should not allow Cargill to depose Mr. Douglas for a second day, although the Court had previously ordered that Cargill was entitled to do so. *See id.* Ex. H.

By correspondence dated October 3, 2003, the Court affirmed Cargill's right to conduct additional discovery as a prelude for a possible motion to disqualify and/or dismiss the action. *See* Iwan Decl. Ex. I. Consistent with the Court's order, on October 6 and 7, 2003, Cargill served subpoenas for documents and testimony on S&L attorneys and staff in order to obtain information that could only be in their possession, such as how Cargill's confidential and privileged documents were handled internally by S&L once received. *See* Iwan Decl. Ex. J.

Shortly thereafter, in the interest of judicial economy, Cargill moved for a short stay of routine discovery in order to allow the parties to dedicate themselves to resolving, as quickly as possible, the pressing issues of S&L's improper conduct vis-à-vis Mr. Douglas. In its moving papers, Cargill proposed that the Court stay routine discovery until after Cargill had completed its already-noticed depositions of S&L and Mr. Douglas, and pending the outcome of any resulting motion to disqualify Cargill may file. *See* Cargill's Memorandum of Law in Support of Motion for Stay (Oct. 10, 2003). The primary purpose of Cargill's request for a stay was to prevent the potential taint of improper conduct from spreading throughout plaintiffs' case and avoid (or at least minimize) exactly what happened one year later, when Cargill, the Court, and successor counsel had to sort through a complicated and burdensome handover of the case. S&L, of course, objected to the stay and insisted that discovery on class issues continue apace.

Ironically, notwithstanding S&L's alleged concerns about delaying the proceedings and despite the Court's already clear instructions that Cargill be allowed full discovery into the Douglas situation, S&L simultaneously informed Cargill that they planned to file a motion to quash Cargill's subpoenas and would not be responding thereto until after their motion had been decided. *See* Iwan Decl. Ex. K. S&L filed their motion to quash and for a protective order on October 16, 2003. *See* Plaintiffs' Combined Memorandum in Support of Motion to Quash Subpoenas *Duces Tecum* and *Ad Testificandum*, for a Protective Order, and in Opposition to Defendant's Motion for Stay (Oct. 16, 2003). Based on what already had come to light through Mr. Douglas's partial testimony, Cargill had no alternative but to oppose this motion. *See* Defendant Cargill,

Inc.'s Memorandum in Opposition to Plaintiff's Motion to Quash Subpoenas (Oct. 23, 2003).

Again rejecting S&L's claims of privilege and work product, the Court, on November 26, 2003, ordered S&L to respond to the document requests propounded on them via subpoena. The Court also ordered Cargill to complete Mr. Douglas's deposition after receiving the production from S&L and at that point for Cargill to determine whether the evidence warranted additional discovery, a motion for sanctions, or some other response. *See Arnold v. Cargill, Inc.*, Civ. No. 01-2086 (DWF/AJB), slip op. (D. Minn. Nov. 26, 2003) (Boylan, M.J.).

On January 14, 2004, S&L provided partial responses to Cargill's document requests; however, S&L refused to produce a significant number of documents Cargill had requested on attorney-client privilege and work product grounds. *See* Iwan Decl. Ex. L. In light of the Court's previous rulings, Cargill had to ask S&L to reconsider their position, and on March 29, 2004, S&L finally produced most of the documents previously withheld. *See id.* Ex. M. In the meantime, Cargill had noticed and re-noticed the second day of Mr. Douglas's deposition, and was ultimately able to complete it on May 10, 2004. The documents Cargill had to fight to get from S&L in response to its document requests were crucial to the second day of questioning of Mr. Douglas, for they revealed, in addition to a partial record of the breach of Cargill's confidences and privileges, that S&L had seriously misled Mr. Douglas with regard to his participation in the lawsuit and the nature of S&L's relationship with him. The Court found S&L's interactions with Mr. Douglas to be equally troubling, and all of this information

contributed to the arguments Cargill successfully advanced in its motion to disqualify S&L.

S&L had no good faith basis to resist the disclosure of information that clearly was relevant and ultimately led to their disqualification as putative class counsel. Even if S&L had some concerns about areas of inquiry into which Cargill could delve (such as legitimately attorney-client privileged matters), S&L easily could have followed the usual course of action and raised such objections on the record during Mr. Douglas's deposition. Rather, S&L chose the most protracted and costly course of action by filing preemptive and categorical motion after motion. Of course, as it turned out, S&L had a real (but improper) reason to do everything it could think of to conceal its relationship with Mr. Douglas – to protect itself against the possibility of disqualification or other sanctions. S&L cannot now hide from the consequences of its choice to obstruct the discovery process, multiply the proceedings, and force Cargill to expend significant resources that a full and complete disclosure of the truth could have avoided.

The total fees and costs regarding Cargill's discovery of the facts underlying its subsequent disqualification motion amounts to $222,142.57. *See* Iwan Decl. Ex. A at 1-11; *id.* at ¶ 6.

### B. Cargill Successfully Moved to Disqualify S&L On The Basis Of Information Obtained Only After Overcoming S&L's Unjustified, Obstructionist Conduct And Incurring Significant Fees And Expenses To Do So.

Following the completion of Mr. Douglas's deposition, Cargill incurred significant fees and expenses bringing to the Court's attention the entirety of S&L's misconduct.

On June 18, 2004, Cargill filed its Motion to Dismiss, Disqualify, and Impose Additional Sanctions and supporting documents. S&L failed to timely file a responsive memorandum, but the Court granted S&L's motion to accept a late filing. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Aug. 3, 2004) (Frank, J.). S&L filed their opposition memorandum on August 3, 2004. *See* Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss, Disqualify and Impose Additional Sanctions (Aug. 3, 2004; corrected version filed Aug. 5, 2004). The Court heard Cargill's motion on August 13, 2004.

At the August 13 hearing, in another calculated attempt to focus attention away from the true issue – their own misconduct, S&L suggested that an appropriate remedy might simply be to bar Mr. Douglas from appearing as a trial witness for S&L. *See* Trans. of Hearing on Defendant's Motion to Dismiss, Disqualify and Impose Sanctions, at 72-77 (Aug. 13, 2004). On August 19, 2004, S&L sought leave to submit supplemental briefing on that issue. *See* Plaintiffs' Motion for Leave to Supplement their Memorandum in Response to Defendant's Motion to Dismiss, Disqualify and Impose Additional Sanctions (Aug. 19, 2004). The Court granted S&L's request, *see Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Aug. 20, 2004) (Frank, J.), and on August 27, 2004, the parties submitted supplemental memoranda. *See* Plaintiffs' Supplement to Memorandum in Opposition to Cargill's Motion to Dismiss, Disqualify and Impose Additional Sanctions (Aug. 27, 2004); Cargill's Supplemental Memorandum in Support of Motion to Dismiss, Disqualify and Impose Additional Sanctions (Aug. 27, 2004). Even though S&L's position was completely spurious,

Cargill had no choice but to incur the costs of responding to yet another tactically obstructive motion by S&L.

On September 24, 2004, the Court issued a Memorandum Opinion & Order ("Opinion & Order") disqualifying S&L from further representation of Plaintiffs in this case. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Sept. 24, 2004) (Frank, J.). On October 5, 2004, S&L, through counsel, wrote the Court and requested leave to move for reconsideration of the Court's September 24, 2004, Opinion & Order. *See* Iwan Decl. Ex. N. S&L therein raised, for the first time, an argument that only individual lawyers (and not law firms) can violate ethics rules—a position at odds with its arguments before the Court on Cargill's motion to disqualify. On October 12, 2004, Cargill was forced to respond, yet again, in writing to a spurious argument raised by S&L, by pointing out that S&L's request found no support in the law. *See* Iwan Decl. Ex. O. On October 13, 2004, the Court agreed with Cargill and denied S&L's request for leave to file a motion for reconsideration. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Oct. 14, 2004) (Frank, J.).

Needless to say, Cargill incurred significant fees and expenses in researching, drafting, and arguing its motion to disqualify and companion issues. It is also beyond question that these fees and expenses were the direct and foreseeable consequence of S&L's improper conduct, which were then only compounded by S&L's strident, and increasingly misguided, resistance. At any point in this process, S&L could have (Cargill would submit, should have) chosen to make a complete disclosure to the Court. Instead,

S&L chose to fight Cargill on every document, bit of testimony, and substantive issue – a choice with consequences both then and now.

The total fees and costs regarding Cargill's researching, briefing, and arguing of disqualification issues amounts to $142,275.11. *See* Iwan Decl. Ex. A at 12-18; *id.* at ¶ 6.

### C. Even After S&L Were Disqualified, Cargill Continues To Incur Significant Fees and Expenses It Would Not Have Incurred But For S&L's Misconduct.

But the pattern did not there end. S&L itself predicted in Plaintiffs' Memorandum in Response to Defendant's Motion to Dismiss, Disqualify, and Impose Additional Sanctions (dated August 3, 2004), that "getting another law firm up to speed [would be] . . . extremely costly and inefficient." *See id.* at 33. Of course that circumstance was wholly of S&L's own making, since S&L strenuously had resisted Cargill's earlier proposal for a brief stay of proceedings to sort out the disqualification question without risking further contamination of plaintiffs' case. S&L also likely did not have in mind the cost to Cargill, but, in fact, the extent to which the ethical breaches by S&L had so tainted their representation of plaintiffs rendered the transition to successor counsel exceptionally protracted and expensive, as steps needed to be taken to insure that new counsel would not receive any infected documents or information. And, as had been the case throughout the process, S&L's obstinacy drove the matter back into motions before the Court.

Following the Court's denial of S&L's request for leave to move for reconsideration of the disqualification order, counsel for Cargill and S&L met and conferred numerous times regarding how to handle the transfer of the case to successor

counsel, including how to insulate successor counsel from being infected by tainted documents and information. On September 28, 2004, counsel for Cargill wrote to S&L, asking them to return Cargill's "Confidential" and "Attorneys' Eyes Only" material or to explain how they intended to comply with the terms of the Court's Protective Order, given that S&L no longer met the Protective Order's definition of a "qualified person" entitled to possess that material. *See* Iwan Decl. Ex. P. For several weeks, S&L neither surrendered Cargill's confidential information to a "qualified person" nor explained how they legally could continue to retain it. On October 18, 2004, counsel for S&L wrote the Court to request guidance on the issue of document and file handoff to successor counsel, and filed on October 22, 2004, a Motion for Directions from the Court for the Implementation of the September 24, 2004, Order and to Amend the Protective Order. Cargill filed its reply on November 1, 2004, and the Court held arguments thereafter. On November 23, 2004, the Court issued direction on the transfer of documents and files from S&L to successor counsel, and prohibited S&L from communicating with new successor counsel about the merits of the case, except to discuss the logistics of transferring documents to successor counsel. S&L thereafter transferred certain documents and files to successor counsel. *See Arnold v. Cargill*, *Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Nov. 23, 2004) (Frank, J.).

On January 3, 2005, Teresa Patton, a former S&L attorney, requested that the Court sever her from its September 24 disqualification order, thus allowing her to communicate with successor counsel and continue to work on the case. *See* Memorandum in Support of Motion to Sever Former S&L Attorney Teresa Patton from

Disqualification Order (Jan. 3, 2005). Cargill successfully opposed that motion, which also never would have even been filed if S&L had not committed misconduct warranting disqualification. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Feb. 9, 2005) (Frank, J.).

A couple weeks later, S&L's successor counsel requested access to additional documents and/or files beyond those to which the Court granted them access on November 23, 2004. *See* Plaintiffs' Memorandum in Support of Motion to Obtain Balance of Case Record (Feb. 25, 2005). In their motion, successor counsel proposed they were "willing to explore the appointment of a Special Master to whom the[ requested] materials could be produced for in camera review before production" to successor counsel. *See id.* at 3. Cargill filed its Memorandum in Opposition on March 3, 2005, and the Court held arguments on March 11, 2005. On March 24, 2005, the Court granted successor counsel additional access to some additional documents, including pleadings, deposition transcripts, and materials produced by Cargill in discovery. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. Mar. 24, 2005) (Frank, J.). However, the Court determined that successor counsel was entitled to access certain materials only after those materials had been "submitted for review by the Special Master in this case and determined to be 'untainted.'" *See id.* at 3.

In early summer of 2005, the Special Master received and reviewed 32 boxes of such materials to determine whether any of them were "tainted" by S&L's misconduct. Cargill provided the Special Master with relevant briefs, affidavits, transcripts, and other

information regarding that issue. *See Arnold v. Cargill, Inc.*, Civil No. 01-2086 (DWF/AJB), slip op. (D. Minn. July 1, 2005) (Frank, J.).

Finally, between the September 24, 2004, disqualification order and spring of 2005, Cargill communicated numerous times with the Office of Lawyers Professional Responsibility regarding the Office's investigation of the circumstances surrounding S&L's disqualification.

The total fees and costs regarding the transition from S&L to successor counsel and other post-disqualification issues amounts to $76,895.12. *See* Iwan Decl. Ex. A at 19-22; *id.* at ¶ 6.

The total fees and costs, therefore, that Cargill incurred as a direct and foreseeable consequence of S&L's disqualifying conduct, including the efforts required to discover such conduct; to research, brief, and argue such conduct to the court; and to transition representation of plaintiffs to successor counsel after disqualification, amounts to $441,312.80. On multiple grounds, Cargill has a right to recover and the Court has authority to award these fees and costs.

## DISCUSSION

Federal courts have a duty and responsibility to supervise the conduct of attorneys who appear before them. *See Gas-A-Tron v. Union Oil Co.*, 534 F.2d 1322, 1324-25 (9th Cir. 1976). Where an attorney's misconduct causes the opposing party to incur unnecessary costs, expenses, and fees, the Court is justified in imposing monetary sanctions to make the injured party whole under 28 U.S.C. § 1927 or, in the alternative, under the court's inherent powers. *See* 28 U.S.C. § 1927 (West 2007); *Chambers v.*

*NASCO, Inc*., 501 U.S. 32, 44-45 (1991). As discussed below, under either standard, sanctions to reimburse Cargill for the wholly unnecessary attorneys' fees and costs it incurred as a result of S&L's unethical and deceptive conduct are proper.

**A. Attorneys' Fees And Costs Should Be Imposed Under 28 U.S.C. § 1927.**

Title 28 of the United States Code Section 1927 provides that any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See* 28 U.S.C. § 1927. As this Court has recognized, the fundamental purpose of this statute is "to ensure those who create unnecessary costs also bear them." *See Schaffhausen v. Bank of Am*., Civ. No. 03-3492, 2004 U.S. Dist. LEXIS 1773, at *5-6 (D. Minn. Feb. 2, 2004) (attached as Ex. Q to Iwan Decl.) (quoting *Kapco Mfg. Co. v. C&O Enters.*, 886 F.2d 1485, 1491 (7th Cir. 1989)).

Whether costs and fees should be imposed under Section 1927 is a matter within the Court's sound discretion. *See Wages v. Internal Revenue Serv*., 915 F.2d 1230, 1235 (9th Cir. 1990), *cert denied*, 498 U.S. 1096 (1991); *Kapco Mfg. Co*., 886 F.2d at 1491. In the Eighth Circuit, the standard to which courts generally adhere in determining whether to exercise this discretion is "whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *6 (quoting *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990)); *accord Lee v. First Lenders Ins. Servs., Inc*., 236 F.3d 443, 445 (8th Cir. 2001). Under this objective standard, a specific finding of "bad faith" is not required. *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *5-6; *see also Kapco Mfg.*

*Co.*, 886 F.2d at 1494 ("Whether an attorney who is being sanctioned [under Section 1927] acted in good faith is not material if his conduct was objectively unreasonable"). Rather, where counsel had no legitimate reason for its conduct, the imposition of costs and fees under Section 1927 is warranted. *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *5-6 (opining that although the Magistrate Judge did not specifically find plaintiff's counsel acted in bad faith in opposing defendant's motion, the "plain language of the statute" was satisfied, and thus the imposition of fees warranted, where the Magistrate Judge determined counsel had "no reasonable opposition" to the motion in question).

As discussed below, this Court's disqualification ruling leaves no doubt that S&L lacked reasonable grounds for its conduct and demonstrated reckless disregard for its duties to the judicial process. Accordingly, under Section 1927, S&L should bear the significant costs its unreasonable conduct forced Cargill to incur both in unearthing facts relevant to the firm's wrongdoing and, ultimately, in prosecuting the related disqualification motion and still later bearing the expenses of a transition of the case to successor counsel. *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *5-6.

**1. S&L's Conduct in Soliciting, Reviewing, Copying, and Retaining Cargill's Privileged and Confidential Documents and Information Was Objectively Unreasonable.**

In finding that S&L should be disqualified from its representation of plaintiffs, this Court concluded:

> The Court … recognizes the need for zealous advocates willing to creatively, and oftentimes aggressively, represent plaintiffs in class actions. Here, however, S&L crossed the line. *There are no circumstances under which this Court can countenance S&L's conduct.*

*Arnold v. Cargill, Inc.*, No. 01-2086 (DFW/AJB), 2004 WL 2203410, at *14 (D. Minn. Sept. 24, 2004) (emphasis added). In fact, this Court concluded that, *at best*, S&L's conduct demonstrated a "reckless disregard[]" for the firm's ethical obligations. *See id.* at *6-11. More precisely, Judge Frank opined that S&L likely violated at least three separate ethical rules – MRPC 4.1, 4.2, and 4.4. However, it is not so much the particulars of the rules that matter to the present Motion, but rather the Court's unmistakable conclusion that S&L had no reasonable explanation for its conduct.

- S&L had attempted to ingratiate itself to Douglas in order to obtain information about Cargill and to fabricate an unwarranted "privilege" respecting any related communications with Douglas by knowingly misleading Douglas into believing he was a viable class member in the suit the firm was then prosecuting against Cargill. *See id.* at *6. Judge Frank expressly concluded that there was "*no justification*" for S&L's representations to Douglas. *See id.* at *7 (emphasis added).

- "S&L knew that Douglas was extensively exposed to confidential and privileged information" yet "made *no meaningful effort* to protect Cargill's confidences," emphasizing that "in fact, it appears that S&L actually encouraged Douglas to send over to its offices 'any documents' pertaining to Cargill, including privileged documents." *See id.* at *8 (emphasis added).

- "S&L took *grossly inadequate* measures to prevent the disclosure of privileged information from Douglas. There can be *no question* that S & L … did impermissibly intrude upon privileged matters." *See id.* at *9 (emphasis added).

- S&L's conduct after it actually obtained privileged documents from Douglas "*blatantly* risked creating the appearance of impropriety." *See id.* at *10 (emphasis added).

- "At a minimum, S&L's behavior *recklessly disregarded* the risks associated with playing fast and loose with the rules protecting against disclosure of privileged and confidential material. At worst, S&L is guilty of a *serious deception* with respect to its role in the disclosure and retention of Cargill's privileged and confidential information." *Id.* (emphasis added).

In light of these findings – in particular, that S&L's unethical conduct was "not justified," "grossly inadequate," and, at the very least, constituted a "reckless disregard[]" for the ethical rules – the foregoing conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *6; *Perkins*, 911 F.2d at 36. Accordingly, it is appropriate under Section 1927 to reimburse Cargill for the related attorneys' fees and costs it reasonably incurred in litigating these ethical issues, which mandated S&L's disqualification. *See, e.g.*, *Terrabonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050, 1062 (E.D. Cal. 1998) (imposing attorneys' fees even under the Ninth Circuit's stricter "bad faith" standard, finding that counsel's deceitfully obtaining confidential information violated California's ethical rules and concluding that "such conduct caused the need for the recusal proceedings. This course of conduct was legally unjustified; it knowingly or recklessly advanced a meritless legal position, and wrongfully multiplied the proceedings.").

**2. S&L's Unrelenting Efforts to Prevent Cargill from Discovering Facts Related to Its Misconduct Were Also Objectively Unreasonable.**

The foregoing conduct alone undoubtedly warrants the imposition of attorneys' fees and costs against S&L under Section 1927. S&L's unreasonable behavior, however, did not end with the firm's long overdue return of Cargill's privileged documents.

Rather, the latter marked the beginning of S&L's relentless and legally meritless campaign to prevent the host of prior unethical conduct it had engaged in from coming to light. As this Court acknowledged, "After discovering that S&L had been in possession of Cargill documents marked confidential and privileged, Cargill launched what became a protracted effort to depose Douglas and elicit discovery from S&L to account for how the documents came into their possession." *See Arnold*, 2004 WL 2203410, at *4. This "protracted effort" spanned nearly two years, required repeated resort to the Court for assistance, and ultimately cost Cargill over $220,000.00 in legal fees and costs expended to overcome S&L's baseless resistance to Cargill's legitimate inquiries. *See supra* pp. 4-8. The very purpose of Section 1927 is to ensure that innocent parties such as Cargill are not forced to bear such unnecessary costs. *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *6. As discussed below, in light of S&L's unreasonable opposition to Cargill's meritorious attempts to discover relevant information, the imposition of sanctions under Section 1927 is especially warranted here. *See id.*

Where such unnecessary litigation ensues as a result of counsel's unethical behavior and repeated assertions of meritless legal positions, counsel has essentially created a "lawsuit within a lawsuit" and, under Section 1927, should bear the related costs. *See Terrabonne, Ltd.*, 1 F. Supp. 2d at 1074-75 (finding that counsel's similar ethical misconduct in "wrongfully eliciting and obtaining confidential attorney-client and attorney work-product materials," coupled with counsel's continuing assertion of meritless legal positions against its adversary, unnecessarily and vexatiously multiplied the proceedings).

Ultimately, the patent unreasonableness of S&L's efforts to thwart the discovery of facts regarding its unethical possession of Cargill's privileged documents is most potently evidenced by the firm's disingenuous, if not overtly dishonest, tactics to "hide" relevant witnesses and evidence. For example, S&L claimed that the decision to copy and store Cargill's privileged documents was made by an unnamed "case clerk," who allegedly defied S&L's specific instructions not to make any such copies. *See Arnold*, 2004 WL 230410, at *3. When questioned during oral argument, however, S&L "was unable or unwilling to identify the case clerk" in question. *See id.* Noting this "conveniently" meant this key witness was "unavailable to be deposed or give sworn testimony" on the matter, Judge Arnold specifically "reject[ed] the notion that S&L [was] unable to identify the mysterious 'case clerk.'" *See id.* at *10. Indeed, S&L prevented Cargill and the Court from having access to this person at a time when it most mattered, yet, now that S&L is asking the Court to order Cargill to pay for that person's time, S&L finds itself able to identify this "case clerk" by name. *See* Declaration of Michael D. Lieder in Support of Sprenger & Lang, PLLC's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses, at ¶ 9 (filed Aug. 8, 2007).

Such abusive litigation tactics are, beyond question, wholly unreasonable and further justify the imposition of attorneys' fees under Section 1927. *See Perkins v. General Motors Corp*., 965 F.2d 597, 600-01 (8th Cir. 1992) (affirming Section 1927 sanctions where counsel's conduct "exceeded the most generous definition of zealous advocacy" where counsel, *inter alia*, made false statements that she lacked knowledge of certain facts; emphasizing that by engaging in such behavior "plaintiff's counsel engaged

in abusive litigation tactics that delayed the processing of the case and increased the expense for both parties and the judicial system" (internal quotations and citation omitted)); *cf. In re Ligon*, 50 B.R. 127, 133 (M.D. Tenn. 1985) (refusing to believe that counsel "simply forgot" relevant information related to a serious omission in a client's disclosure statement, finding that attorneys' fees and expenses were clearly warranted under Bankruptcy Rule 9011 in light of the fact that counsel "knowingly turned the [matter] into a game of hide and seek").

### 3. S&L's Objectively Unreasonable Conduct Caused Cargill to Incur Significant Costs for which Cargill should be Reimbursed.

As the direct and inevitable result of S&L's conduct, Cargill incurred attorneys' fees and costs. As the record here demonstrates, due to S&L's unrelenting effort to prevent Cargill from discovering the circumstances surrounding its privilege breach, Cargill was forced to draft and respond to multiple motions in order to discover whether misconduct had, indeed, occurred. After discovering enough facts to realize S&L had violated numerous ethical rules, it became necessary for Cargill to assume the cost of prosecuting a motion to disqualify. Thereafter, despite the Court's harsh rebuke of S&L's conduct in disqualifying the firm, S&L incredulously wrote the Court for leave to move for reconsideration. Cargill was forced to respond, again incurring additional fees. Finally, S&L's conduct required Cargill to assume myriad expenses involved in the transfer of the case to new counsel in order to ensure none of Cargill's documents once again ended up in the wrong hands. The latter included costs associated with hiring a Special Master. Because each and every one of these costs was directly caused by S&L's

wrongful conduct, S&L – *not* Cargill – should bear the costs. *See Schaffhausen*, 2004 U.S. Dist. LEXIS 1773, at *5-6; *Kapco Mfg. Co.*, 886 F.2d at 1491; *cf. Esser v. A.H. Robins Co.*, 537 F. Supp. 197, 204 (D. Minn. 1982) (ordering that the expense incurred in hiring a Special Master to monitor the transfer of a case from a withdrawing firm to new counsel was to be borne by the former).

### B. The Imposition Of Attorneys' Fees And Costs Is Additionally Warranted Under The Court's Inherent Authority To Sanction Attorney Misconduct.

Beyond the express statutory authority to impose fees and costs afforded under Section 1927, courts may also rely on their inherent powers to sanction attorney misconduct. *See Chambers*, 501 U.S. at 44-45. This inherent power includes the authority to supervise and discipline attorneys practicing before the court. *See, e.g., Chambers*, 501 U.S. at 43 (citation omitted); *Harlan v. Lewis*, 982 F.2d 1255, 1259 (8th Cir. 1992), *cert. denied*, 510 U.S. 828 (1993); *O'Connor v. Jones*, 946 F.2d 1395, 1399 (8th Cir. 1991) (citation omitted).

Accordingly, it is within the Court's discretion to exercise its inherent power to impose costs and fees against attorneys who "exploit or abuse judicial procedures." *See Roadway Express v. Piper*, 447 U.S. 752, 757 (1980). Such sanctions serve "the dual purpose of vindicating judicial authority without resort to the more drastic sanctions available for contempt of court and making the prevailing party whole for expenses caused by his opponent's obstinacy." *Chambers*, 501 U.S. at 46; *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). Although sanctions imposed under the Court's inherent authority require a finding of bad faith, *see Chambers*, 501 U.S. at

55, a finding of bad faith is warranted "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," such as harassment or delay. *See Acevedo v. Immigration and Naturalization Serv.*, 538 F.2d 918, 920 (2d Cir. 1976).

S&L's conduct, which violated an array of ethical rules related to candor and privilege, clearly satisfies even this stricter, bad-faith standard. In *Terrabonne Ltd. of California v. Murray*, for example, the Ninth Circuit found that counsel's similar ethical violations in dishonestly soliciting privileged information – which violations had also led to counsel's disqualification in that case – constituted conduct that "rises to the level of subjective bad faith necessary to support appropriate sanctions." *See* 1 F. Supp. 2d at 1074. Indeed, the court opined that "[a] failure to sanction [the attorneys in question] would be an abdication of the court's responsibility to address and appropriately deal with obvious violations of the Rules of Professional Conduct and ethical canons." *See id.* In light of counsel's "deceptive and unethical practices," the court found that, in addition to counsel's disqualification, "monetary sanctions [were] appropriate to reimburse [the opposing party] for the attorneys fees incurred in litigating the ethical issues requiring … disqualification." *See id.* at 1073-74.

Ultimately, such remedial sanctions designed to make an innocent party whole for the losses it incurs as a result of the offender's wrongdoing are generally deemed an appropriate exercise of the court's inherent authority. *See In re Kujawa*, 270 F.3d 578, 582-83 (8th Cir. 2001) (finding a sanction of attorneys' fees paid to the opposing party as compensation for expenses incurred as a direct result of counsel's unethical behavior was

remedial, and thus an appropriate exercise of the court's inherent authority); *Terrabonne Ltd.*, 1 F. Supp. 2d at 1073 ("Contrary to the disqualified attorneys' assertion that it would be 'vindictive and Draconian for the Court to impose in addition [to their disqualification] a monetary sanction [to reimburse the opposing party for expenses incurred in bringing the motion to disqualify],' monetary sanctions are justified under the arsenal of sanctions available to the court to compensate for needless attorney's fees and expenses caused by the altogether avoidable proceedings which resulted from the disqualified attorneys' reckless and improper conduct."); *cf. Apple Corps Limited, MPL v. Int'l Collectors Society*, 25 F.Supp.2d 480, 484 (D.N.J. 1998) ("The Court may also award fees and expenses under the court's inherent power to reimburse a party for outlays incurred in securing an adjudication of contempt . . . [T]he innocent party is entitled to be made whole for the losses it incurs as a result of the contemnors' violations, including reasonable attorneys' fees and expenses." (internal quotations and citations omitted)).

Like *Terrabonne*, this is one of the unfortunate cases in which counsel's deceptive and unethical practices warrant the exercise of the court's inherent authority to impose attorneys' fees and costs. *See* 1 F. Supp. 2d at 1074, 1076 ("Regrettably, the amount of this award [for attorneys' fees] is justified because the attorneys engaged in deceptive and unethical practices); *see also Agyei v. Missouri*, 931 F.2d 470, 486 (8th Cir. 1991) (noting that the Eighth Circuit "'encourage[s] the district courts to strictly enforce the Code of Professional Responsibility'"). S&L's ethical violations related to candor and privilege rose to the level of "bad faith" conduct. *See Terrabonne Ltd.*, 1 F. Supp. 2d at 1073-75. Ultimately, as discussed above, this wrongful conduct forced Cargill to incur significant

expenses in discovering related facts, moving to disqualify, responding to S&L's subsequent motion for reconsideration, and monitoring the case's transfer to new counsel. Sanctions imposed to make Cargill whole for these losses are accordingly appropriate. *See In re Kujawa*, 270 F.3d at 582-83; *Terrabonne Ltd.*, 1 F. Supp. 2d at 1076.

**C. Cargill's Requested Relief Is Reasonable.**

Because Cargill seeks to be made whole by recovering already-ascertained fees and costs it has actually paid to its counsel (a total of over $440,000.00), Cargill submits that the "lodestar" method used to calculate reasonable attorneys' fees in requests brought under fee-shifting statutes is inapposite. *Cf., e.g., DeWitt Bros. Homes, Inc. v. Nat'l Title Resources Corp.*, No. C8-95-2146, 1996 WL 278230 (Minn. Ct. App. May 28, 1996) (noting that "[w]hen one party as a direct result of tortuous conduct . . . causes a second party to enter litigation with a third party, the second party's litigation expenses are a proper element of damages in an action against the first party") (attached as Ex. R to Iwan Decl.). However, should the Court believe the lodestar method relevant to calculating the fees and expenses to which Cargill is entitled, the number of hours expended by Cargill is unquestionably reasonable in light of the incredible scope of S&L's unjustified, obstructionist conduct. *See* Iwan Decl. Ex. A (setting forth total hours expended).

Further, the hourly rates of Cargill's counsel, Dorsey & Whitney, are reasonable and on par with those this Court recently applied in an employment class action.[2] *See*

[2] Without in any way conceding that S&L's purported rates are reasonable, Cargill also notes that its attorneys' hourly rates are *less* than the unbilled rates claimed by S&L in its

*West v. Border Foods*, Civil No. 05-2525 (DWF/RLE), 2007 WL 1725760 (slip copy) (D. Minn. June 8, 2007) (Frank, J.) (awarding fees based on attorneys' rates of $550.00, $400.00, and $275.00 per hour) (attached as Ex. S to Iwan Decl.); *cf. McDonald v. Armontrout*, 860 F.2d 1456, 1458-59 (8th Cir. 1988) (noting that the "requested rates [should be] in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" (citing *Blum v. Stenson*, 465 U.S. 886, 895-96, 896 n.11 (1984))).

## CONCLUSION

"S & L [has] crossed the line. There are *no circumstances* under which this Court can countenance S & L's conduct." *Arnold*, 2004 WL 2203410, at *14 (emphasis added).

S&L's conduct is precisely the sort that is meant to be sanctioned under Section 1927 and the Court's inherent powers. S&L's serial ethical violations, subsequent cover-up efforts, and related disqualification have cost Cargill hundreds of thousands of dollars. S&L, the party who created these wholly unnecessary expenses, should be the party that

---

motion for fees. *Compare* Declaration of Michael D. Lieder in Support of Sprenger & Lang, PLLC's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses at 30 (setting forth S&L attorney billing rates ranging from $450.00 to $500.00 for partners, and from $275.00 to $420.00 for associates; paralegal billing rates of $190.00; and legal assistant billing rates ranging from $120.00 to $155.00), *with* Iwan Decl. Ex. A (showing attorney billing rates for partners ranging from $335.00 to $470.00 for the time period from October 2003 to October 2004, and from $350.00 to $495.00 for October 2004 to October 2005; for associates ranging from $215.00 to $275.00 for October 2003 to October 2004, and from $230.00 to $295.00 for October 2004 to October 2005; paralegal billing rates of $180.00 for October 2003 to October 2004, and $185.00 for October 2004 to October 2005; and legal assistant rates of $80.00). Thus, Cargill would find it surprising for S&L to contend that the hourly rates Cargill actually and already has paid to its attorneys are somehow unreasonable.

bears them. Cargill respectfully moves this court for an award of attorneys' fees and costs in the amount of $441,312.80.

Dated: October 12, 2007

DORSEY & WHITNEY LLP

s/Michael Iwan

Paul B. Klaas (#56327)
Holly S. A. Eng (#238028)
Michael Iwan (#28628X)
50 South Sixth Street, Suite 1500
Minneapolis, MN 55502-1498
Telephone: (612) 340-2600

Attorneys for Defendant
CARGILL, INCORPORATED