# EXHIBIT E

SPRENGER & LANG
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

SUSAN M. COLER
MINNEAPOLIS OFFICE
E-Mail: scoler@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

August 30, 2002

**VIA FACSIMILE**

The Honorable Arthur J. Boylan
Magistrate Judge, U. S. DISTRICT COURT
Room 638, Warren E. Burger Federal Building
316 North Robert Street
St. Paul, MN 55101

***Re: Arnold et al. v. Cargill***

Dear Magistrate Judge Boylan:

At 4:15 p.m. on Friday, August 30, 2002 we received the letter Cargill sent to you in preparation for our Tuesday conference call. We did not know that Cargill intended to raise the issues in that letter so quickly without the opportunity for dialogue and an attempt to resolve the issue before bringing it to you. Accordingly, we have not prepared a letter to you addressing the issues Cargill has raised. Cargill certainly knows that we would consider this an important issue for which we would want to provide an appropriate letter to the Court. Given the time constraints, however, we are unable to do this and instead are providing the Court with the letter we sent to Cargill today.

From our letter to Cargill, it is obvious that Cargill's assumption that privileged documents were sent to Sprenger & Lang as a result of the website is dead wrong, making Cargill's inquiries about the website not reasonably calculated to lead to admissible evidence.

Moreover, the facts in Cargill's letter to the Court are wrong. The first privileged document was sent to us via U.S. mail in an unmarked envelope before the website was even posted online. The second group of documents did not come to us in an unmarked envelope and they did not come to us as a result of the website.

In its letter to the Court, Cargill is asking the Court to make a decision before Cargill has engaged in meaningful dialogue with the plaintiffs and before the plaintiffs' response to the disputed discovery is even due. Cargill served the discovery on the plaintiffs on August 14, 2002, making September 12, 2002 the deadline for a response. Cargill's request for a decision on this discovery is therefore premature.

**EXHIBIT E**

The Honorable Arthur J. Boylan
August 30, 2002
Page 2

Very truly yours,

Susan M. Coler

Enclosure
cc: Matthew Klein, Esq. (w/enclosure) (*Via facsimile*)

Susan

# SPRENGER & LANG

A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

SUSAN M. COLER
MINNEAPOLIS OFFICE
E-Mail: scoler@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

August 30, 2001

**DELIVERY VIA MESSENGER**

Janice M. Symchych, Esq.
Matthew Klein, Esq.
DORSEY & WHITNEY, LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498

***Re: Arnold et al. v. Cargill***

Dear Jan and Matt:

I am responding to your letter addressed to Larry Schaefer and delivered to our office on August 14, 2002 after he had left on a vacation about which you had been informed.

**A. Discovery Directed at www.cargillcase.com**

Unless you convince us that your discovery demands related to development of the website at www.cargillcase.com and the response of class members to that website are reasonably calculated to lead to the discovery of admissible evidence and are otherwise appropriate, plaintiffs will not voluntarily respond to Interrogatories 4-8 of Cargill's Second Set of Interrogatories or Requests for Production 33 and 34. With regard to Request 35, it is unclear what is meant by documents received "from people responding directly or indirectly" to www.cargillcase.com. Documents that are responsive to Cargill's prior requests have been and are being produced that have been provided to us by plaintiffs and other persons. We also object to the Notice of Taking Deposition of Sprenger & Lang PLLC on the grounds that it is not reasonably calculated to lead to the discovery of admissible evidence.

Cargill apparently seeks to justify this discovery based on its assumption that information about means of participation in the lawsuit provided in the website caused privileged documents to be provided to our firm on two occasions. Cargill's factual

assumption is incorrect, but even if it were true, we do not understand how those two incidents would justify the proposed discovery.

The www.cargillcase.com website was first posted on or about the day the Complaint was filed, November 15, 2001. Sprenger & Lang was not and is not involved in posting any other website about the Cargill case (other than the link to www.cargillcase.com provided in the www.sprengerlang.com website).

By letter dated September 20, 2001, Mr. Schaefer sent you a privileged document that had been sent to him anonymously at the end of August, 2001. Accordingly, the website could not possibly have been the cause of an anonymous mailing some three and a half months before the website even appeared on the internet.

Nor can the documents sent to you on July 15, 2002 be linked in any way to the Cargill website. A client provided those documents to us, along with many non-privileged documents, in November 2000 to assist us in our evaluation of whether to prosecute a race discrimination class action against Cargill. Without describing any communications between the client and Mr. Schaefer, what happened was as follows.

A paralegal assigned to this case and Mr. Schaefer reviewed and began to organize these documents shortly after their production. They noticed that some documents were designated "Privileged" and/or otherwise appeared to originate from, or be directed to, internal or outside legal counsel for Cargill. At Mr. Schaefer's direction, the legal assistant immediately segregated these documents from the others produced. They did not review the documents substantively in any manner. Mr. Schaefer then asked the legal assistant to return all of the documents that were designated as or appeared to be privileged to the client, and to be sure that no one at the firm reviewed them and that we not retain any copies. The documents were returned to the client in December 2000.

In late June of 2002, the legal assistant discovered a box of documents while preparing to respond to Cargill's document production requests. The box contained documents produced by the client, including the privileged documents. Mr. Schaefer conducted an investigation and determined that either the legal assistant had forgotten, or did not know, that another employee had copied all of the documents that the client had produced before any review of the documents had been conducted. Thus, when the privileged documents were returned to the client, a set of copies was inadvertently retained. It is that set of copies that were sent to you July 15, 2002.

Thus, ***no*** privileged documents have been provided to us in response to any message in the website. This is not surprising. The first sentence of the page that you apparently find most problematic, "How Do I Become Involved?," has read since the site was created, "If you have non-privileged information that may assist us in prosecuting this case, please contact us at the address listed below." To address your concerns, however, and as discussed below, we have voluntarily changed the page to make

additional references to the fact that the information must be non-privileged. We share Cargill's desire that documents that Cargill has labeled "privileged" not come into our possession.

Even if we had received privileged documents from a current or former employee who learned of the case or was inspired to send us documents as a result of the website, we fail to see how that action by someone who ignored the statement that documents must not be privileged would justify the requested discovery. First, the discovery is not reasonably calculated to lead to the discovery of admissible evidence. The language of the website speaks for itself. If it is improper, the identity of the drafter, the date of drafting, and the text of improper drafts are irrelevant. Similarly, it is irrelevant whether a current or former Cargill employee found out about or decided to become involved in the lawsuit as a result of the website, of communications with other current or former employees, or of a combination of both. The strength of that employee's claims and of the evidence relevant to those claims is not affected by the source of that employee's knowledge about the lawsuit.

Second, even if Cargill could advance an argument to show that the information likely to be elicited by the propounded discovery about the website would have some marginal relevance to the case, the significance of that information would almost certainly not outweigh the patent threat to attorney-client privilege and attorney work product posed by the discovery and the imbalance in the scales of justice that such discovery would create. An employer's counsel has little trouble communicating with managers in possession of information relevant to a class action employment discrimination lawsuit, since the employer can compel cooperation. A website helps to even the odds by allowing class counsel even prior to class certification to reach out to class members and others in possession of relevant information. Class counsel should not have to choose between initiating communications with potential class members through a website and prying by employer's counsel into the preparation, use and value of the website.

Obviously from what I have said above, we very much doubt that we will acquiesce in any of the propounded discovery concerning the website. Nonetheless, this is a new experience for us. We have never been served with discovery directed at a case-specific website that we have created, and we may have overlooked an argument in favor of the discovery.

If you believe after reviewing this letter that you have a valid basis for propounding the website discovery, please let us know and we will either respond or seek relief from Magistrate Judge Boylan. Otherwise, we request that Cargill withdraw that discovery.

**B. Delivery of the July 15, 2002 Documents to Sprenger & Lang**

I understand that you had a telephone conversation with Mr. Schaefer shortly after we delivered the July 15 Documents to you. You asked him to divulge the name of the person who gave the documents to us, he declined, and you said that you knew who had done it even without Mr. Schaefer providing the name. Along with the discovery directed at Sprenger & Lang, you served a notice of deposition for Bill Douglas. You obviously believe that he was the source of the July 15 Documents, but we doubt that your belief concerning the source of the documents is the only reason you have noticed his deposition. There is thus no need for us to respond to Interrogatory 1 at this time. If you still believe that you need us to respond to that interrogatory after Mr. Douglas' deposition, please let us know.

Without disclosing any client confidences, we can respond to Interrogatories 2(a), 2(b), and 3. We also will respond to Requests for Production 31 and 32.

**C. Stipulation**

We will not sign the Stipulation as drafted. As explained above, the premise on which it is based is simply false. Moreover, after Sprenger & Lang received an anonymously-sent document last August, a letter was sent to all the plaintiffs of the type suggested in the Stipulation. If necessary, this letter could be provided to the Court for *in camera* review.

In the course of responding to Cargill's discovery requests, the plaintiffs have provided the documents in their possession to us and no additional privileged documents have emerged. This is compelling evidence that they understand their obligations.

The proposed stipulation reflects a belief that we find disturbing. Cargill apparently has concluded, based on two unrelated incidents, that plaintiffs and their supportive witnesses as a group are a risk to violate attorney-client privilege or the attorney work product doctrine. The attorneys and staff at Sprenger & Lang are well aware of their professional obligation not to seek or review such materials and they have instructed their clients accordingly. No additional stipulation is needed.

In the first sentence of the section in the www.cargillcase.com website titled "How do I become involved" readers are told that they can contact us if they have "**non-privileged** information that may assist us." Clearly the intent of that section was to elicit only non-privileged material. Nonetheless, we are adding additional text to that section of the website that should be operative by the end of next week. The text is attached.

Very truly yours,

Susan M Coler

Susan M. Coler

# Cargill Employment Discrimination Litigation Website

**How Do I Become Involved?**

## Contacting Us

If you have non-privileged information that may assist us in prosecuting this case, please contact us at the address listed below. We would like to hear from you even if your knowledge is limited to what you've heard from others or if you believe that another proposed class member or witness already contacted us about the same incident.

At this time, we would like information concerning:

1. Race discrimination against African American managerial and professional employees in the areas of advancement, compensation, and termination.
2. Any statements, written or oral, by Cargill managers showing bias against African American employees and/or remarks that are derogatory in nature against African Americans.
3. Any reports or studies showing the disparities in advancing, compensating, and terminating African American employees in relation to their non-African American co-workers.

**You should NOT provide us with any Cargill documents that are marked "attorney-client privilege" or documents or information provided by or received from a Cargill attorney or an attorney representing Cargill.**

If you have nonprivileged information, documents, video or audiotapes, that you wish to share with us, please contact Sprenger & Lang, PLLC at the mailing address, phone number, or e-mail address listed below:

**Sprenger & Lang, PLLC**
**Attn: The Cargill Case**
**325 Ridgewood Avenue**
**Minneapolis, MN 55403**

**612/871-8910**
**CargillCase@SprengerLang.com**

# EXHIBIT F

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RODERICK ARNOLD, NII-AKWEI ACQUAYE, SEAN ALLEN, HOLLIS BRANHAM, TOYA BROWN, DAWN COLLINS, LOUIS DARDEN, DELLA DICKSON, VIRGINIA DOUGLAS, RONALD GARRUS, MARGO HARVEY, CHENETA HUGHEY, JACQUELINE JENKINS, KEITH LEWIS, VALERIE MASON-ROBINSON, MICHAEL MITCHELL, PHYLLIS REECE, TONYA ROSS, CHARLES SCOTT, CLINTONIA SIMMONS, TAUSHA TATE, EMILY TYLER, JACQUELINE WILLIAMS, CHERYL WILLIS, SEAN WRIGHT,

Plaintiffs,

v.

CARGILL, INCORPORATED,

Defendant.

Civil File No. 01-CV-2086 (DWF/AJB)

**AMENDED NOTICE OF TAKING DEPOSITION OF R. BILL DOUGLAS**

**TO: The named Plaintiffs and their attorneys, Lawrence Schaefer and Susan M. Coler, Sprenger & Lang PLLC, 325 Ridgewood Avenue, Minneapolis, Minnesota 55403.**

**PLEASE TAKE NOTICE** that the deposition of R. Bill Douglas will be taken pursuant to Rules 30 and 45 of the Federal Rules of Civil Procedure, by oral examination before a duly qualified court reporter at the offices of Dorsey & Whitney LLP, Suite 1500, 50 South Sixth Street, Minneapolis, Minnesota, 55402, on September 17 and 18, 2003, commencing at 9:00 a.m. each day, and continuing thereafter until the same shall be completed. Mr. Douglas also has been commanded to produce the documents described in Exhibit A, attached hereto.

Dated: July 11, 2003

DORSEY & WHITNEY LLP

By [signature]
Janice M. Symchych #10811X
Mark Ginder #136396
Melissa Raphan #182795
Holly S. A. Eng #238028
Michael Iwan #28628X
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498
Telephone: (612) 340-2600

Attorneys for Defendant
CARGILL, INCORPORATED

**EXHIBIT F**

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

For purpose of these Requests, the following words shall have the meanings ascribed to them below:

1. As used herein, the term "document" or "documents" includes, the original or drafts of any kind of written, printed, recorded, or graphic material or sound reproduction, however produced or reproduced, whether sent or received or neither, and all copies thereof, which are different in any way from the original (whether by notation, indication of copies sent or received, or otherwise) regardless of whether designated "confidential," "privileged," or otherwise, and including, but not limited to, any correspondence, paper, book, account, drawing, agreement, calendar, diary, contract, memorandum, telegram, report, record, audio tape, video tape, transcript, study, note, intra-office communication, inter-office communication, electronic mail ("e-mail") communication, computer program, computer file, check, check stub, or note of any conference.

2. "You" or "your" means you, Bill Douglas, and all representatives or other persons acting, or purporting to act, on your behalf.

3. "Representative" means agents, attorneys, and all other persons acting, or purporting to act, on behalf of the designated person.

4. As used herein, "Cargill" means not only Cargill, Inc., but also its officers, employees, and representatives.

5. As used herein, "Sprenger & Lang PLLP" means the law firm itself and its partners, employees, agents, and representatives.

6. "Diary" means a record of events, transactions, observations, activities, reflections, or feelings kept on a daily or frequent basis, including but not limited to notes of such events, transactions, observations, activities, reflections, or feelings.

7. As used herein, "the Litigation" means the litigation captioned *Arnold, et al. v. Cargill, Incorporated*, filed in the United States District Court for the District of Minnesota and assigned Case Number 01-CV-2086.

7. The singular form of a word shall refer to the plural as well, and words used in the masculine gender also include the feminine.

8. If any privilege is claimed with respect to any document requested, please state:

(a) the nature of the document (e.g., letter, memorandum, report, etc.);

(b) the date it bears, or, if undated, the date it was written or created;

(c) its author(s);

(d) the identity of each of its recipients;

(e) its general subject matter;

(f) its present or last known location and/or custodian; and

(g) the privilege claimed and the basis therefore.

9. Unless otherwise specified, the pertinent time frame for these Requests is from January 1, 1995 through the present.

**REQUEST NO. 1:** Any and all documents you provided to Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill.

**REQUEST NO. 2:** Any and all documents you received from Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill, including, without limitation, any documents prepared by Sprenger & Lang PLLP on your behalf.

**REQUEST NO. 3:** Any and all documents in your possession prepared by Cargill; by any employee, agent, or representative of Cargill (including you acting in such capacity); or for Cargill by you or any other employee, agent, or representative of Cargill.

**REQUEST NO. 4:** Any correspondence, notes, or other documents you or your representatives sent, mailed, delivered, or otherwise provided to or received from any

government body, agency, or other person containing, referencing, or commenting upon the Litigation, Cargill, your employment experience at Cargill, or the employment experience of any of Cargill's employees, including, without limitation, any correspondence between you and any current or former employee of Cargill. This request specifically includes e-mail communications, whether currently printed in hard copy or maintained in an electronic format.

**REQUEST NO. 5:** All memoranda, correspondence, notes or other documents that in any way relate to the Litigation, your employment with Cargill, or the employment experience of any of Cargill's employees, including, but not limited to, audio tapes, video tapes, diaries, logs, letters, correspondence, notes or calendars that you or your representatives have made that reference, summarize, describe, or memorialize your employment or any conversations, warnings, or other statements involving you and any current or former officers, employees, or representatives of Cargill.

**REQUEST NO. 6:** All calendars from January 1, 1999 to the present reflecting dates of any meetings with Sprenger & Lang PLLP or current or former employees of Cargill.

**REQUEST NO. 7:** To the extent that you had any relationship with Sprenger & Lang PLLP other than an attorney-client relationship, all documents describing or reflecting that relationship, including, without limitation, documents reflecting any payments made to you by Sprenger & Lang PLLP or offers from Sprenger & Lang PLLP to make payments to you.

**REQUEST NO. 8:** All documents reflecting the date on which your attorney-client relationship with Sprenger & Lang PLLP ended.

**Issued by the**

# United States District Court

## DISTRICT OF MINNESOTA

Roderick Arnold, et al.

v.

Cargill, Incorporated

**SUBPOENA IN A CIVIL CASE**

**CASE NUMBER:**[1] 01-CV-2086 (DWF/AJB)

TO: **R. Bill Douglas, 1343 Washburn Avenue N., Minneapolis, MN 55411**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
| --- | --- |
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
| --- | --- |
| **Dorsey & Whitney LLP**<br>**50 South Sixth Street, Suite 1500**<br>**Minneapolis, MN 55402** | **September 17 and 18, 2003 at 9:00 a.m. each day** |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached Exhibit A**

| PLACE | DATE AND TIME |
| --- | --- |
| **Dorsey & Whitney LLP**<br>**50 South Sixth Street, Suite 1500**<br>**Minneapolis, MN 55402** | **August 18, 2003 at 1:30 p.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
| --- | --- |
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
| --- | --- |
| [signature]<br>*Attorney for Defendant Cargill, Incorporated* | 7-11-03 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Michael Iwan (#28628X), Dorsey & Whitney LLP, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402. Telephone: 612-340-5613.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

# PROOF OF SERVICE

| DATE | PLACE |
|---|---|
| SERVED | |
| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
| SERVED BY (PRINT NAME) | TITLE |

# DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

DATE

SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less that 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only under specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of all the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

For purpose of these Requests, the following words shall have the meanings ascribed to them below:

1. As used herein, the term "document" or "documents" includes, the original or drafts of any kind of written, printed, recorded, or graphic material or sound reproduction, however produced or reproduced, whether sent or received or neither, and all copies thereof, which are different in any way from the original (whether by notation, indication of copies sent or received, or otherwise) regardless of whether designated "confidential," "privileged," or otherwise, and including, but not limited to, any correspondence, paper, book, account, drawing, agreement, calendar, diary, contract, memorandum, telegram, report, record, audio tape, video tape, transcript, study, note, intra-office communication, inter-office communication, electronic mail ("e-mail") communication, computer program, computer file, check, check stub, or note of any conference.

2. "You" or "your" means you, Bill Douglas, and all representatives or other persons acting, or purporting to act, on your behalf.

3. "Representative" means agents, attorneys, and all other persons acting, or purporting to act, on behalf of the designated person.

4. As used herein, "Cargill" means not only Cargill, Inc., but also its officers, employees, and representatives.

5. As used herein, "Sprenger & Lang PLLP" means the law firm itself and its partners, employees, agents, and representatives.

6. "Diary" means a record of events, transactions, observations, activities, reflections, or feelings kept on a daily or frequent basis, including but not limited to notes of such events, transactions, observations, activities, reflections, or feelings.

7. As used herein, "the Litigation" means the litigation captioned *Arnold, et al. v. Cargill, Incorporated*, filed in the United States District Court for the District of Minnesota and assigned Case Number 01-CV-2086.

7. The singular form of a word shall refer to the plural as well, and words used in the masculine gender also include the feminine.

8. If any privilege is claimed with respect to any document requested, please state:

(a) the nature of the document (e.g., letter, memorandum, report, etc.);

(b) the date it bears, or, if undated, the date it was written or created;

(c) its author(s);

(d) the identity of each of its recipients;

(e) its general subject matter;

(f) its present or last known location and/or custodian; and

(g) the privilege claimed and the basis therefore.

9. Unless otherwise specified, the pertinent time frame for these Requests is from January 1, 1995 through the present.

**REQUEST NO. 1:** Any and all documents you provided to Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill.

**REQUEST NO. 2:** Any and all documents you received from Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill, including, without limitation, any documents prepared by Sprenger & Lang PLLP on your behalf.

**<u>REQUEST NO. 3</u>:** Any and all documents in your possession prepared by Cargill; by any employee, agent, or representative of Cargill (including you acting in such capacity); or for Cargill by you or any other employee, agent, or representative of Cargill.

**<u>REQUEST NO. 4</u>:** Any correspondence, notes, or other documents you or your representatives sent, mailed, delivered, or otherwise provided to or received from any government body, agency, or other person containing, referencing, or commenting upon the Litigation, Cargill, your employment experience at Cargill, or the employment experience of any of Cargill's employees, including, without limitation, any correspondence between you and any current or former employee of Cargill. This request specifically includes e-mail communications, whether currently printed in hard copy or maintained in an electronic format.

**<u>REQUEST NO. 5</u>:** All memoranda, correspondence, notes or other documents that in any way relate to the Litigation, your employment with Cargill, or the employment experience of any of Cargill's employees, including, but not limited to, audio tapes, video tapes, diaries, logs, letters, correspondence, notes or calendars that you or your representatives have made that reference, summarize, describe, or memorialize your employment or any conversations, warnings, or other statements involving you and any current or former officers, employees, or representatives of Cargill.

**<u>REQUEST NO. 6</u>:** All calendars from January 1, 1999 to the present reflecting dates of any meetings with Sprenger & Lang PLLP or current or former employees of Cargill.

**<u>REQUEST NO. 7</u>:** To the extent that you had any relationship with Sprenger & Lang PLLP other than an attorney-client relationship, all documents describing or reflecting that relationship, including, without limitation, documents reflecting any payments made to you by Sprenger & Lang PLLP or offers from Sprenger & Lang PLLP to make payments to you.

**REQUEST NO. 8:** All documents reflecting the date on which your attorney-client relationship with Sprenger & Lang PLLP ended.

# EXHIBIT G

DORSEY & WHITNEY LLP

MINNEAPOLIS
SEATTLE
NEW YORK
WASHINGTON, D.C.
DENVER
LONDON
SOUTHERN CALIFORNIA
DES MOINES
SAN FRANCISCO
ANCHORAGE

SUITE 1500
50 SOUTH SIXTH STREET
MINNEAPOLIS, MINNESOTA 55402-1498
TELEPHONE: (612) 340-2600
FAX: (612) 340-2868
www.dorseylaw.com

**PAUL B. KLAAS**
**(612) 340-2817**
**FAX (612) 340-8856**

TOKYO
PALO ALTO
FARGO
SALT LAKE CITY
GREAT FALLS
HONG KONG
MISSOULA
TORONTO
SHANGHAI
VANCOUVER

September 23, 2003

**BY MESSENGER**
Honorable Arthur J. Boylan
United States District Court
638 Federal Building
316 North Robert Street
St. Paul, MN 55101

**CONFIDENTIAL**

**ATTORNEYS' AND COURT'S EYES ONLY**

Re: Arnold v. Cargill, Inc.
Civil No. 01-2086-DWF/AJB

Dear Magistrate Judge Boylan:

We write to request an emergency conference with the Court. We need Your Honor's guidance as to how and whether to proceed with this litigation, in light of the deposition testimony of Mr. R. Bill Douglas.

Mr. Douglas was a Cargill executive for many years, including service as Cargill's Corporate EEO director and as manager of Human Resources for Cargill's entire Food Sector. Mr. Douglas retired from Cargill in 1998. After his retirement, at the specific request of Sprenger & Lang, Mr. Douglas helped Sprenger & Lang commence this action.

As this Court summarized in its Order dated June 27, 2003, at 3, "Douglas has actively participated in Arnold's preparation of this litigation by identifying names of potential plaintiffs, providing Sprenger & Lang with 2000 pages of privileged, internal Cargill documents, and reviewing and commenting on the complaint before it was filed." For convenient reference, a copy of this Court's June 27, 2003 Order is attached to this letter as Exhibit A.

**EXHIBIT G**

The June 27, 2003 Order concludes:

> In Douglas' capacity as an EEO professional, Douglas was privy to Cargill's strategy and methods for defending a discrimination suit. The danger of Douglas disclosing Cargill's privileged information to Sprenger & Lang necessitates an inquiry into his relationship with plaintiff's counsel. Therefore, this Court will overcome attorney client privilege and allow Cargill to depose Douglas regarding his relationship with Sprenger & Lang. Although disqualification of counsel is a drastic measure that should be used only when absolutely necessary, Cargill has a right to depose Douglas to determine whether evidence exists to pursue such a remedy.

Cargill exercised its right to depose Mr. Douglas last Thursday, September 18, 2003. Although the final transcript has not yet been prepared, the rough transcript of Mr. Douglas's testimony is attached to this letter as Exhibit B. Mr. Douglas's testimony was very disturbing.

Mr. Douglas testified that he possessed a large amount of Cargill privileged information; that Sprenger & Lang solicited that privileged information from him; that he disclosed it en masse to Sprenger & Lang; that Sprenger & Lang never suggested that he should not disclose Cargill privileged information to them; and that Sprenger & Lang recommended that Mr. Douglas destroy Cargill's privileged documents before they could be subpoenaed by Cargill.

More specifically:

- Mr. Douglas confirmed this Court's finding that he has "extensive knowledge of Cargill's litigation strategy" from his 22 years of working with Cargill's Law Department and Cargill's outside counsel at Dorsey & Whitney. Tr. at 203-206; 190-192.

- Mr. Douglas testified that he conveyed massive amounts of Cargill privileged information to Sprenger & Lang, at their request, including documents marked "privileged and confidential" from Cargill attorney Fred Budde. In so testifying, Mr. Douglas contradicted most of the substantive representations Larry Schaefer, lead counsel from Sprenger & Lang, has made to this Court about the nature of their relationship:

-- Mr. Schaefer, in his March 17, 2003 letter to this Court (copy attached as Exhibit C), stated that "Mr. Douglas sought advice from Sprenger & Lang includ[ing] matters concerning a consulting opportunity, as well as systemic discrimination issues at Cargill..." Mr. Douglas both testified and documented that "[i]t was Larry Schaefer who solicited my

knowledge/experience regarding systemic discrimination at Cargill and not I who retained Sprenger & Lang for advice regarding 'systemic discrimination' at Cargill and a consulting opportunity!" Tr. at 99-100; Deposition Ex. 4 at 2 (notes written by Mr. Douglas and produced, reluctantly, during his deposition)(copy attached as Exhibit D).

--Mr. Schaefer, in his Declaration to this Court (copy attached as Exhibit E), ¶5, stated: "At the outset of my interactions with Douglas on this issue, I told him emphatically and unequivocally that, given his prior senior management position at Cargill and his exposure to confidential and attorney-client communications, he could not disclose to me or anyone at S&L any written or oral communications that could be considered to fall within Cargill's attorney-client or work product privileges." Mr. Douglas, though, testified to the contrary:

> *Mr. Klaas*: All right, and during that meeting or really any other meeting with Sprenger & Lang, do you recall them saying, Mr. Douglas, you better never disclose to me any confidential information from Cargill or you're in big trouble, or words to that effect?
>
> *Mr. Douglas*: No.
>
> *Mr. Klaas*: Did they ever instruct you with regard to whether you should be disclosing confidential communications to them, did the topic ever come up?
>
> *Mr. Douglas*: Would you say that again?
>
> *Mr. Klaas*:. Did Sprenger & Lang or Mr. Schaefer or anybody at Sprenger & Lang ever discuss with you whether you should be disclosing to them confidential information that you learned while you were at Cargill?
>
> *Ms. Coler*: Objection, vague.
>
> *Mr. Douglas*: Not that I can , no, not that I can recall, you know, per se, not that I can recall.
>
> *Mr. Klaas*: During your interaction with Sprenger & Lang and in particular Mr. Schaefer, but others as well at Sprenger & Lang, did they seek information from you about your experiences at Cargill or your knowledge of the inside workings of Cargill?
>
> *Mr. Douglas*: Yes.

DORSEY & WHITNEY LLP



Tr. at 31-32. *See also* Letter to Mr. Douglas from Sprenger & Lang letter dated February 2, 2001 (copy attached to this letter as Exhibit F), stating how happy Sprenger & Lang would be to review "any documents, either pertaining to you personally or to Cargill generally"; expressing special interest in "any documents relating to the Cargill Leadership Development Program (CLDP), the KEIS employee rating system, diversity studies, and/or any other of Cargill's policies or practices"; and *never* indicating that privileged documents were to be excluded.

-- Mr. Schaefer, in his Declaration to this Court, ¶11, stated that he "did not review" the privileged documents Mr. Douglas delivered to him "substantively." Mr. Douglas, however, testified: 1) that he "raised the question" with Mr. Schaefer about "some [Cargill] documents here, some of which have confidential and privileged written on them," 2) that Mr. Schaefer responded by instructing Mr. Douglas "just send them, we'll go through", and 3) that Mr. Douglas personally met with Mr. Schaefer four to six times to go over the Cargill documents—some confidential, some from the law department, whatever Mr. Douglas had. Tr. 35-38, 92-93.

-- Mr. Schaefer, in his Declaration to this Court, at ¶12, stated that he returned Cargill's documents to Mr. Douglas and "asked him why they were produced to the firm, given our previous instruction about not providing privileged information...[Mr. Douglas] promised that would not occur again..." Mr. Douglas, in his deposition testimony, contradicted everything Mr. Schaefer said: 1) Mr. Douglas testified that the documents were not returned to him by Sprenger & Lang; rather, Mr. Douglas had to demand them back and does not feel he got them all back even then[1], Tr. 91-92, 42; 2) Mr. Douglas testified that Mr. Schaefer *never* suggested it was improper for him to give him "privileged or confidential information from inside Cargill" – *never* criticized, *never* scolded, *never* even "admonished" him for doing so, Tr. 45-47.

-- Mr. Schaefer, in his Declaration to this Court, at ¶10, stated that Mr. Douglas "has never been compensated for any of the time or expense he has devoted to these matters." Mr. Douglas testified, however, that he asked Mr. Schaefer about remuneration and Mr. Schaefer "said something to the effect that it would depend on a lot of things, and it was just kind of left hanging, that we'd have to see at the conclusion of this thing." Tr. 77-78.

---

1 Mr. Douglas produced 329 pages of documents in response to Cargill's subpoena. Sprenger & Lang received at least 4,543 pages of documents from Mr. Douglas.

- Finally, and perhaps most disturbingly, Mr. Douglas testified that, after Sprenger & Lang reviewed and returned Cargill's privileged documents to him, Mr. Schaefer called to warn Mr. Douglas that Cargill would be serving a subpoena upon him. Mr. Douglas testified that Mr. Schaefer instructed him to destroy the documents before the subpoena arrived. As Mr. Douglas wrote in a document entitled "Larry Schaefer Chronology of Events" (attached as Exhibit G) which he reluctantly surrendered to us during his deposition:

> Monday, 7/22/02, INFORMED ME A SUBOENA AND ATTACHMENT FOR DOC PRODUCTION FROM CARGILL TO DEPOSE ME WAS FORTHCOMING. SAID I SHOULD TOSS RECORDS OR DOCUMENTS BEFORE. CALL HIS OFFICE, ETC. WITH QUESTIONS OR FOR ASSISTANCE.

Cargill certainly will be moving to disqualify Sprenger & Lang and dismiss this case as tainted beyond repair by induced disclosures of its privileged information to the plaintiffs and their law firm.

Moreover, given the very serious wrongdoing Mr. Douglas has described, we thought it appropriate, indeed, necessary to seek the Court's instructions as to what further investigation should be undertaken at this point. Investigation of the Sprenger & Lang law firm is certainly necessary, but we thought it inappropriate that Cargill undertake that investigation itself, unless the Court first decided whether this Court or other offices should become involved immediately.

We request, therefore, a conference with the Court. At the conference, Cargill will request: 1) that all parties and counsel be ordered to have no contact with Mr. Douglas until an evidentiary hearing can be convened; 2) that an evidentiary hearing be convened at this Court's earliest convenience; and 3) that either Cargill's lawyers or other appropriate investigators examine Sprenger & Lang personnel concerning their solicitation and handling of Cargill privileged information.

We think that proceeding with routine discovery is inappropriate, given the likelihood that Sprenger & Lang will be disqualified and the seriousness of the issues Mr. Douglas's testimony has raised. Therefore, we will also ask the Court to stay discovery and set a briefing schedule for Cargill's motion to disqualify Sprenger & Lang and dismiss this action.

DORSEY & WHITNEY LLP



We look forward to hearing from the Court.

Respectfully,

Paul B. Klaas

PBK:tjv
Enclosures
cc: Lawrence P. Schaefer, Esq. (by messenger)

# EXHIBIT H

SPRENGER & LANG
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

RECEIVED SEP 2 5 2003

WRITER'S ADDRESS:

SUSAN M. COLER
MINNEAPOLIS OFFICE
E-Mail: scoler@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

September 25, 2003

**DELIVERY BY MESSENGER**

**CONFIDENTIAL**
**ATTORNEYS' AND COURT'S EYES ONLY**

Magistrate Judge Arthur J. Boylan
UNITED STATES DISTRICT COURT
638 Warren E. Burger Federal Building
316 North Robert Street,
St. Paul, MN 55101

**Re:** ***Arnold et al. v. Cargill;***
**Court File No. 01-CV-2086 (DWF/AJB)**

Dear Magistrate Judge Boylan:

Cargill's request for an "emergency meeting" and independent investigation regarding concerns supposedly raised by the deposition testimony of R. Bill Douglas is without procedural, factual, or legal support. If Cargill believes it has a basis for dismissing this case or disqualifying Sprenger & Lang, it should file the appropriate dispositive motion before Judge Frank, and the matter can be thoroughly briefed. In the meantime, discovery should continue.

Cargill's call for "emergency" measures and its declaration that Sprenger & Lang is likely to be disqualified from this case are efforts to poison the well and delay the forward movement of this litigation. Cargill's "proclamations" are particularly suspect for two reasons. First, Cargill has yet to make a showing that the purported attorney-client privileged documents Sprenger & Lang returned to Cargill are actually privileged, let alone that review of the documents could prejudice Cargill in any way. Second, Cargill's letter patently misrepresents Douglas' testimony.

Viewed fairly, and in context, the actual record is consistent with Sprenger & Lang's recounting of the material facts surrounding the inadvertently produced documents and does not justify Cargill's accusations of wrongdoing. Cargill's premature request forces plaintiffs to set out those facts below and identify Cargill's distortions of the record. This would give Cargill an unfair advantage if it were permitted to depose Douglas for another day. The Court therefore should terminate Douglas' deposition.

**EXHIBIT H**

A. **Cargill Has Not Established a Basis for the Emergency Measures It Requests, Let Alone for Disqualification of Sprenger & Lang**

1. **Cargill has not shown that any of the subject documents are protected by attorney-client privilege.**

Any determination whether a breach of privilege has occurred warranting disqualification requires that the documents that Douglas provided to Sprenger & Lang in fact be privileged.

While Sprenger & Lang was still deciding whether to offer representation to Rod Arnold and other current and former Cargill employees, it received several boxes of documents from Douglas. About 200-300 pages were discovered by Sprenger & Lang and segregated as possibly privileged. Through the sworn declaration of Lawrence P. Schaefer, Sprenger & Lang has described how it promptly returned the segregated documents, un-reviewed, to Douglas. Exh. E to Cargill letter at ¶¶ 11-12. Sprenger & Lang also has described how, inadvertently, copies of those documents were made, put into a box, and forgotten for over a year, until plaintiffs were reviewing every possible document in order to respond to Cargill's document production requests. *Id.* at ¶¶ 15-17. When Sprenger & Lang rediscovered the documents in 2002, it promptly returned to Cargill all of the possibly privileged documents ("Douglas documents"). *Id.* at ¶ 18. Again, the documents were un-reviewed. *Id.*

This does not mean, however, that the documents actually were privileged. In its examination of documents Cargill withheld from discovery, Special Master Peter Thompson found documents not privileged even when privilege markings appeared on the face of the documents. The same may be true here.

2. **Cargill has not shown that review of any of the subject documents would be prejudicial.**

A critical factor in evaluating an alleged breach of privilege as a basis for disqualification is whether review of documents, even if it did occur, would be prejudicial to the defendant. If there is no prejudice, there is no basis for disqualification. *See In Re Meador,* 968 S.W.2d 346, 351-52 (Tex. 1998) (extent to which attorney reviews and digests privileged information and the extent to which disclosure would prejudice movant's claims or defenses must be considered in evaluating disqualification motion).

Accordingly, even if any of the documents can be characterized as privileged, Cargill must demonstrate that their disclosure would be prejudicial. Cargill's letters and briefing on the issue of the Douglas documents has been remarkably bereft of any specifics about the nature of the documents it claims Sprenger & Lang reviewed.

The privilege log produced by Cargill in this case supposedly identified all relevant documents withheld on privilege grounds and dating back to the beginning of the discovery period, January 1, 1992. However, Cargill has not identified any of the thousands of pages in

its privilege log as among the Douglas documents. This is consistent with Lawrence Schaefer's declaration to this Court where he noted that the dates on the face of documents returned to Cargill were "well before 1992." *Id.* at ¶11. The likely dating of these documents before the discovery period in this case and well before the filing of this lawsuit, along with Cargill's failure to disclose the contents of those documents to the Court, casts substantial doubt on their materiality to this litigation. Therefore the existence of prejudice is unlikely, even assuming that the documents were substantively reviewed, which they were not.

If any action is taken as a result of Cargill's letter to this Court, it should be an order requiring production of the Douglas documents for *in camera* review by Judge Frank. Cargill should not be allowed to persist in its inflammatory accusations without demonstrating the possibility of prejudice based on the actual documents at issue.

**3. Cargill has no evidence to contradict Sprenger & Lang's representation that it never reviewed any of the Douglas documents.**

The Schaefer declaration states that the Douglas documents were reviewed only to the extent necessary to segregate and return the originals to Douglas and the inadvertently kept copies to Cargill. Exh. E at ¶¶ 11-12, 15-19. As discussed below at § 5, nothing in the Douglas deposition contradicts Sprenger & Lang's representation about how it handled the Douglas documents. Cargill attempts to create some inference of malfeasance by pointing out differences in memory between Douglas and Schaefer as to how the documents were returned to Douglas. 9/23/03 Letter at 4. However, it makes no material difference whether the review and segregation of the documents occurred after Douglas demanded their return or on the timeline Sprenger & Lang was following in its document review process. What is significant is that Douglas testified that Sprenger & Lang told him they had returned all of his documents, which is consistent with the Schaefer declaration at ¶ 12. Tr. at 43. In short, Cargill has offered no evidence contradicting Sprenger & Lang's assertion that it thought it had returned the documents to Douglas, that it never substantively reviewed any of the Douglas documents, that it currently retains no copies of them, and has no intention of referring to them in any manner in this litigation. Exh. E at ¶ 19.

**4. Cargill has no evidence to contradict Sprenger & Lang's representation that Schaefer instructed Douglas not to provide the firm with attorney-client privileged documents or information.**

In its letter at page three, Cargill claims that Douglas' testimony contradicts the statement in the Schaefer declaration that Douglas was told not to disclose "any written or oral communications that could be considered to fall within Cargill's attorney-client or work product privileges." Exh. E, p. 3, ¶ 5. Douglas' responses to Cargill questions about what Sprenger & Lang told him are equivocal at best:

> *Mr. Klaas*: Did Sprenger & Lang or Mr. Schaefer or anybody at Sprenger & Lang ever discuss with you whether you should be disclosing to them confidential information that you learned while you were at Cargill?
>
> *Ms. Coler*: Objection, vague.
>
> *Mr. Douglas*: Not that I can, no, not that I can recall, you know, per se, not that I can recall.

Tr. at 31-32; *see also* Tr. at 90-91 (asked whether conversation recounted in Schaefer Dec. at ¶ 12 occurred, Douglas responded "No, not – I can't recall). Despite a "vagueness" objection, Cargill only asked Douglas about "confidential information" (and not attorney-client information) and did not inquire further as to what Douglas meant when he used the phrase "not that I can recall, you know, *per se*." *Id.* This waffling response hardly contradicts the Schaefer declaration.

Later in the deposition, Cargill specifically asked Douglas whether he had "any recollection that would support Schaefer's statement in paragraph 5 of his declaration that he had instructed Douglas not to disclose privileged information or documents. Douglas responded "Well, my only response to that is, and there may have been some language or some conversation in this regard, but there were documents that clearly I had gone over with Larry that Cargill leadership development stuff and icky, [sic] stuff, whether it was confidential or not, I can't recall, . . ." Tr. at 89-90.

The above testimony certainly does not contradict Schaefer's statements that he told Douglas not to disclose attorney-client privileged information and documents to Sprenger & Lang. In fact, despite Douglas' general inability to recall what he was told, Douglas confirmed that "there may have been some language or some conversation in this regard." Tr. at 89-90.

**5. Douglas did not testify that he discussed attorney-client privileged documents with Sprenger & Lang.**

When Douglas testified about what documents he reviewed with Sprenger & Lang, he never referenced any attorney-client privileged documents:

> *Mr. Klaas*: And in these documents, I take it some were confidential, some were from the law department, just whatever you had?
>
> *Ms. Coler*: Objection, vague in terms of what these items –
>
> *Mr. Douglas:* Well, they were what they were, and my understanding is that you have a copy of them all, so that's what it was.
>
> *Mr. Klaas*: And did you go over them all with Mr. Schaefer?

> *Mr. Douglas:* No, no. The documents that I recall most clearly presently were involved with the key areas or the key programs that he wanted to know more about. One was, like I indicated, CLP. The Cargill development program, the KIES initiative, oh PMP, the selection grid, and there may have been others, but those, I think that was the bulk of it, the crux of it.

Tr. at 38-39; *see also* Tr. at 41-42 (confirming that he did not discuss with Sprenger & Lang all documents provided to the firm, but only those relating to KEIS, selection grids, CLDP and PMP).

Despite this testimony, Cargill represents to this Court that Douglas testified that he personally met with Schaefer 4-6 times to go over confidential documents "some from the law department." 9/23/03 Letter at 4. This outright misrepresentation of Douglas' testimony demonstrates the overreaching that pervades Cargill's letter request. Douglas consistently testified that the documents he went through with Sprenger & Lang were documents related to specific areas about which questions had been raised, such as the Cargill Leadership Development Program, KEIS, selection grid, and PMP. Tr. at 35-39, 41, 92-93. Douglas also recalled "a letter or a note from Rashid, and some other things that I thought were important or relevant in terms of giving them an overview of Cargill." Tr. at 36-37. Douglas did not indicate that any of the documents actually discussed with the firm had any privilege markings or were, in fact, privileged. At his deposition, Cargill did not show Douglas any purportedly privileged documents for the purpose of inquiring whether he had discussed them with Sprenger & Lang.

Accordingly, in terms of documents, nothing in Douglas' deposition contradicts Schaefer's declaration that, aside from inadvertently providing documents with privilege markings, Douglas has never communicated anything to the firm that could be considered attorney-client privileged or work product communications. Exh. E, ¶ 5.

**6. Douglas did not testify that he disclosed any attorney-client communications with Cargill counsel to Sprenger & Lang.**

Asked whether he had discussed with Schaefer conversations or advice received from Cargill counsel Fred Budde, Douglas responded in a manner consistent with the Schaefer Declaration at ¶ 5. Douglas said "I don't recall that I did. What would have been the nature of it, I can't recall." Tr. at 46-47.

Moreover, the deposition record does not support Cargill's assertion that Douglas has extensive knowledge of Cargill's litigation strategy from his 22 years of working with Cargill's Law Department and Cargill's outside counsel at Dorsey & Whitney. 9/23/03 Letter at 2. Cargill cites the transcript at pages 190-92 for this proposition. There, Douglas discussed the fact that subsidiaries of Cargill were not included in the *Foster* litigation. This is a fact of public record, obviously known to Sprenger & Lang. Cargill's citation to pages 203-206 of the deposition is similarly unavailing in proving Douglas' purported knowledge of Cargill litigation

strategy. In that portion of the deposition, Douglas merely discussed his conversations with Sprenger & Lang about whether Cargill was likely to settle before the filing of the complaint, the fact that Cargill valued its privacy, and conclusions that could be drawn from Cargill's website about who Cargill's customers were. All of these matters are readily known about Cargill as well. Douglas' testimony does not indicate any specialized knowledge, let alone any communication of privileged information to Sprenger & Lang, even if Douglas was privy to it.

**7. Douglas did not testify that Sprenger & Lang suggested that he would be remunerated for any "services."**

Cargill's inference in its letter at page four that Douglas was promised remuneration in exchange for providing information to Sprenger & Lang in this matter is false and not supported by Douglas' testimony. When Douglas was specifically asked whether he had any financial arrangement with Sprenger & Lang concerning his work on this lawsuit, his testimony was unequivocal:

> *Mr. Klaas:* All right, have you received anything of value from Sprenger & Lang since your retirement from Cargill?
>
> *Ms. Coler:* Objection, broad, vague.
>
> *Mr. Douglas:* No, other than, well, lunches or coffee or whatever, same thing I've gotten here.

Tr. at 29-30.

> *Mr. Klaas:* All right. Do you have any sort of financial arrangements with Sprenger & Lang?
>
> *Mr. Douglas:* No.

Tr. at 75; *see also* Tr. at 77 (Douglas identifies "lunches, coffee" as the extent of anything of value he received from S&L).

When Douglas was asked about whether he had any expectation of financial remuneration or income in the future from his involvement in the lawsuit, he stated that Schaefer stated "something to the effect that it would depend on a lot of things, and it was just left kind of hanging, that we'd have to see at the conclusion of this thing." Tr. at 76-78. This testimony was in the context of testimony consistent with Douglas' understanding, and Schaefer's declaration, that there was a time when Douglas could have been a part of the proposed class in this case, if his release could be successfully challenged and if the class was defined to include employees above salary class 15, which ultimately never occurred. *Id.*, Exh. E at ¶ 10. Given Douglas' unequivocal testimony, Cargill again misrepresents the record when it suggests that there was

any agreement, express or implied, that Douglas would be paid for any assistance he provided to Sprenger & Lang.

Cargill infers some discrepancy between Sprenger & Lang's statements that Douglas sought advice from the firm about systemic discrimination issues at Cargill and Douglas' statements that he did not *retain* Sprenger & Lang for advice regarding "systemic discrimination." 9/23/03 Letter at 2-3. Again, this is a distinction without a difference. First, Douglas does not dispute that he retained Sprenger & Lang as his counsel in 1998 and did not fire them until February of 2003. Tr. at 8. Accordingly, Sprenger & Lang was Douglas' counsel when he voluntarily attended meetings and participated in discussions about systemic discrimination at Cargill in 2000. Tr. at 31, 216. Douglas testified:

> There had been a handful of employees that had contacted Sprenger & Lang and who were then contemplating a lawsuit, that is obviously emerged, against Cargill on the basis of racial discrimination, and at a meeting that I attended, the issue, I raised the issue of participation in something like this as to it being consistent with the agreement I'd signed with Cargill, and that was in, yeah, that was in probably the fall of 2000.

Tr. at 31.

Sprenger & Lang has not stated that Douglas retained Sprenger & Lang specifically for purposes of this lawsuit, but rather has stated that Douglas sought advice regarding systemic discrimination at Cargill. *See* Exh. C to Cargill letter (subjects for which Douglas sought advice include systemic discrimination issues at Cargill); Exh. E at ¶ 4 ("Douglas met with [Schaefer] to discuss the issue of whether systemic discrimination against salaried African American employees was occurring at Cargill"). This statement is consistent with Douglas' testimony.

**8. Cargill's assertion that Sprenger & Lang solicited Douglas to provide attorney-client privileged documents from Cargill is unsupported by the record.**

Cargill alleges that Sprenger & Lang specifically solicited attorney-client privileged documents from Douglas, for the assumed purpose of using these documents in this litigation. As with all of Cargill's allegations, Cargill is overreaching. In support of its accusation, Cargill offers a letter to Douglas, an established client who has already been instructed not to provide privileged documents or information, Exh. F. The letter asks for specific types of documents and states the firm would facilitate the arrangements necessary to review the documents. *Id.* The absence of a specific admonition not to produce privileged documents in a letter to an established client cannot be construed as a deliberate solicitation of such documents.

Douglas' testimony related to this issue is confusing at best. Tr. at 35, 92-93. He mentions conversations with various people from Sprenger & Lang. He references offers by Sprenger & Lang to go through documents in response to questions about how to sort them out.

He mentions stating that some of the documents were privileged. and confidential. However, it cannot be concluded from the context that Sprenger & Lang's invitation to go through documents always occurred in the context of a conversation where privileged documents were discussed. Douglas' testimony at page 92 only references "stuff" that is "confidential." It can be concluded from the context that the Sprenger & Lang staff assumed that Douglas was concerned about organizing non-privileged documents and would remove privileged documents before sending the rest to Sprenger & Lang. Again, it is overreaching to conclude that an invitation to allow Sprenger & Lang to sort the documents constituted solicitation of privileged documents. At no time did Douglas ever testify that Sprenger & Lang asked him to provide attorney-client privileged documents.

Furthermore, Sprenger & Lang's conduct in this case refutes any conclusion that it solicited privileged documents. As discussed above, Sprenger & Lang directed Douglas not to provide the firm with privileged documents and information. It is Sprenger & Lang who returned the Douglas documents to Cargill on July 12, 2002, thus precipitating this entire dispute. *See* Exh. A. If Sprenger & Lang actively had been seeking these documents from Douglas to use in this litigation, it makes no sense that the firm would return them to Cargill and never use or refer to them in this litigation.

**9. Douglas' testimony that Schaefer instructed him to destroy documents makes no sense and is belied by undisputed facts.**

Undisputed facts belie Douglas' testimony that Schaefer allegedly advised him to destroy documents, as reflected in a "chronology" prepared a year after the purported conversation. First, the telephone conference when Douglas claims Schaefer gave him this advice allegedly occurred on Monday, July 22, 2002, according to Douglas' chronology. Exh. G. This date is ten days after Schaefer had already delivered to Dorsey & Whitney all of the allegedly privileged documents that gave rise to this dispute. *See* attached Exhibit A; Douglas Dep. Exh. 4. It makes no sense that Schaefer would advise a witness to destroy documents Schaefer had just disclosed to Cargill. Because the documents had already been provided to Cargill, destruction of the documents could achieve no possible advantage for Sprenger & Lang, the plaintiffs, putative class, or Douglas. Sprenger & Lang, of course, did not retain any copies of these documents as was stated in the July 12, 2002, letter (Exh. A), and perhaps Douglas misinterpreted Sprenger & Lang's failure to retain any copies as a suggestion that he do the same. Whatever the source of Douglas' confusion, however, Schaefer never instructed Douglas to destroy any documents in response to a subpoena.

Furthermore, Douglas' recollection that this conversation took place in relation to a "forthcoming subpoena" further demonstrates its falsity. Douglas was not served a subpoena until March 4, 2003, over *eight months* after this alleged conversation, and after Douglas had terminated his relationship with Sprenger & Lang. *See a*ttached Exhibit B.

There is thus no reasonable basis for what Cargill describes as the "most disturbing" allegation of wrongdoing stemming from Douglas' testimony.

**10. Douglas' testimony must be evaluated in its proper context.**

Bill Douglas is an obviously angry witness, who began his deposition testimony by stating that he was suffering from "CRS Syndrome" or "can't remember shit." Tr. at 12. He fired Sprenger & Lang as his counsel after Sprenger & Lang returned documents Douglas improperly provided to the firm. Despite Douglas' anger toward Schaefer and Sprenger & Lang, Cargill has not established and will not be able to establish that Douglas shared any attorney-client privileged information with Schaefer or Sprenger & Lang. Cargill has not established that Douglas reviewed any of the allegedly privileged documents with Sprenger & Lang, and, most tellingly, when Cargill counsel asked Douglas if he ever shared any comments made by Fred Budde with Larry Schaefer, Douglas said he had not. Tr. at 46-47. These undisputed facts alone will preclude any finding of prejudice necessary even to contemplate disqualification.

**B. The Court Should Terminate Douglas' Deposition**

Cargill has chosen to raise these issues after deposing Douglas for one day, obviously concluding that this testimony provides a basis for seeking the relief it requests. Because Cargill filed this request for "emergency" action, the plaintiffs are being forced to disclose their positions on the issues raised and to articulate the deficiencies in Cargill's arguments. Cargill should not be allowed to benefit from this premature request by being allowed to continue its deposition of Douglas at a later date and using what it has learned in this exchange to shape Douglas' testimony differently. Under these circumstances and on fairness grounds, plaintiffs ask the Court to terminate Douglas' deposition.

In conclusion, there is no basis for the emergency conference or relief Cargill seeks. Plaintiffs respectfully ask the Court to direct Cargill to follow the usual methods for resolving issues such as those raised here by filing a dispositive motion before Judge Frank.

Very truly yours,

Susan M. Coler

:mbk
cc: Paul B. Klaas, Esq. (*Via messenger*)

55669

SPRENGER & LANG
A PROFESSIONAL LIMITED LIABILITY COMPANY
ATTORNEYS AT LAW

WRITER'S ADDRESS:

LAWRENCE P. SCHAEFER
MINNEAPOLIS OFFICE
E-Mail: lschaefer@sprengerlang.com
Website: www.Sprengerlang.com

1614 TWENTIETH STREET, N.W.
WASHINGTON, D.C. 20009-1001
(202) 265-8010
FAX (202) 332-6652

325 RIDGEWOOD AVENUE
MINNEAPOLIS, MINNESOTA 55403
(612) 871-8910
FAX (612) 871-9270

July 12, 2002

**DELIVERY VIA MESSENGER**

Janice M. Symchych, Esq.
DORSEY & WHITNEY, LLP
Suite 1500, 50 South Sixth Street
Minneapolis, MN 55402-1498

***Re:*** *Arnold et al. v. Cargill*

Dear Jan:

Enclosed are the originals of Cargill documents which have inadvertently come into the firm's possession and appear to be designated as privileged. I have not reviewed these documents substantively, apart from noting the designation. For several of these documents, I also noticed the recipients and the date in the course of segregating them from other documents which the firm received. After due inquiry, I am confident that no other Sprenger & Lang employee has reviewed these documents substantively, apart from handling them in the course of segregating them and transmitting them to you by this letter. The firm has not made or retained any copies of any of these documents. Please call me directly if this letter or these enclosures raise questions.

Very truly yours,

Lawrence P. Schaefer

:mbk
Enclosures

**Exhibit A**

Issued by the

# United States District Court

## DISTRICT OF MINNESOTA

Roderick Arnold, et al.

v.

Cargill, Incorporated

**SUBPOENA IN A CIVIL CASE**

CASE NUMBER:[1] 01-CV-2086 (DWF/AJB)

TO: **Bill Douglas, 1343 Washburn Avenue N., Minneapolis, MN 55411**

☐ YOU ARE COMMANDED to appear in the United States District Court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| | DATE AND TIME |

☒ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| **Dorsey & Whitney LLP**<br>**50 South Sixth Street, Suite 1500**<br>**Minneapolis, MN 55402** | **March 21, 2003 at 9:00 a.m.** |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

**See attached Exhibit A**

| PLACE | DATE AND TIME |
|---|---|
| **Dorsey & Whitney LLP**<br>**50 South Sixth Street, Suite 1500**<br>**Minneapolis, MN 55402** | **March 14, 2003 at 1:30 p.m.** |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| [signature]<br>*Attorney for Defendant Cargill, Incorporated* | 3/3/03 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matthew E. Klein (#258957), Dorsey & Whitney LLP, Suite 1500, 50 South Sixth Street, Minneapolis, MN 55402. Telephone: 612-340-5666.

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on Reverse)

[1] If action is pending in district other than district of issuance, state district under case number.

**Exhibit B**

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

SERVED ON (PRINT NAME) | MANNER OF SERVICE

SERVED BY (PRINT NAME) | TITLE

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on

DATE | SIGNATURE OF SERVER

ADDRESS OF SERVER

Rule 45, Federal Rules of Civil Procedure, Parts C & D:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less that 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena, or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only under specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

# EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

For purpose of these Requests, the following words shall have the meanings ascribed to them below:

1. As used herein, the term "document" or "documents" includes, the original or drafts of any kind of written, printed, recorded, or graphic material or sound reproduction, however produced or reproduced, whether sent or received or neither, and all copies thereof, which are different in any way from the original (whether by notation, indication of copies sent or received, or otherwise) regardless of whether designated "confidential," "privileged," or otherwise, and including, but not limited to, any correspondence, paper, book, account, drawing, agreement, calendar, diary, contract, memorandum, telegram, report, record, audio tape, video tape, transcript, study, note, intra-office communication, inter-office communication, electronic mail ("e-mail") communication, computer program, computer file, check, check stub, or note of any conference.

2. "You" or "your" means you, Bill Douglas, and all representatives or other persons acting, or purporting to act, on your behalf.

3. "Representative" means agents, attorneys, and all other persons acting, or purporting to act, on behalf of the designated person.

4. As used herein, "Cargill" means not only Cargill, Inc., but also its officers, employees, and representatives.

5. As used herein, "Sprenger & Lang PLLP" means the law firm itself and its partners, employees, agents, and representatives.

6. "Diary" means a record of events, transactions, observations, activities, reflections, or feelings kept on a daily or frequent basis, including but not limited to notes of such events, transactions, observations, activities, reflections, or feelings.

7. As used herein, "the Litigation" means the litigation captioned *Arnold, et al. v. Cargill, Incorporated,* filed in the United States District Court for the District of Minnesota and assigned Case Number 01-CV-2086.

7. The singular form of a word shall refer to the plural as well, and words used in the masculine gender also include the feminine.

8. If any privilege is claimed with respect to any document requested, please state:

(a) the nature of the document (e.g., letter, memorandum, report, etc.);

(b) the date it bears, or, if undated, the date it was written or created;

(c) its author(s);

(d) the identity of each of its recipients;

(e) its general subject matter;

(f) its present or last known location and/or custodian; and

(g) the privilege claimed and the basis therefore.

9. Unless otherwise specified, the pertinent time frame for these Requests is from January 1, 1995 through the present.

**REQUEST NO. 1:** Any and all documents you provided to Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill.

**REQUEST NO. 2:** Any and all documents you received from Sprenger & Lang PLLP relating in any way to Cargill or your employment with Cargill, including, without limitation, any documents prepared by Sprenger & Lang PLLP on your behalf.

**REQUEST NO. 3:** Any and all documents in your possession prepared by Cargill; by any employee, agent, or representative of Cargill (including you acting in such capacity); or for Cargill by you or any other employee, agent, or representative of Cargill.

**REQUEST NO. 4:** Any correspondence, notes, or other documents you or your representatives sent, mailed, delivered, or otherwise provided to or received from any government body, agency, or other person containing, referencing, or commenting upon the Litigation, Cargill, your employment experience at Cargill, or the employment experience of any of Cargill's employees, including, without limitation, any correspondence between you and any current or former employee of Cargill. This request specifically includes e-mail communications, whether currently printed in hard copy or maintained in an electronic format.

**REQUEST NO. 5:** All memoranda, correspondence, notes or other documents that in any way relate to the Litigation, your employment with Cargill, or the employment experience of any of Cargill's employees, including, but not limited to, audio tapes, video tapes, diaries, logs, letters, correspondence, notes or calendars that you or your representatives have made that reference, summarize, describe, or memorialize your employment or any conversations, warnings, or other statements involving you and any current or former officers, employees, or representatives of Cargill.

**REQUEST NO. 6:** All calendars from January 1, 1999 to the present reflecting dates of any meetings with Sprenger & Lang PLLP or current or former employees of Cargill.

**REQUEST NO. 7:** To the extent that you had any relationship with Sprenger & Lang PLLP other than an attorney-client relationship, all documents describing or reflecting that relationship, including, without limitation, documents reflecting any payments made to you by Sprenger & Lang PLLP or offers from Sprenger & Lang PLLP to make payments to you.

**REQUEST NO. 8:** All documents reflecting the date on which your attorney-client relationship with Sprenger & Lang PLLP ended.

STATE OF MINNESOTA

COUNTY OF HENNEPIN

AFFIDAVIT OF SERVICE

METRO LEGAL SERVICES

Patricia Jensen, being duly sworn, on oath says: that on the 4th day of March, 2003, at 8:38 p.m. (s)he served the attached Subpoena and Exhibit A upon Bill Douglas therein named, personally at 1343 Washburn Avenue North, Minneapolis, County of Hennepin, State of Minnesota, by handing to and leaving with Bill Douglas, after furnishing the proper fees, a true and correct copy thereof.

Patricia Jensen

Subscribed and sworn to before me,
March 5, 2003.

Notary Public

Charge $60.00

Re: 3924-62972-705

JEFFREY G. BUDDE
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2005