# EXHIBIT O

DORSEY

**WILLIAM J. WERNZ**
**(612) 340-5679**
**wernz.william@dorsey.com**

October 12, 2004

**VIA TELEFACSIMILE**

The Honorable Judge Donovan W. Frank
United States District Court
738 Federal Building, 316 N. Robert Street
St. Paul, MN 55101

Re: Arnold, et al. vs. Cargill, Inc.
Civil File No. 01-CV-2086 (DWF/AJB)

Dear Judge Frank:

We understand that the Court deems the October 5, 2004, letter of Lewis A. Remele, Jr. to be a request for leave to move for reconsideration of the Court's September 24, 2004 Memorandum Opinion and Order ("Order"). We understand that Mr. Remele represents the Sprenger & Lang law firm ("S&L"), but not its partner, Lawrence P. Schaefer, personally.

Mr. Remele "submit[s] that some of the language addressing the Sprenger & Lang law firm needs to be reconsidered" because, it is argued, (1) only individual lawyers can violate ethics rules and that it is "not legally accurate to suggest that a law firm has violated the Rules of Professional Conduct" and (2) finding that S&L violated the Rules may harm "several lawyers who had nothing whatever to do with any alleged attorney misconduct in this case." Cargill opposes reconsideration. LR 7.1(g) allows motions to reconsider "only upon a showing of compelling circumstances," and the circumstances here compel denial of S&L's request.

First, the "individual lawyer, not law firm" arguments are barred as a matter of law because they could have been raised before the Court's September 24 Order but were not raised then. *See, e.g., Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988). *See also Cameo Homes, Inc. v. Kraus-Anderson Construction Co.*, 2003 WL 23100876, at *1 (D. Minn. 2003) and *Ferguson v. Michael Foods, Inc.*, 74 F. Supp. 2d 862, 874 (D. Minn. 1999).

Second, before issuance of the Court's September 24 Order, S&L itself argued the precise opposite of the position now argued for S&L in Mr. Remele's letter. Over the names of seven S&L lawyers, S&L argued to the Court, "S&L's conduct in this litigation is governed by the Minnesota Rules of Professional Conduct." Aug. 3, 2004, Plaintiffs' Memo at 19.

Third, S&L was right in its August 3 Memorandum, and Mr. Remele is wrong in his October 5 letter. Ethics rules do not apply only to individual lawyers. Indeed, several ethics rules explicitly forbid certain misconduct *by law firms*. *See, e.g.,* Rules 1.10(b), 1.11(b), 1.12(c).



**EXHIBIT O**

Fourth, courts commonly base their orders disqualifying law firms on the application of professional standards to law firms. For example, the leading Minnesota Supreme Court case of *Lennartson v. Anoka-Hennepin Independent School District No. 11*, 662 N.W.2d 125, 135 (Minn. 2003) concluded that "disqualification of Rider Bennett is required under the rule [1.10(b)]." *See also In Re Potash Antitrust Litig.*, 1993 WL 543013 at *16-17 (D. Minn. Dec. 8, 1993), and *Lewis v. Capital One Servs., Inc.,* No. 3:04CV186, slip op. at 9 (E.D. Va. June 16, 2004). As federal Judge Wangelin wrote in disqualifying a defendant's law firm:

> When Mr. Laderman [the lead defense lawyer] stole the photocopied plaintiff's work product, the *firm* of Tockman, Laderman & Wolk stole and photocopied plaintiff's work product. When Mr. Laderman and others made use of plaintiff's work product, the *firm* made use of plaintiff's work product. The instant Mr. Laderman committed his offenses, the *firm* became guilty of those offenses, and no subsequent events can purge the *firm* of its guilt. The *firm* has perpetrated a gross *violation* of established ethical principles and must suffer the consequences of that *violation*.

*International Brotherhood of Electrical Workers v. Acme Electric Company*, 652 F.Supp. 182, 185 (E.D. Mo. 1987) (emphases added).

Fifth, until now, S&L has presented itself to the Court as a unified whole, led in this litigation by its partner, Mr. Schaefer. Many S&L lawyers and at least one "case clerk" participated in this litigation, or appeared before the Court, or signed pleadings, and communicated with Mr. Douglas. The various activities of the S&L lawyers (including David Shulman), "case clerks," and employees were established by the documents and declarations they themselves wrote. The Court, in its September 24 Order, accurately quoted those documents and declarations; Mr. Remele does not suggest otherwise.

Finally, both Cargill and S&L have referred the Court's Order to the Office of Lawyers Professional Responsibility. Although it is true that the Office disciplines only individuals, the Office has a different responsibility (and different investigative resources) than this Court. This Court, like all courts, disqualifies firms that have violated ethics rules, not just individuals.

Respectfully submitted,

William J. Wernz
Attorney at Law

cc: Lewis A. Remele, Jr., Esq.
Lawrence P. Schaefer, Esq.

bcc: D. Orke (via facsimile & U.S. Mail)
P. Klaas
H. Eng
M. Raphan ✓
M. Ginder
M. Iwan
S. Jerde
R. Mick

# EXHIBIT P

DORSEY
DORSEY & WHITNEY LLP

**PAUL B. KLAAS**
**(612) 340-2817**
**FAX (612) 340-8856**
**klaas.paul@dorsey.com**

September 28, 2004

**VIA FACSIMILE AND UNITED STATES MAIL**
Lawrence Schaefer, Esq.
Sprenger & Lang, P.L.L.C.
325 Ridgewood Avenue
Minneapolis, MN 55403

Re: Arnold, et al. vs. Cargill, Inc.
Court File No. 01-CV-2086 (DWF/AJB)

Dear Mr. Schaefer:

I am writing on three subjects related to Judge Frank's Order of September 24, 2004.

First, please return all Cargill documents identified as "Confidential" and "Attorneys' Eyes Only" to us immediately, or please let me know how Sprenger & Lang intends to comply with the Court's Protective Order dated July 14, 2003, since Sprenger & Lang is no longer qualified to maintain or review those Cargill documents. In addition, of course, Sprenger & Lang is not allowed to disclose confidential Cargill information or documents (including work product, briefs, portions of briefs, or attachments that are under seal, as required by Paragraphs 9 and 12 of the Court's Order) to anyone other than persons qualified under Paragraphs 6 and 7 of the Court's Order.

Second, as Judge Frank held, these proceedings have been "tainted" by the breach of Cargill's confidentiality and privilege, and, because of the document destruction, the breach cannot be "track[ed] exactly" and its full extent is somewhat "unknown." *See* Order of September 24, 2004, at 26-27. Because the taint began with communications on July 6, 2000, all Plaintiffs' information and work product gained or created after that date must not be disseminated, orally or in writing, or the recipient will also be tainted. *See, e.g., In re Potash Antitrust Litigation*, 1993 WL 543013 (D. Minn. 1993).

Third, you may wish to know that Cargill does not intend to issue a public press release concerning Judge Frank's Order. Cargill only intends to circulate an internal notice to its employees. Cargill may respond to questions from reporters, particularly if Sprenger & Lang or others make statements that require response.



**EXHIBIT P**

DORSEY



Please let me know if you have any questions or concerns about this letter, or anything else, as we all proceed to comply with the Court's Order.

Very truly yours,

Paul B. Klaas

PBK:tjv

# EXHIBIT Q

LEXSEE

**THOMAS SCHAFFHAUSEN, Plaintiff, v. BANK OF AMERICA; EXPERIAN INFORMATION SOLUTIONS; CSC CREDIT SERVICES, INC.; and EQUIFAX, INC. d/b/a Equifax Information Services, Inc., Defendants.**

**Civil No. 03-3492 (JRT/FLN)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MINNESOTA**

**2004 U.S. Dist. LEXIS 1773**

**February 2, 2004, Decided**

**SUBSEQUENT HISTORY:** Summary judgment granted by, Summary judgment granted, in part, summary judgment denied, in part by Schaffhausen v. Bank of Am., N.A., 2005 U.S. Dist. LEXIS 6971 (D. Minn., Mar. 21, 2005)

**DISPOSITION:** [*1] Magistrate Judge's order affirmed. Sanctions imposed against plaintiff's counsel.

**COUNSEL:** Thomas J. Lyons, Jr., CONSUMER JUSTICE CENTER, Little Canada, MN, for plaintiff.

Emily L. Fitzgerald, DORSEY & WHITNEY, Minneapolis, MN, for defendant Bank of America.

**JUDGES:** JOHN R. TUNHEIM, United States District Judge.

**OPINION BY:** JOHN R. TUNHEIM

**OPINION**

**ORDER**

Counsel for plaintiff appeals United States Magistrate Judge Franklin L. Noel's Order dated August 27, 2003, in which he was ordered to reimburse defendant, Bank of America, for the reasonable costs and fees it incurred in making its Motion for an Enlargement of Time to Answer, Move, or Respond. For the reasons discussed below, the August 27, 2003, Order is affirmed.

**BACKGROUND**

Plaintiff served the Complaint in this matter on June 26, 2003. Local counsel for Bank of America, an out-of-state corporation, received the papers on July 9, 2003. Bank of America's local counsel attempted to secure an agreement to extend the time to answer, as contemplated by Fed. R. Civ. P. 6(b). Counsel for plaintiff would not agree to the extension unless Bank of America agreed to stop reporting to the various credit bureaus [*2] credit information--essentially, the relief plaintiff seeks in the underlying dispute. Bank of America's local counsel was then forced to file a Motion for an Enlargement of Time to Answer, Move, or Respond. Plaintiff did not respond to defendant's motion. The Magistrate Judge's staff was then required to contact counsel for plaintiff to inquire if the Motion for an Enlargement of Time was opposed. Plaintiff's counsel represented that plaintiff did not plan to file any opposition papers, but nonetheless did not want the Court to grant the motion.

The Magistrate Judge then scheduled a hearing on the Motion for an Enlargement of Time. Shortly before the hearing, counsel for plaintiff agreed to the extension, and the parties notified the Court that the hearing would not be necessary. The Magistrate Judge *sua sponte* ordered plaintiff to show cause as to why he should not have to pay Bank of America's costs and fees in bringing the motion. Counsel for plaintiff responded to the show cause order. Without a hearing, the Magistrate Judge rejected counsel's arguments, and ordered plaintiff to pay Bank of America's costs and fees. The Magistrate Judge concluded that if plaintiff had a legitimate [*3] reason to oppose the motion, plaintiff's counsel should have filed a timely response. No such response was filed, therefore



EXHIBIT Q

the Magistrate Judge determined that plaintiff had no reason to oppose the motion. Plaintiff then filed this appeal of the imposition of sanctions. [1] The Magistrate Judge also ordered counsel for Bank of America to file an affidavit of costs and fees. Defense counsel filed an affidavit of costs and fees, totaling $ 985.70.

1 Other than filing an affidavit outlining its costs and attorney fees associated with bringing its motion, Bank of America has not taken a position regarding the imposition of sanctions in this matter.

**ANALYSIS**

Section 1927 of Title 28 of the United States Code provides for the imposition of costs and attorney's fees against an attorney who "so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927; *see also VanDanacker v. Main Motor Sales Co.*, 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000). [*4] Courts are also authorized to impose sanctions, including awards of attorney fees, pursuant to the court's inherent authority to punish "conduct which abuses the judicial process." [2] *VanDanacker*, 109 F. Supp. 2d at 1046 (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 115 L. Ed. 2d 27, 111 S. Ct. 2123 (1991)). Where the court sanctions attorney conduct under its inherent power, the offensive conduct must "constitute[] or [be] tantamount to bad faith." *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 767, 65 L. Ed. 2d 488, 100 S. Ct. 2455 (1980). Whether an explicit finding of "bad faith" is required for the imposition of sanctions under § 1927, however, is not clear. *See NAACP v. Atkins*, 908 F.2d 336, 340 (8th Cir. 1990) (noting that "the language of § 1927 appears to require both a finding of objectively unreasonable behavior and a finding of bad faith."); *O'Connell v. Champion Int'l Corp.*, 812 F.2d 393, 395 n.2 (8th Cir. 1987) ("We do not hold that § 1927 contains only an objective standard, as opposed to both an objective and subjective standard. The words of the statute require unreasonable *and* vexatious conduct. 28 U.S.C. § 1927. [*5] Whether this requires a finding of bad faith in addition to unreasonable conduct is a question that is not before us."), *see also VanDanacker*, 109 F. Supp. 2d at 1046. However, the Eighth Circuit has announced that "the standard under § 1927 and Rule 11 is whether the attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" *Perkins v. Spivey*, 911 F.2d 22, 36 (8th Cir. 1990) (citations omitted).

2 Federal Rule of Civil Procedure 11 also authorizes sanctions, but that Rule is not at issue in this matter.

The Magistrate Judge in this case determined that counsel's conduct was unreasonable. This Court agrees. Plaintiff had no reasonable opposition to the request for an extension of time. If plaintiff had a legitimate opposition, plaintiff should have filed a timely response to the motion. The failure to do so created unnecessary work for the court's staff, and unnecessary [*6] expense for opposing counsel. *See* Kapco Mfg. Co. v. C & O Enters., 886 F.2d 1485, 1491 (7th Cir. 1989) (the purpose of section 1927 is "to ensure that those who create unnecessary costs also bear them"). Although the Magistrate Judge did not use the phrase "bad faith," it is clear from the Magistrate Judge's Order that the Magistrate Judge found counsel's behavior unreasonable and vexatious. This finding satisfies the plain language of the statute, and the imposition of sanctions in such a situation is not clearly erroneous or contrary to law. Although the Magistrate Judge did not hold a hearing, counsel for plaintiff was given an opportunity to show cause as to why sanctions should not be imposed. *See KAPCO Mfg.*, 886 F.2d at 1494-95 (noting that due process requirements of notice and an opportunity to be heard are applicable to a proceeding to impose sanctions, but that the right to a hearing in such cases is limited to instances where a hearing could assist the court in its decision).

**ORDER**

Based on the foregoing, all the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that the Order of the Magistrate Judge dated August 27, 2003 [Docket [*7] No. 23] is **AFFIRMED.**

**IT IS FURTHER ORDERED** that counsel for the plaintiff shall remit **$ 985.70** to the Clerk of Court. The Clerk shall forward the sum to counsel for defendant Bank of America.

DATED: February 2, 2004

at Minneapolis, Minnesota.

JOHN R. TUNHEIM

United States District Judge

# EXHIBIT R

Only the Westlaw citation is currently available.

NOTICE: THIS OPINION IS DESIGNATED AS UNPUBLISHED AND MAY NOT BE CITED EXCEPT AS PROVIDED BY MINN. ST. SEC. 480A.08(3).

Court of Appeals of Minnesota.
DeWITT BROS. HOMES, INC., Respondent,
v.
NATIONAL TITLE RESOURCES CORP., Appellant.
**No. C8-95-2146.**

May 28, 1996.
Review Denied Aug. 6, 1996.

Considered and decided by LANSING, Presiding Judge, SCHUMACHER, and STONE, JJ. [FN*]

FN* Retired judge of the district court, serving as judge of the Minnesota Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 10.

SCHUMACHER, Judge.

*1 National Title Resources Corp. appeals from summary judgment granted to respondent DeWitt Bros. Homes, Inc., arguing that (1) there were genuine issues of material fact regarding the existence of a contract and damages, and (2) as a matter of law, National did not owe DeWitt a duty and DeWitt cannot recover attorney fees as damages. We affirm.

FACTS

On March 31, 1994, Kiewel & Associates conveyed a vacant lot (the property) by warranty deed to Aspen Investment Company. On April 22, 1994, Aspen conveyed the property by warranty deed to DeWitt. National served as the closing agent in both transactions.

In addition to a $58,000 purchase price for the property, DeWitt also paid $583.06 in closing costs and $103.23 for county taxes. The closing costs included a $318 premium for an owner's title insurance policy that National sold DeWitt and $195.06 for government recording and transfer charges. Aspen paid $371.40 in settlement charges.

National failed to record DeWitt's warranty deed and pay the property taxes. As a result, three judgment liens were placed on the property after DeWitt purchased it from Aspen.

DeWitt constructed a single-family home on the property and then entered into a purchase agreement with Walter and Eva Nussbaumer to sell the property and home for $368,300. Shortly before closing, a title search revealed the existence of the judgment liens, as well as the fact that none of the delinquent property taxes had been paid. Because DeWitt could not convey clear title, the Nussbaumers threatened to rescind the agreement. DeWitt retained the law firm of Hessian, McKasy & Soderberg (HMS) to resolve the problem. HMS negotiated a settlement permitting the issuance of new title insurance so the property could be conveyed to the Nussbaumers. HMS also recorded the relevant documents and arranged for payment of the delinquent property taxes. HMS's legal fees were $12,899.26.

DeWitt filed a complaint against National alleging that National was negligent as the closing agent and breached its contract with DeWitt to provide closing services. DeWitt sought attorney fees it had incurred. After a hearing, the district court granted DeWitt's motion for summary judgment. This appeal followed.



**EXHIBIT R**

DECISION

On appeal from summary judgment, we ask whether there are any genuine issues of material fact and whether the district court erred in applying the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The evidence is viewed in the light most favorable to the party against whom summary judgment was granted. *Grondahl v. Bulluck,* 318 N.W.2d 240, 242 (Minn.1982).

The undisputed facts demonstrate that National was negligent as a matter of law. The elements of a cause of action for negligence are the existence of a duty, a breach of that duty, proximate cause, and damages. *Hudson v. Snyder Body, Inc.,* 326 N.W.2d 149, 157 (Minn.1982). National contends that it owed no duty to DeWitt. We disagree.

***2** National agreed, as the settlement agent, to file the conveyance documents and pay the property taxes. The settlement statement, which was signed by representatives of National, Aspen, and DeWitt, provided that National has "caused or will cause the funds to be distributed in accordance with this statement." Even if National did not owe a duty to DeWitt in the first instance, it undertook a duty to properly record the documents and pay the property taxes. *See Williams v. Harris,* 518 N.W.2d 864, 868 (Minn.App.1994) (even if no duty originally exists, if person voluntarily assumes duty, it must be performed with reasonable care or person will be liable for damages), *review denied* (Minn. Sept. 28, 1994).

There is no genuine issue of material fact regarding National's breach of its duty. In its memorandum of law opposing summary judgment, National itself conceded that it is undisputed that the judgment liens resulted from National's failure to properly record the documents.

National argues that even if it did breach a duty owed to DeWitt, DeWitt did not suffer any real damages, and attorney fees are not recoverable absent specific statutory or contractual authority. *See Hopkins v. Empire Fire & Marine Ins. Co.,* 474 N.W.2d 209, 213 (Minn.App.1991) (statute or contract usually must provide basis for recovering attorney fees). National contends it should have been granted an opportunity to resolve the problems with the title. We recognize that an insured may recover from its insurer attorney fees incurred in defending itself against claims only if the insurer refuses to defend after the insured has formally tendered a defense request. *SCSC Corp. v. Allied Mutual Ins. Co.,* 536 N.W.2d 305, 316 (Minn.1995) ; *see also Hill v. Okay Constr. Co.,* 312 Minn. 324, 346, 252 N.W.2d 107, 121 (1977). Here, however, DeWitt is not seeking indemnity under its title insurance contract. Instead, it seeks to recover losses--which happen to be attorney fees--directly attributable to National's negligence in its role as the closing agent. As the court explained in *Chris/Rob Realty v. Chrysler Realty Corp.,* 260 N.W.2d 456, 460 (Minn.1977):

> When one party as a direct result of tortious conduct * * * causes a second party to enter into litigation with a third party, the second party's litigation expenses are a proper element of damages in an action against the first party.

*Id.* at 460. DeWitt's retention of HMS to clear the legal problems created by National's negligence is akin to entering litigation with a third party to protect its rights; the attorney fees are recoverable as damages.

We do not address National's argument on appeal that the amount of the fees was unreasonable because it was not argued to the district court. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (reviewing court only considers issues presented to and considered by district court). Because we decide that summary judgment was proper with respect to DeWitt's negligence claim, we decline to address whether a contract existed between DeWitt and National.

***3** Affirmed.

Not Reported in N.W.2d, 1996 WL 278230 (Minn.App.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

# EXHIBIT S

Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
Jonah WEST, individually and on behalf of others similarly situated, Plaintiff,
v.
BORDER FOODS, INC., d/b/a Pizza Hut, Inc., and Sky Ventures, LLC, Defendants.
**Civil No. 05-2525 (DWF/RLE).**

June 8, 2007.

Michele R. Fisher, Esq., Sarah M. Fleegel, Esq., Paul J. Lukas, Esq., Donald H. Nichols, Esq., Jill M. Novak, Esq., and Rachhana T. Srey, Esq., Nichols Kaster & Anderson, PLLP, for Plaintiff.

Brent A. Lorentz, Esq., William A. McNab, Esq., David P. Pearson, Esq., and Laura A. Pfeiffer, Esq., Winthrop & Weinstine, PA, for Defendants.

**MEMORANDUM OPINION AND ORDER**

DONOVAN W. FRANK, United States District Judge.

**INTRODUCTION**

***1** This matter is before the Court pursuant to Plaintiff Jonah West's Motion for Attorneys Fees and Costs. For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion.

**BACKGROUND**

On October 28, 2005, West filed a collective-action Complaint on behalf of himself and others similarly situated, alleging that Defendants Sky Ventures, LLC, and Border Foods, d/b/a Pizza Hut ("Pizza Hut"), violated the Fair Labor Standards Act ("FLSA") by denying him overtime pay for his work as a Pizza Hut shift manager from October 2000 to June 2005. Specifically, West alleged that while working for Pizza Hut he had falsified his time entries at his manager's request by deleting hours he worked per week over forty.

Thereafter, thirteen additional putative plaintiffs filed consent forms with the Court. West's counsel and its staff interviewed each of the thirteen putative plaintiffs. West's counsel also deposed Defendants' Rule 30(b)(6) corporate designees. Thereafter, after discussing the claims with Defendants' counsel, West's counsel determined that only four of the thirteen individuals who filed consent forms had valid claims against Defendants. [FN1] West's counsel admits that the other nine individuals (the "drop-out putative plaintiffs") either did not work overtime for which they were not paid or did not work for Defendants.

FN1. These individuals are Joseph Starks, Marshaire Cross, Stacy Dondelinger, and Mike Sittler.

West's counsel contends that the parties conducted significant discovery regarding liability, corporate structure, payroll processes, information systems, and hours worked. West's counsel also contends that the parties exchanged numerous phone calls and correspondence regarding discovery issues. Defendants' counsel, on the other hand, asserts that discovery was limited. For example, Defendants' counsel points out that West's counsel deposed all three of Defendants' Rule 30(b)(6) corporate designees in less than half a day. Defendants' counsel also asserts that it took limited depositions of West and two other putative plaintiffs.

Defendants' counsel contends that discovery revealed that the putative plaintiffs' claims had nothing in common with West's claims. For example, Defendants' counsel points out that in his Answers to Interrogatories, Starks stated that he had averaged fifty hours per week, but that his managers required him to clock out before his shift ended and paid him in cash for the overtime hours. Defendants' counsel also points out that Cross claimed that her managers, not she, had modified her records in the timekeeping system. In addition, Defendants' counsel notes that Dondelinger claimed that her manager recorded her hours inaccurately in the computer system and Sittler claimed that Defendants calculated his payroll using inaccurate schedules. Accordingly, Defendants'

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

**EXHIBIT S**

counsel explains that, unlike West, none of the putative plaintiffs alleged that they had deleted their own time or falsified their own records.

On April 3, 2006, West filed a motion for Conditional Class Certification and Judicial Notice. The Court denied West's motion. The Court noted that although the burden to establish that the case is "appropriate" for conditional certification and judicial notice "is not a difficult one," the putative plaintiffs failed to demonstrate that a collective action is appropriate given the "individualized nature of the alleged violations" and the "absence of evidence to support the [putative plaintiffs'] conclusory assertion of widespread violations." (Doc. No. 63.)

*2 On October 18, 2006, Defendants sent West a written settlement offer for $1,599.48--the total amount of West's damages--and requested a statement of attorney fees relating solely to West's claim. West rejected the settlement offer. But on November 14, 2006, the parties engaged in mediation with Chief Magistrate Judge Raymond Erickson and reached a settlement. Thereafter, the parties submitted a Stipulation for Settlement Approval in which Defendants agreed to pay West and the putative plaintiffs a total of $8,500 and agreed that "Plaintiffs' Counsel shall be permitted to petition the Court for an award of reasonable fees and costs in accordance with the Fair Labor Standards Act." (Doc. No. 72, Stipulation for Settlement Approval at ¶ 7.) The parties also agreed that Defendants shall be permitted to challenge any fee petition brought by West's counsel. (*Id.*) The Court approved the Stipulation for Settlement Approval. West's counsel subsequently filed this motion.

## DISCUSSION

### I. Attorney Fees

The Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). West's counsel requests that the Court award $50,081 in attorney fees. Although Defendants do not dispute that West's counsel is entitled to recover reasonable attorney fees pursuant to the settlement, Defendants contend that the amount requested is unreasonable.

#### 1. The Lodestar

In calculating reasonable attorney fees, the Court begins by calculating the "lodestar"--the product of the number of hours reasonably expended on the litigation and the reasonable hourly rate at which those hours should be billed. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). In determining a reasonable hourly rate, the Court looks to the market in the community in which the litigation is situated, specifically at the prevailing rate for similar legal services performed by attorneys of comparable skill, experience, and reputation. *McDonald v. Armontrout,* 860 F.2d 1456, 1458 (8th Cir.1988).

West's counsel has provided the Court with affidavits and exhibits documenting the hours expended in reaching the settlement in this matter and the billing rates requested for those services. West's counsel asserts that its combined hours of service equals 262.40 hours for a total of $50,081 in attorney fees. [FN2] These figures are summarized in the table below:

FN2. West's counsel asserts that it omitted over fifty-five hours of time from this figure for fees that may or may not be recoverable.

*West's Counsel's Proposed Lodestar Analysis*

| | Hours | Hourly Rate | Billing |
|---|---|---|---|
| Donald H. Nichols, Attorney | 3.8 | $550 | $2,090 |
| Paul J. Lukas, Attorney | 4.1 | $400 | $1,640 |
| Michele R. Fisher, Attorney | 99.7 | $275 | $27,417.50 |
| Macy L. Berg, Clerk | .9 | $125 | $112.50 |
| Andrew B. Brantingham, Clerk | 7 | $125 | $875 |
| Peggy T. Claeys, Clerk | 6.3 | $125 | $787.50 |
| Jennica L. Date, Clerk | 4.6 | $125 | $575 |
| Brian E. Flanagan, Clerk | 30.20 | $125 | $3,775 |
| Courtney N. Hauboldt, Clerk | 2.2 | $125 | $275 |
| Timothy J. Henkel, Clerk | 7 | $125 | $875 |
| Patrick K. Kranz, Clerk | 22.60 | $125 | $2,825 |
| Dana C. Nelson, Clerk | 55.1 | $125 | $6,887.50 |

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

| | | | |
|---|---|---|---|
| Jill M. Novak, Clerk | 7 | $125 | $875 |
| Melissa Honkanen, Legal Assistant | 11.9 | $90 | $1,071 |

***3** Defendants do not contest the reasonableness of West's counsel's billing rates. Instead, Defendants contend that the number of hours requested is unreasonable. Defendants request that West's counsel's lodestar be reduced by $41,191.50 for a total of $8,889.50. Specifically, Defendants contend that West's counsel is not entitled to the following: (1) $13,041 in fees incurred in its unsuccessful efforts to achieve conditional certification and in treatment of the lawsuit as a class action; (2) $17,615.50 in fees incurred in litigating the putative plaintiffs' and drop-out putative plaintiffs' claims; (3) $6,927.50 in fees incurred after Defendants' October 18, 2006 offer to settle for the entire amount of West's claims; and (4) $3,607.50 in allegedly unreasonable administrative duties. The Court will address each requested reduction in turn.

First, the Court finds that West's counsel's lodestar amount should be reduced by $13,041 for fees incurred in its unsuccessful efforts to achieve conditional certification and in treatment of the lawsuit as a class action. The record reflects that West's counsel directed its efforts at achieving conditional certification and further, at building and certifying a collective class action. Although the standard to obtain conditional certification is relatively low, it was not a close call for the Court to reject West's request for conditional certification. Because West was unsuccessful in this effort, the Court finds that the lodestar amount should be reduced. *See* Simpson v. Merchs. & Planters Bank, 441 F.3d 572, 580 (8th Cir.2006) (holding that the district court, in its discretion, may reduce the lodestar amount if the prevailing party did not achieve success on all claims); *see also* Cullens v. Ga. Dept. of Trans., 29 F.3d 1489, 1494-95 (11th Cir.1994) (affirming the district court's denial of attorney fees incurred by seeking unsuccessful class-action certification).

More importantly, setting West's ultimate success aside, the Court finds that West's counsel's attempt to achieve class-action status was unreasonable under the facts of this case. West's counsel should have recognized at an early stage that this case was not suitable for collective litigation and instead should have pursued five individual wage and hour claims. Because the Court finds that West's counsel's approach was unreasonable, the Court concludes that the attorney fees incurred in pursuit of class-action status are not compensable. *Scheidecker v. Arvig Enters., Inc.,* No. 99-1259, 2001 WL 1631319, *3 (D.Minn. July 31, 2001) (reducing amount of attorney fees because "a reasonable inquiry would have revealed that [certain] claims lacked merit").

Defendants' second contention is that West's counsel is not entitled to recover $17,615.50 in fees generated through litigating the putative plaintiffs' and drop-out plaintiffs' claims. In particular, Defendants contend that the putative plaintiffs and drop-out putative plaintiffs are neither parties nor prevailing parties. The Court agrees that West's counsel is not entitled to recover attorney fees for the drop-out putative plaintiffs. Here, West's counsel conceded that the drop-out putative plaintiffs had no valid claims against Defendants. Thus, the Court finds that West's counsel is not entitled to attorney fees incurred by pursuing these individuals' claims and the lodestar amount should therefore be reduced by $12,115.50.

***4** But the Court finds that West's counsel is entitled to recover fees incurred by pursuing the putative plaintiffs' claims. Although the putative plaintiffs never became parties to the lawsuit and although Defendants deny liability, Defendants agreed to settle the putative plaintiffs' claims along with West's claims in this case, acknowledging that that the putative plaintiffs had the right to file separate, individual lawsuits. Accordingly, the Court finds that West's counsel is entitled to $5,500 in attorney fees for the fees incurred in pursuing the putative plaintiffs' claims.

Next, the Court rejects Defendants' assertion that West's counsel's lodestar amount should be reduced by $6,927.50 for fees incurred after Defendants' October 18, 2006 offer to settle the entire amount of West's claims. Although Defendants offered West the full amount of his claims, West's counsel also sought to settle the putative plaintiff's claims at that time, who admittedly had the right to file separate, individual lawsuits. Ultimately, Defendants agreed to settle both West's claims and the putative plaintiffs' claims in one settlement. Because of the differing interests that were being represented at the time of the October 18, 2006 offer to settle, the Court finds that West's counsel is entitled to receive the attorney fees incurred after Defendants' offer to settle.

Finally, the Court finds that West's counsel's lodestar amount should be reduced by $3,140 for unnecessary and unreasonable billing entries. Specifically, the Court finds the administrative activities billed are not related to the successful litigation of West's and the putative plaintiffs' claims. The Court finds that West's counsel is not entitled to time billed by clerks who scanned documents deemed necessary to West's counsel's usual collective-action

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.

practices.

The Court rejects, however, Defendants' request that the lodestar amount be reduced for unrelated and inconsistent billing entries. As an example of West's alleged billing inconsistencies, Defendant compares Srey's November 9, 2006 billing entry, which reflects 0.1 hours for a meeting with Fisher, to Fisher's November 9, 2006 billing entry, which reflects 0.5 hours for a meeting with Srey, a discussion regarding trial preparation with a clerk, and the reviewing of a trial order. The Court finds that although Fisher's billing entry reflects more time worked than Srey's, there is no inconsistency because Fisher's billing entry included additional work performed.

Having reviewed West's proposed lodestar analysis and Defendants' objections, the Court finds that the lodestar amount of $50,081 should be reduced by $28,296.50 for a total of $21,784.50.

**II. Costs**

The Court shall also award reasonable costs to the prevailing party. 29 U.S.C. § 216. Plaintiff requests $3,417.77 in costs. Defendants do not dispute the amount requested. The Court has reviewed West's counsel's itemized list of costs and finds that West's counsel is entitled to $3,417.77 in reasonable costs and expenses incurred in connection with this lawsuit.

**CONCLUSION**

*5 Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Attorneys' Fees and Costs (Doc. No. 75) is **GRANTED IN PART AND DENIED IN PART** as follows.
   a. West's counsel shall recover from Defendant the sum of $21,784.50 for attorney fees;
   b. West's counsel shall recover from Defendant the sum of $3,417 .77 for costs.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. US Gov. Works.