UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA
FOURTH DIVISION

| | | |
|---|---|---|
| RODERICK ARNOLD, et al., on behalf of themselves and all others similarly situated, | ) | Civil Action No. 01-CV-2086 (DWF/AJB) |
| *Plaintiffs,* | ) | |
| v. | ) | **SPRENGER & LANG, PLLC'S MEMORANDUM OF LAW IN OPPOSITION TO CARGILL'S MOTION FOR ATTORNEYS' FEES AND RELATED EXPENSES** |
| CARGILL, INCORPORATED, | ) | |
| *Defendant.* | ) | |

# TABLE OF CONTENTS

Page


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. CARGILL IS NOT ENTITLED TO AN INDEPENDENT SANCTION ..... 2

A. The Court Already Has Rejected Cargill's Right to a Monetary Sanction Against S&L ..... 2

B. Cargill's Motion for a Monetary Sanction Is Untimely ..... 5

C. Cargill's Motion for a Monetary Sanction Under Section 1927 Lacks Merit ..... 7

1. Section 1927 Applies to the Conduct of Individual Attorneys and Does Not Apply to Law Firms ..... 8

2. Section 1927 Does Not Apply to S&L's Conduct Prior to Filing the Complaint ..... 10

3. The Proceedings After the Filing of the Complaint Do Not Warrant Imposition of Sanctions Under 28 U.S.C. § 1927 ..... 11

D. Cargill Should Not Be Awarded Sanctions Under the Court's Inherent Authority ..... 21

II. CARGILL'S RECORDS DO NOT JUSTIFY AN OFFSET IN THE AMOUNT OF $441,312.80 OR ANY OTHER PRECISE AMOUNT ..... 25

CONCLUSION ..... 27

# TABLE OF AUTHORITIES

Cases Page

*60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*
218 F.3d 109 (2d Cir. 2000) ........ 22

*Acevedo v. INS*,
538 F.2d 918 (2d Cir. 1976) ........ 22

*Arnold v. Cargill, Inc.*,
2004 U.S. Dist. LEXIS 19381 (D. Minn. Sept. 24, 2004) ........ 3, 11, 23

*Bender v. Freed*,
436 F.3d 747 (7th Cir. 2006) ........ 10

*Burks v. Siemens Energy & Automation, Inc.*,
215 F.3d 880 (8th Cir. 2000) ........ 27

*Chambers v. NASCO*,
501 U.S. 32 (1991) ........ 22

*Claiborne v. Wisdom*,
414 F.3d 715 (7th Cir. 2005) ........ 9

*FAG Bearings Corp. v. Gulf States Paper Co.*,
1999 U.S. Dist. LEXIS 23544 (W.D. Mo. Sept. 27, 1999) ........ 9

*Gavin v. United States*,
2007 U.S. Dist. LEXIS 62252 (D. Minn. Aug. 23, 2007) ........ 9

*H.J. Inc. v. Flygt Corp.*,
925 F.2d 257 (8th Cir. 1991) ........ 27

*Kapco Mfg. Co. v. C&O Enters.*,
886 F.2d 1485 (7th Cir. 1989) ........ 19

*Land v. IRS*,
2003 U.S. Dist. LEXIS 25923 (D. Minn. Jan. 7, 2003) ........ 4

*Lee v. First Lenders Ins. Servs.*,
236 F.3d 443 (8th Cir. 2001) ........ 9

*Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*,
78 F.3d 431 (9th Cir. 1996) ........ 10

*Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*,
194 F.R.D. 633 (N.D. Ill. 2000) ........ 6

*Perkins v. General Motors Corp.*,
965 F.2d 597 (8th Cir. 1992) ........ 20

*Sangui Biotech Int'l v. Kappes*,
179 F. Supp. 2d 1240 (D. Colo. 2002) ........ 9-10

*Schaffhausen v. Bank of Am.*,
2004 U.S. Dist. LEXIS 1773 (D. Minn. Feb. 2, 2004) ........ 11

*Steinert v. Winn Group, Inc.*,
440 F.3d 1214 (10th Cir. 2006) ........ 6, 10

*Terrebonne, Ltd. v. Murray*,
1 F. Supp. 2d 1050 (E.D. Cal. 1998) ........ 20, 24

*Thorne v. Wyeth*,
2007 U.S. Dist. LEXIS 52500 (D. Minn. July 19, 2007) ........ 4

*Transclean Corp. v. Bridgewood Services, Inc.*,
134 F. Supp. 2d 1049 (D. Minn. 2001) ........ 27

*Wages v. IRS*,
915 F.2d 1230 (9th Cir. 1990) ........ 19

*Weaver v. Chrysler Corp.*,
1998 U.S. Dist. LEXIS 12562 (S.D.N.Y. July 24, 1998),
*aff'd*, 2004 U.S. App. LEXIS 10466 (2d Cir. May 26, 2004) ........ 7

*XCO Int'l v. Pacific Scientific Co.*,
2003 U.S. Dist. LEXIS 7286 (N.D. Ill. Apr. 25, 2003),
*aff'd*, 369 F.2d 998 (7th Cir. 2004) ........ 7

*Zuk v. Eastern Pa. Psychiatric Inst.*,
103 F.3d 294 (3d Cir. 1996) ........ 10

Statutes and Rules

28 U.S.C.
§ 1927 ........................................................................................................ *passim*

Federal Rule of Civil Procedure
Rule 11........................................................................................................ 6

District of Minnesota Local Rules of Court
Rule 7.1(f)..................................................................................................... 17
Rule 7.1(g) ................................................................................................... 3-4, 5

Minnesota Rules of Professional Conduct
Rule 1.6........................................................................................................ 13

## INTRODUCTION

If the Court grants its motion for fees and expenses, Sprenger & Lang, PLLC ("S&L") does not dispute that Cargill should be awarded a partial offset to the award to S&L. S&L also does not dispute that this offset should be in the amount of the reasonable fees and expenses that Cargill incurred as a result of the conduct that led the Court to disqualify S&L from this case, if those fees and expenses are calculable.

Cargill's motion, however, goes beyond a request for reasonable fees and expenses as an offset to an award to S&L. Instead, Cargill argues that it should be "reimbursed" by S&L for all fees and expenses incurred by Cargill in connection with the disqualification, whether or not S&L receives an award. This request is flawed for three reasons: the Court's Memorandum Opinion and Order of September 24, 2004 (the "Opinion and Order"), already denied it this type of sanction; even if the Court had not already rejected such an award, Cargill has delayed too long to be permitted to seek it now; and Cargill does not meet the standards for such a sanction. To try to justify the sanction, Cargill argues inaccurately that S&L fought "tooth and nail" against its discovery and provides the Court a distorted version of the litigation history. The reality is that the positions of plaintiffs that S&L advocated were fully justified and often prevailed before Magistrate Judge Boylan and this Court. The fact that S&L was disqualified from this case does not excuse Cargill's attempts to rewrite history. Cargill should be limited to a partial offset against any award to S&L.

The contemporaneous time records of Cargill's counsel are insufficient to calculate the amount of those partial offsets precisely. They apparently do not reflect the

amount of time worked on each task on this case. Thus, Cargill repeatedly must estimate the amount of time its lawyers spent on the issues for which they seek an award or offset. In its motion, S&L proposed a 25% reduction in fees both as a sanction for its behavior and as an estimate of Cargill's reasonable fees and expenses. Memorandum of Law in Support of Sprenger & Lang, PLLC's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses at 29-30. In the absence of sufficiently precise contemporaneous records, the Court should adopt S&L's proposal as the partial offset against any award to S&L. Cargill's motion should be denied.

## ARGUMENT

### I. CARGILL IS NOT ENTITLED TO AN INDEPENDENT SANCTION

#### A. The Court Already Has Rejected Cargill's Right to a Monetary Sanction Against S&L

Three years ago, the Court rejected Cargill's motion for imposition of monetary sanctions against S&L. Cargill seeks to justify its request for reconsideration of the Opinion and Order by manufacturing a rationale for that ruling that does not appear anywhere in the Court's decision. Cargill thus has not justified reconsideration, and the Court should deny the motion for that reason alone.

Cargill titled its motion of June 18, 2004, "Motion to Dismiss, Disqualify, and Impose Additional Sanctions." Cargill asked the Court, as those "additional sanctions," to "impose monetary sanctions, and award Cargill the costs and fees incurred in defending this action to date." Docket No. 227 at 3. An award of "the costs and fees incurred in defending this action to date" would have included all of the costs and fees

that Cargill now seeks, except possibly for the additional costs and fees Cargill now seeks for activities after the disqualification. The "monetary sanctions," while unspecified in amount, presumably would have been a sum over and above "the costs and fees incurred in defending this action to date."[1]

In the text of its Opinion and Order, the Court imposed disqualification as the sole remedy for S&L's conduct. *Arnold v. Cargill, Inc.*, 2004 U.S. Dist. LEXIS 19381, at *44 (D. Minn. Sept. 24, 2004). Then, to eliminate any doubt as to the remedy deemed appropriate, the Court stated in paragraph 2 of its Order, "Defendant's motion for additional sanctions is DENIED." *Id.* at *45. The reference to "additional sanctions" adopted the language from Cargill's motion, and thus encompassed both "monetary sanctions" and an "award [of] the costs and fees incurred in defending this action to date." Docket No. 227 at 3.

By now seeking "reimbursement" of fees and expenses incurred in connection with the disqualification discovery, motion, and aftermath, Cargill is asking the Court to reconsider its Opinion and Order insofar as it denied the request for "the costs and fees incurred in defending this action to date." It failed, however, to comply with Local Rule

[1] In order to make it seem that it is not asking the Court to reconsider its ruling, Cargill characterizes its 2004 motion as "includ[ing] a nonspecific request for any additional sanctions the Court deemed appropriate, including monetary sanctions." Cargill Incorporated's Memorandum of Law in Support of Motion for Attorneys' Fees and Related Expenses Incurred as a Result of Former Class Counsel S&L's Conduct ("Cargill Mem.") at 2. Cargill has effectively rewritten that motion to delete the request for "the costs and fees incurred in defending this action to date." This request was "nonspecific" only in the sense that Cargill did not tell the Court the amount of those costs and fees.

7.1(g), which requires motions for reconsideration to be preceded by a letter to the Court requesting permission to make such a motion.

Cargill also fails to meet the substantive requirements for reconsideration. As this Court has stated, "The proper role of a motion to reconsider is extremely limited to correct manifest errors of law or to present newly discovered evidence." *Land v. IRS*, 2003 U.S. Dist. LEXIS 25923, at *2 (D. Minn. Jan. 7, 2003); *see Thorne v. Wyeth*, 2007 U.S. Dist. LEXIS 52500, at *13 (D. Minn. July 19, 2007) (Doty, J.) ("The court will reconsider issues previously decided during the course of litigation only upon a showing that a prior decision is 'clearly erroneous and works manifest injustice.'") (citation omitted). Cargill does not pretend that it has newly discovered evidence. It also does not argue that the portion of the Opinion and Order denying the request for additional sanctions constituted a "manifest error of law." Thus, it has no basis to ask for reconsideration.

Apparently recognizing that it cannot meet the standards for reconsideration, Cargill instead argues that the Court denied the request in its 2004 motion for fees and expenses as "premature[]." Cargill Mem. at 3. Similarly, Cargill twice uses the phrase that the ruling was grounded in the circumstances "at that time" and that there were unknown facts "as of yet." *Id.* Without so stating, Cargill suggests that the denial should be construed as "without prejudice" to renewal at a later time.

The flaw in Cargill's argument is that nothing in the Opinion and Order suggests that the denial of the request for fees and costs was "without prejudice" to such a renewal. Cargill has constructed its argument like a magician out of thin air. It has

violated Local Rule 7.1(g) and offered no reason to reconsider the decision. The Court should not do so.[2]

### B. Cargill's Motion for a Monetary Sanction Is Untimely

In July 2002, then-S&L attorney Larry Schaefer sent Cargill's counsel the documents that William Douglas previously had delivered to S&L that had been marked by Cargill as "privileged." The discovery disputes concerning those documents occurred between 2002 and 2004. The Court disqualified S&L in September 2004. According to Cargill's own records, the last of its post-disqualification work occasioned by the dealings between Mr. Douglas and S&L personnel (except for a single time entry from 2006 associated with Cargill's efforts to convince the Board of Professional Responsibility to impose severe penalties on Mr. Schaefer) occurred in March 2005. Yet only now, five years after S&L supposedly began an unreasonable and vexatious campaign to interfere with Cargill's enforcement of its rights and two and a half years after that campaign supposedly ended, has Cargill chosen to file a motion for sanctions under 28 U.S.C. § 1927 and the Court's inherent authority. If the Opinion and Order does not preclude Cargill's motion, the untimeliness of the motion does.

---

[2] Cargill apparently realized immediately after reading the Opinion and Order that it precluded reimbursement of fees and costs. Cargill promptly investigated whether it could bring an independent tort conversion action against S&L. For whatever reason it decided not to do so, but an independent tort action would have been unnecessary if Cargill retained the right to reimbursement of its fees and costs. *See* Declaration of Michael Iwan ("Iwan Dec."), Ex. A at 16 (entry at 9/30/2004; 10/1/2004), 17 (entry at 10/6/2003, 10/7/2004), 19 (entry at 10/14/2004), 20 (entry at 11/5/2004). All references to "Ex. __" are to the Iwan Dec.

Section 1927 does not state how quickly an aggrieved party should file a motion after an attorney allegedly violates the statute's provisions. To the best of plaintiffs' knowledge, neither the Eighth Circuit nor a court in this district has addressed the issue.

Other courts have addressed the issue. The Tenth Circuit last year ruled that in some cases it is appropriate for a party to seek sanctions under Section 1927 after final judgment because sometimes "the application of § 1927 may become apparent only at or after the litigation's end, given that the § 1927 inquiry is whether the proceedings have been unreasonably and vexatiously multiplied." *Steinert v. Winn Group, Inc.*, 440 F.3d 1214, 1223 (10th Cir. 2006). The general principle, however, is that "resort to § 1927 should not be unnecessarily or unreasonably delayed." *Id.*

Two decisions of the Northern District of Illinois flesh out more fully the principle against unnecessary or unreasonable delay in bringing sanctions motions. In *Northlake Marketing & Supply, Inc. v. Glaverbel, S.A.*, 194 F.R.D. 633 (N.D. Ill. 2000), the defendant obtained a judgment for fees against the plaintiff and then, nine months after that judgment, moved for sanctions against the plaintiff's lawyers under Rule 11, Section 1927, and the court's inherent powers. The district court "view[ed] the timeliness issue as calling for identical treatment whatever the source of claimed sanctions may be: whether Rule 11 or Section 1927 or the inherent powers of the judiciary." *Id.* at 636. It denied defendant's motion under all three sources when defendant's counsel

> offer no persuasive argument as to why they could not have brought the motion far, far sooner, let alone waiting until so long after the entry of final judgment. Indeed, it is scarcely as though [defendant's] counsel had been unaware either of the claimed violations or of the prospect of fee shifting ....

*Id.* at 635.

Three years later, the court in *XCO Int'l v. Pacific Scientific Co.*, 2003 U.S. Dist. LEXIS 7286 (N.D. Ill. Apr. 25, 2003), *aff'd*, 369 F.2d 998 (7th Cir. 2004), followed the reasoning in *Northlake*:

> The requirement that a motion for sanctions be filed as soon as practicable after the discovery of a Rule 11 violation should equally apply to a motion for sanctions pursuant to Section 1927. As discussed above, XCO waited over eight months after it concedes it believed sanctions were appropriate before filing the instant motion.

*Id.* at *15.

Cargill waited far longer than eight months to file its motion. It believed sanctions were appropriate more than three *years* before filing its motion, as shown by its filing of the motion to dismiss, disqualify and for other sanctions in June 2004. The delay in seeking sanctions was unjustified and unreasonable, and warrants denial of the motion.[3]

### C. Cargill's Motion for a Monetary Sanction Under Section 1927 Lacks Merit

Even if the Court had not already rejected an award of fees and costs to Cargill, and even if Cargill had not delayed unjustifiably in bringing its motion for sanctions, it

[3] As a possible excuse for the delay, Cargill suggests that only at the conclusion of the litigation could Cargill or the Court "fairly assess the true impact of S&L's wrongdoing." Cargill Mem. at 3. It does not explain, however, why that impact could not have been assessed after the transition to successor counsel was complete in the spring of 2005. The real reason for the delay has nothing to do with full assessment of impact of the behavior of S&L personnel, but with S&L's filing of a motion for fees. This type of response to S&L's motion is totally improper. *See Weaver v. Chrysler Corp.*, 1998 U.S. Dist. LEXIS 12562, at *7 (S.D.N.Y. July 24, 1998) (imposing sanctions under Section 1927 against defendant for filing a motion for sanctions against plaintiff's counsel ten months after plaintiff's complaint was dismissed and after the clerk had "reject[ed] … most of Defendant's requests for costs," which rejection apparently prompted defendant's bad faith motion for sanctions), *aff'd*, 2004 U.S. App. LEXIS 10466 (2d Cir. May 26, 2004).

would not be entitled to an award of fees and costs under 28 U.S.C. § 1927, as opposed to a setoff. Cargill wrongly seeks fees from a law firm when the statute clearly states that the sanction is intended for individual attorneys. Cargill further grounds its request for an award of fees and costs under 28 U.S.C. § 1927 in part on the behavior of S&L personnel prior to the filing of this lawsuit. Section 1927 applies only to an attorney's conduct *after* filing a complaint. As to the post-filing proceedings, Cargill has badly distorted the procedural record. A more accurate review, which should not be obscured by Cargill's efforts to vilify S&L,[4] shows that the firm did not "unreasonably and vexatiously" multiply the proceedings and hence that sanctions under Section 1927 are unjustified.

### 1. Section 1927 Applies to the Conduct of Individual Attorneys and Does Not Apply to Law Firms

Cargill seeks an order under Section 1927 "directing plaintiffs' former counsel Sprenger & Lang, PLLC ("S&L") to reimburse Cargill for [certain attorneys' fees and other expenses]." Cargill Motion at 1. The company discusses at great length what it views as S&L's misdeeds, but ignores the central question of whether law firms can be held liable for sanctions under Section 1927.

[4] We are troubled by the invective that Cargill's counsel has leveled at S&L throughout its brief. During the course of the brief, our actions, including our positions taken during the course of litigation, are described as "mendacious" (at 2), "dissembling" (at 3), "vexatious" (at 3), "obstruct[ionist]" (at 9, 11), "completely spurious" (at 10, 11), "strident, and increasingly misguided" (at 11), "obstina[te]" (at 12), part of a "relentless and legally meritless campaign" (at 20), "disingenuous, if not overly dishonest" (at 21), "abusive" (at 21), "unrelenting" (at 22), "incredulous[]" (at 22), "deceptive and unethical" (at 25), in "bad faith" (at 25), and as "unjustified, obstructionist conduct" of "incredible scope" (at 26). We do not intend to respond in kind and apologize to the Court to the extent that S&L has been unable to engender a more civil relationship with Cargill and its counsel.

Starting with the plain language of the statute, Section 1927 applies to "[a]ny attorney or other person" and uses the phrase "satisfy personally." 28 U.S.C. § 1927. S&L is not an attorney or person; it is a law firm incorporated as a professional limited liability company under the laws of the District of Columbia. Thus, under the statute's plain language, it does not and cannot apply to law firms.

Courts in this circuit have noted that the question of whether law firms are subject to Section 1927 has generated some nationwide controversy and has not been directly addressed by the Eighth Circuit. *FAG Bearings Corp. v. Gulf States Paper Co.*, 1999 U.S. Dist. LEXIS 23544, at *9 (W.D. Mo. Sept. 27, 1999) (recognizing "[t]he Eighth Circuit has not determined whether § 1927 authorizes sanctions against law firms" and refusing to hold firm, as opposed to individual attorneys, liable).[5] Two recent cases provide persuasive guidance on the issue, however. The first is *Claiborne v. Wisdom*, 414 F.3d 715 (7th Cir. 2005). In *Claiborne*, the Seventh Circuit squarely and thoughtfully considered the question, and held that Section 1927 does not provide a legal basis for an order of fees against an entity like a law firm that is not itself "admitted to practice" before a tribunal. *Id.* at 722-24. The second case is *Sangui Biotech Int'l v.*

---

[5] In *Lee v. First Lenders Ins. Servs.*, 236 F.3d 443 (8th Cir. 2001), the court affirmed a Section 1927 sanction against an apparent sole practitioner's firm, so the court was not faced with the firm/individual attorney question presented here. Moreover, in *Lee*, the attorney who engaged in the misconduct was still at the firm. *See FAG Bearings Corp.*, 1999 U.S. Dist. LEXIS 23544, at *10 ("Holding [the law firm] responsible [for an attorney's misdeeds] on agency principles alone would not act to deter future intentional and unnecessary litigation delay. Sanctions should only be imposed upon those who willingly carried out and participated in bad faith litigation tactics."); *but cf. Gavin v. United States*, 2007 U.S. Dist. LEXIS 62252, at **47-48 (D. Minn. Aug. 23, 2007) (recognizing that some courts have imposed Section 1927 sanctions against the government for failing to comply with the Freedom of Information Act).

*Kappes*, 179 F. Supp. 2d 1240 (D. Colo. 2002). In *Kappes*, the court likewise held that the wording of the statute prohibited the imposition of Section 1927 sanctions against a law firm as opposed to individual attorneys. *Id.* at 1244-45. Accordingly, Section 1927 does not provide statutory authority for an award of attorneys' fees and costs against S&L.

**2. Section 1927 Does Not Apply to S&L's Conduct Prior to Filing the Complaint**

Even if it did apply, appellate courts uniformly hold that Section 1927 concerns only actions taken during the course of the lawsuit that "unreasonably and vexatiously" multiply the "proceedings." They refuse to extend the statute to a lawyer's failures prior to the filing of a complaint. *See*, *e.g.*, *Steinert*, 440 F.3d at 1224 (reversing award of sanctions insofar as it was imposed for plaintiff's filing the initial complaint because "§ 1927 only applies to the multiplication of proceedings and not to the initiation of proceedings"); *Bender v. Freed*, 436 F.3d 747, 751 (7th Cir. 2006) (affirming refusal to grant sanctions because Section 1927 applies only "to misconduct by an attorney in the course of 'proceedings' in a 'case' before the court, not misconduct that occurs before the case appears on the federal court's docket"); *Zuk v. Eastern Pa. Psychiatric Inst.*, 103 F.3d 294, 297 (3d Cir. 1996) (reversing award of sanctions imposed "not because of any multiplicity of the proceedings or delaying tactics, but for failure to make a reasonably adequate inquiry into the facts and law before filing the lawsuit"); *Moore v. Keegan Mgmt. Co. (In re Keegan Mgmt. Co., Sec. Litig.)*, 78 F.3d 431, 435 (9th Cir. 1996) ("Because the section authorizes sanctions only for the 'multipli[cation of] proceedings,'

it applies only to unnecessary filings and tactics once a lawsuit has begun. We have twice expressly held that § 1927 cannot be applied to an initial pleading.").

Notwithstanding the statutory language and the many cases interpreting it, Cargill argues that fees and costs should be awarded under Section 1927 based both on "S&L's conduct in soliciting, reviewing, copying, and retaining Cargill's privileged and confidential documents and information" and on "S&L's unrelenting efforts to prevent Cargill from discovering facts." Cargill Mem. at 17, 19 (initial caps removed). Under the former topic, Cargill focuses with one exception on S&L's actions with respect to Mr. Douglas prior to the filing of the complaint. This is irrelevant under the statute.[6]

### 3. The Proceedings After the Filing of the Complaint Do Not Warrant Imposition of Sanctions Under 28 U.S.C. § 1927

Regardless whether a claim under Section 1927 is actionable against a law firm, S&L's conduct after July 2002, when the Douglas documents were turned over, would violate the statute only if the conduct was objectively unreasonable and caused the proceedings in the case to increase unnecessarily. *Schaffhausen v. Bank of Am.*, 2004 U.S. Dist. LEXIS 1773, at **5-6 (D. Minn. Feb. 2, 2004). The objective unreasonability standard is met when a party has no basis for bringing or opposing a motion, other than to harass the other side and multiply the proceedings. *Id.* In its brief, however, Cargill fails

[6] The only exception is Mr. Schaefer's letter to Mr. Douglas dated March 18, 2003, that contained representations as to Mr. Douglas's possible benefits from the lawsuit for which the Court concluded there was "no justification." *Arnold*, 2004 U.S. Dist. LEXIS 19381, at **21-22. Cargill, however, has offered no suggestion as to how this letter added to the proceedings in the case in any way. Mr. Douglas's testimony does not reflect that this letter swayed him in any way, regardless of Mr. Schaefer's intent.

to identify even one instance in which plaintiffs lacked a proper legal basis to bring or oppose a motion, no doubt because the record does not support such a showing.

Cargill argues that every litigation decision made by S&L on behalf of plaintiffs was in furtherance of an obstructionist campaign to prevent defendant and the Court from learning information that S&L knew from the beginning would result in its disqualification. The premise, however, is incorrect. S&L accepts the Court's decision, but did not believe that the Court would disqualify the firm until the Court so ruled. Indeed, if S&L's partners had believed disqualification to be likely, they would have tried to find substitute counsel and withdraw from the case after July 2002 rather than incurring many millions of dollars of lost time and expenses and incalculable damage to the firm's reputation.

More important as to liability under Section 1927, the positions that S&L took on behalf of plaintiffs with respect to Cargill's efforts to disqualify S&L, particularly as Cargill sought to pierce attorney-client privilege and work product, were reasonable and in many instances prevailed. S&L's disqualification does not warrant a presumption that every litigation decision that it made was unethical and unreasonable.

S&L does not believe it is useful or necessary to rebut Cargill's selective version of the facts by recreating and explaining the entire course of conduct between the parties. Rather, the firm will provide examples of how Cargill has omitted relevant facts that demonstrate the objective reasonableness of plaintiffs' litigation decisions. S&L will discuss the record using the same three time periods used by Cargill: (1) the period of

discovery with respect to Mr. Douglas; (2) the period of the disqualification motion itself; and (3) the period involving transition of the case to successor counsel.

**Discovery related to Mr. Douglas.** The issues raised by the parties with respect to Mr. Douglas resulted in three substantive rulings and a letter by Magistrate Judge Boylan over the almost two-year period from July 15, 2002 through June 18, 2004 when Cargill filed its disqualification motion.

The first ruling occurred on October 1, 2002. *See* Docket No. 78. After the delivery of the documents to the company on July 15, 2002, Cargill served several discovery requests on August 14, 2002:

1. Cargill's Interrogatories to Plaintiffs (Set II), containing 8 interrogatories;
2. Cargill's Requests for Production of Documents and Things (Set III), containing requests 31-35;
3. Notice of Deposition of Bill Douglas; and
4. Notice of 30(b)(6) Deposition of Sprenger & Lang.

Through the meet-and-confer process in which each party responsibly engaged, the parties narrowed the dispute by the October 1, 2002 telephone status conference with Magistrate Judge Boylan to whether plaintiffs must provide more specific answers to Interrogatory Nos. 1 and 8, to which they had objected on the grounds of their obligations under Rule 1.6 of the Minnesota Rules of Professional Conduct and work product and relevancy. The Magistrate Judge overruled plaintiffs' objections in his Order. *See* Docket No. 78. He did not sanction plaintiffs for their position and neither he nor Cargill suggested that plaintiffs' position was vexatious or unreasonable. Plaintiffs promptly answered the two remaining interrogatories.

Although noticed in August 2002, Mr. Douglas's deposition did not begin until over a year later, in September 2003. Some of this delay occurred because both parties' then-lead counsel, Mr. Schaefer and Jan Symchych for Cargill, had medical issues. Once they resumed working, the parties were unable to resolve by themselves disagreements over the extent to which Cargill would be permitted to inquire into attorney-client privileged communications and attorney work product. The parties then tried to resolve their issues in an informal conference with Magistrate Judge Boylan, but, obviously viewing the matter as serious and complex, he ordered the parties to submit formal briefs. *See* Docket No. 92.

In a ruling dated June 30, 2003, the Magistrate Judge ruled in favor of Cargill's position. *See* Docket No. 136. Nothing in this Order indicates that plaintiffs had failed to cooperate in efforts to resolve this matter short of a motion or had taken unreasonable positions in their objection to Cargill's motion.

If S&L's lawyers truly were engaged in a concerted effort to delay or block Cargill's discovery, they would have had plaintiffs appeal Magistrate Judge Boylan's ruling to this Court and, possibly, beyond. S&L elected to accept his ruling, even though the preservation of privilege and work product generally is a sensitive subject for lawyers and their clients. Indeed, when a special master concluded that many of the documents over which Cargill had asserted attorney-client privilege and attorney work product were not protected, Cargill challenged the recommendation first with this Court and, when this Court upheld the special master's recommended ruling, petitioned for mandamus to the Eighth Circuit Court of Appeals. Docket Nos. 169-70; Judgment, *In re Cargill, Inc.*, No.

03-3759 (8th Cir. April 27, 2004). Nobody contends that this was done unreasonably or vexatiously.

Cargill suspended Mr. Douglas' deposition in September 2003 after the conclusion of its first day and wrote a letter to Magistrate Judge Boylan. That letter described the deposition testimony, alerted the Magistrate that Cargill intended to move to disqualify and dismiss, and asking for an evidentiary hearing. Ex. G. In their response, plaintiffs pointed out the many inaccuracies in Cargill's description of the testimony, asked the Court to terminate Mr. Douglas's deposition in light of Cargill's voluntary decision to suspend it, and invited Cargill to file the threatened motion for disqualification. Ex. H at 1. In its brief, Cargill states only that Magistrate Judge Boylan's response affirmed Cargill's right to proceed with Mr. Douglas's deposition. Cargill Mem. at 6. The Magistrate Judge's letter, however, was hardly the unmitigated victory for Cargill that the company attempts to portray. He did not schedule an evidentiary hearing as Cargill requested and he stated that he would "not disqualify the plaintiff law firm on the basis of current record." Ex. I at 1. Nothing in his letter indicated that plaintiffs had taken unreasonable or harassing positions.

In early October, Cargill served on plaintiffs a motion to stay, as well as subpoenas *duces tecum* and *ad testificandum* on four then-current and former attorneys at Sprenger & Lang and a paralegal. Plaintiffs immediately notified 3M of its intent both to object to the motion to stay and file a motion to quash, which they did less than two weeks later. Ex. K. Again, Cargill omits much of Magistrate Judge Boylan's responsive ruling. As Cargill states, the Court did order the subpoenaed persons to respond to the

subpoenas *duces tecum*. Cargill Mem. at 8. However, Cargill fails to state in its brief that the Court denied Cargill's motion for a stay, and granted plaintiffs' motion to quash the subpoenas *ad testificandum* and their motion for a protective order. *See* Docket No. 179. Cargill cannot reasonably claim that plaintiffs' conduct here was intended to multiply proceedings or to harass when the Court affirmed most of the positions they had taken, and when plaintiffs did not seek review by this Court concerning the one issue they lost.

Cargill next complains that the subpoenaed persons withheld assertedly privileged documents and filed a privilege log when they responded to the subpoenas. The Magistrate Judge had expressly permitted the S&L personnel to take that course as to documents they considered privileged. *Id.* at 2. Cargill finally complains that plaintiffs responded to their request for reconsideration of the withheld documents by producing most of them voluntarily. This is hardly the action of attorneys engaged in a campaign of obstruction.

Cargill chose to complete the second day of Mr. Douglas's deposition only after receiving the subpoenaed documents. The deposition was further delayed by the health of Mr. Douglas's wife. The fact that the deposition did not resume until May 2004 was not the product of S&L's claimed obstructionism. Indeed, if Cargill had not chosen to suspend the deposition in September 2003, it would have been completed eight months earlier.

Discovery surrounding Mr. Douglas raised complex, serious and unusual issues. S&L dealt with them in a constructive manner. It did not engage in vexatious or harassing litigation.

**Disqualification Motion.** With respect to its actual motion to disqualify, Cargill focuses on two actions as obstructionist conduct. The first is plaintiffs' request for leave to supplement their response to Cargill's motion with a short memorandum addressing an issue that the Court raised at oral argument: the potential impact on the trial if Cargill were allowed to call Mr. Douglas as a witness and elicit testimony about his allegation that Mr. Schaefer instructed him to destroy documents. Cargill characterizes this conduct as "another calculated attempt to focus attention away from the true issue – their own misconduct." Cargill Mem. at 10. However, it was the Court, not plaintiffs, who raised the issue at oral argument. *See* Docket No. 327 at 1. After the hearing, plaintiffs researched the issue and, believing their research could be helpful to the Court, sought permission to supplement their filing pursuant to Local Rule 7.1(f). The Court granted permission. *See* Docket No. 339. Certainly the Court would have denied the request if it had viewed plaintiffs' conduct as obstructionist or unhelpful.

The second action was a letter that was treated as a request for leave to seek reconsideration of certain aspects of the Court's disqualification order filed by Bassford Remele, the counsel that S&L engaged after the disqualification. Ex. N. The Court denied the request, but in no instance characterized it in any of the terms now used by Cargill such as "spurious," or "obstructionist." *See* Docket No. 381. Accordingly, neither of these actions constitutes unreasonable or vexatious litigation.

**Transition.** With respect to the two motions plaintiffs filed that resulted in transmittal of the Cargill case record to successor counsel, Cargill cannot argue that plaintiffs engaged in any conduct violative of Section 1927. The Court granted both motions. *See* Docket Nos. 396 and 423. The parties had tried to negotiate an appropriate transition of materials to successor counsel without Court intervention, but Cargill thwarted these efforts by unbudgingly maintaining that successor counsel should receive no documents prepared after July 6, 2000, the date of plaintiffs' counsel's first contact with Mr. Douglas. *See* Docket No. 385 at Memorandum, Ex. III, Lundberg Declaration, ¶¶ 2-3. The Court rejected that position stating that Cargill had "made no attempt to demonstrate that any of the specified materials are tainted or even reasonably likely to be tainted" and concluding:

> the Court is not convinced that Douglas possessed and imparted the type of contemporaneous legal information about the merits of this case or had the amount and type of contact with S&L's attorneys that would justify a blanket presumption that all S&L materials generated after its initial contact with Douglas are tainted.

Docket No. 396 at 7, 9; *see also* Docket No. 423 at 3 (reiterating that the Court did not intend to revisit this issue "[a]bsent a showing of how a document or a class of documents is connected with the taint," when Cargill continued to argue in plaintiffs' second motion that the Court should transmit to successor counsel no portions of the balance of the case record created after July 6, 2000). Therefore, if anything, it was Cargill that unnecessarily protracted transition litigation, particularly after the Court issued its initial ruling instructing Cargill that it needed to provide specific evidence of taint in order to justify its objections to transmittal of case records.

None of Cargill's cited cases supports a finding that a sanction under Section 1927 is appropriate here. Even a cursory review of the facts in *Schaffhausen*, the principal case on which Cargill relies, shows the differences between the facts in that case and here. There, plaintiff's attorney was ordered to pay $985 in costs and fees associated with his unsupported opposition to a defendant's motion for an enlargement of time to answer the complaint. Judge Tunheim accepted the recommendation for sanctions because the plaintiff had no basis for opposing the motion, other than to harass the defendant and multiply the proceedings: he did not file an opposition to the motion, but would not consent to it until after a hearing was set on the motion. In other words, plaintiff had no legal basis for his position; it was simply an unreasonable litigation tactic.

Other cases cited by Cargill as authority for this Court to revisit its refusal to grant attorneys' fees as a sanction are factually inapposite. In *Wages v. IRS*, 915 F.2d 1230 (9th Cir. 1990), the Ninth Circuit affirmed a fee sanction against a pro se litigant who filed claims against the IRS and its individual employees, had those claims dismissed for failure to state a claim and then refiled an amended complaint that was substantially the same. The sanction was upheld because the litigant's actions had no reasonable legal basis and merely multiplied the proceedings. *Id.* at 1235-36. In *Kapco Mfg. Co. v. C&O Enters.*, 886 F.2d 1485 (7th Cir. 1989), the plaintiff settled its claims, and, almost immediately thereafter, began a course of filing frequent frivolous and baseless "emergency" motions, harassing opposing counsel, engaging in inappropriate conduct at hearings, seeking irrelevant discovery, prosecuting an appeal, and even filing a new

complaint based on the same set of facts that led to the settlement. In *Terrebonne, Ltd. v. Murray*, 1 F. Supp. 2d 1050 (E.D. Cal. 1998), plaintiff's counsel, among other things, failed to disclose conflicts of interest, counseled investors to engage in conduct adverse to their interests, surreptitiously learned of an adverse party's litigation strategy through deceit, and repeatedly asserted meritless legal positions. Finally, in *Perkins v. General Motors Corp.*, 965 F.2d 597, 600-01 (8th Cir. 1992), Section 1927 sanctions were supported by plaintiff's unsupported and unrelenting allegations of sexual misconduct about a defense witness, plaintiff's counsel's filing of false pleadings, counsel's purposeful failure to disclose a witness until trial, counsel's misrepresentations of expected witness testimony to the court, and counsel's filing of a late and baseless motion to recuse after the court had issued an oral ruling.

Taken together, these cases amply demonstrate the type of conduct that shows an attorney has "unreasonably and vexatiously" multiplied proceedings through baseless litigation. 28 U.S.C. § 1927. That conduct includes filing baseless motions or pleadings, harassing or intimidating parties or witnesses, misrepresenting a party's position to the Court, and the like. Cargill has not and cannot show that S&L asserted on behalf of plaintiffs positions lacking reasonable legal basis or intended to harass the defendant. In about half of the disputes, the judicial orders partly or completely affirmed plaintiffs' positions. Even when the orders rejected their positions, plaintiffs' arguments and objections were taken seriously and addressed. Accordingly, even if it were proper to bring a Section 1927 action against a law firm, Cargill cannot meet its burden of proving any violation.

### D. Cargill Should Not Be Awarded Sanctions Under the Court's Inherent Authority

The Court's inherent authority to issue sanctions differs from its authority under 28 U.S.C. § 1927 in two ways. First, the Court has the inherent authority to sanction a lawyer for both pre-complaint and post-complaint actions. Second, the Court has the inherent authority to sanction the firm, not just its former lawyers. Despite these differences, the result should be the same: the Court should not award Cargill the monetary sanction that it seeks.

As explained above, the various actions taken by S&L after turning over the documents marked as "privileged" that Mr. Douglas had given to the firm were fully justified. They cannot warrant any sanctions against the firm or any of its current or former personnel under the Court's inherent authority.

Thus, the only possible basis for the exercise of the Court's inherent authority would be the actions taken by and lack of supervision exercised by Mr. Schaefer and possibly other former S&L lawyers that led to the firm's disqualification. However, neither Mr. Schaefer nor any of the other lawyers who had any communications or other dealings with Mr. Douglas (other than Susan Coler who talked with Mr. Douglas only at his deposition) is still a member of or employed by S&L. Nonetheless, Cargill seeks the monetary sanction against the firm, not against any individual lawyers. S&L already has been penalized in multiple ways. It suffered significant damage to its reputation. It is not able to seek compensation for the great majority of the work and expenses that it devoted to the case. It also has suggested a 25% reduction to the amount of the fees and expenses

for which it seeks compensation both as a sanction and to compensate Cargill for its costs in connection with the disqualification discovery, motion, and transition. The Court should not impose still another penalty when the lawyers whose behavior led to the disqualification are no longer with the firm.

Moreover, even if Mr. Schaefer were still with S&L, the type of monetary sanction that Cargill seeks would not be warranted. The Court should exercise its inherent authority to sanction a lawyer or a firm only if their actions constituted "bad faith." Cargill Mem. at 23-24 (citing *Chambers v. NASCO*, 501 U.S. 32, 55 (1991)). As Cargill impliedly admits, this is a higher standard than Section 1927's "unreasonable and vexatious" standard. *See Chambers*, 501 U.S. at 59 (stating that sanctions are warranted even though "sanctions imposed under the court's inherent authority require a finding of bad faith"). "Bad faith" requires that the attorney be "substantially motivated by vindictiveness, obduracy," or some other improper purpose. *Terrebonne*, 1 F. Supp. 2d at 1056. Although "bad faith" requires a subjective judgment concerning motivation, in a proper case it can be inferred "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose." Cargill Mem. at 24 (incorrectly quoting *Acevedo v. INS*, 538 F.2d 918, 920 (2d Cir. 1976)[7]).

We accept the Court's conclusion that S&L should be disqualified because of violations of the Rules of Professional Conduct by at least its lead attorney in the case. In

[7] Defendant cites *Acevedo*, but the quotation does not appear in that cite. The language may be found in other Second Circuit cases, though. *See, e.g., 60 E. 80th St. Equities, Inc. v. Sapir (In re 60 E. 80th St. Equities)*, 218 F.3d 109, 115 (2d Cir. 2000).

the Opinion and Order, however, the Court did not reach any conclusions about the motivations of Mr. Schaefer or other S&L attorneys. Specifically, it did not conclude that Mr. Schaefer was motivated by "vindictiveness, obduracy, or other" improper motive. The closest the Court came was to state, "At a minimum, S&L's behavior recklessly disregarded the risks associated with playing fast and loose with the rules protecting against disclosure of privileged and confidential material. At worst, S&L is guilty of a serious deception with respect to its role in the disclosure and retention of Cargill's privileged and confidential information." 2004 U.S. Dist. LEXIS 19381, at *32.

The Minnesota Board of Professional Responsibility, the agency charged with enforcing the Minnesota Rules of Professional Conduct, did look at the issue. After receiving input from Cargill's counsel on multiple occasions, it concluded that Mr. Schaefer had violated his duties under the Rules only in failing to supervise the firm's personnel adequately, not in some type of improperly motivated wrongdoing. Mr. Schaefer's action in returning the "privileged" documents that Mr. Douglas gave to the firm without any demand from Cargill – indeed, at a time when Cargill did not know of the documents' existence – despite the knowledge of Mr. Schaefer and other partners that doing so would bring down a firestorm, supports the Board's findings that there was no intentional wrongdoing. The Court should give substantial weight to the Board's findings – findings that postdated the Opinion and Order – in deciding whether the evidence of intentional wrongdoing is so clear that it should impose the type of monetary sanction sought by Cargill.

Cargill's repeated citations to *Terrebonne, supra*, show that it is the case that Cargill considers the most germane to the inherent authority issues in this case. Cargill Mem. at 24-26 (citing *Terrebonne* seven times). The facts in *Terrebonne*, however, differ dramatically from the facts of this case. The lawyers who violated the ethical rules in that case and their firms were the ones against whom the monetary sanction was imposed. 1 F. Supp. 2d at 1077. The lawyers in that case did not call the opposing party's attention to their violations through an action trying to live up to their duties under the Rules of Professional Conduct; indeed, they were unrepentant. *Id.* at 1076. There was no agency ruling in that case finding that the violations were negligent rather than intentional in nature. And finally, the violations of the Rules that this Court identified – even if they were intentional – pale against the numerous violations of the Rules committed by the *Terrebonne* lawyers. Obtaining confidential attorney-client and attorney work product communications through deception was only a small part of their violations of the Rules of Professional Conduct. They also failed to disclose conflicts of interest, counseled investors to engage in conduct adverse to their interests, surreptitiously learned of an adverse party's litigation strategy through deceit, filed an involuntary bankruptcy petition against the adverse party based on wrongly obtained information, and repeatedly asserted meritless legal positions. *Id.* at 1074-75. Cargill's use of *Terrebonne* as its poster case highlights the lack of basis for its request for a monetary sanction.

## II. CARGILL'S RECORDS DO NOT JUSTIFY AN OFFSET IN THE AMOUNT OF $441,312.80 OR ANY OTHER PRECISE AMOUNT

Although Cargill is not entitled to a monetary sanction for the reasons set forth above, S&L does not dispute that Cargill is entitled to a reasonable offset against the amount awarded to S&L. Cargill's contemporaneously maintained records, however, are insufficient to justify an award in the amount requested by Cargill or any other precise amount.

None of the time entries that Cargill submits to the Court shows the amount of time spent on each task during a day in which the timekeeper worked on multiple tasks on a given matter. The accompanying declaration suggests, without addressing expressly, that the time records show only the total number of hours that each timekeeper worked each day on a given matter. Iwan Dec., ¶ 2 ("Client billing invoices … contain information regarding hours worked each day and descriptions of the work performed."). Undoubtedly, for some timekeepers on some days, Cargill is seeking an award or offset for all hours worked by those timekeepers. But undoubtedly, frequently Cargill is seeking an award or offset for only some of the tasks performed on this case. While Cargill was conducting discovery and briefing issues associated with disqualification, it also was deposing plaintiffs, defending depositions of management witnesses, answering and evaluating answers to written discovery, working with expert witnesses, and engaging in the myriad other activities associated with complex litigation. It is inconceivable that many of the timekeepers did not work on some of those activities on the same days that they performed in connection with disqualification.

In preparing its request for a fee award, S&L eliminated almost all time worked by timekeepers who did not apportion their work among the various tasks performed during a day, if some of those tasks were compensable and others were not. Cargill was not so circumspect. As Mr. Iwan admits in his declaration: "Where an individual timekeeper billed for more than one task on a day and less than all of those tasks were related to issues addressed in Cargill's Memorandum, I derived a good faith estimate, based on my knowledge of the case, of how long the tasks related to disqualification issues would have taken." Iwan Dec., ¶ 4. He does not inform the Court or S&L of the amount of time that he was forced to so estimate or identify the entries so estimated. The Court and S&L are left to guess. And whatever the percentage of time that is estimated, it is difficult to believe that Mr. Iwan, no matter how involved he may have been in the issues and without doubting his "good faith," could accurately estimate the number of hours worked each day by each timekeeper when the work was performed from five to two and a half years before he undertook to make these estimations.[8] That is especially true for Cargill's time entries from their beginning on July 15, 2002 through July 11, 2003. July 11, 2003 is the first time Mr. Iwan's records appear in connection with the disqualification efforts. By that time, Cargill had incurred about $85,000 of the $420,000 in fees for which they seek credit.

[8] Cargill's figures are suspect in other ways as well. For example, they include the time of seven timekeepers attending a team meeting on September 8, 2003, of ten timekeepers attending a team meeting on April 15, 2004, and of four timekeepers attending a team meeting on July 30, 2004. Nothing in the time records reflects that these meetings focused primarily, let alone exclusively, on the disqualification effort. S&L, however, does not ask the Court to engage in a line-by-line review of Cargill's time entries.

Without contemporaneous records containing sufficient time detail, the Court is left to do rough justice. S&L's 25% proposed reduction is as good an approximation of the proper amount by which to offset an award as any. *See, e.g., Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 882-83 (8th Cir. 2000) (affirming district court's estimation of award for particular claim where billing records were vague); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (affirming district court's percentage reduction of fees where "imprecise billings records preclude any meaningful review"); *Transclean Corp. v. Bridgewood Services, Inc.*, 134 F. Supp. 2d 1049, 1052 (D. Minn. 2001) (citing cases allowing district court to rely on experience in determining proper fee award where documentation is inadequate). The Court should not allow Cargill an offset of $441,312.80.[9]

**CONCLUSION**

For these reasons, the Court should deny Cargill's motion. It should not impose a monetary sanction on S&L and should instead apply the 25% reduction recommended by S&L to reimburse Cargill in a reasonable amount for the work and expenses it incurred in connection with S&L's disqualification.

[9] If the Court nonetheless allows Cargill an offset in the amount of $441,312.80 or some lesser amount, it should not apply the offset in addition to the 25% reduction in fees that plaintiffs already have recommended. Instead, it should apply the offset to the full $1,149,367.40 in fees and $283,630.76 in expenses that S&L identified as compensable before the 25% reduction in fees, or to such lesser amounts that the Court believes is fair and appropriate.

Dated: October 26, 2007

SPRENGER & LANG, PLLC

By: *s/Susan M. Coler*
Susan M. Coler (MN Bar No. 217621)
310 Fourth Avenue South
Suite 600
Minneapolis, MN 55415
(612) 871-8910
(612) 871-9270 [facsimile]

Michael D. Lieder (DC Bar No. 444273)
1400 Eye Street N.W.
Suite 500.
Washington, D.C. 20005
(202) 265-8010
(202) 332-6652 [facsimile]

**WORD COUNT CERTIFICATE**

Pursuant to Rule 7.1 of the Amendments to the Local Rules for the United States District Court, District of Minnesota, Sprenger & Lang, PLLC hereby certifies that Sprenger & Lang, PLLC's Memorandum of Law in Opposition to Cargill's Motion for Attorneys' Fees and Related Expenses filed on October 26, 2007 does not exceed 12,000 words. The Memorandum of Law contains 7,667 words according to Microsoft Word 2003, the program used to prepare the memorandum. The word processing program has been applied specifically to include all text, including headings, footnotes, and quotations.

Dated: October 26, 2007

SPRENGER & LANG, PLLC

By: *s/Susan M. Coler*

Susan M. Coler (MN Bar No. 217621)
310 Fourth Avenue South
Suite 600
Minneapolis, MN 55415
(612) 871-8910
(612) 871-9270 [facsimile]

Michael D. Lieder (DC Bar No. 444273)
1400 Eye Street N.W.
Suite 500.
Washington, D.C. 20005
(202) 265-8010
(202) 332-6652 [facsimile]

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 26, 2007, I caused the following document(s) to be filed electronically with the Clerk of Court through ECF:

Sprenger & Lang, PLLC's Memorandum of Law in Opposition to Cargill's Motion for Attorneys' Fees and Related Expenses

**and that ECF will send an e-notice of the electronic filing to the following:**

Paul B. Klaas, Esq.
Holly S.A. Eng, Esq.
Melissa Raphan, Esq.
Michael Iwan, Esq.
Mark Ginder, Esq.
DORSEY & WHITNEY, LLP
50 South Sixth Street, Suite 1500
Minneapolis, MN 55402-1498

*s/Susan M. Coler*
Susan M. Coler